LAW OFFICES
## POWELL, TRACHTMAN, LOGAN, CARRLE & LOMBARDO
A PROFESSIONAL CORPORATION

475 ALLENDALE ROAD
SUITE 200
KING OF PRUSSIA, PA 19406

(610) 354-9700
DIRECT DIAL: (610) 994-79050
FACSIMILE (610) 354-9760
DBOLGER@POWELLTRACHTMAN.COM
WWW.POWELLTRACHTMAN.COM

MICHAEL G. TRACHTMAN
PAUL A. LOGAN**□
GUNTHER O. CARRLE*
BRUCE D. LOMBARDO*
LAWRENCE A. BORDA*
JOSEPH P. TRABUCCO, III◊
NEIL P. CLAIN, JR.*
JONATHAN K. HOLLIN
DAVID T. BOLGER
RICHARD J. DAVIES*◊
STEVEN G. BARDSLEY*
STEPHEN D. MENARD*
FRANCIS G. LAROCCA
EILEEN C. CLARK*
DENNIS P. HERBERT*
FRANK S. NOFER*
ANTHONY S. POTTER*
GEORGE T. REYNOLDS*
MARY J. PEDERSEN*
FREDERICK M. BREHM*
JENIFER L. SUPLEE*
JAMES S. BAINBRIDGE*
KEVIN K. CARTON, JR.*
DIRK M. SIMPSON, LL.M. (TAXATION)*
PATRICK S. CAWLEY
CHRISTOPHER S. KOLLER
GREGORY J. STAR*
ALLISON J. STRUPCZEWSKI

*ALSO ADMITTED IN NJ
•ALSO ADMITTED IN MD
□ALSO ADMITTED IN DE
◊ALSO ADMITTED IN NY

OF COUNSEL
RALPH B. POWELL, JR.
MALCOLM B. JACOBSON
RICHARD T. ABELL
RICHARD L. BUSH
KEITH R. BLACK

114 NORTH SECOND STREET
HARRISBURG, PA 17101
(717) 238-9300
FAX (717) 238-9325

SUITE 304
1814 EAST ROUTE 70
CHERRY HILL, NJ 08003
(856) 663-0021
FAX (856) 663-1590

January 17, 2006

PLEASE REPLY TO:
KING OF PRUSSIA



FILED
JAN 17 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

The Honorable Gregory M. Sleet
U.S. District Court
District of Delaware
844 N. King Street, Lockbox 19
Wilmington, DE 19801

Re: Donald M. Durkin Contracting, Inc. v. City of Newark, et al., Civil Action No. 04-0163 GMS

Dear Judge Sleet:

Plaintiff Thomas M. Durkin Contracting, Inc. ("Durkin") submits this letter brief in support of the discovery teleconference conducted on Thursday January 12, 2006 at 10:00 a.m. in the above-captioned matter.

The City of Newark has asserted that documents and information presented or generated at City Council Executive Sessions are exempt from discovery based upon (1) the Delaware Freedom of Information Act (the "Act"), 29 Del. C. § 10004(f); (2) the attorney-client privilege; and (3) work product doctrine. For the following reasons, Durkin respectfully submits that none of the recited bases provides an adequate legal justification for withholding the requested documents and information.

The Act clearly establishes that records pertaining to Executive Sessions are public records, and placed strict limitations upon any withholding of such information:

> Each public body shall maintain minutes of all meetings, including executive sessions, conducted pursuant to this section, and shall make such minutes available for public inspection and copying as a public record. Such minutes shall include a record of those members present and a record, by individual members (except where the public body is a town assembly where all citizens are entitled to vote), of each vote taken and action agreed upon. *Such minutes or portions thereof, and any public records pertaining to executive sessions conducted pursuant to this section, may be withheld from public*

The Honorable Gregory M. Sleet
January 17, 2006
Page 2

> *disclosure so long as public disclosure would defeat the lawful purpose for the executive session, but no longer.*

29 Del. C. § 10004 (f)(Emphasis added). Under the Act, the City bears the burden to establish that: (1) an Executive Session was warranted; and (2) if warranted, the documents created are still subject to being withheld from public disclosure. Common Cause of Delaware v. Red Clay Consol. Sch. Dist. Bd. of Educ., C.A. No. 13798, 1995 Del. Ch. LEXIS 165 (Del. Ch. Dec. 5, 1995).

