IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DONALD M. DURKIN CONTRACTING, INC. | ) | |
|         Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 04-0163 |
| | ) | |
| CITY OF NEWARK, et al., | ) | |
|         Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CITY OF NEWARK, | ) | |
|         Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL INSURANCE COMPANY, | ) | |
|         Third-Party Defendant. | ) | |

**MOTION OF THIRD-PARTY DEFENDANT,
FEDERAL INSURANCE COMPANY, FOR SUMMARY JUDGMENT**

Third-Party Defendant, Federal Insurance Company ("Federal"), by its counsel, Stradley, Ronon, Stevens & Young, LLP, moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment against Third-Party Plaintiff, City of Newark (the "City"), as Federal's right to summary relief is clear and no material fact exists to preclude judgment in Federal's favor. In support thereof, Federal states as follows:

**I.    BACKGROUND**

1.    The claims against Federal in this action have been made under a Performance Bond designated as Bond No. 8128-39-26 (the "Performance Bond"), which Federal provided to the City of Newark in connection with work to be performed by Plaintiff, Donald M. Durkin Contracting, Inc. ("Durkin"), pursuant to Durkin's contract with the City for the construction of a water supply reservoir. A copy of the Performance Bond is attached to the Declaration of Ellen M. Cavallaro ("Cavallaro Decl."), Exhibit A to Appendix, at Attachment A.

2. The Performance Bond was written on a bond form selected and required by the City. (See Cavallaro Decl. at ¶5.)

3. In its Third Party Complaint, the City claims that Federal is liable to it under the Performance Bond. See The City's Answer, Counterclaim and Third Party Complaint (D.I. 7).

4. Federal can have no liability under the Performance Bond unless the express conditions precedent to coverage set forth in the Performance Bond selected and required by the City have been satisfied.

5. Federal can have no liability under the Performance Bond if the City, designated as the "Owner" in the Performance Bond, has committed an "Owner Default" as defined by the terms of the bond selected and required by the City.

## II.  KEY CONTRACTUAL PROVISIONS

6. To trigger Federal's obligation under the Performance Bond, the City must satisfy certain conditions precedent expressly set forth in the Performance Bond and there can be no "Owner Default." (See Cavallaro Decl., Attachment A at ¶3.)

7. The Performance Bond clearly specifies:

> 3.  If there is no Owner Default, the Surety's obligation under this Bond shall arise after:
>
>> 3.1. The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below, that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequent to declare a Contractor Default; and

> 3.2. The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1.

Id.

8. The Performance Bond defines the "Owner" as the City and "Owner Default" as follows:

> Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

Id. at ¶12.4.

9. Federal's obligation under the Performance Bond does not arise unless the express conditions set forth in Paragraph 3 of the Performance Bond are satisfied and can never arise if there is an "Owner Default."

10. In particular, Subparagraph 3.1 of the Performance Bond requires that the City notify Federal and Durkin that the City is "considering declaring a Contractor Default and has requested and attempted to arrange a conference" to be held not later than 15 days after receipt of the notice "to discuss methods of performing the Construction Contract." Id. at ¶3.1.

11. Subparagraph 3.2 of the Performance Bond requires that the City declare a "Contractor Default" (as defined in Subparagraph 12.4 of the Performance Bond) and formally terminate Durkin's right to complete the Construction Contract. Id. at ¶¶3.2 and 12.4.

12. Durkin's Construction Contract with the City (the "Construction Contract") authorizes the City to terminate Durkin's right to complete the contract for cause, only after the City provides Federal with **seven days' written notice prior to terminating the**

**Construction Contract**.[1] A copy of section 15.2 of the Construction Contract is attached to the Cavallaro Decl. as Attachment B.

13. As set forth more fully below and in Federal's Opening Brief filed herewith, because the City failed to meet the express conditions precedent to Federal's obligation under the Performance Bond, and since the City committed an Owner Default under the terms of the Performance Bond, Federal has no obligation to the City under the Performance Bond and is therefore entitled to judgment as a matter of law.

### III.   THE DISPUTE BETWEEN THE CITY AND DURKIN

14. In early 2002, the City advertised for competitive bids for the construction of the reservoir and ultimately awarded Durkin the Construction Contract. By late 2002, Durkin began working on the reservoir site.

15. Thereafter, a dispute arose between Durkin and the City regarding the constructability and safety of the reservoir's design.[2] (Cavallaro Decl. at ¶6.)

