IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DONALD M. DURKIN CONTRACTING, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. 04-0163 |
| | ) | |
| CITY OF NEWARK, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CITY OF NEWARK, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| FEDERAL INSURANCE COMPANY, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

**REPLY BRIEF OF THIRD-PARTY DEFENDANT,
FEDERAL INSURANCE COMPANY, IN SUPPORT OF
<u>ITS MOTION FOR SUMMARY JUDGMENT</u>**

STRADLEY, RONON, STEVENS
& YOUNG, LLP
Kevin W. Goldstein, Esq.
Delaware Bar ID No. 2967
300 Delaware Avenue, Suite 800
Wilmington, DE 19899

Samuel J. Arena, Jr., Esq. (pro hac vice)
Patrick R. Kingsley, Esq. (pro hac vice)
David M. Burkholder, Esq. (pro hac vice)
2600 One Commerce Square
Philadelphia, PA 19103

Attorneys for Third-Party Defendant,
Federal Insurance Company

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| I. | INTRODUCTION | 1 |
| II. | REPLY ARGUMENT | 2 |
| | A. No Conference "To Discuss Methods Of Performing The Construction Contract" Was Ever Convened | 2 |
| | B. The November 21, 2003 Letter Does Not Constitute Seven Days' Notice Of Termination | 4 |
| | C. The February 3, 2004 Termination Letter Did Not Provide The Requisite Seven Days' Notice Either | 7 |
| | D. The February 4 Letter From The City's Attorney Does Not Cure The City's Wrongful Termination Of The Construction Contract | 9 |
| | E. There Are No Genuine Issues Of Material Fact | 11 |
| III. | CONCLUSION AND RELIEF SOUGHT | 13 |

# TABLE OF AUTHORITIES

**Cases**
Affiliated Mfrs., Inc. v. Aluminum Co. of Am., 56 F.3d 521, 527-28 (3d Cir. 1995) .................... 3
Bank of Brewton, Inc. v. Int'l. Fid. Ins. Co., 827 So. 2d 747 (Ala. 2002) ................................. 5, 6
BioLife Solutions, Inc. v. Endocare, Inc., 838 A.2d 268, 278 (Del. Ch. Ct. 2003) ...................... 10
Composite Laminates, Inc. v. United States, 27 Fed. Cl. 310, 313 (Cl. Ct. 1992) ......................... 5
Enterprise Capital, Inc. v. San-Gra Corp., 284 F. Supp. 2d 166, 178 (D. Mass. 2003) ................ 10
Halifax Eng., Inc. v. United States, 915 F.2d 689, 690 (Fed. Cir. 1990) ....................................... 5
Liesener v. Weslo, Inc., 775 F. Supp. 857, 860 (D. Md. 1991) ...................................................... 3
Option Resource Group v. Chambers Dev. Co., Inc., 967 F. Supp. 846, 849 (W.D. Pa. 1996) ................................................................................................................................... 3
Rhone-Polenc Basic Chemicals Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1196 (Del. 1992) ............................................................................................................................. 11
Seaboard Sur. Co. v. Town of Greenfield, 266 F. Supp. 2d 189, 196 (D. Mass. 2003) ................. 5

**Other Authorities**
5 Bruner and O'Connor on Construction Law § 18:15..................................................................5

## I.   **INTRODUCTION**

Federal submits this reply brief in opposition to the Answering Brief of Defendants, City of Newark, its Mayor and City Council (collectively, the "City"), in Opposition to Federal's Motion for Summary Judgment ("Answering Brief") to address the City's unfounded arguments and mischaracterizations of the record.

It is now clear that the only issues remaining for the Court to decide are legal ones. The City points to the same handful of contractual provisions and correspondence relied upon by Federal in asserting its motion for summary judgment. It is the <u>legal</u> effect of these contractual provisions and letters that is now before the Court. It is clear that as a matter of law the City has failed to satisfy the terms of the Performance Bond.

As the City has acknowledged,[1] to satisfy the conditions for making a claim under the Performance Bond, the Owner had to:

> (1) Notify the Contractor and Surety that the Owner is considering declaring the Contractor in default;
>
> (2) Request and attempt to arrange a conference with the Contractor and Surety within 15 days of the receipt of the notice to discuss methods of performing the Construction Contract;
>
> (3) Wait at least 20 days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1 of the Performance Bond; and
>
> (4) Declare a Contractor Default and formally terminate the Contractor's right to complete the Construction Contract seven days after providing the required notice.

