# EXHIBIT B

Case 1:04-cv-00163-GMS    Document 137-3    Filed 05/03/2006    Page 1 of 14



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1609761 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Mumia ABU-JAMAL, Petitioner,
v.
Martin HORN, Commissioner of the Pennsylvania Department of Corrections, and Connor Blaine, Superintendent of the State Correctional Institution at Greene, Respondents.
No. CIV. A. 99-5089.

Dec. 18, 2001.

Memorandum and Order

YOHN, J.

*1 On July 2, 1982, petitioner was convicted in the Court of Common Pleas of Philadelphia County of the murder of police officer Daniel Faulkner. His conviction was affirmed on direct appeal, see *Commonwealth v. Abu-Jamal,* 521 Pa. 188, 555 A.2d 846 (Pa.1989), *reh'g denied* 524 Pa. 106, 569 A.2d 915 (Pa.1990), and his efforts to obtain post-conviction relief from the Pennsylvania courts were unsuccessful. On October 15, 1999, Jamal filed in this court a timely petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. Since its inception this matter has negotiated a tortuous procedural course, and this pattern continues today. In the most recent twist of events, petitioner moved this court on August 6, 2001 for leave to redraft and amend his petition, 22 months after its original filing and well after the close of briefing.

Jamal now alleges that from the outset of their representation of him during the state court habeas proceedings, his privately retained post-conviction counsel-specifically chief counsel Leonard Weinglass and chief legal strategist Daniel R. Williams-failed to present an adequate defense. He claims that such an effort would have required them "to take on the Philadelphia police and the endemic and extreme corruption which pervaded the Philadelphia police in the early 1980s in a way in which they were simply unwilling to do." Petitioner's Motion for Leave to Redraft and to Amend the Petition for Habeas Corpus Relief Pursuant to 28 U.S.C. § 2254 ("Pet.'s Motion") ¶ 5. Jamal alleges that based on their fears for their physical safety and reputational concerns, Weinglass and Williams repeatedly failed to investigate and present evidence tending to indicate his innocence. *Id.* ¶¶ 6-30. Not only did self-interest guide this non-feasance on the part of his legal team, according to petitioner, but it also allegedly was responsible for affirmative misfeasance on their part. Specifically, he asserts that their "final act of betrayal," *id* . ¶ 31, 569 A.2d 915, was the publication by Williams of a book entitled "Executing Justice," an inside account of Jamal's case. Petitioner contends that this book demonstrates Williams's abuse of his relationship with Jamal for his pecuniary gain, and also that the book served as an "apologia for the deceit which [Williams and Weinglass] had practiced on the Petitioner." *Id.*

> FN1. The precise basis for this contention is that, according to Jamal, Officer Faulkner was murdered by Arnold Beverly, an assassin who acted at the direction of elements within organized crime in Philadelphia. Indeed, as more fully explained in my opinion of July 20, 2001, see *Abu-Jamal v. Horn,* 2001 WL 827468, at *1 (E.D.Pa. July 20, 2001), Jamal filed with this court a declaration from Beverly to the effect that Beverly, "along with another guy, [was] paid to shoot and kill Faulkner." Jamal asserts that Faulkner was probing into corrupt dealings between organized crime and the Philadelphia police, and that his murder was effected to silence him. For Williams and Weinglass to similarly investigate these dealings, petitioner's theory goes, would have subjected them too to danger, both professionally and personally. *See* Pet.'s Motion ¶¶ 4-5.

Upon reading "Executing Justice," Jamal fired Weinglass and Williams, the withdrawal of whom from

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

petitioner's representation was approved by an order of this court dated April 6, 2001. Petitioner then privately hired a new legal team, the members of which were admitted to the bar of this district pro hac vice between May 16, 2001 and July 5, 2001. Jamal now moves for leave to redraft and amend his Petition for Habeas Corpus Relief Pursuant to 28 U.S.C. § 2254. This is necessary, he asserts, because of inadequacies in both the depth and breadth of the original petition that resulted from Weinglass and Williams' conflict of interest. He requests a hearing and oral argument on his motion and to be relieved of any page limitations on his amended petition.

*2 In his Proposed First Redrafted and Amended Petition for Habeas Corpus Relief Pursuant to 28 U.S.C. § 2254 ("proposed amended petition"), which exceeds 600 pages and 1340 numbered paragraphs in length, petitioner advances thirty-nine claims for relief. Yet for purposes of the court's analysis, these claims must be subdivided into four distinct groups. The first group consists of claims 1 through 29, which are identical in title to those raised in his original petition. The substance of proposed amended claims 1 through 29-i.e. the assertions offered in their support-however, is in many cases vastly more copious than that of their original counterparts. The second group consists only of claim 30, a Sixth Amendment challenge to the denial of petitioner's request for the assistance of his friend, John Africa, at trial. I denied an identical motion in an order dated July 25, 2001, and consequently proposed amended claim 30 will be treated as a request for reconsideration of that order. The third group also is made up of only one claim, claim 31, in which petitioner alleges his actual innocence based upon the confessional declaration of Arnold Beverly. The fourth group is comprised of claims 32-39, which, along with the aforementioned John Africa and actual innocence claims, are the only claims contained within the proposed amended petition that are not, at least in title, included within the original petition. These claims are based upon various inadequacies in the representation provided by Weinglass and Williams, and when amalgamated, they advance a claim that at the PCRA stage of these proceedings Jamal "was subjected to a constructive denial of counsel under *Cronic v. United States* [, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) ]." Pet.'s Motion ¶ 679.

### Groups One and Four

It is true that differences exist between groups one and four; while the claims in group one purport to add factual support to their original counterparts, those in group four are novel in both title and substance. However, under the law governing the amendment of habeas corpus petitions, they are to be evaluated under the same standard.

