## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN, JR. CONTRACTING, INC., *Plaintiff* | |
| vs. | |
| CITY OF NEWARK, et al., *Defendants* | CASE NO. 04-0163-GMS |
| and | |
| CITY OF NEWARK, *Third-Party Plaintiff* | |
| vs. | |
| DONALD M. DURKIN, JR. CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | |

## DONALD M. DURKIN CONTRACTING, INC.'S
## STATEMENT OF UNCONTESTED FACTS
## WITH OBJECTIONS BY CITY OF NEWARK

Plaintiff Donald M. Durkin, Jr. Contracting, Inc. ("Durkin"), Defendants City of Newark, Harold F. Godwin, John H. Farrell, IV, Jerry Clifton, Karl G. Kalbacher, David J. Athey, Frank J. Osborne, Jr., Christina Rewa (collectively "City"), Third Party Defendant Federal Insurance Company ("Federal") and Third Party Defendant URS Corporation ("URS") hereby submits this Statement of Uncontested Facts:

1.     Durkin is a Pennsylvania corporation with offices located at 1310 Industrial Boulevard, Southampton, Pennsylvania. *See* Complaint of Donald M. Durkin, Jr. Contracting, Inc. v. City of Newark, et al. ("Complaint"), Paragraph 1.

2.      City is a political subdivision of the State of Delaware with offices located at 220 Elkton Road, Newark Delaware.    *See* Answer, Counterclaim and Third Party Complaint of Defendants City of Newark, Harold F. Godwin, John H. Farrell, IV, Jerry Clifton, Karl G. Kalbacher, David J. Athey, Frank J. Osborn, Jr., and Christina Rewa ("Answer"), Paragraph 2.

Objection by Newark:  City is more properly referred to as an "incorporated municipality."

3.      At the times relevant to this matter, Harold F. Godwin served as the Mayor of the City of Newark, Delaware. *See* Answer, Paragraph 3.

4.      At the times relevant to this matter, John H. Farrell, IV served on Newark City Council representing District 1 of the City of Newark Delaware. *See* Answer, Paragraph 4.

5.      At the times relevant to this matter, Jerry Clifton served and continues to serve on Newark City Council representing District 2 of the City of Newark Delaware.  *See* Answer, Paragraph 5.

6.      At the times relevant to this matter, Karl G. Kalbacher served on Newark City Council representing District 3 of the City of Newark Delaware. *See* Answer, Paragraph 6.

7.      At the times relevant to this matter, David J. Athey served and continues to serve on Newark City Council representing District 4 of the City of Newark Delaware. *See* Answer, Paragraph 7.

8.      At the times relevant to this matter, Frank J. Osborne, Jr. served and continues to serve on Newark City Council representing District 5 of the City of Newark Delaware. *See* Answer, Paragraph 8.

KOP:347881v1 3514-04

9.      At the times relevant to this matter, Christina Rewa served on Newark City Council representing District 6 of the City of Newark Delaware. *See* Answer, Paragraph 9.

10.      At some time prior to January, 2002, City retained the services of URS Corporation ("URS") for the purposes of analyzing the feasibility of, and thereafter preparing professionally engineered design and construction documents for the construction of a water supply reservoir (the "Project"). *See* Answer, Paragraph 15.

11.      URS was the City's Engineer for the Project. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Agreement Between Owner and Contractor, Article 2.

12.      The Project was intended to provide for the construction of an "off-stream, pumped storage reservoir" (the "Reservoir") with the capacity of approximately 318 million gallons of water. *See* Answer, Paragraph 16.

13.      Ultimately, it was decided that the Reservoir was to be situated on property owned by the City, with a work area in excess of 60 acres, adjacent to, *inter alia*, Old Paper Mill Road, Newark, Delaware. *See* Answer, Paragraph 17.

14.      At all times relevant to this matter, including the design phase for the Project, the City knew that the Project and Reservoir was located immediately adjacent to a densely populated residential area. *See* Answer, Paragraph 18.

Objection by Newark:  The surrounding area is not "densely" populated, overall safety is irrelevant to the claims at issue and the allegations are prejudicial. FRE401, 402, 403. See Newark's Joinder and URS Motion in Limine to Exclude Evidence Regarding Reservoir Safety.

KOP:347881v1 3514-04

15.    At all times relevant to this matter, the City was acutely aware that because of the location of the Reservoir, the safety of the residents living adjacent to the Reservoir, and the public in general, was an imperative consideration, especially since a failure of the Reservoir could imperil the life and safety of persons on the Project, in addition to property, and risk the safety of the residents in the surrounding area, including multiple occupied residences, with potentially catastrophic consequences in terms of loss of life and property.  *See* Answer, Paragraph 19.

Objection by Newark:  Object as written as inflammatory, speculative and argumentative, not an appropriate statement of fact; overall safety is irrelevant to the claims at issue and the allegations are prejudicial.  FRE401, 402, 403.  See Newark's Joinder and URS Motion in Limine to Exclude Evidence Regarding Reservoir Safety.

16.    At all times relevant to this matter, URS was acutely aware that because of the location of the Reservoir, the safety of the residents living adjacent to the Reservoir, and the public in general, was an imperative consideration, especially since a failure of the Reservoir could imperil the life and safety of persons on the Project, in addition to property, and risk the safety of the residents in the surrounding area, including multiple occupied residences, with potentially catastrophic consequences in terms of loss of life and property.  *See* Complaint.

