PRETRIAL – EXHIBIT A – PART II

Donald M. Durkin Contracting v. City of Newark et al., C.A. No. 04-0163 GMS

98.     A factor of safety of less than 1.0 is below the minimum standards of safety acceptable for "high hazard" dams such as the Reservoir. *See* City of Newark Reservoir Independent Design Evaluation dated October 20, 2004.

Objection by Newark: Object as this cites a party's expert report which are not statements of fact, and this characterization is inflammatory. Also relates to the final as-built condition which is irrelevant.

99.     The URS October 14, 2003 correspondence indicates that the Reservoir's design was changed from the original design to the modified design. *See* Correspondence from Joseph Kula to Carol Houck dated October 14, 2003 (NEW13751- NEW13757).

Objection by Newark: The statement mischaracterizes the letter, the letter speaks for itself, the issue is not relevant, and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible. There is no such thing as a "modified design" as the Contract Documents contain the design.

100.     The URS October 14, 2003 correspondence indicates that the Reservoir's design was changed from the original design to the modified design to save approximately $1.0 million. Specifically, the URS October 14, 2003 correspondence indicates that "[s]lope protection is provided above bench, however, in order to keep costs within budget, it was not provided below the bench. This resulted in a cost savings on the order of a million dollars." *See* Correspondence

from Joseph Kula to Carol Houck dated October 14, 2003, page 2 (NEW13751- NEW13757);
Deposition of Joseph Kula, June 13, 2006, pages 136-138, lines 11-5; pages 143-145, lines 2-21.

Objection by Newark:  The statement mischaracterizes the letter, the letter speaks for itself, the issue is not relevant, and should be offered by Plaintiff during trial during the presentation of evidence to the extent that it is admissible. There is no such thing as a "modified design" as the Contract Documents contain the design.

101.    The URS October 14, 2003 correspondence also indicated that "the erosion [of the Zone IV materials] that has been observed to date has occurred with the liner above El. 169 exposed (no riprap or Fabriform in place).  This relatively smooth surface results in very high erosive velocities." *See* Correspondence from Joseph Kula to Carol Houck dated October 14, 2003, page 2 (NEW13751- NEW13757).

Objection by Newark:  The letter speaks for itself and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible. Statement is taken out of context and entire letter should be offered.

102.    After the September 26, 2003 meeting between Durkin, the City, URS and GeoSyntec to discuss, *inter alia,* the damage to the Zone IV materials and after further evaluation of the cover soil issues by URS, URS proposed to the City a design change in the Fabriform detail to mitigate the maintenance impacts. *See* Correspondence from Joseph Kula to Carol Houck dated October 14, 2003 (NEW13751- NEW13757).

Objection by Newark:  Object as this statement mischaracterizes the letter and the meeting, the letter speaks for itself and should be offered by Plaintiff at trial during its presentation of

2

evidence to the extent that it is admissible. Also, maintenance issues of final build condition are irrelevant.

103.    URS proposed to the City various alternatives for the design change to address the issues with the modified design.  *See* Correspondence from Joseph Kula to Carol Houck dated October 14, 2003 (NEW13751-NEW13757).

Objection by Newark:  This statement mischaracterizes the letter, inaccurately cites the letter, the letter speaks for itself and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible. There is no such thing as a "modified design" as the Contract Documents contain the design.

104.    Beginning in late October 2003, URS requested that Durkin provide pricing for alternatives to the modified design.  *See* Jill Voeller to Donald M. Durkin, Jr. dated October 22, 2003 (NEW13732-NEW13736).

Objection by Newark:  This statement mischaracterizes the letter, inaccurately cites the letter, the letter speaks for itself and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible. There is no such thing as a "modified design" as the Contract Documents contain the design.

105.    On October 22, 2003, URS advised Durkin that the City was interested in obtaining cost estimates for three (3) alternative modifications to the liner cover below the elevation 169 bench.  *See* Correspondence from Joseph Kula to Donald M. Durkin, Jr. dated October 22, 2003 (NEW13732-NEW13736).

KOP:347881v1 3514-04

Objection by Newark:  The letter speaks for itself and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible.

106.    URS advised Durkin that "[i]f the costs are considered reasonable to the City, they may elect to implement one of the options.  If the costs are not considered to be reasonable to the City, the original cover design consisting of 18 inches of Zone IV soils shall be constructed."  *See* Correspondence from Joseph Kula to Donald M. Durkin, Jr.dated October 22, 2003 (NEW13732-NEW13736).

Objection by Newark: The letter speaks for itself and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible.

107.    At an October 15, 2003 meeting between the City, URS and Durkin, a modification to the design was discussed.  *See* Correspondence from Joseph Kula and Mark Prouty to Donald M. Durkin, Jr. dated October 29, 2003 (NEW13719-NEW13720).

Objection by Newark:  This statement mischaracterizes the meeting and the letter, the letter speaks for itself and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible.

108.    Durkin was advised that the City intended to make a decision "on whether to proceed with one of the alternatives to the modified design or to stay with the modified design set forth in the Contract documents."  *See* Correspondence from Joseph Kula and Mark Prouty to Donald M. Durkin, Jr. dated October 29, 2003 (NEW13719-NEW13720).

Objection by Newark:  The letter speaks for itself and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible.

