PRETRIAL – EXHIBIT A – PART III

Donald M. Durkin Contracting v. City of Newark et al., C.A. No. 04-0163 GMS

177.    In the January 9, 2004 Administrative Report, Carl Luft, City Manager, advised the City Council that Federal "has directed an independent engineering review of the project information.    This is primarily related to the liner specifications and installation requirements being questioned by Durkin." *See* Newark City Council Administrative Report, January 9, 2004 (NEW14022-NEW14286).

Objection by Newark:  The document speaks for itself.

178.    In the January 9, 2004 Administrative Report, Carl Luft, City Manager, advised the City Council that the City was "supposed to hear about the results of this [independent engineering] review  by the end of this week or the beginning of next week." *See* Newark City Council Administrative Report, January 9, 2004 (NEW14022-NEW14286).

Objection by Newark:  The document speaks for itself.

179.    In the January 9, 2004 Administrative Report, Carl Luft, City Manager, advised the City Council that "the subcontractor responsible for building construction is finishing up the structure on top of the tower [at the Reservoir]." *See* Newark City Council Administrative Report, January 9, 2004 (NEW14022-NEW14286).

Objection by Newark:  The document speaks for itself.

180.    On or before November 18, 2003, the City asked URS for information, including contractual provisions, about terminating Durkin. *See* Deposition of Jill Voeller, April 18, 2006, pages 159-160, lines 20-3.

181.    URS Engineer, John Volk, participated in the liner design, veneer stability and interior stability issues for the Project. *See* Deposition of John Volk, June 20, 2006, page 7, lines 5-8.

182.    On January 20, 2004, URS Engineer, John Volk, recommended to the City that Durkin not be terminated. *See* Deposition of John Volk, June 20, 2006, page 231, lines 18-22.

Objection by Newark:  This is not a statement of fact, has been the subject of multiple conflicting testimonies, the citation of witness comment is not a statement of fact and should be offered by Plaintiff at trial during the presentation of evidence to the extent that it is admissible. This statement is contracted by testimony by City witness and Mark Prouty.

183.    On January 30, 2004 URS prepared a written response to Dr. Richardson's January 13, 2004 report. *See* Answer Paragraph 110; URS Report Dated January 30, 2004.

184.    URS' January 30, 2004 response to Dr. Richardson's January 13, 2004 report was not forwarded to Federal for comment prior the termination of the Contract by the City. *See* Answer Paragraph 110; URS Report Dated January 30, 2004.

Objection by Newark:  Misleading in suggesting this was required.

185.    URS' January 30, 2004 response to Dr. Richardson's January 13, 2004 report was not forwarded to Durkin for comment prior the termination of the Contract by the City.  *See* Answer Paragraph 110; URS Report Dated January 30, 2004.

Objection by Newark:  Misleading in suggesting this was required.

186.    At no time prior to the termination of Durkin's Contract had URS ever stated or recommended to the City that Durkin was in default of its Contract.

Objection by Newark: This is not a statement of fact.  *See*, for example, Deposition of Joseph Dombrowski, Jr.,  June 23, 2006, Page 48-50, Line 22 – 4.  To the contrary, URS repeatedly advised of this default. See, e.g., Prouty letter of November 24, 2003 (NEW0336).

187.    At no time prior to the termination of Durkin's Contract had URS ever stated or recommended to the City that the Durkin had performed was not in compliance with the Contract drawings and specifications.

Objection by Newark:  This is not a statement of fact and is misleading. To the contrary, URS repeatedly advised of this default. See, e.g., Prouty letter of November 24, 2003 (NEW0336).

188.    At no time prior to the termination of Durkin's Contract had URS ever stated or recommended to the City that Durkin's Contract be terminated for default.

Objection by Newark:  This is a contested fact. See, e.g., Executive Session Minutes of February 2, 2004.

KOP:347881v1 3514-04

189.    Up through the time the City terminated Durkin's Contract, URS had approved Durkin's applications for payment, including applications for payment that reflected placement of Zone IV materials.

190.    The City Council held an Executive Session on February 2, 2004. *See* Newark City Council Meeting Minutes, February 2, 2004 (NEW14287-NEW14289).

191.    During the City Council Executive Session on February 2, 2004, the City's litigation attorney Paul Cottrell, Esquire told the City Council "that the dispute dealt with the fact that [Durkin] was losing money on the project", that Durkin "was awarded the job at such a low bid, the only way he could make a profit was through change orders", and that "the 'game' began when the change orders started in order to find money." *See* Newark City Council Meeting Minutes, February 2, 2004 (NEW14287-NEW14289).

Objection by Newark:   Attorney-client privilege, comments made by legal counsel are not statements of fact, the document speaks for itself.

192.    At the February 2, 2004 Newark City Council meeting, the City Council voted to immediately terminate Durkin "from further involvement in the construction of the Newark Water Reservoir ..." *See* Newark City Council Meeting Minutes, February 2, 2004.

Objection by Newark: The minutes speak for themselves.

193.    The reason stated in the Motion to immediately terminate Durkin was Durkin's "refusal to perform under its contract with the City of Newark ..." *See* Newark City Council Meeting Minutes, February 2, 2004.

Objection by Newark:  The minutes speak for themselves.

194.    On February 4, 2004, the day after Durkin was notified that on February 2, 2004 the Newark City Council voted to immediately terminate Durkin's Contract, legal counsel for the City attempted to conditionally "retract" the formal termination of Durkin's Contract or suspend the effective termination date.  *See* Correspondence from Paul Cottrell, Esquire to Paul Logan, Esquire dated February 4, 2004.

Objection by Newark: This is not statement of fact and is argument, it mischaracterizes the letter which speaks for itself and will be presented at trial.  The termination letter states that it is "pursuant to the terms of the Contract."

