## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC. | ) Civil Action No.: 04-0163 GMS |
| Plaintiff, | ) |
| vs. | ) |
| CITY OF NEWARK, HAROLD F. GODWIN, JOHN H. FARRELL, IV, JERRY CLIFTON, KARL G. KALBACHER, DAVID J. ATHEY, FRANK J. OSBORNE, JR., CHRISTINA REWA AND URS CORPORATION, | ) JURY TRIAL DEMANDED |
| Defendants, | ) |
| vs. | ) |
| FEDERAL INSURANCE COMPANY, | ) |
| Third-Party Defendant. | ) |
| CITY OF NEWARK, | ) |
| Third-Party Plaintiff, | ) |
| vs. | ) |
| URS CORPORATION, | ) |
| Third-Party Defendant. | ) |

**TRIAL BRIEF OF THE CITY OF NEWARK DEFENDANTS**

COMES NOW Defendants City of Newark ("Newark"), Harold F. Godwin, John H. Farrell, IV, Jerry Clifton, Karl G. Kalbacher, David J. Athey, Frank J. Osborne, Jr. and Christina Rewa (collectively "City of Newark Defendants") and offer the following Trial Brief.

A.  **Nature of the Case**

This is a breach of contract action.

On April 30, 2002 Donald M. Durkin Contracting, Inc. ("Durkin") entered into a construction contract (the "Contract") in the amount of $9,679,000 with the City of Newark (the "City") for the construction of a water supply reservoir in Newark, Delaware (the "Reservoir"). The Reservoir was designed by the engineering firm URS Corporation ("URS"). Federal Insurance Company ("Federal") supplied the performance bond required by the Contract.

In September, 2003 Durkin ceased working on certain aspects of the Reservoir claiming safety and constructability concerns. Durkin said it was impossible to build the reservoir as it was designed. As a result, Durkin's Contract was terminated in February, 2004. The City hired a replacement contractor (George & Lynch) which finished construction in early-2006 as per the original URS design.

Durkin filed its *Complaint* on March 16, 2004 (D.I. #1). There are seven counts based upon a civil rights violation, torts and breach of contract against nine separate Defendants: the City, its Mayor and six City Council members, and URS. The City filed a *Counterclaim* and *Third-Party Claim* naming as Third-Party Defendant Federal, Durkin's surety for its Contract performance (D.I. #7).

Durkin's claims directly against URS were dismissed by voluntary stipulation (D.I. # 93), however, the City filed a *Third-Party Complaint* against URS on the basis of contribution and indemnification (D.I. #98). URS' *Motion to Dismiss* (D.I. #100) was denied (D.I. #132).

Plaintiff's *Motion for Preliminary and Permanent Injunctive Relief and for Declaratory Judgment* (D.I. #5) was denied (D.I. #94). Plaintiff's *Motion for Partial Summary Judgment* (D.I. #36) was denied (D.I. #63). Federal's *Motion for Summary Judgment* (D.I. #122) was

denied (D.I. #132). Federal's *Motion for Reconsideration* is still pending.

The City's termination of its Contract with Durkin was appropriate and procedurally proper. As set forth in the Contract, the City is entitled to damages from Durkin for the costs to repair completed work and costs to complete the Reservoir. The City is also entitled to damages from Federal by virtue of its obligation under the performance bond.

Should Durkin prevail on any claim against the City, the City is entitled to contribution and/or indemnification from URS as the Reservoir designer and construction manager, whose advice the City relied upon.

URS is also liable to the City for costs spent to defend the claims by virtue of the contract between URS and the City.

### B.     Contested Facts The Evidence Will Establish

Durkin was in breach of contract for its refusal to proceed with Zone IV work.

The City properly terminated Durkin's contract.

The City incurred costs of $4,958,017 to complete the project.

The project was constructable as designed and has now been built as designed.

The project was constructed as Durkin's contract required.

The erosion mitigation techniques utilized by the replacement contractor were not extraordinary means or methods of construction.

The reservoir was safe during construction (should City's Motion in Limine on that be denied).

The reservoir is safe now (should City's Motion in Limine be denied).

Durkin is liable to the City in the amount of total damages of $6,533,956.

