# IN THE UNITED STATES DISTRICT COURT DELAWARE
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., ) | |
| ) | C.A. No. 04-0163 GMS |
| Plaintiff, ) | |
| ) | JURY TRIAL DEMANDED |
| v. ) | |
| ) | |
| CITY OF NEWARK, ET AL., ) | |
| ) | |
| Defendants/ ) | |
| Third Party Plaintiffs ) | |
| ) | |
| v. ) | |
| ) | |
| FEDERAL INSURANCE COMPANY, ) | |
| ) | |
| Third-Party Defendant. ) | |

-----------------------------------------------------------

| | |
|---|---|
| CITY OF NEWARK, ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| URS CORPORATION, ) | |
| ) | |
| Third-Party Defendant. ) | |

## TRIAL BRIEF OF THIRD PARTY DEFENDANT URS CORPORATION

JAMES S. GREEN, ESQ. (DE0481)
SEITZ, VAN OGTROP & GREEN, P.A
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE  19899
(302) 888-0600
    Attorneys for Third-Party Defendant
    URS Corporation

Dated:  August 21, 2006

**TABLE OF CONTENTS**

TABLE OF CONTENTS......................................................................................................i

   A.   THE NATURE OF THE CASE ............................................................................ 1

   B.   CONTESTED FACTS URS EXPECTS THE EVIDENCE WILL ESTABLISH. 3

   C.   URS' THEORY OF LIABILITY AGAINST NEWARK AND DEFENSE
       AGAINST NEWARK'S THIRD-PARTY CLAIM............................................. 4

   D.   URS' THEORY OF DAMAGES. ........................................................................... 5

   E.   URS' THEORY OF ANTICIPATED MOTION FOR DIRECTED VERDICT. ... 5

A.   **THE NATURE OF THE CASE**

This is a case for breach of contract and tort claims arising out of the construction of a reservoir for the City of Newark, Delaware ("Newark"). The reservoir was designed for Newark by URS Corporation ("URS"). URS was also retained by Newark to supervise construction of the reservoir. As part of its services for Newark, URS provided a pre-bid estimate of the cost of construction of the as-designed reservoir. URS estimated that the total construction cost would be $12,500,000.

In early 2002, the City put the Project out for public bid. The low bidder was Plaintiff Donald M. Durkin Contracting, Inc. ("Durkin") with a total bid of $9,679,000 - almost $3,000,000 under URS' pre-bid estimate. Because of the great disparity between URS' estimate and Durkin's bid, Newark conducted a pre-award interview with Durkin to insure that its bid was responsive. Durkin assured Newark that its bid was inclusive of all work shown and required by the Contract documents, plans, conditions and specifications. Durkin raised no question about the adequacy or constructability of any design or plan. Newark awarded the contract to Durkin.

Durkin commenced work on the Project in April 2002. Throughout 2003, the Project was beset with "horrendous" weather which had an "extraordinary" and "devastating" impact on Durkin both in time and cost. (Donald M. Durkin, Jr. letters of June 9, 2003, DUR 959; July 7, 2003 DUR 920; August 7, 2003, DUR 860) By August 2003, Durkin was approximately 70% complete with the Project.

In August, Durkin commenced placement of the Zone IV cover soil over the geosynthetic liner system which lined the interior slopes of the reservoir. The Zone IV

cover soil was designed to protect the liner from damage during construction and while in use as a reservoir. Unfortunately, the horrendous weather got worse. Not surprisingly, the Zone IV soil was eroded by the "torrential rains." (Donald M. Durkin, Jr. letter of August 11, 2003, DUR857) Durkin then claimed that the Zone IV soil could not be constructed as designed. Newark, relying upon URS, declared that it could be built using the design described in the Contract documents upon which Durkin based its bid, and which, by its bid and pre-award interview, confirmed it could build as designed.

Newark and Durkin explored various alternative ways and means to finish the Project, including Durkin offering to build the original design on a time and material basis. No resolution was reached, and, on February 2, 2004, Newark City Council passed a resolution terminating Durkin.

Newark hired George & Lynch, Inc. to complete the Project. Newark also hired URS to perform supervisory services for the George & Lynch portion of the work. Despite this contract, Newark stopped paying URS for its services. Nevertheless URS completed its work as promised.

On March 16, 2004, Durkin sued Newark, its Mayor, and Council (together "Newark") and URS alleging a variety of tort and contract claims.

