IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DONALD M. DURKIN CONTRACTING, INC. | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 04-0163 |
| | ) | |
| CITY OF NEWARK, et al., | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CITY OF NEWARK, | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL INSURANCE COMPANY, | ) | |
| Third-Party Defendant. | ) | |

**FEDERAL'S ANSWERING BRIEF TO MOTION *IN LIMINE*
OF URS CORPORATION TO EXCLUDE EVIDENCE RELATING TO AN ALLEGED LACK
OF SAFETY OF THE NEWARK RESERVOIR**

STRADLEY, RONON, STEVENS & YOUNG, LLP
Kevin W. Goldstein, Esquire
Delaware Bar No. 2967
300 Delaware Avenue, Suite 800
Wilmington, DE 19801

Samuel J. Arena, Jr., Esq. (pro hac vice)
Patrick R. Kingsley, Esq. (pro hac vice)
David M. Burkholder, Esq. (pro hac vice)
2600 One Commerce Square
Philadelphia, PA 19103-7098

Attorneys for Third-Party Defendant,
Federal Insurance Company

## STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

Third-Party Plaintiff, URS Corporation ("URS"), moves *in limine* to preclude the presentation at trial of evidence relating to the alleged lack of safety of the Newark reservoir. Federal now answers that motion, and requests that the Court deny the motion for the reasons below.

## SUMMARY OF ARGUMENT

Evidence relating to the lack of safety of the Newark reservoir is a crucial element to the consideration of this case. Federal's very denial of the City's claim for coverage under the Performance Bond cited the issues that URS seeks to exclude as a basis for that denial. In fact, safety issues relating to the design of the reservoir were initially raised months *before* the City improperly terminated Durkin's right to complete the Construction Contract. These issues are simply part of the fabric of this case, and cannot be excluded.

## CONCISE STATEMENT OF FACTS

The Newark reservoir, by its very classification, is a high hazard dam. A high hazard dam is a structure, the failure of which could result in the loss of life or property. Safety issues relating to the Newark reservoir were raised by Durkin as early as mid-2003.

From that time, Federal repeatedly raised the issue through its correspondence and expert reports from Gregory Richardson, P.E., Ph.D. In fact, in January, 2004, Dr. Richardson noted that the design for the reservoir is "unsafe for construction and service."[1] In March, 2004, following a site visit to the reservoir, Dr. Richardson expressed serious concerns about the stability of the Zone I embankment.[2] Dr. Richardson opined that the design of the reservoir

---

[1] Copies of Dr. Richardson's January, 2004 reports are attached to the accompanying Appendix collectively as Exhibit "A."

[2] A copy of the March, 2004 report, without exhibits, is attached to the accompanying Appendix as Exhibit "B."

posed an unnecessary risk during long term operation to the residents of the City of Newark, Delaware.

On March 15, 2004, Federal denied the City's claim for coverage under the Performance Bond[3] because, *inter alia*, based upon Federal's investigation, "[i]f ever successfully constructed, there may be catastrophic loss of life and property if the design fails during ordinary use or an emergency drawdown."[4] In October, 2004, Dr. Richardson, on his own initiative and in conjunction with three other independent experts, issued a "White Paper" criticizing the safety of the reservoir design. The safety of the reservoir is a key issue in this case. It was raised early in the disputes among the parties and plays an integral part of the City's claim for damages under the bond and Federal's reasons for denying that claim.

## ARGUMENT

URS alleges that the safety of the reservoir is irrelevant because the issue does not relate to the reasons for Durkin's termination. URS contends that the issue in this case is only whether the City properly terminated Durkin and whether the City is entitled to damages from Federal for the costs of completing the reservoir. URS further claims that Federal and Durkin did not raise the safety issue until after Durkin was terminated. URS contends that, in any event, because the issue might be subject to differing expert opinions, the very presentation of the issue to a jury could be prejudicial to its position in this case. These contentions, however, are wrong.

The safety and long-term stability of the reservoir design is relevant to this case. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it

---

[3]    A copy of the March 15, 2004 declination of coverage letter is attached to the accompanying Appendix as Exhibit "C."

[4]    As predicted, it appears that the reservoir has recently begun to leak through the outer embankment.

