4.    All documents relied upon by the individual Defendant in determining his/her vote to terminate the contract of Donald M. Durkin Contracting.

**Powell, Trachtman, Logan,
Carrle & Lombardo, P.C.**

By: _____

Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
Attorneys for Plaintiff

KOP:322580v1 3514-04

A - 48

## CERTIFICATE OF SERVICE

I, Paul A. Logan, counsel for Plaintiff certify that on September 15, 2005, a true and

correct copy of the foregoing Request for Production of Documents (Set I) Directed to Karl G.

Kalbacher was served upon the following by U.S. Mail, postage prepaid, at the addresses below.

Paul Cottrell, Esquire
Victoria K. Petrone, Esquire
**TIGHE, COTTRELL & LOGAN, P.A.**
First Federal Plaza
Suite 500
P. O. Box 1031
Wilmington, DE 19899
Attorneys for City of Newark, Harold F.
Godwin, John H. Farrell, Jerry Clifton, Karl
G. Kalbacher, David J. Athey, Frank J.
Osborne, Jr. and Christina Rewa

James S. Green, Esquire
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue
Suite 1500, P. O. Box 68
Wilmington, DE 19899
Attorneys for URS Corporation

Samuel J. Arena, Jr., Esquire
Patrick R Kingsley, Esquire
Stradley Ronon Stevens & Young LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098
Attorneys for Third-Party Defendant
Federal Insurance Company

Powell, Trachtman, Logan,
Carrle & Lombardo, P.C.

By: _____
Paul A. Logan

KOP:322580v1 3514-04

**A - 49**

LAW OFFICES

# POWELL, TRACHTMAN, LOGAN,
## CARRLE & LOMBARDO

A PROFESSIONAL CORPORATION

475 ALLENDALE ROAD
SUITE 200
KING OF PRUSSIA, PA 19406

(610) 354-9700
FACSIMILE (610) 354-9760
PLOGAN@POWELLTRACHTMAN.COM
WWW.POWELLTRACHTMAN.COM

November 22, 2005

MICHAEL G. TRACHTMAN
PAUL A. LOGAN*•◊
GUNTHER O. CARRLE*
BRUCE D. LOMBARDO
LAWRENCE A. BORDA*
JOSEPH P. TRABUCCO, III☐
NEIL P. CLAIN, JR.*
JONATHAN K. HOLLIN
DAVID T. BOLGER
RICHARD J. DAVIES*☐
STEVEN G. BARDSLEY*
STEPHEN D. MENARD*
FRANCIS G. LAROCCA
EILEEN C. CLARK*
DENNIS P. HERBERT*
FRANK S. NOFER*
ANTHONY S. POTTER◊
GEORGE T. REYNOLDS*
MARY J. PEDERSEN*
FREDERICK M. BREHM*
JENIFER L. SUFLEE*
JAMES S. BAINBRIDGE*
KEVIN K. CARTON, JR.*
DIRK M. SIMPSON, LL.M. (TAXATION)*
PATRICK S. CAWLEY
CHRISTOPHER S. KOLLER
GREGORY J. STAR*

*ALSO ADMITTED IN NJ
•ALSO ADMITTED IN MD
◊ALSO ADMITTED IN DE
☐ALSO ADMITTED IN NY

OF COUNSEL
RALPH B. POWELL, JR.
MALCOLM B. JACOBSON
RICHARD T. ABELL
RICHARD L. BUSH
KEITH R. BLACK

114 NORTH SECOND STREET
HARRISBURG, PA 17101
(717) 238-9300
FAX (717) 238-9325

SUITE 304
1814 EAST ROUTE 70
CHERRY HILL, NJ 08003
(856) 663-0021
FAX (856) 663-1590

PLEASE REPLY TO:

KING OF PRUSSIA

*Via Facsimile 1-302-658-9836 and 1-302-658-3492/Ordinary Mail*
Paul Cottrell, Esquire
**TIGHE, COTTRELL & LOGAN, P.A.**
First Federal Plaza
Suite 500
P. O. Box 1031
Wilmington, DE 19899

Re:    *Donald M. Durkin Contracting, Inc. v. City of Newark, et al.*

Dear Mr. Cottrell:

In order for us to schedule the depositions of the representatives from the City, it is imperative that I receive the documents from them as soon as possible. Please let me know how soon I can obtain these records from each of the Council Members and Mayors, so that we can begin the scheduling of those depositions without further delay.

Very truly yours,

Paul A. Logan

PAL:drp
c:    James S. Green, Esquire
      Samuel J. Arena, Jr., Esquire

KOP:327533v1 3514-04

A - 50

LAW OFFICES

# POWELL, TRACHTMAN, LOGAN,
## CARRLE & LOMBARDO
A PROFESSIONAL CORPORATION

475 ALLENDALE ROAD
SUITE 200
KING OF PRUSSIA, PA 19406

(610) 354-9700
FACSIMILE (610) 354-9760
PLOGAN@POWELLTRACHTMAN.COM
WWW.POWELLTRACHTMAN.COM

MICHAEL G. TRACHTMAN
PAUL A. LOGAN**◊
GUNTHER O. CARRLE*
BRUCE D. LOMBARDO*
LAWRENCE A. BORDA*
JOSEPH P. TRABUCCO, III□
NEIL P. CLAIN, JR.*
JONATHAN K. HOLLIN
DAVID T. BOLGER
RICHARD J. DAVIES*□
STEVEN G. BARDSLEY*
STEPHEN D. MENARD*
FRANCIS G. LAROCCA
EILEEN C. CLARK*
DENNIS P. HERBERT*
FRANK S. NOFER*
ANTHONY S. POTTER*
GEORGE T. REYNOLDS*
MARY J. PEDERSEN*
FREDERICK M. BREHM*
JENIFER L. SUPLEE*
JAMES S. BAINBRIDGE*
KEVIN K. CARTON, JR.*
DIRK M. SIMPSON, LL.M. (TAXATION)*
PATRICK S. CAWLEY
CHRISTOPHER S. KOLLER
GREGORY J. STAR*

*ALSO ADMITTED IN NJ
*ALSO ADMITTED IN MD
◊ALSO ADMITTED IN DE
□ALSO ADMITTED IN NY

OF COUNSEL
RALPH B. POWELL, JR.
MALCOLM B. JACOBSON
RICHARD T. ABELL
RICHARD L. BUSH
KEITH R. BLACK

114 NORTH SECOND STREET
HARRISBURG, PA 17101
(717) 238-9300
FAX (717) 238-9325

SUITE 304
1814 EAST ROUTE 70
CHERRY HILL, NJ 08003
(856) 663-0021
FAX (856) 663-1590

November 29, 2005

PLEASE REPLY TO:
KING OF PRUSSIA

**Via Facsimile 1-302-658-9836 and 1-302-658-3492/Ordinary Mail**

Paul Cottrell, Esquire
**TIGHE, COTTRELL & LOGAN, P.A.**
First Federal Plaza, Suite 500
P. O. Box 1031
Wilmington, DE 19899

Re:    *Donald M. Durkin Contracting, Inc. v. City of Newark, et al.*

Dear Mr. Cottrell:

I am again requesting that you accelerate the production of the following documents:

(a)    all documents requested from the Members of City Council and the Mayor which are the subjects of previous Requests for Production of Documents.

(b)    all documents that were received by you from Dr. Calabria. Please confirm that you have no objection to addressing the production of electronic documents (including earlier versions of any report generated by Dr. Calabria) directly with him.

The City's withholding of these records is interfering with Durkin's trial preparation. We are writing this last time before seeking judicial intervention. I know that these matters can be amicably

KOP:327819v1 3514-04

**A - 51**

resolved, but I do need to receive a response from you promptly.

Very truly yours,

Paul A. Logan

PAL:drp

c:  James S. Green, Esquire
    Samuel J. Arena, Jr., Esquire
    Donald M. Durkin Contracting, Inc.

LAW OFFICES

# POWELL, TRACHTMAN, LOGAN, CARRLE & LOMBARDO

A PROFESSIONAL CORPORATION

475 ALLENDALE ROAD
SUITE 200
KING OF PRUSSIA, PA 19406

(610) 354-9700
FACSIMILE (610) 354-9760
PLOGAN@POWELLTRACHTMAN.COM
WWW.POWELLTRACHTMAN.COM

MICHAEL G. TRACHTMAN
PAUL A. LOGAN*◦
GUNTHER O. CARRLE*
BRUCE D. LOMBARDO
LAWRENCE A. BORDA*
JOSEPH P. TRABUCCO, III◻
NEIL P. CLAIN, JR.*
JONATHAN K. HOLLIN
DAVID T. BOLGER
RICHARD J. DAVIES*◻
STEVEN O. BARDSLEY*
STEPHEN D. MENARD*
FRANCIS G. LAROCCA
EILEEN C. CLARK*
DENNIS P. HERBERT*
FRANK S. NOFER*
ANTHONY S. POTTER◦
GEORGE T. REYNOLDS*
MARY J. PEDERSEN*
FREDERICK M. BREHM*
JENIFER L. SUPLEE*
JAMES S. BAINBRIDGE*
KEVIN K. CARTON, JR.*
DIRK M. SIMPSON, LL.M. (TAXATION)*
PATRICK S. CAWLEY
CHRISTOPHER S. KOLLER
GREGORY J. STAR*
ALLISON J. STRUPCZEWSKI

*ALSO ADMITTED IN NJ
◦ALSO ADMITTED IN MD
◊ALSO ADMITTED IN DE
◻ALSO ADMITTED IN NY

OF COUNSEL
RALPH B. POWELL, JR.
MALCOLM B. JACOBSON
RICHARD T. ABELL
RICHARD L. BUSH
KEITH R. BLACK

114 NORTH SECOND STREET
HARRISBURG, PA 17101
(717) 238-9300
FAX (717) 238-9325

SUITE 304
1814 EAST ROUTE 70
CHERRY HILL, NJ 08003
(856) 663-0021
FAX (856) 663-1590

December 5, 2005

PLEASE REPLY TO:
KING OF PRUSSIA

*Via Facsimile 1-302-658-9836 and 1-302-658-3492/Ordinary Mail*
Paul Cottrell, Esquire
Victoria K. Petrone, Esquire
**TIGHE, COTTRELL & LOGAN, P.A.**
First Federal Plaza
Suite 500
P. O. Box 1031
Wilmington, DE 19899

Re:    *Depositions of City Officials*

Dear Mr. Cottrell and Ms. Petrone:

Although I have not received the documents from any of the individual Defendants, in light of the discovery schedule and with expectation that the documents will be provided this week, please confirm that the City officials will be available for depositions on Monday, December 19, and Tuesday, December 20, 2005.

