IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* <br><br> vs. <br><br> CITY OF NEWARK, et al., *Defendants* <br><br> and <br><br> CITY OF NEWARK, *Third-Party Plaintiff* <br><br> vs. <br><br> DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | CASE NO. 04-0163-GMS |

**PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE
EVIDENCE OF DURKIN'S BID ON THE RESERVOIR PROJECT**

1. Plaintiff and Third Party Defendant Donald M. Durkin Contracting, Inc. ("Durkin") filed an action against Defendant City of Newark and members of City Council (collectively "the City") arising out of the City's improper termination of Durkin's Contract for default.

2. Durkin files this Motion in Limine to preclude any opinion testimony or analysis of Durkin's bid on the Reservoir Project (the "Project").

3. Durkin believes that the City and/or URS may attempt to present evidence at the time of trial regarding Durkin's bid and argue, *inter alia,* that the bid was in some manner deficient and/or unreasonably low in price.

4. Durkin's belief is based in part on statements made by the City's litigation counsel at the Executive Session convened on February 2, 2004, where Paul Cottrell,

KOP:346742v2 3514-04

Esquire, made the following remarks: (1) "the dispute dealt with the fact that [Durkin] was losing money on the project;" and (2) "the only way [Durkin] could make money was through change orders." (Executive Session Meeting Minutes, 2/2/04, App. A7).

5. Any information surrounding Durkin's bid, including, without limitations, the bid price in relation to the prices from other bidders and/or any pricing estimate prepared by URS or others, is completely irrelevant to this matter.

6. This case concerns the facts and circumstances surrounding Durkin's termination, and whether the actions taken by the City to effectuate that termination were appropriate. (Complaint, App. A9-A52).

7. Nowhere in the City's Answer, Counterclaim or Third Party Complaint does the City raise any issues or concerns surrounding Durkin's bid. (Answer, App. A53-A94).

8. None of the correspondences forwarded to Durkin from the City or URS up until the time of termination ever raised any issue or concern with Durkin's bid.

9. The November 21, 2003 correspondence to Durkin, which the City claims to constitute the required seven day prior written notice of intention to terminate, does not mention Durkin's bid. In fact, the City, *inter alia,* advised Durkin and its surety that it was "considering" declaring Durkin in default following Durkin's "failure to present a response to a means and methods for continuation of the project ..." (Letter 11/21/03, App. A95-A96).

10. The City Council motion by which the City terminated Durkin's contract did not mention Durkin's bid. On February 3, 2004, Durkin was advised by the City that it had been terminated "for cause due to [its] refusal to complete the Work." (Letter 2/3/04, App. A97-A98).

KOP:346742v2 3514-04

11. Moreover, the Official Meeting Minutes from the February 2, 2004 Council meeting where it was voted to terminate Durkin indicate that the reason the City terminated Durkin was "based on [Durkin's] refusal to perform under its Contract with the City of Newark..." (2/2/04 Meeting Minutes App. A99-A100).

12. The City Council was not presented with any analysis of Durkin's bid on February 2, 2004 prior to voting to terminate Durkin's Contract.

13. Any opinion testimony or reference any analysis of Durkin's bid by the City or URS during the course of the trial would be solely for improper and impermissible purposes, to include attempting to impugn Durkin's character, reputation and integrity.

14. Permitting references to any analysis of Durkin's bid by the City or URS would result in unfair prejudice to Durkin, which is precisely what Federal Rule of Evidence 403 seeks to prevent. *See United States v. Guerrero*, 803 F.2d 783 (3d Cir. 1986).

15. The City and URS should also be precluded from presenting any analysis or opinion testimony concerning Durkin's bid, based upon their failure to identify any expert witness from which to elicit such testimony.

16. Any analysis or opinion of Durkin's bid requires expert testimony because such analysis and opinions require technical knowledge and expertise that is outside the knowledge of the average juror.

17. The deadline for the City and URS to name expert witnesses was June 30, 2006. (Order, App. A1-A5).

18. Neither the City nor URS named any expert who will provide an analysis or opinion of Durkin's bid[1].

19. Courts require expert testimony where the subject matter involves a science, education, profession, business or occupation that is beyond the knowledge of the average layperson. *See e.g. Kempe, et al. v. The Dometic Corp.*, 866 F. Supp. 817, 1994 U.S. Dist. LEXIS 15902 (D. Del. 1994); *USH Ventures, et al., v. Global Telesystems Group, Inc.*, 796 A. 2d 7, 2000 Del. Super. LEXIS 108 (Super. Ct. Del. 2000).

20. Construction bid analyses are often conducted by specialized construction cost estimators. *See e.g. Appeal of Caddell Construction Comp.*, 2003-2 B.C.A. (CCH) P32,257, 2003 VA BCA LEXIS 3 (2003) (recognizing an expert witness in the area of constructing cost estimating); *Appeal of Blinderman Construction Co., Inc.*, 91-1 B.C.A. (CCH) P23,457; 1990 ASBCA LEXIS 405 (1990) (same).

21. The analysis of a construction bid on a project of this type and scale requires facility and familiarity with a number of specialized disciplines. For example, to appropriately analyze Durkin's bid, it would be necessary to perform the following tasks: (a) analysis of risk factors; (b) interpretation of drawings and blueprints; (c) calculation of the amount of soils to be excavated; (d) determination of type of soils to be excavated; (e) analysis of scheduling; (f) analysis of productivity rates; (g) analysis of equipment rates; (h) analysis of labor rates; (i) knowledge of specialized earthmoving equipment; (j) knowledge of equipment operating characteristics; (k) interpretation of contract specifications; (l) analysis of level of effort; (m) knowledge of bonding and insurance.

22. Without expert testimony, any commentary upon Durkin's bid, whether in the form of technical analysis, opinion or otherwise, is inadmissible under Rule 37(c).

---

[1] In fact, no party in this matter has identified an expert who will opine regarding Durkin's bid.

*See Rule 37(c)* ("A party without substantial justification fails to disclose [expert witnesses] ... is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness or information not so disclosed.").

WHEREFORE, for the reasons set forth above, Defendant Donald M. Durkin Contracting, Inc. respectfully requests that this Court grant its Motion in Limine and preclude the City and URS from introducing at the time of trial any opinion testimony or analysis of Durkin's bid.

                POWELL, TRACHTMAN, LOGAN,
                CARRLE & LOMBARDO, P.C.

                By: _____/s/ Paul A. Logan_____
                Paul A. Logan
                Delaware Supreme Court ID #3339
                475 Allendale Road, Suite 200
                King of Prussia, PA 19406
                Telephone: 610-354-9700
                Telefacsimile: 610-354-9760
                *Attorneys for Plaintiff and Third Party*
                *Defendant Donald M. Durkin Contracting*

Dated: August 16, 2006

KOP:346742v2 3514-04