# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* vs.

CITY OF NEWARK, et al., *Defendants*

and

CITY OF NEWARK, *Third-Party Plaintiff* vs.

DONALD M. DURKIN CONTRACTING, INC,
FEDERAL INSURANCE COMPANY AND URS CORPORATION,
*Third-Party Defendants*

Case No. 04-0163-GMS

## APPENDIX TO PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE THE CITY FROM OFFERING EVIDENCE THAT THE METHOD FOR PAYMENT FOR INCOMPLETE WORK IS OTHER THAN ON A TIME AND MATERIAL BASIS

**Powell, Trachtman, Logan, Carrle & Lombardo, P.C.**
Paul A. Logan
  Delaware Supreme Court ID #3339
David T. Bolger
  Pennsylvania Bar No. 47327
  Admitted *Pro Hac Vice*
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
Attorneys for Plaintiff

KOP:346332v1 3514-04

## TABLE OF CONTENTS

**Document**        **Page**

Selected Portions of Carol S. Houck's deposition March 23, 2006...........................................A-1

Selected Portions of Carol S. Houck's deposition Marc 30, 2006 ...........................................A-4

Errata Sheet of Carol S. Houck, March 22, 2006 ......... ..........................................................A-7

Errata Sheet of Carol S. Houck, March 28, 2006 ……………………………………………A-12

Carol S. Houck

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DONALD M. DURKIN CONTRACTING, INC.    )
1310 Industrial Boulevard, Suite 200  )
Southampton, PA  18966,               )
                                      )
                Plaintiff,            )    Civil Action
v.                                    )    No. 04-163 GMS
                                      )
CITY OF NEWARK                        )
220 Elkton Road                       )
P.O. Box 390                          )
Newark, DE  19715-0390,               )
                                      )
HAROLD F. GODWIN                      )
Mayor, City of Newark, Delaware       )
                                      )
JOHN H. FARRELL, IV                   )
Council Member, City of Newark,       )
Delaware                              )
                                      )
JERRY CLIFTON                         )
Council Member, City of Newark,       )
Delaware                              )
                                      )
KARL G. KALBACHER                     )
Council Member, City of Newark,       )
Delaware                              )
                                      )
DAVID J. ATHEY                        )
Council Member, City of Newark,       )
Delaware                              )
                                      )
FRANK J. OSBORNE, JR.                 )
Council Member, City of Newark,       )
Delaware                              )
                                      )
CHRISTINA REWA                        )
Council Member, City of Newark,       )
Delaware                              )

            AND

            CORBETT & WILCOX
       REGISTERED PROFESSIONAL REPORTERS
1400 NORTH FRENCH STREET - WILMINGTON, DELAWARE  19801
              (302) 571-0510

                Corbett & Wilcox            APR 0 6 2006

                                                A - 1

Page 176

1  URS CORPORATION        )
   1200 Philadelphia Pike  )
2  Wilmington, DE 19809    )
                           )
3  v.                      )
                           )
4  FEDERAL INSURANCE COMPANY )
   13 Mountain View Road   )
5  Warren, NJ 07059        )
6        Continued deposition of CAROL S. HOUCK, taken
7  pursuant to notice at the law offices of Stradley Ronon
   Stevens & Young, 300 Delaware Avenue, Suite 800,
8  Wilmington, Delaware, beginning at 10:13 a.m., on
   Thursday, March 23, 2006, before Debra A. Donnelly,
9  Registered Professional Reporter and Notary Public.

10 APPEARANCES:

11 PAUL A. LOGAN, ESQUIRE
   POWELL, TRACHTMAN, LOGAN, CARRLE & LOMBARDO
12 475 Allendale Road
   King of Prussia, Pennsylvania 19406
13 for Donald M. Durkin Contracting, Inc.

