IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* <br><br> vs. <br><br> CITY OF NEWARK, et al., *Defendants* <br><br> and <br><br> CITY OF NEWARK, *Third-Party Plaintiff* <br><br> vs. <br><br> DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | CASE NO. 04-0163-GMS |

**PLAINTIFF'S MOTION FOR RELIEF
FROM INTENTIONAL DESTRUCTION OF
DOCUMENTATION GENERATED BY THE RESIDENT PROJECT
REPRESENTATIVE BY THE CITY'S CONSULTANT**

1. Plaintiff and Third Party Defendant Donald M. Durkin Contracting, Inc. ("Durkin") filed an action against Defendant City of Newark and members of City Council (collectively "the City") arising out of the City's improper termination of Durkin's Contract for default.

2. Durkin files this Motion for relief from the intentional destruction of handwritten field documentation generated by URS Corporation ("URS"), the City's consultant.

3. Despite awareness of this litigation, URS deliberately and intentionally destroyed all handwritten field documentation generated by the resident project

representative ("RPR") during the timeframes when George & Lynch was the contractor on the Reservoir Project (the "Project")[1].

4. The City had the affirmative duty to preserve evidence which might be relevant to the litigation and to ensure that its consultant did the same.

5. Because of this flagrant spoliation of evidence, Durkin is entitled to a spoliation inference that will allow the jury to assume that the destroyed evidence would have been unfavorable to the City and to the City's consultant.

6. On March 16, 2004 Durkin filed a Complaint against the City and URS (Complaint, App. A1-A44).

7. The City Answered the Complaint and filed a Counterclaim against Durkin. (Answer, Counterclaim, Third Party Complaint, App. A45-A86).

8. At some point in early 2004, URS submitted a proposal to the City for claims assistance in connection with this litigation. (Joseph Kula Deposition, p. 60-61, lines 17-17, App. A89-A90).

9. After URS was voluntarily dismissed, the City filed a Third Party Complaint against URS. (Third Party Complaint, App. A91-A96).

10. Ultimately, URS filed an Answer and Counterclaim to the City's Third Party Complaint. (Answer and Counterclaim, App. A97-A101).

11. In URS' Counterclaim, one of the items URS is seeking to recover against the City is $251,474.39 for "litigation support services to assist [the City] in its defense of Durkin's claims." (App. A99-A100).

---

[1] George & Lynch was the contractor hired by the City after the City terminated Durkin and received no bids on the re bid to finish the Project.

2

12. Durkin learned during discovery that URS employee Glenn Bowen, the RPR on the Project, deliberately and intentionally destroyed all handwritten field documentation generated by the URS on-site representatives for the Project during the time George & Lynch, Inc. was completing work on the Reservoir. (Glenn Bowen Deposition, page 6, lines 14-15, page 76-77, lines 13-3, App. A104-A105).

13. Bowen testified that he and others would handwrite field information concerning the work performed by George & Lynch, Inc. during the Project and then transcribe the information. (App. A105, page 76, lines 13-34).

14. The handwritten field documentation Bowen collected would include, *inter alia,* such information as site conditions, construction activity, manpower, equipment, weather conditions, material received, erosion and compact testing. (App. A107-A108, page 112, lines 13-18; p. 114, lines 12-17, pages 116-117, lines 4-24).

15. After Bowen's daily report book was filed, he would destroy this handwritten field documentation. (App. A105, pages 76-77, lines 13-34).

16. No one, including the City, ever told Bowen, the RPR, to maintain these records. (App. A105, page 77, lines 4-6, 12-22).

17. At the time Bowen destroyed this documentation, he was fully aware that litigation was pending between Durkin, the City and URS. (App. A105-A106, pages77-78, lines 23-7).

18. Bowen's supervisors at URS <u>even advised</u> Bowen to purge the handwritten field documentation. (App. A105, page 77, lines12-23).

