IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* | CASE NO. 04-0163-GMS |
| vs. | JURY TRIAL DEMANDED |
| CITY OF NEWARK, et al., *Defendants* and | |
| CITY OF NEWARK, *Third-Party Plaintiff* | |
| vs. | |
| DONALD M. DURKIN CONTRACTING and FEDERAL INSURANCE COMPANY, *Third-Party Defendants* | |

**ANSWERING BRIEF OF DONALD M. DURKIN CONTRACTING, INC. TO THE CITY OF NEWARK'S MOTIONS RESECTING THE METHOD OF THE VALUATION OF PLAINTIFF'S DAMAGES**

I.   **BACKGROUND FACTS**

Donald M. Durkin Contracting, Inc. ("Durkin") hereby responds to the Motion and Memorandum submitted on behalf of the City of Newark Defendants ("City") respecting the measure of damages to which Durkin is entitled.

In two separate Motions, the City asserts that "If it is found that Durkin was not properly terminated by Newark for cause the Court must then treat Durkin as having been terminated for convenience. In that event, according to the contract, Durkin's damages would be limited to the payment for completed and accepted work in accordance with its contract price, including overhead and profit, and costs of termination, and nothing more." *See* City of Newark Defendants' Opening Brief in Support of Motion *in Limine* as to Plaintiff's Claim for Economic Damages and

Professional fees, p. 1; City of Newark Defendants' Opening Brief in Support of Motion *in Limine* as to Valuation of Plaintiff's Damages, p. 1.

The only issue addressed in this response memorandum is the proper method of calculating the damages to which Durkin is entitled for the City's breach of contract.[1]

The City posits that if it is found that Durkin *was not* properly terminated by the City for cause, the Court must then view the City's actions as a termination "for convenience" and not permit the recovery by Durkin of so-called "expectation damages." The City further argues that Durkin is not entitled to recover damages "under the equitable measure of *quantum meruit*, also referred to as the 'total cost method.'" *See* City's Opening Brief 2, p. 3.

The underpinnings to the City's arguments are simply not present. First, *the contract* drafted by the City makes *no* provision for the "transformation" of the breach by the City for improper termination into a "termination for convenience", and second, contrary to the City's labeling of Durkin's damages and assertion that they are "total cost damages", *the contract* authored by the City has provided the method of calculating the amounts due Durkin. The City's designee, Ms. Carol Houch, admitted and acknowledged that the method being used by Durkin was correct, namely that all incomplete work is to be paid for on a time and material basis. *See* Plaintiff's Motion *in Limine* to Preclude the City from Offering Evidence that the Method for Payment for Incomplete Work is Other Than on a Time and Material Basis.

## THERE IS NO PROVISION IN THE CONTRACT TO TRANSFORM A DEFAULT INTO A TERMINATION FOR CONVENIENCE

---

[1] This response is limited to the amounts due from the City to Durkin due to the City's breach of contract only; this answering memorandum does not addresses any other damages to which Durkin is entitled resulting from the other conduct of the City.

KOP:347882v1 3514-04

To begin, it must be remembered that the Contract and all Specifications were all drafted by the City or their agents. As it relates to the transformation of an improper termination for default into a termination for convenience, the City, as the author of the Contract, could have clearly and unambiguously provided that an improper termination for default would be "converted" into a termination for convenience. But the Contract authored by the City makes no such provision for an "automatic" transformation. *See* Article 15 "Suspension of Work and Termination."

Indeed, this unwarranted and contractually unsupported position presumes that the City was entitled to default the contractor with impunity and in bad faith, and later claim that if the default is determined to have been wrongful, that it should be entitled to retreat to a damage analysis based on a "termination for convenience." There is no contractual basis for this position and the City cites to none. What the City is asking the Court to do is to add terms to the Contract that perhaps the City now wishes it had included. Respectfully, this is not the Court's role.

Apparently acknowledging that there is no right in the Contract to make the transformation that it seeks, the City argues that it has the implied right to make this change. The City grounds its theory on a decision of the United States Third Circuit Court of Appeals, *Linan-Faye Construction, Inc. v. Housing Authority of the City of Camden*, 49 F.3rd 915 (Third Cir. 1995). The City claims that *Linan-Faye* bestows the right to change an improper termination for default into a termination for convenience without any consequences. Indeed, the City relies on *Linan-Faye* to refute the supposed claim by Durkin that it is seeking "expectation damages."

