# TIGHE, COTTRELL & LOGAN, P.A.

**Attorneys at Law**
FIRST FEDERAL PLAZA
P.O. BOX 1031
WILMINGTON, DELAWARE 19899
Telephone Number: (302) 658-6400
Telecopier Number: (302) 658-9836
email: p.cottrell@lawtcl.com

BRANCH OFFICES:
19 WEST AVENUE
P.O. BOX 303
WOODSTOWN, NJ 08098
856-769-0211

1220-C EAST JOPPA ROAD
SUITE 550
TOWSON, MD 21286
410-539-7341

2017 SPRING GARDEN STREET
PHILADELPHIA, PA 19130-3804
215-564-0101

**VIA FACSIMILE and REGULAR MAIL**

March 24, 2004

Ellen Cavallaro
Chubb and Son
15 Mountain View Road
Warren, NJ 07061

    **Re: City of Newark Reservoir**
    **Our File No. 6606**

Dear Ms. Cavallaro:

    I am writing in response to your letter dated March 15, 2004 in which Federal Insurance Company ("Federal") argues that the City of Newark "has not established that Federal has a present obligation under the Bond." We disagree. We do acknowledge that Federal has alternatively denied liability under the Bond to the extent that Newark has satisfied the conditions of the Bond.

    Newark provided notice to both Donald M. Durkin Contracting, Inc. ("Durkin") and Federal well beyond the seven day term proscribed by the Contract. On November 21, 2003 Newark provided written notice of its intent to terminate Durkin. Written notice of termination was issued on February 3, 2004. Furthermore, Newark did comply with the conference requirement set forth in the Bond. In the November 21 letter, Newark stated "[a]s provided in the [Durkin] performance bond filed with the City, we are requesting that a conference be held including surety representatives, [Durkin], URS Corporation representatives and the City of Newark…The intent of this meeting will be to discuss methods for [Durkin]'s faithful completion of this contract." This language mirrors that of the Bond.

    The conference was held on December 9 during the fifteen day period proscribed by the Bond. It was indicated that the meeting was in the interest of settlement; indeed, the purpose was to settle the outstanding issues and formulate a plan for completion of the project. That

Ms. Ellen Cavallaro
March 24, 2004
Page Two

discussions during the meeting were considered "inadmissible" by counsel for Newark does not contradict the terms of the Bond, nor does it render the meeting inapplicable. By your logic, a second conference would be required for the same purpose!

Durkin repeatedly refused to complete the project and refused to protect completed work. We do not dispute the existence of the safety and conflict provisions cited in your letter, but we do dispute their relevance. The issues raised by Durkin were addressed by Newark and the design team and Durkin was instructed to proceed with construction. Durkin refused to do so and has in no way cooperated with Newark.

The report from Gregory Richardson will be addressed under separate cover, but I will say that Newark disputes its validity. Richardson states in his opening paragraph that "[t]he intent of this report was to see if the constructability and performance of the reservoir could be improved with minor design changes." Durkin, however, insists that the reservoir cannot be constructed. Clearly, Durkin and its expert are looking at two different issues. Richardson questions the stability of the embankment, although he provides no basis for his concerns, but interestingly, months earlier, another engineer retained by Durkin attempted to convince Newark that compaction of the embankment was not required because it was *overdesigned*.

Section 15.2 of the General Conditions, cited in your letter, allows the owner to terminate if the contractor persistently fails to perform the work, disregards the authority of the engineer, or otherwise violates the contract documents. Durkin violated all of these provisions. Newark properly terminated Durkin and complied with all appropriate provisions of the Bond.

Very truly yours,

TIGHE, COTTRELL & LOGAN, P.A.

By: *Paul Cottrell*
Paul Cottrell

cc: Paul Logan, Esq.
City of Newark
Roger Akin, Esq.
Victoria K. Petrone, Esq.