LAW OFFICES

# POWELL, TRACHTMAN, LOGAN, CARRLE & LOMBARDO

A PROFESSIONAL CORPORATION

MICHAEL G. TRACHTMAN
PAUL A. LOGAN*°☐
GUNTHER O. CARRLE*
BRUCE D. LOMBARDO
LAWRENCE A. BORDA*
JOSEPH P. TRABUCCO, III°
NEIL P. CLAIN, JR.*
JONATHAN K. HOLLIN
DAVID T. BOLGER
RICHARD J. DAVIES*°
STEVEN G. BARDSLEY*
STEPHEN D. MENARD*
FRANCIS G. LAROCCA
EILEEN C. CLARK*
DENNIS P. HERBERT*
FRANK S. NOFER*
ANTHONY S. POTTER°
GEORGE T. REYNOLDS*
MARY J. PEDERSEN*
FREDERICK M. BREHM*
JENIFER L. SUPLEE*
JAMES S. BAINBRIDGE*
KEVIN K. CARTON, JR.*
DIRK M. SIMPSON, LL.M. (TAXATION)*
CHRISTOPHER S. KOLLER
KELLY E. SOLOMON
GREGORY J. STAR*
JAKE H. WONG*
ALLISON J. STRUPCZEWSKI
JACKLYNN ANN BARRAS, LL.M. (TAXATION)*

*ALSO ADMITTED IN NJ
°ALSO ADMITTED IN MD
☐ALSO ADMITTED IN DE
°ALSO ADMITTED IN NY

475 ALLENDALE ROAD
SUITE 200
KING OF PRUSSIA, PA 19406

(610) 354-9700
FACSIMILE (610) 354-9760
DBOLGER@POWELLTRACHTMAN.COM
WWW.POWELLTRACHTMAN.COM

OF COUNSEL
RALPH B. POWELL, JR.
MALCOLM B. JACOBSON
RICHARD T. ABELL
RICHARD L. BUSH
KEITH R. BLACK

114 NORTH SECOND STREET
HARRISBURG, PA 17101
(717) 238-9300
FAX (717) 238-9325

SUITE 304
1814 EAST ROUTE 70
CHERRY HILL, NJ 08003
(856) 663-0021
FAX (856) 663-1590

**September 8, 2006**

PLEASE REPLY TO:

KING OF PRUSSIA

**VIA ELECTRONIC FILING**

The Honorable Gregory M. Sleet
United States District Court
  for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Room 4324, Lockbox 19
Wilmington, DE  19801

>   Re:    Donald M. Durkin Contracting, Inc. v. City of Newark, et al.
>          United States District Court, No. 04-0163-GMS

Dear Judge Sleet:

    On behalf of Durkin and with Federal's consent, I am writing to seek the Court's intervention in resolving the parties' dispute over the scope of the waiver of privilege with regard to the motion to compel production of privileged documents (D.I. 213) filed by Federal Insurance Company. In reviewing our notes of the pretrial conference, our understanding of the Court's ruling was that, in view of the disclosure of Ms. Houck's May 16, 2006 letter to the City of Newark's litigation counsel, the City's attorney-client privilege had been waived with respect to all subject matters set forth in the letter. The Court requested that counsel for the parties confer and attempt to reach consensus on the documents to be exchanged as a result of the waiver of the City's attorney-client privilege. Notwithstanding numerous attempts to do so, the parties have been unable to reach agreement on the proper scope of the City's waiver of the attorney-client privilege.

The Honorable Gregory M. Sleet
September 8, 2006
Page 2

Durkin and Federal contend that the City's disclosure of the May 16, 2006 letter has waived the privilege as to the following subject matters set forth in the letter:

(1) the basis and substance for Houck's alterations of her deposition testimony;

(2) discussions/documents concerning the City or Houck's contention that defendant's were misleading the Court;

(3) requirements or lack of requirements for City Council to agree in advance to the termination of Durkin;

(4) the "general policy of City Manager Carl Luft to inform and receive support from Council of such important decisions" (May 16, 2006 Correspondence, page 2);

(5) the fact that the February 2, 2004 vote proceed in the fashion of most votes of Council;

(6) discussions/documents concerning the fact that "Council's direction is certainly important [but] it may take weeks or even months to completely fulfill their wishes" (May 16, 2006 Correspondence, page 2);

(7) discussions/documents concerning the fact that Council relies on City staff to follow through "with the appropriate forms, agreements, ... often associated with the direction" (May 16, 2006 Correspondence, page 2);

(8) discussions/documents concerning the fact that Council are likely not aware of most of the steps required to enact their direction (May 16, 2006 Correspondence, page 2);

(9) discussions/documents concerning the allegation of Durkin's "failure to proceed" (May 16, 2006 Correspondence, page 2);

(10) discussions/documents concerning the allegation that Durkin failed to follow the direction of the engineer (May 16, 2006 Correspondence, page 3);

(11) discussions/documents concerning the allegation that Durkin would not complete the project at the price it bid (May 16, 2006 Correspondence, page 3);

(12) discussions/documents concerning the allegation Federal neglected its responsibility (May 16, 2006 Correspondence, pages 2-3);

(13) discussions/documents concerning the allegation that the City was a "good owner" to Durkin (May 16, 2006 Correspondence, page 3);

(14) discussions/documents concerning the City working to address Durkin's concerns (May 16, 2006 Correspondence, page 3);

The Honorable Gregory M. Sleet
September 8, 2006
Page 3

    (15)    discussions/documents concerning the City allegedly paid Durkin on time (May 16, 2006 Correspondence, page 3);

    (16)    discussions/documents concerning the allegation that "nothing short of an open checkbook would have kept this group on our site working" (May 16, 2006 Correspondence, page 3).

