# EXHIBIT "A"

Source: Legal > States Legal - U.S. > Delaware > Cases > DE State Cases, Combined ⓘ
Terms: **oklahoma law and insurance and exclusion** (Edit Search | Suggest Terms for My Search)

↰Select for FOCUS™ or Delivery
☐

*2004 Del. Super. LEXIS 80, \**

TIG **INSURANCE** COMPANY, Plaintiff, and ROYAL **INSURANCE** COMPANY OF AMERICA,
Intervenor Plaintiff, v. PREMIER PARKS, INC. (n/k/a Six Flags, Inc.), Defendant.

C.A. No. 02C-04-126 JRS

SUPERIOR COURT OF DELAWARE, NEW CASTLE

2004 Del. Super. LEXIS 80

December 1, 2003, Submitted
March 10, 2004, Decided

**SUBSEQUENT HISTORY:** Motion granted by, in part TIG Ins. Co. v. Premier Parks, Inc.,
2005 Del. Super. LEXIS 60 (Del. Super. Ct., Mar. 1, 2005)

**DISPOSITION: [\*1]** Defendant's motion for partial summary judgment granted in part,
denied in part. Plaintiff, TIG **Insurance** Company's cross motion for partial summary
judgment granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff insurer sought a declaratory judgment that it was not
required to provide **insurance** coverage to defendant insured for a judgment entered
against the insured in a personal injury lawsuit. The insured counterclaimed, alleging the
insurer had a duty to defend and to indemnify the insured for all damages in the personal
injury lawsuit, including punitive damages. The parties cross moved for partial summary
judgment.

**OVERVIEW:** The insured operated an amusement park. An altercation occurred between
its employees and invitees at the park. The insurer argued that, because the jury in the
underlying suit did not allocate the compensatory damages award between covered and
non-covered claims, either no coverage was available on any of the claims, or else the
damages had to be allocated consistent with the evidence at the trial. The insurer also
claimed that the policy did not cover the punitive damages awarded to the plaintiffs in the
underlying suit. The insured argued that the policy covered all of the compensatory
damages awarded at trial as the insurer failed to request an allocation of damages
between the arguably covered and non-covered claims. The court found that because the
insured was found liable for its own conduct and not for that of its employees, a vicarious
liability exception in the policy did not apply so that the policy did not cover the punitive
damages. As to four of the five plaintiffs, the entire compensatory damages award related
to a covered claim and coverage was to be afforded. Finally, the assault and battery claim
of the fifth plaintiff did not trigger coverage under the policy.

**OUTCOME:** The insured's motion for partial summary judgment was granted in part as to
the compensatory damages awarded to four of the plaintiffs, and the motion was denied in

part as to the compensatory damages awarded to the fifth plaintiff. The insurer's cross motion for partial summary judgment was granted as to the punitive damages award.

**CORE TERMS:** insured, punitive damages, occurrence, coverage, insurer, summary judgment, bodily injury, non-covered, compensatory damages, false imprisonment, interrogatories, negligent supervision, partial, attendant, allocate, malice, vicarious liability, lump sum, sheet, coverage issues, cross motion, giving rise, causative, assault, battery, settlement, assault and battery, repeated exposure, trial transcript, duty to defend

### LexisNexis(R) Headnotes ◆ Hide Headnotes



Civil Procedure > Federal & State Interrelationships > Choice of Law > Significant Relationships

*HN1* Under the most significant relationship test for determining choice of law, a court must consider a number of relevant factors, including: (1) the needs of the interstate and international systems, (2) the relevant policies of the forum, the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (3) the protection of justified expectations, (4) the basic policies underlying the particular field of law, (5) certainty, predictability and uniformity of result, and (6) ease in the determination and application of the law to be applied. The court also must consider: (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicil, residence, nationality, place of incorporation and place of business of the parties.  More Like This Headnote

Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview

*HN2* In **insurance** cases involving multiple insurers and multiple risks, the most significant factor for determining choice of law is the principal place of business of the insurers because that location is the common link between the parties. The place of performance is also important because it links that state closely with the conduct of the parties that gives rise to the litigation.  More Like This Headnote



Civil Procedure > Summary Judgment > Appellate Review > Standards of Review

Civil Procedure > Summary Judgment > Standards > Legal Entitlement

Civil Procedure > Summary Judgment > Standards > Materiality

*HN3* Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants

*HN4* The moving party at summary judgment bears the initial burden of demonstrating the absence of material issues of fact.  More Like This Headnote

Civil Procedure > Summary Judgment > Standards > General Overview

*HN5* When determining whether the moving party at summary judgment has carried the burden of demonstrating the absence of material issues of fact, a court must view the evidence in the light most favorable to the non-moving party.  More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview

**HN6** If a motion for summary judgment is properly supported, the burden shifts to the non-moving party to show the existence of material issues of fact. More Like This Headnote

Civil Procedure > Summary Judgment > Appellate Review > Standards of Review

Civil Procedure > Summary Judgment > Motions for Summary Judgment > Cross-Motions

Civil Procedure > Summary Judgment > Standards > General Overview

**HN7** Cross motions for summary judgment do not change the standard of review. More Like This Headnote

Civil Procedure > Summary Judgment > Motions for Summary Judgment > Cross-Motions

Civil Procedure > Summary Judgment > Standards > General Overview

**HN8** The existence of cross motions for summary judgment does not act per se as a concession that there is an absence of factual issues. Rather, a party moving for summary judgment concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for the purposes of its own motion, and does not waive its right to assert that there are disputed facts that preclude summary judgment in favor of the other party. Thus, the mere filing of a cross motion for summary judgment does not serve as a waiver of the movant's right to assert the existence of a factual dispute as to the other party's motion. More Like This Headnote

Civil Procedure > Summary Judgment > Partial Summary Judgments

Civil Procedure > Remedies > Damages > Punitive Damages

Torts > Damages > Punitive Damages > General Overview

**HN9** Punitive damages are designed to punish the wrongdoer and to deter similar conduct in the future. More Like This Headnote

Civil Procedure > Remedies > Damages > General Overview

Torts > Damages > Punitive Damages > General Overview

**HN10** Oklahoma has adopted the rule that public policy generally will prohibit an insurer from covering punitive damages. This rule is grounded in the nature of the damages themselves: a party found culpable for intentional wrongdoing to the point that a jury saw fit to punish that party should not be permitted to shift the punishment to an **insurance** company. A contrary result would allow the wrongdoer to deflect its burden to the public at large through increased **insurance** premiums. More Like This Headnote