The factual basis and rationale of the City's decision to terminate Durkin's contract is one of the central disputed issues in the case. To the extent the City had any colorable basis for withholding its pre-termination deliberative and evaluative process from public scrutiny based upon the potential for litigation, that was extinguished when litigation was commenced and the City filed a counterclaim against Durkin. The City's continued withholding of this information improperly seeks to frustrate Durkin's entitlement to fully explore the factual predicate for the termination and subsequent decisions concerning the replacement contractor on the project, the costs of which are being claimed by the City in this litigation.

The City's assertions of the attorney-client privilege and work product doctrine are equally unavailing. Initially, the presence of URS—clearly not a "client" in any sense—at any Executive Session eviscerates any claimed protection of such communications, whether made by counsel or others. See Union Carbide Corp. v. Dow Chemical Co., 619 F. Supp. 1036, 1047 (D. Del. 1985)("The presence of nonessential third parties not needed for the transmittal of the information will negate the [attorney client] privilege"). With respect to Executive Session written materials, Durkin does not seek disclosure of counsel's statements or mental impressions, conclusions or opinions, but formal meeting minutes or handwritten notes taken by attendees that reflect the factual exchange and decision-making process are not within the ambit of attorney-client communications. See Upjohn Co. v. United States, 449 U.S. 383, 395-396, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981); Lemelson v. Bendix Corp., 104 F.R.D. 13, 16 (D. Del. 1984). ("While documents may be protected from disclosure in discovery because they contain confidential communications that are privileged, that protection may be inapplicable to facts incorporated in the communication"). In terms of work product, the meeting minutes are part of the ordinary course of business in Executive Sessions, and there is no suggestion that personal notes taken by attendees were at the direction of counsel. To the extent the Court concludes that any documents qualify as work product under Fed.R.Civ.P. 26(b)(3), the need to access such information is both substantial and imperative to the ultimate issues in the case, and there is clearly no other means by which Durkin may obtain this information. As such, Durkin is entitled to access all such factual information from the Executive Sessions.

In conclusion, Durkin respectfully requests that this Court order the City to produce all Executive Session meeting minutes and notes taken by City Council members, or alternatively requests that this Court conduct an in camera inspection of all such materials to determine if any such documents are subject to any proper claim of privilege and/or production with appropriate redactions. See Lemelson v. Bendix Corp., 104 F.R.D. 13, 16 (D. Del. 1984).

Respectfully,

David T. Bolger

cc:   All counsel of record
      Clerk of the Court

KOP:331105v2 3514-04

# APPENDIX

**Unreported Opinions Cited in Plaintiff's Letter Brief**

LEXSEE 1995 DEL CH LEXIS 165

COMMON CAUSE OF DELAWARE, GEMMA BUCKLEY, HAROLD RILEY, NANCY KENYON, and THOMAS KAVANAGH, Plaintiffs, v. RED CLAY CONSOLIDATED SCHOOL DISTRICT BOARD OF EDUCATION, WILLIAM E. MANNING, CAROLECE SCOTTON, IRWIN J. BECNEL, JR., CHARLES M. CAVANAUGH, LORETTA RICE, JACQUELINE WITT, EDWARD S. SOSNOWSKI, and ROBERT R. SIMONS, Defendants.

C.A. No. 13798

COURT OF CHANCERY OF DELAWARE, NEW CASTLE

*1995 Del. Ch. LEXIS 165*

November 28, 1995, Submitted
December 5, 1995, Decided
December 5, 1995, FILED

NOTICE: [*1] THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

COUNSEL:

Collins J. Seitz, Jr., Esquire, and Charles J. Durante, Esquire, of CONNOLLY, BOVE, LODGE & HUTZ, Wilmington, Delaware, Attorneys for Plaintiffs.

Alfred J. D'Angelo, Jr., Esquire, M. Duncan Grant, Esquire, and Kathryn A. Kelly, Esquire, of PEPPER, HAMILTON & SCHEETZ, Wilmington, Delaware, Attorneys for Defendants.