16. While discussions between the City and Durkin were ongoing, on November 21, 2003, the City sent a letter to Federal, in which the City stated that it was "considering declaring" Durkin in default and requested a meeting to take place within 15 days

---

[1] Section 15.2 of the Construction Contract states:

> OWNER may, **after giving** CONTRACTOR (and **the Surety**, if any,) **seven days' written notice** and to the extent permitted by Laws and Regulations, terminate the services of CONTRACTOR, exclude CONTRACTOR from the site and take possession of the Work and of all CONTRACTOR's tools, appliances, construction equipment and machinery at the site and use the same to the full extent they could be used by CONTRACTOR (without liability to CONTRACTOR) for trespass or conversion), . . . .

(emphasis added).

[2] The dispute between Durkin and the City is **not** material to Federal's motion for summary judgment. That dispute merely provides context for the City's claim under the Performance Bond. The **merits** of the City-Durkin dispute are irrelevant to the City's failure to comply with the conditions precedent to coverage under the Performance Bond and are not at issue in this motion.

to discuss methods for the completion of the project.³ A copy of the November 21, 2003 letter is attached to the Cavallaro Decl. as Attachment C.

### IV. THE CITY'S FAILURE TO SATISFY THE CONDITION PRECEDENT REQUIREMENTS OF SUBPARAGRAPH 3.1 OF THE PERFORMANCE BOND ENTITLES FEDERAL TO JUDGMENT AS A MATTER OF LAW

17. The conference required by Subparagraph 3.1 of the Performance Bond to discuss methods of performing the Construction Contract – which was requested by the City's November 21, 2003 letter – never took place. Instead, representatives of the City, Durkin and Federal held an "off the record" settlement meeting on December 9, 2003. (See Cavallaro Decl. at Attachment D.) This meeting did not satisfy the requirements of Subparagraph 3.1 of the Performance Bond.

18. The Agenda provided **by the City** for the settlement meeting expressly states that "All conversations during the meeting shall be in the nature of settlement negotiations, and **shall be inadmissible in any future proceeding**." A copy of the December 9, 2003 Meeting Agenda is attached to the Cavallaro Decl. as Attachment D.

19. The City never thereafter requested the conference required by Subparagraph 3.1 of the Performance Bond and no such conference ever took place. (See Cavallaro Decl. at ¶17.)

---

³ The November 21, 2003 letter provided:

> On behalf of the City of Newark, Delaware, I am writing to inform you that we are now **considering declaring** Donald M. Durkin Contracting, Inc. (DMD) in default of Newark Municipal Contract No. 02-02, pertaining to Construction of a Municipal Water Supply Reservoir. This **precautionary letter** has become necessary following DMD's failure to present a response to a means and methods for continuation of the project in accordance with our Contract.
>
> As provided in the DMD Performance Bond on file with the City, we are requesting that a conference be held including Surety representatives, DMD, URS Corporation representatives and the City of Newark. This meeting shall take place within fifteen (15) days of your receipt of this letter. The intent of the meeting will be to discuss methods for DMD's faithful completion of this Contract consistent with its agreement with the City.

(emphasis added).

20. The City completely failed to comply with Subparagraph 3.1 of the Performance Bond. In order for Federal's obligation to arise under the terms of the Performance Bond, the City first had to arrange a conference with Durkin and Federal "to discuss methods of performing the Construction Contract." (See Cavallaro Decl., Attachment A at ¶3.) Pursuant to the City's Performance Bond, if the City, Federal and Durkin were to agree on methods for performing the Construction Contract, Durkin would be "allowed a reasonable time to complete the Construction Contract." Id. ¶3.1.

21. The conference required by the express terms of Subparagraph 3.1 of the Performance Bond never happened. The City's own Agenda for the December 9, 2003 meeting that took place in response to the City's November 21, 2003 letter establishes that such meeting was **not** a conference "to discuss methods of performing the Construction Contract" pursuant to Subparagraph 3.1 of the Performance Bond. (See Cavallaro Decl. at Attachment D.) Instead, it was an "off the record" settlement meeting. Id. The City's broad language precluding use of the discussions in "any future proceeding" encompasses any proceeding related to the Performance Bond, including the instant lawsuit.

22. The City can point to no genuine issues of material fact that would preclude the entry of summary judgment in Federal's favor on this basis alone because there is no dispute that the only meeting attended by the City, Durkin and Federal during the time period from November 21, 2003 to February 2, 2004 was the December 9, 2003 settlement meeting. Federal never refused to attend any meeting requested by the City pursuant to Subparagraph 3.1 of the Performance Bond or otherwise. (See Cavallaro Decl. at ¶18.) That meeting was – by the City's own terms – an "off the record" settlement meeting, and what transpired at that meeting was in the "nature of settlement negotiations" and "inadmissible in any future proceeding." Id.

23. Because the meeting required by Subparagraph 3.1 of the City's Performance Bond form never took place, Federal was deprived of the opportunity to discuss with the City **and** Durkin the "methods of performing the Construction Contract," a discussion required by the terms of the bond itself.