---

[1] The City's designated representative acknowledged that this four-step process "is an accurate description of the steps that Newark must take to terminate Durkin and assert a claim under the performance bond." <u>See</u> Houck Deposition ("Houck Dep."), attached at A-36 and A-37 in Federal's Reply Appendix, at 331:24 and 332:1-22.

The City has failed to satisfy steps two and four of the process to assert a claim under the Performance Bond. The City held a settlement meeting rather than a meeting to discuss methods of performing the Construction Contract, thereby skipping the second step. On February 3, 2004, the City communicated its immediate termination of Durkin's right to complete the Construction Contract without providing the requisite seven days' written notice, thereby failing to comply with step four. The City failed to satisfy these conditions precedent to coverage under the terms of the Performance Bond, and Federal is therefore entitled to judgment in its favor as a matter of law.

## II.   REPLY ARGUMENT

### A.   No Conference "To Discuss Methods Of Performing The Construction Contract" Was Ever Convened

Subparagraph 3.1 of the Performance Bond requires a conference "**to discuss methods of performing the Construction Contract**." See Performance Bond at ¶3.1 (emphasis added). Despite this language in the Performance Bond and the City's admission that "the Bond required that the City arrange a conference . . . to discuss methods of performing the construction contract,"[2] the City contends that the Performance Bond:

> "simply requires that a conference be convened and attended by representatives of the City, Durkin and Federal. *There are no further limitations contained in the Bond, or in caselaw [sic], on the nature of the conference.*"

Answering Brief at 9 (emphasis added). The City, therefore, argues that the settlement meeting convened on December 9, 2003 satisfied Subparagraph 3.1 of the Performance Bond. The City's argument fails for two reasons: (1) what took place at the December 9, 2003 meeting is inadmissible; and (2) as a matter of undisputed fact, the meeting was not a conference "to discuss

---

[2]   Answering Brief at 4.

2

methods of performing the Construction Contract" as required under the terms of the City's Performance Bond.

First, despite its request to convene a meeting "to discuss methods for DMD's faithful performance of this contract," the City – at the last minute – unilaterally and fundamentally changed that meeting into a *settlement conference*. The City's Agenda, provided at the inception of the meeting, provides that "**All conversations during the meeting shall be in the nature of settlement negotiations, and shall be inadmissible in any future proceeding**." See A-11 of Appendix to Federal's Motion (emphasis added). Because that conference was a settlement meeting (as the City's Agenda provides), the substantive discussions at that meeting are inadmissible for any purpose. See Affiliated Mfrs., Inc. v. Aluminum Co. of Am., 56 F.3d 521, 527-28 (3d Cir. 1995) (statements and conduct made in the course of settlement negotiations are inadmissible); Option Resource Group v. Chambers Dev. Co., Inc., 967 F. Supp. 846, 849 (W.D. Pa. 1996) (same). Because the Court cannot consider any discussions from the December 9, 2003 meeting in determining whether the City satisfied the requirements of the Performance Bond and there being no record evidence that the required conference ever took place, the Court must find that there are no genuine issues of material fact and enter judgment in favor of Federal as a matter of law. See Liesener v. Weslo, Inc., 775 F. Supp. 857, 860 (D. Md. 1991) (court should not consider statements made in settlement discussions in determining motion for summary judgment).

Second, assuming evidence of what transpired at the meeting were somehow admissible, the City's corporate designee has nevertheless acknowledged under oath that the December 9, 2003 meeting was a settlement meeting and not a meeting to discuss methods of performing the Construction Contract. Specifically, the City's corporate designee testified under oath that the

"overall completion" of the Construction Contract was not even discussed at the December 9, 2003 meeting. See Houck Dep., attached at A-43 in Federal's Reply Appendix, at 412:13-20. Therefore, it is undisputed that the meeting was not the conference "to discuss methods of performing the Construction Contract" as required under the terms of the City's Performance Bond.