> FN2. Petitioner moves both to "redraft" and to "amend" the original petition. In reality, however, petitioner wishes to amend the petition with both additional facts in support of existing claims 1-29 and with non-original claims 32-39. Under governing Third Circuit precedent, whether the material sought to be added to a petition is additional factual support for an existing claim, or an entirely new theory or claim, that material constitutes an amendment to the original petition. *See United States v. Thomas*, 221 F.3d 430, 435 (3d Cir.2001). Indeed, petitioner does not separately discuss legal arguments in favor of redrafting the petition as distinct from arguments in support of its amendment. Accordingly, the effort to add both the first and fourth groups of proposed amended claims will be evaluated pursuant to the standards governing the amendment of habeas corpus petitions.

In assessing petitioner's effort to have both groups of claims considered by the court it is necessary to be mindful of two somewhat contradictory legal provisions. First, under Federal Rule of Civil Procedure 15(a), leave to amend a pleading after the filing of a responsive pleading, though subject to the court's discretion, is to "be freely given when justice so requires." Fed.R.Civ.P. 15(a); *Werner v. Werner*, 267 F.3d 288, 296 (3d Cir.2001) ( "Rule 15 provides a flexible 'basic policy statement' allowing courts freely to allow parties to amend their pleadings." (quoting 6

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                 Page 3
Not Reported in F.Supp.2d, 2001 WL 1609761 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Wright, Miller, & Kane, Federal Practice & Procedure § 1474 (2d ed 1990))). The operative rationale is to provide litigants with the maximum opportunity to have their claims decided on their merits, as opposed to having them prematurely dismissed on procedural grounds. 6 Wright, Miller, & Kane, Federal Practice & Procedure § 1471 (2d ed 1990). This flexibility is further embodied in the "relation back" doctrine, codified in Fed.R.Civ.P. 15(c). The idea underlying this provision is that even where the proposed amendment would transpire after the expiration of the pertinent statute of limitations, that statute "will not bar an amendment when 'the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.' Fed.R.Civ.P. 15(c)(2). In that case, the amendment is said to 'relate back' to the date of the original pleading." Belle v. Varner, 2001 WL 1021135, at *9 n. 11 (E.D.Pa. Sept.5, 2001) (quoting Fed.R.Civ.P. 15(c)(2)).

*3 Second, the legal lens through which Jamal's motion must be considered is informed most significantly by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132 § 1047, 110 Stat. 1214. Under the AEDPA, a one year limitations period applies to petitions for writs of habeas corpus brought by persons in custody pursuant to an order of a state court. 28 U.S.C. § 2244(d). As is apparent from even a cursory reading of the two provisions, Fed.R.Civ.P. 15 and the AEDPA are in some degree of tension, as the policy of liberally granting leave to amend threatens to undermine "the interest of Congress that [habeas corpus] claims ... be advanced within one year after a judgment of conviction becomes final...." United States v. Duffus, 174 F.3d 333, 337 (3d Cir.1999).

The reconciliation of these seemingly contradictory provisions has been the objective of two recent opinions issued by the Third Circuit. In Duffus, following the expiration of the AEDPA's one year limitations period, the defendant sought to amend his original habeas petition, which featured a claim of ineffective assistance of counsel, by adding another ineffectiveness claim sounding in a wholly different alleged omission by Duffus's trial counsel. See id. at 335. The court of appeals held that although the district court "could have permitted an amendment to *clarify* a claim initially made," the claim that Duffus wished to add to his § 2255 motion was "completely new," and therefore it could not be considered "timely under the 'relation back' provisions of Fed.R.Civ.P. 15(c)." Id. at 337 (emphasis added). The import of *Duffus* is thus that the relation back doctrine is inapplicable in the habeas context where the proposed amendment seeks to advance a new claim or theory rather than clarifying existing claims.

> FN3. It is true that both *Duffus* and *United States v. Thomas*, 221 F.3d 430 (3d Cir.2000), featured claims brought by federal prisoners pursuant to 28 U.S.C. § 2255. However the dichotomy established in *Duffus* between new claims and the clarification of old claims, like the subsequent jurisprudence establishing the contours and implications of that dichotomy, is equally applicable to petitions for writs of habeas corpus brought by state prisoners pursuant to 28 U.S.C. § 2254. Indeed, the tension between Federal Rule of Civil Procedure 15 and the AEDPA's one year limitations period transcends the distinction between § 2254 and § 2255, as that period is applicable in actions brought pursuant to both sections. 28 U.S.C. § 2244(d)(1); 28 U.S.C. § 2255; *Davis v. United States*, 417 U.S. 333, 344, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) ( "[T]here can be no doubt that the grounds for relief under § 2255 are equivalent to those encompassed by § 2254."); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 815-16 (2d Cir.2000) ("The reasoning of the *Thomas* court in the context of § 2255 petitions applies equally to § 2254 petitions. Sections 2254 and 2255 are generally seen as *in pari materia*. ... We conclude that, with regard at least to the timeliness of motions for leave to amend, the two statutes remain equivalent....").

A little over a year after the *Duffus* decision was handed down, our Court of Appeals addressed a related question in *United States v. Thomas*, 221 F.3d 430 (3d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1609761 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

Cir.2000). There, subsequent to the expiration of the one year statute of limitations, the defendant sought leave to amend a § 2255 petition to allege facts in support of the conclusory claims that constituted the entirety of his timely-filed habeas petition. In essence, this was the converse of the facts at bar in *Duffus;* the amendment was sought not to add a new claim or theory, but rather to "clarify a claim initially made," as the *Duffus* court had put it. So, the issue to be resolved in *Thomas* was whether "*Duffus's dictum* regarding the applicability of Rule 15(c) to a § 2255 petition should become the law of this Circuit." *Thomas,* 221 F.3d at 435. The court concluded that it should.