Objection by Newark:  Object as written as inflammatory, speculative and argumentative, not an appropriate statement of fact; overall safety is irrelevant to the claims at issue and the allegations are prejudicial.  FRE401, 402, 403.  See Newark's Joinder and URS Motion in Limine to Exclude Evidence Regarding Reservoir Safety.

KOP:347881v1 3514-04

17.    At all times relevant to this matter, the City was acutely aware that because of the location of the Reservoir, the long-term integrity of the Reservoir was an imperative consideration, especially since a failure of the Reservoir could imperil the life and safety of persons on the Project, in addition to property, and risk the safety of the residents in the surrounding area, including multiple occupied residences, with potentially catastrophic consequences in terms of loss of life and property. *See* Answer, Paragraph 19.

Objection by Newark:  Object as written as inflammatory, speculative and argumentative, not an appropriate statement of fact; overall safety is irrelevant to the claims at issue and the allegations are prejudicial.    FRE401, 402, 403.    See Newark's Joinder and URS Motion in Limine to Exclude Evidence Regarding Reservoir Safety.

18.    At all times relevant to this matter, URS was acutely aware that because of the location of the Reservoir, the long-term integrity of the Reservoir was an imperative consideration, especially since a failure of the Reservoir could imperil the life and safety of persons on the Project, in addition to property, and risk the safety of the residents in the surrounding area, including multiple occupied residences, with potentially catastrophic consequences in terms of loss of life and property. *See* Complaint.

Objection by Newark:  Object as written as inflammatory, speculative and argumentative, not an appropriate statement of fact; overall safety is irrelevant to the claims at issue and the allegations are prejudicial.    FRE401, 402, 403.    See Newark's Joinder and URS Motion in Limine to Exclude Evidence Regarding Reservoir Safety.

19.    At all times relevant to this matter, the City was fully aware that the design for the Reservoir and for the overall Project had to address site safety during construction of the

Reservoir for the protection of those working in and around the Reservoir during construction. *See* Complaint.

Objection by Newark:  Object to the statement as written, the City did not provide the design, citation to the Complaint is insufficient, and the Contract required Durkin to be responsible for site safety.

20.    At all times relevant to this matter, URS was fully aware that the design for the Reservoir and for the overall Project had to address site safety during construction of the Reservoir for the protection of those working in and around the Reservoir during construction. *See* Complaint.

Objection by Newark:  Object to the statement as written, citation to the Complaint is insufficient and the Contract required Durkin to be responsible for site safety.

21.    At all times during the design phase of the Project, the City knew and understood that all relevant information known by the City and URS respecting the Project needed to be disclosed and either provided, or at least made available, to bidders prior to submitting the bids. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Supplementary Conditions, Section 3.2; Deposition of Carol Houck, March 22, 2006, page 128, lines 12-15.

Objection by Newark:   Object to the phrase "relevant" which misrepresents the citations, is unclear, undefined and subjective.  The City did not provide the design. This statement misrepresents the contract language and as to citation of deposition testimony, opinions or comments of witnesses are not statements of fact and should be offered by Plaintiff at trial during

6

its presentation of evidence to the extent that it is admissible.  Further, this is argument, not a statement of fact.

22.     At all times during the design phase and prior to construction of the Project, URS knew and understood, that all relevant information known by the City and URS respecting the Project needed to be disclosed and either provided, or at least made available, to bidders prior to submitting the bids.  *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Supplementary Conditions, Section 3.2.

Objection by Newark:    Object to the word "relevant" which misrepresents the citations, is unclear, undefined and subjective.

23.     At all times during the design phase and prior to of the Project, the City knew and understood that bidders would utilize and rely upon the pre-bid information disclosed by the City and URS as a basis for, among other things, selecting the particular means and methods of construction to be employed, anticipating the conditions to be encountered and accounted for during construction, the initial filling of the Reservoir and maintenance of the Reservoir during the period of contractor responsibility, and for factoring the pricing for the Project.  *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Supplementary Conditions, Section 3.2; Deposition of Carol Houck, March 22, 2006, page 128, lines 12-15.

Objection by Newark:  This statement misrepresents the wording of the contract. The City did not provide the design. As to citation of deposition testimony, opinions or comments of witnesses are not statements of fact and should be offered by Plaintiff at trial during its presentation of evidence to the extent it is admissible.  Further, this is argument, not a statement of fact.  Durkin admitted that it did not rely on the bid documents in determining their means and

7

methods. For example, they failed to include in their bid price the cost of screening the Zone IV materials. Deposition of Donald Durkin, Page 191. Durkin failed to include a price in its bid for the monitoring of the placement of soil materials. *Id*. Pages 77 to 78.

24.    At all times during the design phase and prior to construction of the Project, URS knew and understood that bidders would utilize and rely upon the pre-bid information disclosed by the City and URS as a basis for, among other things, selecting the particular means and methods of construction to be employed, anticipating the conditions to be encountered and accounted for during construction, the initial filling of the Reservoir and maintenance of the Reservoir during the period of contractor responsibility, and for factoring the pricing for the Project. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Supplementary Conditions, Section 3.2.

Objection by Newark: Durkin admitted that it did not rely on the bid documents in determining their means and methods. For example, they failed to include in their bid price the cost of screening the Zone IV materials. Deposition of Donald Durkin, Pages 191. Durkin failed to include a price in its bid for the monitoring of the placement of soil materials. *Id.* Pages 77 to 78.

25.    At all times during the design phase and prior to construction of the Project, the City was aware that soil stability, the sequence and the manner of construction and safety information was essential information necessary for bidders to fully evaluate the scope and complexity of the Project. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Supplementary Conditions, Section 3.2; Deposition of Carol Houck, March 22, 2006, page 128, lines 12-15.