4

KOP:347881v1 3514-04

109.    After the October 15, 2003 meeting Project Director Joseph Kula and Project Manager Mark Prouty advised Durkin that "[i]n either case, the Fabri-Form detail along the El. 169 bench will likely be slightly modified to avoid Zone IV soils beneath the Fabri-Form, as we discussed at the October 15 meeting." *See* Correspondence from Joseph Kula and Mark Prouty to Donald M. Durkin, Jr. dated October 29, 2003 (NEW13719-NEW13720).

Objection by Newark:  The letter speaks for itself and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible.

110.    The design modification discussed at the October 15, 2003 meeting (and confirmed in the October 29, 2003 correspondence from Project Director Joseph Kula and Project Manager Mark Prouty to Durkin) called for the placement of the Fabriform under the Zone IV materials.  *See* Correspondence from Joseph Kula and Mark Prouty to Donald M. Durkin, Jr. dated October 29, 2003 (NEW13719-NEW13720); Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specification and drawings); Deposition of Jill Voeller, April 18, 2006, page 31, lines 15-20; page 32, lines 3-6, 14-16.

Objection by Newark:  This statement mischaracterizes the letter and the meeting, the letter and contract speak for themselves, and as to citation of deposition testimony, opinions and comments of witnesses are not statements of fact and should be offered by Plaintiff during its presentation of evidence to the extent that it is admissible.

111.    Because the design modification discussed at the October 15, 2003 meeting (and confirmed in the October 29, 2003 correspondence from Project Director Joseph Kula and Project Manager Mark Prouty to Durkin) called for the placement of the Fabriform under the Zone IV materials, the placement of the Fabriform on the bench and down the side slopes, filling

5

the Fabriform with grout and curing the grout had to occur before the Zone IV materials could be placed. *See* Correspondence from Joseph Kula and Mark Prouty to Donald M. Durkin, Jr. dated October 29, 2003 (NEW13719-NEW13720); Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specification and drawings); Deposition of Jill Voeller, April 18, 2006, page 31, lines 15-20; page 32, lines 3-6, 14-16.

Objection by Newark:  This statement mischaracterizes the citations, is argumentative and not statement of fact, the letter and contract speak for themselves and as to citation of deposition testimony, opinions and comments of witnesses and potential experts are not statements of fact and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible.

112.    Because the design modification discussed at the October 15, 2003 meeting (and confirmed in the October 29, 2003 correspondence from Project Director Joseph Kula and Project Manager Mark Prouty to Durkin) called for the placement of the Fabriform under the Zone IV materials, the specialty subcontractor that installed the Fabriform would be required to mobilize and work simultaneously with or precede the Zone IV placement. *See* Correspondence from Joseph Kula and Mark Prouty to Donald M. Durkin, Jr. dated October 29, 2003 (NEW13719-NEW13720); Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specification and drawings); Deposition of Jill Voeller, April 18, 2006, page 31, lines 15-20; page 32, lines 3-6, 14-16.

Objection by Newark:  This statement mischaracterizes the citations, the letter and contract speak for themselves and as to citation of deposition testimony, opinions and comments of

witnesses and potential experts are not statements of fact and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible.

113.    Because the design modification discussed at the October 15, 2003 meeting (and confirmed in the October 29, 2003 correspondence from Project Director Joseph Kula and Project Manager Mark Prouty to Durkin) would require the specialty subcontractor that installed the Fabriform to mobilize and work simultaneously with or precede the Zone IV placement, a change to the official schedule sequence would be required. *See* Correspondence from Joseph Kula and Mark Prouty to Donald M. Durkin, Jr. dated October 29, 2003 (NEW13719-NEW13720); Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specification and drawings); Deposition of Jill Voeller, April 18, 2006, page 31, lines 15-20; page 32, lines 3-6, 14-16.

Objection by Newark: This statement mischaracterizes the citations, the letter and contract speak for themselves and as to citation of deposition testimony, opinions and comments of witnesses and potential experts are not statements of fact and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible.

114.    While the design modification discussed at the October 15, 2003 meeting (and confirmed in the October 29, 2003 correspondence from Project Director Joseph Kula and Project Manager Mark Prouty to Durkin) was pending, there would be a period of time when Zone IV would not be placed.   *See* Correspondence from Joseph Kula and Mark Prouty to Donald M. Durkin, Jr. dated October 29, 2003 (NEW13719-NEW13720); Deposition of Jill Voeller, April 18, 2006, page 35, lines 5-8.

KOP:347881v1 3514-04

Objection by Newark: This statement mischaracterizes the citations, the letter speaks for itself as to citation of deposition testimony, opinions and comments of witnesses and potential experts are not statements of fact and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible.. Irrelevant as Durkin stopped placement of Zone IV materials in September and refused to place any further Zone IV materials. Deposition of Donald M. Durkin, 104 to 107.

115.    If the design modification discussed at the October 15, 2003 meeting (and confirmed in the October 29, 2003 correspondence from Project Director Joseph Kula and Project Manager Mark Prouty to Durkin) was implemented, URS Engineer John Volk thought it practically would make sense not to place Zone IV on the side slopes until the Fabriform was installed. *See* Correspondence from Joseph Kula and Mark Prouty to Donald M. Durkin dated October 29, 2003 (NEW13719-NEW13720); Deposition of John Volk, June 20, 2006, page 247, lines 10-17; Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specification and drawings).