195.    Durkin's termination was effective immediately upon the vote by City Council. *See* Newark City Council Meeting Minutes, February 2, 2004 (NEW14287-NEW14289).

Objection by Newark: Statement is misleading in the Contract Documents do not address what the "effective date" is but merely required 7 days notice, and the action of Council and the minutes speak for themselves.

196.    On February 3, 2004 the Newark City Manager sent a correspondence to Durkin indicating that the city "declared a Contractor default and hereby formally terminates [Durkin]'s right to complete the contract ..." *See* Correspondence from Carl Luft to Ellen Cavallaro and Donald M. Durkin, Jr. Contracting, Inc. dated February 3, 2004 (FED-NEW036-FED-NEW037).

Objection by Newark:  Misleading statement as the letter states that termination is "pursuant to the terms of the Contract and the Construction Performance Bond...".

197.    The February 3, 2004 correspondence from the Newark City Manager to Durkin indicated that the November 21, 2003 correspondence from the City Manager to Federal constituted the seven day advance written notice of intention to terminate the Contract pursuant to Article 15 of the Contract.  *See* Correspondence from Carl Luft to Ellen Cavallaro and Donald M. Durkin, Jr. Contracting, Inc. dated February 3, 2004 (FED-NEW036-FED-NEW037); *See* Correspondence from Carl Luft to Donald M. Durkin, Jr. Contracting, Inc., Federal Insurance Company and The Shepherd Agency dated November 21, 2003 (DUR001431-DUR0014432).

198.    Prior to the February 2, 2004 City Council Meeting, Carol Houck, Assistant City Administrator, Joseph Dombrowski, Director of Water and Wastewater Department, and URS Project Manager Mark Prouty knew that Carl Luft was going to recommend that Durkin be terminated at the  February 2, 2004 City Council Meeting.   *See* Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, pages 65-66, lines 24-13.

199.    The City alleges that it terminated Durkin for cause under Article 15, Section 15.2 of the Contract.  *See* Answer, Counterclaim, Paragraphs 16 and 17.

Objection by Newark:  This is legal argument, not statement of fact.

200.    Article 15, Section 15.2 of the Contract sets forth a specific procedural protocol and the conditions precedent to the City's right to terminate the Contract for cause.  *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Section 15.2.

Objection by Newark:  The contract speaks for itself and will be offered as an exhibit at trial without objection.

6

201.    Under Article 15, Section 15.2, the City must provide Durkin with seven days' written notice of its intent to terminate Durkin prior to terminating Durkin for cause. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Section 15.2.

Objection by Newark:  The contract speaks for itself and will be offered as an exhibit at trial without objection.

202.    At the time the City wrote to Federal on November 21, 2003, the City knew that there were design deficiencies in the Reservoir design. *See* Correspondence from Joseph Kula to Carol Houck dated October 14, 2003 (NEW13751-NEW13757).

Objection by Newark:  This statement mischaracterizes the citation, is not a statement of fact and the letter speaks for itself. Whether there were design deficiencies is a contested issue of fact.

203.    At the time the City wrote to Federal on November 21, 2003, the City knew that Section 3.3.2 of the Contract provided that "the Contractor [Durkin] shall not proceed with the Work affected thereby" [i.e. a design defect or error] "until an abatement or supplement to the Contract Documents has been issued." *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Section 3.3.2.

Objection by Newark:  This is argument, not statement of fact and the contract speaks for itself. It is also misleading in not quoting the full paragraph.

204.    Up to and including February 4, 2004 when Durkin was notified that it was being immediately terminated, Durkin had performed all of its contractual responsibilities.    *See* Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, page 26, lines 3-10.

7

Objection by Newark: This statement mischaracterizes the citation, is misleading and is not a statement of fact. Durkin failed to place Zone IV materials as continually ordered to do so.

205.    At no time prior to Durkin being terminated on February 2, 2004, did Durkin ever refuse to maintain soils previously placed. *See* Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, page 26, lines 3-10.

Objection by Newark: This statement is misleading and is not a statement of fact. Also contested, see, e.g., Prouty letter of November 24, 2003 (NEW03336).

206.    Mr. Dombrowski testified that he does not know of any specific specification requirement regarding submitting means and methods for the continuation of the Contract that Durkin had not satisfied as of November 21, 2003. *See* Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, page 26, lines 3-10.

Objection by Newark: Witness opinions and comments are not statements of fact and the contract speaks for itself. The Contract Documents did require this submission and the Engineer ordered it and the Contract requires Durkin to follow the instructions of the Engineer.

207.    Mr. Dombrowski testified that he had never heard anyone indicating that Durkin was in default of any Contract section as of November 21, 2003. *See* Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, page 26, lines 15-21.

Objection by Newark: Witness opinions and comments are not statements of fact, this is argument, and the contract speaks for itself. See, e.g., Prouty letter of November 24, 2003. This ignores letter of November 20, 2003 from Newark to Durkin.

8

208.    The Resident Project Representative for the Project, Glenn Bowen, advised Jill Voeller, Assistant Project Manager, in or around January 2004 that the work completed by Durkin up to that point in time was fine and completed to his satisfaction.  *See* Deposition of Glenn Bowen, June 21, 2006, page 174, lines 10-17; pages 174-175, lines 22-7.

Objection by Newark:  Witness opinions and comments are not statements of fact.

209.    Durkin was not in violation of Note 4 of Drawing C2.10 if it did not provide means and methods for mitigation and repair prior to termination.  *See* Deposition of Jill Voeller, April 18, 2006, page 233, lines 18-23.

Objection by Newark:   This is argument, not statement of fact and witness opinions are comments are not statements of fact, the drawing speaks for itself. The Contract Documents did require this submission and the Engineer ordered it and the Contract requires Durkin to follow the instructions of the Engineer.