The City followed the Bond procedures.

Federal is liable to the City in the amount of total damages of $6,533,956.

The City relied on URS in terminating Durkin, relying on the advise of URS as to whether the Reservoir could be constructed as designed and whether Durkin should be terminated.

URS is liable to the City for defense of this lawsuit as per its contract with the City, which projected costs are approximately $450,000.

If City is liable to Durkin, URS is liable to City for same amount.

### C. Theories of Liability and Defense

**Liability:**

<u>As to Durkin</u>, it refused to honor its contract under the false assertion that the reservoir could not be built as designed. *See, Ridley Inv. Co. v. Croll*, Del. Supr., 192 A.2d 925, 926-27 (1963); *Hudson v. D&V Mason Contractors, Inc.*, Del. Super., 252 A.2d 166, 169-70 (1969); *Emmett S. Hickman Co. v. Emelio Capaldi Developer, Inc.*, Del. Super., 251 A.2d 571, 572-73 (1969).

<u>As to Federal</u>, it refused to honor its bond asserting that Durkin was correct in claiming that the reservoir could not be built as designed. *See, Kent Cty. Levy Court v. International Underwriters, Inc.*, 1985 Del. Ch. LEXIS 480, *9 (Del. Ch. Ct. July 21, 1985); *Triple C Railcar Service, Inc. v. City of Wilmington*, Del. Supr., 630 A.2d 629, 633 (1993); *Rumsey Elec. Co. v. University of Delaware*, Del. Supr., 358 A.2d 712, 714 (1976); *Ridley Inv. Co. v. Croll*, Del. Supr., 192 A.2d 925, 926-27 (1963).

<u>As to URS</u>, under its contract with the City, it is liable to the City for costs of defending this matter under an indemnification clause in the contract and, should there be any judgment against the City in favor of Durkin, then URS would also be liable to indemnify the City for

those monies under a breach of contract theory and implied indemnification. *See, Pike Creek Chiropractic Ctr., P.A. v. Robinson*, 637 A.2d 418, 420 (Del. Supr. 1994); *Ridley Inv. Co. v. Croll*, Del. Supr., 192 A.2d 925, 926-27 (1963); *Diamond State Tel. Co. v. University of Delaware*, 269 A.2d 52, 56 (Del. Supr. 1970).

**Defense:**

The City's defenses to the Durkin Complaint:

As to Count I - Violation of Civil Rights: The contract creates no protected property interest in the continuation of the contract and, therefore, Durkin has no protected property interest with regards to the expectation of receiving the continued benefits under same. *See, Linan-Faye Construction Co., Inc. v. Housing Authority of the City of Camden*, 49 F.3d 915 (3rd Cir. 1995); *Slawik v. State*, 480 A.2d 636, 641-42 (Del. Super. 1984); *Delaware State Troopers Lodge, etc. v. O'Rourke*, 403 A.2d 1109, 1111 (Del. Ch. 1979).

As to Count II - Interference with Contract: Durkin cannot prove that there has been an actual breach of a valid and enforceable contract; nor that the alleged interference is the cause of the speculative damages asserted by Durkin; and the City's lawful termination of the Durkin contract is not a cognizable basis for an interference claim. *See, Ariba, Inc. v. Elec. Data Sys. Corp.*, 2003 Del. Super. LEXIS 82, *17 (Del. Super. Ct. march 7, 2003); *Nye v. Univ. of Del.*, 897 A.2d 768, (2006); *De Bonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. Supr. 1981); *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1058 (Del. Ch. 1984); Restatement of Torts (Second) § 767.

As to Count III - Defamation: The truth as to all statements allegedly defamatory and no reliable evidence of any causal connection between any statement and the speculative damages asserted by Durkin. *Gannett Co., Inc. v. Kanaga*, Del. Supr., 750 A.2d 1174, 1183-90 and 1191-

97 (2000)(Chandler, Chancellor, dissenting); *Ramunno v. Cawley*, Del. Supr., 705 A.2d 1029, 1035-36 (1998); *Riley v. Moyed*, Del. Supr., 529 A.2d 248, 253 (1987); *Gannett Co. v. Re*, Del. Supr., 496 A.2d 553, 557 (1985); *Ramada Inns, Inc. v. Dow Jones & Co.*, Del. Super., 543 A.2d 313, 317-18 (1987); *Kanaga v. Gannett Co., Inc.*, Del. Supr., 687 A.2d 173, 183 (1996).