Newark filed a Counterclaim against Durkin and filed a Third-Party claim against Federal Insurance Company ("Federal"), Durkin's bonding company, seeking its costs incurred, or to be incurred in completing the reservoir. Newark did not file a crossclaim against URS.

On September 8, 2005, Durkin voluntarily dismissed URS from the case with the Stipulation of all parties. On October 7, 2005, Newark filed a Third Party Complaint seeking indemnification and/or contribution against URS. URS answered the Third Party Complaint and asserted a Counterclaim against Newark for fees and expenses, which it claims it is owed by Newark. Newark answered the Counterclaim denying URS' claims.

Trial is scheduled to commence on September 25, 2006 on all claims and counterclaims.

**B.     CONTESTED FACTS URS EXPECTS THE EVIDENCE WILL ESTABLISH.**

1. URS' plans and specifications were complete, reasonable and constructable.

2. Durkin was well aware of the plans and specifications and the design of the interior slopes prior to bidding and included construction of the interior slopes in its bid.

3. Durkin had the experience, knowledge and ability to enable it to construct the interior slopes.

4. The URS design was successfully constructed by George & Lynch.

5. URS performed all services required by its agreements with Newark.

6. Newark has failed to pay URS for services rendered pursuant to its agreements. Additionally, URS provided professional services which were of benefit to Newark in defense of Durkin's claim and in prosecution of its claim against Durkin and Federal.

### C. URS' THEORY OF LIABILITY AGAINST NEWARK AND DEFENSE AGAINST NEWARK'S THIRD-PARTY CLAIM.

As to the contractual services, Newark requested that URS provide certain services and agreed to pay for them. URS provided the services, but since October 2005, Newark has not paid for them.

As to the litigation support services, Newark requested that URS undertake certain studies and investigatory work during the course of the litigation. Newark accepted the benefit of those services under circumstances which would lead URS to reasonably understand they would be paid for by Newark.

URS' theory of defense as to Newark's Third Party claim for indemnification and or contribution is fourfold.

1. URS plans and specifications were adequate and constructable. Durkin admitted as much and George & Lynch built the reservoir using those plans and specifications.

2. Any issue that Durkin had with URS' design was not a direct and proximate cause of any damage Durkin suffered because Newark, Federal and Durkin were in the process of investigating the validity of that issue when Newark terminated Durkin. Therefore, the URS design was not the cause of the termination.

3. The issue of constructability was rendered irrelevant, because Newark failed to give proper notice of termination. The general conditions of the contract required Newark to give Durkin seven (7) days written notice of its intent to terminate. It failed to do so. Had Newark given the appropriate notice, Durkin would have performed the original design or an alternate design rather than suffer termination. Therefore, there

would have been no termination and the constructability of the design is rendered irrelevant.

4.  Even if Durkin is successful in proving it was wrongfully terminated, its measure of damages is severely limited pursuant to the terms of its contract with Newark.

**D.  URS' THEORY OF DAMAGES.**

URS billed for its services on an hourly basis. The services performed pursuant to URS' contract will be established by statements and time records.

URS' theory of damage on its litigation support services is that they were requested under circumstances which would lead URS to believe that it would be paid for them if they were provided. URS is entitled to the reasonable value of those services.

Attached hereto as Exhibit "A" is an itemization of URS' claimed damages and attorneys' fees.

**E.  URS' THEORY OF ANTICIPATED MOTION FOR DIRECTED VERDICT.**

URS anticipates that the evidence will be uncontested that it provided its services to Newark as agreed, but has not been paid. Therefore, it believes it will be entitled to a directed verdict on liability.

> **SEITZ, VAN OGTROP & GREEN, P.A**
>
> **/S/ James S. Green**
> **JAMES S. GREEN, ESQ. (DE0481)**
> 222 Delaware Avenue, Suite 1500
> P. O. Box 68
> Wilmington, DE  19899
> (302) 888-0600
> >  Attorneys for Third-Party Defendant
> >  URS Corporation

Dated:  August 21, 2006

## CERTIFICATE OF SERVICE

I, James S. Green, Esquire, hereby certify that on this 22st day of August, 2006, I electronically filed the following document with the Clerk of Court using CM/ECF which will send notification of such filing to counsel of record.

**TRIAL BRIEF OF THIRD PARTY DEFENDANT URS CORPORATION**

/s/ James S. Green
_____
James S. Green (ID No. 0481)
jgreen@svglaw.com