2

would be without the evidence." F. R. E. 401. There can be no reasonable argument that the safety of the design of the Newark reservoir, a high hazard dam, is relevant to the determination of the parties' rights and liabilities in this case.

Here, life/safety issues relating to the reservoir's design are embedded in the very characteristics of the reservoir. The reservoir itself, by classification, is a high hazard dam. This classification means that the failure of the reservoir would result in the loss of life or property. Any criticism to structural design components necessarily implicates safety issues.

Moreover, the first notice of life/safety issues relating to the design pre-dated Durkin's termination by several months. In fact, Durkin raised reservoir integrity issues with the Newark reservoir design as early as October 20, 2003.[5] Thereafter, Federal's expert, Dr. Richardson, confirmed those concerns with his January reports. In the January 13, 2004 report, Dr. Richardson, confirmed the concerns raised by Durkin and concluded that "[g]iven that the reservoir can be defined as a high [hazard] dam and has considerable residential development at its toe, this [current design] is not acceptable." In the January 15, 2004 report, Dr. Richardson again stated that the current design for the reservoir is "unsafe for construction and service."

Following Newark's improper termination of Durkin and demand for coverage under the Performance Bond, Federal denied the City's claim and cited the life/safety issues inherent with the reservoir design as a basis for the denial. In the March 11, 2004 report, Dr. Richardson stated that the "the current URS design presents unnecessary risk to Durkin during construction and the City and its residents during long term operation." Federal notified the City that the defective design of the Newark reservoir, among other reasons, served as the basis for denying Newark's claim under the Performance Bond. Thus, a determination of whether the

---

[5]  A copy of the October 20, 2003 letter is attached to the accompanying Appendix as Exhibit "D."

City is entitled to coverage under the bond would necessarily involve a determination of the life/safety issues relating to the design of the Newark reservoir. The existence of a defect in that design would be, therefore, outcome determinative in the City's claim against Federal and the City's termination of Durkin.

The issues regarding life/safety concerns and the long-term stability of the reservoir design are obviously relevant to the case and have been present since the inception of the disputes in this case. The issues are not unduly prejudicial. In fact, it is Federal that would be severely (and unjustifiably) prejudiced by the exclusion of the presentation of such evidence at trial.

## CONCLUSION

For all the foregoing reasons, Federal respectfully requests that URS' motion be denied. Evidence of the alleged lack of safety of the Newark reservoir is not only relevant but also a central issue to this case. Thus, it cannot (and should not be) excluded from the trial of this matter.

Respectfully submitted,

/s/
Kevin W. Goldstein, Esquire
Delaware Bar No. 2967
STRADLEY, RONON, STEVENS & YOUNG, LLP
300 Delaware Avenue
Suite 800
Wilmington, DE 19801
(302) 576-5850
(302) 576-5858 Fax

Samuel J. Arena, Jr., Esquire (pro hac vice)
Patrick R. Kingsley, Esquire (pro hac vice)
David M. Burkholder, Esquire (pro hac vice)
STRADLEY, RONON, STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098
(215) 564-8000
(215) 564-8120 Fax
Attorneys for Third-Party Defendant,
Federal Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2006, I caused a true and correct copy of the Answering Brief of Third-Party Defendant, Federal Insurance Company, to URS" Motion *in Limine* to be served via electronic delivery upon the following:

Paul A. Logan, Esquire
David T. Bolger, Esquire
POWELL, TRACHTMAN, LOGAN,
CARLE & LOMBARDO, P.C.
475 Allendale Road, Suite 200
King of Prussia, PA 19406
*Attorneys for Plaintiff,*
*Donald M. Durkin Contracting, Inc.*

Paul Cottrell, Esquire
Victoria K. Petrone, Esquire
TIGHE, COTTRELL & LOGAN, P.A.
704 N. King Street
P.O. Box 1031
Wilmington, DE 19899
*Attorneys for Defendants,*
*City of Newark, Harold F. Godwin,*
*John H. Farrell, IV, Jerry Clifton,*
*Karl G. Kalbacher, David J. Athey,*
*Frank J. Osborne, Jr., and Christina Rewa*

James S. Green, Esquire
George H. Seitz, III, Esquire
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
Wilmington, DE 19899
*Attorneys for Defendant,*
*URS Corporation*

/s/ _____
Kevin W. Goldstein

# 494407