We can discuss the number of representatives on each day, but it is important that we begin this process without further delay.

Very truly yours,

Paul A. Logan

PAL:drp
c:    James S. Green, Esquire
      Samuel J. Arena, Jr., Esquire

KOP:328231v1 3514-04

A - 53

MICHAEL G. TRACHTMAN
PAUL A. LOGAN*°◦
GUNTHER O. CARRLE*
BRUCE D. LOMBARDO
LAWRENCE A. BORDA*
JOSEPH P. TRABUCCO, III□
NEIL P. CLAIN, JR.*
JONATHAN K. HOLLIN
DAVID T. BOLGER
RICHARD J. DAVIES*□
STEVEN G. BARDSLEY*
STEPHEN D. MENARD*
FRANCIS G. LaROCCA
EILEEN C. CLARK*
DENNIS P. HERBERT*
FRANK S. NOFER*
ANTHONY S. POTTER◦
GEORGE T. REYNOLDS*
MARY J. PEDERSEN*
FREDERICK M. BREHM*
JENIFER L. SUPLEE*
JAMES S. BAINBRIDGE*
KEVIN K. CARTON, JR.*
DIRK M. SIMPSON, LL.M. (TAXATION)*
PATRICK S. CAWLEY
CHRISTOPHER S. KOLLER
GREGORY J. STAR*
ALLISON J. STRUPCZEWSKI

*ALSO ADMITTED IN NJ
◦ALSO ADMITTED IN MD
◦ALSO ADMITTED IN DE
□ALSO ADMITTED IN NY

LAW OFFICES

# POWELL, TRACHTMAN, LOGAN,
## CARRLE & LOMBARDO
A PROFESSIONAL CORPORATION

475 ALLENDALE ROAD
SUITE 200
KING OF PRUSSIA, PA 19406

(610) 354-9700
FACSIMILE (610) 354-9760
PLOGAN@POWELLTRACHTMAN.COM
WWW.POWELLTRACHTMAN.COM

OF COUNSEL
RALPH B. POWELL, JR.
MALCOLM B. JACOBSON
RICHARD T. ABELL
RICHARD L. BUSH
KEITH R. BLACK

114 NORTH SECOND STREET
HARRISBURG, PA 17101
(717) 238-9300
FAX (717) 238-9325

SUITE 304
1814 EAST ROUTE 70
CHERRY HILL, NJ 08003
(856) 663-0021
FAX (856) 663-1590

December 21, 2005

PLEASE REPLY TO:
KING OF PRUSSIA

*Via Facsimile 1-302-658-9836 and 1-302-658-3492/Ordinary Mail*

Paul Cottrell, Esquire
Victoria K. Petrone, Esquire
**TIGHE, COTTRELL & LOGAN, P.A.**
First Federal Plaza
Suite 500
P. O. Box 1031
Wilmington, DE 19899

      Re:   *Donald M. Durkin Contracting, Inc. v. City of Newark, et al.*

Dear Paul and Vickie:

      The production of the documents by the City Defendants is months over due and the lack of the production has resulted in delays to discovery. I have written on numerous occasions, and worked as cooperatively as possible with you, but have reached a point where I will seek judicial intervention since there is no indication as to when these records will be produced.

      I must insist that I receive the records next week and your written assurances before Friday, December 22, 2005, that they will be produced, without exception, (and including the Meeting Minutes of the City Council (including Executive Session Minutes where third parties have been present)) within the week. If I do not receive these assurances, and the documents, I will be

KOP:329502v1 3514-04

A - 54

Paul Cottrell, Esquire
Victoria K. Petrone, Esquire
December 21, 2005
Page 2

contacting Judge Sleet to request an appropriate Order and additional relief, if necessary. I trust that this will not be necessary and that the documents will be produced without further delay.

Very truly yours,

Paul A. Logan

PAL:drp
c:    James S. Green, Esquire
      Samuel J. Arena, Jr., Esquire
      Patrick R Kingsley, Esquire
      David M. Burkholder, Esquire
      Kevin W. Goldstein, Esquire

**Paul A. Logan**

| | |
|---|---|
| **To:** | v.petrone@lawtcl.com; Paul Cottrell |
| **Cc:** | Arena, Samuel |
| **Subject:** | City and individual defendant document production |
| **Importance:** | High |

Vicky and Paul:

I had five boxes of documents delivered to me and have had the opportunity to complete cursory review. Even though the production is very late and I have no privilege log, what has been produced is notably deficient.

First, there is not a single document from any of the individual defendants (at least none identified as such).

There are significant additional omissions, too. For example, the minutes of the executive session that preceded the termination of Durkin has not been provided even though it appears that representatives of URS were in the session with the Council members. Their presence destroys any pretence of privilege.

There are no files respecting the G&L and URS contracts or amounts paid to either G&L or URS. Why?

I am concerned again that the failure of the City and the individual defendants to produce all documents will once again affect the scheduling of depositions.

Although I loathe to involve Judge Sleet, I don't have much choice now.

Are there more documents being produced or not? I will be contacting the Court for a discovery conference early next week and want to accurately represent the status of the production.

12/29/2005

**A - 56**

LAW OFFICES
# POWELL, TRACHTMAN, LOGAN,
## CARRLE & LOMBARDO
A PROFESSIONAL CORPORATION

475 ALLENDALE ROAD
SUITE 200
KING OF PRUSSIA, PA 19406

(610) 354-9700
FACSIMILE (610) 354-9760
PLOGAN@POWELLTRACHTMAN.COM
WWW.POWELLTRACHTMAN.COM

MICHAEL G. TRACHTMAN
PAUL A. LOGAN**◊
GUNTHER O. CARRLE*
BRUCE D. LOMBARDO
LAWRENCE A. BORDA*
JOSEPH P. TRABUCCO, III□
NEIL P. CLAIN, JR.*
JONATHAN K. HOLLIN
DAVID T. BOLGER
RICHARD J. DAVISS*□
STEVEN G. BARDSLEY*
STEPHEN D. MENARD*
FRANCIS G. LAROCCA
EILEEN C. CLARK*
DENNIS P. HERBERT*
FRANK S. NOFER*
ANTHONY S. POTTER◊
GEORGE T. REYNOLDS*
MARY J. PEDERSEN*
FREDERICK M. BREHM*
JENIFER L. SUPLEE*
JAMES S. BAINBRIDGE*
KEVIN K. CARTON, JR.*
DIRK M. SIMPSON, LL.M. (TAXATION)*
PATRICK S. CAWLEY
CHRISTOPHER S. KOLLER
GREGORY J. STAR*
ALLISON J. STRUPCZEWSKI

*ALSO ADMITTED IN NJ
◊ALSO ADMITTED IN MD
◊ALSO ADMITTED IN DE
□ALSO ADMITTED IN NY

OF COUNSEL
RALPH B. POWELL, JR.
MALCOLM B. JACOBSON
RICHARD T. ABELL
RICHARD L. BUSH
KEITH R. BLACK

114 NORTH SECOND STREET
HARRISBURG, PA 17101
(717) 238-9300
FAX (717) 238-9325

SUITE 304
1814 EAST ROUTE 70
CHERRY HILL, NJ 08003
(856) 663-0021
FAX (856) 663-1590

December 30, 2005

PLEASE REPLY TO:
KING OF PRUSSIA

*Via Facsimile 1-302-658-9836 and 1-302-658-3492/Ordinary Mail*

Paul Cottrell, Esquire
Victoria K. Petrone, Esquire
**TIGHE, COTTRELL & LOGAN, P.A.**
First Federal Plaza
Suite 500
P. O. Box 1031
Wilmington, DE 19899

Re:    *Donald M. Durkin Contracting, Inc. v. City of Newark, et al.*

Dear Paul and Vickie:

I have reviewed the documents produced by the City. The individual defendants have not produced a single document even though the requests were served on you on September 15, 2005.

Further, in his memorandum dated December 8, 2003, from Carl Luft to the mayor and City Counsel members, (bates #NEW03407), he confirms that there were "four white binders and one manilla envelope" assembled for by review. The binders and envelope have not produced in the most recent production and were not produced in the City's initial production to Federal.

I have written on numerous occasions and worked as cooperatively as possible with you. Unfortunately, I must seek judicial intervention, since there is still no indication as to whether or when any of these records will be produced.