14 PAUL COTTRELL, ESQUIRE
   TIGHE, COTTRELL & LOGAN, P.A.
15 First Federal Plaza
   P.O. Box 1031
16 Wilmington, Delaware 19899
   for City of Newark, Goshorn, Ferrell, Clifton,
17 Katbacher, Athey, Osborne and Rewa

18 JAMES S. GREEN, ESQUIRE
   SEITZ, VAN OGTROP & GREEN, P.A.
19 222 Delaware Avenue, Suite 1500
   Wilmington, Delaware 19801
20 for URS Corporation

21 PATRICK R. KINGSLEY, ESQUIRE
   STRADLEY RONON STEVENS & YOUNG, LLP
22 2600 One Commerce Square
   Philadelphia, Pennsylvania 19103
23 for Federal Insurance Company
24

Page 177

1  APPEARANCES (CONT'D):
2
   ALSO PRESENT:
3
   ROGER A. AKIN, ESQUIRE
4  CITY SOLICITOR'S OFFICE
   CITY OF NEWARK
5
6  JIM DURKIN
   MICHAEL DURKIN
7

Page 178

1            CAROL S. HOUCK,
2  having been previously sworn on oath,
3  was examined and testified as follows:
4            EXAMINATION
5  BY MR. LOGAN:
6  Q.  Good morning.
7  A.  Good morning.
8  Q.  Back again.
9  A.  Yes, indeed.
10 Q.  I want to cover a few things just to make sure
11 we can put some closure to one or two issues.
12      Ms. Houck, did you have the opportunity
13 during the Durkin phase of the project, and I will talk
14 about George & Lynch later, to review the pay estimates?
15 A.  Yes.
16 Q.  And did you have some say in whether or not
17 those pay estimates were, in fact, approved or not?
18 A.  Yes.
19 Q.  So would it be fair to say that, as we talked
20 about yesterday, URS would review the pay requisitions,
21 they would make recommendations, which recommendations
22 were that the work was done in accordance with
23 specification, that the conditions precedent were done,
24 and then presented to the City for review and payment?

Page 179

1  Correct?
2  A.  They did, yes.
3  Q.  And as we discussed yesterday, I made a
4  representation to you which I would like to follow up
5  with, which is that Durkin performed Zone IV work in the
6  August/September time frame, which was, in fact, reviewed
7  and approved by both URS and the City.  And I'm going to
8  ask if we can continue on.
9       (Houck Deposition Exhibit No. 12 was
10 marked for identification.)
11 BY MR. LOGAN:
12 Q.  Ms. Houck, I've provided to you a group of
13 documents which has been stapled together which has been
14 marked as Houck 12.  I'm going to ask if you can review
15 the document to see if you recognize, first of all, the
16 form of the document?
17 A.  Correct.  Yes.
18 Q.  Is there an initial on the second page?
19 A.  Yes, my initial.
20 Q.  And your initial says "Okay to pay"?
21 A.  Correct.
22 Q.  Now, you reviewed the application for payment?
23 A.  I did.
24 Q.  And there is a line, is there not, for the

A - 2

Page 180

1  placement of 18 inches of Zone IV, which would be item
2  No. --
3      A.  44.
4      Q.  -- 44. Correct?
5      A.  Correct.
6      Q.  And that was payment application 14, which you
7  approved, and which was, in fact, paid. Correct?
8      A.  That's correct. It is not site specific,
9  though.
10     Q.  When you say "it is not site specific," I'm
11  not sure what that means?
12     A.  It doesn't say the location of that placement.
13     Q.  Well, what it does say as the description is
14  "18 inch Zone IV over reservoir line."
15         That's what it reads. Correct?
16     A.  Yes.
17     Q.  Okay.
18         Well, then we will go to Houck No. 13.
19         (Houck Deposition Exhibit No. 13 was
20  marked for identification.)
21  BY MR. LOGAN:
22     Q.  Ms. Houck, I've handed to you a document which
23  has been marked as Houck 13, which is a collection of
24  documents, which once again on page 2 there is a set of