19. A party has an affirmative duty to preserve evidence which might be relevant to the issues in a lawsuit if the party has reason to anticipate the litigation. *See*

*Positran Manufacturing, Inc. v. Diebold, Inc.*, 2003 U.S. Dist. LEXIS 8114 (D. Del. 2003) (internal citations omitted).

20. If a party breaches the duty to preserve evidence or allows the relevant evidence to be destroyed, that party may be sanctioned by the Court. *Id.*

21. There are three (3) factors that a court must consider to determine whether to impose a sanction for spoliation of evidence: (1) the degree of fault and personal responsibility of the party who destroyed the evidence; (2) the degree of prejudice suffered by the other party; and (3) whether there is a lesser sanction that will avoid unfairness to the opposing party and serve as a deterrent. *See Griffith v. Mellon Bank*, 2006 U.S. App. LEXIS 6016 (3d Cir. 2006).

22. To assess the degree of fault of the party who destroyed the evidence, the court must consider if the party intended to impair the other side from effectively litigating its case. *See Positran Manufacturing, Inc. v. Diebold, Inc.*, 2003 U.S. Dist. LEXIS 8114 (D. Del. 2003) (and cases cited therein).

23. Here, there is no question that the City had the affirmative duty to ensure that URS, its litigation consultant (as well as the designer and Engineer on the Project), did not destroy documents.

24. There is no question that the City was aware of the relevance of this documentation which recorded the daily activity on the Project site.

25. In fact, the Durkin served the City with a Request for Documents that requested, *inter alia*, "all documents related to the City of Newark Reservoir Project." (Request for Production of Documents Directed to the City, App. A109-A113). *See e.g. Skeete v. McKinsey & Co.*, 1993 U.S. Dist. LEXIS 9099 at *4 (S.D.N.Y. 1993) ("It is clear that a discovery

request places a litigant on notice that the documents or materials sought in the request are potentially relevant to the litigation and, thus, should be preserved.")

26. The City has been invoiced for at least $251,474.39 in litigation support services for URS' help in the City's defense of Durkin's claims, but took no steps to ensure that URS maintained all relevant documentation. (App. A100).

27. URS, despite offering litigation support services to the City, affirmatively advised Mr. Bowen to destroy the handwritten field documentation. (App. A105, page 77, lines 12-23).

28. Durkin is highly prejudiced by the destruction of the handwritten field documentation, as there is no way to test the veracity or completeness of what has been transcribed against the "source documents", namely the handwritten notes of field events recorded as the events were occurring.

29. The nature of the handwritten field documentation contains information that is central to Durkin's claims – such information as site conditions, construction activity, manpower, equipment, weather conditions, material received, erosion, compact testing, etc. (App. A107-A108, page 112, lines 13-18; page 114, lines 12-17, pages 116-117, lines 4-24).

30. There is absolutely no way for Durkin to confirm if each of the daily reports is an accurate and complete compilation of the handwritten backup field documentation, or whether URS chose to "selectively transcribe" items from the handwritten field documentation.

31. The destruction of the handwritten field documentation is a complete loss of evidence.

KOP:346628v2 3514-04

32. Durkin never had an opportunity to inspect those records prior to their destruction.

33. There is no other method by which Durkin can obtain or replicate the handwritten field documentation.

WHEREFORE, for the reasons set forth above, Defendant Donald M. Durkin Contracting, Inc. respectfully requests that that this Court grant its Motion for relief from the intentional destruction of the handwritten field documentation generated by the City's consultant, and that a spoliation inference be imposed that will allow the jury to assume that the destroyed handwritten field documentation generated by the City's consultant would have been unfavorable to the City and to the City's consultant.

**POWELL, TRACHTMAN, LOGAN,
CARRLE & LOMBARDO, P.C.**

By: _____/s/ Paul A. Logan_____
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
*Attorneys for Plaintiff and Third Party
Defendant Donald M. Durkin Contracting*

Dated: August 16, 2006