There are two fundament errors in the City's argument: first, Durkin is not seeking "expectation damages" and second, the *Linan-Faye* decision has little application to a Delaware breach of contract issue.

First, the Court in *Linan-Faye* applied the law of the State of New Jersey, *not Delaware*. 49 F.3rd at 920. Respectfully, the City's analysis, grounded on the wrong assumptions and the decisional law of a different state has little, if any, application to this case.

More fundamental is that the City also argues that Durkin's "method" of computing its breach of contract damages is to use equitable principals of *quantum meruit* and a "total cost approach." That fundamentally misapprehends the clear statement of itemized damages being sought in this case. Indeed, the City discloses a lack of familiarity with the Contract the City required Durkin to execute, and further ignores the admission of the City's designee in her deposition as to the method of calculating the amounts due Durkin. *See* Plaintiff's Motion *in Limine* to Preclude the City from Offering Evidence that the Method for Payment for Incomplete Work is Other Than on a Time and Material Basis.

The City has erroneously stated that "Durkin contends that it is entitled, in part, to over five million dollars in damages **which represent its actual costs to perform the entire project**, plus re-calculated inflated equipment rates." This statement discloses a total lack of understanding of Durkin's damages and what the Contract, itself, prescribed, as the means to pay Durkin for the work performed as of the date of termination which remained "incomplete."

Contrary to the theory by the City that Durkin is looking "outside" of the Contract for the method of computing its contract damages, it is, in fact following the express terms of the Contract as drafted by the City, itself. First, by the terms of the Contract that the City authored, the Contract was *not* a "Unit Price" contract as defined in section 11.9 of the Contract specifications. The contract price and the amount bid by Durkin was to complete the entire

project.[2] The contract terms specifically prescribed that this is a *lump sum contract* and at the time that the City terminated the Contract, the City argues that approximately seventy percent (70%) of the physical work was complete.

Because there are no agreements or provisions in the Contract for "lump sum" payments for a partially completed contract, the provisions of 11.4.1 through and including 11.4.4 of the Contract are applicable.[3] As set forth in greater detail below, these sections provide for the "time and materials" method of payment for the work started, but left incomplete. This method of computation of the amounts due under the contract *is not* a "total cost" claim by Durkin. It follows the exact provisions of the Contract.

What should truly be troubling to the City is that no one on City Council and no one in the City administration understood the magnitude of the amounts that would be payable to Durkin if they terminated the Contract. Indeed, the representatives of the City have all admitted that they didn't know what the costs would be to the City when they terminated Durkin; but the designee of the City, Carol Houch, did admit that the method of payment to Durkin for the work performed to the date of termination, regardless of whether of not Durkin was in default or not, was the same: all work completed to date would be paid for on a time and materials basis. *See, id.*

---

[2] Section 11.8 of the Instructions to Bidders states "Bids must be priced on a lump sum basis." Similarly, Section 4 of the Bid Form provides: "BIDDER will complete the Work for the following price(s). The bid award shall be based on the total 'lump sum' bid for the contract using the total sum for all the WORK minus any of the 'deduct' components that the OWNER may select..."

[3] Section 11.4.1 is the cost of labor based on payroll records; 11.4.2 provides for the payment of materials and equipment (including "storage" which we believe includes "standby" time for equipment) together with mobilization and demobilization; 11.4.3 applies to subcontractor obligations; and, 11.4.5, the costs of consultants. There are additional recoverable costs described in 11.5 which may or may not be applicable. Section 11.6 prescribes the contractors fee for overhead and profit.