    The waiver, of course, includes all communications, regardless of privilege and date of communication up through May 16, 2006, the date of Ms. Houck's letter. To that end, it is our position that the City must now produce to the other parties in this litigation all documents and things relating to the above listed issues. The City, however, refuses to do so and claims that it has waived the privilege only as to Ms. Houck's treatment at the deposition, the procedure of the City Council vote to terminate Durkin and Ms. Houck's dismay at Federal's denial of the City's performance bond claim. I have enclosed the correspondence between counsel that outlines our respective positions.

    In lieu of conducting another conference call, we are respectfully requesting that the Court issue a clarification ruling on Federal's motion to compel privileged documents so that the parties may proceed with the exchange of privileged materials without further delay.

Respectfully,

David T. Bolger
Counsel for Donald M. Durkin Contracting, Inc.

David M. Burkholder
Counsel for Federal Insurance Company


DTB:tti

Enclosures

cc:    Counsel of record (via electronic filing)

# Burkholder, David

| | |
|---|---|
| **From:** | Burkholder, David |
| **Sent:** | Wednesday, September 06, 2006 2:02 PM |
| **To:** | Vicky Petrone |
| **Cc:** | Kingsley, Patrick; David T. Bolger |
| **Subject:** | Durkin v. Newark |

Vicky:

The privilege has been waived at least as to communications related to the following subjects, as a result of Houck's May 16, 2006 letter:

(1) the basis and substance for Houck's alterations of her deposition testimony;
(2) discussions/documents concerning the City or Houck's contention that Mr. Kingsley was misleading the Court;
(3) requirements or lack of requirements for City Council to agree in advance to the termination of Durkin;
(4) the "general policy of City Manager Carl Luft to inform and receive support from Council of such important decisions" (May 16, 2006 Correspondence, page 2);
(5) the fact that the February 2, 2004 vote proceed in the fashion of most votes of Council;
(6) discussions/documents concerning the fact that "Council's direction is certainly important [but] it may take weeks or even months to completely fulfill their wishes" (May 16, 2006 Correspondence, page 2);
(7) discussions/documents concerning the fact that Council relies on City staff to follow through "with the appropriate forms, agreements, ... often associated with the direction" (May 16, 2006 Correspondence, page 2);
(8) discussions/documents concerning the fact that Council are likely not aware of most of the steps required to enact their direction;
(9) discussions/documents concerning the allegation of Durkin's "failure to proceed" (May 16, 2006 Correspondence, page 2);
(10) discussions/documents concerning the allegation that Durkin failed to follow the direction of the engineer (May 16, 2006 Correspondence, page 3);
(11) discussions/documents concerning the allegation that Durkin would not complete the project at the price it bid (May 16, 2006 Correspondence, page 3);
(12) discussions/documents concerning the allegation Federal neglected its responsibility (May 16, 2006 Correspondence, pages 2-3);
(13) discussions/documents concerning the allegation that the City was a "good owner" to Durkin (May 16, 2006 Correspondence, page 3);
(14) discussions/documents concerning the City working to address Durkin's concerns (May 16, 2006 Correspondence, page 3);
(15) discussions/documents concerning the City allegedly paid Durkin on time (May 16, 2006 Correspondence, page 3);
(16) discussions/documents concerning the allegation that "nothing short of an open checkbook would have kept this group on our site working" (May 16, 2006 Correspondence, page 3).

Accordingly, we trust that this provides the City with sufficient guidance to begin sending us the documents.

--Dave

**David M. Burkholder, Esquire**
Stradley Ronon Stevens & Young, LLP
30 Valley Stream Parkway
Malvern, PA 19355-1481
610.640.5807
610.640.1965 fax
www.stradley.com

U.S. Treasury Circular 230 Notice:  We inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this communication, including attachments, is not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on such taxpayer by the Internal Revenue Service.  In addition, if any such tax advice is used or referred to by other parties to promote, market, or recommend any transaction or investment, then (i) the advice should be

construed as written in connection with the promotion or marketing by others of the transaction(s) or matter(s) addressed in this communication and (ii) the taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

This electronic mail message, and any attachments transmitted with it, contain confidential information, intended only for the named addressee(s). If you are not the intended recipient or the person responsible for delivering this e-mail to the intended recipient, you are hereby notified that any use, distribution, copying or disclosure of this communication is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by reply e-mail, and delete all copies of this communication from your computer and network. Thank you.