Labor & Employment Law > Employer Liability > Third Party Insurers

Torts > Damages > Punitive Damages > Availability > Employers

Torts > Vicarious Liability > Employers > General Overview

*HN11* Oklahoma has adopted a common-sense exception in vicarious liability situations to the rule that public policy generally will prohibit an insurer from covering punitive damages. The doctrine of respondeat superior imposes liability on an employer for the wrongful acts of its employees. When the employer's liability for punitive damages is derivative only, punitive damages will be covered. The policy behind this exception is rooted in the principle of burden-shifting: the concerns relating to the transfer of the punishment from insured to insurer are not present when the employer is liable solely because of its employees' wrongful conduct. The actor in a vicarious liability situation is not the employer itself. And the focus must be on the perpetrator of the wrong: thus, punitive damages are not covered when the employer perpetrates a wrong separate from its employees; they are covered, however, when agency alone imposes liability on the employer for the wrongs perpetrated by its employees.  More Like This Headnote

Civil Procedure > Summary Judgment > Partial Summary Judgments

Insurance Law > Claims & Contracts > Declaratory Relief > General Overview

*HN12* When a dispute over covered versus non-covered claims arises between an insurer and an insured, and the insurer assumes the insured's defense, the insurer must request an allocation of damages that will allow the parties to more readily address the coverage issues after trial. When the insurer fails to do so, it bears the initial burden of showing that a lump sum verdict represents damages for non-covered claims. When the insurer meets this burden, the burden shifts to the insured to prove what portion of the verdict represents damages for covered claims.  More Like This Headnote

Civil Procedure > Trials > Jury Trials > Jurors > General Overview

Civil Procedure > Trials > Jury Trials > Jury Deliberations

Evidence > Competency > Jurors > Deliberations

*HN13* See Del. R. Evid. 606(b).

Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview

Civil Procedure > Summary Judgment > Opposition > General Overview

Insurance Law > Claims & Contracts > Reservation of Rights > General Overview

*HN14* Del. Super. Ct. R. Civ. P. 56(f) requires a party to state by affidavit the additional information it would seek to develop in discovery to oppose a properly supported motion for summary judgment.  More Like This Headnote

Insurance Law > Claims & Contracts > Policy Interpretation > Ambiguous Terms > General Overview

*HN15* The Oklahoma Supreme Court has interpreted "accident" to mean an event from an unknown cause, or an unexpected event from a known cause; an unusual event and unexpected result, attending the performance of a usual or necessary act.  More Like This Headnote

Insurance Law > Claims & Contracts > Policy Interpretation > Ambiguous Terms > General Overview 

Torts > Intentional Torts > Assault & Battery > General Overview 🔖

HN16⊥ By their very nature, intentional torts are not accidents.  More Like This Headnote

**COUNSEL:** Carmella P. Keener, Esquire, ROSENTHAL, MONHAIT, GROSS & GODESS, P.C., Wilmington, Delaware; Peter D. Lindau, Esquire, ROSS, DIXON & BELL, L.L.P., Chicago, Illinois; Peter G. Thompson, Esquire, Jeffrey W. Duffy, Esquire, ROSS, DIXON & BELL, L.L.P., Washington, D.C., Attorneys for Plaintiff, TIG **Insurance** Company.

Frank E. Noyes, II, Esquire, WHITE & WILLIAMS, L.L.P., Wilmington, Delaware, Attorney for Intervenor Plaintiff, Royal **Insurance** Company of America.

Richard L. Horwitz, Esquire, Erica L. Niezgoda, Esquire, POTTER ANDERSON & CORROON, L.L.P., Wilmington, Delaware; Terri L. Combs, Esquire, FAEGRE & BENSON, L.L.P., Des Moines, Iowa; Rikke Dierssen-Morice, Esquire, Rachel Bond, Esquire, FAEGRE & BENSON, L.L.P., Minneapolis, Minnesota, Attorneys for Defendant, Premier Parks, Inc.

**JUDGES:** Judge Joseph R. Slights, III.

**OPINIONBY:** Joseph R. Slights, III

**OPINION: MEMORANDUM OPINION**

**SLIGHTS, J.**

**I.**

This declaratory judgment action is before the Court on cross motions for partial **[*2]** summary judgment. Plaintiff, TIG **Insurance** Company ("TIG"), seeks a declaration that it is not required to provide **insurance** coverage to its insured, Premier Parks, Inc., now known as Six Flags, Inc. ("Six Flags"), for a judgment entered against Six Flags upon a plaintiff's verdict in a personal injury lawsuit litigated in Maryland. The Maryland litigation followed an incident at a Six Flags amusement park during which it was alleged that Six Flags employees detained and assaulted a group of patrons at the park without justification. TIG alleges that most of the claims against Six Flags in the Maryland action were not covered under its policy. Because the jury did not allocate its compensatory damages award as between covered and non-covered claims, TIG argues that the Court must either conclude that no coverage is available for any of the claims or, alternatively, must allocate the damages in a manner consistent with the evidence presented during the Maryland trial.

Six Flags argues that TIG's coverage position comes too late -- if TIG wanted an allocation of damages as between covered and non-covered claims, it should have directed the attorneys it engaged on behalf of Six Flags **[*3]** to draft appropriate jury interrogatories to accomplish this goal. Having failed to do so, TIG cannot now ask the Court to attempt to discern the jury's intent from a trial record that provides no guidance on this issue. Because the jury found Six Flags liable for covered claims, and because the damages awarded by the jury could relate entirely to those covered claims, Six Flags argues that TIG must provide coverage for the entire amount of compensatory damages awarded by the jury.

In addition to compensatory damages, the jury also awarded punitive damages against Six Flags. TIG contends that its policy does not cover punitive damages; Six Flags contends that there is coverage for punitive damages because the conduct giving rise to the liability is

solely that of Six Flags' employees (as opposed to corporate behavior).

Finally, Six Flags points to the policy's "separation of insureds" provision in support of an argument that all of the claims against its employees, whether based on intentional conduct or conduct less culpable, still must be considered "accidental" with respect to the corporate insured since there was no evidence presented at trial that the corporate entity intended **[*4]** or could have anticipated harm to any of the plaintiffs in the Maryland litigation. Because the "separation of insureds" provision requires the carrier to consider a claimed loss from the perspective of each separate insured under the policy, Six Flags argues that it must be afforded coverage even though its employees (separate insureds under the policy) may not be entitled to coverage.