JUDGES: BERNARD BALICK, VICE-CHANCELLOR

OPINIONBY: Bernard Balick

OPINION:

MEMORANDUM OPINION

BALICK, VICE-CHANCELLOR

Plaintiffs claim that defendants committed a number of violations of the Freedom of Information Act ("the Act"). The main allegation is that defendants had unjustified private discussions at six executive sessions between April and September of 1994. Plaintiffs also allege that notices and minutes of the executive sessions were insufficient. Both parties move for summary judgment and agree that the court may decide the issues on the basis of the depositions and documents in the record.

I

Defendants argue that the allegations relating to meetings held more than 60 days before plaintiffs filed their complaint are barred by the following provision: [*2]

> Any action taken at a meeting in violation of this chapter may be voidable by the Court of Chancery. Any citizen may challenge the validity under this chapter of any action of a public body by filing suit within 60 days of the citizen's learning of such action but in no event later than 6 months after the date of the action.

*29 Del. C. § 10005 (a)*

Plaintiffs do not seek to have any action of the Red Clay Board declared void. However, the parties agree that plaintiffs "challenge the validity" of the Board's "action" in conducting the executive sessions, publishing the notices, and maintaining the minutes in question.

Plaintiffs' challenge of the notices and minutes go to the facial sufficiency of the documents. Most of them were published more than 60 days before the complaint was filed on October 11, 1994. Plaintiffs do not deny that they learned of the notices and minutes in question upon their publication. It follows that those allegations are barred. Since the minutes of the August and September meetings were published less than 60 days before the

complaint was filed, the allegation that they are insufficient is not barred.

Plaintiffs' challenge of the executive [*3] sessions are not based on the minutes of the meetings. Rather, plaintiffs deny that they learned until later that defendants went beyond the proper purposes stated in the notices. Defendants have the burden of proving the affirmative defense of statute of limitations. Since defendants have not proven that plaintiffs learned of the allegedly improper private discussions more than 60 days before they filed their complaint, those allegations are not barred.

II

The controversy concerning executive sessions centers on the Board's handling of its open enrollment plan. In June 1993, the State Board of Education, Red Clay, and other local school boards filed a motion seeking to vacate the United States District Court's desegregation decree on the ground that the schools had achieved unitary status. In May 1994, Red Clay filed a motion seeking to modify the decree to permit Red Clay to implement its open enrollment plan in September 1994. The unitary status motion was scheduled to be heard in December 1994. Thus, litigation was active from April to September 1994 when the executive sessions in question were held. Defendants stress that their position in the litigation was strongly opposed [*4] and that strategy sessions were necessary. plaintiffs acknowledge that some strategy sessions were necessary, but believe that defendants were not justified in pursuing an important matter of public policy like the open enrollment plan with such limited public discussion. Defendants in turn acknowledge that pupil assignment is an issue that must ordinarily be discussed publicly. They point out that the latest version of the open enrollment plan was publicly discussed and approved earlier in 1994. Defendants maintain that they properly conducted executive strategy sessions to discuss how to obtain the necessary court approval to put the plan into effect.

The Act embodies a strong policy that public business shall be performed publicly:

> It is vital in a democratic society that public business be performed in an open and public manner so that our citizens shall have the opportunity to observe the performance of public officials and to monitor the decisions that are made by such officials in formulating and executing public policy; and further, it is vital that citizens have easy access to public records in order that the society remain free and democratic. Toward these ends, and [*5] to further the accountability of government to the citizens of this State, this chapter is adopted, and shall be construed.

*29 Del. C. § 10001*

The Act provides that every meeting of all public bodies shall be open to the public except that a public body may call for an executive session closed to the public for specified purposes, including the following:

> Strategy sessions, including those involving legal advice or opinion from an attorney-at-law, with respect to collective bargaining or pending or potential litigation, but only when an open meeting would have an adverse effect on the bargaining or litigation position of the public body.