24. Federal is therefore entitled to judgment as a matter of law based on the City's failure to comply with the express conditions precedent set forth in Subparagraph 3.1 of the Performance Bond.

### V. THE CITY'S FAILURE TO DECLARE A CONTRACTOR DEFAULT AND PROVIDE FEDERAL WITH SEVEN DAYS' WRITTEN NOTICE PRIOR TO TERMINATING DURKIN'S RIGHT TO COMPLETE THE CONSTRUCTION CONTRACT ENTITLES FEDERAL TO JUDGMENT AS A MATTER OF LAW

25. Following the December 9, 2003 settlement meeting and pursuant to the agreement of the City, Durkin and Federal, Federal engaged a geotechnical engineering consultant to review the issues disputed by Durkin and the City. (See Cavallaro Decl. at ¶12.)

26. On January 20, 2004, Federal submitted two reports from their geotechnical consultant to the City. Id. at ¶14. Instead of responding to the consultant's reports and thereby providing Federal with contractually-required opportunity to discuss with the City and Durkin the "methods of performing the Construction Contract," the City simply fired Durkin.

27. On February 2, 2004, City Council convened and – without any notice to Federal – at 11:00 p.m. voted unanimously to terminate Durkin.[4] Council adjourned the meeting

---

[4] City Council's minutes reflect:

> MOTION BY MR. GODWIN, SECONDED BY MR. CLIFTON: That Donald M. Durkin Contracting, Inc. be terminated immediately from further involvement in the construction of the Newark Water Reservoir based on its refusal to perform under its Contract with the City of Newark; and that legal counsel for the City promptly and properly notified Donald M. Durkin Contracting, Inc. and the Surety of Durkin, of the termination and demand that said Surety fulfill its lawful obligations under its Bond with Durkin.

one minute later. A copy of the relevant portion of the City Council Meeting Minutes is attached to the Cavallaro Decl. as Attachment E.

28. The next day, February 3, 2004, City Manager Carl Luft sent a letter to Federal and Durkin, in which Mr. Luft stated that "the City of Newark declares a Contractor Default and hereby formally terminates Donald M. Durkin Contracting, Inc.'s ("Durkin") right to complete the Contract for the Construction of the City of Newark Water Supply Reservoir." A copy of the February 3, 2004 letter is attached to the Cavallaro Decl. as Attachment F.

29. In stark contrast to the November 21, 2003 letter from the City, the City's February 3, 2004 letter unequivocally states that Durkin's rights under the Construction Contract were **immediately** terminated. The February 3, 2004 letter, therefore, did **not** provide Federal with the seven days' notice prior to termination as required by section 15.2 of the Construction Contract and Subparagraph 3.2 of the Performance Bond. (See Cavallaro Decl. at Attachments A, B and F.)

30. Termination of a construction contract without providing the proper notice and opportunity to cure "is itself a material breach of contract." 5 Bruner and O'Connor on Construction Law § 18:15.

31. The City's February 3, 2004 letter failed to provide the requisite seven days' written notice to Federal as required by the terms of the Construction Contract and the Performance Bond and, therefore, constitutes an "Owner Default" as defined in Subparagraph 12.4 of the Performance Bond.

32. The absence of an "Owner Default" is a condition precedent to the City's right to coverage under the Performance Bond. (See Cavallaro Decl., Attachment A at ¶3 ("If there is no Owner Default, the Surety's obligations shall arise after . . . .").)

33.     The commission by the City of the foregoing Owner Default precludes any recovery by it under the Performance Bond and entitles Federal to judgment as a matter of law.

34.     In its February 3, 2004 termination letter, the City claims that its November 21, 2003 letter constitutes the requisite seven day notice prior to termination. (See Cavallaro Decl. at Attachment F.) However, to be a proper notice of termination, the law requires the City to provide a detailed notice that apprises Durkin <u>and</u> <u>Federal</u> of the particular defaults that must be cured and of the City's actual intention to terminate Durkin's right to complete the Construction Contract in seven days. The November 21 letter does not come close to providing the required notice. (See Cavallaro Decl. at Attachment C.)

35.     In particular, the November 21, 2003 letter from the City:

- did <u>**not**</u> state that Durkin is in default;

- did <u>**not**</u> describe any particular defaults in Durkin's work;

- did <u>**not**</u> declare any intention to terminate Durkin's right to complete the Construction Contract; and

- did <u>**not**</u> even use the very word "terminate."