The City cannot change these facts by arguing that Federal has admitted that the language of the November 21, 2003 letter tracked the language of Subparagraph 3.1 of the Performance Bond, thereby suggesting that such an admission is dispositive on this issue. The City misses the point of Federal's argument. Federal has never asserted that the required meeting was not **requested**, but has instead pointed out that the meeting required by the terms of the bond form selected by the City was never **convened**.[3] The City convened a settlement meeting and not a meeting to "discuss methods of performing the Construction Contract" as required by the terms of the Performance Bond.

### B. The November 21, 2003 Letter Does Not Constitute Seven Days' Notice Of Termination

In its Answering Brief, the City claims that the November 21, 2003 letter constitutes the City's notice that "a declaration of default was imminent," thereby suggesting that this letter somehow satisfied the seven days' notice requirement under the Performance Bond and Construction Contract. Answering Brief at 11. The City argues that this letter **simultaneously** satisfies two steps of the four-step process: step one – notice that the City is "considering declaring" a default – and step four – a declaration of a Contractor Default and formal

---

[3] In its Answering Brief, the City has admitted that the terms of Subparagraph 3.1 of the "Bond required that the City arrange a conference with Durkin and Federal within fifteen days to discuss methods of performing the construction contract." Answering Brief at 4. The City therefore recognizes the requirement under the Performance Bond for the City to hold a meeting "to discuss methods of performing the Construction Contract."

4

termination of the Construction Contract seven days after providing written notice.[4] This argument fails for three reasons.[5]

First, by its own terms, the November 21, 2003 letter does not satisfy step four. It does **not** constitute a declaration of default and is **not** a notice of intent to terminate Durkin's right to complete the Construction Contract. The letter claims to be merely a "**precautionary** letter." It states that the City is merely "**considering** declaring [Durkin] in default." See A-9 of Appendix to Federal's Motion. Obviously, if the City is only "**considering**" declaring Durkin in default and sending merely a "**precautionary**" letter, it is not **actually** defaulting Durkin.[6] The City's contention to the contrary contradicts the plain meaning of the words that it used in its letter. The City's letter:

- does **not** state that Durkin is in default;

---

[4] The City contends that "[i]n reading the construction contract and the Bond in concert there is nothing to prevent the November 21 Letter from functioning as notice under both documents." Answering Brief at 14. That contention is obviously false because the two referenced notices must be separated by at least 20 days.

[5] The City also suggests that there is no "magic language" that must be used in notices of default. Answering Brief at 11. While this might be true, there is no doubt that the seven days' notice of termination must be unequivocal. See Seaboard Sur. Co. v. Town of Greenfield, 266 F. Supp. 2d 189, 196 (D. Mass. 2003) (citations omitted) (declaration of default must "be made in terms sufficiently clear, direct and unequivocal" and "contractually required notices must always be clear and unambiguous in order to fulfill their intended purposes."). As Federal has established, the City's November 21, 2003 letter is not an unequivocal notice of an intent to terminate Durkin's right to complete the Construction Contract seven days' hence.

[6] The cases relied upon by the City in its Answering Brief are distinguishable from this case. First, the owners in those cases sent notices to the contractors expressly notifying the contractors that if they failed to cure the particular defaults, the owners would terminate the respective contracts within the contractually-specified cure periods. See Composite Laminates, Inc. v. United States, 27 Fed. Cl. 310, 313 (Cl. Ct. 1992) (owner notified contractor that government would terminate contract for default within ten days if defaults went uncured); Halifax Eng., Inc. v. United States, 915 F.2d 689, 690 (Fed. Cir. 1990) (same). These cases do not support the City's position that the November 21, 2003 letter somehow constituted seven days' written notice of an intent to terminate Durkin's right to complete the Construction Contract. As Federal has demonstrated, a proper cure notice must "describe the inadequate performance and must fairly advise [the contractor] that [the owner] considers the inadequate performance serious enough that, without prompt correction, **the contract will be terminated**." 5 Bruner and O'Connor on Construction Law § 18:15 (emphasis added). The City's "precautionary" November 21, 2003 letter merely states that the City is "considering declaring" a contractor default and fails to specify any contractually-mandated cure period. Second, none of these cases, unlike Bank of Brewton, Inc. v. Int'l. Fid. Ins. Co., 827 So. 2d 747 (Ala. 2002), deals with notice requirements under a bond form at issue in this case. See Composite Laminates, 27 Fed. Cl. at 312 (dispute between owner and contractor); Halifax Eng., 915 F.2d at 690 (same). These cases therefore cannot control the outcome of Federal's motion.