In support of this conclusion, the *Thomas* court harmonized the rationale underlying statutes of limitations generally with the liberal approach to amendment manifested in Fed.R.Civ.P. 15. It did so by focusing upon Rule 15(c) as demarcating a middle ground between the two. 221 F.3d at 435-36. While limitations periods require that a party may not assert new claims or theories following their expiration, under Rule 15(c) the litigant may "relate back" to the original petition amended claims that are transactionally linked to those contained within that pleading. *See id.* at 436. In so doing, he provides the court with a basis for making the most informed judgment possible on the claims that he raised in a timely fashion, as the spirit and language of Rule 15(a) require, without violating the mandate that he raise all transactionally distinct claims within the limitations period.

*4 Importantly, the *Thomas* court refused to draw a distinction between limitations periods generally and that contained within the AEDPA. *See id.* ("The one-year period of limitations contained in the AEDPA is a statute of limitations like any other statute of limitations in a civil proceeding." (citing *Kapral v. United States,* 166 F.3d 565, 567 (3d Cir.1999))). Thus, subject to the numerous limitations posed by the AEDPA, in habeas cases as in all other civil contexts the relation-back doctrine applies, and a claim that otherwise would be barred as untimely under the AEDPA's one year limitations period may be added to a pleading via amendment so long as the criteria articulated in Fed.R.Civ.P. 15(c) are satisfied.

When synthesized, these holdings yield a workable standard for determining whether a claim that is sought to be amended to an existing habeas petition relates back to the original filing within the meaning of Fed.R.Civ.P. 15(c). As stated in *Thomas,* "a District Court may, in its discretion, permit an amendment to a petition *to provide factual clarification or amplification* after the expiration of the one-year period of limitations, as long as the petition itself was timely filed and the petitioner does not seek to add an entirely new claim or new theory of relief." 221 F.3d at 436 (emphasis added). This approach to the relation back doctrine is well-formulated because it is consonant with the conciliatory spirit of Rule 15(c). Specifically, it incorporates a recognition that "the touchstone of Rule 15(c) is notice." *Anthony v. Cambra,* 236 F.3d 568, 577 (9th Cir.2000); *see also United States v. Craycraft,* 167 F.3d 451, 457 (8th Cir.1999), cited with approval in *Duffus,* 174 F.3d at 337 ("We find *Craycraft* to be a compelling precedent."). Where the effect of an amendment is the factual clarification of existing claims, the government "has been given all the notice that statutes of limitations were intended to provide," *Craycraft,* 167 F.3d at 457 (citation omitted), and the amendment consequently is permissible. Yet where the proposed amendment advances new claims or theories, it cannot be said that the original petition ... provide[s] notice of such a different sort of theory. Therefore, the amendment cannot relate back under Rule 15(c) and it must be time barred." *Id.*

In sum, *Duffus* and *Thomas* instruct that the critical inquiry in the context of any motion to amend a habeas petition following the expiration of the statute of limitations is whether the proposed amended claims constitute new claims or theories, or whether they instead merely clarify or amplify those contained within the original petition.

*Group One*

As applied to the instant case, these principles might appear at first glance to indicate that I should permit the amendment of proposed amended claims 1-29 to the original petition. In fact the titles of these claims are the same in the original and proposed amended

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1609761 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

petitions. Initially, then, it is necessary to consider the possibility that proposed amended claims 1-29 merely clarify or amplify those contained within Jamal's initial pleading, and consequently relate back under Fed.R.Civ.P. 15(c) as interpreted by the Third Circuit in *Thomas*.

> FN4. It is undisputed that the statute of limitations had run as to these claims at the time of the filing of the proposed amended petition.

*5 There are, however, important differences between most of the proposed amendments at issue here and those that confronted the *Thomas* court. In that case the petitioner's initial pleading was, as discussed above, a skeletal series of legal claims, devoid of factual substantiation. 221 F.3d at 431-32. Thomas's post-limitations amendments constituted the meat that was missing from his bare-bones original pleading. By contrast, Jamal's initial petition is anything but bare-bones. It is 159 pages long, spans more than 600 numbered paragraphs, and as mentioned, advances 29 distinct claims. In addition, it is supported by briefs submitted by petitioner that total 250 pages. Moreover and more importantly, unlike those in *Thomas*, nearly all of Jamal's proposed amended claims attempt to add either too much or nothing at all to the original petition.

For the sake of analytical clarity, I will subdivide the claims within group one into two categories: (1) those that account for most of the extra volume in proposed amended claims 1-29 by asserting completely new bases for relief; and (2) those that essentially are unchanged between the original and proposed amended petitions. With the exception of proposed amended claim 25, each one of proposed amended claims 1-29 falls within one of these two categories.

> FN5. Indeed, the divergence between the instant facts and those at issue in *Thomas* is highlighted by the fact that proposed amended claims 1-29, taken together, include nearly all of the numerous contentions that were advanced in their original counterparts plus a great deal of new evidence and several new arguments and legal theories. Whereas the original claims 1-29 spanned 137 pages, proposed amended claims 1-29 are set forth over 241 pages.

As an example of a claim falling within the first category, which includes proposed amended claims 1, 2, 3, 4, 6, 13, 16, 21 and 29, consider proposed amended claim 1. As evidenced by both its volume and substance, this claim-like the others within this category-attempts to do significantly more than merely clarify or amplify its original counterpart. Rather, it is actually a new claim under an old title.