KOP:347881v1 3514-04

Objection by Newark: This statement misrepresents the wording of the contract. The City did not provide the design. As to citation of deposition testimony, opinions or comments of witnesses are not statements of fact and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible. Further, this is argument, not a statement of fact. Means and methods are the sole responsibility of bidders/contractors. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02 Para. 6.1, 9.13.2. Durkin admitted that it was responsible for the means and methods of construction. Deposition of Michael Durkin, Pages 44 to 47.

26.    At all times during the design phase and prior to construction of the Project, URS was aware that soil stability, the sequence and the manner of construction and safety information was essential information necessary for bidders to fully evaluate the scope and complexity of the Project. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Supplementary Conditions, Section 3.2.

Objections by Newark: Durkin admitted that it was responsible for the means and methods of construction. Deposition of Michael Durkin, Pages 44 to 47.

27.    At all times during the design phase and prior to construction of the Project, the City knew that all bidders, and ultimately the contractor who was awarded the contract for the Project, would rely on the adequacy of the plans, drawings and specifications contained in the pre-bid information disclosed by the City and URS. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Supplementary Conditions, Section 3.2; Deposition of Jill Voeller, April 18, 2006, page 44, lines 23-34; page 45, lines 15-17.

Objection by Newark:  This statement misrepresents the wording of the contract and is not a statement of fact, in that a party cannot know what another party knows or relies upon. The City did not provide the design.  As to citation of deposition testimony, opinions or comments of witnesses are not statements of fact and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible.  The witness testimony cited is insufficient to support an allegation of what the City knew.  Further, this is argument, not a statement of fact.  The Bid Documents and the Contract required Durkin and all bidders to determine the adequacy of the plans and specifications and to ask for clarification if they found them to be inadequate.

28.    At all times during the design phase and prior to construction of the Project, URS knew that all bidders, and ultimately the contractor who was awarded the contract for the Project, would rely on the adequacy of the plans, drawings and specifications contained in the pre-bid information disclosed by the City and URS.  *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Supplementary Conditions, Section 3.2; Deposition of Jill Voeller, April 18, 2006, page 44, lines 23-34; page 45, lines 15-17.

Objection by Newark: The Bid Documents and the Contract required Durkin and all bidders to determine the adequacy of the plans and specifications and to ask for clarification if they found them to be inadequate.

29.    At all times during the design phase and prior to construction of the Project, the City knew that all bidders, and ultimately the contractor who was awarded the contract for the Project, would reasonably assume that URS had completed all testing, analysis and evaluations to determine the constructability of the design.  *See* Water Supply Reservoir City of Newark,

10

Delaware Contract 02-02, Supplementary Conditions, Section 3.2; Deposition of Jill Voeller, April 18, 2006, page 44, lines 23-34; page 45, lines 15-17.

Objection by Newark:  This statement misrepresents the wording of the contract and is not a statement of fact, in that a party cannot know what another party knows or relies upon. The City did not provide the design. As to citation of deposition testimony, opinions or comments of witnesses are not statements of fact and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible.  The witness testimony cited is insufficient to support an allegation of what the City knew.  Further, this is argument, not a statement of fact.  Means and methods are the sole responsibility of bidders/contractors.  *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02 Para. 6.1, 9.13.2.  The Bid Documents and the Contract required Durkin and all bidders to determine the adequacy of the plans and specifications and to ask for clarification if they found them to be inadequate.

30.    At all times during the design phase and prior to construction of the Project, URS knew that all bidders, and ultimately the contractor who was awarded the contract for the Project, would reasonably assume that URS had completed all testing, analysis and evaluations to determine the constructability of the design.  *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Supplementary Conditions, Section 3.2; Deposition of Jill Voeller, April 18, 2006, page 44, lines 23-34; page 45, lines 15-17.

Objection by Newark: The Bid Documents and the Contract required Durkin and all bidders to determine the adequacy of the plans and specifications and to ask for clarification if they found them to be inadequate.

KOP:347881v1 3514-04

31.     At all times during the design phase and prior to construction of the Project, the City knew that all bidders, and ultimately the contractor who was awarded the contract for the Project, would reasonably assume that URS had completed all testing, analysis and evaluations to determine the adequacy of the design. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Supplementary Conditions, Section 3.2; Deposition of Jill Voeller, April 18, 2006, page 44, lines 23-34; page 45, lines 15-17.

Objection by Newark:  This statement misrepresents the wording of the contract. The City did not provide the design.   As to citation of deposition testimony, opinions or comments of witnesses are not statements of fact and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible.   The witness testimony cited is insufficient to support an allegation of what the City knew.   Further, this is argument, not a statement of fact.   The Bid Documents and the Contract required Durkin and all bidders to determine the adequacy of the plans and specifications and to ask for clarification if they found them to be inadequate.

32.     At all times during the design phase and prior to construction of the Project, URS knew that all bidders, and ultimately the contractor who was awarded the contract for the Project, would reasonably assume that URS had completed all testing, analysis and evaluations to determine the adequacy of the design. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Supplementary Conditions, Section 3.2; Deposition of Jill Voeller, April 18, 2006, page 44, lines 23-34; page 45, lines 15-17.

12

Objection by Newark: The Bid Documents and the Contract required Durkin and all bidders to determine the adequacy of the plans and specifications and to ask for clarification if they found them to be inadequate.