Objection by Newark: This statement mischaracterizes the citations, the letter and contract speak for themselves and as to citation of deposition testimony, opinions and comments of witnesses and potential experts are not statements of fact and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible.

116.    Durkin provided prices to URS for the various alternatives to the modified design. *See* Correspondence from Donald M. Durkin, Jr. to Jill Voeller dated October 29, 2003 (NEW13724-NEW13725); Donald M. Durkin, Jr. to Jill Voeller dated October 29, 2003

(NEW13721); Donald M. Durkin, Jr. to Jill Voeller dated October 29, 2003 (NEW13722-NEW13723).

Objection by Newark:    The statement mischaracterizes the letters, the letters speak for themselves and should be offered by Plaintiff at trial during the presentation of its evidence to the extent that it is admissible.    There is no modified design.

117.    After the City reviewed the alternatives to the modified design, URS advised Durkin that the City did not want to proceed with any of the alternatives to the modified design. *See* Correspondence from Mark Prouty to Donald M. Durkin, Jr. dated October 31, 2003 (NEW13716)

Objection by Newark:  This statement mischaracterizes the letter, the letter speaks for itself and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible.  There is no modified design.

118.    The City did not want to proceed with any of the alternatives to the modified design because of the cost. *See* Correspondence from Mark Prouty to Donald M. Durkin, Jr. dated October 31, 2003 (NEW13716).

Objection by Newark:  This statement mischaracterizes the letter, the letter speaks for itself and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible.  There is no modified design.

119.    Durkin was directed to "complete the current Contract" as designed.    *See* Correspondence from Mark Prouty to Donald M. Durkin, Jr. dated October 31, 2003 (NEW13716).

120.    As an alternative, Durkin offered to conduct the alternatives to the modified design on a time and materials basis. *See* Correspondence from Donald M. Durkin, Jr. to Jill Voeller dated October 29, 2003 (NEW13721).

Objection by Newark:  This statement mischaracterizes the letter, the letter speaks for itself and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible.  There is no modified design.

121.    If Durkin's offer was accepted to implement the alternatives to the modified design on a time and materials basis, control of the operations would be vested in the City and URS. *See* Correspondence from Donald M. Durkin, Jr. to Jill Voeller dated October 29, 2003 (NEW13721).

Objection by Newark: This statement mischaracterizes the letter, the letter speaks for itself, is not a statement of fact, and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible.  There is no modified design.

122.    The City rejected Durkin's offer to conduct the alternatives to the modified design on a time and materials basis. *See* Deposition of Carol Houck, March 22, 2006, page 108, lines 10-18; Deposition of Jill Voeller, April 18, 2006, page 154, lines 20-24.

Objection by Newark:  This statement mischaracterizes the citations and as to citation of deposition testimony, opinions and comments of witnesses and potential experts are not statements of fact and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible.  There is no modified design.

10

123.    The City rejected Durkin's offer to conduct the alternatives to the modified design on a time and material basis because of the cost. *See* Deposition of Carol Houck, March 22, 2006, page 108, lines 10-18; Deposition of Jill Voeller, April 18, 2006, page 154, lines 20-24.

Objection by Newark:  This statement mischaracterizes the citations and as to citation of deposition testimony, opinions and comments of witnesses and potential experts are not statements of fact and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible.  There is no modified design.

124.    Notwithstanding the City's decision not to proceed with any of the alternatives to the modified design because of the cost, Durkin was not provided with the design modification discussed at the October 15, 2003 meeting (and confirmed in the October 29, 2003 correspondence from Project Director Joseph Kula and Project Manager Mark Prouty to Durkin) which Durkin was advised would be implemented even if the City decided not to proceed with any of the alternatives. *See* Correspondence from Joseph Kula and Mark Prouty to Donald M. Durkin, Jr. dated October 29, 2003 (NEW13719-NEW13720); Deposition of Jill Voeller, April 18, 2006, page 34, lines 6-8.

Objection by Newark:  This statement mischaracterizes the citations, the letter speaks for itself and as to citation of deposition testimony, opinions and comments of witnesses and potential experts are not statements of fact and should be offered by Plaintiff during the trial in its presentation of evidence to the extent that it is admissible.  There is no modified design.

125.    Durkin advised the City that it was awaiting direction from the City or URS regarding modification to the plans and sequences discussed at the October 15, 2003 meeting (and confirmed in the October 29, 2003 correspondence from Project Director Joseph Kula and

11

Project Manager Mark Prouty to Durkin). *See* Correspondence from Joseph Kula and Mark Prouty to Donald M. Durkin, Jr. dated October 29, 2003 (NEW13719-NEW13720); Correspondence from Donald M. Durkin, Jr. to Jill Voeller dated October 22, 2003 (NEW13728-NEW13730); Correspondence from Donald M. Durkin, Jr. to Jill Voeller dated October 28, 2003 (NEW13727); Correspondence from Donald M. Durkin, Jr. to Jill Voeller dated October 30, 2003 (DUR000748-DUR000749); Correspondence from Donald M. Durkin, Jr. to Mark Prouty dated October 31, 2003 (NEW13696); Correspondence from Donald M. Durkin, Jr. to Mark Prouty dated November 18, 2003 (DUR000707-DUR000708).

Objection by Newark:  This statement mischaracterizes the letters, the letters speak for themselves and should be offered by Plaintiff at trial during the presentation of its evidence to the extent that it is admissible, and ignores letters which did provide direction.