210.    There is no provision in the Contract documents that required Durkin to provide its means and method at the time requested by Mark Prouty in his November 17, 2003 correspondence to Donald M. Durkin, Jr.   *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specifications and drawings); Deposition of Jill Voeller, April 18, 2006, page 233, lines 18-23; Correspondence from Mark Prouty to Donald M. Durkin, Jr. dated November 17, 2003 (NEW13709).

Objection by Newark:  This statement mischaracterizes the citations, is not statement of fact and the contract and correspondence speaks for itself. The Contract Documents did require this

submission and the Engineer ordered it and the Contract requires Durkin to follow the instructions of the Engineer.

211.    Durkin was not required to protect the Zone IV material until they placed the Zone IV material to the full depth of 18". *See* Deposition of Joseph Kula, June 13, 2006, pages 129-130, lines 24-6.

Objection by Newark: This statement is misleading. Contract states otherwise.

212.    The City never provided Durkin with seven (7) days written notice prior to termination. *See* Correspondence from Carl Luft to Donald M. Durkin, Jr. Contracting, Inc., Federal Insurance Company and The Shepherd Agency dated November 21, 2003 (DUR001431-DUR0014432); Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, page 288, lines 10-17; 20-21.

Objection by Newark: This is argument, not statement of fact, goes to a central dispute in this action, mischaracterizes the citations, and the letter speaks for itself.

213.    On or about March 16, 2004 Durkin filed a Complaint naming City as Defendants. *See* Complaint.

214.    In its Counterclaim, the City states that [o]n November 21, 2003 the City gave written notice of its intent to terminate the Contact." *See* Answer, Counterclaim, Paragraph 19.

215.    In its Third Party Claim, the City indicates that notice was provided on November 21, 2003. *See* Answer, Third Party Claim, Paragraph 9.

KOP:347881v1 3514-04

216.   Durkin complied with the required specifications in placing Zone IV material in September 2003 before the materials eroded.  *See* Deposition of Jill Voeller, April 18, 2006, page 17, lines 18-23.

Objection by Newark:  Durkin failed to protect the materials after placement or implement procedures to mitigate erosion.  See, e.g., Prouty letter of November 24, 2003.

217.   Durkin was not responsible for the design of the Reservoir.  *See* Deposition of Jill Voeller, April 18, 2006, page 44, lines 23-24.

218.   As the City's Engineer, URS had the responsibility to respond to questions asked by Durkin.  *See* Deposition of Jill Voeller, April 18, 2006, page 60, lines 8-12; Water Supply Reservoir City of Newark, Delaware Contract 02-02.

219.   When URS was designing the Project, it did not perform any calculations for the stability of the FabriForm material for that specific application.  *See* Deposition of Jill Voeller, April 18, 2006, page 65, lines 16-17; Deposition of John Volk, June 20, 2006, page 46, lines 11-22.

220.   When URS was designing the Project, it did not consider what would happen if the material under the FabriForm eroded away to the level of the FabriForm mattress.  *See* Deposition of Jill Voeller, April 18, 2006, page 93, lines 8-13.

221.   Durkin's placement of Zone IV material on the side slopes was in compliance with the specifications.  *See* Deposition of Jill Voeller, April 18, 2006, pages 221-222, lines 22-12.

Objection by Newark:  This statement is misleading as written and mischaracterizes the citation. Contested fact.  See, e.g., Prouty letter of November 24, 2003.

222.    After Durkin was terminated, the City asked URS to complete the Project.  *See* Deposition of Joseph Kula, June 13, 2006, page 49, lines 8-14.

223.    URS informed the City that it would not complete the Project.  *See* Deposition of Joseph Kula, June 13, 2006, page 49, lines 16-19.

224.    URS, the City's Engineer, submitted a proposal to the City for claims assistance in this litigation between Durkin and the City.  *See* Deposition of Joseph Kula, June 13, 2006, page 60, lines 17-21.

225.    David Athey, a member of the Newark City Council at times relevant to this matter, was and continues to be employed by URS.  *See* Deposition of David J. Athey, June 8, 2006, page 5, lines 15-17.

226.    David Athey participated in the design of the Project. *See* Deposition of David J. Athey, June 8, 2006, page 5, lines 17-20.

Objection by Newark:  This statement misrepresents the citation and is misleading.  Athey's participation is design preceded his election.

227.    David Athey participated in design work for drainage on the Project *See* Deposition of David J. Athey, June 8, 2006, page 5, lines 17-20.

KOP:347881v1 3514-04

Objection by Newark: This statement misrepresents the citation and is misleading. Athey's participation is design preceded his election to Council, and as a Councilmember did not participate in any discussions of termination, including the vote to terminate.

228.    David Athey's initials ("DJA") appear on Drawing G-2.05 (sheet 10 of 59), "Sediment & Erosion Control Details #3" for the Project. *See* Drawing G-2.05 (sheet 10 of 59), "Sediment & Erosion Control Details #3" (CC3339); Deposition of David J. Athey, June 8, 2006, page 5, lines 17-20.

Objection by Newark: This statement misrepresents the citation and the drawings speak for themselves. Athey's participation in design preceded his election.

229.    David Athey's initials ("DJA") appear on Drawing G-2.06 (sheet 10 of 59), "Sediment & Erosion Control Details #4" for the Project. *See* Drawing G-2.06 (sheet 10 of 59), "Sediment & Erosion Control Details #4" (CC3339); Deposition of David J. Athey, June 8, 2006, page 5, lines 17-20.

Objection by Newark: This statement misrepresents the citation and the drawings speak for themselves. Athey's participation in design preceded his election.