As to Count IV - Conversion: The Defendants are entitled to the goods at the site upon Durkin's termination as per the Contract, and the City either did not interfere with Durkin's possession of certain equipment or had previously paid for the equipment or materials and, therefore, had superior title to those items. *See, Baker v. Spruance*, 28 Del. 140 (Del. Super. Ct. 1914); Restatement 2nd (Second) of Torts § 272; *International Business Machs. Corp. v. Comdisco, Inc.*, 1993 Del. Super. LEXIS 183, * (Del. Super. Ct. June 30, 1993).

As to Count V - (A) Fraud: The Defendants made no false representations to Durkin, nor did they posses the requisite knowledge of the alleged falsity of any statements nor the intent to mislead and, as a matter of law, Plaintiff has failed to allege with specificity the alleged misrepresentations or false statements upon which it relied. Furthermore, failure to perform a future obligation or promise is not actionable fraud. Lastly, Durkin is obligated to read and understand the Contract. *See, Gaffin v. Teledyne, Inc.*, Del. Supr., 611 A.2d 467, 472 (1992); *Stephenson v. Capano Dev., Inc.*, Del. Supr., 462 A.2d 1069, 1074 (1983); *Harmon v. Masoneilan Intern, Inc.*, Del. Supr., 442 A.2d 487, 499 (1982); *Scott-Douglas Corp. v. Greyhound Corp.*, Del. Super., 304 A.2d 309, 317 (1973)(applying Michigan law); *Twin Coach Co. v. Chance Vought Aircraft, Inc.*, Del. Super., 163 A.2d 278, 283-84 (1960); *Wolf v. Magness Constr. Co.*, 1995 Del. Ch. LEXIS 122, *6-7 (Del. Ch. Ct. Sept. 11, 1995).

(B) Misrepresentation: The Defendants made no false representations to Durkin, any alleged failure to perform a future obligation or promise is not actionable

misrepresentation, and the Defendants did not intend to mislead nor was Durkin justified in foregoing any further investigation into the terms of the proposed agreement or contractual relationship. *Mark Fox Group, Inc. v. E.I. Dupont De Nemours & Co.*, 2003 Del. Ch. LEXIS 71, *20 (Del. Ch. Ct. July 2, 2003); *Scott-Douglas Corp. v. Greyhound Corp.*, Del. Super., 304 A.2d 309, 317 (1973)(applying Michigan law); *Wolf v. Magness Constr. Co.*, 1995 Del. Ch. LEXIS 122, *4 - 7 (Del. Ch. Ct. Sept. 11, 1995); *In re Brandywine Volkswagen, Ltd.*, 306 A.2d 24, 27-28 (Del. Super. Ct. 1973); Omar Oil & Gas Co. v. Mackenzie Oil Co., 33 Del. 259, 285 (Del. Supr. Ct. 1926).

As to Count VI - Conspiracy: Durkin has no sustainable underlying claim which is a pre-requisite to a conspiracy claim and, as a matter of law, Plaintiff has failed to meet its burden. See, *Local No. 98, IBEW v. First USA*, 2001 Del. Super. LEXIS 427, *4 (Del. Super. Ct. October 31, 2001); *Connolly v. Labowitz*, 519 A.2d 138, 143 (Del. Super. Ct. 1986).

As to Count V - Breach of Contract: Defendants did not breach the relevant contract in that they materially followed the terms of said contract, and Durkin's refusal to perform gave the Defendants the right to suspend further performance and terminate Durkin. *Emmett S. Hickman Co. v. Emelio Capaldi Developer, Inc.*, Del. Super., 251 A.2d 571, 572-73 (1969); *Ridley Inv. Co. v. Croll*, Del. Supr., 192 A.2d 925, 926-27 (1963); *Hudson v. D&V Mason Contractors, Inc.*, Del. Super., 252 A.2d 166, 169-70 (1969); *Wells v. Lee Builders, Inc.*, Del. Supr. 99 A.2d 620 (1953).