KOP:330009v1 3514-04

A - 57

I will copy you with the letter to Judge Sleet.

Very truly yours,

Paul A. Logan

PAL:drp

c:     James S. Green, Esquire
       Samuel J. Arena, Jr., Esquire
       Patrick R Kingsley, Esquire
       David M. Burkholder, Esquire
       Kevin W. Goldstein, Esquire

**Subject:** RE: Durkin v. City of Newark

Paul:

It seems that there is no rest for the weary but I wanted to address the missing documents with you as promptly as possible.

Durkin served the Requests for the Production of Documents directed to each of the individually-named Defendants on September 5, 2005. There have been no objections to the requests and there has been no assertion of any privilege.

As you know, I made repeated requests for the documents from the individual Defendants. I have reviewed all of the records produced after September 5, 2005 and none of the documents are represented to be from the individual defendants. In fact, there are no documents from the individuals that reflect any information respecting the Calabria's report, re-bid, award of the contract to G&L or discussions respecting Durkin during the project or at or before termination.

There are other documents that have not been produced that are referenced in documents that have been. For example documents are specifically listed in the memorandum from the City Manager, Carl F. Luft to the Mayor and City Council indicating that the City possesses "four white binders and one manila envelope" related to "five issues of concern related to [the City's] contract with Durkin Contracting, Inc. and the reservoir project." These materials have not been produced, or if they have, they are not labeled as such.

The City's contract and all related records, photographs, test results, payment requisitions etc. with the replacement contractor, G & L have not been produced in their totality. The only "contract" we have is a part of the contract with G&L; nothing more, no emails etc.

We also know that "Executive Sessions" of City Council were either recorded or that there are minutes. No privilege has been asserted by the City and Durkin has requested all Executive Session Meeting Minutes. This is especially important with regard to the "Executive Session" that occurred on February 2, 2004 because immediately after the Executive Session, City Council voted to terminate Durkin. It is Durkin's information and belief that at that Executive Session, representatives of URS Corporation were also present. The presence of URS removes would eliminate any claims of privilege, especially in view of the claims now asserted by the City against them.

We scheduled, delayed and rescheduled the depositions of the individual defendants pending the full production of documents. Paul, we need the full production of all requested records immediately. I waited a long time before going to Judge Sleet; perhaps too long, but we need to get the records now.

> -----Original Message-----
> **From:** Paul Cottrell [mailto:p.cottrell@lawtcl.com]
> **Sent:** Sunday, January 08, 2006 12:39 PM
> **To:** David T. Bolger; v.petrone@lawtcl.com; Arena, Samuel; Kingsley, Patrick
> **Cc:** Paul A. Logan
> **Subject:** Re: Durkin v. City of Newark
>
> David,
>
> I am available at 10 on Thursday. But please give me a list of the documents in dispute as early as you can tomorrow so we can narrow the issues for Thursday. For example, my understanding is that we have given you documents from City Counsel members.
>
> Talk to you tomorrow.

1/8/2006

**A - 59**

# In The Matter Of:

*Donald Durkin Contracting    v.*
*City of Newark*

---

*Karl Kalbacher*
*February 6, 2006*

---

*Corbett & Associates*
*1400 N. French Street*
*P.O. Box 25085*
*Wilmington, DE  USA  19899*
*(302) 571-0510    FAX: (302) 571-1321*

*Original File 060206D.ASC, 157 Pages*
*Min-U-Script® File ID: 1545300636*

**Word Index included with this Min-U-Script®**

[1] IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

[2]

DONALD M. DURKIN CONTRACTING, INC.    )

[3] 1310 Industrial Boulevard, Suite 200)

Southampton, PA  18966,    )

[4]

            Plaintiff,    )

[5] v.    ) Civil Action

    ) No. 04-163 GMS

[6] CITY OF NEWARK    )

  220 Elkton Road    )

[7] P.O. Box 390    )

  Newark, DE  19715-0390,    )

[8]

  HAROLD F. GODWIN    )

[9] Mayor, City of Newark, Delaware    )

[10] JOHN H. FARRELL, IV    )

  Council Member, City of Newark,    )

[11] Delaware    )

[12] JERRY CLIFTON    )

  Council Member, City of Newark,    )

[13] Delaware    )

[14] KARL G. KALBACHER    )

  Council Member, City of Newark,    )

[15] Delaware    )

[16] DAVID J. ATHEY    )

  Council Member, City of Newark,    )

[17] Delaware    )

[18] FRANK J. OSBORNE, JR.    )

  Council Member, City of Newark,    )

[19] Delaware    )

[20] CHRISTINA REWA    )

  Council Member, City of Newark,    )

[21] Delaware

[22]        AND

[23]            CORBETT & WILCOX

        REGISTERED PROFESSIONAL REPORTERS

[24] 1400 NORTH FRENCH STREET - WILMINGTON, DELAWARE  19801

        (302) 571-0510

[1] URS CORPORATION    )

  1200 Philadelphia Pike    )

[2] Wilmington, DE  19809    )

[3] v.    )

[4] FEDERAL INSURANCE COMPANY    )

  15 Mountain View Road    )

[5] Warren, NJ  07059    )

[6]   Deposition of KARL F. KALBACHER, taken pursuant

  to notice at the law offices of Tighe, Cottrell & Logan,

[7] First Federal Plaza, Suite 500, Wilmington, Delaware,

  beginning at 10:10 a.m., on Monday, February 6, 2006,

[8] before Debra A. Donnelly, Registered Professional

  Reporter and Notary Public.

[9]

  APPEARANCES:

[10]

  PAUL A. LOGAN, ESQUIRE

[11] POWELL, TRACHTMAN, LOGAN, CARRLE & LOMBARDO

    475 Allendale Road

[12] King of Prussia, Pennsylvania  19406

    for Donald M. Durkin Contracting, Inc.

[13]

  PAUL COTTRELL, ESQUIRE

[14] TIGHE, COTTRELL & LOGAN, P.A.

    First Federal Plaza

[15] P.O. Box 1031

    Wilmington, Delaware  19899

[16] for City of Newark, Godwin, Farrell, Clifton,

    Kalbacher, Athey, Osborne and Rewa

[17]

  JAMES S. GREEN, ESQUIRE

[18] SEITZ, VAN OGTROP & GREEN, P.A.

    222 Delaware Avenue, Suite 1500

[19] Wilmington, Delaware  19801

    for URS Corporation

[20]

[21] PATRICK R. KINGSLEY, ESQUIRE

  SAMUEL J. ARENA, JR., ESQUIRE

[22] STRADLEY RONON STEVENS & YOUNG, LLP

    2600 One Commerce Square

[23] Philadelphia, Pennsylvania  19103

    for Federal Insurance Company

[24]

Page 11

[1]  A: The City Manager would have provided that
[2]  information to us.
[3]  Q: And what is your best recollection of what the
[4]  City Manager, Mr. Luft, told you was the, quote,
[5]  inactivity at the site, unquote, to use your phrase?
[6]  A: My recollection is that in the fall, early
[7]  fall, maybe late summer of 2003, there had been
[8]  inactivity at the site and that we were told that Durkin
[9]  was going to take the winter off and the City was upset
[10]  about that.
[11]  There were further discussions that
[12]  ultimately led to concerns raised with regard to
[13]  constructability, which then led to the February 4th
[14]  outcome.
[15]  Q: Would it be correct, sir, that the person that
[16]  was primary in providing information about the activity
[17]  of Durkin, would that have been Mr. Luft?
[18]  A: Let me be very clear. Mr. Luft is the City
[19]  Manager who reports to the City Council. There are staff
[20]  that work for Mr. Luft that were directly involved in the
[21]  project, Carol Houck, Joe Dombrowski, George Sarris, the
[22]  financial director. They would provide information to
[23]  Mr. Luft, and Mr. Luft would in turn provide that
[24]  information to us, that being the City Council.

Page 12

[1]  Q: Sir, as best you can personally recollect it,
[2]  before February 2, 2004, when was the last time, if ever,
[3]  you visited the site of the job; that is, the reservoir
[4]  project?
[5]  A: I visited the reservoir project on a couple of
[6]  occasions. I believe that I visited the project when
[7]  there was no activity going on in early 2004.
[8]  Q: So that would have been sometime in — since
[9]  the February 2 meeting obviously was 2004, that would
[10]  have been sometime in January of 2004?
[11]  A: I can't tell you exactly when it was, but
[12]  there was clearly no activity going on.
[13]  Q: When you say "clearly no activity," do you
[14]  recall seeing materials stockpiled at the site? Let me
[15]  be specific. Did you see the liner materials, the
[16]  plastic rolls stockpiled at the site?
[17]  A: Yes, I recall, because I requested to tour the
[18]  site, and it was conveyed to me that there were materials
[19]  that were being stockpiled so as to preserve them when
[20]  the project initiated again, was initiated again.
[21]  Q: Now, that was in January or thereabouts, sir?
[22]  A: I don't recall. It was in 2004.
[23]  Q: Okay. It was in 2004.
[24]  There was stockpiled materials on site.