Page 181

1  initials. And whose initials would they be?
2      A.  They are mine.
3      Q.  And that was your okay to make a payment.
4  Correct?
5      A.  Correct.
6      Q.  And this is for work through August 31, 2003.
7  Correct?
8      A.  Correct.
9      Q.  And it includes an item for 18 inches of
10  Zone IV over the reservoir liner. Correct?
11     A.  Correct.
12     Q.  And you okay'd payment?
13     A.  I did. Again, it wasn't site specific.
14         (Houck Deposition Exhibit No. 14 was
15  marked for identification.)
16  BY MR. LOGAN:
17     Q.  Ms. Houck, I've handed to you a set of
18  documents which has been marked collectively as Houck 14.
19  On the second page do you recognize the initial where it
20  says "okay to pay"?
21     A.  Correct. It's mine.
22     Q.  It's yours.
23         And the date you initialed that was?
24     A.  10/16/03.

Page 182

1      Q.  And the work which is represented by this
2  payment application is through September 30, 2003.
3  Correct?
4      A.  Correct.
5      Q.  And you recall that the placement of the
6  liner -- excuse me, the placement of the Zone IV liner
7  was in August/early September; correct, by Durkin?
8      A.  There was placement at that time and prior.
9      Q.  And as of 10/16/03, you also were aware of the
10  sloughing, erosion, failure, call it what you will, of
11  the Zone IV that had been placed. Correct?
12     A.  I was aware of the erosion that occurred,
13  correct.
14     Q.  And with that knowledge you approved payment
15  which included, if you go to the application for payment,
16  item No. 44, the payment for the placement for the Zone
17  IV materials. Right?
18     A.  Yes, I did. Again, not location specific.
19     Q.  Well, you understood that the payment
20  application, and all of them reflect work through a
21  payment application date. Right?
22     A.  I do.
23     Q.  So as of payment application No. 16, you
24  specifically, and just for clarification, the City

Page 183

1  approved, just as URS did, the payment for all of the
2  work completed by Durkin for the Zone IV material
3  placement, didn't it?
4      A.  I approved what was -- what was presented by
5  Durkin and URS as approval for Zone IV placement,
6  correct, that is referenced on this invoice.
7      Q.  Are you aware of whether or not the City has
8  ever requested any of the money back for the placement of
9  the Zone IV material by Durkin that failed?
10     A.  We did not.
11         MR. LOGAN: Before we go any further,
12  there was a discussion yesterday, and I need Mr. Cottrell
13  to confirm that Ms. Houck is speaking not only as a
14  witness in her own capacity, but she is also the
15  representative of the City. Is that correct?
16         MR. COTTRELL: Correct.
17         MR. LOGAN: And she is being produced
18  not only in her individual capacity, but as a 30(b)(6)
19  representative for the City. Is that correct?
20         MR. COTTRELL: Correct.
21  BY MR. LOGAN:
22     Q.  Do you have any idea what we just talked
23  about?
24     A.  Yes.

Corbett & Wilcox

A - 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DONALD M. DURKIN CONTRACTING, INC.     )
1310 Industrial Boulevard, Suite 200   )
Southampton, PA  18966,                )
                                       )
                Plaintiff,             )        Civil Action
     v.                                )        No. 04-163 GMS
                                       )
CITY OF NEWARK                         )
220 Elkton Road                        )
P.O. Box 390                           )
Newark, DE  19715-0390,                )
                                       )
HAROLD F. GODWIN                       )
Mayor, City of Newark, Delaware        )
                                       )
JOHN H. FARRELL, IV                    )
Council Member, City of Newark,        )
Delaware                               )
                                       )
JERRY CLIFTON                          )
Council Member, City of Newark,        )
Delaware                               )
                                       )
KARL G. KALBACHER                      )
Council Member, City of Newark,        )
Delaware                               )
                                       )
DAVID J. ATHEY                         )
Council Member, City of Newark,        )
Delaware                               )
                                       )
FRANK J. OSBORNE, JR.                  )
Council Member, City of Newark,        )
Delaware                               )
                                       )
CHRISTINA REWA                         )
Council Member, City of Newark,        )
Delaware                               )

        AND

          CORBETT & WILCOX
    REGISTERED PROFESSIONAL REPORTERS
1400 NORTH FRENCH STREET - WILMINGTON, DELAWARE  19801
              (302) 571-0510