KOP:347882v1 3514-04

Even if one accepts the City's assumption that the termination for convenience is a route available to the City, then all applicable provisions of the Contract must be considered *in pari materia* with all others. Omitted from the City's analysis are the second and third components of the payment clauses related to the termination of the contract "for convenience." Article 15.4.2 provides: "expenses sustained prior to the effective date of termination and performing services and furnishing *labor, materials or equipment* as required by the contract documents *in connection with uncompleted work, plus fair and reasonable sums for overhead and profit on such expenses.*" **In addition**, payment is to be made "*for all claims, costs, losses and damages incurred in settlement of terminated contracts with Subcontractors, suppliers and others; and for reasonable expenses deliberately attributable to termination.*" 15.4.3 [4]

There should not be any question that "time and material" is the correct method of computing the amounts to be paid for "uncompleted work" or work that was not "accepted" before the improper termination. Further, there should no debate that *all* work related to the placement of the liner, geotextile and the Zone IV materials was incomplete and therefore, all work related to these items, including the screening of the Zone IV materials, placement of the liner, geotextile and Zone IV are to be paid in accordance with Article 15.4.2.

Although the City may argue to the contrary, *all* subcontractor work is to be paid on a time and material basis as well. Once again, the records reflect that the City refused to *accept* the subcontractors' work, even where the City agreed to make some payments to the subcontractors. Article 15.4.1 requires "acceptance" for its application. There was none. In point of fact, in a memorandum dated July 14, 2004, provided to the City, URS reviewed

---

[4] Durkin has been sued by multiple subcontractors as a result of the City's actions. Durkin's costs and counsel fees incurred in defense of these claims is a recoverable damage.

subcontractor work and concluded that most, if not all, subcontractor work was incomplete and that none of the work would be accepted.[5]

The project records also confirm that the Zone V material and all embankment and excavation under the liner was deemed "incomplete" by URS and payment in full for this work was not owed because the slopes ostensibly had to be regraded. The documentation proves that the Zone V work was incomplete and subject to payment pursuant to 15.2.2.

The methodology followed by Durkin and prescribed by the contract subsumes and eliminates the debate over the claim for extras made by Durkin that the City claimed was "base contract work." Moreover, the method prescribed by the Contract and followed by Durkin compensates Durkin for the Change Order that URS had not yet prepared or submitted to the City to compensate Durkin for the impacts of weather and other unusual and unanticipated conditions. (URS project manager, Mark Prouty, PE, has testified that Durkin was entitled to an additional change order to compensate Durkin for these additional costs.)

The assertion that Durkin has made a "total cost" claim or that Durkin is making a claim for work that it did not perform is simply wrong. What apparently the City didn't know were the ramifications of its actions when they took them on February 2, 2004, or what the language of the Contract it drafted prescribed. Apparently in its zeal to fire Durkin, the City failed to

---

[5] The draft of the proposed subcontractor release submitted to Durkin when the City agreed to pay some subcontractors included the following language: "When the Project is completed, Newark will issue a letter to Durkin and (subcontractor) so stating, *and three years from the date of that letter*, if Newark has not initiated a lawsuit against (subcontractor) alleging that (subcontractor)'s work was defective, Newark will be deemed to have released and discharged Durkin, ](subcontractor) and Federal and their respective past, present and future employees, officers, officers, shareholders, predecessors, successors, representatives, agents, attorneys, advisors, assigns, transferees, parents, subsidiaries, and affiliates, from any and all claims, demands, actions, liabilities, debts and causes of action which Newark has or may hereafter acquire as a result of any alleged defects, damages, or problems associated with the _____ work..."

determine what the costs to the City would be, but the City's designee has now admitted the obligations in the Contract.[6]

What the City believes it a "total cost approach" to computing damages is the result of the applying the language of the Contract to the facts. The City's lack of understanding of the Contract terms now, or when they terminated, Durkin does not give it the right to advocate a different method of damages and the right to eschew the obligations in the agreement they authored. Durkin is following the Contract and is seeking payment as prescribed thereby, and the City's Motion in Limine should be denied.

                        **Powell, Trachtman, Logan,**
                            **Carrle & Lombardo, P.C.**

                    By: _____
                          Paul A. Logan
                          Delaware Supreme Court ID #3339
                          475 Allendale Road, Suite 200
                          King of Prussia, PA 19406
                          Telephone: 610-354-9700
                          Telefacsimile: 610-354-9760
                          Attorneys for Plaintiff

---

[6] Indeed, City Councilperson Rewa has testified that knowing the costs of termination was a very important factor that should have been considered in deciding to fire Durkin, but they didn't know, but voted to terminate Durkin anyway

KOP:347882v1 3514-04