## Burkholder, David

| | |
|---|---|
| **From:** | Vicky Petrone [v.petrone@lawtcl.com] |
| **Sent:** | Thursday, September 07, 2006 11:33 AM |
| **To:** | Paul Cottrell; Kingsley, Patrick |
| **Cc:** | Burkholder, David; PLogan@PowellTrachtman.com; David T. Bolger |
| **Subject:** | Re: Durkin v. Newark |
| **Attachments:** | Sept 7 Email re Waiver.pdf |

Gentlemen: attached is our response to your various emails from yesterday on the topic of Houck's May 16 letter.

----- Original Message -----
**From:** Kingsley, Patrick
**To:** Vicky Petrone ; Paul Cottrell
**Cc:** David T. Bolger ; PLogan@PowellTrachtman.com ; Burkholder, David
**Sent:** Wednesday, September 06, 2006 2:03 PM
**Subject:** RE: Durkin v. Newark

Vicky,

I think the city waived any privilege relating to the following categories, all outlined by Durkin in its memo to the Court. This list may not be comprehensive, but it is a start. As I have mentioned, I cannot imagine what is _not_ waived.

-Pat

## **SCOPE OF WAIVER:**

(1) the basis and substance for Houck's alterations of her deposition testimony;
(2) discussions/documents concerning the City or Houck's contention that defendant's were misleading the Court;
(3) requirements or lack of requirements for City Council to agree in advance to the termination of Durkin;
(4) the "general policy of City Manager Carl Luft to inform and receive support from Council of such important decisions" (May 16, 2006 Correspondence, page 2);

(5) the fact that the February 2, 2004 vote proceed in the fashion of most votes of Council;
(6) discussions/documents concerning the fact that "Council's direction is certainly important [but] it may take weeks or even months to completely fulfill their wishes" (May 16, 2006 Correspondence, page 2);

(7) discussions/documents concerning the fact that Council relies on City staff to follow through "with the appropriate forms, agreements, ... often associated with the direction" (May 16, 2006 Correspondence, page 2);

(8) discussions/documents concerning the fact that Council are likely not aware of most of the steps required to enact their direction;

(9) discussions/documents concerning the allegation of Durkin's "failure to proceed" (May 16, 2006 Correspondence, page 2);

(10) discussions/documents concerning the allegation that Durkin failed to follow the direction of the engineer (May 16, 2006 Correspondence, page 3);

(11) discussions/documents concerning the allegation that Durkin would not complete the project at the price it bid (May 16, 2006 Correspondence, page 3);

(12) discussions/documents concerning the allegation Federal neglected its responsibility (May 16, 2006 Correspondence, pages 2-3);

(13) discussions/documents concerning the allegation that the City was a "good owner" to Durkin (May 16, 2006 Correspondence, page 3);

(14) discussions/documents concerning the City working to address Durkin's concerns (May 16, 2006 Correspondence, page 3);

(15) discussions/documents concerning the City allegedly paid Durkin on time (May 16, 2006 Correspondence, page 3);

(16) discussions/documents concerning the allegation that "nothing short of an open checkbook would have kept this group on our site working" (May 16, 2006 Correspondence, page 3).

Email Attachment - City of Newark - September 7, 2006

I am responding to both Federal's listing of topics and Durkin's listing of documents. As I stated in my September 6 email, we believe a fair reading of Houck's letter, based on the Court's ruling simply that there has been a waiver, dictates production of documents related to the subject matters discussed therein, being her treatment at deposition, the procedure of the Council vote to terminate and Houck's dismay at Federal's denial of the bond claim. We will produce documents related to those subjects. We are reviewing Durkin's spreadsheet and will produce certain documents, some of which are not related to Houck's letter but will be produced anyway.

As to the specific topics listed by Federal for disclosure, our response to each is set forth below.
(1) the basis and substance for Houck's alterations of her deposition testimony;
Agreed that documents relating to Houck's errata sheets should be disclosed. As I advised the Court, no documents exist.

(2) discussions/documents concerning the City or Houck's contention that defendant's were misleading the Court;
Agreed. As Houck was referring to statements made by Federal during a conference call, there are no documents to produce. All counsel were present for the conference call.

(3) requirements or lack of requirements for City Council to agree in advance to the termination of Durkin;
Agreed. Houck was referring to the City code and there are otherwise no documents to produce.

(4) the "general policy of City Manager Carl Luft to inform and receive support from Council of such important decisions" (May 16, 2006 Correspondence, page 2);
Agreed. Houck was stating a policy which in not evidenced, aside from City code, by any documents. Accordingly there are no documents to produce.

(5) the fact that the February 2, 2004 vote proceed in the fashion of most votes of Council;
Agreed. Council's vote was made on the record during open session and is evidenced by the minutes taken which have already been produced.