As explained in more detail below, the Court cannot reasonably be expected to perform a post-verdict allocation of damages as between covered and non-covered claims when the record provides little, if any, evidence of the jury's methodology in reaching its damages awards. Given that the jury found in favor of four of the five plaintiffs in the Maryland action on both covered and non-covered claims, and given that the jury's compensatory damages awards could have been prompted by covered claims alone, TIG cannot deny coverage for those damages. As to the fifth plaintiff, the Court concludes that the jury's verdict was for non-covered claims only for which TIG is not responsible. Six Flags' effort to find coverage in the policy's "separation of insureds" provision is not persuasive. Finally, the Court **[*5]** has concluded that the policy does not cover the jury's award of punitive damages.

Six Flags' motion for partial summary judgment is **GRANTED in part and DENIED in part.** TIG's cross motion for partial summary judgment with respect to punitive damages is **GRANTED.**

## II.

In July of 1999, Eddie Williams, Linda Williams, Katrina Smith, Charles Smith, Shaniqua Smith and Frances Williams (collectively, "the Williams plaintiffs") were involved in an altercation with park attendants at a Six Flags amusement park in Prince George's County, Maryland. As the Williams plaintiffs attempted to board a ride called the "Typhoon Sea Coaster," park attendants advised them that Shaniqua Smith did not meet the minimum height requirements for the ride. After the Williams plaintiffs allegedly refused to heed instructions that they were not to enter the ride, park attendants forcibly removed and then detained them.

In June of 2000, the Williams plaintiffs sued Six Flags alleging assault, battery, false imprisonment, negligent supervision and "injury with ill will, intent to injure or malice." n1 As Six Flags' insurer, TIG assumed the defense and reserved its rights to require an allocation **[*6]** of damages between those claims that were covered under its policy (the "Policy") and those that were not. At the conclusion of the evidence, TIG's trial counsel proposed special jury interrogatories that were ultimately submitted to the jury to guide it through its deliberations. The interrogatories separated the claims by plaintiff but did not require the jury to allocate damages as between covered and non-covered claims. Consequently, the jury awarded lump sum compensatory damages for each plaintiff. As to four of the five plaintiffs, the jury found the defendants liable on each count. With respect to the fifth plaintiff, Shaniqua Smith, the jury found Six Flags liable on all counts except false imprisonment. The total award as among all plaintiffs was $ 1 million in compensatory damages and $ 1.5 million in punitive damages. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The original complaint alleged assault, assault with malice, battery, battery with malice,

false arrest, false arrest with malice, false imprisonment, false imprisonment with malice, defamation/slander-libel, defamation/slander-libel with malice, negligent infliction of emotional distress, intentional infliction of emotional distress, breach of contract and negligent supervision. Many of these claims were dismissed by the trial court pursuant to a pre-trial defense motion for judgment. **[*7]**

n2 As best as the Court can discern from the record, the jury's award of punitive damages is currently on appeal to the Maryland Court of Appeals.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

After the verdict, TIG offered to cover a portion of the verdict in favor of those plaintiffs who prevailed on the only claim that TIG acknowledged was covered under its policy: false imprisonment. TIG declined to cover any of the verdict for Shaniqua Smith because she did not prevail on her claim of false imprisonment. When Six Flags refused to accept only partial coverage, TIG brought this complaint seeking a declaratory judgment that it had no duty to defend or indemnify Six Flags in the Maryland litigation. Six Flags counterclaimed alleging that TIG had a duty to defend and to indemnify Six Flags for all damages, including punitive damages. Both parties have now cross moved for partial summary judgment.

## III.

In its motion, Six Flags asks the Court to determine that the Policy must cover all of the compensatory damages awarded at trial because TIG failed to request an allocation of damages as between arguably covered and non-covered claims. **[*8]** According to Six Flags, TIG controlled the defense and knew that coverage issues would surface after the verdict. Yet the jury interrogatories approved by TIG's trial counsel offer no guidance with respect to allocation; they simply reflect that the jury found TIG insureds liable for a covered claim or claims and awarded lump sum compensatory damages. Under these circumstances, TIG must provide coverage for the entire amount of compensatory damages because Six Flags has demonstrated that at least one of the claims for which the jury awarded damages (i.e. false imprisonment) is covered by the Policy. n3 Six Flags asserts that TIG has waived any right to contest coverage by failing to preserve evidence of the jury's intent with respect to the allocation of compensatory damages.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Both parties agree that false imprisonment is a covered event under the Policy.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

TIG responds that its defense was subject to a reservation of rights agreement whereby coverage issues were preserved. Accordingly, TIG argues that the Court **[*9]** must attempt to allocate damages in this situation, even in the absence of specific evidence regarding the jury's rationale and/or intent. n4 Moreover, TIG contends that even if the Court found that TIG had waived its right to seek an allocation of damages, the claims still do not fit within the unambiguous provisions for coverage in the Policy because the jury did not find that the Williams plaintiffs sustained "bodily injury" as a result of an "occurrence." n5 TIG reasons that no "bodily injury" was sustained because the plaintiffs did not submit medical bills or other evidence to support their claims of personal injury. Nor was there an "occurrence" because the actions taken against the Williams plaintiffs constituted intentional torts.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 At the Court's request, the parties submitted supplemental briefs on the allocation issue in which TIG offered several approaches by which the Court could attempt to allocate the verdicts.

n5 The Policy provided coverage for "bodily injury" (defined as "bodily injury, sickness or disease sustained by a person, including mental anguish...") caused by an "occurrence" (defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions"). *See* D.I. 22, Ex. C.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*10]**

Six Flags reiterates its waiver argument in its reply papers and then raises a new argument based upon the "separation of insureds" provision in the Policy. According to Six Flags, this provision memorializes the parties' intent that Six Flags, as an entity, should be considered as a separate and distinct insured from its employees. The practical impact of this provision is that TIG must consider each claim for coverage from the separate perspective of each insured. In this case, the intentional torts committed by the Six Flags employees must be deemed "occurrences," or accidents, from the perspective of Six Flags because the Williams plaintiffs presented no evidence that Six Flags endorsed or acquiesced in the conduct of its employees.

Finally, in its cross motion for partial summary judgment, TIG asserts that the punitive damages awarded to the Williams plaintiffs are not covered by the Policy. TIG acknowledges that punitive damages would have been covered if the jury had concluded that Six Flags was vicariously liable for the intentional acts of its employees. But in this case the jury's verdict clearly reveals that Six Flags' exposure to punitive damages arose from its own improper **[*11]** supervision of its employees. Indeed, the jury interrogatories, *inter alia,* ask the jury to determine whether Six Flags itself caused the Williams plaintiffs' injuries. n6 Vicarious liability is not addressed in the jury interrogatories.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 D.I. 38, Ex. A (Verdict Sheet) at questions 3, 12, 19, 27, 35 ("Did Six Flags' negligence cause or contribute to injuries sustained by [plaintiff]?").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Not surprisingly, Six Flags takes issue with TIG's characterization of the jury's verdict. According to Six Flags, the jury's finding of liability against Six Flags was based solely on vicarious liability. Six Flags points to the fact that the trial court instructed the jury on *respondeat superior* in the general instructions and then advised the jury in the punitive damages instructions that such damages were appropriate if the jury found that the plaintiffs had endured an "assault and battery," presumably at the hands of the Six Flags employees. To the extent it is not clear from the jury interrogatories how the jury **[*12]** arrived at its punitive damages award, Six Flags urges the Court to presume that the punitive damages are covered because the burden of preserving a defense to coverage in the jury interrogatories fell on the trial counsel hired by TIG.