*29 Del. C. § 10004 (b)(4)*

The Act provides that the decision to hold an executive session shall itself be made in public:

> A public body may hold an executive session closed to the public upon affirmative vote of a majority of members present at a meeting of the public body. The vote on the question of holding an executive session shall take place at a meeting of the public body which shall be open to the public, and the results of the vote shall be made public and shall be recorded in the minutes. The purpose of [*6] such executive sessions shall be set forth in the agenda and shall be limited to the purposes listed in subsection (b) of this section. Executive sessions may be held only for the discussion of public business, and all voting on public business must take place at a public meeting and the results of the vote made public.

*29 Del. C. § 10004 (c)*

The purposes of the executive sessions in question were stated in public notices. For example, the stated grounds for the executive session in April were as follows:

> The grounds for holding the Executive Session are that the Board will consult with its counsel and its co-defendant in the federal desegregation litigation concerning their legal strategy and posi-

tion with respect to Red Clay's proposed student assignment plans and current court orders. An open meeting would have an adverse effect on Red Clay's position in the desegregation litigation pursuant to *29 Del. C. § 10004 (b)(4)*

Although the Board's most frequently stated purpose for calling executive sessions during the period in question was the need for strategy sessions concerning the desegregation case, notices also stated other proper statutory purposes, [*7] such as legal advice with respect to collective bargaining or contract negotiations, disciplinary cases, and personnel matters. *29 Del. C. § 10004 (b)*. There is no question that the notices stated proper purposes for executive sessions. The issue is whether the extensive private discussions exceeded the statutory limits on executive sessions.

There is no dispute that litigation was pending when the executive sessions in question were held. The only issue on the propriety of strategy sessions is whether an open meeting would have an adverse effect on the Board's litigation position. At the time of the April meeting, Red Clay was seeking the State Board's support of the open enrollment plan and was trying to meet the deadline for filing a motion to modify the federal court's decree. Defendants' decision to hold an executive session to discuss legal strategy was clearly justified in those circumstances.

Plaintiffs argue that issues such as a proposal for funding the plan and questions concerning the boards of the magnet schools should have been discussed at public meetings. The public was intensely interested and deeply divided on open enrollment and unitary status. The issues [*8] in question required the Board to consider proposed changes and arguable problems in the plan. The Board could reasonably conclude that open discussion of those issues would have an adverse effect on the Board's pending motion seeking court approval of the plan. I find that defendants have sustained their burden of proving that each of the strategy sessions was justified.

The question of whether the Board went beyond the proper purpose of the executive sessions is more difficult to determine. The Board has the burden of proving what was discussed at the executive sessions. Because of the very general minutes, we must rely on the memory of Board members. Their depositions were taken months after sessions that sometimes lasted two hours or more, and their recollection is understandably vague on some matters.

There is always a risk that a public body will drift into discussing matters beyond the proper purpose of an executive session. Fortunately, members were mindful of the Board's duties under the Act and sought legal advice when the propriety of private discussion was in doubt. When occasional lapses were brought to the members' attention, discussion of that subject would immediately [*9] cease. Although one would like stronger evidence as to the scope of the discussion of some subjects, after considering all of the deposition testimony I am satisfied that the Board stayed within the statutory limits on executive sessions.

III

The minutes of the August and September executive sessions state when the meeting was called to order, who was present, what the vote was on the question of holding an executive session, and when the meeting was adjourned. The only description of the subjects discussed is "a legal matter" and "legal and personnel matters."

Plaintiffs argue that the Act requires the Board to specify what legal, personnel, or other subjects are discussed in executive sessions:

> Each public body shall maintain minutes of all meetings, including executive sessions, conducted pursuant to this section, and shall make such minutes available for public inspection and copying as a public record. Such minutes shall include a record of those members present and a record, by individual members (except where the public body is a town assembly where all citizens are entitled to vote), of each vote taken and action agreed upon. Such minutes or portions thereof, and any [*10] public records pertaining to executive sessions conducted pursuant to this section, may be withheld from public disclosure so long as public disclosure would defeat the lawful purpose for the executive session, but no longer.