See <u>id.</u>

34.     The City's November 21, 2003 letter simply was not a notice to terminate. The City's November 21, 2003 letter, by its own terms, merely was a "<u>precautionary letter</u>" that stated that the City is "<u>now considering declaring</u> . . . Durkin . . . in default . . . ." The City's letter was not even a declaration of default, let alone a legally sufficient notice of termination. Indeed, it did not even use the word "<u>terminate</u>." <u>Id.</u>

35.     A notice of termination cannot hang over a contractor's head indefinitely. The right to terminate a contract must be exercised in a timely fashion, and if the notice grows stale, it is void. <u>See, e.g.</u>, <u>DeVito v. United States</u>, 413 F.2d 1147, 1153 (Ct. Cl. 1969).

36. Here, the February 3, 2004 termination letter issued nearly 2½ months (73 days) after the so-called November 21, 2003 "notice" letter from the City's manager.

37. Assuming *arguendo* that Durkin was in default as of November 21, 2003 and assuming *arguendo* that the November 21, 2003 letter satisfied the notice requirement of section 15.2 of the Construction Contract (which it does not), the February 3, 2004 termination letter is still not effective to properly default terminate Durkin's rights under the Construction Contract because it was untimely as a matter of law.

38. The November 21, 2003 letter **cannot** simultaneously function as the notice of consideration of default under the Performance Bond **and** the required seven day notice of default termination to Federal under the Construction Contract and as required under Subparagraph 3.2 of the Performance Bond. The purposes of these two notices are different and the Performance Bond requires that these notices be separated by at least twenty (20) days. (See Performance Bond at ¶3.2.)

39. By failing to properly declare a Contractor Default and by failing to provide Federal with the requisite seven days' written notice prior to formally terminating Durkin's right to complete the Construction Contract, the City failed to satisfy the condition precedent to coverage set forth in Subparagraph 3.2 of the Performance Bond.

40. The City's failure to satisfy the conditions precedent to Federal's obligation under the Performance Bond entitles Federal to judgment as a matter of law.

## VI.   CONCLUSION

41.   Federal has no liability under the Performance Bond because the City failed to comply with the condition precedent provisions of Paragraph 3 and Subparagraphs 3.1 and 3.2 of the Performance Bond.

42.   The express condition precedent terms of the Performance Bond have not been satisfied and, therefore, Federal has no obligation to the City under the Performance Bond as a matter of law.[5]

WHEREFORE, for the reasons set forth herein and its Opening Brief filed herewith and incorporated herein by reference, Third-Party Defendant, Federal Insurance

---

[5] For the reasons set forth in Federal's Opening Brief in Support of its Motion for Summary Judgment, this Court's denial of Durkin's Motion for Partial Summary Judgment does not preclude entry of summary judgment in favor of Federal. Federal's motion relies on undisputed facts and only legal issues remain for the Court's consideration.

Company, respectfully requests that this Court enter judgment in its favor and against Third-Party Plaintiff, City of Newark, and dismiss the Third-Party Complaint in its entirety.

Respectfully submitted,

/s/ _____
STRADLEY, RONON, STEVENS & YOUNG, LLP

Kevin W. Goldstein, Esquire
Delaware Bar No. 2967
STRADLEY RONON STEVENS & YOUNG, LLP
300 Delaware Avenue
Suite 800
Wilmington, DE 19801
(302) 576-5850
(302) 576-5858 Fax

Samuel J. Arena, Jr., Esquire (pro hac vice)
Patrick R. Kingsley, Esquire (pro hac vice)
David M. Burkholder, Esquire (pro hac vice)
2600 One Commerce Square
Philadelphia, PA 19103-7098
(215) 564-8000
(215) 564-8120 Fax

Attorneys for Third-Party Defendant,
Federal Insurance Company

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2006, I caused a true and correct copy of the Motion of Third-Party Defendant, Federal Insurance Company, for Summary Judgment to be served via overnight delivery upon the following:

Paul A. Logan, Esquire
David T. Bolger, Esquire
POWELL, TRACHTMAN, LOGAN,
CARLE & LOMBARDO, P.C.
475 Allendale Road, Suite 200
King of Prussia, PA 19406
*Attorneys for Plaintiff,*
*Donald M. Durkin Contracting, Inc.*

Paul Cottrell, Esquire
Victoria K. Petrone, Esquire
TIGHE, COTTRELL & LOGAN, P.A.
704 N. King Street
P.O. Box 1031
Wilmington, DE 19899
*Attorneys for Defendants,*
*City of Newark, Harold F. Godwin,*
*John H. Farrell, IV, Jerry Clifton,*
*Karl G. Kalbacher, David J. Athey,*
*Frank J. Osborne, Jr., and Christina Rewa*

James S. Green, Esquire
George H. Seitz, III, Esquire
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
Wilmington, DE 19899
*Attorneys for Defendant,*
*URS Corporation*

/s/_____
Kevin W. Goldstein

L 118197v.3