5

- does **not** declare any intention to terminate Durkin's right to complete the Construction Contract; and

- does **not** even include the word "terminate."

See id. The City simply cannot in the same "precautionary" letter in which it states that it is "considering declaring" a Contractor Default actually declare a default and provide seven days' written notice of termination.[7]

Second, the City's dual-purpose theory for the November 21, 2003 letter is theoretically, logically and practically impossible. The City asserts that the November 21, 2003 letter satisfied the first step of the process to assert a claim for coverage under the Performance Bond – notice that the City is considering declaring a contractor default. It obviously does so. The City now also contends that this letter simultaneously satisfied step four – declaration of a Contractor Default and formal termination of the Construction Contract seven days after providing written notice. It is, however, impossible for this one letter to satisfy steps one and four because **those steps must be separated by at least 20 days.**[8] See Performance Bond at ¶3.2.[9]

---

[7] The City's argument based on the so-called "trail of correspondence" exchanged between the City and Durkin does not change this result. None of the referenced letters were copied to Federal. All of them **precede** the November 21, 2003 letter, which the City contends constituted the requisite notice under the terms of the Performance Bond. And none of them constitutes the seven days' written notice required under the terms of the Performance Bond. This argument is also meritless.

[8] The City argues that there is no case law to support Federal's position with respect to the steps required to make a claim for coverage under the Performance Bond. The City suggests that because Bank of Brewton, Inc. v. Int'l. Fid. Ins. Co., 827 So. 2d 747 (Ala. 2002) somehow does not apply to this case. The City's claims, however, are simply wrong. The bond at issue in Bank of Brewton is virtually identical to the Performance Bond in this case. The Bank of Brewton court clearly outlined the proper procedure for declaring a contractor default under a performance bond like the Performance Bond at issue here. Those steps, like the very steps at issue in this case, cannot overlap as the City claims. To accept the City's argument would render moot and meaningless specific stand-alone requirements under the Performance Bond. Indeed, the Bank of Brewton case is so illustrative that Federal has attached a copy of the case as Exhibit "C" to its Reply Brief Appendix for the Court's convenience.

[9] Subparagraph 3.2 of the Performance Bond provides:

> 3.2. The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the Contract. **Such Contractor Default shall not be**

6

Third, in its recent deposition, the City admitted that the November 21, 2003 letter is **not** the seven days' written notice of its termination of Durkin's right to complete the Construction Contract. Specifically, the City's designee testified:

> Federal:   Okay. Well, my question was, and I think it could be fairly answered yes or no, is this [the November 21, 2003] letter formal termination of Durkin?
>
> Houck:     This is not the formal termination of Durkin letter, no, it is not.
>
> Federal:   Is this seven days' notice of termination of Durkin?
>
> Houck:     I believe that letter came later.
>
> Federal:   So this is not the seven-day notice letter to Durkin. Correct?
>
> Houck:     I don't believe so.

See Houck Dep., attached at A-39 in Federal's Reply Appendix, at 353:23-24 and 354:1-9. This binding admission directly contradicts the City's recent submission and should put an end to this argument.

### C. The February 3, 2004 Termination Letter Did Not Provide The Requisite Seven Days' Notice Either

The City hints that its February 3, 2004 letter somehow satisfied the seven day notice requirement under Section 15.2 of the Construction Contract. Answering Brief at 10. This contention is simply wrong.

On February 2, 2004 at 11:00 p.m., the City Council unanimously voted:

---

declared earlier than 20 days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1 . . . .

(emphasis added).

7

> That Donald M. Durkin Contracting, Inc. **be terminated immediately** from further involvement in the construction of the Newark Water Reservoir based on its refusal to perform under its Contract with the City of Newark; and that legal counsel for the City promptly and properly notify Donald M. Durkin Contracting, Inc. and the Surety of Durkin, of the termination and demand that said Surety fulfill its lawful obligations under its Bond with Durkin.

See A-12 of Appendix to Federal's Motion (emphasis added). The very next day, on February 3, 2004, the City sent a letter that communicated to Durkin and Federal exactly what the City Council unanimously did: terminate Durkin's right to complete the Construction Contract **immediately**. The February 3, 2004 letter provides:

> the City of Newark declares a Contractor default and **hereby formally terminates** [Durkin's] right to complete the [Construction Contract] . . . .