> FN6. This claim reads as follows: "The state manipulated two purported eyewitnesses to falsely identify Jamal as the shooter, in violation of his Fifth, Eighth, and Fourteenth Amendment rights." Proposed Amended Petition at 143.

As far as the volume of material within this claim is concerned, the original claim 1 began on page 21 with paragraph 58, and ended on page 27 with paragraph 95. In its amended form, the explication of this claim requires 49 pages. While this claim too begins and ends with paragraphs 58 and 95 respectively, this is deceiving because proposed amended paragraph 77 actually spans paragraphs 77.1 to 77.94, and paragraph 95 becomes 95.1-95.77. In short, proposed amended claim 1 adds 43 pages and 171 paragraphs to the original claim 1. Juxtaposing the difference between Jamal's original and amended claim 1s against the difference between the original and amended petitions in *Thomas* thus yields a striking contrast to say the least.

Whether or not such a voluminous addition to an already rich pleading ever could merely amplify or clarify the existing petition, this certainly is not what proposed amended claim 1 substantively accomplishes. Probably the most compelling evidence of this is the fact that the Beverly evidence appears in at least eight separate places as support for this claim. Proposed Amended Petition ¶¶ 77.1, 77.6, 77.31, 77.74, 77.75,

95.1, 95.6 and 95.26. Yet *Thomas* dictates that Jamal may not amend his petition to include new claims based upon this evidence, as it in no way relates to the original petition. Indeed, the very essence of petitioner's argument as to why he should be permitted to include this evidence via amendment is that "[t]he factual predicate arising from Arnold Beverly's testimony could not previously have been discovered by the Petitioner through the exercise of due diligence." Pet.'s Motion ¶ 30. The government, then, cannot be said to have been afforded notice by Jamal's initial pleading of the fact or nature of the claims contained in the proposed amended petition that are based on the Beverly evidence. *See Anthony,* 236 F.3d at 577 ("[T]he touchstone of Rule 15(c) is notice."). To permit the amendment of the original petition to encompass this evidence, regardless of the title of the claim in support of which it is advanced, would thus be to allow Jamal to make an end run around the statute of limitations contained within the AEDPA, a result against which the Third Circuit has admonished. *Duffus,* 174 F.3d at 337-38; *Holman v. Gillis,* 88 F.Supp.2d 378, 385 n. 10 (E.D.Pa.2000).

> FN7. This is not to say that the AEDPA provides no mechanism for asserting claims premised upon exculpatory evidence that is newly discovered. As discussed more fully below, *see infra* at 25, the fact is simply that amendment pursuant to Fed.R.Civ.P. 15, is not the proper avenue through which this endeavor should proceed.

*6 This is not to say that every claim within the first category incorporates the Beverly evidence; aside from claim 1 only proposed amended claims 2 and 4 rely in significant part on the Beverly declaration. *See* Proposed Amended Petition ¶¶ 97.2, 97 .7, 122.1, 149.1, 160.14, 160.15, 193.1, 200.11, 200.24, 200.34. Instead, as stated, proposed amended claim 1 is generally representative of the way in which the claims within the first category are predicated upon supporting statements that do not relate back to the original petition.

> FN8. Proposed amended claim 2 also relies on assertions as to the constructive denial of counsel effected by Weinglass and Williams' representation. *See* Proposed Amended Petition ¶¶ 102, 129.1, 137, 160.

As an example of a claim based on assertions not involving the Beverly evidence that does not relate back to the original petition, consider proposed amended claim 29. The bulk of this claim is a verbatim reproduction of the original claim 29, with two notable exceptions. First, while the original petition contained allegations regarding a pro-law enforcement bias and a personal distaste for petitioner displayed by Judge Sabo at trial, Jamal's proposed amended petition advances claims that it was not merely a general pro-prosecution or an "anti-Jamal" bias that motivated Sabo's actions. Rather, he asserts, a general "racist prejudice against Black people" bore responsibility for his conduct. Proposed Amended Petition ¶¶ 664.1-664.11. Petitioner specifically contends that this particular bias was responsible for the denial of his request for the assistance of John Africa at trial, *see id.* ¶ 664.5, and for Sabo's alleged direction of a verdict of death. *See id.* ¶ 664.9-664.10. Second, Jamal asserts that the conflicts of interest that afflicted Weinglass and Williams prevented them from effectively representing him in the PCRA proceedings before Judge Sabo. *See id.* ¶¶ 677.1-677.2.

> FN9. This claim alleges that "Jamal was denied due process by an unfair state post-conviction hearing proceeding."

While these assertions, at least those regarding Sabo's purported prejudices, are not wholly dissimilar to those contained within the original petition, they are insufficiently related to come within the ambit of Fed.R.Civ.P. 15(c). Indeed it is one thing for a judge to favor the police or to disfavor an individual; it is quite another for him to be guided by racial animus. While neither is excusable, these are distinct allegations the substantiation of which would entail widely divergent evidentiary showings. Nothing within Jamal's initial petition put the government on notice that it would have to investigate Judge Sabo's racial attitudes. Consequently, under the principles articulated above,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

these assertions cannot be said to relate back to Jamal's initial petition. *See generally Duffus,* 174 F.3d at 336 (holding that one ineffectiveness claim does not relate back to a different, original ineffectiveness claim).

> FN10. In his original petition Jamal alleged that Sabo's biased handling of the trial was the result of a personal distaste for him, a pro-police and prosecution leaning, and his continuing fidelity to the fraternal order of police. *See* P1 ¶¶ 631-64.