33.    At all times during the design phase and prior to construction of the Project, the City knew that bidders were not obligated to conduct independent investigations into the adequacy of the bid documents. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Supplementary Conditions, Section 3.2; Deposition of Jill Voeller, April 18, 2006, page 44, lines 23-34; page 45, lines 15-17.

Objection by Newark:  This statement misrepresents the wording of the contract. The City did not provide the bid documents.  As to citation of deposition testimony, opinions or comments of witnesses are not statements of fact and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible.  The witness testimony cited is insufficient to support an allegation of what the City knew.  Further, this is argument, not a statement of fact.  The Bid Documents and the Contract required Durkin and all bidders to determine the adequacy of the plans and specifications and to ask for clarification if they found them to be inadequate and to conduct site reviews.

34.    At all times during the design phase and prior to construction of the Project, URS knew that bidders were not obligated to conduct independent investigations into the adequacy of the bid documents.  *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Supplementary Conditions, Section 3.2; Deposition of Jill Voeller, April 18, 2006, page 44, lines 23-34; page 45, lines 15-17.

Objection by Newark: The Bid Documents and the Contract required Durkin and all bidders to determine the adequacy of the plans and specifications and to ask for clarification if they found them to be inadequate.

35.    At all times during the design phase and prior to construction of the Project, the City knew that bidders were not obligated to conduct independent investigations into the constructability of the Project design. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Supplementary Conditions, Section 3.2; Deposition of Jill Voeller, April 18, 2006, page 44, lines 23-34; page 45, lines 15-17.

Objection by Newark:  This statement misrepresents the wording of the contract. The City did not provide the design.  As to citation of deposition testimony, opinions or comments of witnesses are not statements of fact and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible.  The witness testimony cited is insufficient to support an allegation of what the City knew.  Further, this is argument, not a statement of fact.  Means and methods are the sole responsibility of bidders/contractors. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02 Para. 6.1, 9.13.2.  Durkin admitted that it was responsible for the means and methods of construction.  Deposition of Michael Durkin, 44 to 47.  The Bid Documents and the Contract required Durkin and all bidders to determine the adequacy of the plans and specifications and to ask for clarification if they found them to be inadequate.

36.    At all times during the design phase and prior to construction of the Project, URS knew that bidders were not obligated to conduct independent investigations into the constructability of the Project design. *See* Water Supply Reservoir City of Newark, Delaware

Contract 02-02, Supplementary Conditions, Section 3.2; Deposition of Jill Voeller, April 18, 2006, page 44, lines 23-34; page 45, lines 15-17.

Objection by Newark:  Durkin admitted that it was responsible for the means and methods of construction.  Deposition of Michael Durkin, 44 to 47.  The Bid Documents and the Contract required Durkin and all bidders to determine the adequacy of the plans and specifications and to ask for clarification if they found them to be inadequate.

37.    At all times during the design phase and prior to construction of the Project, the City knew that bidders would rely upon the City and URS to provide a design which was complete in all material aspects.  *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Supplementary Conditions, Section 3.2; Deposition of Jill Voeller, April 18, 2006, page 44, lines 23-34; page 45, lines 15-17.

Objection by Newark:  This statement misrepresents the wording of the contract. The City did not provide the design. As to citation of deposition testimony, opinions or comments of witnesses are not statements of fact and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible.  The witness testimony cited is insufficient to support an allegation of what the City knew.  Further, this is argument, not a statement of fact.  Durkin admitted that it was responsible for the means and methods of construction.  Deposition of Michael Durkin, 44 to 47.  The Bid Documents and the Contract required Durkin and all bidders to determine the adequacy of the plans and specifications and to ask for clarification if they found them to be inadequate.

38.    At all times during the design phase and prior to construction of the Project, URS knew that bidders would rely upon the City and URS to provide a design which was complete in

all material aspects.  *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Supplementary Conditions, Section 3.2; Deposition of Jill Voeller, April 18, 2006, page 44, lines 23-34; page 45, lines 15-17.

Objection by Newark:  Durkin admitted that it was responsible for the means and methods of construction.  Deposition of Michael Durkin, 44 to 47.  The Bid Documents and the Contract required Durkin and all bidders to determine the adequacy of the plans and specifications and to ask for clarification if they found them to be inadequate.

39.    At all times during the design phase and prior to construction of the Project, the City knew that bidders would rely upon the City and URS to provide a design which could be constructed utilizing ordinary and customary construction techniques.  *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Supplementary Conditions, Section 3.2.

Objection by Newark:  The City did not provide the design.  This statement misrepresents the wording of Para. 3.2. The contract speaks for itself and will be introduced as a trial exhibit without objection.  Durkin admitted that it was responsible for the means and methods of construction.  Deposition of Michael Durkin, Pages 44 to 47.  The Bid Documents and the Contract required Durkin and all bidders to determine the adequacy of the plans and specifications and to ask for clarification if they found them to be inadequate.  Ordinary and customary is an undefined and ambiguous term.  Durkin claims that the use of rain sheets to protect Zone IV soils from erosion, as well as the other methods used by George & Lynch were "extraordinary," (Deposition of Donald M. Durkin, Pages 102, 103), yet URS' expert, Dov Leshchinsky, PhD, as well as URS witnesses, say these are not "extraordinary" means and methods.

40.     At all times during the design phase and prior to construction of the Project, URS knew that bidders would rely upon the City and URS to provide a design which could be constructed utilizing ordinary and customary construction techniques.   *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Supplementary Conditions, Section 3.2.