126.    On November 4, 2003, URS agreed to the placement of a "test" section with a new design for the Zone IV area. *See* Correspondence from Mark Prouty to Donald M. Durkin, Jr. dated November 4, 2003.

Objection by Newark:  The letter speaks for itself and should by offered by Plaintiff during the presentation of its evidence to the extent that it is admissible.

127.    On November 4, 2003, Project Manager Mark Prouty advised Durkin that the "test will entail placing 12 inches of Zone IV material over the installed LLDPE and 16-oz geotextile." *See* Correspondence from Mark Prouty to Donald M. Durkin, Jr. dated November 4, 2003.

KOP:347881v1 3514-04

Objection by Newark: This statement mischaracterizes the letter, the letter speaks for itself and should be offered by Plaintiff during the presentation of its evidence to the extent that it is admissible.

128.    During the "test" section, Project Manager Mark Prouty advised Durkin that if "the test is successful, we will request that you submit a cost for the placement of the 16 oz geotextile and the R-3 RipRap on all the lower slopes in the reservoir. The City … will then review that proposal." *See* Correspondence from Mark Prouty to Donald M. Durkin, Jr. dated November 4, 2003.

Objection by Newark: This statement mischaracterizes the letter, the letter speaks for itself and should be offered by Plaintiff during the presentation of its evidence to the extent that it is admissible.

129.    Durkin completed the test section as described in the November 4, 2003 correspondence from Project Manager Mark Prouty to Durkin on November 12, 2003. *See* Correspondence from Mark Prouty to Donald M. Durkin, Jr. dated November 4, 2003; Correspondence from Donald M. Durkin, Jr. to Mark Prouty to dated November 12, 2003 (NEW13712-NEW13713); Correspondence from Donald M. Durkin, Jr. to Mark Prouty dated November 13, 2003 (NEW13699-NEW13700).

130.    After completing the test section as described in the November 4, 2003 correspondence from Project Manager Mark Prouty to Durkin, Durkin provided URS with cost proposals to implement the new design based on the test section. *See* Correspondence from Donald M. Durkin, Jr. to Mark Prouty to dated November 12, 2003 (NEW13712-NEW13713);

KOP:347881v1 3514-04

Correspondence from Donald M. Durkin, Jr. to Mark Prouty dated November 13, 2003 (NEW13699-NEW13700).

Objection by Newark: This statement mischaracterizes the letters, the letters speak for themselves and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible.

131.    The City reviewed Durkin's lump sum and time and materials cost estimates for providing geotextile and R-3 stone over the Zone IV material, which was based on the test strip that Durkin conducted, and instructed URS to inform Durkin that the costs are too high. *See* Correspondence from Mark Proudy to Donald M. Durkin, Jr. dated November 17, 2003.

Objection by Newark: The letter speaks for itself and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible, and ignores correspondence between Newark and URS.

132.    On November 18, 2003, Durkin advised URS that Durkin "offered to start [with the Slope Revision scenario consisting of 12" Zone 4; Geotextile and 12" R-3] immediately on a T&M basis." *See* Correspondence from Donald M. Durkin, Jr. to Mark Prouty dated November 18, 2003 (NEW03285-NEW03286).

Objection by Newark: The letter speaks for itself and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible.

133.    On November 18, 2003, Durkin advised URS that it received URS' Meeting Minutes for the October 27, 2003 Meeting No. 11 and pointed out that at the October 27, 2003 Meeting No. 11 that "URS noted that they felt the Slope Revision scenario consisting of 12"

14

Zone 4; Geotextile and 12" R-3 would be the most economical; solve the constructability issue and solve the long term integrity issue." *See* Correspondence from Donald M. Durkin, Jr. to Mark Prouty dated November 18, 2003 (NEW03285-NEW03286).

Objection by Newark:  The letter speaks for itself, is not a statement of fact and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible. It is a contested fact whether there was a "constructability issue" to solve.

134.    While the alternatives to the modified design were being discussed, Durkin continued with available work on the Project. *See* Construction Diary of Michael D. Durkin, November 10, 2003; November 11, 2003; November 13, 2003; November 17, 2003; November 18, 2003; November 26, 2003; December 16, 2003; December 18, 2003; December 19, 2003; December 22, 2003; November 23, 2003; November 29, 2003; January 2, 2004; January 6, 2004; January 7, 2004; January 8, 2004.

Objection by Newark:  This statement mischaracterizes the citations, is not a statement of fact, the documents speak for themselves and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible. Durkin had been ordered to proceed with placement of Zone IV soil materials but it refused to do so.  See Mark Prouty letters of November 17, 18, 20 & 24, 2003; Carol Houck letter of November 20, 2003; Jill Voeller letter of December 2, 2003.

135.    While the alternatives to the modified design were being discussed, Durkin had materials delivered to the Project site.  *See* Deposition of Carol Houck, March 22, 2006, page 156 lines 13-17.

Objection by Newark:  This statement mischaracterizes the citation and as to the citation of deposition testimony, opinions or comments of witnesses are not statements of fact and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible.  There is no modified design.