230.    Durkin was advised on January 13, 2004 that all prospective applications for payment would be processed on a monthly basis, not a bi-weekly basis. *See* Correspondence from Jill Voeller to Donald M. Durkin, Jr. dated January 13, 2004.

Objection by Newark: Irrelevant, FRE 401, 402 and 403, and the letter speaks for itself.

231.    Under the Performance Bond, the City is required to notify Federal and Durkin that the City is "considering declaring a Contractor Default." *See* Performance Bond, Section 3.1.

Objection by Newark:  The Performance Bond speaks for itself and will be offered as an exhibit at trial.

232.    Under the Performance Bond, the City is required to request and attempt to arrange a conference with the Contractor and Surety within 15 days of the receipt of the notice to discuss methods of performing the Construction Contract. *See* Performance Bond, Section 3.1

Objection by Newark:  The Performance Bond speaks for itself and will be offered as an exhibit at trial.

233.    Under the Performance Bond, the City is required to wait at least 20 days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1 of the Performance Bond. *See* Performance Bond, Section 3.2.

Objection by Newark:  The Performance Bond speaks for itself and will be offered as an exhibit at trial.

234.    The City must declare a Contractor Default and formally terminate the Contractor's right to complete the Construction Contract seven days after providing the requested notice. *See* Performance Bond, Section 3.2; Water Supply Reservoir City of Newark, Delaware Contract 02-02, Section 15.2.

14

Objection by Newark: This is argument, is not a statement of fact, misrepresents the contract and Performance Bond which speak for themselves and will be offered at trial as exhibits.

235.    The City's November 21, 2003, to Durkin, Federal and Durkin's bonding agent, Shepherd Insurance was written to satisfy the requirements of the Bond. *See* Correspondence from Carl Luft to Donald M. Durkin, Jr. Contracting, Inc., Federal Insurance Company and The Shepherd Agency dated November 21, 2003 (DUR001431-DUR0014432); Correspondence from Paul Cottrell, Esquire to Paul Logan, Esquire dated February 20, 2004.

Objection by Newark: This statement is misleading and incomplete, the letters speak for themselves and will be offered as exhibits at trial.

236.    After Durkin was terminated, the City put the remaining portion of the Project out for bid.

237.    The City did not receive any bids for the remaining portion of the Project.

238.    The City entered into negotiations with George & Lynch, Inc. ("George & Lynch") and entered into a contract on or about November 5, 2004. *See* George & Lynch Contract (GL0460-GL0477).

239.    The City did not enter into negotiations with, or solicit any bids from, any other contractor except George & Lynch. *See* Deposition of Carol Houck, page 298.

Objection by Newark: This statement misrepresents the citation.

15

240.    When the City entered into the contract with George & Lynch, the City did not know if George & Lynch's prices were higher or lower than any other Delaware contractor. *See* Deposition of Carol Houck, page 298.

Objection by Newark: This statement misrepresents the citation. Also it is misleading as the City relied upon URS to evaluate the reasonableness of proposals.

241.    On or about November 11, 2004, the City agreed "to indemnify and hold George & Lynch harmless form any claims, damages, losses, and expenses arising our of work, labor, services, material and/or equipment which was performed and/or supplied prior to George & Lynch Inc.'s commencement of work at the reservoir site." *See* Correspondence from Carl Luft to Will Robinson dated November 11, 2004 (GL4379).

Objection by Newark:  Irrelevant, FRE 401, 402 and 403 and the letter speaks for itself.

242.    The Resident Project Representative for the Project did not have the authority to waive, modify or change in any way the Contract requirements and specifications.    *See* Deposition of Glenn Bowen, April 13, 2006, page 7, lines 18-23.

Objection by Newark:  This is legal argument, citation of witness opinions and comments are not statements of fact.

243.    Material used for Zone IV must be non-organic soils from onsite material.  *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02,  Specification 02290-3, D1; Deposition of Glenn Bowen, April 13, 2006, page 14, lines 8-10.

KOP:347881v1 3514-04

244.     Under the Contract specifications, Zone IV materials are to be compacted to not less than 90% of the laboratory maximum dry density.  *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02,  Specification 02290-9, 2h;  Deposition of Glenn Bowen, April 13, 2006, page 18, lines 19-23.

245.     URS, the City's Engineer, had the responsibility to develop proctors for the Zone IV materials when Durkin was the City's contractor.  *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specifications and drawings); Deposition of Glenn Bowen, April 13, 2006, page 21, lines 10-13.

246.     URS, the City's Engineer, had the responsibility to conduct density testing of placed materials when Durkin was the City's contractor.  *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specifications and drawings); Deposition of Glenn Bowen, April 13, 2006, page 21, lines 14-16.

247.     Under the Contract specifications, Zone IV materials are to be placed by low ground pressure equipment (<5 psi).  *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02,  Specification 02290-9, 2a;  Deposition of Glenn Bowen, April 13, 2006, page 23, lines 19-23.

Objection by Newark: This statement is misleading and is not a statement of fact, *See*, for example, Deposition of John Volk, June 20, 2006, Page 31, Lines 2-11, and the contract speaks for itself.

248.     Under the Contract specifications, for the entire placement process of Zone IV materials, the contractor was limited to using only low ground pressure equipment.  *See* Water

KOP:347881v1 3514-04

Supply Reservoir City of Newark, Delaware Contract 02-02, Specification 02290-9, 2a; Deposition of Glenn Bowen, April 13, 2006, page 23, lines 19-23.

Objection by Newark: This statement is misleading and is not a statement of fact, *See*, for example, Deposition of John Volk, June 20, 2006, Page 31, Lines 2-11, and the contract speaks for itself.

249.    The only contract specification regarding compaction of Zone IV materials using low ground pressure equipment was Specification 02290-9, 2a. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Specification 02290-9, 2a; Deposition of Glenn Bowen, April 13, 2006, page 31, lines 5-8, 16.