**Liability, Generally:**

As to individual city defendants and the City, there is immunity under the Delaware Tort Claims Act, as well as the Doctrine of Qualified Immunity. *See*, 10 *Del. C*. §§ 4010-4013; *Dale v. Town of Elsmere*, 702 A.2d 1219, 1223 (Del. Supr. 1997); Walls v. Rees, 569 A.2d 1161,

1165-66 (Del. Supr. 1988); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

As to the damages sought by Durkin, punitives are inappropriate on the Tort claims as the City has statutory immunity from such liability, and Durkin has failed to allege, and further cannot show, that the individual defendants acted in a willful, wanton or malicious manner. *See*, 10 *Del. C.* §§ 4011 and 4012; *Schueler v. Martin*, 674 A.2d 882 (Del. Super. 1996); *Dale v. Town of Elsmere*, 702 A.2d 1219, 1223 (Del. Supr. 1997); *Izquierdo v. Sills*, 2004 Del. Ch. LEXIS 142 *28 (Del. Ch. Ct. June 29, 2004).

If Durkin were to prevail on its breach of contract claim, the only viable claim in this action, it can only recover its lost profit on the unperformed portion of the Contract. *J.J. White, Inc. v. Metropolitan Merchandise Mart,* 107 A.2d 892 (Del. Super. 1954); *Genencor International, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 11 (Del. 2000); Expectation damages or termination for convenience damages provisions govern, and Durkin is not entitled to other alleged economic loss. *Eisenmann Corp. v. General. Motors Corp.*, 2000 WL 140781 at *14 (Del.Super.), *Stoltz Realty Co. v. Paul,* 1995 WL 654152 at *10 (Del. Super.).

The City's defenses to URS' counterclaim for fees. A portion of the fees sought by URS were incurred in defending its own interests in this litigation and, therefore, not recoverable from the Defendants. *See, Pike Creek Chiropractic Ctr., P.A. v. Robinson*, 637 A.2d 418, 422 (Del. Supr. 1994). The remaining portion of its fee claim concerns added work which resulted from Durkin's breach of contract and URS' defense of its design plan. URS would be entitled to that sum only if awarded to the City in its counter-claim against Durkin because Durkin's prevailing in its claims against the City necessitates a finding that the URS design was faulty or that the advise relied upon by the City was the cause of Durkin's damages, thus entitling the City to indemnification from URS as a matter of indemnification or breach of contract

.

**D.     Damages**

The City's damages against Durkin to complete the Contract with George & Lynch, as well as other damages incurred as a result of Durkin's breach (and Federal's breach) are contained in the George Sarris' City of Newark Damages summary and attorneys' fees for claim against URS are also shown there.

The City is entitled to the damages outlined in the contract in the event of termination.  In Delaware the proper measure of damages for breach of contract is generally the loss actually sustained as a result of the breach. *J.J. White, Inc. v. Metropolitan Merchandise Mart,* 107 A.2d 892 (Del. Super. 1954).  The remedy seeks to give the nonbreaching the party the benefit of its bargain by putting that party in the position it would have been **but for** the breach.  *Genencor International, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 11 (Del. 2000) (citing Restatement (Second) of Contracts § 344(a) (1981) (defining "expectation interest" as a party's interest in "having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed.")).

**E.     Anticipated Motions for Directed Verdict**

As to Durkin's tort claims, the City anticipates filing a Motion for Directed Verdict for failure to meet the burden of proof.

As to Durkin claims against individual defendants, the City anticipates filing a Motion for Directed Verdict based on the Delaware Tort Immunity Act and their qualified immunity as public officials.

TIGHE COTTRELL & LOGAN, P.A.

  /s/  Paul Cottrell
Paul Cottrell, Esquire (# 2391)
Victoria Petrone, Esquire (# 4210)
One Customs House
704 North King Street, Suite 500
P.O. Box 1031
Wilmington, DE 19899 - 1031
tel. 302.658.6400
fax. 302.658.9836
e-mail: p.cottrell@lawtcl.com
*Counsel for the City of Newark, its Mayor and Council*

Dated: August 20, 2006