Page 13

[1]  They had not been removed. Is that your recollection,
[2]  sir?
[3]  A: My direct knowledge is that the City staff was
[4]  doing everything it could to preserve the material that
[5]  had been stockpiled at the site once Durkin had left the
[6]  site.
[7]  Q: All right. Let me stop you, because my
[8]  question precisely was, sir, before termination, which is
[9]  February 2, 2004, when was the last time you personally
[10]  were present, and is it your recollection that it was in
[11]  2004?
[12]  A: All I can tell you, Mr. Logan, is that I was
[13]  present in 2004. Where it occurred during the continuum
[14]  of this project, this dispute of February 4, I couldn't
[15]  tell you.
[16]  Q: When you visited the site in 2004, did you
[17]  see any equipment either owned or controlled by
[18]  Donald M. Durkin Contracting on the site?
[19]  A: I did not look to evaluate what materials or
[20]  equipment were owned by Mr. Durkin or the Durkin company.
[21]  I would not have any knowledge of that. I wasn't looking
[22]  for that type of information when I toured the site.
[23]  Q: When you toured the site, sir, what were you
[24]  looking to determine? What information were you seeking

Page 14

[1]  to gather?
[2]  A: I was seeking to evaluate the condition of the
[3]  property, just to get a general understanding from the
[4]  staff as to what was needed to be done to secure the
[5]  site, and just to get a general sense of what was going
[6]  on.
[7]  Q: You cannot recall, or can you — let me ask it
[8]  differently.
[9]  Do you have any recollection of whether
[10]  or not the visit you have just described occurred before
[11]  or after termination?
[12]  A: I can't. I don't.
[13]  Q: Sir, the evening that you voted to terminate
[14]  Donald M. Durkin Contracting, do you recall what
[15]  materials, documents you had personally reviewed or read
[16]  prior to the vote to terminate about the performance by
[17]  Donald M. Durkin Contracting?
[18]  A: Well, I can't speak specifically to the
[19]  documents. All I can suggest to you is that there were
[20]  many documents that we were provided throughout the
[21]  continuum of the process, starting in the September time
[22]  frame, leading up to, you know, through the 2004 time
[23]  period.
[24]  Q: Sir, did you maintain any notes, memos? Did

A - 62

Page 15

[1] you keep the documents that you were provided yourself?

[2] A: No.

[3] Q: Were they made generally available at the

[4] offices, the City offices to review by the City Council

[5] members?

[6] A: At times we received documents that were in

[7] our packet. We get a weekly packet. But you have to

[8] understand, you know, we get a lot of stuff, and from my

[9] own — my own perspective, I try not to keep too much

[10] material, because otherwise I would have a very, very big

[11] library. So I review the material that's provided to me

[12] and then I dispose of it.

[13] Q: Did you dispose of all of the materials that

[14] you were provided in your weekly packets regarding the —

[15] A: Yes.

[16] Q: — Donald M. Durkin Contracting — you have to

[17] let me finish. That's another instruction. The

[18] Donald M. Durkin contract performance?

[19] A: Yes.

[20] MR. LOGAN: I would like to have this

[21] marked collectively, because this is what's been

[22] represented, Paul, by you as the four binders and Manila

[23] envelope materials.

[24] MR. COTTRELL: Right.

Page 16

[1] (Durkin Deposition Exhibit No. 1 was

[2] marked for identification.)

[3]                     BY MR. LOGAN:

[4] Q: Sir, in front of you counsel has laid out four

[5] white binders, and inside of the binder labeled lower

[6] slope correspondence, there is a white Manila folder.

[7] And I'm going to ask you, sir, to look at those binders

[8] and materials in there, because I will be asking you

[9] whether or not you ever recall looking at the binders and

[10] the materials prior to your voting to terminate Durkin's

[11] contract?

[12] A: Well, I'll begin by telling you that I have

[13] not ever seen binders. With regard to the materials,

[14] that's a different story. It's going to take a while.

[15] Q: Well, let me take a step back. There is a

[16] memoranda which — let me take a step in a different

[17] direction.

[18] Mr. Kalbacher, there is a memoranda, a

[19] copy of which I regret I do not have presently, perhaps

[20] others do, that was a memoranda from Mr. Luft to the City

[21] Council members indicating that four white binders and a

[22] Manila envelope were available for review by City Council

[23] members, and that they were maintained in the office of

[24] Mr. Luft, and that was in or about December of 2003.

Page 17

[1] Q: Do you recall ever — do you have any

[2] recollection of receiving that memoranda, sir?

[3] A: I don't recollect, no.

[4] Q: But you do recollect that you have prior to

[5] today never looked at any of the contents of the

[6] materials that are within the binders. Is that correct,

[7] sir?

[8] A: I haven't had —

[9] Q: Let me strike that and ask a different

[10] question.

[11] Do you recall — I think you said the

[12] answer is no, but I do want to make sure that I

[13] understood you.

[14] You do not recall ever seeing white

[15] binders or a Manila envelope prior to today and did not

[16] review those white binders or the Manila envelope for the

[17] contents prior to today. Is that correct?

[18] A: Correct.

[19] Q: Sir, the written materials that you did have

[20] leading up to the vote for termination were the materials

[21] that were forwarded to you in the, I think you called it

[22] a weekly packet. Is that correct?

[23] A: Yes.

[24] Q: And you discarded the weekly packets as they

Page 1

[1] relate to the Durkin materials?

[2] A: Yes.

[3] Q: Do you recall when you discarded those

[4] materials?

[5] A: On an ongoing basis.

[6] Q: So that if you received them during the week,

[7] a week in November or December of 2003, you would have

[8] discarded the materials contemporaneous with or right

[9] after the City Council meeting where the topic was

[10] discussed?

[11] A: Correct.

[12] Q: Do you recall discarding any written materials

[13] respecting Durkin's performance of its contract with the

[14] City since this lawsuit has begun?

[15] A: I'm sorry, could you repeat the question?

[16] Q: Certainly.

[17] Do you recall discarding any written

[18] materials in your possession since the date this lawsuit

[19] was commenced, or at least that you knew about the

[20] lawsuit?

[21] A: I don't think about that, so I would — my

[22] normal practice is to discard materials, so I — I don't

[23] have any materials.

[24] Q: Do you know whether or not memoranda have been

Page 19

[1] generated that have been provided to you respecting
[2] performance of Donald M. Durkin Contracting that you
[3] received after this lawsuit began that you have
[4] discarded?
[5]    A: I don't recall having seen any of that
[6] material, although it's quite possible that — we
[7] certainly received information regarding the lawsuit, you
[8] know, as it has progressed. If there was materials
[9] related to the lawsuit, then we would have received them.
[10]    Q: And it's your testimony today that you have no
[11] such materials any longer because your practice would
[12] have been to discard them. Is that correct?
[13]    A: Yes.
[14]    Q: Did anyone advise you that you should keep and
[15] maintain all of your written documentation regarding
[16] Donald M. Durkin Contracting or this lawsuit after it
[17] began?
[18]    A: No.
[19]    Q: Sir, on the date that you voted to terminate
[20] Durkin's contract, what did you expect Donald M. Durkin
[21] Contracting to be doing at the job on that date? What
[22] did you expect, if someone had gone there and decided,
[23] you know, we shouldn't terminate him because Durkin is
[24] doing something, what was it that you expected Durkin to

Page 20

[1] be doing on the date that you voted to terminate him?
[2]    A: My recollection was that it was Durkin who had
[3] told us that they couldn't complete the project, that it
[4] was not constructible, and I took them at their word and
[5] I said, well, if they don't think they can build it, then
[6] I guess we've got to find somebody else.
[7]    Q: Mr. Kalbacher, do you recall being informed
[8] that what Durkin actually said was that the project could
[9] not be constructed, quote, as designed, unquote?
[10]    A: I believe those were words that were used,
[11] yes.
[12]    Q: And do you know what Durkin meant by saying
[13] that the contract, or the project could not be built,
[14] quote, as designed, unquote?
[15]    A: Well, I know there was a concern with the
[16] lower slope. The cover material for the geomembrane,
[17] there had been heavy rains in the summertime, and we were
[18] told that there was concern with sluffing of this
[19] material that was covering the geomembrane, and that that
[20] was a major concern of Durkin's, is not being able to
[21] construct that cover system, if you will, over the
[22] geomembrane.
[23]    Q: Sir, when you said "we were told," can you
[24] tell me who told you of the concerns of the sluffing of

Page 21

[1] the lower material?
[2]    A: Well, again, the — the City Council, by way
[3] of education, and relationship to the City Manager, is
[4] really only directed to speak to three people; the City
[5] Manager, the City Solicitor, and the City secretary.
[6] They report directly to the City Council. And the City
[7] Manager has conveyed to us, and we agree, that we should
[8] not be interfering with the day-to-day operations of his
[9] City staff. And so he reports to us and we report to
[10] him. So any information that is transmitted to us is
[11] through his staff to him to us.
[12]    Q: Okay. Let me just see if we can identify
[13] people.
[14]    The City Manager is Mr. Luft. Is that
[15] correct?
[16]    A: Yes.
[17]    Q: And when I say "is," I'm talking about during
[18] this period of time which I will denominate to be at the
[19] time of termination and from — actually, from the date
[20] that the contract was signed and work was performed by
[21] Durkin?
[22]    A: Yes.
[23]    Q: Would have been Mr. Luft?
[24]    A: Yes.