Corbett & Wilcox

A-4

---

Page 500

```
1   URS CORPORATION              )
    1200 Philadelphia Pike       )
2   Wilmington, DE 19809         )
                                 )
3   v.                           )
                                 )
4   FEDERAL INSURANCE COMPANY    )
    15 Mountain View Road        )
5   Warren, NJ 07059             )
6       Continued deposition of CAROL S. HOUCK, taken
    pursuant to notice at the law offices of Stradley Ronon
7   Stevens & Young, LLP, 300 Delaware Avenue, Suite 800,
    Wilmington, Delaware, beginning at 9:20 a.m., on
8   Thursday, March 30, 2006, before Debra A. Donnelly,
    Registered Professional Reporter and Notary Public.
9
    APPEARANCES:
10
11  PAUL A. LOGAN, ESQUIRE
    POWELL, TRACHTMAN, LOGAN, CARRLE & LOMBARDO
12      475 Allendale Road
        King of Prussia, Pennsylvania 19406
13      for Donald M. Durkin Contracting, Inc.

14  PAUL COTTRELL, ESQUIRE
    TIGHE, COTTRELL & LOGAN, P.A.
15      First Federal Plaza
        P.O. Box 1031
16      Wilmington, Delaware 19899
        for City of Newark, Godwin, Farrell, Clifton,
17      Katzacher, Athey, Osborne and Rewa

18  JAMES S. GREEN, ESQUIRE
    SEITZ, VAN OGTROP & GREEN, P.A.
19      222 Delaware Avenue, Suite 1500
        Wilmington, Delaware 19801
20      for URS Corporation

21  PATRICK R. KINGSLEY, ESQUIRE
    STRADLEY RONON STEVENS & YOUNG, LLP
22      2600 One Commerce Square
        Philadelphia, Pennsylvania 19103
23      for Federal Insurance Company
24
```

---

Page 501

```
1   APPEARANCES (CONT'D):
2
    ALSO PRESENT:
3
    ROGER A. AKIN, ESQUIRE
4   CITY SOLICITOR'S OFFICE
    CITY OF NEWARK
5
6   JIM DURKIN
    MICHAEL DURKIN
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

---

Page 502

```
1               CAROL S. HOUCK,
2   having been previously sworn on oath,
3   was examined and testified as follows:
4               EXAMINATION
5   BY MR. KINGSLEY:
6       Q.  Good morning, ma'am.  You understand you are
7   still under oath?
8       A.  I do.
9       Q.  You have in front of you Federal Exhibit 5,
10  which is the November 21, 2003, letter we talked about
11  two days ago?
12      A.  Correct.
13      Q.  When we broke at the end of Tuesday, we were
14  talking about means and methods issues, and I just want
15  to continue on that subject.
16          I noticed after the deposition that
17  those words were present in this letter.  Do you see that
18  at the bottom of the first paragraph?
19      A.  Yes.
20      Q.  It says, quote, This precautionary letter has
21  become necessary following DMD's failure to present a
22  response to a means and methods for continuation of the
23  project in accordance with our contract.
24          Do you see that?
```

---

Page 503