(6) discussions/documents concerning the fact that "Council's direction is certainly important [but] it may take weeks or even months to completely fulfill their wishes" (May 16, 2006 Correspondence, page 2);
Agreed. There are no documents which refer or relate to this statement of procedure other than City code.

(7) discussions/documents concerning the fact that Council relies on City staff to follow through "with the appropriate forms, agreements, ... often associated with the direction" (May 16, 2006 Correspondence, page 2);
Agreed. There are no documents which refer or relate to this statement of procedure, other than City code.

(8) discussions/documents concerning the fact that Council are likely not aware of most of the steps required to enact their direction;
Agreed. There are no documents which refer or relate to this statement.

(9) discussions/documents concerning the allegation of Durkin's "failure to proceed" (May 16, 2006 Correspondence, page 2);
Disagree. This is a general summary which has been asserted by Newark in every pleading filed with the Court and does not waive any privilege. As stated in my email of September 6, Durkin's failure to proceed is evidenced by its own documents as well as the URS and Newark documents directing Durkin to return to work and the contract.

(10) discussions/documents concerning the allegation that Durkin failed to follow the direction of the engineer (May 16, 2006 Correspondence, page 3);

Disagree. See response to (9) above.

(11) discussions/documents concerning the allegation that Durkin would not complete the project at the price it bid (May 16, 2006 Correspondence, page 3);
Disagree. See response to (9) above.

(12) discussions/documents concerning the allegation Federal neglected its responsibility (May 16, 2006 Correspondence, pages 2-3);
Agree. We are reviewing and will produce all related documents.

(13) discussions/documents concerning the allegation that the City was a "good owner" to Durkin (May 16, 2006 Correspondence, page 3);
This is an opinion and there are no documents to produce.

(14) discussions/documents concerning the City working to address Durkin's concerns (May 16, 2006 Correspondence, page 3);
Disagree. See response to (9) above.

(15) discussions/documents concerning the City allegedly paid Durkin on time (May 16, 2006 Correspondence, page 3);
Disagree. The payment documents have been produced and speak for themselves, no privilege has been waived.

(16) discussions/documents concerning the allegation that "nothing short of an open checkbook would have kept this group on our site working" (May 16, 2006 Correspondence, page 3).
This is an opinion and there are no relevant documents.

## Burkholder, David

**From:** David T. Bolger [DBolger@PowellTrachtman.com]
**Sent:** Thursday, September 07, 2006 3:50 PM
**To:** Vicky Petrone; Paul Cottrell; Kingsley, Patrick
**Cc:** Burkholder, David; Paul A. Logan
**Subject:** RE: Durkin v. Newark

Vicky - while I appreciate your attempt to outline and characterize the nature and extent of the subject matters for which privilege has been waived, there remains far more disagreement than consensus on the scope and breadth of the waiver. I think using the list of topics identified in our Answering Brief for assessing the scope of the waiver is a sensible approach, but your interpretations and definition of the subject matters touched upon in the letter from Carol do not represent, in any sense, a fair reading of what is written and being conveyed to your firm. As examples:

1. paras. 4 & 7 - it isn't simply a "policy" or "procedure", but the **practice and execution** by the City Manager's office, particularly as it relates to this project. For instances, the written exchanges (or references thereto) by which the City Manager's office "inform and receive support from Council" on "important decisions" or the "appropriate forms, agreements" associated with any directions of Council would have to include, at a minimum, the events and exchanges leading up to (1) issuing the November 21, 2003 letter, (2) the meeting on December 9, 2003, (3) the Council meeting on February 2, 2004 and the development of the resolution to terminate Durkin, (4) the decision to retain Dr. Calabria, (5) putting the project out for public bidding in 2004, (6) entering into negotiations with George & Lynch, and (7) refusing to pay URS for the services identified in their counterclaim. Your claim that only written references to explanations of the "general policy" or procedures themselves is implicated is not acceptable.

2. para. 9 - I am at a complete loss to understand what you mean by a "general summary", let alone how this doesn't waive any privilege. If you persist in this claim, please provide me with whatever legal citation(s) you have to support this postulate. In addition, the fact that the City's allegations that Durkin "failed to proceed" may be found in other documents from the City provides you no basis for withholding privileged documents on the same subject matter--in fact, it compels precisely the opposite conclusion, i.e., it confirms there are indeed documents relating to this subject, and what we are now entitled to is all attorney-client communications on the same topic. I realize that this potentially implicates a vast number of documents, since this has been one of the City's central and recurrent themes in the lawsuit, but the volume of information simply isn't a relevant consideration. This is an area where we will have no choice but to seek the Court's intersession if an agreement cannot be reached.

Since this was the only claimed basis for not producing the documents listed under items 10, 11 & 14, there is similarly no basis for withholding those documents.

3. paras. 13 & 16 - I don't understand your response. Either you have previously privileged documents relating to these subjects, i.e., the City's belief that it was a "good owner" or the City's apparent belief that "nothing short of an open checkbook would have kept this group on our site working", or you don't. Labeling it as an opinion does not factor into that analysis. I would appreciate your clarification of this answer. I have difficulty believing that these statements were first conceived by the City on the date Ms. Houck wrote this letter, since everything else in this letter relates to events that occurred in the past.