The issues have been fully briefed and argued and the matters are now ripe for decision. n7

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n7 The parties have not addressed, nor has the Court considered, the extent to which the coverage issues addressed in the briefing may affect TIG's ongoing duty to defend in the Maryland litigation.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**IV.**

At the outset, the Court must determine which state's substantive law will apply to this controversy. The Policy does not contain a choice of law provision, so the Court must look elsewhere for guidance. n8 The so-called "most significant relationship" test directs the analysis. *HN1*⊤Under this test, the Court must consider a number of relevant factors, including: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, the relevant policies **[*13]** of other interested states and the relative interests of those states in the determination of the particular issue, (c) the protection of justified expectations, (d) the basic policies underlying the particular field of law, (e) certainty, predictability and uniformity of result, and (f) ease in the determination and application of the law to be applied." n9 The Court also must consider: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." n10

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n8 *See J.S. Alberici Constr. Co. v. Mid-West Conveyor Co., 750 A.2d 518, 520 (Del. 2000)* (Delaware courts give great weight to contractual choice of law provisions)(citation omitted).

n9 RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 6 (1971). *See also Liggett Group, Inc. v. Affiliated FM **Insurance** Co., 788 A.2d 134, 137 (Del. 2001)*(citations omitted) (applying Section 6); *The Travelers Indemnity Co. v. Lake, 594 A.2d 38, 45-46 (Del. 1991)* (holding that Delaware has abandoned the *lex loci delicti* doctrine in favor of the Restatement's "most significant relationship" test). **[*14]**

n10 RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 188 (1971).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

*HN2*⊤In **insurance** cases involving multiple insurers and multiple risks, the most significant factor is the principal place of business of the insurers because that location is the common link between the parties. n11 The place of performance is also important because it links that state closely with the conduct of the parties that gives rise to the litigation. n12

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n11 *Id.; Liggett,* 788 A.2d at 138 (applying Section 188)(citations omitted).


n12 *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 188 cmt. e (1971).


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Six Flags is incorporated in Delaware, with its principal place of business in Oklahoma. The premiums on the Policy were paid out of Six Flags' Oklahoma office. TIG is incorporated in Texas. Although the events giving rise to the underlying litigation **[*15]** took place in Maryland, the issues *sub judice* do not require a substantive interpretation of the law underlying the claims presented there. Rather, this case involves the interpretation of an **insurance** contract issued to Six Flags in Oklahoma. And while it is clear that none of the states with competing interests could stake an overwhelming claim to this controversy under the Restatement, Oklahoma, at the end of the day, takes the prize because it has the *"most* significant relationship" when the relevant factors are tallied on the scorecard. The parties' relationship is centered in Oklahoma and the contract was performed there, at least to the extent that premiums on the policy were paid from there. No other state has a more compelling interest in the outcome of the litigation. The Court will apply **Oklahoma law.** n13

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n13 The Court notes that the parties appear at least to have acquiesced in this conclusion, if not endorsed it in their briefing.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**V.**

The standard of review for motions for summary judgment **[*16]** is well-established. n14 *HN3*Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. n15 *HN4*The moving party bears the initial burden of demonstrating the absence of material issues of fact. n16 *HN5*When determining whether the moving party has carried this burden, the Court must view the evidence in the light most favorable to the non-moving party. n17 *HN6*If a motion for summary judgment is properly supported, the burden shifts to the non-moving party to show the existence of material issues of fact. n18

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n14 **Oklahoma law** applies to the substantive issues in this case; however, Delaware law governs the procedural aspects of the case, including the standards for summary judgment. *International Business Machines Corp. v. Comdisco, Inc., 1991 Del. Super. LEXIS 453,* 1991 WL 269965 (Del. Super.), at *29, n. 9 (citing *Connell v. Delaware Aircraft Industries,* 44 Del. 86, 5 Terry 86, 55 A.2d 637, 640 (Del. Super. Ct. 1947)).


n15 *Merrill v. Crothall-American, Inc.,* 606 A.2d 96, 99-100 (Del. 1992).

n16 *Moore v. Sizemore,* 405 A.2d 679, 680 (Del. 1979). **[\*17]**

n17 *Brzoska v. Olson,* 668 A.2d 1355, 1364 (Del. 1995).

n18 *State ex rel. Secretary of DOT v. Regency Group, Inc.,* 598 A.2d 1123, 1129 (Del. Super. Ct. 1991).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

HN7⚓Cross motions for summary judgment do not change the standard of review. n19 As our Supreme Court has observed:

> HN8⚓The existence of cross motions for summary judgment does not act *per se* as a concession that there is an absence of factual issues. Rather, a party moving for summary judgment concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for the purposes of its own motion, and does not waive its right to assert that there are disputed facts that preclude summary judgment in favor of the other party. Thus, the mere filing of a cross motion for summary judgment does not serve as a waiver of the movant's right to assert the existence of a factual dispute as to the other party's motion." n20

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n19 *Haas v. Indian River Vol. Fire* Co., 2000 WL 1336730 (Del. Ch.)(citation omitted), *aff'd,* 768 A.2d 469 (Del. 2001). **[\*18]**

n20 *United Vanguard Fund, Inc. v. Takecare, Inc.,* 693 A.2d 1076, 1079 (Del. 1997)(citations omitted).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

## VI.

First, the Court turns to TIG's cross motion for partial summary judgment in which it contends that the jury's award of $ 1.5 million in punitive damages is not covered under the Policy. HN9⚓Punitive damages are designed to punish the wrongdoer and to deter similar conduct in the future. n21 HN10⚓Oklahoma has adopted the rule set forth in *Northwestern National Cas. Co. v. McNulty,* n22 where the court determined that public policy generally will prohibit an insurer from covering punitive damages. n23 This rule is grounded in the nature of the damages themselves: a party found culpable for intentional wrongdoing to the point that a jury saw fit to punish that party should not be permitted to shift the punishment to an **insurance** company. n24 A contrary result would allow the wrongdoer to deflect its burden to the public at large through increased **insurance** premiums. n25