*29 Del. C. § 10004 (f)*

Plaintiffs argue that without more detailed minutes, it is difficult to monitor and enforce compliance with the statutory limits on executive sessions. In support of their position, plaintiffs point to the final sentence of the provision quoted above. They argue that there would be no reason to permit boards to withhold minutes from public disclosure if meaningless minutes of the kind kept here satisfied the statute.

Defendants counter that the minutes comply with all requirements of the statute. In support of their position,

defendants point out that the School District Reorganization Act only requires that a roll call vote of all board members on every motion or resolution be recorded as part of the minutes. *14 Del. C. § 1048 (d)*. Defendants think it more prudent and useful to provide a general description of the subjects discussed and immediately disclose the minutes, than to include a more specific summary and delay [*11] disclosing the minutes until disclosure would no longer defeat the purpose of the executive session.

There is a practical reason to keep meaningful minutes. To the extent that a public body does not keep a contemporaneous record of the subjects discussed at an executive session but rather relies on the memory of those in attendance, the public body runs the risk of failing to meet its burden of proving that its action was justified when the propriety of an executive session is challenged. *29 Del. C. § 10005*. However, the Act simply requires public bodies to disclose the purpose of executive sessions in the agenda. The Act requires that certain information be included in the minutes, but neither says that the subjects discussed must be summarized nor attempts to define how specific such a summary should be. Although plaintiffs are undoubtedly correct that a more detailed contemporaneous record of the subjects discussed would make it easier to confirm that a public body has kept within prescribed limits on executive sessions, I cannot conclude that there is a clearly implied statutory requirement to summarize the subjects discussed with any degree of specificity in the minutes [*12] of executive sessions.

IV

Defendants have moved for an order directing plaintiffs to return all copies of a letter dated May 11, 1994 that Red Clay's lawyer sent to the lawyer representing the State Board. The letter states that the lawyer was authorized to inform the State Board that Red Clay has met the State Board's conditions for supporting the open enrollment plan. Red Clay refused plaintiffs' request for access to the letter as a public record under the Act. However, the State Superintendent of Education provided a copy of the letter. Although plaintiffs at first suspected that there was a secret executive session, discovery has disclosed that the lawyer had only cleared the letter with the president but reasonably expected the Board to ratify it as soon as a meeting could be convened. Since plaintiffs have the letter, there is no issue under the Act. The only issue is whether defendants are entitled to an order directing plaintiffs to return all copies of the letter.

Defendants have the burden of proving their claim that the letter is protected by the lawyer-client privilege. *Moyer v. Moyer*, Del.Supr., 602 A.2d 68, 72 (1992). The authorities cited by defendants do not [*13] support their position. Defendants rely primarily on *Interfaith Housing Delaware v. Town of Georgetown*, 841 F. Supp. 1393 (D.Del. 1994). Interfaith holds that a waiver by one joint client does not waive the privilege of another joint client. However, before considering the question of waiver, we must determine whether the letter was privileged.

A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client. D.R.E. 502 (a)(5). A client such as Red Clay has a privilege to prevent any person from disclosing confidential communications made by its lawyer to a lawyer representing another in a matter of common interest. D.R.E. 502 (b)(3).

I am not satisfied that the letter was a confidential communication. The purpose of the letter was to obtain the State Board's support of the open enrollment plan at a special meeting on Sunday, May 15. The minutes show that the letter was read at the public meeting. Thus, a communication that one would expect the State Board to disclose to the public was sent without notice that it was confidential. In these [*14] circumstances, defendants cannot successfully claim that the letter was a confidential communication.

V

Defendants seek an award of attorney fees. The Act permits the court to award attorney fees to a successful defendant, but only if the court finds that the action was frivolous or was brought solely for the purpose of harassment. *29 Del. C. § 10005 (d)*. Although plaintiffs have not prevailed, I do not find that their action was frivolous or was brought solely for the purpose of harassment. I will therefore deny defendants' request for attorney fees.

ORDER

For the reasons stated in the memorandum opinion filed with this order, it is ORDERED:

1. Judgment is entered in favor of the defendants;

2. Defendants' motion for return of a privileged document is denied;

3. Defendants' request for attorney fees is denied.

Bernard Balick
Vice Chancellor

Dated: Dec. 5, 1995