See A-14 of Appendix to Federal's Motion. There is clearly no other meaning to this letter but that Durkin's right to complete the Construction Contract is **immediately** terminated.

Indeed, the City has admitted as much in its response to Federal's motion. The City states that it "notified Federal and Durkin on February 3, 2004 of Durkin's default and formally terminated Durkin's Contract." Answering Brief at 5. There is not the slightest suggestion in this statement by the City or the February 3, 2004 letter that the termination is to occur seven days' hence.[10] Quite the contrary, in that very letter, the City also makes an **immediate** demand

---

[10] The City also suggests that timing of the February 3, 2004 letter was "reasonable." Answering Brief at 10. As Federal has demonstrated, this argument is completely false. The letter, which followed on the heels of City Council's immediate termination of Durkin's right to complete the Construction Contract, immediately and without any notice default terminated Durkin. This allegedly reasonable "timing" directly contradicts the express terms of both the Performance Bond and the Construction Contract.

8

on Federal to provide coverage under the Performance Bond.[11] That demand would clearly make no sense if this letter truly provided seven days' notice of termination in the future.

The February 3, 2004 letter itself indicates that **another** letter was meant to be the City's seven days' written notice to Federal and Durkin in accordance with the terms of the Performance Bond and Construction Contract. The February 3, 2004 letter provides:

> The City of Newark provided written notice of its intent to terminate Durkin on November 21, 2003, thereby satisfying the notice requirements under Article 15 of the Contract in addition to satisfying the notice requirements under the Bond.

See A-14 of Appendix to Federal's Motion. The February 3, 2004 letter obviously cannot function as the seven days' written notice of termination requirement because this letter states that some **other** letter purportedly fulfilled that requirement.[12]

### D. The February 4 Letter From The City's Attorney Does Not Cure The City's Wrongful Termination Of The Construction Contract

The City also suggests that the February 4, 2004 letter, authored by outside counsel, somehow "rectifies" the City's failure to give proper notice of the termination to Durkin and Federal. By that letter, the City's outside counsel (not even the City Solicitor) offered "to suspend the effective date of the termination letter for an additional seven days." This letter is of no moment for several reasons.

First, the decision to immediately terminate Durkin's right to perform the Construction Contract was never rescinded.[13] For that matter, the February 4, 2004 letter itself does not even

---

[11] The letter specifically states that "The Surety is obligated to take one of the actions enumerated in the Bond promptly." See A-14 of Appendix to Federal's Motion.

[12] Of course, for the reasons stated above, the November 21, 2003 letter fails in this regard.

[13] See Houck Dep., attached at A-41 in Federal's Reply Appendix, at 391:12-17 (City Council's vote terminating Durkin was never rescinded); Kalbacher Deposition, attached at A-47 in Federal's Reply Appendix, at 131:4-9.

9

purport to rescind the City Manager's letter of the day before. The February 4, 2004 letter merely seeks to "suspend" the termination for a period of time. Even if the City Council could perform such a unilateral feat (the City cites no legal authority for this proposition),[14] the fact remains that no such action to rescind the termination was ever taken by City Council. Instead, the City merely cites its outside counsel's letter purportedly offering to "to suspend the effective date of the termination letter for an additional seven days" as support for its argument.

Second, the Construction Contract had already been materially breached by the City's failure to comply with the seven days' notice provision. Enterprise Capital, Inc. v. San-Gra Corp., 284 F. Supp. 2d 166, 178 (D. Mass. 2003) (failure to comply with seven days written notice provision constituted material breach of construction contract). Therefore, any further performance obligation (including any obligation to accept or even recognize this offer from the City's outside attorney) had been discharged. Id.; see also BioLife Solutions, Inc. v. Endocare, Inc., 838 A.2d 268, 278 (Del. Ch. Ct. 2003) (citation omitted) ("A party is excused from performance under a contract if the other party is in material breach thereof.") Thus, even if the **City Council** itself had offered to rescind the termination (which it clearly could not and, in any event, did not do), Durkin was under no obligation to accept such an offer due to the City's prior material breach of the Construction Contract and its commission of an Owner Default under the Performance Bond.