Like proposed amended claims 1, 2 and 4, then, claims 3, 6, 13, 16, 21 and 29 cannot be amended to Jamal's initial pleading under *Thomas.*

> FN11. Accordingly, petitioner's supplement to his twenty-ninth claim for relief in petition for writ of habeas corpus (Doc. # 116) will be stricken.

Excluding proposed amended claim 25, the remaining claims within group one add nothing of substance to, or are less inclusive than, their original counterparts. Included within this category are proposed amended claims 5, 7-12, 14, 15, 17-20, 22-24 and 26-28. I will assume without deciding that these claims do relate back within the meaning of *Thomas,* yet I will decline to exercise my discretion to permit the amendment of these proposed claims to that initial pleading. *See Cureton v. Nat'l Collegiate Athletic Ass'n,* 252 F.3d 267, 272 (3d Cir.2001) ("[A] motion for leave to amend a complaint [is] addressed to the sound discretion of the district court."); *Lake v. Arnold,* 232 F.3d 360, 373 (3d Cir.2000) (noting that "[w]hile a District Court has substantial leeway in deciding whether to grant leave to amend," it must justify a refusal of this type of request). In this case, because nothing would be added by petitioner's proposed amendments, to allow these amendments would be pointless, and under these circumstances, despite the liberal approach toward amendments embodied in Fed.R.Civ.P. 15(a), there simply is no reason to permit them. *See generally Schuldiner v. K-Mart Corp.,* 1994 WL 665568, at *1 (E.D.Pa. Nov.18, 1994) ("While leave to amend a complaint should ordinarily be granted as a matter of course, it is nevertheless appropriate to deny leave to amend if the proposed amendment would be pointless.").

> FN12. This is not to say that each of the claims within this category are verbatim reproductions of their original counterparts. While some do fit this description, others include relatively minor differences in phraseology, and provide nothing that would in any real sense expand the scope of the court's consideration.

> FN13. I note that proposed amended claims 18 and 21, unlike their original counterparts, reproduce as evidentiary support portions of the transcripts of the pre-trial voir dire and the PCRA hearing, respectively. *See* Proposed Amended Petition ¶¶ 501.1, 528.01-528.41. While claim 21 also contains new legal claims and theories that preclude it from relating back, claim 18 does not. Yet it would be pointless to amend these claims to the initial petition, because as transcripts of the state court proceedings in Jamal's case, they are already of record in the instant matter. *See generally Whiting v. United States,* 29 F.Supp.2d 25, 27 (D.Mass.1998) (denying the petitioner's request for an evidentiary hearing on his motion for leave to amend where he he had not demonstrated a likelihood of producing "additional evidence, *beyond that already of record in the proceeding,* likely to affect the outcome") (emphasis added).

*7 Thus, the petitioner's motion for leave to amend his petition with claims 1-24 and 26-29 will be denied.

> FN14. Omitted from the preceding discussion is proposed amended claim 25. This claim meets the standard set forth in *Thomas,* and under most circumstances, the amendment of this proposed amended claim would be warranted. *See* Proposed Amended Claim ¶¶

Not Reported in F.Supp.2d                                                                                                           Page 8
Not Reported in F.Supp.2d, 2001 WL 1609761 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

600 .1-600.6. Nonetheless, I will deny petitioner's motion as to this claim because given the court's disposition of his original claim 25 on this date, it simply would be pointless to permit its amendment.

*Group Four*

The analysis of claims 32-39, by contrast, does not necessarily require a straightforward application of *Thomas* and *Duffus*. After all, recourse to the relation back doctrine is necessary in the habeas context only when the proposed amendment follows the expiration of the statute of limitations contained in 28 U.S.C. § 2244(d)(1). Petitioner contends that the instant motion was filed well within that period, as immediately upon learning of the purported malfeasance of Weinglass and Williams, which due diligence could not have disclosed earlier, he retained new counsel who immediately prepared claims 32-39. Accordingly, his argument goes, under 28 U.S.C. § 2244(d)(1)(D), his motion is timely. Pet.'s Motion ¶¶ 128-32. To either disprove or substantiate this contention would require the court to venture into an evidentiary thicket which might well never yield an unambiguous conclusion. For purposes of my analysis today, therefore, I will assume without deciding that the statute of limitations had not expired prior to petitioner's assertion of claims 32-39. The corollary of this assumption is that Fed.R.Civ.P. 15(a) is the standard governing the determination of whether leave to amend should be granted.

Although that provision embodies a liberal approach to the amendment of pleadings, it is well-settled that leave to amend may be denied when the amendment would be futile as a matter of law. *Lake,* 232 F.3d at 373 ("While ... Rule [15(a)] ... requires that leave to amend should be 'freely given,' a district court has the discretion to deny this request if it is apparent from the record that ... (2) the amendment would be futile .... " (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962))).

Here, the problem with petitioner's claims as to the shortcomings of the representation provided by Weinglass and Williams at the PCRA stage of this case is that there is no Sixth Amendment right to counsel at state post-conviction proceedings. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *Coleman v. Thompson,* 501 U.S. 722, 725, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("Because there is no constitutional right to an attorney in state postconviction proceedings, *see, e.g., Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 [ (1987) ], a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings ....") (citation omitted); *Lines v. Larkins,* 208 F.3d 153, 165 (3d Cir.2000). Accordingly, no matter how deficient that representation was, it can not form the basis for habeas corpus relief, which is available only where a conviction has been obtained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Dickerson v. United States,* 530 U.S. 428, 439 n. 3, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). This is so even where the allegation fueling the ineffectiveness claim concerns an actual conflict of interest on the part of PCRA counsel such that it might warrant relief pursuant to *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), were trial counsel's actions at issue. Indeed, I previously have held as such during the course of this litigation. See *Abu-Jamal v. Horn,* 2001 WL 1231822, at *4 (E.D.Pa. Oct.16, 2001) (holding that petitioner could not advance a *Cronic* claim pertaining to an alleged conflict of interest on the part of state post-conviction counsel because "there is no constitutional right to an attorney in state post-conviction proceedings" (quoting *Coleman,* 501 U.S. at 752). It consequently would be futile for Jamal to amend his petition to include claims 32-39.