Objection by Newark:  The City did not provide the design.  Durkin admitted that it was responsible for the means and methods of construction.  Mike Durkin, 44 to 47.  The Bid Documents and the Contract required Durkin and all bidders to determine the adequacy of the plans and specifications and to ask for clarification if they found them to be inadequate. Ordinary and customary is an undefined and ambiguous term.  Durkin claims that the use of rain sheets to protect Zone IV soils from erosion, as well as the other methods used by George & Lynch were "extraordinary," (Don Durkin, 102, 103), yet URS' expert, Dov Leshchinsky, PhD, as well as URS witnesses, say these are not "extraordinary" means and methods.

41.     During the design phase of the Project, URS prepared a number of different designs for Reservoir and presented them to the City for review and consideration.   *See* Correspondence from Joseph Kula to Carol Houck dated October 14, 2003 (NEW13751-NEW13757); Deposition of Jill Voeller, April 18, 2006,  page 26, lines 4-8; Deposition of Joseph Kula, June 13, 2006, pages 137-138, lines 11-5;   Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, page 245, lines 17-19.

Objection by Newark: All designs preceding the one finally selected are irrelevant.  FRE401, 402.

42.     One of URS' initial designs for the Reservoir incorporated a design for slope protection from the top of the embankment to the toe of the interior slope.  *See* Correspondence

17

from Joseph Kula to Carol Houck dated October 14, 2003 (NEW13751- NEW13757); Deposition of Joseph Kula, June 13, 2006, page 136, lines 11-21.

Objection by Newark: All designs preceding the one finally selected are irrelevant. FRE401, 402.

43.    In order to keep costs within the City's budget, the design for slope protection from the top of the embankment to the toe of the interior slope was not included in the final design for the Reservoir.   *See* Correspondence from Joseph Kula to Carol Houck dated October 14, 2003 (NEW13751- NEW13757); Deposition of Joseph Kula, June 13, 2006, pages 137-138, lines 25-5; Deposition of Jill Voeller, April 18, 2006, page 254, lines 22-25; Memorandum from Carol Houck, Assistant Administrator to Carl Luft, City Manager dated November 11, 2003 (NEW000609).

Objection by Newark:  Not a statement of fact as written as there were other factors driving selection of the final design.  All designs preceding the one finally selected are irrelevant. FRE401, 402.

44.    In the bid and contract documents for the Reservoir, the area between the basin floor of the Reservoir and elevation 169 of the Reservoir is called "Zone IV" and the cover soil for the area between the basin floor of the Reservoir and elevation 169 of the Reservoir is called "Zone IV material".  *See* Drawings "Wetlands Bench & Liner System Section (CC3352).

Objection by Newark:  The referenced slope is not called Zone IV and only soil that meets certain criteria is called Zone IV.

45.     Zone IV materials are native soils, screened or raked free of stones of specific sizes and placed on the impervious liner and geotextile material. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specifications and drawings).

46.     Zone IV material is a silty sand. *See* Deposition of Joseph Kula, June 13, 2006, page 130, lines 11-16.

47.     Zone IV material is completely non-plastic. *See* Deposition of Joseph Kula, June 13, 2006, page 158, lines 20-24.

48.     The highest point of Zone IV is elevation 169. *See* Drawings "Wetlands Bench & Liner System Section (CC3352).

Objection by Newark: This is factually inaccurate. See construction drawing profiles.

49.     Prior to the solicitation of bids, the City knew that during the service life of the Reservoir, the Reservoir would be periodically drawn below an elevation lower than elevation 169. *See* Correspondence from Joseph Kula to Carol Houck dated October 14, 2003 (NEW13751- NEW13757).

50.     The City did not disclose to any bidder on the Project that one of the initial designs for the Reservoir included a design for slope protection from the top of the embankment to the toe of the interior slope which was not included in the final design. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02; Deposition of John Volk, June 20, 2006, page 20, lines 20-23.

Objection by Newark:  All designs preceding the one finally selected are irrelevant.  FRE401, 402.

51.    With the final design for the Reservoir and at the time the Contract was let for public bidding, the City and URS knew that during the service life of the Reservoir if the water was drawn below elevation 169 there would be "maintenance" issues that would need to be addressed which would include repairs to Zone IV material due to erosion. *See* Correspondence from Joseph Kula to Carol Houck dated October 14, 2003 (NEW13751- NEW13757); Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, page 98, lines 3-11; page 162, lines 3-11; 20-22; Deposition of John Volk, June 20, 2006, page 15, lines 14-16; Deposition of Jill Voeller, April 18, 2006, page 39, lines 17-21; Deposition of John Volk, June 20, 2006, page 15, lines 14-16.

Objection by Newark: Objection based on wording which mischaracterizes the citations, also as to relevance as operational maintenance was outside Plaintiff's contract.  FRE401, 402.  As to citation of deposition testimony, opinions or comments of witnesses are not statements of fact and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible.

52.    Prior to awarding the Contract, URS knew that Zone IV material would need protection. *See* Deposition of Jill Voeller, April 18, 2006, page 40, lines 3-11; Deposition of John Volk, June 20, 2006, page 15, lines 14-16.

Objection by Newark:  So did Durkin as contract called for protection of soils; if the statement remains it should be modified to say "both Durkin and URS knew…"

53.    The City did not disclose to the bidders that that during the service life of the Reservoir if the water was drawn below elevation 169 there would be "maintenance" issues that would need to be addressed which would include repairs to Zone IV material due to erosion. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02; Deposition of John Volk, June 20, 2006, page 20, lines 20-23.