136.    While the alternatives to the modified design were being discussed, Durkin continued to wait for direction from URS.  *See* Correspondence from Joseph Kula and Mark Prouty to Donald M. Durkin, Jr. dated October 29, 2003 (NEW13719-NEW13720); Correspondence from Donald M. Durkin, Jr. to Jill Voeller dated October 22, 2003 (NEW13728-NEW13730); Correspondence from Donald M. Durkin, Jr. to Jill Voeller dated October 28, 2003 (NEW13727); Correspondence from Donald M. Durkin, Jr. to Jill Voeller dated October 30, 2003 (DUR000748-DUR000749); Correspondence from Donald M. Durkin, Jr to Mark Prouty dated October 31, 2003 (NEW13696); Correspondence from Donald M. Durkin, Jr. to Mark Prouty dated November 18, 2003 (DUR000707-DUR000708).

Objection by Newark:  This statement mischaracterizes the citations, is not a statement of fact, the letters speak for themselves and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible.  There is no modified design.  This statement is a contested fact as Durkin was repeatedly told to proceed with the Zone IV soils placement.  See Mark Prouty letters of November 17, 18, 20 & 24, 2003; Houck letter of November 20, 2003; Jill Voeller letter of December 2, 2003.

137.    Additionally, while the alternatives to the modified design were being discussed, Durkin continued to request the City and URS to provide their design calculations and other essential design information.  *See* Correspondence from Donald M. Durkin, Jr. to Jill Voeller

16

dated October 22, 2003 (NEW13728-NEW13730); Correspondence from Donald M. Durkin, Jr. to Jill Voeller dated October 28, 2003 (NEW13727); Correspondence from Donald M. Durkin, Jr. to Jill Voeller dated October 30, 2003 (DUR000748-DUR000749); Correspondence from Donald M. Durkin, Jr. to Mark Prouty dated October 31, 2003 (NEW13696).

Objection by Newark:  This statement mischaracterizes the citations, is not a statement of fact, the letters speak for themselves and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible.  The request was irrelevant to Durkin's obligations under the contract.  There is no modified design.

138.    City and URS did not respond the Durkin's requests for URS' design calculations and other essential design information because URS failed to complete the calculations and analyses prior to bidding.  *See* Deposition of Jill Voeller, April 18, 2006, page 65, lines 16-17; Deposition of John Volk, June 20, 2006, page 46, lines 11-22.

Objection by Newark:  This statement mischaracterizes the citations and is misleading, is not a statement of fact and as to the citation of deposition testimony, opinions and comments of witnesses are not statements of fact and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible.

139.    On November 21, 2003, the City wrote to Durkin, Federal and Durkin's bonding agent, Sheppard Insurance, which stated, in pertinent part, "[o]n behalf of the City of Newark, Delaware, I am writing to inform you that we are now considering declaring [Durkin] in default of Newark Municipal Contract No. 02-02, pertaining to Construction of a Municipal Water Supply Reservoir."…"[t]his precautionary letter has become necessary following [Durkin's] failure to present a response to a means and methods for continuation of the project in

17

accordance with out contract." *See* Correspondence from Carl Luft to Donald M. Durkin, Jr. Contracting, Inc., Federal Insurance Company and The Shepherd Agency dated November 21, 2003 (DUR001431-DUR0014432).

Objection by Newark: The letter speaks for itself.

140.    There is no provision in the Contract documents that required that Durkin submit "a means and methods for continuation of the project" as referred to in the November 21, 2003 correspondence from the City to Durkin, Federal and Durkin's bonding agent, Sheppard Insurance. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02.

Objection by Newark:  This is argument, not a statement of fact and the contract and correspondence speak for themselves.  The contract also requires Durkin to follow the instructions of the Engineer.

141.    The City contends that the November 21, 2003 correspondence from Carl Luft to Donald M. Durkin, Jr. Contracting, Inc., Federal Insurance Company and The Shepherd Agency constitutes the seven day prior written notice of its intent to terminate the Contract.  *See* Correspondence from Carl Luft to Donald M. Durkin, Jr. Contracting, Inc., Federal Insurance Company and The Shepherd Agency dated November 21, 2003 (DUR001431-DUR0014432); Answer, Counterclaim, Paragraph 19; Answer, Third Party Claim, Breach of Contract, Paragraph 9.

Objection by Newark:  This statement summarizes, in part, Newark's legal position, and is not an appropriate statement of fact, and the documents speak for themselves.

142.   Nowhere in the November 21, 2003 correspondence from Carl Luft to Donald M. Durkin, Jr. Contracting, Inc., Federal Insurance Company and The Shepherd Agency does the word "terminate" appear.   *See* Correspondence from Carl Luft to Donald M. Durkin, Jr. Contracting, Inc., Federal Insurance Company and The Shepherd Agency dated November 21, 2003 (DUR001431-DUR0014432).

Objection by Newark: This is argument, not statement of fact and the letter speaks for itself. Nor does the Contract require any specific language in the notice letter.

143.   On December 9, 2003 the City and URS met with Federal and Durkin as requested in the November 21, 2003 correspondence from Carl Luft to Donald M. Durkin, Jr., which was to be an" off the record" meeting.   *See* Correspondence from Carl Luft to Donald M. Durkin, Jr. Contracting, Inc., Federal Insurance Company and The Shepherd Agency dated November 21, 2003 (DUR001431-DUR0014432);   Answer Paragraph 101;   Surety Meeting City of Newark Water Supply Reservoir December 9, 2003 Agenda.

Objection by Newark:  This statement mischaracterizes the citations, the documents speak for themselves and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible.