Objection by Newark: The contract speaks for itself and will be introduced as an exhibit at trial without objection.

250.    When George & Lynch was the contractor on the Project, there was no compaction test that was ever completed on any small surface area that was repaired due to erosion. *See* Deposition of Glenn Bowen, April 13, 2006, page 37, lines 3-7.

Objection by Newark:  Irrelevant, FRE401, 402 and 403 and the statement misrepresents the citation.

251.    Rills caused by erosion formed under the FabriForm when George & Lynch was the contractor on the Project. *See* Deposition of Glenn Bowen, April 13, 2006, pages 61-62, lines 24-4, 21-23.

Objection by Newark:  Irrelevant, FRE401, 402, 403.

KOP:347881v1 3514-04

252.    When George & Lynch was the contractor on the Project, there was no compaction test that was ever completed on any area that was repaired under the Fabriform due to erosion. *See* Deposition of Glenn Bowen, April 13, 2006, page 68, lines 7-11.

Objection by Newark:  Irrelevant, FRE401, 402, 403.

253.    Notwithstanding George & Lynch's placement of rain sheets over the Zone IV materials, sloughing and erosion of Zone IV materials occurred.  *See* Deposition of Glenn Bowen, April 13, 2006, pages 96-97, lines 18-4.

Objection by Newark:  Irrelevant, FRE401, 402, 403.

254.    When George & Lynch repaired erosion that occurred in Zone IV materials, the only methodology to determine the adequacy of any repair was a visual observation.  *See* Deposition of Glenn Bowen, April 13, 2006, page 126, lines 12-20.

Objection by Newark:   Irrelevant, FRE401, 402, 403 and the statement misrepresents the citation.

255.    There is no statute or other legal process under the laws of the State of Delaware by which the Water Supply Reservoir, City of Newark, Delaware, Contract 02-02, once terminated, could thereafter be revived and reinstated by the procuring agency.

Objection by Newark: This is legal argument, is not statement of fact and is misleading.

256.    The City of Newark Delaware Council held an Executive Session on April 26, 2006. *See* Newark City Council Meeting Minutes, April 26, 2004 (NEW14290-NEW14291).

19

Objection by Newark: Irrelevant, FRE401, 402, 403 and attorney-client privilege to those portions of the meeting that haven't been ruled as non-protected by Judge Sleet. The year should be 2004.

257. Mark Prouty, P.E., URS Project Manager for the Reservoir Project, and a "host of representatives from URS (Jill Voeller, John Bischoff, Joseph Ellam, Glenn Bowen, John Volk, Matthew Linter, Esquire and Ronald Fobel)" attended the City of Newark Delaware Council Executive Session on April 26, 2006 at 10:22 p.m. *See* Newark City Council Meeting Minutes, April 26, 2004 (NEW14290-NEW14291).

Objection by Newark: Irrelevant, FRE401, 402, 403. Year should be 2004.

258. At the City of Newark Delaware Council Executive Session on April 26, 2006 John Volk "explained the major concept of the reservoir and how URS was confident that it could be built as designed in spite of [Durkin's] claim that it could not be built as designed." *See* Newark City Council Meeting Minutes, April 26, 2004 (NEW14290-NEW14291).

Objection by Newark: Year should be 2004.

259. On May 27, 2004 Roger Akin, City Solicitor, informed the City Council that URS was advised that the City's independently retained engineer, Craig Calabria, P.E., "has come to the conclusion that the Zone 4 materials and the means by which they were to be installed per the URS reservoir design would present constructability problems." *See* Memorandum from Roger Akin, City Solicitor to Mayor and City Council dated May 27, 2004 (NEW10628-NEW10630).

Objection by Newark: Attorney-client privilege, irrelevant under FRE401, 402 and 403, comments by legal counsel are not statements of fact, hearsay as Calabria will be called by

Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact.

260.    On May 27, 2004 Roger Akin, City Solicitor, informed the City Council that it was the City's independently retained engineer, Craig Calabria, P.E.'s, "opinion that the soils would wick underlying moisture upward and the saturated soils would slump or slide during or after construction." *See* Memorandum from Roger Akin, City Solicitor to Mayor and City Council dated May 27, 2004 (NEW10628-NEW10630).

Objection by Newark:  Attorney-client privilege, irrelevant under FRE401, 402 and 403, comments by legal counsel are not statements of fact, Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact.

261.    On May 27, 2004 Roger Akin, City Solicitor, informed the City Council that when URS learned the opinion of the City's independently retained engineer, Craig Calabria, P.E., URS "immediately requested a 'technical' meeting." *See* Memorandum from Roger Akin, City Solicitor to Mayor and City Council dated May 27, 2004 (NEW10628-NEW10630).

Objection by Newark:  Attorney-client privilege, irrelevant under FRE401, 402 and 403,  and comments by legal counsel are not statements of fact.

262.    On May 27, 2004 Roger Akin, City Solicitor, informed the City Council that when URS learned the opinion of the City's independently retained engineer, Craig Calabria, P.E., "URS' predictable initial reaction was to become extremely defensive about its design."

21

*See* Memorandum from Roger Akin, City Solicitor to Mayor and City Council dated May 27, 2004 (NEW10628-NEW10630).

Objection by Newark: Attorney-client privilege, irrelevant under FRE401, 402 and 403, and comments by legal counsel are not statements of fact.

263.    The test sections conducted in the May/June 2004 timeframe at the Project site where not directed by the City to be prepared and completed. *See* Deposition of John Volk, June 20, 2006, page 93, lines 5-9.

264.    The test sections conducted in the May/June 2004 timeframe at the Project site where conducted at the suggestion of URS, the City's Engineer. *See* Deposition of John Volk, June 20, 2006, page 93, lines 5-9.