Page 22

[1]    Q: And the City Solicitor would have been
[2] Mr. Akin. Is that correct?
[3]    A: Yes.
[4]    Q: Throughout that entire period of time. Is
[5] that correct?
[6]    A: Yes.
[7]    Q: And the City secretary was whom?
[8]    A: Sue Lamback.
[9]    Q: Sir, do you recall ever receiving any
[10] information from Sue Lamback, the City secretary,
[11] regarding the performance or lack of performance of
[12] Donald M. Durkin Contracting?
[13]    A: I don't. And it really wouldn't have been
[14] Sue's responsibility to act in that regard.
[15]    Q: The information that you received regarding
[16] the, quote, as designed, unquote, aspect of the
[17] performance of the work that was being called into
[18] question by Durkin, that information would have come to
[19] you from Mr. Luft or the City Solicitor. Is that
[20] correct?
[21]    A: Yes.
[22]    Q: Did you undertake personally to evaluate the
[23] factual basis for any of the information that Mr. Luft
[24] told you?

Page 27

[1] A: I voted to terminate Durkin based upon the
[2] information that was provided to us on both sides of the
[3] issue, from the City staff, as well as from the materials
[4] that were being provided by Durkin.
[5] Q: My question to you, sir, is: Why didn't you
[6] talk to Durkin to find out directly from Durkin what
[7] their position was?
[8] A: I don't believe that I need to specifically
[9] contact Durkin to decide a course of action. I rely upon
[10] the technical expertise of the contractors that work for
[11] the City, as well as the City staff, to be responsible
[12] enough to offer to us a complete set of facts on both
[13] sides of the issue in order to make an informed decision.
[14] Q: Sir, let me stop for a moment.
[15] When you talk about technical reports,
[16] did you personally see or read any report generated by
[17] Dr. Greg Richardson prior to terminating, voting to
[18] terminate Durkin?
[19] A: I believe I did.
[20] Q: And did you read the report?
[21] A: Yes.
[22] Q: Did you read the response report prepared by
[23] URS Corporation?
[24] A: I believe there were several responses over

Page 28

[1] the continuum of time with regard to both sides, so the
[2] answer is yes in general.
[3] Q: Well, specifically, sir, do you recall reading
[4] a response report to that generated by Dr. Greg
[5] Richardson authored by a representative of URS
[6] specifically responding to Dr. Richardson prior to
[7] terminating or voting to terminate Durkin?
[8] A: I would have reviewed that report.
[9] Q: That's one of the documents that you would
[10] have discarded. Is that correct?
[11] A: Yes.
[12] Q: And do you know the date of the report that
[13] responds to Dr. Richardson's report?
[14] A: I do not.
[15] Q: Do you know that it is dated the Friday before
[16] the Monday of City Council that was, in fact, the date
[17] that City Council voted to terminate Durkin?
[18] A: Mr. Logan, as I have said over and over again,
[19] this is not a process that was initiated and completed on
[20] February 4th. It was a continuum of dialogue from
[21] September, or August of 2003 leading up to. There was a
[22] tremendous amount of information that was being provided.
[23] Probably that report was, that you are referencing, as
[24] you have indicated. I have no problem with that.

Page 29

[1] Q: Sir, my question is: Do you recall reading
[2] the specific response of URS to Dr. Richardson's report
[3] prior to voting to terminate Durkin?
[4] A: If a report was provided to me prior to the
[5] City Council meeting on February 4th, then I read all the
[6] materials that are provided to me.
[7] Q: But you don't know one way or the other
[8] whether or not that was, in fact, provided to you because
[9] you have discarded all your documents. Is that correct,
[10] sir?
[11] A: I think a report of that significance would
[12] have been provided to me and I would have reviewed it.
[13] Q: How often do you receive materials in, quote,
[14] packet form, unquote? When do you get them?
[15] A: We receive materials at a minimum of once a
[16] week, and if required on a daily basis.
[17] Q: Now, sir, you recall — your testimony is that
[18] you do recall receiving and reading Dr. Richardson's
[19] report. Is that correct?
[20] A: Yes.
[21] Q: And did you formulate questions about
[22] Dr. Richardson's report?
[23] A: I can't recall specifically, but I'm sure that
[24] if it was a detailed technical report, that I would have

Page 30

[1] questions as to what it had said.
[2] Q: What effort, if any, did you take to have
[3] those questions answered?
[4] A: Since this was potential pending litigation,
[5] those types of issues are best addressed in executive
[6] session, and so we had a series of executive session
[7] meetings throughout the continuum of this process wherein
[8] Council was provided the opportunity to raise questions
[9] and to have those questions answered.
[10] Q: Sir, are you aware of the date that
[11] Dr. Richardson's report was furnished to the City?
[12] A: I'm not aware of the specific date.
[13] Q: I represent to you that it was in or about
[14] January 20, 2004.
[15] Would that refresh your recollection?
[16] A: Let me be clear. I believe there were more
[17] than — there was more than just one report provided by
[18] Mr. Richardson to us.
[19] Q: You are correct, sir. I'm talking about the
[20] first report, the very first report by Dr. Richardson.
[21] I'm going to represent to you that there was a
[22] transmittal from Ellen Cavallaro, Surety Claims Attorney,
[23] to Mr. Cottrell, the gentleman to your right.
[24] Let's have this marked.

Page 99

[1] there is a single piece of paper from the City or URS to
[2] Durkin dated December 9, 2003, or later up to the date of
[3] termination where the City states to Durkin, you will be
[4] terminated unless you come back or finish the work or do
[5] something like that between the meeting that is
[6] referenced in the memoranda and the date of termination?
[7] Do you know if there is a single notice to Durkin?
[8]     MR. GREEN: Excuse me. When you say
[9] "the memoranda"?
[10]     MR. LOGAN: I'm sorry. I will reference
[11] specifically. It is Durkin No. 6. It's the memoranda
[12] dated December 8, 2003.
[13]             BY MR. LOGAN:
[14]     Q: Between December 8, 2003, and February 2,
[15] 2004, is there a single letter or document that you know
[16] of from the City to Durkin indicating that if you do not
[17] immediately resume work, you will be terminated?
[18]     MR. COTTRELL: Objection as to form.
[19] You can answer.
[20]     THE WITNESS: Well, I don't recall
[21] specifically that case. However, I will say that, and
[22] this is my speculation again, that the City Council has a
[23] published agenda that must be publicly advertised. I
[24] don't know, is it ten days in advance of the public

Page 100

[1] meeting? And in that agenda there is documents that are
[2] available to the public to review, and at that time at a
[3] minimum there would have been information as to what the
[4] recommendation of the City Manager was to proceed forward
[5] with a termination.
[6]             BY MR. LOGAN:
[7]     Q: I'm not sure I understood your answer, sir.
[8]     Is there a document that is generated by
[9] the City Manager that indicates his recommendation to
[10] City Council as to what to do that would have included
[11] termination of Durkin?
[12]     A: I would believe that there is. If there
[13] isn't, I would be wrong. But if it was a matter that
[14] came before the City Council, it would be publicly
[15] advertised and there would be information supporting the
[16] agenda item.
[17]     Q: Do you know that there is no agenda item
[18] listed in any, at least none that we've seen, listed on
[19] any City Council agenda that references the potential
[20] termination of Durkin as the contractor for the reservoir
[21] ever?
[22]     A: Well, as I said, that's what my thought would
[23] have been, the normal process that I understand.
[24]     Q: So it's your understanding that the normal

Page 101

[1] process would have been that the public would have been
[2] advised that the City Council is considering the
[3] termination of Durkin as the contractor for the
[4] reservoir, and that would have appeared in the official
[5] agenda for the City Council meetings? Is that your
[6] understanding, sir?
[7]     A: That's what I understand, but maybe there is
[8] some other reason for not doing that that is beyond my
[9] knowledge. But we are an open government, so...
[10]     Q: Well, did anyone ever tell you that the issue
[11] of termination would be, in fact, discussed and voted on
[12] at the February 2 meeting in advance of that meeting?
[13]     A: Absolutely, yes.
[14]     Q: Who told you that?
[15]     A: City Manager.
[16]     Q: So that going into the meeting on February 2,
[17] it was already known that the City was, in fact,
[18] considering that evening termination of Durkin's
[19] contract?
[20]     A: Yes.
[21]     Q: Do you know why no one told Durkin that?
[22]     A: I don't know that. Possibly that the City was
[23] concerned with potential pending litigation. I can't
[24] speculate on that.

Page 102

[1]     Q: Well, do you know whether or not there was
[2] any, quote, pending litigation, unquote, as of
[3] February 2, 2004?
[4]     A: I believe I used the word potential.
[5]     Q: Okay. Do you know whether or not Durkin was
[6] ever told in the months of December or January that their
[7] contract was being considered for termination by the City
[8] Council at any of its meetings?
[9]     A: The City Council specifically did not speak in
[10] public about potential pending litigation, and so we did
[11] not speak with regard to the reservoir during that time
[12] period in public session.
[13]     Q: Well, sir, there is a — I need to draw a
[14] distinction.
[15]     There is a decision to be made by City
[16] Council as to what it does or does not do with a contract
[17] which it is a party to. Correct?
[18]     A: Yes.
[19]     Q: And that — discussions about what the City
[20] does or does not do with respect to contracts that it is
[21] a party to is a part of the open discussion that would
[22] have otherwise been available to the public. Correct?
[23]     A: Well, my view was that that is what I thought
[24] the process was. If it didn't occur that way, there

Page 123

[1] Durkin?

[2] A: Could you repeat that question?

[3] Q: It's badly stated, so let me say it

[4] differently.

[5] On the night you voted to terminate

[6] Durkin, did you have any understanding of whether or not

[7] Durkin intended to return and continue with the work to

[8] complete the reservoir?

[9] A: I can't speak for what Durkin's intentions

[10] were.