```
1       A.  Yes.
2       Q.  Tell me what the failure is that is being
3   described in that letter?
4       A.  The means and methods to place the soil on the
5   slope, protect it, and continue with the work to complete
6   the contract.
7       Q.  Okay.  It references a failure to present a
8   response.
9           What does that refer to?  What does that
10  mean?
11      A.  Actually beginning the work on the site, as
12  well as to turn in detail of how they intended to do it
13  after saying they couldn't to URS.
14      Q.  Okay.  So you think that that sentence refers
15  to the failure to actually do the work as well?
16      A.  Yes.
17      Q.  What language in that sentence leads you to
18  that conclusion?
19      A.  A response of being on the site to repeated
20  requests to do so.
21      Q.  So it's your testimony that a failure to
22  present a response to a means and methods means the
23  failure to do the work?
24      A.  Failure to present a response to a means and
```

Corbett & Wilcox

Page 668

1  the subcontractors' work was completed. Correct?
2      A.  I don't know that I would agree with none. I
3  can't say.
4      Q.  Can you identify a single subcontractor's work
5  that was completed?
6      A.  Maybe Langdon. No, they probably would have
7  still been brought in. I don't know. I couldn't say
8  without guessing. All the subcontractors are not fresh
9  in my mind right now.
10     Q.  Well, was Talley Brothers' work completed?
11     A.  No, theirs was not.
12     Q.  Was Hallaton's work completed?
13     A.  No.
14     Q.  Do you know where the Zone V material was
15  placed?
16     A.  That's underneath the liner.
17     Q.  Do you know whether that work was deemed
18  incomplete by URS?
19     A.  I'm not sure a hundred percent if it was or
20  not.
21     Q.  Do you know what the contract provides as far
22  as how to pay for incomplete work?
23     A.  Percentages, I believe.
24     Q.  You didn't understand that incomplete work is

Page 669

1  paid on a time and material basis up to the time of
2  termination?
3      A.  Yes.
4      Q.  That is the method of paying for incomplete
5  work. Is that correct?
6      A.  Yes.
7      Q.  So all incomplete work for Durkin should be,
8  for purposes of calculating what they were entitled to be
9  paid up to the date of termination, would be on a time
10  and material basis. Correct?
11     A.  That's my under -- that's my recollection.
12     Q.  Now, you still have Mr. Akin's memo in front
13  of you?
14     A.  Yes.
15     Q.  If you can go to the last page of Mr. Akin's
16  memo.
17     A.  Mm-hmm.
18     Q.  And it says, the very first sentence, full
19  sentence on page 3 of Mr. Akin's memo, "Hence, some delay
20  in getting that resolution may or may not cause Durkin to
21  be more amenable to a settlement or a mediation of
22  certain issues," okay.
23         Did I read that correctly? Let's read
24  the first sentence, and then I will just read the

Page 670

1  sentence.
2         MR. COTTRELL:  Paul, let me just for the
3  record state again our objection to this document,
4  because it's attorney-client privilege. I know the judge
5  ordered us to produce it, but as I stated in Calabria's
6  deposition, we still continue to object to this. But go
7  ahead.
8         MR. LOGAN:  I recognize your objection.
9  BY MR. LOGAN:
10     Q.  At the bottom of the second page and carrying
11  onto the first, or the third, excuse me, "We perceived
12  that Durkin would like early resolution of the wrongful
13  termination question. Hence, some delay in getting that
14  resolution may or may not cause Durkin to be more
15  amenable to a settlement or mediation of certain issues."
16  I read that correctly. Right?
17     A.  Yes.
18     Q.  Did the City purposefully delay or attempt to
19  delay the determination of the wrongful termination issue
20  in order to gain a bargaining advantage with Durkin?
21         MR. COTTRELL:  Objection.
22         THE WITNESS:  Not to my knowledge.
23  BY MR. LOGAN:
24     Q.  Is that what you understood Mr. Akin's memo to

Page 671

1  say?
2      A.  Is what what I understood it to say?
3      Q.  This delay may be beneficial to the City in
4  getting Durkin to take a lesser settlement or to mediate?
5         MR. GREEN:  Object to the form.
6         MR. COTTRELL:  Yes, objection. The memo
7  says what it says.
8         MR. LOGAN:  I'm asking for her
9  understanding. She is speaking on behalf of the City
10  now.
11         MR. COTTRELL:  She already answered
12  that, that they did not attempt to delay.