4. para. 15 - to be clear, in late 2003 (someone on behalf of) the City made a decision not to make any further payments to Durkin. We are entitled to all otherwise privileged communications on the subject of making or withholding payments to Durkin, since that bears directly on whether payments were timely made.

I would appreciate your response before 11:00 a.m. tomorrow.

9/8/2006

David T. Bolger

*Powell, Trachtman, Logan, Carrle & Lombardo, P.C.*
*475 Allendale Road, Suite 200*
*King of Prussia, PA  19406*
*(610) 354-9700, x131*
*(610) 354-9760 fax*
*(610) 304-7398 mobile*
*dbolger@powelltrachtman.com*
*www.powelltrachtman.com*

*114 North Second Street, 5th Floor*
*Harrisburg, PA  17101*
*(717) 238-9300, x704*
*(717) 238-9325 fax*

U.S. Treasury Circular 230 Notice:  We inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this communication, including attachments, is not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on such taxpayer by the Internal Revenue Service.  In addition, if any such tax advice is used or referred to by other parties to promote, market, or recommend any transaction or investment, then (i) the advice should be construed as written in connection with the promotion or marketing by others of the transaction(s) or matter(s) addressed in this communication and (ii) the taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

*DISCLAIMER: This communication, along with any documents, files or attachments, is intended only for the use of the addressee(s) and may contain privileged or confidential information.  If you are not the named addressee(s), you are hereby notified that any dissemination, distribution, copying or other use of any information contained in this electronic transmission is strictly prohibited.  If you have received this electronic communication in error, please notify the sender immediately by reply to this electronic message and destroy the original communication and all attachments without reading, printing or saving any of the information in any manner.  Thank you.*

-----Original Message-----
**From:** Vicky Petrone [mailto:v.petrone@lawtcl.com]
**Sent:** Thursday, September 07, 2006 11:33 AM
**To:** Paul Cottrell; Kingsley, Patrick
**Cc:** Burkholder, David; Paul A. Logan; David T. Bolger
**Subject:** Re: Durkin v. Newark

> Gentlemen: attached is our response to your various emails from yesterday on the topic of Houck's May 16 letter.
>
>> ----- Original Message -----
>> **From:** Kingsley, Patrick
>> **To:** Vicky Petrone ; Paul Cottrell
>> **Cc:** David T. Bolger ; PLogan@PowellTrachtman.com ; Burkholder, David
>> **Sent:** Wednesday, September 06, 2006 2:03 PM
>> **Subject:** RE: Durkin v. Newark
>>
>> Vicky,
>>
>> I think the city waived any privilege relating to the following categories, all outlined by Durkin in its memo to the

Court. This list may not be comprehensive, but it is a start. As I have mentioned, I cannot imagine what is *not* waived.

-Pat

## SCOPE OF WAIVER:

(1) the basis and substance for Houck's alterations of her deposition testimony;
(2) discussions/documents concerning the City or Houck's contention that defendant's were misleading the Court;

(3) requirements or lack of requirements for City Council to agree in advance to the termination of Durkin;
(4) the "general policy of City Manager Carl Luft to inform and receive support from Council of such important decisions" (May 16, 2006 Correspondence, page 2);

(5) the fact that the February 2, 2004 vote proceed in the fashion of most votes of Council;
(6) discussions/documents concerning the fact that "Council's direction is certainly important [but] it may take weeks or even months to completely fulfill their wishes" (May 16, 2006 Correspondence, page 2);

(7) discussions/documents concerning the fact that Council relies on City staff to follow through "with the appropriate forms, agreements, ... often associated with the direction" (May 16, 2006 Correspondence, page 2);

(8) discussions/documents concerning the fact that Council are likely not aware of most of the steps required to enact their direction;

(9) discussions/documents concerning the allegation of Durkin's "failure to proceed" (May 16, 2006 Correspondence, page 2);

(10) discussions/documents concerning the allegation that Durkin failed to follow the direction of the engineer (May 16, 2006 Correspondence, page 3);

(11) discussions/documents concerning the allegation that Durkin would not complete the project at the price it bid (May 16, 2006 Correspondence, page 3);

(12) discussions/documents concerning the allegation Federal neglected its responsibility (May 16, 2006 Correspondence, pages 2-3);

(13) discussions/documents concerning the allegation that the City was a "good owner" to Durkin (May 16, 2006 Correspondence, page 3);

(14) discussions/documents concerning the City working to address Durkin's concerns (May 16, 2006 Correspondence, page 3);

(15) discussions/documents concerning the City allegedly paid Durkin on time (May 16, 2006 Correspondence, page 3);
(16) discussions/documents concerning the allegation that "nothing short of an open checkbook would have kept this group on our site working" (May 16, 2006 Correspondence, page 3).