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n21 *See* *Thiry v. Armstrong World Indus.*, 1983 OK 28, 661 P.2d 515, 517 (Okla. 1983). **[*19]**

n22 307 F.2d 432 (5th Cir. 1962).

n23 *See* *McNulty*, 307 F.2d at 433; *Dayton Hudson Corp. v. American Mutual Liability Insurance Co.*, 1980 OK 193, 621 P.2d 1155, 1158 (Okla. 1980)(following *McNulty*).

n24 *Id.* at 1159.

n25 *Id.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**HN11**Oklahoma has adopted a common-sense exception to this rule in vicarious liability situations. n26 The doctrine of *respondeat superior* imposes liability on an employer for the wrongful acts of its employees. n27 When the employer's liability for punitive damages is derivative only, punitive damages will be covered. n28 The policy behind this exception is rooted in the principle of burden-shifting: the concerns relating to the transfer of the punishment from insured to insurer are not present when the employer is liable solely because of its employees' wrongful conduct. n29 The actor in a vicarious liability situation is not the employer itself. n30 And the focus must be on the perpetrator of the wrong: thus, punitive damages are not covered when the employer perpetrates a wrong separate from its employees; **[*20]** they are covered, however, when agency alone imposes liability on the employer for the wrongs perpetrated by its employees. n31

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n26 *Id.* at 1160 (citations omitted).

n27 *See* *Sides v. Cordes*, 1999 OK 36, 981 P.2d 301, 304 (Okla. 1999).

n28 *Dayton Hudson*, 621 P.2d at 1160.

n29 *See id.*

n30 *See id.*

n31 *See id.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In light of the foregoing, the Court must determine whether the award of punitive damages was assessed against Six Flags as a consequence of wrongs perpetrated by the corporation or by its employees alone. The evidence of record clearly reveals that the jury sought to punish Six Flags for corporate conduct, not just employee conduct. Consequently, the punitive damages may not be covered under the Policy.

The leading Oklahoma case on this issue, *Magnum Foods v. Continental Casualty Co.,* n32 directs the Court to examine the "totality of the circumstances" to determine the theory under which the jury found Six Flags liable. **[*21]** n33 To support their respective interpretations of the jury's punitive damages verdict, the parties supplied the Court with the jury's verdict sheet and portions of the trial transcript, specifically the closing arguments of counsel and the court's instructions to the jury. The trial transcripts present conflicting points of view on the punitive damages issue. In his closing argument on the merits, plaintiffs' counsel asked the jury to "decide whether or not this conduct by Six Flags' employees was such that they ought to be punished for their conduct...That is called punitive damages..." n34 But during separate arguments on the punitive damages issue, after mentioning the net worth of Six Flags' parent corporation, plaintiffs' counsel urged the jury to:

> Send a message to explain to the corporation that they cannot and should not treat people in the way that they have. We need to do something that will alert them, and the only way that we have at our disposal is financially...we can only ask you to consider what would be important to them because if it's a mere pittance or annoyance, this will not deter or stop the actions that have occurred...we are going to ask you to consider **[*22]** what would go across the COO's desk? What would make them pay attention ... I'm just suggesting that you should come up with a figure that you feel is fair; look at the net worth ... this is what we have to deal with, because I don't think five hundred thousand dollars is even going to go across the COO's desk. n35

It is not possible from the transcripts alone to determine which theory was applied because the jury heard several and, at times, contradictory theories of liability for punitive damages.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n32 36 F.3d 1491 (10th Cir. 1994)(applying **Oklahoma law).**

n33 *Id.* at 1499 (citing *Commercial Union Ins. Co. v. Ramada Hotel Operating Co.,* 852 F.2d 298, 302 (7th Cir. 1988)).

n34 D.I. 36, Ex. A at 3-163 (Transcript of Merits Trial dated October 31, 2001).

n35 D.I. 38, Ex. C at 3-204-205 (Transcript of Merits Trial dated October 31, 2001).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In the absence of clear direction in the trial transcript, the Court must focus its analysis on

the verdict **[*23]** sheet. And it is here that the jury's intent to assess punitive damages against Six Flags for corporate conduct is most readily demonstrated. For each plaintiff, the first three jury interrogatories read: "did Six Flags employees commit [(1) assault, (2) battery or (3) false imprisonment] against [the plaintiff]?" n36 If these three questions were answered in the affirmative, the next question asked: "did Six Flags' negligence cause or contribute to injuries sustained by [the plaintiff]?" n37 The last question as to each plaintiff was: "do you find by clear and convincing evidence that Six Flags acted with ill-will, intent to injure or malice when it caused injury to [the plaintiff]?" n38 This last question was the predicate to the jury's punitive damages award against Six Flags. n39

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n36 D.I. 38, Ex. A (Verdict Sheet) at 1.


n37 *Id.* Both parties conceded at oral argument that this question referred to the negligent supervision claim. *See* D.I. 53 at 31-32.


n38 D.I. 38, Ex. A.


n39 The jury instructions indicate unequivocally that the jury was charged: "in order for punitive damages to be recoverable, the wrongful conduct must be accompanied by evil motive, intent to injury, ill will or fraud... an award of punitive damages must be proven by clear and convincing evidence." D.I. 36, Ex. A at 3-207 - 3-208.


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*24]**

The only reasonable conclusion, based on the verdict sheet, is that the jury not only concluded that Six Flags was liable for negligent supervision of its employees, it also concluded that Six Flags acted with the requisite malice to justify an award of $ 1.5 million in punitive damages. This was not a vicarious liability determination. The jury clearly determined that Six Flags engaged in intentional corporate wrongdoing. And because Six Flags was found liable for its own conduct and not for that of its employees, the vicarious liability exception does not apply and the punitive damages are not covered under the Policy.