The February 4, 2004 letter from the City's litigation counsel had no legal effect on the issues before this Court. Rather than serving to "rectify" the City's error, the February 4, 2004 offer by the City's outside counsel to "suspend the effective date of the termination letter"

---

[14] The City has admitted that "a Council vote was required to terminate the Contract." See D.I. 45 at 11 n.1.

10

underscores the materiality of the City's failure to provide the required seven days' notice prior to default terminating Durkin's right to complete the Construction Contract.

### E. There Are No Genuine Issues Of Material Fact

As set forth above, there are no genuine issues of material fact to preclude the entry of summary judgment in Federal's favor. The City suggests that in paragraph 34 of Federal's motion, Federal somehow raises an issue of fact by claiming that it was not advised of the particular defaults that had to cured. The City also argues that "any apparent contradiction" created by its own November 21, 2003 and February 3, 2004 letters purportedly creates an issue of material fact. These arguments are meritless.

First, paragraph 34 of Federal's motion states that in order to constitute the requisite seven day notice prior to termination, the City must "provide a detailed notice that apprises Durkin and Federal of the particular defaults that must be cured **and of the City's actual intention to terminate Durkin's right to complete the Construction Contract in seven days.**" See Federal's Motion at ¶34 (emphasis added). As set forth in detail above, the November 21, 2003 letter does nothing of the kind. There is no genuine issue. The letter does not comply with the terms of the Performance Bond.

Second, any "apparent" contradiction between the City's own documents is of no consequence to Federal's motion. Any ambiguity purportedly created by the City's letters must be construed against the City, as the drafter of those documents. See Rhone-Polenc Basic Chemicals Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1196 (Del. 1992) (ambiguity in language construed most strongly against drafter). Furthermore, there is no ambiguity in these letters. Neither the November 21, 2003 or February 3, 2004 letter provides the requisite seven days' written notice of termination. The letters are both quite clear. There is no genuine issue of

11

material fact left for this Court to resolve, and summary judgment is properly entered in Federal's favor.

## III.  CONCLUSION AND RELIEF SOUGHT

For the reasons set forth above and in Federal's Motion and Opening Brief, which are incorporated herein by reference, Federal respectfully requests that the Court grant its Motion and enter summary judgment in its favor and against the City on the City's Third-Party Complaint.

        Respectfully submitted,

        /s/
        STRADLEY, RONON, STEVENS & YOUNG, LLP
        Kevin W. Goldstein, Esquire
        Delaware Bar No. 2967
        300 Delaware Avenue, Suite 800
        Wilmington, DE 19801
        (302) 576-5850
        (302) 576-5858 Fax

        Samuel J. Arena, Jr., Esquire (pro hac vice)
        Patrick R. Kingsley, Esquire (pro hac vice)
        David M. Burkholder, Esquire (pro hac vice)
        2600 One Commerce Square
        Philadelphia, PA 19103-7098
        (215) 564-8000
        (215) 564-8120 Fax

        Attorneys for Third-Party Defendant,
        Federal Insurance Company

## CERTIFICATE OF SERVICE

I, Kevin W. Goldstein, Esquire, do hereby certify that on March 31, 2006, I caused a copy of the Reply Brief of Third-Party Defendant, Federal Insurance Company, in Support of Federal's Motion for Summary Judgment to be served via overnight delivery and electronic filing upon the following:

Paul A. Logan, Esquire
David T. Bolger, Esquire
POWELL, TRACHTMAN, LOGAN,
CARLE & LOMBARDO, P.C.
475 Allendale Road, Suite 200
King of Prussia, PA 19406
*Attorneys for Plaintiff,*
*Donald M. Durkin Contracting, Inc.*

Paul Cottrell, Esquire
Victoria K. Petrone, Esquire
TIGHE, COTTRELL & LOGAN, P.A.
704 N. King Street
P.O. Box 1031
Wilmington, DE 19899
*Attorneys for Defendants,*
*City of Newark, Harold F. Godwin,*
*John H. Farrell, IV, Jerry Clifton,*
*Karl G. Kalbacher, David J. Athey,*
*Frank J. Osborne, Jr., and Christina Rewa*

James S. Green, Esquire
George H. Seitz, III, Esquire
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
Wilmington, DE 19899
*Attorneys for Defendant,*
*URS Corporation*

/s/_____
Kevin W. Goldstein

462911