> FN15. Petitioner contends that the right to effective representation of counsel is guaranteed under Pennsylvania law, and in this he is correct. *Lines,* 208 F.3d at 165 ("Under Pennsylvania law [petitioner] could attempt to challenge the stewardship of PCRA counsel even though he is not guaranteed the right to counsel to collaterally attack his conviction under the United States

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1609761 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 9

Constitution."); *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 700 (Pa.1998). Yet he is incorrect in asserting that the denial of this state law right "violates federal guarantees of due process and equal protection of the law," Pet.'s Motion ¶ 118, and consequently is a viable basis for relief pursuant to 28 U.S.C. § 2254. It is incontrovertibly established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief. *Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' " (quoting *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990))).

**\*8** Petitioner apparently anticipates this problematic aspect of his argument, and, interestingly, further contends that not only was his PCRA representation inadequate in the sense that would give rise to a Sixth Amendment claim if it was, for example, the conduct of trial counsel that was in question, but rather that the misfeasance of Weinglass and Williams was so egregious that they "assumed the mantle of prosecutor in this case." Pet.'s Motion ¶ 115. Accordingly, Jamal asserts, their conduct may legitimately be considered state action giving rise to a Fourteenth Amendment procedural due process claim. In support of this contention petitioner cites several cases, including *Rickman v. Bell,* 131 F.3d 1150, 1156-57 (6th Cir.1997), *Georgia v. McCollum,* 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) and *Faretta v. California,* 422 U.S. 806, 820-21, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Yet not one of these holdings actually provides support for Jamal's Fourteenth Amendment argument.

In *Rickman,* the Sixth Circuit recounted a truly shocking deprivation of the defendant's Sixth Amendment right to counsel, and in so doing referred to the defense attorney as a "second prosecutor." 131 F.3d at 1157. Yet the value of this nomenclature was purely descriptive, not legal. Indeed, *Rickman* was a case in which the deprivation of effective assistance of counsel was so severe that it warranted a finding of a constructive denial of counsel pursuant to *Cronic.* This conclusion actually undermines petitioner's proposition that particularly rank behavior by defense counsel is to be considered as state action in violation of the Fourteenth Amendment, as *Cronic* violations are transgressions of the Sixth Amendment. *See id.* at 659 ("[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.").

Nor do *McCollum* or *Faretta* lend a greater degree of support to this Fourteenth Amendment theory. In *McCollum* the Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits criminal defendants from exercising preemptory challenges during jury selection in a racially discriminatory manner. 505 U.S. at 55. In so holding it did characterize such action by defendants (through their attorneys) as state action. However, this is a product of the unique character of preemptory challenges as being inexorably dependent upon "the 'overt, significant participation of the government.' " *Id.* at 51 (quoting *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 622, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991)). The holding cannot possibly be read to stand for the broader proposition that when the representation provided by privately retained defense counsel is sufficiently wanting, such becomes state action. Similarly, in *Faretta,* the Court characterized appointed defense counsel as an "organ of the state," but this was dictum that followed the explicit statement that the right to such counsel is a product of the Sixth, not the Fourteenth Amendment. 422 U.S. at 820. Nothing in *Faretta* indicates that, the exercise of preemptory challenges aside, any actions or omissions on the part of defense counsel may give rise to a Fourteenth Amendment violation.

**\*9** The conceptual problem with the Fourteenth Amendment claim is that the jurisprudence surrounding malfeasance by defense counsel does contemplate egregiously deficient performances. Yet the scheme that has developed in response to such extreme deprivations still treats these as violations of the Sixth Amendment, not as substantive transgressions of the Fourteenth. *See, e.g., Rickman,* 131 F.3d at 1157. Indeed, this is the essence of *Cronic*-when counsel's representation is

Not Reported in F.Supp.2d                                                                                    Page 10
Not Reported in F.Supp.2d, 2001 WL 1609761 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

shockingly inadequate, it does not become state action so as to trigger the applicability of the substantive guarantees of the Fourteenth Amendment. Rather, under these circumstances, it is simply that the showing of actual prejudice otherwise mandated by *Strickland v. Washington,* 466 U.S. 668, 691-96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is excused. Accordingly, petitioner's argument, while certainly not wanting for creative inspiration, fails as a matter of law.

> FN16. "Substantive" here is used simply to distinguish a viable Fourteenth Amendment equal protection or due process claim from a claim based on the Sixth Amendment that is merely incorporated into the Due Process Clause of the Fourteenth so as to render it applicable to the states.

Based on the foregoing, I will deny petitioner's motion for leave to amend the petition with proposed amended claims 32-39.

### Group Two (The John Africa Claim)

On July 11, 2000, petitioner sought leave to amend his petition to include a Sixth Amendment challenge to the trial court's denial of his request for the assistance of his friend John Africa at trial. I denied this motion in an order dated July 25, 2001. Specifically, I held that the claim was both unexhausted and futile, as the United States Constitution does not provide a criminal defendant with the right to lay assistance. By bringing this request again in the instant motion, petitioner only could be asking this court to reconsider this previous denial.

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985). " 'Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly.' " *Burger King Corp. v. New England Hood & Duct Cleaning Co.,* 2000 WL 133756, at *2 (E.D.Pa. Feb.4, 2000) (citation omitted).