Objection by Newark: Object as irrelevant as operational maintenance was outside Plaintiff's contract. FRE401, 402. As to citation of deposition testimony, opinions or comments of witnesses are not statements of fact and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible. The witness testimony cited is insufficient to support an allegation of what the City knew.

54.    In or about January 2002, the City advertised for bidding on the Project. *See* Answer, Paragraph 43.

55.    The bid documents for the Project were represented by the City to describe "a functionally complete Project." *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Supplementary Conditions, Section 3.2.

Objection by Newark: The contract speaks for itself and will be introduced as a trial exhibit without objection.

56.    Durkin submitted a bid to the City for the Project. *See* Durkin's Bid Documentation.

57.    After receiving the bids, the City held a meeting with Durkin to review its proposal for the Project and the basis upon which Durkin submitted its proposal. *See* Deposition

of Joseph Kula, June 13, 2006, page 30, lines 17-21; Deposition of John Volk, June 20, 2006, page 20, lines 20-23.

58.    The City awarded the contract to Durkin. *See* Answer, Paragraph 52.

59.    At no time prior to the City awarding the contract to Durkin did the City or URS disclose to Durkin that during the service life of the Reservoir if the water was drawn below elevation 169 there would be "maintenance" issues that would need to be addressed which would include repairs to Zone IV material due to erosion.  *See* Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, page 163, lines 5-12; Deposition of John Volk, June 20, 2006, page 20, lines 20-23.

Objection by Newark: Objection based on wording which mischaracterizes the citations, also as to relevance as operational maintenance was outside Plaintiff's contract. FRE401, 402.  As to citation of deposition testimony, opinions or comments of witnesses are not statements of fact and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible.  The witness testimony cited is insufficient to support an allegation of what the City knew.

60.    At no time prior to the City awarding the contract to Durkin did the City or URS disclose to Durkin that one of the initial designs for the Reservoir included a design for slope protection from the top of the embankment to the toe of the interior slope which was not included in the final design. *See* Complaint.

Objection by Newark: All designs preceding the one finally selected are irrelevant.  FRE401, 402.

61.    On April 24, 2002, Durkin and the City entered into a written Contract for the construction of the Reservoir.  *See* Answer, Paragraph 52; Water Supply Reservoir City of Newark, Delaware Contract 02-02.

62.    Under the Contract, "Work" was defined as "Construction of an earthen impoundment, liner, inlet/outlet structure, prefabricated bridge, pump, piping, valves gates, roadway, overlook, wetlands, and landscaping."  *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Agreement Between Owner and Contractor, Article 1.

Objection by Newark:  the contract speaks for itself and will be introduced as a trial exhibit without objection.

63.    Notice to proceed with the construction work was issued by the City on May 24, 2002. *See* Answer, Paragraph 52.

64.    Federal was, at all times relevant to this matter, the payment and performance bond surety for Durkin in connection with the Project.  *See* Answer, Third Party Claim, Paragraph 4.

65.    An employee of URS was the Resident Project Representative for the Project. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02; Deposition of Glenn Bowen, April 13, 2006, page 7, lines 5-12.

66.    The Resident Project Representative was URS' agent at the Project site.  *See* Supplementary Conditions Exhibit A Duties, Responsibilities and Limitations of Authority of the Resident Project Representative, Section A, page 1 of 3.

KOP:347881v1 3514-04

67.    As of the early fall of 2003, Durkin had substantially undertaken the specified preparatory work described in the Contract in anticipation of the start of the construction of the Zone IV materials, to include the screening of Zone IV materials and had completed the placement of geotextile and impervious liner on the substantial areas of the slopes and the floor of the Reservoir. *See* Answer, Paragraph 60.

68.    As of early fall of 2003, in the locations designated by the Contract documents, Durkin had placed geotextile materials and liner and prepared to place the Zone IV materials on the slopes, beginning at the "shallow" end of the Reservoir, where the difference in the elevation from the floor of the Reservoir to the elevation of the Zone IV bench was the smallest. *See* Answer, Paragraph 60.

Objection by Newark:   The phrase in the locations designated by the Contract Documents suggests sequencing was dictated by the Contract when, in fact, it was Durkin's responsibility.

69.    According to the Contact documents, Zone IV materials were to be placed from the toe of the slope to elevation 169, whereat a "bench" from the Zone IV materials was constructed, and where Fabriform materials were to be anchored. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specifications and drawings); Drawing C-2.10 "Wetlands Bench and Liner System Sections (CC3352).

70.    From elevation 169, the Fabriform materials would be placed on the slope up to the top of the Reservoir, at which point a "wetland" migration structure was to be constructed. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specifications and drawings); Drawing C-2.10 "Wetlands Bench and Liner System Sections (CC3352).

KOP:347881v1 3514-04

71.     Large rocks, known as "rip-rap", were to be placed on the Fabriform at and near the top of the slope adjacent to the wetland mitigation structure. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specifications and drawings); Drawing C-2.10 "Wetlands Bench and Liner System Sections (CC3352).

72.     Durkin retained the services of GeoSyntec Consultants, Inc. ("GeoSyntec"), a geotechnical consultant, for the purposes of maintaining quality control during the placement of the Zone IV materials, installation of the Fabriform, placement of the rip-rap and construction of the "wetland" mitigation structure at the top of the slope of the Reservoir. *See* Answer, Paragraph 60; Design and Constructability Review of Zone IV Protective Cover Soils Report, prepared by GeoSyntec Consultants, May 30, 2006.