144.   At the December 9, 2003 meeting with the City, URS, Federal and Durkin it was agreed that Federal was going to engage an independent consultant to review the design.   *See* Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, page 219, line 3-8.

Objection by Newark: This statement mischaracterizes the citation and as to citation of deposition testimony, opinions or comments of witnesses are not statements of fact and should

be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible. There was not such "agreement" as this was strictly a matter for the Surety to decide.

145.    Joseph A. Dombrowski, Jr., the City Director of the Water and Wastewater Department during the timeframe that Durkin was the Contractor for the City, attended the December 9, 2003 meeting on behalf of the City, and it was his expectation that after Federal engaged an independent consultant to review the design, the parties would regroup to further evaluate the next steps. *See* Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, page 219, line 12-17; page 224, lines 6-12; page 218, line 15-18.

Objection by Newark:  Opinions or comments of witnesses are not statements of fact and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible.

146.    As a result of the December 9, 2003 meeting with the City, URS, Federal and Durkin, Federal engaged the services of a geotechnical engineering consultant, Greg Richardson, Ph.D., P.E. *See* G. N. Richardson & Associates Reports dated January 13, 2004 and January 15, 2004.

Objection by Newark:  Contested fact whether this was a "result" of the December 9 meeting as Dr. Richardson had already been engaged by Durkin.

147.    Prior to Federal retaining Dr. Richardson, URS had contacted Dr. Richardson for purposes of soliciting advice regarding URS' design of the Reservoir.  *See* Deposition of John Volk, June 20, 2006, page 45, lines 12-22.

KOP:347881v1 3514-04

Objection by Newark:    Irrelevant under FRE 401, 402 and 403, and the statement mischaracterizes the citation.

148.    A copy of Dr. Richardson's January 13, 2004 report was provided to the City and to URS under a cover letter dated January 20, 2004.  *See* Correspondence from Ellen Cavallaro to Paul Cottrell dated January 20, 2004.

149.    At no time after the December 9, 2003 meeting did the City attempt to meet with representatives of Durkin or Federal to discuss Dr. Richardson's report.

Objection by Newark:  Statement suggests that City was required to do this, and if the statement remains, it should be written "After the December 9, 2003 meeting the City met with URS to discuss Richardson's report, but did not meet with Durkin or Federal."

150.    After submission of Dr. Richardson's report to the City, the City did not provide any response to either Durkin or Federal regarding Dr. Richardson's report up through the date of termination of Durkin's Contract.  *See* Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, page 219, line 12-17; page 224, lines 6-12.

Objection by Newark:  Statement suggests this was required; also ignores key fact that Durkin and Richardson continued to insist on a design change.

151.    At no time prior to terminating Durkin did the City seek an independent evaluation of Dr. Richardson's January 13, 2004 report.  *See* URS January 30, 2004 Report; Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, pages 91-92, lines 22-5.

KOP:347881v1 3514-04

Objection by Newark: This is argument and inappropriate as a statement of fact. Also, statement suggests this was required and whether Dr. Richardson was "independent" is contested as he was originally hired by Durkin; ignores the URS evaluation of the report.

152.    The City never retained the services of an independent engineer to evaluate the modified design of the Reservoir prior to terminating Durkin on February 2, 2003.    *See* Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, pages 91-92, lines 22-5.

Objection by Newark: This statement mischaracterizes the citation and is not a statement of fact. Statement suggests this was required. There is no modified design.

153.    The City never responded to Dr. Richardson's reports until after the Newark City Council convened on February 2, 2004 and terminated Durkin's right to complete the Contract. *See* Correspondence from Carl Luft to Ellen Cavallaro and Donald M. Durkin, Jr. Contracting, Inc. dated February 3, 2004 (NEW00148).

Objection by Newark: This statement mischaracterizes the citation and is not a statement of fact. Also suggests that this was required.

154.    No one from the City approached Durkin to determine if Durkin would build the Reservoir per Richardson's January 13, 2004 and January 15, 2004 Reports and submit a claim. *See* Deposition of Carol Houck, March 30, 2006, page 10-14.

Objection by Newark: Statement suggests this was required.

155.    The City, after receiving Dr. Richardson's reports dated January 13, 2004 and January 15, 2004, did not ask Durkin if they would implement the design suggested by Dr.

Richardson. *See e.g.* Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, page 59, lines 2-5.

Objection by Newark:  Statement suggests this was required.

156.    The City did not invite Durkin for further discussions on the design of the Reservoir prior to terminating Durkin on February 2, 2004. *See* Deposition of Carol Houck, March 30, 2006, page 10-14.

Objection by Newark: This statement mischaracterizes the citation and is not a statement of fact. Statement suggests this was required.

157.    After the December 9, 2003 meeting between, the City, URS, the City's Engineer, Federal and Durkin, Durkin continued with work at the Project, including screening Zone IV materials and installing the liner until the work was halted by weather and Contract specifications.  *See* Construction Diary of Michael D. Durkin, November 10, 2003; November 11, 2003; November 13, 2003; November 17, 2003; November 18, 2003; November 26, 2003; December 16, 2003; December 18, 2003; December 19, 2003; December 22, 2003; November 23, 2003; November 29, 2003; January 2, 2004; January 6, 2004; January 7, 2004; January 8, 2004.