265.    Craig Calabria, Ph.D., P.E. was retained as a consultant by the City in the first quarter of 2004. *See* Deposition of Craig Calabria, November 10, 2005, page 7, lines 17-20.

266.    During a site visit to the Reservoir during the construction work by George & Lynch, Dr. Calabria confirmed that there were rills, gullies and erosion under the rain sheets placed by George & Lynch. *See* Deposition of Craig Calabria, May 3, 2006, page 7, lines 13-14.

Objection by Newark: Irrelevant, FRE401, 402, 403, Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact.

267.    Dr. Calabria determined that erosion of the Zone IV materials was caused by "rainwater falling directly on the side slope covered with the cover soil and the water that was

accumulated on the upper reaches of the liner above the cover soil washing down until the cover soil." *See* Deposition of Craig Calabria, May 3, 2006, page 7, lines 13-14.

Objection by Newark:  Irrelevant, FRE401, 402, 403, Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact.

268.    Dr. Calabria testified that there is nothing in the Project specifications, drawings or the basis of design document prepared by URS, the City's Engineer, that indicated how to mitigate the erosion of the Zone IV soil.  *See* Deposition of Craig Calabria, May 3, 2006, page 14, lines 4-8.

Objection by Newark:  Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact, and the contract speaks for itself. And misleading as the Contract called for Durkin to devise means and methods to mitigate erosion which Durkin failed to do.

269.    Dr. Calabria testified that there is nothing in the Project documentation, drawings or specifications that address the issue of veneer stability of Zone IV materials.  *See* Deposition of Craig Calabria, May 3, 2006, page 27, lines 6-9.

Objection by Newark:  Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact and the contract speaks for itself.

270.    Dr. Calabria testified that there is nothing in the Project documentation, drawings or specifications that tell the contractor how to mitigate the water flow that would cause initial

failures and perhaps a second failure in Zone IV materials. *See* Deposition of Craig Calabria, May 3, 2006, page 35, lines 7-12.

Objection by Newark: Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact and the contract speaks for itself. And misleading as the Contract called for Durkin to devise means and methods to mitigate erosion which Durkin failed to do.

271.    Dr. Calabria testified that there is no Project specification that directs the contractor to mitigate the water sources of the erosion. *See* Deposition of Craig Calabria, May 3, 2006, page 35, lines 13-16.

Objection by Newark: Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact and the contract speaks for itself. And misleading as the Contract called for Durkin to devise means and methods to mitigate erosion which Durkin failed to do.

272.    Dr. Calabria testified that there is no portion of the Project specification that controlled the surface water from above Elevation 169 reaching the compacted Zone IV materials. *See* Deposition of Craig Calabria, May 4, 2006, page 82, lines 7-12.

Objection by Newark: Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact and the contract speaks for itself. And misleading as the Contract called for Durkin to devise means and methods to mitigate erosion which Durkin failed to do.

273.    Dr. Calabria testified that it would be inconsistent with the Contract documents to not fully compact the rills and gullies that were repaired to at least 90% of the laboratory maximum dry density. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02, Specification 02290-9, 2h; Deposition of Craig Calabria, May 3, 2006, page 17, lines 16-24.

Objection by Newark:    Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact and the contract speaks for itself.

274.    Dr. Calabria testified that it is not possible to obtain the required compaction under the Contract specifications when repairing rills, gullies, sloughing and similar Zone IV failures after the water covers it. *See* Deposition of Craig Calabria, May 3, 2006, page 37, line 7-11.

Objection by Newark:    Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact.

275.    Dr. Calabria testified that a test is needed to determine if the Zone IV materials are compacted to at least 90% of the laboratory maximum dry density. *See* Deposition of Craig Calabria, May 3, 2006, page 41, line 22-24.

Objection by Newark:    Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact.

KOP:347881v1 3514-04

276.    Dr. Calabria testified that the Zone IV soils are susceptible to slope failure in terms of a veneer failure.  *See* Deposition of Craig Calabria, May 3, 2006, page 19, lines 9-12.

Objection by Newark:   Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact.

277.    Dr. Calabria testified that he observed at the Reservoir site "seepage forces along the slope, and those seepage forces were sufficient to initiate a slope failure."  *See* Deposition of Craig Calabria, May 3, 2006, page 22, lines 8-12.

Objection by Newark:   Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact.

278.    Dr. Calabria testified that the Zone IV materials "are erodible and are subject to sloughing if they become saturated."  *See* Deposition of Craig Calabria, May 3, 2006, page 22, lines 8-12.

Objection by Newark:   Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact.

279.    Dr. Calabria testified that the fact that the Zone IV materials are erodible and are subject to sloughing if they become saturated should have been noted in the Project specifications.  *See* Deposition of Craig Calabria, May 3, 2006, page 25 lines 5-7.

KOP:347881v1 3514-04

Objection by Newark: Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact.

280.   Dr. Calabria testified that there is no ordinary means and methods to mitigate sloughing (as depicted on Calabria Exhibit 11) that occurred during the filling process of the Reservoir. *See* Deposition of Craig Calabria, May 3, 2006, page 36 lines 11-18; page 37 lines 2-4.

Objection by Newark: This is unclear, Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact.

281.   Dr. Calabria testified that there is no practical means of mitigate sloughing (as depicted on Calabria Exhibit 11) that occurred during the filling process of the Reservoir. *See* Deposition of Craig Calabria, May 3, 2006, page 36 lines 11-18; page 37 lines 2-4.

Objection by Newark: This is unclear, Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact.

282.   Dr. Calabria was not asked by the City to evaluate whether or not after a contractor placed the Zone IV material, compacted it, built it as designed, that the Zone IV material would stay on the slope under conditions of run off of surface water from the upper interior slope. *See* Deposition of Craig Calabria, May 4, 2006, page 79, line 4-10.