[11] Q: Well, once again, the resolution is based upon

[12] its refusal to perform under its contract with the City

[13] of Newark. I'm reading again from the resolution.

[14] A: Yes, sir.

[15] Q: Is it your testimony today that you didn't

[16] know whether or not Durkin, in fact, was refusing to

[17] perform under its contract with the City on the date you

[18] voted to terminate?

[19] A: That's not what I said, Mr. Logan. What I

[20] said was that based on the weight of information that has

[21] been provided to me at that time, that the recommendation

[22] of the City Manager was to terminate the contract because

[23] it was his belief, based upon all the information back

[24] and forth, all the meetings that have occurred leading up

Page 124

[1] to that point, all the technical documents that have been

[2] provided, that we needed to make a change to terminate.

[3] Q: Okay. It was his recommendation that the City

[4] needed to make a change of contractors. Is that what the

[5] recommendation of Mr. Luft was?

[6] A: Based upon, as I would suspect of Mr. Luft,

[7] the weight of information that had been provided to him.

[8] Q: Did Mr. Luft advise City Council that Durkin

[9] had stated that it would not resume work when the

[10] specifications would allow and complete the contract?

[11] A: I don't know that specific statement being

[12] made by Mr. Luft.

[13] Q: Did Mr. Luft ever advise City Council that

[14] Durkin at any time when the specification permitted it to

[15] do so had refused to do any work?

[16] A: I don't know that that was ever stated to me.

[17] I don't recall.

[18] Q: Sir, the night that you voted to terminate

[19] Durkin, did you understand there to be any preconditions

[20] by the City, imposed on the City in the contract to give

[21] notice to Durkin of an intention to terminate?

[22] A: I am not — I wasn't at the time — I didn't

[23] ask the question. It didn't come into my mind.

[24] Q: Do you recollect anyone asking the question,

Page 125

[1] have all of the conditions — have we done everything

[2] we're supposed to do before we terminate Durkin? Did

[3] that come up in any of the conversation, sir?

[4] A: Well, let me back up. I believe there is a

[5] dispute resolution clause in the contract, and I would

[6] presume that that was what was going on.

[7] Q: Have you become aware that Durkin has asserted

[8] that in the contract it was entitled to seven days' prior

[9] written notice of intention to terminate?

[10] A: I was not aware of that.

[11] Q: Are you aware of it now?

[12] A: You just told me.

[13] Q: That's the first time you knew that?

[14] A: Yes.

[15] Q: Have you ever read the Complaint that Durkin

[16] has filed against the City of Newark?

[17] A: Yes.

[18] Q: Have you ever read the Answer that has been

[19] filed on behalf of the City of Newark, including

[20] yourself?

[21] A: Yes.

[22] Q: And did you read the Complaint to raise the

[23] issue of the seven-day written notice?

[24] A: As I said, Mr. Logan, I didn't — I read the

Page 126

[1] document and I discarded the document.

[2] Q: You discarded the Complaint that was served on

[3] you?

[4] A: I don't have any documents, Mr. Logan.

[5] Q: So you discarded the Complaint that was served

[6] on you. Right?

[7] A: That's right.

[8] Q: Did you do any investigation to determine

[9] whether or not the City had, in fact, given Durkin seven

[10] days' prior written notice of its intention to terminate

[11] the contract?

[12] A: I don't have any knowledge of the timing of

[13] that; if, in fact, that did or did not occur.

[14] Q: Just so we're clear, and I'm reading your

[15] answer, you just stated "I don't have any knowledge of

[16] the timing of that."

[17] When you say "of that," that is prior

[18] written notice from the City to Durkin of intention to

[19] terminate. Is that correct?

[20] A: To be clear, we — I assume, and maybe

[21] incorrectly, that all the legal processes that should

[22] have occurred. If they did not, I was not aware of that.

[23] Q: And you've taken no effort to this day to

[24] determine whether or not the required seven-day notice,

A - 67

1            IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF DELAWARE

2

    DONALD M. DURKIN CONTRACTING, INC.    )
3   1310 Industrial Boulevard, Suite 200)
    Southampton, PA  18966,              )
4                                        )
                    Plaintiff,           )
5          v.                            )    Civil Action
                                         )    No. 04-163 GMS
6   CITY OF NEWARK                       )
    220 Elkton Road                      )
7   P.O. Box 390                         )
    Newark, DE  19715-0390               )
8                                        )
    HAROLD F. GODWIN                     )
9   Mayor, City of Newark, Delaware      )
                                         )
10  JOHN H. FARRELL, IV                  )
    Council Member, City of Newark,      )
11  Delaware                             )
                                         )
12  JERRY CLIFTON                        )
    Council Member, City of Newark,    )
13  Delaware                           )
                                         )
14  KARL G. KALBACHER                    )
    Council Member, City of Newark,      )
15  Delaware                             )
                                         )
16  DAVID J. ATHEY                       )
    Council Member, City of Newark,      )
17  Delaware                             )
                                         )
18  FRANK J. OSBORNE, JR.                )
    Council Member, City of Newark,      )
19  Delaware                             )
                                         )
20  CHRISTINA REWA                       )
    Council Member, City of Newark,      )
21  Delaware                             )

22          AND

23              CORBETT & WILCOX
           REGISTERED PROFESSIONAL REPORTERS
24  1400 NORTH FRENCH STREET - WILMINGTON, DELAWARE  19801
                    (302) 571-0510

31e58d2a-e572-4a93-a151-fd8ad7945458

A - 68

Page 2

```
1   URS CORPORATION
    1200 Philadelphia Pike
2   Wilmington, DE 19809

3

4   FEDERAL INSURANCE COMPANY
    15 Mountain View Road
5   Warren, NJ 07059
         Deposition of VANCE A. FUNK, III, taken
6   v.
7   pursuant to notice at the law offices of Sawyer & Akin,
    1220 North Market Street, Suite 606, Wilmington,
8   Delaware, beginning at 10:08 a.m., on Friday,
    February 10, 2006, before Debra A. Donnelly, Registered
9   Professional Reporter and Notary Public.

10  APPEARANCES:

11  PAUL A. LOGAN, ESQUIRE
    POWELL, TRACHTMAN, LOGAN, CARRLE & LOMBARDO
12      475 Allendale Road
        King of Prussia, Pennsylvania 19406
13      for Donald M. Durkin Contracting, Inc.

14  PAUL COTTRELL, ESQUIRE
    TIGHE, COTTRELL & LOGAN, P.A.
15      First Federal Plaza
        P.O. Box 1031
16      Wilmington, Delaware 19899
        for City of Newark, Godwin, Farrell, Clifton,
17      Kalbacher, Athey, Osborne and Rewa

18  JAMES S. GREEN, ESQUIRE
    SEITZ, VAN OGTROP & GREEN, P.A.
19      222 Delaware Avenue, Suite 1500
        Wilmington, Delaware 19801
20      for URS Corporation

21  PATRICK R. KINGSLEY, ESQUIRE
    SAMUEL J. ARENA, JR., ESQUIRE
22  STRADLEY RONON STEVENS & YOUNG, LLP
        2600 One Commerce Square
23      Philadelphia, Pennsylvania 19103
        for Federal Insurance Company
24
```

Page 3

```
1   APPEARANCES (CONT'D):

2

    ALSO PRESENT:
3
        ROGER A. AKIN, ESQUIRE
4       CITY SOLICITOR'S OFFICE
        CITY OF NEWARK
5
6       JIM DURKIN
        MICHAEL DURKIN
7

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 4

```
1                   VANCE A. FUNK, III,
2   having been first sworn on oath, was
3   examined and testified as follows:
4              EXAMINATION
5   BY MR. LOGAN:
6       Q.  Good morning, Mr. Funk.  My name is Paul
7   Logan.  We've finally met in person.  We've spoken on the
8   phone, I know.
9           As an attorney, I suppose you've had the
10  pleasure of going through depositions in the past, so
11  I'll skip a lot of the preliminaries, and the only thing
12  I would ask is that if you don't understand a question
13  that I ask, please tell me.
14      A.  I would imagine I won't understand most of
15  your questions.
16      Q.  That's fair.  It seems to be the way of the
17  world these days.
18          MR. KINGSLEY:  Just for the record,
19  that's a joke and everyone is laughing.
20          MR. LOGAN:  Thank you, Pat.
21  BY MR. LOGAN:
22      Q.  Mr. Funk, you are currently the Mayor of the
23  City of Newark.  Is that correct?
24      A.  I am.
```

Page 5

```
1       Q.  And can you tell me when you were elected?
2       A.  April 10th, 2004, is close to the date.
3       Q.  And do you recall, sir, when you were sworn
4   in?
5       A.  The following Tuesday, which would have been
6   probably the 18th.
7       Q.  Mr. Funk, can you just for the innocuous
8   background, as Mr. Cottrell would say, can you please
9   tell me a bit about your background, your employment,
10  other than acting as Mayor of the City of Newark?
11      A.  Well, I graduated from the University of
12  Delaware with a marketing degree, which I'm sure you'll
13  realize when you start asking these tactical questions.
14  I graduated from the Washington and Lee School of Law in
15  '68.
16          Upon completion of law school I was
17  hired by Potter, Anderson & Corroon, and I worked there
18  from September of '68 until 1975.  During that time
19  period I was taken into the military service for two
20  years and I served as a military police officer in
21  Vietnam.
22          Then in 1975 I opened my own office in
23  the City of Newark, and I've practiced law there since.
24      Q.  Is there an area of concentration that you
```

31e58d2a-e672-4a93-a151-fd6ad7945458

A - 69

Page 6