13         MR. LOGAN:  She didn't say that. I'm
14  asking what the memo was suggesting to be done.
15         THE WITNESS:  I think I just -- I take
16  it as just a statement.
17  BY MR. LOGAN:
18     Q.  Now, Ms. Houck, let me again change gears, but
19  not too far.
20     A.  Are you going to look for stuff? I'll run to
21  the restroom if you are.
22         MR. LOGAN:  Let's take a break.
23         (Brief recess taken from 2:45 p.m. until
24  2:52 p.m.)

Donald M. Durkin Contracting, Inc. v. City of Newark et al.
C.A. No. 04-163 GMS

Acknowledgment of Deponent
Deposition of Carol S. Houck, March 22, 2006

I, Carol S. Houck, do hereby certify that I have read the foregoing pages 1-167 and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in the form or substance noted in the attached Errata Sheet.

*Carol S. Houck*

Carol S. Houck

Subscribed and sworn to before me this __21st__ day of __April__ 2006.

My commission expires on __2-2010__

*Notary signature*

Notary Public

1

A - 7

Carol S. Houck
Errata Sheet to Deposition taken Monday, March 22, 2006

- I refer to deposition pages 164, Line 22. My answer should have been "No." My testimony should reflect that the City had the right to terminate Durkin as of February 2, 2004.

2

A - 8

APR-21-2006 FRI 03:31 PM CITY OF NEWARK

Donald M. Durkin Contracting, Inc. v. City of Newark et al.
C.A. No. 04-163 GMS

Acknowledgment of Deponent
Deposition of Carol S. Houck, March 23, 2006

I, Carol S. Houck, do hereby certify that I have read the foregoing pages 175-304 and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in the form or substance noted in the attached Errata Sheet.

_Carol S. Houck_

Carol S. Houck

Subscribed and sworn to before me this 21st day of April 2006.

My commission expires on 2-2010

Notary Public

1

A - 9

Carol S. Houck
Errata Sheet to Deposition taken Tuesday, March 23, 2006

- I refer to deposition pages 180 and 181.
  - Page 180, Line 13 – refers to Houck Exhibit 13 (Durkin Payment Application #15 for work through 8/31/2003). It was incorrectly suggested by Mr. Logan that payment was made on this pay application for Item #44 – 18" Zone IV over Reservoir Liner and I incorrectly agreed with him on Page 181, Lines 11 and 13. I have now reviewed this invoice again, and it does not reflect for Work Completed under Item #44, only Stored Material. In addition, I restate that any Zone IV efforts prior to or after Payment Application #15 were not related to Durkin's limited attempt to place Zone IV on the side slope in September 2003.
  - Only Payment Applications #14 ($22,571) and #16 ($69,490) had payments for Item #44 – 18" Zone IV over Reservoir Liner. It is my understanding that those fees were paid in relationship to Zone IV materials placed on the floor of the reservoir or roads, or for stored Zone IV materials.

- I refer to deposition pages 218 and 219.
  - Page 218, Line 18 begins reference to rate of filling the reservoir. From Line 18 on page 218 through line 10 on page 219 the questions continue regarding the rate of filling.
  - Mr. Logan was suggesting that filling was completed at more than 1' (per contract specifications) during the George and Lynch contract. I only recalled that we had discussed filling at a higher rate but didn't recall ever doing so. I have now reviewed documentation related to this as well as discussed the issue again with our Water Director Roy Simonson and my testimony reflect the following clarification:
    - We did fill at a rate of 2' a day beginning on December 8, 2005 when water was available from the creek and stopped filling at this rate on December 24, 2005.
    - The decision to do this was based on favorable results from water level monitoring until that time. Increasing to 2' a day during this period also allowed us to reach elevation 170 quicker so that we could monitor the static pool elevation over a longer period. The number of days without pumping was then determined in relationship to the experience while at elevation 170. Following December 24, 2005 (and the extended monitoring period without filling) we returned to filling at 1' a day.

- I refer to deposition pages 255 through 278.
  - These pages contain repeated reference to Houck Exhibits 20 and 21. Coincidently those exhibits were dated November 21, 2003 and November 20, 2003 respectively. I suggest, and the deposition pages I have reviewed

2

concur that there was much date and number confusion during this period of questioning. Further confusion was added with Houck Exhibits 22 and 23, dated February 3, 2004 and February 4, 2004 respectively. Following my review of my documents and the deposition questioning my testimony should reflect the following clarifications:

- Notice of termination was provided by Houck Exhibit 21; letter dated November 20, 2003 signed by Carol Houck and by Houck Exhibit 20; letter dated November 21, 2003, signed by Carl Luft, and partially composed by Carol Houck. I believe that the November 21, 2003 letter provided notice under the Performance Bond and the 7 day notice under the Construction Contract, which understanding is reflected in the Houck Exhibit 22; letter dated February 3, 2004.
- Notice of termination was also provided by Houck Exhibit 1; letter dated December 30, 2003 which references the contract termination provisions.
- Even if the November 21, 2003 letter was notice under the Performance Bond and not the Construction Contract, notice was provided by Houck Exhibit 22, a letter dated February 3, 2004 signed by Carl Luft and following Councils approval to terminate at its council meeting of February 2, 2004. Houck Exhibit 23, a letter dated February 4, 2004, signed by Newark Legal Counsel Paul Cottrell further confirms notice of termination along with an extension of the effective date as a result of communication with Durkin Counsel Paul Logan.

3

A - 11

05/03/2006    11:15    TIGHE C   TRELL & LOGAN PA → 12155648120    NO.817    D003
MAY-02-2006 TUE 04:39 PM CITY   NEWARK    FAX NO. 302   6 1100
May  3 2006  12:25

Donald M. Durkin Contracting, Inc. v. City of Newark et al.
C.A. No. 04-163 GMS

### Acknowledgment of Deponent
### Deposition of Carol S. Houck, March 28, 2006

I, Carol S. Houck, do hereby certify that I have read the foregoing pages 311-495 and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in the form or substance noted in the attached Errata Sheet.

Carol S. Houck

Subscribed and sworn to before me this _2nd_ day of _May_ 2006.

My commission expires on _03/24/08_.

Notary Public

1

May 3 2006 12:25

05/03/2006    11:15    TIGHE COTTRELL & LOGAN PA → 12155648120    NO.817    P004
MAY-02-2006 TUE 04:39 PM CITY OF NEWARK    FAX NO. 302  3  7100    P. 02

Carol S. Houck
Errata Sheet to Deposition taken Tuesday, March 28, 2006

- I refer to deposition pages 353 through pages 408
  o  Once again during my deposition there were repeated references to various exhibits, out of order and with, I believe, the intent to confuse. I have now had the opportunity to review the deposition and further clarify that it is my belief that the letter of November 21, 2003 (Exhibit 20) served to:
    - Provide notice of Default and termination to both the Surety (Bond) and Durkin (Contract). One must note that Durkin was provided a letter the day before (November 20, 2003 – Exhibit 21) that stated " In closing you have given us no other option then to proceed with notification to your surety of your being in default of our contract." The letter of November 21, 2003 therefore was sent to both Durkin and the Surety providing appropriate seven-day notice of default and termination.
    - In addition it is important to note that the letter of February 3, 2004 (Exhibit 22) not only provides additional notice but also references the letter of November 21, 2003 that again references that notice was provided in accordance with the bond and construction contract.

  o  Regarding my review of my deposition of March 28, 2006, I refer to page 353, line 23 through page 354, line 9 and suggest the following to be my understanding and corrections:
    - The November 21, 2003 letter is not the only notice to the Surety and to Durkin of default and termination. Given the letter of November 20, 2003 and all subsequent letters and meetings, and my conversations with both Durkin and the Surety representatives during these months, the letter of November 21, 2003 was clearly a notice of default and termination. It clearly points to the provisions of the contract related to this topic as well as the provisions of the performance bond. It also requests the required meeting with the bond company further noting that we were aware of and following the notice requirements.
    - Further, my reply on line 9 is incorrect if it suggests that the November 21, 2003 letter was not the seven-day notice letter. My reply, "I don't believe so." would reflect my understanding that the November 21, 2003 letter was not the only effort made by Newark to put both Durkin and the Surety on notice. I believe that the November 21, 2003 letter was one of the seven-day notices as were the February 3 and February 4, 2004 letters.

2

A-13