# Burkholder, David

| | |
|---|---|
| **From:** | Burkholder, David |
| **Sent:** | Thursday, September 07, 2006 3:58 PM |
| **To:** | Vicky Petrone |
| **Cc:** | David T. Bolger; Kingsley, Patrick; Goldstein, Kevin; Paul A. Logan |
| **Subject:** | Durkin v. Newark |

Vicky:

In addition to the considerations raised by Durkin's counsel, we provide the following response. We, too, appreciate the City's acknowledgment that the scope of waiver of privilege on topics in the May 16, 2006 letter is much broader than the City initially claimed. However, notwithstanding this acknowledgment, the City nevertheless attempts to limit its production contending that there are no documents, other than the City code, to produce on certain subjects, the privilege on other subjects, which were directly excerpted from Houck's May 16, 2006 letter, is somehow not waived (while others are) or the City's interpretation of the plain terms of the letter arbitrarily restricts production of the material.

It is clear that, as a result of the waiver of the privilege, Federal is now entitled to all communications, or portions thereof, between the City and its counsel on all subjects set forth in the May 16, 2006 letter. The waiver therefore includes communications identified in the City's privilege log and all those since January 18, 2005 to the present. The City is not permitted to unilaterally graft an "opinion," "summary" or "policy" tag onto certain subjects to prevent the disclosure of communications related to those topics. The City has agreed that virtually every topic outlined in Federal's e-mail is covered by the waiver. The topics in the e-mail were created from a review of the May 16, 2006 letter. The City, therefore, cannot now object to some topics and only agree to those that it deems most innocuous.

Specifically, the City must produce the following communications:

Items (from Federal's September 6, 2006 e-mail):
1- The waiver includes communications relied upon by Houck or counsel in altering her deposition testimony. The communications include the advice that she received that would allow her and indeed make it her duty, as she claims, to review her testimony. It contemplates much more than simply documents relating to the errata sheets themselves.

2- Counsel's presence/absence on the conference call is not a substitute for the production of privileged communications. All communications relating to any contention or statement that Federal was in any way misleading the court must be produced. This, of course, includes details of discussions between counsel and the City on this issue, at any time in the litigation.

3- Producing only the City code is insufficient. Any and all communications relating to the alleged requirements for City Council to agree in advance or otherwise to terminate Durkin's contract, whenever made, must be produced.

4- Producing only the City code is insufficient. In stating this alleged policy, the City must now produce all communications relating to the City Manager's informing and receiving support from Council on notifying Durkin that the City was considering declaring Durkin in default, terminating the Construction Contract, and making a claim under the Performance Bond, etc.

5- Production of the executive session minutes is insufficient. The City must now produce all communications relating to the vote on February 2, 2004, including, but not limited to, communications reflecting advice provided to the City preceding and following the vote.

6, 7 and 8- The City must produce all communications relating to the basis for the conclusions in these items and any advice that counsel provided to the City (or documents provided by the City to counsel) relating to these topics.

9, 10, 11, 14 and 15- The City must produce all communications relating to these items. The City's unilateral characterization of the subjects is baseless and contradicts the City's clear agreement that similar statements are subject to disclosure. Further, whether the City stated similar contentions in pleadings or other filings with the Court is irrelevant to the issue of the waiver of the privilege. Federal is entitled to all communications relating to these topics, regardless of privilege.

12- This topic includes all communications relating to the City's purported attempts to comply with the requirements of termination and making a claim for coverage under the Performance Bond.

1

13 and 16- The City's characterizations of these topics is irrelevant. The City must now produce all communications, regardless of privilege, wherein the City or its counsel discusses how the City allegedly was a good owner, thereby working with Durkin towards completion of the project, the handling of Durkin's claims for extras, and the City's handling of the termination process.

The general theme is that the City must produce communications relating to the subjects set forth above and cannot limit the scope based on irrelevant characterizations of the statements in the May 16 letter. Frankly, it seems hard to imagine the areas of privilege that have not been waived given the broad scope of the topics set forth in the May 16, 2006 letter. Accordingly, Federal fully expects the City to produce the majority of the documents identified in the City's January 2005 version of the privilege log, as well as numerous other communications generated since that time.

Please let us know by 11 a.m. on Friday, September 8, 2006, whether the City will comply with its obligations to produce the above-referenced communications. If it will not do so, then we will have no choice but to present the City's failure to comply to the Court.

--Dave

**David M. Burkholder, Esquire**
Stradley Ronon Stevens & Young, LLP
30 Valley Stream Parkway
Malvern, PA 19355-1481
610.640.5807
610.640.1965 fax
www.stradley.com

<u>U.S. Treasury Circular 230 Notice:</u> We inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this communication, including attachments, is not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on such taxpayer by the Internal Revenue Service. In addition, if any such tax advice is used or referred to by other parties to promote, market, or recommend any transaction or investment, then (i) the advice should be construed as written in connection with the promotion or marketing by others of the transaction(s) or matter(s) addressed in this communication and (ii) the taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

This electronic mail message, and any attachments transmitted with it, contain confidential information, intended only for the named addressee(s). If you are not the intended recipient or the person responsible for delivering this e-mail to the intended recipient, you are hereby notified that any use, distribution, copying or disclosure of this communication is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by reply e-mail, and delete all copies of this communication from your computer and network. Thank you.