**VII.**

Next, the Court turns to Six Flags' motion for partial summary judgment, which at first requires a determination of the insurer's duty to preserve a clear record with respect to the jury's verdict when controlling the defense of litigation in cases where coverage issues are likely to surface post-verdict. The relevant case law establishes that *HN12* when a dispute over covered versus non-covered claims arises between an insurer and an insured, and the insurer assumes the insured's defense, the insurer must request an allocation of damages that will allow the **[*25]** parties to more readily address the coverage issues after trial. n40 When the insurer fails to do so, it bears the initial burden of showing that a lump sum verdict represents damages for non-covered claims. n41 When the insurer meets this burden, the burden shifts to the insured to prove what portion of the verdict represents damages for covered claims. n42

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -



n40 *See* <u>*Duke v. Hoch,*</u> 468 F.2d 973, 976 (5th Cir. 1973)(where an insurer controlled the defense in a garnishment proceeding and failed to request allocation of damages, the burden was on the insurer to show that a portion of the unallocated verdict represented liability for noncovered acts, then the burden shifted back to the insured to show the portion of damages awarded for covered acts)(applying Florida law); <u>*Gay & Taylor, Inc. v. St. Paul Fire & Marine Ins. Co.,*</u> 550 F. Supp. 710 (W.D. Okla. 1981)(same holding in the context of a settlement as opposed to jury verdict).

n41 *Id.*

n42 *Id.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

TIG's inexplicable **[\*26]** failure to request an allocation of damages at the conclusion of the trial places the Court in the tenuous position of guessing what was in the mind of the jury when it deliberated the damages. The best evidence of the jury's intent should be the responses to the jury interrogatories. Unfortunately, the jury interrogatories were not propounded in a manner that would allow the jury to allocate damages between covered and non-covered claims. Instead, the verdict sheet indicates: (1) as to four of the five Williams plaintiffs, the jury found Six Flags liable for all three claims for relief submitted for consideration (assault, battery, and false imprisonment); (2) as to one of the five Williams plaintiffs (Shaniqua Smith), the jury found Six Flags liable for two of the three claims submitted (assault and battery); and (3) the jury awarded lump sum compensatory damages to each of the five Williams plaintiffs in varying amounts. The portion of the trial transcript provided to the Court which includes the parties' closing arguments and excerpts from the court's instructions to the jury provides no guidance at all with respect to allocation.

TIG contends that the Court has a duty to allocate **[\*27]** in this situation. The Court disagrees. Indeed, the case most heavily relied upon by TIG in support of its position, *Duke v. Hoch,* actually exposes the flaw in TIG's reasoning. n43 *Duke* clearly holds that a post-verdict allocation of damages in the coverage context should not even be considered unless and until the insurer meets its burden of showing that the general verdict included damages for non-covered acts. n44 TIG cannot meet that burden in this case. It has admitted that as to four of the five plaintiffs, the jury found the Six Flags employees - - all insureds under the Policy -- liable for a covered claim (false imprisonment). The jury awarded damages in a lump sum, some or all of which may have been attributed to the false imprisonment claim. Under these circumstances, the so-called "duty to allocate" recognized in <u>*Duke*</u> is not even implicated.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n43 In *Duke,* the insurer met its burden of establishing damages for non-covered claims and the court remanded the case so the trial court could perform a damages allocation. <u>468 F.2d at 984</u>.

n44 <u>*Id.* at 976</u> ("Obviously, the troublesome problem of separating out of the unallocated verdict the precise damages for which [the insurer] was responsible would be reached only if it was first established that a portion of the verdict represented liability for noncovered acts. In its defense of the garnishment suit the burden was upon [the insurer] to establish that the judgment entered against its insureds and sought to be collected included damages for

noncovered acts.")(citing *Jewelers Mut. Ins. Co. v. Balogh,* 272 F.2d 889 (5th Cir. 1959); *Weinstock v. Prudential Ins. Co.,* 247 So. 2d 503 (Fla. Ct. App. 1971); *Phoenix Ins. Co. v. Branch,* 234 So. 2d 396 (Fla. Ct. App. 1970)).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*28]**

*Gay & Taylor v. St. Paul Fire & Marine* **Insurance** *Co.,* n45 also showcased by TIG, is likewise inapposite. The parties in *Gay & Taylor* disputed the extent to which a post-verdict negotiated settlement encompassed non-covered punitive damages. In apportioning the settlement between covered and non-covered damages, the court reasoned that because the settlement amount exceeded the actual damages awarded in the verdict, the parties must have intended the excess to reflect punitive damages. n46 Here, the Court has no basis upon which to make a logical assessment of the jury's purpose when it awarded lump sum damages. And the Court will not engage in unguided speculation with respect to this issue, particularly when the dilemma now confronting TIG is of its own making. n47

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n45 550 F. Supp. 710 (W.D. Okla. 1981).

n46 *Id.* at 717 ("The total settlement paid ... was in excess of the actual damages...and therefore some of the settlement money paid had to be for punitive damages.").

n47 *See Liquor Liability Joint Underwriting Association of Massachusetts v. Hermitage* **Insurance** *Co.,* 419 Mass. 316, 644 N.E. 2d 964, 969 (Mass. 1995)(holding that the insurer was liable for the entire judgment because, in failing to defend the lawsuit, any attempt to apportion the damages would be "speculative and arbitrary."); *Universal Underwriters* **Insurance** *Corp. v. Reynolds,* 129 So. 2d 689, 691 (Fla. Dist. Ct. App. 1961)("From the record it is impossible to determine the particular amount that happened to be in the jury's mind as it returned the verdict with one figure...").

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*29]**

The Court is not satisfied that further proceedings in this case will illuminate a record darkened by ambiguity. The Court already has allowed the parties to supplement the record with any portions of the trial record that might help to explain the jury's verdict. The Court can envision no further *competent* evidence of the jury's intentions beyond the verdict form and the trial transcript. n48 Nor has TIG specifically identified what further evidence it would present in support of its position. n49 While TIG properly preserved its position with respect to coverage throughout the trial process, it can no longer postpone the inevitable conclusion that the jury's verdict cannot be dissected beyond what appears on the face of the verdict sheet because TIG did not, when it had the chance, provide the jury with the opportunity to explain itself further. n50

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n48 Neither party has suggested that it would be appropriate to seek an explanation directly from the jurors who deliberated in the Maryland litigation and the Court would not look favorably upon an application to expand the record in this manner if such an application was made. *See* D.U.R.E. 606(b)("... [HN13] a juror may not testify as to any matter or statement

occurring during the course of the juror's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent or dissent from the verdict...."). **[*30]**

n49 *See* Del. Super. Ct. Civ. R. 56(f)(*HN14*⇌requiring party to state by affidavit the additional information it would seek to develop in discovery to oppose a properly supported motion for summary judgment).

n50 The reservation of rights agreement does not protect TIG. In *Duke,* the insurer defended pursuant to a reservation of rights agreement that included the right to deny coverage. The court made it clear that the insurer's notification of defense under a reservation of rights was not sufficient notification to the insureds that "they should protect their interest by requesting an appropriate verdict." *See Duke,* 468 F.2d at 979.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

As to four of the five plaintiffs, the Court must conclude that the entire compensatory damages award relates to a covered claim and, absent applicable policy **exclusions** not apparent to or otherwise before the Court, coverage should be afforded without further delay.