Accordingly, the standard for granting a motion for reconsideration under Fed.R.Civ.P. 59(e) is stringent, and district courts will grant such motions only where 1) there is a need to correct a clear error of law or to prevent injustice; 2) new evidence not previously available has become available; or 3) there has been a change of controlling law. *NL Indus., Inc. v. Comm. Union Ins. Co.,* 65 F.3d 314, 324 n. 8 (3d Cir.1995). " 'A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of' or as an attempt to relitigate 'a point of disagreement between the Court and the litigant.' " *Fidtler v. Gillis,* 1999 WL 596940, at *2 (E.D.Pa. Aug.9, 1999) (quoting *Waye v. First Citizen's Nat'l Bank,* 846 F.Supp. 310, 314 n. 3 (M.D.Pa.1994), aff'd 31 F.3d 1175 (3d Cir.1994)).

Of the grounds cited in the July 25, 2001 memorandum, I need focus on only one here, namely the nonexistence of a constitutional right to lay assistance for a criminal defendant. Where a denial of leave to amend is based on the proposed amended claim's legal futility, reconsideration is warranted only if the legal conditions that rendered the claim futile have changed. Yet none of the authority cited by petitioner establishes that the Sixth Amendment vests criminal defendants with a right to the advice of a lay person at trial. Quite the contrary, the law of this circuit is explicit in its pronouncement that there is no constitutional right to lay advice. *United States v. Wilhelm,* 570 F.2d 461, 465 n. 9 (3d Cir .1975) (collecting cases). Other circuits are in accord. *See, e.g., Tebbets v. Allenbrand,* 986 F.2d 1489, 1993 WL 53590, at *1 (10th Cir. Feb.22, 1993) (unpublished disposition) ("While the Sixth Amendment right to assistance of counsel includes the right to counsel of one's choice, counsel means 'an individual who is authorized to the practice of law.' Accordingly, whether sought for the purpose of representation, or merely advice, 'there is no colorable merit in the proposition that a criminal defendant is constitutionally vested with the right of assistance ... by a lay person.' ") (citations omitted). Thus, because nothing contained within petitioner's motion disturbs my previous finding of futility, I will not reconsider my decision denying him leave to amend the petition with the John Africa claim.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 11
Not Reported in F.Supp.2d, 2001 WL 1609761 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

### Group Three (The Actual Innocence Claim)

*10 Jamal's proposed amended claim 31 alleges that "petitioner ... is 'actually innocent': Exculpatory evidence not available at [his] trial proves that Arnold Beverly shot officer Faulkner and exonerates petitioner Jamal." Proposed Amended Petition at 401. In essence this lengthy claim is a reinterpretation of the evidence presented at trial, in conjunction with and in light of the Beverly confession, in support of the contention that Beverly, not Jamal, shot and killed Daniel Faulkner. *See* Proposed Amended Petition ¶¶ 867-68 (summarizing the essence of claim 31 by stating that "Beverly's confessions plainly demonstrate that this entire investigation and prosecution was [sic] corrupt," and that "[m]atters which, in other circumstances, might have been taken to indicate simple incompetence on the part of the police acquire a much more sinister character in light of Arnold Beverly's evidence"). Fueling this claim, then, is the Beverly evidence.

Yet immediately a problem arises concerning the amendment of the petition to include this evidence. On its face, the AEDPA's one year statute of limitations excludes the Beverly confession as untimely. 28 U.S.C. § 2244(d)(1). In fact, this precise issue was discussed at length in my order denying petitioner's motion to depose Beverly, wherein I stated:

Even assuming petitioner claims that the facts regarding Beverly that he now wishes to raise could not have been discovered through the exercise of due diligence before June 8, 1999, the date of Beverly's declaration (a best-case scenario for petitioner and six months prior to the filing of his federal habeas petition), AEDPA would impose a deadline of June 8, 2000 for bringing this claim.

*Abu-Jamal v. Horn*, 2001 WL 827468., at *4 (E.D.Pa. July 20, 2001). Thus, it would appear that proposed amended claim 31, filed with the instant motion on August 6, 2001, is time barred under § 2244(d)(1)(D).

Moreover, as discussed above, *see supra* at 10-11, the Beverly evidence does not relate back to Jamal's original petition within the meaning of Fed.R.Civ.P. 15(c). The Beverly evidence, at a minimum, represents a new theory as to Jamal's actual innocence, and at most, forms the basis for a wholly new claim of such; nothing in the original petition afforded the government any notice of this evidence. *See id.* Thus it is plainly evident that the *Thomas* standard is unsatisfied here, as it cannot legitimately be said that the Beverly evidence merely amplifies or clarifies Jamal's existing claims. Accordingly, the AEDPA's one year limitations period prevents petitioner from amending the petition with claims based upon this evidence.

Petitioner contends however, again in apparent anticipation of this holding, that insofar as the AEDPA creates a statute of limitations on claims of actual innocence, the AEDPA is unconstitutional. The idea that there exists an "actual innocence" exception to the AEDPA's limitations period never has been conclusively accepted or rejected by the United States Supreme Court. While the limitations period is not facially invalid, *see, e.g., Rodriguez v. Artuz,* 161 F.3d 763, 764 (2d Cir.1998), most of the courts of appeals have been reticent to address the issue of its validity as applied to claims of actual innocence. *See, e.g., Helton v. Sec'y for Dept. of Corrs,* 259 F.3d 1310, 1315 n. 2 (11th Cir.2001) (citing *Wyzykowski v. Dep't of Corrs.,* 226 F.3d 1213, 1219 (11th Cir.2000)); *Raglin v. Randle,* 2001 WL 523530, at *2 (6th Cir. May 8, 2001) (unpublished disposition); *Dew v. Clarke,* 2000 WL 1545500, at *2 (9th Cir. Oct.17, 2000) (unpublished disposition). At least one district court has found that the Suspension Clause contained in U.S. Const. Art. I, § 9 cl. 2, as well as the Eighth Amendment's prohibition against cruel and unusual punishment, mandates that an "actual innocence" exception to the ADEPA's statute of limitations be carved. *Holloway v. Jones,* 166 F.Supp.2d 1185 (2001).