73.     Durkin began placement of the Zone IV materials at the end of the Reservoir where the least amount of Zone IV materials would be placed. *See* Complaint; Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specifications and drawings).

74.     Durkin completed the placement of the initial 12" of Zone IV materials at the end of the Reservoir where the least amount of Zone IV materials would be placed prior to any rain. *See* Complaint; Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specifications and drawings).

Objection by Newark:  The placement was never inspected and therefore its thickness has not been established.

75.     In September, 2003, there was a sustained rain event. *See* Answer, Paragraph 68; *See* Deposition of Joseph Kula, June 13, 2006, pages 95-96, lines 21-3.

KOP:347881v1 3514-04

Objection by Newark:  Object to the word "sustained."

76.     The sustained rain event severely damaged the Zone IV materials that had been placed by Durkin.  *See* Deposition of Joseph Kula, June 13, 2006, pages 95-96, lines 21-3.

Objection by Newark:   Object to the word "sustained" and if the statement remains, the following should be added "...because Durkin had not placed any protective cover over those materials."  As to citation of deposition testimony, opinions or comments of witnesses are not statements of fact and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible.  Also, this is a contested fact as the lack of protection of the soils and failure to compact the soils caused or exacerbated these conditions.

77.     The extent to which the soil eroded after the sustained rain event in September, 2003, was more erosion than URS expected.  *See* Deposition of Joseph Kula, June 13, 2006, pages 95-96, lines 21-3.

78.     The damage to the Zone IV materials included the displacement and sloughing of entire sections of the Zone IV materials down the slope to the floor of the Reservoir.  *See* Correspondence from Donald M. Durkin, Jr.to Mark Prouty dated September 10, 2003; Design and Constructability Review of Zone IV Protective Cover Soils Report, prepared by GeoSyntec Consultants, May 30, 2006.

Objection by Newark: The referenced letter speaks for itself and is not a statement of fact. Opinions and comments by witnesses or potential experts are not statements of fact and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible.

26

79.    As a result of the severe damage to and failure of the Zone IV materials, Durkin requested that GeoSyntec evaluate the conditions of the Zone IV materials.  *See* Design and Constructability Review of Zone IV Protective Cover Soils Report, prepared by GeoSyntec Consultants, May 30, 2006.

Objection by Newark:  The report speaks for itself and is not a statement of fact. Opinions and comments of potential experts are not statements of fact and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible.

80.    GeoSyntec advised Durkin there was a potential serious defect in the Project design that affected the constructability of the Project.  *See* Design and Constructability Review of Zone IV Protective Cover Soils Report, prepared by GeoSyntec Consultants, May 30, 2006.

Objection by Newark: The report speaks for itself and is not a statement of fact. Opinions and comments by witnesses and potential experts are not statements of facts, and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible.

81.    GeoSyntec also advised Durkin that there were other potentially more serious defects that called into question the integrity of the entire Project design and raised life/safety issues.  *See* Design and Constructability Review of Zone IV Protective Cover Soils Report, prepared by GeoSyntec Consultants, May 30, 2006.

Objection by Newark: The report speaks for itself and is not a statement of fact. Opinions and comments by witnesses and potential experts are not statements of facts, and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible. Alleged life/safety issues of the completed project are irrelevant and should be excluded from

KOP:347881v1 3514-04

trial; see Newark's Joinder and URS Motion in Limine to Exclude Evidence Regarding Reservoir Safety.

82.     Section 3.3.2 of the Contract provides that "If during the performance of the Work, [Durkin] discovers any conflict, error, ambiguity or discrepancy within the Contract Documents … [Durkin] shall report it to [URS] in writing at once, and, [Durkin] shall not proceed with any Work affected thereby … until an amendment or supplement to the Contract Documents has been issued [in writing]." *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Section 3.3.2.

Objection by Newark: The Contract speaks for itself and will be introduced as a trial exhibit without objection.  If this section is quoted, the entire relevant paragraphs should be quoted.

83.     Durkin advised the City and URS of the potential defects in the Project design. *See* Correspondence from Donald M. Durkin, Jr. to Mark Prouty dated September 10, 2003.

Objection by Newark:  The letter speaks for itself, is not a statement of fact and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible. The allegation of "potential defects" is contested.

84.     Durkin's September 10, 2003 correspondence to URS advised that "[t]he nature of the error has become apparent after the recent rain events.  Areas of the side slopes prepared and finish graded in anticipation of receiving the liner severely eroded notwithstanding Durkin's protection of the slopes using ordinary construction techniques."…"[t]he more serious problems and the apparent error is more apparent on the graded slopes of the areas that had received the liner.  Notwithstanding the installation of the slopes to grade and liner as designed, the soil

material placed on the liner, compacted as prescribed by the specifications, severely eroded with the recent rains." *See* Correspondence from Donald M. Durkin, Jr. to Mark Prouty, page 1, dated September 10, 2003.

Objection by Newark:  The letter speaks for itself, is not a statement of fact and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible.

85.    Only after the September rains and the severe damage to and failure of the Zone IV materials did the City and URS tell Durkin that the City had contingent plans to drain the Reservoir for maintenance. *See* Correspondence from Donald M. Durkin, Jr., to Mark Prouty dated September 10, 2003 (DUR000798-DUR000800); Complaint; Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, page 249, lines 10-19.

Objection by Newark:  The statement mischaracterizes the citations, object as irrelevant as operational maintenance is outside Plaintiff's scope (FRE401, 402), the letter speaks for itself and as to citation of deposition testimony, opinions or comments of witnesses are not statements of fact and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible.  Newark also objects to the phrase "failure of the Zone IV materials" as a contested fact as Newark asserts that it was Durkin's failure to protect the soils or implement erosion mitigation procedures that led to these conditions.