Objection by Newark:  This is not a statement of fact, and the documents speak for themselves and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible.  Also, a mischaracterization as Durkin was ordered to continue Zone IV soils placement but refused.  See Mark Prouty letters of November 17, 18, 20 & 24, 2003; Carol Houck letter of November 20, 2003; Jill Voeller letter of December 2, 2003.

23

158.    In December 2003 and January 2004 work at the earthwork and liner installation was halted by weather and the Contract specifications. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Specification Section 3.01, Section 3.04(d); Construction Diary of Michael D. Durkin[1] December 1, 2003; December 2, 2003; December 3, 2003; December 4, 2003; December 5, 2005; December 10, 2003; December 11, 2003; December 11, 2003; December 12, 2003; December 15, 2003; December 16, 2003; December 17, 2003; December 18, 2003; December 19, 2003;  December 24, 2003; December 29, 2003; January 5, 2003; January 6, 2004; January 7, 2004; January 8, 2004; January 9, 2004; January 12, 2004; January 13, 2004; January 14, 2004; January 16, 2004; January 20, 2004; Construction Diary of Donald  M. Durkin, Jr., December 8, 2003; December 9, 2003; December 11, 2003; Construction Diary of Donald M. Durkin, Jr., Jr.[2] November 19, 2003;  December 2, 2003; December 3, 2003; December 5, 2003; December 8, 2003; December 9.

Objection by Newark:  This is not a statement of fact, the documents speak for themselves and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible. This is a contested fact as good weather did occur during this time period but Durkin did no work.

159.    Under the Project Specifications, there are weather limitations as to when the liner could be placed. *See* Deposition of Jill Voeller, April 18, 2006, pages 71-72, lines 20-1; Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specifications and drawings).

---

[1] The references are cited, are examples only and are not meant to be inclusive.
[2] The references are cited, are examples only and are not meant to be inclusive.

24

Objection by Newark: The contract speaks for itself and will be offered as an exhibit at trial without objection.

160.    Durkin's subcontractors were continuing to work during January, 2004.  *See* Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, page 56, lines 6-10; Correspondence from Donald M. Durkin, Jr. to Jill Voeller dated January 7, 2004 (DUR000692-DUR000693); Fax from Jill Voeller to Donald M. Durkin, Jr. dated January 9, 2004.

161.    Durkin was mobilizing more equipment at the Project site over the winter 2003-2004.  *See* Deposition of Carol Houck, March 22, 2006, page 30, lines 21-22.

Objection by Newark:  This statement mischaracterizes the citation, and if the statement remains it should properly read "…mobilizing and demobilizing equipment..."

162.    Prior to terminating Durkin, the City did not inquire whether Durkin was prepared to continue working in the Spring of 2004.  *See e.g.* Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, page 59, lines 10-14.

Objection by Newark:  This is argument and is misleading and not an appropriate statement of fact. Suggests City was required to do so despite Durkin's repeated insistence that it would not, and ignores repeated urging for Durkin to continue the Zone IV work.  See Mark Prouty letters of November 17, 18, 20 & 24, 2003; Carol Houck letter of November 20, 2003; Jill Voeller letter of December 2, 2003.

163.    The City and URS were aware of the need for a winter shutdown on the Project. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specifications and drawings e.g. Specification Section 3.01, Section 3.04(d));  Memorandum from Jill Voeller

to Donald M. Durkin, Jr.(with copies to Joseph Dombrowski, Jr., Carol Houck, Glenn Bowen and Joseph Kula) dated October 22, 2003 (NEW03317).

Objection by Newark: This statement misrepresents the citation, is not a statement of fact, the contract and correspondence speak for themselves and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible. No one authorized the alleged "winter shutdown". Durkin was continually instructed to proceed. See Mark Prouty letters of November 17, 18, 20 & 24, 2003; Carol Houck letter of November 20, 2003; Jill Voeller letter of December 2, 2003.

164.    The Contract documents limited winter work on the Project due to the effects of low temperatures on the placement of frozen materials, including Zone IV dirt. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specifications and drawings).

Objection by Newark: This statement mischaracterizes the contract which speaks for itself and will be offered as an exhibit at trial without objection. The Contract did not ban "winter work".

165.    Under the Contract documents and specifications, Zone IV materials could not be placed on snow covered slopes. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Specification 02290-9, 2a; Deposition of Glenn Bowen, June 21, 2006, page 179, lines 17-20.

166.    The City and URS were aware that "the 4 month [December 2003 to March 2004] is a worst case scenario." *See* Memorandum from Jill Voeller to Donald M. Durkin, Jr.(with

copies to Joseph Dombrowski, Jr., Carol Houck, Glenn Bowen and Joseph Kula) dated October 22, 2003 (NEW03317).

Objection by Newark: This statement mischaracterizes the citation, the letter speaks for itself and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible. It also is misleading in suggesting a 4 month shutdown was appropriate or authorized.

167.    The City was aware that Durkin planned "to keep working into December [2003] until the weather gets too severe to construct the project." and that Durkin planned "to start up when the weather improves even if it is before the end of March [2004]." *See* Memorandum from Jill Voeller to Donald M. Durkin, Jr. (with copies to Joseph Dombrowski, Jr., Carol Houck, Glenn Bowen and Joseph Kula) dated October 22, 2003 (NEW03317).