Objection by Newark: This statement misrepresents the citation, Calabria has opined that the Zone IV was constructible and safe, and Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact.

283.    Dr. Calabria testified that Durkin had raised a legitimate question when it raised the issue of Fabriform stabilization. *See* Deposition of Craig Calabria, May 4, 2006, page 121 lines 13-15, 18-21.

Objection by Newark: This statement misrepresents the citation, Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact.

284.    Dr. Calabria testified that it is accurate and conservative to state that Zone IV soils had a cohesion of zero. *See* Deposition of Craig Calabria, May 4, 2006, page 141 lines 1-5.

Objection by Newark: Calabria will be called by Plaintiff to testify and can be questioned directly regarding his opinions, and further, opinions and comments of experts are not statements of fact.

285.    Change Order requests could not be processed and paid without the City reviewing and determining that the requests were fair and reasonable. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02; Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, pages 77-78, lines 25-4.

Objection by Newark: The contract speaks for itself and will be offered as an exhibit at trial without objection.

286.    When URS certified to the City a recommendation for payment to Durkin, URS was certifying that the work described in the payment application had been completed in accordance with the Contract Specifications.    *See* Deposition of Jill Voeller, April 18, 2006, page 98, lines 19-23;  Water Supply Reservoir City of Newark, Delaware Contract 02-02.

Objection by Newark:  The statement misrepresents the contract which speaks for itself and will be offered as an exhibit at trial without an objection. *See* Contract Para. 14.5.

287.    URS executed the Engineer's Certificate for Payment of Application and Certificate for Payment, Application No. 14 dated September 1, 2003 on September 12, 2003. *See* Application and Certificate for Payment, Application No. 14 dated September 1, 2003, Attachment A to Application and Certificate for Payment.

288.    Carol Houck, Assistant City Administrator, approved Application and Certificate for Payment, Application No. 14 dated September 1, 2003.  *See* Deposition of Carol Houck, March 23, 2006, page179, lines 20-21.

289.    URS executed the Engineer's Certificate for Payment of Application and Certificate for Payment, Application No. 15 dated September 1, 2003 on October 2, 2003.  *See* Application and Certificate for Payment, Application No. 15 dated September 1, 2003, Attachment A to Application and Certificate for Payment.

290.    Carol Houck, Assistant City Administrator, approved Application and Certificate for Payment, Application No. 15 dated September 1, 2003.  *See* Deposition of Carol Houck, March 23, 2006, page 181, lines 3-5.

291.    URS executed the Engineer's Certificate for Payment of Application and Certificate for Payment, Application No. 16 dated September 30, 2003 on October 3, 2003. *See* Application and Certificate for Payment, Application No. 16 dated October 3, 2003, Attachment A to Application and Certificate for Payment.

292.    Carol Houck, Assistant City Administrator, approved Application and Certificate for Payment, Application No. 16 dated September 30, 2003. *See* Deposition of Carol Houck, March 23, 2006, page 181, lines 17-24.

293.    URS executed the Engineer's Certificate for Payment of Application and Certificate for Payment, Application No. 18. *See* Application and Certificate for Payment, Application No. 18, Attachment A to Application and Certificate for Payment.

294.    URS executed the Engineer's Certificate for Payment of Application and Certificate for Payment, Application No. 19. *See* Application and Certificate for Payment, Application No. 19, Attachment A to Application and Certificate for Payment.

295.    URS executed the Engineer's Certificate for Payment of Application and Certificate for Payment, Application No. 20. *See* Application and Certificate for Payment, Application No. 20, Attachment A to Application and Certificate for Payment.

296.    URS executed the Engineer's Certificate for Payment of Application and Certificate for Payment, Application No. 21. *See* Application and Certificate for Payment, Application No. 21, Attachment A to Application and Certificate for Payment.

KOP:347881v1 3514-04

297.    URS executed the Engineer's Certificate for Payment of Application and Certificate for Payment, Application No. 22. *See* Application and Certificate for Payment, Application No. 22, Attachment A to Application and Certificate for Payment.

298.    URS approved payment to Durkin for Change Order No. 16. *See* Correspondence from Carol Houck to Donald M. Durkin, Jr. dated December 30, 2003.

299.    The City withheld payment from Durkin for Application and Certificate for Payment, Application No. 18. *See* Correspondence from Carol Houck to Donald M. Durkin, Jr. dated December 30, 2003.

300.    The City withheld payment from Durkin for Application and Certificate for Payment, Application No. 19. *See* Correspondence from Carol Houck to Donald M. Durkin, Jr. dated December 30, 2003.

301.    The City withheld payment from Durkin for Application and Certificate for Payment, Application No. 20. *See* Correspondence from Carol Houck to Donald M. Durkin, Jr. dated December 30, 2003.

302.    The City withheld payment from Durkin for Application and Certificate for Payment, Application No. 21. *See* Correspondence from Carol Houck to Donald M. Durkin, Jr. dated December 30, 2003.

303.    The City withheld payment from Durkin for Application and Certificate for Payment, Application No. 22. *See* Correspondence from Carol Houck to Donald M. Durkin, Jr. dated December 30, 2003.

KOP:347881v1 3514-04

304.    The City withheld payment from Durkin for Change Order No.16.    *See* Correspondence from Carol Houck to Donald M. Durkin, Jr. dated December 30, 2003.

305.    The City had no information that Durkin had not satisfied all conditions precedent to entitle payment for Payment of Application and Certificate for Payment, Application Nos. 18-23, inclusive.  *See* Deposition of Carol Houck, March 22, 2006, page 15, lines 5-11.

Objection by Newark:  This statement is misleading, misrepresents the citation and is not a statement of fact. The Contract provides that the City can withhold monies for non-performance.