```
1   focused on in your career as an attorney?
2        A.  I am probably 85 percent of the time a
3   residential real estate lawyer.
4        Q.  Sir, when you decided to run for Mayor, do you
5   recall ever investigating activities by the City of
6   Newark in connection with the reservoir project?  And
7   just for the record and clarity, we're talking about the
8   project that was being prosecuted by Donald M. Durkin
9   Contracting, which is the subject of this litigation?
10       A.  I think my first knowledge of the project was
11  when I was doing a residential refinance, a mortgage
12  closing with an employee from the Durkin Company.  I was
13  thinking about running for Mayor at that time, and I knew
14  the reservoir was the highlight of the present, the
15  former Mayor's campaign, so I asked him after looking at
16  his application and finding out that he was with Durkin,
17  how is the reservoir going?  And he told me about his
18  feeling about how the reservoir was going.
19           After that, you know, I really just read
20  what was in the newspaper.  At one point I was in a
21  Rotary meeting, I would say, you probably remember this
22  better than I do, in October of 2003, maybe November, I
23  can't remember, Paul, but somebody slipped me a note at a
24  Rotary meeting and asked me to call you.
```

Page 7

```
1        Q.  Sir, I want to get a little bit of information
2   about procedurally how votes on the City Council and your
3   role as Mayor, or the role as Mayor are transacted in the
4   City of Newark.  Okay?
5        A.  Under the City charter, the Mayor is really
6   not a real mayor, the Mayor is the Councilman at large.
7   He represents the City as a whole, and as the Councilman
8   at large, the charter requires that person to be the
9   person that runs the meetings.
10       Q.  Does the Mayor have a vote when any resolution
11  is presented for --
12       A.  Yes.  Yes.  The Mayor is one of the seven
13  votes.
14       Q.  Now, sir, I want to jump to the point where
15  Durkin was terminated.
16           How did you learn of Durkin being
17  terminated as the contractor for the reservoir project?
18       A.  The newspaper.
19       Q.  And this was preelection.  Is that correct,
20  sir?
21       A.  Correct.
22       Q.  Had you had any conversations with any then
23  sitting City Councilmember about the reservoir project?
24       A.  No.
```

Page 8

```
1        Q.  Had you had an opportunity to discuss with
2   your opponent in the mayoral election the reservoir
3   project?
4        A.  No.
5        Q.  Now, sir, when you took office the Tuesday
6   after April 10, 2004, did you have the occasion to begin
7   any evaluation or investigation as to the circumstances
8   which led to the termination of Durkin as the contractor?
9        A.  When I, you know, was elected, the City did an
10  orientation on what was, you know, going on in the City
11  and how the departments worked, and introductions to the
12  different department heads.  And I would say in at least
13  two of the discussions the question of the reservoir came
14  up and I asked questions about the status.
15       Q.  Do you recall with whom you had these sessions
16  of questions and answers?
17       A.  I know specifically I talked to the City
18  Manager about the reservoir, and I'm pretty sure,
19  although not positive, that I had a discussion with the
20  department head for the Waste and Water Section, Joseph
21  Dombrowski.
22       Q.  Mr. Funk, the discussion you had with the City
23  Manager, Mr. Luft, that would be Carl Luft.  Is that
24  correct, sir?
```

Page 9