2

# Burkholder, David

| | |
|---|---|
| **From:** | Vicky Petrone [v.petrone@lawtcl.com] |
| **Sent:** | Friday, September 08, 2006 11:00 AM |
| **To:** | David T. Bolger; Paul Cottrell; Kingsley, Patrick |
| **Cc:** | Burkholder, David; Paul A. Logan |
| **Subject:** | Re: Durkin v. Newark |

Gentlemen: I am responding to both Federal's and Durkin's emails of September 7, 2006. I will first note that we have not changed our position on the scope of the waiver, as Mr. Burkholder suggests. Our position is, and remains, that the waiver applies only to those subject matters which I have previously identified. Your collective suggestion that Houck's generalization of the facts opens the door to production of documents concerning every single aspect of this lawsuit grossly outweighs the scope of the waiver and the caselaw which have interpreted such waivers. As to your repeated demands that I generate an updated privilege log, even if Houck's letter waived privilege as to all the issues you contend, that waiver would not extend to recent and current communications. Pages 2 and 3 of the letter refer to the procedure of the termination vote and Federal's denial of the Bond, both of which occurred in 2004.

With respect to Mr. Bolger's list, I have the following comments.

1. Wrong; Houck does talk about the policy in broad terms. Her opening sentence references the "formal requirement." Houck doesn't talk about any of the issues you reference and production of privileged information is not necessary for you to understand City policy.

2. Houck says simply that Durkin did not proceed. You don't need confidential communications to fairly understand that fact, which is the whole point of the waiver decisions. I don't understand the rest of your paragraph. Houck's talking about behavior by your client which has nothing to do with privileged communications between Houck and this office.

3. They are opinions which may or may not have been formed by Newark before the May 16 letter; regardless there are no related documents.

4. Your statement doesn't make sense. You do not need privileged communications to know whether payments were made on time. Your client sent the invoices and received, or did not receive, payment, so you know whether they were made on time. Further, the documents speak for themselves.

I will produce the documents indicated in previous correspondence.


-- Original Message -----

> **From:** David T. Bolger
> **To:** Vicky Petrone ; Paul Cottrell ; Kingsley, Patrick
> **Cc:** Burkholder, David ; Paul A. Logan
> **Sent:** Thursday, September 07, 2006 3:49 PM
> **Subject:** RE: Durkin v. Newark
>
> Vicky - while I appreciate your attempt to outline and characterize the nature and extent of the subject matters for which privilege has been waived, there remains far more disagreement than consensus on the scope and breadth of the waiver. I think using the list of topics identified in our Answering Brief for assessing the scope of the waiver is a sensible approach, but your interpretations and definition of the subject matters touched upon in the letter from Carol do not represent, in any sense, a fair reading of what is written and being conveyed to your firm. As examples:
>
> 1. paras. 4 & 7 - it isn't simply a "policy" or "procedure", but the **practice and execution** by the City Manager's office, particularly as it relates to this project. For instances, the written exchanges (or references thereto) by

9/8/2006

which the City Manager's office "inform and receive support from Council" on "important decisions" or the "appropriate forms, agreements" associated with any directions of Council would have to include, at a minimum, the events and exchanges leading up to (1) issuing the November 21, 2003 letter, (2) the meeting on December 9, 2003, (3) the Council meeting on February 2, 2004 and the development of the resolution to terminate Durkin, (4) the decision to retain Dr. Calabria, (5) putting the project out for public bidding in 2004, (6) entering into negotiations with George & Lynch, and (7) refusing to pay URS for the services identified in their counterclaim. Your claim that only written references to explanations of the "general policy" or procedures themselves is implicated is not acceptable.

2. para. 9 - I am at a complete loss to understand what you mean by a "general summary", let alone how this doesn't waive any privilege. If you persist in this claim, please provide me with whatever legal citation(s) you have to support this postulate. In addition, the fact that the City's allegations that Durkin "failed to proceed" may be found in other documents from the City provides you no basis for withholding privileged documents on the same subject matter--in fact, it compels precisely the opposite conclusion, i.e., it confirms there are indeed documents relating to this subject, and what we are now entitled to is all attorney-client communications on the same topic. I realize that this potentially implicates a vast number of documents, since this has been one of the City's central and recurrent themes in the lawsuit, but the volume of information simply isn't a relevant consideration. This is an area where we will have no choice but to seek the Court's intersession if an agreement cannot be reached.

Since this was the only claimed basis for not producing the documents listed under items 10, 11 & 14, there is similarly no basis for withholding those documents.

3. paras. 13 & 16 - I don't understand your response. Either you have previously privileged documents relating to these subjects, i.e., the City's belief that it was a "good owner" or the City's apparent belief that "nothing short of an open checkbook would have kept this group on our site working", or you don't. Labeling it as an opinion does not factor into that analysis. I would appreciate your clarification of this answer. I have difficulty believing that these statements were first conceived by the City on the date Ms. Houck wrote this letter, since everything else in this letter relates to events that occurred in the past.