## VIII.

The jury concluded that the conduct of the Six Flags employees as to Shaniqua Smith involved only intentional acts (assault and battery). Six Flags acknowledges that **[*31]** the Policy provides no coverage for the responsible employees with respect to these claims. At first glance, this conclusion would appear to end the inquiry regarding available coverage for Six Flags as well. But Six Flags urges the Court to look beyond the "expected/intended" **exclusion** in the Policy, arguing that it is not applicable to the corporate insured in this instance. Citing the so-called "separation of insureds" provision of the Policy, n51 Six Flags has argued that it is a separate insured under the Policy and, as such, it is entitled to a separate coverage determination in its own right. The Court agrees, but still finds no further coverage for Six Flags.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n51 The Policy provides, in relevant part:

> "this **insurance** applies:

> > a. As if each Named Insured were the only Named Insured; and
> > b. Separately to each insured against whom claim is made or "suit" is brought."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Six Flags argues that it did not endorse or acquiesce in the intentional tortious behavior of its



employees against the Williams **[*32]** plaintiffs. n52 Accordingly, as to Six Flags, the "bodily injury" sustained by each of the Williams plaintiffs, including Shaniqua Smith, resulted from an "occurrence." And the Policy specifically provides coverage for "bodily injury" caused by an "occurrence." n53 On the other hand, "bodily injur[ies] ... expected or intended from the standpoint of the insured" are excluded from coverage.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n52 The Court will assume, for purposes of this argument, that Six Flags is correct with respect to its assertion that the jury did not find that Six Flags acted intentionally, notwithstanding the jury's affirmative responses to interrogatories # 8, 16, 23, 31 and 39 on the verdict sheet. (D.I. 38, at Ex. A)

n53 The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Oklahoma courts have not construed a "separation of insureds" clause in the context of an employer's claim for coverage for liabilities incurred as a result of the **[*33]** intentional, non-covered acts of employees. Consequently, the Court must "turn to other state court decisions, federal decisions and the general trend and weight of authority in an effort to predict how the Oklahoma Supreme Court would decide the issue." n54 Not surprisingly, the authorities are split on the issue. n55

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n54 _Farmers Alliance Mutual_ **Insurance** _Co. v. Salazar,_ 77 F.3d 1291, 1295 (10th Cir. 1996) (applying **Oklahoma law**)(citation omitted).

n55 _See_ _King v. Dallas Fire_ **Insurance** _Co.,_ 85 S.W.3d 185, 190, 45 Tex. Sup. Ct. J. 1224 (Tex. 2002)(citations omitted).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

One view is espoused in _American Guarantee and Liability_ **Insurance** _Co. v. The 1906 Company._ n56 An employee of the 1906 Company opened a photography studio with company funds. One of the studio's clients discovered that she had been videotaped while changing in the studio's dressing room. Consequently, the employer (1906 Company) was sued on several counts, including negligent entrustment, negligent supervision and negligent hiring. **[*34]** The **insurance** carrier filed a declaratory judgment action to determine its obligations. 1906 Company's liability **insurance** policy provided coverage for "bodily injury" caused by an "occurrence," excluded coverage for intentional acts, and contained a "separation of insureds" clause nearly identical to those found in the TIG Policy. After examining the case law of neighboring jurisdictions, the Fifth Circuit determined:

> where negligence claims against an employer such as negligent hiring, negligent training, and negligent entrustment, are related to and interdependent on the intentional misconduct of an employee, the "ultimate question" for coverage purposes is whether the employee's intentional misconduct itself falls within the

definition of an occurrence. n57

The court went on to deny coverage under the intentional acts **exclusion** because the negligent supervision claims against the employer were "related to and interdependent" upon the employee's acts which, from the employee's perspective, were "expected and intended." n58

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n56 129 F.3d 802 (5th Cir. App. 1997)(applying Mississippi law). **[\*35]**

n57 *Id.*

n58 *Id.*

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Other jurisdictions have taken a different approach. For instance, in *King v. Dallas Fire* **Insurance** *Company,* n59 a victim who was attacked by one of King's employees sued King on various theories, including vicarious liability and negligent hiring, training and supervision. Again, the policy contained a coverage provision for "bodily injury" caused by an "occurrence," an intentional acts **exclusion** and a "separation of insureds" clause nearly identical to those found in the TIG Policy. *King* rejected the "related to and interdependent" analysis endorsed by the Fifth Circuit, and observed: "whether one who contributes to an injury is negligent is an inquiry independent from whether another who directly causes the injury acted intentionally. Essentially, the actor's intent is not imputed to the insured in determining whether there was an occurrence." n60

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n59 85 S.W. 3d 185, 45 Tex. Sup. Ct. J. 1224 (Tex. 2002).

n60 *Id.* at 191-192 (citing *Silverball Amusement v. Utah Home Fire Ins. Co.,* 842 F. Supp. 1151, 1163 (W.D. Ark. 1994)(holding that the employer's negligent acts, rather than the employee's intentional acts, determined the duty to provide coverage)).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*36]**

Although Oklahoma has not confronted this issue directly, the parties have cited to two federal decisions arising from the "Sooner State" that do provide some guidance. n61 Six Flags cites to *Lutheran Benevolent* **Insurance** *Co. v. the National Catholic Risk Retention Group, Inc.,* n62 which involved allegations of sexual abuse by a member of the clergy, as well as a negligent retention claim against the diocese. The policy issued by the insurer to the church provided coverage for "bodily injury" caused by an "occurrence." n63 "Occurrence" was defined as "an accident ... which results in bodily injury ... neither expected nor intended from the standpoint of the insured..." n64 There was no "separation of

insureds" clause. Focusing on the "standpoint of the insured" language, the court held that "occurrence" was meant to encompass ordinary negligence. n65 The court then considered whether the acts of the church constituted "ordinary negligence," as opposed to gross or willful negligence, the latter conduct falling outside of the policy's protection. n66 The court concluded that the negligent retention claim was an "occurrence" because the church did not intend or expect to cause injury **[*37]** to the victim. n67

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n61 Neither the Court nor the parties have found any "on point" authority from an Oklahoma State court.

n62 939 F. Supp. 1506 (N.D. Okla. 1995).

n63 *Id.* at 1510.

n64 *Id.*

n65 *Id.* at 1512.

n66 *Id.*

n67 *Id.* at 1513. ("It follows logically that 'an act of negligence completely void of any intent to inflict injury or damage' may be construed as an 'accident.'")(quoting *Penley v. Gulf Ins. Co.,* 1966 OK 84, 414 P.2d 305, 308-09)(Okla. 1966)).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