*11 Upon consideration, there appears to be good reason for the hesitancy that marks the approach of the above-cited courts of appeals. It has long been a tenet of federal jurisprudence that courts will not entertain a constitutional challenge to a federal statute "at the instance of one who fails to show that he is injured by the statute's operation." *New York City Transit Auth. v. Beazer,* 440 U.S. 568, 583 n. 22, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979); *see also Clinton v. Jones,* 520 U.S. 681, 684 n. 11, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) (" 'If there is one doctrine more deeply rooted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable.' " (quoting *Spector Motor Service v. McLaughlin,* 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944))). As applied in the instant case, this means that it is inappropriate to resolve the question of the constitutionality of the AEDPA's statute of limitations as applied to actual innocence claims unless Jamal can demonstrate his actual innocence of Faulkner's murder. To do this, he must establish that, had the Beverly evidence been presented at trial, "it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *see also Schlup v. Delo,* 513 U.S. 298, 299, 327-28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *United States v. Stubbs,* 2000 WL 1174656, at *2 (10th Cir. Aug.18, 2000) (applying the *Bousley* standard in analogous circumstances); *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 114 (2d Cir.2000) (same).

Petitioner, however, has not made the requisite showing. In his previous motion for leave to depose Beverly, petitioner contended that the "fundamental miscarriage of justice" doctrine excused the untimeliness of his request. In holding that this doctrine was inapplicable to the facts at bar, I concluded that "given that the state presented testimony of four eyewitness[es], none of which corroborates Beverly's story, a reasonable juror still could have found petitioner guilty beyond a reasonable doubt. As such, petitioner fails to overcome the procedural bar to his Beverly claim ." 2001 WL 827468, at *5. There is no reason to believe that this conclusion is any less valid today than it was in July, and I consequently find that the Beverly evidence, viewed objectively, does not render it more likely than not that no reasonable juror would have convicted Jamal of Faulkner's murder. Accordingly, even were I to find an exception to the AEDPA's statute of limitations for actual innocence claims, petitioner would be unable to successfully avail himself of that exception. I therefore will not undertake that constitutional analysis.

Based on the foregoing I will deny petitioner's motion for leave to amend the petition with proposed amended claim 31.

As a corollary of the foregoing conclusions, petitioner's request for oral argument and the suspension of page limitations will be denied as moot. His motion for an evidentiary hearing also will be denied.

> FN17. The standard that petitioner must satisfy in order to demonstrate his entitlement to an evidentiary hearing under the AEDPA was delineated in the memorandum accompanying the July 20, 2001 order. I noted that:
> An evidentiary hearing will be barred under the provisions of § 2254(e)(2) where a petitioner has "failed to develop the factual basis of a claim in State court proceedings" unless the claim surmounts the considerable hurdles of § 2254(e)(2)(A) & (B) (new rule of constitutional law or facts that could not have been previously discovered in the exercise of diligence, and clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found petitioner guilty).
> *Abu-Jamal v. Horn,* 2001 WL 827468, at *4. The factual predicates for those claims within group one that have been substantively revised from their original forms, and certainly for new claims 30-39, were not developed in state court. Accordingly this standard applies to petitioner's request for an evidentiary hearing on these claims. As indicated above, petitioner has not presented clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found him guilty. Accordingly his request for an evidentiary hearing will be denied as to these claims.
> I also will deny petitioner's request for an evidentiary hearing on those claims within group one that underwent no substantial revision between the original and proposed amended petitions. Such an endeavor would not entail the potential to elucidate the claims that petitioner already has asserted in the

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2001 WL 1609761 (E.D.Pa.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 13

original petition. *See Campbell v. Vaughn,* 209 F.3d 280, 287 (3d Cir.2000) ("[F]ederal courts have discretion to grant a hearing or not. In exercising that discretion, courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim.").

*12 An appropriate order follows.

### Order

And now, this ----- day of December, 2001, upon consideration of petitioner's motion for leave to redraft and to amend the petition and motion for reconsideration of the order of this court dated July 25, 2001 denying petitioner's motion for leave to amend the petition (Doc. # 105), the proposed first redrafted and amended petition attached thereto, the exhibits submitted in support thereof (Doc. # 106), the government's answer thereto (Doc. # 117), it is hereby ORDERED that petitioner's motion is DENIED.

IT IS FURTHER ORDERED, given the disposition of petitioner's motion, that petitioner's supplement to his twenty-ninth claim for relief (Doc. # 116) is stricken, and the following motions are DENIED AS MOOT:  
(1) petitioner's motion for leave to file declaration of Arnold Howard dated 8/31/01 (Doc. # 134);  
(2) petitioner's motion for leave to file further evidence in support of motion to file redrafted and amended habeas petition (Doc. # 135);  
(3) petitioner's motion to reconsider order denying leave to file declaration of George Michael Newman (Doc. # 127); and  
(4) petitioner's motion for leave to file declaration of Eliot Lee Grossman, Esq. (Doc. # 129).

It is so ordered.

E.D.Pa.,2001.  
Abu-Jamal v. Horn  
Not Reported in F.Supp.2d, 2001 WL 1609761 (E.D.Pa.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.