86.    After the September rains and the severe damage to and failure of the Zone IV materials, Durkin requested that an impartial engineer review the design for the Reservoir. *See* Correspondence from Donald M. Durkin, Jr. to Mark Prouty, September 16, 2003 (DUR000797-DUR000800).

Objection by Newark: The statement does not accurately cite the letter, letter speaks for itself, is not a statement of fact and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible. Newark also objects to the phrase "failure of the Zone IV materials" as a contested fact as Newark asserts that it was Durkin's failure to protect the soils or implement erosion mitigation procedures that led to these conditions.

87.    Durkin advised that it would suspend operations pending a resolution as required by the Contract. *See* Correspondence from Donald M. Durkin, Jr. to Mark Prouty dated September 10, 2003; Water Supply Reservoir City of Newark, Delaware Contract 02-02, Section 3.3.2.

Objection by Newark:  The letter speaks for itself, is not a statement of fact and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible.  It is a contested fact as to whether the Contracts called for suspension and the contract speaks for itself.

88.    Contemporaneous with providing notice to the City and URS pursuant to Section 3.3.2 of the Contract documents, Durkin requested that URS provide its design analysis, including analysis for slope stability so that GeoSyntec could further review the modified design. *See* Correspondence from Donald M. Durkin, Jr. to Mark Prouty dated November 12, 2003 (DUR000735-DUR000737).

Objection by Newark: Object to the characterization of "contemporaneous", the letter speaks for itself, is not a statement of fact and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible. The allegation of "modified design" is a contested fact.

KOP:347881v1 3514-04

89.    On September 26, 2003, Durkin, the City, URS and GeoSyntec met to discuss, *inter alia*, the damage to the Zone IV materials. *See* Answer, Paragraph 79; Handwritten Notes from URS dated September 26, 2003 (NEW13762-NEW13764); September26, 2006 Meeting Sign-in Sheet (NEW13758).

Objection by Newark:  Object to the characterization of the meeting.

90.    GeoSyntec advised the City and URS at the September 26, 2003 meeting of discovered design defects.    *See* Handwritten Notes from URS dated September 26, 2003 (NEW13762-NEW13764).

Objection by Newark: Opinions and comments by witnesses and potential experts are not statements of facts and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible. Whether these were "design defects" is a contested fact.

91.    GeoSyntec advised Newark and URS at the September 26, 2003 meeting that in the event of a rapid or other draw-down of the Reservoir, the design for the Zone IV materials had a factor safety of less than 1.0. *See* Handwritten Notes from URS dated September 26, 2003 (NEW13762-NEW13764).

Objection by Newark: Opinions and comments by witnesses and potential experts are not statements of facts, and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible. Also, this allegation pertains to the final built condition of the reservoir and is irrelevant to the case.

KOP:347881v1 3514-04

92.     A factor safety of less than 1.0 indicates that failure would occur. *See* Deposition of Joseph Kula, June 13, 2006, page 154, lines 5-7; Deposition of Jill Voeller, April 18, 2006, page 22, lines 5-7.

Objection by Newark:  Opinions and comments by witnesses and potential experts are not statements of facts, and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible. Also, this allegation pertains to the final built condition of the reservoir and is irrelevant to the case.

93.     On October 14, 2003 URS sent the City a correspondence which stated, *inter alia* "we concur that if a very conservative approach is taken to evaluate cover soil stability using the infinite slope method of analysis and assuming no soil cohesion, instantaneous drawdown, and no drainage of the cover soils, a factor safety of approximately 1.0 is calculated." *See* Correspondence from Joseph Kula to Carol Houck dated October 14, 2003, page 1 (NEW13751-NEW13757).

Objection by Newark: The letter speaks for itself, opinions and comments of witnesses and potential experts are not statements of fact and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible. This is out of context and a gross mischaracterization of the letter as it goes on to add "in reality…".  Entire letter should be read if this statement is allowed.

94.     URS did not address or send the October 14, 2003 correspondence to Durkin. *See* Correspondence from Joseph Kula to Carol Houck dated October 14, 2003 (NEW13751-NEW13757).

32

Objection by Newark: The letter speaks for itself and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible. Whether it was sent to Durkin is irrelevant and emphasis of this fact over others suggests to the jury that this was wrongful conduct.

95.      When the Reservoir would be drawn down an elevation lower than 169, Zone IV materials would be subject to erosion. *See* Answer, Paragraph 45; Correspondence from Joseph Kula and Mark Prouty to Donald M. Durkin, Jr. dated October 29, 2003 (NEW13719-NEW13720).

Objection by Newark: Pertains to the final build condition and is irrelevant to this case.

96.      If the Reservoir were drawn down in an emergency, the conditions described in the URS October 14, 2003 correspondence would occur. *See* Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, page 98, lines 3-11; page 162, 3-11.

Objection by Newark:   Object as this statement is unclear, misrepresents the cited correspondence, the correspondence should speak for itself, and as to citation of deposition testimony, opinions or comments of witnesses are not statements of fact and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible.

97.      The Reservoir is a "high hazard" earthen dam. *See* City of Newark Reservoir Independent Design Evaluation dated October 20, 2004.

Objection by Newark:  Object as this cites a party's expert report which are not statements of fact, and this characterization is inflammatory. Also relates to the final as-built condition which is irrelevant.

33