Objection by Newark: This letter speaks for itself and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible. Durkin was ordered to proceed with the work. See Mark Prouty letters of November 17, 18, 20 & 24, 2003; Carol Houck letter of November 20, 2003; Jill Voeller letter of December 2, 2003.

168.    Jill Voeller, URS Assistant Project Manager, confirmed that URS and the City "recognize that [Durkin] might need to shut down construction activities for extreme winter weather." *See* Correspondence from Jill Voeller to Donald M. Durkin, Jr. dated November 13, 2003.

Objection by Newark: This letter speaks for itself and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible.

27

KOP:347881v1 3514-04

169. The City and URS, the City's Engineer, granted an extension for final completion of the Project to July 2, 2004. *See* Correspondence from Jill Voeller to Donald M. Durkin, Jr. dated November 13, 2003.

Objection by Newark: Irrelevant, FRE401, 402, 403 and the letter speaks for itself.

170. The extension for final completion of the Project to July 2, 2004 which was granted to Durkin on November 13, 2003, was subject to further extensions "due to extreme weather or the inability to install liner or Fabriform due to cold temperatures." *See* Correspondence from Jill Voeller to Donald M. Durkin, Jr. dated November 13, 2003.

Objection by Newark: The letter speaks for itself and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible.

171. Durkin began advising the City and URS, the City's Engineer, as early as the summer of 2003 that it would likely be necessary to shutdown certain operations over the winter months. *See* Correspondence from Donald M. Durkin, Jr. to Jill Voeller dated April 7, 2003 (DUR000448); Correspondence from Donald M. Durkin, Jr. to Jill Voeller dated June 9, 2003 (DUR000959); Correspondence from Donald M. Durkin, Jr. to Jill Voeller dated July 7, 2003 (DUR00090-DUR000921); Correspondence from Donald M. Durkin, Jr. to Jill Voeller dated August 7, 2003 (NEW13901); Correspondence from Donald M. Durkin, Jr. to Jill Voeller dated August 12, 2003 (DUR000855).

Objection by Newark: This statement mischaracterizes the citations, the letters speak for themselves and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible.

KOP:347881v1 3514-04

172.    There were extremely wet weather conditions experienced throughout 2003 which affected the Project. *See e.g.* Donald M. Durkin, Jr., Jr.'s Construction Diary[3] June 30, 2003; July 28, 2003; August 18, 2003; October 27, 2003; October 28, 2003; October 29, 2003; October 30, 2003; October 31, 2003; November 4, 2003; November 6, 2003; November 7, 2003; November 10, 2003; November 11, 2003; November 12, 2003; November 14, 2003; December 5, 2003; December 8, 2003; December 11, 2003; Michael Durkin's Construction Diary[4] September 9, 2003; September 3, 2003; September 4, 2003; September 5, 2003; September 15, 2003; September 16, 2003; September 18, 2003;  September 22, 2003; September 23, 2003; September 29, 2003; October 2, 2003; October 4, 2003; October 15, 2003; October 22, 2003; October 24, 2003; October 27, 2003; October 28, 2003; October 29, 2003; October 30, 2003; November 3, 2003; November 4, 2003; November 5, 2003; November 7, 2003; November 11, 2003; November 12, 2003; November 20, 2003; November 21, 2003; November 25, 2003; December 1, 2003; December 2, 2003; December 5, 2003; December 10, 2003; December 11, 2003; December 12, 2003; December 15, 2003; December 16, 2003; December 17, 2003; December 18, 2003; December 19, 2003; December 24, 2003; December 29, 2003.

Objection by Newark:   This statement is unclear and misleading, the citations speak for themselves and should be offered by Plaintiff at trial during its presentation of evidence to the extent that it is admissible.

173.    The City was aware of the extremely wet weather conditions experienced throughout 2003 which affected the Project. *See* Memorandum from Carol Houck, Assistant Administrator to Carl Luft, City Manager dated November 11, 2003 (NEW000609).

---

[3] The references are cited, are examples only and are not meant to be inclusive.
[4] The references are cited, are examples only and are not meant to be inclusive.

KOP:347881v1 3514-04

Objection by Newark: Irrelevant, FRE401, 402 403, the statement is misleading and the document speaks for itself.

174. URS, the City's Engineer, advised the City that URS thinks "that it will be difficult to finish this year [2003] due to abnormal weather we are experiencing." *See* Email from Jill Voeller to Joseph Dombrowski, Carol Houck dated June 20, 2003 (URS005026-URS005027).

Objection by Newark: The correspondence speaks for itself and opinions of witnesses are not statements of fact.

175. Not only was the City aware of weather delays on the Project, but on October 28, 2003, URS, the City's Engineer, advised Durkin that the "City has determined that with reference to contract documents they intend to approve a change order for a change in contract time so that the unfinished work can be accomplished based on weather delays." *See* Fax from Jill Voeller to Donald M. Durkin, Jr. dated October 28, 2003 (URS001966).

Objection by Newark: This statement is misleading, predates the time frame at issue and is irrelevant under FRE401, 402, 403 and the document speaks for itself.

176. During the timeframe that Durkin was the Contractor for the City, Durkin never stopped working because of a claim for additional compensation. *See* Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, page 79, lines 10-13; Deposition of Carol Houck, March 30, 2006, page 647, lines 1-3.

Objection by Newark: Durkin refused to further placement of Zone IV soils until the City agreed to an extra for a so-called "modified design" which Durkin insisted upon.