306.    The City did not have any information that the certification for payment by URS, the City's Engineer, for Payment of Application and Certificate for Payment, Application Nos. 18-23, inclusive, did not accurately represent the quality of work being generally in accordance with the Contract documents.  *See* Deposition of Carol Houck, March 22, 2006, page 15, lines 12-18.

307.    The City did not have any information that the certification for payment by URS for Change Order No. 16 did not accurately represent the quality of work being generally in accordance with the Contract documents.  *See* Deposition of Carol Houck, March 22, 2006, page 15, lines 12-18.

308.    The method for paying for paying Durkin for incomplete work under the Contract up until the time of termination would be on a time and materials basis.  *See* Deposition of Carol Houck, March 30, 2006, page 668-669, lines 24-11.

Objection by Newark:  This statement is misleading, misrepresents the citation, is not a statement of fact and the contract speaks for itself.

32

309.    At the time that Durkin was terminated, the Zone IV work was not complete. *See* Deposition of Carol Houck, March 30, 2006, page 668-669, lines 24-11.

310.    At the time that Durkin was terminated, placement of the liner was not complete. *See* Deposition of Carol Houck, March 30, 2006, page 667, lines 17-19.

311.    At the time that Durkin was terminated, finished grading of the earth work that the liner was to accept was not complete. *See* Deposition of Carol Houck, March 30, 2006, page 667, lines 20-23.

312.    At the time that Durkin was terminated, Zone V was not completed. *See* Deposition of Carol Houck, March 30, 2006, page 666, line 18.

313.    At the time that Durkin was terminated, the work of Durkin's subcontractor Talley Brothers was not complete. *See* Deposition of Carol Houck, March 30, 2006, page 668, lines 10-11.

314.    At the time that Durkin was terminated, the work of Durkin's subcontractor Hallaton was not complete. *See* Deposition of Carol Houck, March 30, 2006, page 668, lines 12-13.

315.    URS continued to certify Durkin's pay applications for work performed on the Project into January 2004. *See e.g.* Pay Application No. 24 (DUR002031-DUR002047).

316.    Each and every item listed on Durkin's last Application and Certificate for Payment, that is not 100% complete is considered incomplete work under the Contract. *See* Durkin's Application and Certification for Payment (DUR002026-DUR002505).

317.    The City has never requested that Durkin reimburse it for any of the money paid to Durkin for the placement of Zone IV materials.  *See* Deposition of Carol Houck, March 22, 2006, page 183.

318.    The Contract documents for the Project do not refer to rain sheets.  *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specifications and drawings); Deposition of Joseph Kula, June 13, 2006, page 113, lines 21-23.

Objection by Newark:  The contract speaks for itself.

319.    The Contract documents for the Project do not refer to tackifier. *See* Deposition of Joseph Kula, June 13, 2006, page 113, lines 17-20.

Objection by Newark:  The contract speaks for itself.

320.    There is no practical way to repair erosion that exists under the water at the Reservoir unless divers are used.  *See* Deposition of John Volk, June 20, 2006, page 255, lines 3-5.

Objection by Newark:  This statement is misleading, assumes facts not in evidence, and is irrelevant under FRE401, 402 and 403.

321.    It was not the design intent of the Project documents for a contractor to utilize divers to repair erosion that exists under the water at the Reservoir.  *See* Deposition of John Volk, June 20, 2006, page 255, lines 3-13.

Objection by Newark:  This statement is misleading, assumes facts not in evidence, and is irrelevant under FRE401, 402 and 403.

KOP:347881v1 3514-04

322.    There is no requirement in the Contract that Durkin submit a means and methods to the City to protect and control the Work, including the liner system.  *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specifications and drawings).

Objection by Newark:  The contract speaks for itself and will be offered at trial as an exhibit without objection. The Contract does have such a requirement.

323.    Specification Section 02225 does not require Durkin to submit any means and methods to the City.  *See* Deposition of Joseph A. Dombrowski, Jr., June 23, 2006, pages 14-15, lines 24-5; Water Supply Reservoir City of Newark, Delaware Contract 02-02 (including specifications and drawings).

Objection by Newark:  This statement is misleading and the contract speaks for itself.

324.    The Contract documents allowed for the raking or screening of Zone IV materials. *See* Water Supply Reservoir City of Newark, Delaware Contract 02-02; Deposition of Glenn Bowen, April 13, 2006, page 15, lines 15-19.

Objection by Newark:  The contract speaks for itself.

325.    Nowhere in the plans, drawings or specifications for the Project is there any description of how Durkin is to protect Zone IV materials during construction.  Deposition of John Volk, June 20, 2006, page 27, lines 4-9.

326.    Note 4 on drawing C-2.10 of the Project drawings does not apply to the phenomenon of sloughing.  *See* Deposition of John Volk, June 20, 2006, page 204, lines 22-25.

Objection by Newark:  The statement misrepresents the citation and the contract speaks for itself.

327.    URS discussed with the City during the design phase of the Project that there would be a means and methods requirement imposed on the contractor to protect Zone IV materials, however, URS did not discuss how the means and methods could be accomplished. *See* Deposition of John Volk, June 20, 2006, page 35, lines 18-24.

## PROPOSED ADDITIONAL STIPULATED FACTS BY CITY OF NEWARK

328.    Durkin did not place any Zone IV material after September, 2003.

Durkin objects as being factually imprecise and inaccurate.

329.    The City of Newark has paid Durkin $6,230,745.

330.    As an experienced contractor, Durkin knew that soils exposed to rain would erode.

Durkin objects on the basis that the statement is conclusory, vague and ambiguous, factually inaccurate and argumentative.

Dated:  August 21, 2006

KOP:347881v1 3514-04