```
1        A.  Correct.
2        Q.  What did he tell you about the termination of
3   Durkin as the contractor?
4        A.  I don't know that we specifically talked about
5   the termination.  What I remember was that before I got
6   in that room someone, and I think it was the same person
7   who put me in touch with you, said that he was shocked
8   that there were only four test borings done on the site.
9           And so I had asked the City Manager
10  whether or not it was true that there were only four test
11  borings done on the site, and he admitted that he thought
12  that was true.
13           And then I said, you know, being
14  involved in real estate activities and sometimes
15  development law, I was rather surprised that the number
16  was anything less than 20 for a site that size.  And he
17  said that he felt four were adequate.
18       Q.  And the "he" person you were referring to is
19  Mr. Luft.  Is that correct?
20       A.  Carl Luft, City Manager.
21       Q.  Did you have any further discussions about the
22  project or Durkin's termination?
23       A.  No.
24       Q.  Is it your recollection that you may have had
```

3 (Pages 6 to 9)

31a58d2a-e672-4a83-a151-fd6ad7945458

A - 70

1    did you make that conclusion because these are life
2    safety issues?
3        A.   I do not recall any discussion like that.
4        Q.   So right now, as we sit here today, the only
5    assurances that the members of City Council have, and
6    you, is that Carl Luft believes it's safe to proceed
7    filling the reservoir, for whatever reason?
8        A.   Correct.
9        Q.   Has the City received any guarantees,
10   agreements to indemnify and hold harmless, or other
11   assurances from URS respecting its design for the
12   reservoir?
13       A.   I'm not aware of any.
14       Q.   Do you know whether or not anyone on behalf of
15   the City has requested assurances, guarantees,
16   indemnification agreements from URS respecting the design
17   of the reservoir?
18       A.   I'm not aware of any.
19       Q.   Sir, have you maintained any documents with
20   regard to the reservoir project or this litigation?
21       A.   The only thing I've kept was the Complaint you
22   sent me and the thing from Dr. Richardson you sent me.
23   The rest of the stuff, I read it, I shred it.
24       Q.   Have you been advised by anyone to retain

1    sent to me by the City secretary. I would hope they keep
2    an inventory of everything they send us and keep copies
3    for the file.
4        Q.   My question is: Do you know whether or not
5    they are retained in packet form? And, again, we're
6    interested in —
7        A.   I have no idea.
8        Q.   So there is no way to reconstruct what
9    information in document form was in your possession or
10   the possession of any other City Councilperson unless the
11   documents are retained by the City secretary in packet
12   form?
13       A.   I guess that's true.
14       Q.   And no one advised you to keep the packets
15   that are provided to you related to the reservoir
16   project?
17       A.   No one.
18       Q.   The decision to shred the documents, that was
19   your decision?
20       A.   We shred everything in the office. It's an
21   easy decision. Unfortunately, with real estate, a lot of
22   the documents have Social Security numbers, dates of
23   birth, applications have their credit card numbers,
24   everything like that. So we just shred everything.

1    documents that relate to the reservoir as it relates
2    to after this litigation was commenced?
3        A.   No one has ever said anything to me about
4    that.
5        Q.   As an attorney, are you aware of the term
6    spoliation?
7        A.   No.
8             There is really no need for us to keep
9    copies of all this stuff because it's all in our file at
10   the City secretary's office.
11       Q.   Can you explain that, please? I'm not sure
12   what you just said.
13            You believe copies of everything you
14   received are retained by the City secretary?
15       A.   Yes, because it is just copies. We don't get
16   originals of anything.
17       Q.   Are they kept, the documents by the City
18   secretary, in the form in which you receive them? That
19   is to say, a packet was testified to Mr. Kalbacher the
20   other day.
21       A.   I'm not sure. I'm not sure.
22       Q.   So is there any way to determine what
23   information you received in a packet?
24       A.   I would assume so, because the packets are

1        Q.   Sir, did you ever receive any electronic
2    documents, that would be e-mails, from anyone at the
3    City, including Mr. Luft?
4        A.   I get e-mails every day from different people
5    at staff all the time.
6        Q.   Do you recall ever receiving electronic
7    documents, e-mails, from Mr. Luft regarding the reservoir
8    project?
9        A.   That's a good question, because generally when
10   he sends stuff out, he always puts stamps on it about
11   personal and confidential and has the Police Department
12   hand deliver it to your house. It's possible that
13   something came e-mail, but I just don't recall it
14   offhand.
15       Q.   Do you know whether or not the City has a
16   record retention policy as to what it keeps?
17       A.   Not specifically. When I was the City
18   Alderman, we had policies in that department as to what
19   you had to keep and what you could throw away, but I'm
20   not sure what the City's policy is.
21       Q.   Do you know whether or not Mr. Luft's computer
22   has been replaced within the last two years?
23       A.   As cheap as he is, I doubt it. But, anyway, I
24   don't know. He is very frugal when it comes to office

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

DONALD M. DURKIN CONTRACTING,
INC., *Plaintiff*

vs.

CITY OF NEWARK, et al., *Defendants*          CASE NO. 04-0163-GMS

and

CITY OF NEWARK, *Third-Party Plaintiff*

vs.

DONALD M. DURKIN CONTRACTING
and FEDERAL INSURANCE COMPANY,
*Third-Party Defendants*

### REQUEST FOR PRODUCTION OF DOCUMENTS
### (SET I) DIRECTED TO THE CITY OF NEWARK

Pursuant to Federal Rules of Civil Procedure 26 and 34, you are hereby requested to produce the below-listed documents for inspection and copying within thirty (30) days, at the Law Offices of Powell, Trachtman, Logan, Carrle & Lombardo, P.C., 475 Allendale Road, Suite 200, King of Prussia, Pennsylvania, 19406, or at such other convenient location as otherwise agreed in writing.

### DEFINITIONS

For the purposes of these Requests, the following definitions shall apply:

1.      The "City of Newark" shall mean the City of Newark, the Mayor of the City of Newark, and all Council Members of and for the City of Newark, individually and/or collectively, as appropriate.

2.      The "City of Newark Reservoir Project" shall mean the Water Supply Reservoir that is the subject of the Construction Contract at issue in this action.

3.      "You" and "your" shall mean the party responding to these Requests.

4.      "Document" means, unless otherwise stated, all written, printed, typed or recorded

KOP:322153v1 3514-04

A - 72

electronically, graphic or photographic material of any kind or character and non-duplicate copies now or at any time relevant to this action in your possession, custody or control, including, among other things and without limitation, writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, if necessary, by you through detection devices into reasonably usable form.

5.      "All documents" means the original and all copies of a document, as above defined and known to you, including all drafts and marked up copies, and every such document that can be located or discovered by you through reasonably diligent efforts.

6.      All references to the parties also encompass their agents, employees, attorneys or representatives.

7.      "Relating to" or "related to" shall mean referring to, alluding to, responding to, concerning, connected with, commenting on, in respect of, about or regarding.

## INSTRUCTIONS

The following Instructions shall govern these Requests:

1.      Each Request is to be answered separately and completely.

2.      Requests that cannot be answered in full shall be answered as completely as possible and shall specify the reasons for the incompleteness.

3.      You are hereby requested to supplement seasonably your responses to these Requests pursuant to Rule 26(e) of the Federal Rules of Civil Procedure at the end of each thirty (30) day period immediately following the filing of your initial responses hereto based on the requirements of Rule 26(e). For the purpose of Rule 26(e), these Requests are deemed to be a "new" request for each thirty (30) day period prior to the time of the final pretrial order.

4.      If, after reasonable investigation, you lack documents responsive to any Request, state so expressly, and describe in detail the investigation that you made to obtain knowledge of documents responsive to that Request.

5.      If you have responsive documents, some of which you are providing in an answer and some of which you are withholding, state so expressly, and state in detail the exact grounds upon which responsive documents are being withheld.

6.      For writings to which you have had access but which are not now in your possession, custody or control, state the circumstances under which you had access to such documents and the identity of the individual(s) or entity that now has them in their possession, custody or control.

KOP:322153v1 3514-04

A - 73

7.     To the extent that you object to any Request or portion thereof, you shall:

    (a)     identify the portion to which such objection is made;

    (b)     state specifically each and every ground upon which you rely for your objection; and

    (c)     answer all parts to which no objection exists.

8.     To the extent that you object to any Request on the basis of privilege, you shall:

    (a)     identify the portion to which such objection is made;

    (b)     state specifically each and every ground upon which you rely for your objection; and

    (c)     answer all parts to which no objection exists.

## DOCUMENTS TO BE PRODUCED

1.     All documents relating to the City of Newark Reservoir Project, including, but not limited to the following:

    (a)     all correspondence generated or received by the City of Newark;

    (b)     all electronic documents, including emails and fax transmissions between URS, the City of Newark and any of the named Defendants;

    (c)     all documents respecting the contract and work being performed by George & Lynch, Inc.;

KOP:322153v1 3514-04

A - 74

(d) all documents respecting the re-bid of the contract for the work within the scope of the contract of Donald M. Durkin Contracting, Inc., including copies of all handouts and other materials;

(e) all communications between the City of Newark and URS in any way related to this litigation.

Powell, Trachtman, Logan,
Carrle & Lombardo, P.C.

By: _____
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
Attorneys for Plaintiff

KOP:322153v1 3514-04

A - 75

## CERTIFICATE OF SERVICE

I, Paul A. Logan, counsel for Plaintiff certify that on September 15, 2005, a true and

correct copy of the foregoing Request for Production of Documents (Set I) Directed to City of

Newark was served upon the following by U.S. Mail, postage prepaid, at the addresses below.

Paul Cottrell, Esquire
Victoria K. Petrone, Esquire
**TIGHE, COTTRELL & LOGAN, P.A.**
First Federal Plaza
Suite 500
P. O. Box 1031
Wilmington, DE 19899
Attorneys for City of Newark, Harold F.
Godwin, John H. Farrell, Jerry Clifton, Karl
G. Kalbacher, David J. Athey, Frank J.
Osborne, Jr. and Christina Rewa

James S. Green, Esquire
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue
Suite 1500, P. O. Box 68
Wilmington, DE 19899
Attorneys for URS Corporation

Samuel J. Arena, Jr., Esquire
Patrick R Kingsley, Esquire
Stradley Ronon Stevens & Young LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098
Attorneys for Third-Party Defendant
Federal Insurance Company

Powell, Trachtman, Logan,
Carrle & Lombardo, P.C.

By: _____
Paul A. Logan

KOP:322153v1 3514-04

A - 76

# INTENTIONALLY LEFT BLANK

## A77-A79

*D. Durkin 04*

**Paul A. Logan**

| | |
|---|---|
| **From:** | Paul Cottrell [p.cottrell@lawtcl.com] |
| **Sent:** | Thursday, February 09, 2006 11:37 AM |
| **To:** | David T. Bolger |
| **Cc:** | Arena, Samuel; Kingsley, Patrick; Jim Green; jseitz@svglaw.com; Paul A. Logan |
| **Subject:** | Re: D.M. Durkin, City of Newark |

Gentlemen,

1. This will confirm that we will be taking the deposition of Mayor Vance Funk tomorrow at 10 a.m. (ending at 1 p.m.) at Roger Akin's office at 1220 Market Street, Suite 300. Please bring your calendars to discuss further depositions (and a list of who you want to depose; for my side, I want to depose anyone you intend to present at trial).

2. On the three items below in Bolger's letter:

A. As to "briefing packets," we are gathering those now and hope to be able to provide you with copy sets by next week.

B. On email, we are looking into this now. I thought print outs of our relevant emails had been produced but we will look into this in more detail now since David raised the issue. And I object to the threat that you will go to the court if we don't provide "prompt access" as you demand. I think it is incumbent upon us all to work these issues out and I am confident we can do that.

C. Lastly, I disagree with David's statements as to Executive Session minutes, particularly as we have only deposed one participant (and he's not done).

Regards,
Paul

Paul Cottrell, Esq.
Tighe, Cottrell & Logan, P.A.
704 North King Street
Suite 500
Wilmington, DE 19801
302-658-6400
302-658-9836 Fax

----- Original Message -----
**From:** David T. Bolger
**To:** Paul Cottrell
**Cc:** Arena, Samuel ; Kingsley, Patrick ; Jim Green ; jseitz@svglaw.com ; Paul A. Logan
**Sent:** Tuesday, February 07, 2006 3:40 PM
**Subject:** D.M. Durkin, City of Newark

Paul - in discussing yesterday's deposition with Paul Logan, he indicated that Mr. Kalbacher testified that certain written "briefing packetss", were provided by Carl Luft to the Council members at their residences prior to Council meetings, and that Mr. Kalbacher indicated that he did not retain any copies of those documents. We were not previously aware that any such documents existed, but they are certainly

2/10/2006

A-80

within the scope of the discovery requests by Durkin and Federal. If they have been produced, please identify those bates numbers for us; otherwise, please make arrangements for the immediate production and delivery of those documents so that they are available for the deposition on Friday. I have to believe that Carl Luft and/or the City Secretary has some record of what was provided to Council members in advance of/for the public meetings.

Another area of our discovery that we have propounded, but to date not been received, relates to the production of electronic file data. Unless I am mistaken, we have not received any electronic files pertaining to this project from the City. Certainly the electronic files residing on the server drives on a City computer network system and/or the desktop/notebook computers of Carl Luft, Carol Houck, the Mayor, the City Secretary and others in the City employ who were involved in generating, transmitting or receiving any electronic data on this project, whether in the form of e-mail messages or other documents, fall within the ambit of Durkin and Federal's previous document discovery requests--see Definitions section of the respective document requests. Since Mr. Kalbacher testified yesterday that the City was anticipating litigation in the fall of 2003 when there were discussions concerning a potential termination of Durkin's contract, we trust that appropriate controls to secure the retention of all such data were put in place at or about that time. Initially, we will need a representation as to the nature, volume and location of electronic data generated and maintained by the City relating to this project, and what, if any, electronic information has not been preserved and the reasons why it was not maintained. At that point we can discuss the most expeditious manner of making those records available for our inspection or simply copied to CD-ROMs/DVD disks, and we can make our IT consultants available to work with the City in that regard to the extent required. In the event that the City, for whatever reason, is not prepared to provide prompt access to this data, we will involve the Court to compel production of this information.

Finally, although we haven't received any ruling from the Court on the Executive session materials, from your e-mails and our discussions, one of the positions you advanced was that we would be able to obtain the same or substantially similar information through the deposition process. However, Mr. Kalbacher's deposition testimony confirmed that is not the case; in fact, he could not recall the substance of what was discussed at any particular Executive session meeting, but instead recounted that the documents that were provided to Council and/or generated in the course of the Executive sessions would aid in refreshing his recollection of, and accurately reflect, what was discussed and decided at those particular sessions. Since this clearly displaces your argument that the information we are requesting is available from alternate sources (i.e., deposition testimony), and we have both a compelling need and clear right to confront and challenge the factual and legal efficacy of the Council's briefing background and reasons underlying the termination, I am requesting that you reconsider your refusal to provide those documents to us. Without your agreement to produce those documents, we intend to supplement our letter briefs to the Court to reflect this additional development.

Regards,

David.

David T. Bolger, Esquire

*Powell, Trachtman, Logan, Carrle & Lombardo, P.C.*
*475 Allendale Road, Suite 200*
*King of Prussia, PA 19406*
*(610) 354-9700, x131*
*(610) 354-9760 fax*
*(610) 304-7398 mobile*

2/10/2006