4. para. 15 - to be clear, in late 2003 (someone on behalf of) the City made a decision not to make any further payments to Durkin. We are entitled to all otherwise privileged communications on the subject of making or withholding payments to Durkin, since that bears directly on whether payments were timely made.

I would appreciate your response before 11:00 a.m. tomorrow.

David T. Bolger

*Powell, Trachtman, Logan, Carrle & Lombardo, P.C.*
*475 Allendale Road, Suite 200*
*King of Prussia, PA  19406*
*(610) 354-9700, x131*
*(610) 354-9760 fax*
*(610) 304-7398 mobile*
*dbolger@powelltrachtman.com*
*www.powelltrachtman.com*

*114 North Second Street, 5th Floor*
*Harrisburg, PA  17101*
*(717) 238-9300, x704*
*(717) 238-9325 fax*

U.S. Treasury Circular 230 Notice:  We inform you that, unless expressly stated otherwise, any U.S. federal tax

advice contained in this communication, including attachments, is not intended or written to be used, and cannot be used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on such taxpayer by the Internal Revenue Service. In addition, if any such tax advice is used or referred to by other parties to promote, market, or recommend any transaction or investment, then (i) the advice should be construed as written in connection with the promotion or marketing by others of the transaction(s) or matter(s) addressed in this communication and (ii) the taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

*DISCLAIMER: This communication, along with any documents, files or attachments, is intended only for the use of the addressee(s) and may contain privileged or confidential information. If you are not the named addressee(s), you are hereby notified that any dissemination, distribution, copying or other use of any information contained in this electronic transmission is strictly prohibited. If you have received this electronic communication in error, please notify the sender immediately by reply to this electronic message and destroy the original communication and all attachments without reading, printing or saving any of the information in any manner. Thank you.*

-----Original Message-----
**From:** Vicky Petrone [mailto:v.petrone@lawtcl.com]
**Sent:** Thursday, September 07, 2006 11:33 AM
**To:** Paul Cottrell; Kingsley, Patrick
**Cc:** Burkholder, David; Paul A. Logan; David T. Bolger
**Subject:** Re: Durkin v. Newark

   Gentlemen: attached is our response to your various emails from yesterday on the topic of Houck's May 16 letter.

   ----- Original Message -----
   **From:** Kingsley, Patrick
   **To:** Vicky Petrone ; Paul Cottrell
   **Cc:** David T. Bolger ; PLogan@PowellTrachtman.com ; Burkholder, David
   **Sent:** Wednesday, September 06, 2006 2:03 PM
   **Subject:** RE: Durkin v. Newark

   Vicky,

   I think the city waived any privilege relating to the following categories, all outlined by Durkin in its memo to the Court. This list may not be comprehensive, but it is a start. As I have mentioned, I cannot imagine what is _not_ waived.

   -Pat

   ## SCOPE OF WAIVER:

   (1) the basis and substance for Houck's alterations of her deposition testimony;
   (2) discussions/documents concerning the City or Houck's contention that defendant's were misleading the Court;
   (3) requirements or lack of requirements for City Council to agree in advance to the termination of Durkin;
   (4) the "general policy of City Manager Carl Luft to inform and receive support from Council of such important decisions" (May 16, 2006 Correspondence, page 2);

   (5) the fact that the February 2, 2004 vote proceed in the fashion of most votes of Council;
   (6) discussions/documents concerning the fact that "Council's direction is certainly important [but] it may take weeks or even months to completely fulfill their wishes" (May 16, 2006 Correspondence, page 2);

   (7) discussions/documents concerning the fact that Council relies on City staff to follow through "with the

appropriate forms, agreements, ... often associated with the direction" (May 16, 2006 Correspondence, page 2);

(8) discussions/documents concerning the fact that Council are likely not aware of most of the steps required to enact their direction;

(9) discussions/documents concerning the allegation of Durkin's "failure to proceed" (May 16, 2006 Correspondence, page 2);

(10) discussions/documents concerning the allegation that Durkin failed to follow the direction of the engineer (May 16, 2006 Correspondence, page 3);

(11) discussions/documents concerning the allegation that Durkin would not complete the project at the price it bid (May 16, 2006 Correspondence, page 3);

(12) discussions/documents concerning the allegation Federal neglected its responsibility (May 16, 2006 Correspondence, pages 2-3);

(13) discussions/documents concerning the allegation that the City was a "good owner" to Durkin (May 16, 2006 Correspondence, page 3);

(14) discussions/documents concerning the City working to address Durkin's concerns (May 16, 2006 Correspondence, page 3);

(15) discussions/documents concerning the City allegedly paid Durkin on time (May 16, 2006 Correspondence, page 3);
(16) discussions/documents concerning the allegation that "nothing short of an open checkbook would have kept this group on our site working" (May 16, 2006 Correspondence, page 3).