TIG claims that *Lutheran Benevolent* was implicitly overruled by *Farmers Alliance Mutual* **Insurance** *Co. v. Salazar,* n68 a case in which the insurer sought a declaratory judgment that it had no duty to defend the insured under a homeowner's policy. After Mrs. Salazar's son was convicted of intentional murder, the victim's family sued Mrs. Salazar for negligent supervision. Her homeowner's policy provided coverage for "bodily injury" caused by an "occurrence, **[*38]** " which was defined as "an accident...which results in bodily injury...neither expected nor intended from the standpoint of the insured." n69 Again, the policy did not contain a "separation of insureds" provision. The events giving rise to the alleged "occurrence" were the focus of the analysis: should they be viewed from the perspective of the son or from the perspective of Mrs. Salazar? n70 In other words, was the actual firing of the bullet the "occurrence," or was it the mother's alleged negligent supervision of her son? How far up the "causal chain" would the court look to isolate the "occurrence?" n71 The court concluded that the relevant inquiry must focus on the "immediately attendant causative circumstances." n72 And, since "intentional murder is not 'an accident,'" the act giving rise to liability was not an "occurrence" under the policy. n73

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n68 77 F.3d 1291.

n69 *Id.*

n70 *Id.* at 1295-1296.

n71 *Id.*

n72 *Id.* at 1296. ("We find that when determining whether a bodily injury was 'caused by an occurrence' the question of whether there was an 'occurrence' should be resolved by focusing on the injury and its immediately attendant causative circumstances."). **[*39]**

n73 *Id.* at 1296-1297.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

*Salazar* is persuasive. Although the court there did not address a "separation of insureds" provision directly, it did undertake an analysis of coverage from the different perspectives of the two insureds under the policy (mother and son). The Court correctly focused on the definitions in the coverage section of the Policy to determine whether the conduct at issue gave rise to or, stated differently, "caused" the "bodily injury" for which coverage was sought. *Salazar* considered the causation question from the perspectives of both mother and son (supervisor and actor).

Complex causation analyses are inherent in the negligence cause of action. For instance, when there is more than one possible proximate cause of a car accident, the fact finder can consider the conduct of different actors along the causal chain to determine whether there is concurrent liability. n74 *Salazar* differed from an ordinary negligence case, however. The sequence of events from which the *Salazar* court had to determine causation was negligent supervision followed by intentional **[*40]** murder. When considering causation starting with the event causing the injury and then working backwards, as *Salazar* directs, the element of intent existing in the "immediately attendant causative circumstances" of the murder stops the causation analysis in its tracks. The intentional act interrupts the causal chain between negligent supervision and injury. Under these circumstances, there can be no "occurrence" because the injury was not caused by an "accident."

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n74 *See Forgues v. Heart of Texas Dodge, Inc.,* 2003 WL 21801424, at *27-29 (Wis. App. 2003)(refusing to apply *Salazar's* "immediately attendant causative circumstance" standard to the "occurrence" analysis in a car accident scenario).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

In the context of this claim for coverage, the "separation of insureds" provision, standing alone, is inert. It must interact with either a coverage provision or **exclusion** in the Policy to animate the coverage analysis. n75 Six Flags urges the Court to link the "separation of insureds" provision **[*41]** to Section 1(b) of the Policy, which provides: "this **insurance**

applies to... 'bodily injury' ... caused by an 'occurrence.'" But Section 1(b) applies only in those instances where the events giving rise to a claim for coverage fit within the definition of "occurrence." "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." n76

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n75 *See* D.I. 22, Ex. C (Policy at Section IV(7)): *"this **insurance** applies:* a. as if each Named Insured were the only Named Insured; and b. separately to each insured against whom claim is made or 'suit' is brought." (emphasis added).

n76 *See id.* (Policy at Section V(12)).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

"When determining whether a bodily injury was 'caused by an occurrence' the question of whether there was an 'occurrence' should be resolved by focusing on the injury and its immediately attendant causative circumstances." n77 The injury occurred at the Six Flags theme park when the Williams plaintiffs were intentionally **[\*42]** assaulted and battered and then falsely imprisoned by Six Flags employees. The incident involving the Williams plaintiffs cannot be described as resulting from "repeated exposure to substantially the same general harmful conditions" because it was an isolated event. Thus, the incident can only be covered if it was an "accident," a term which is not defined in the Policy. In this absence of a definition, "accident" must be given its usual and customary meaning. n78 *HN15* The Oklahoma Supreme Court has interpreted "accident" to mean: "an event from an unknown cause, or an unexpected event from a known cause[;] an unusual event and unexpected result, attending the performance of a usual or necessary act." n79 *HN16* By their very nature, intentional torts are not "accidents." And since the assault and battery of the Williams plaintiffs -- even when considered in the light most favorable to Six Flags -- cannot fit into the definition of "accident," there was no "occurrence" under Section 1(b) of the Policy and coverage is not triggered. n80

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n77 *Salazar,* 77 F.3d at 1296 (citations omitted).

n78 *Id.* at 1297 ("'the words 'accident' and 'accidental' have never acquired any technical meaning in law, and when used in an **insurance** contract, they are to be construed and considered according to common speech and common usage of people generally.'")(quoting *United States Fidelity & Guar. Co. v. Briscoe,* 1951 OK 386, 205 Okla. 618, 239 P.2d 754, 756 (Okla. 1951)). **[\*43]**

n79 *Id.* (citing *Briscoe,* 239 P.2d at 757).

n80 Having concluded that there was no "occurrence," it is not necessary to address TIG's argument that there was no "bodily injury" under the Policy.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**IX.**

Based on the foregoing, the Court concludes the following: (1) Six Flags is not entitled to indemnification for the $ 1.5 million punitive damages award; (2) Six Flags is entitled to indemnification for the $ 750,000 in compensatory damages awarded to Charles Smith, Katrina Smith, Frances Smith and Linda Williams; (3) Six Flags is not entitled to indemnification for the $ 250,000 in compensatory damages awarded to Shaniqua Smith.

Six Flags' motion for summary judgment is **GRANTED in part and DENIED in part.** TIG's cross motion for partial summary judgment is **GRANTED.**

**IT IS SO ORDERED.**

Judge Joseph R. Slights, III

Source: Legal > States Legal - U.S. > Delaware > Cases > **DE State Cases, Combined** ⓘ
Terms: **oklahoma law and insurance and exclusion** (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Monday, August 14, 2006 - 9:22 AM EDT

\* Signal Legend:

● - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
\* Click on any *Shepard's* signal to *Shepardize*® that case.

● LexisNexis®   About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.