**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., ***Plaintiff***<br><br>vs.<br><br>CITY OF NEWARK, et al., ***Defendants***<br><br>and<br><br>CITY OF NEWARK, ***Third-Party Plaintiff***<br><br>vs.<br><br>DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, ***Third-Party Defendants*** | CASE NO. 04-0163-GMS |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, ***Intervenor*** | |

**APPENDIX TO PLAINTIFF'S SUPPLEMENTAL BRIEF OF PLAINTIFF IN SUPPORT OF MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 37(b), (c) and (d)**

**POWELL, TRACHTMAN, LOGAN, CARRLE & LOMBARDO, P.C.**
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
*Attorneys for Plaintiff and Third Party Defendant Donald M. Durkin Contracting*

Dated: September 25, 2006

# TABLE OF CONTENTS


| DOCUMENT | PAGE |
|---|---|
| Issues to be Considered Regarding Durkin's Desire to Complete The Reservoir Project | A-1 |
| Memorandum from Carl F. Luft, City Manager, to Mayor Harold F. Godwin and Members of City Council dated February 5, 2004 | A-2 |
| Order of The Honorable Gregory M. Sleet entered May 9, 2006 | A-4 |
| Documents Withheld by the City | A-7 |
| July 7, 2006 Deposition Transcript of Joseph A. Dombrowski, Jr. (Vol. II) | A-9 |

**ISSUES TO BE CONSIDERED REGARDING**
**DURKIN'S DESIRE TO COMPLETE THE RESERVOIR PROJECT**

- Durkin has repeatedly told us they could not build the reservoir as designed. What has changed to make them think they can now build it as designed? They need to demonstrate their commitment to the project.
- Durkin has not been a reliable partner to this project. They have been off this job for months and have been considered in default of our contract. Why should we trust that they will commit to getting back to work and completing the reservoir project?
- URS should provide its opinion on Durkin completing the project.
- Durkin shall consent to their responsibility for all work or materials at the site that have been damaged as a result of their failure to continue building the project as designed or properly protecting portions of the site.
- Durkin shall consent that all previously mentioned claims for additional fees will not be negotiated and that they have been adequately addressed by URS as being part of the original contract documents. These possible claim items must be clearly identified.
- Durkin shall without reservation agree to specifications as bid and build the reservoir as designed.
- Durkin shall provide URS with their method of temporary controls.
- Durkin must provide and commit to dates for substantial completion and final completion that meet with our approval.
- The surety shall further guarantee its backing of Durkin and their belief that Durkin can complete this project successfully. It should be noted that the last four or five invoices paid to Durkin where picked up and a sense of urgency noted. This has made us suspicious as to whether or not they were having financial difficulties.
- Durkin shall submit a financial statement for review.
- Notification to Council - how will that be made?
- How would the above mentioned points be handled? Would an addendum to the contract be appropriate - setting out these terms?

NEW00146

**CITY OF NEWARK**
Delaware

February 5, 2004

**CONFIDENTIAL**

TO: Mayor Harold F. Godwin
Members of City Council

FROM: Carl F. Luft, City Manager

SUBJ: Reservoir Construction Project

We have a new development regarding the reservoir construction matter. I want to keep you informed as best as possible although exigencies will arise without notice and legal and administrative issues on the case could change daily.

On Tuesday, we filed termination notices with both Durkin Construction Company and the surety. Yesterday, our attorney Paul Cottrell was contacted by Durkin's lawyer who said they did not necessarily intend to stop the job. This surprised us all.

I met earlier today with our team to discuss and decide on a new strategy, if need be. As far as I am concerned, the termination still stands unless the City receives certain significant concessions, assurances and conditions on which we can all agree. Indeed, the actions of the contractor have severely impacted our working relationship and trust.

Nevertheless, since the contractor has asked the City to reconsider, in good faith, we will listen to their concerns. We will, however, let them know that we are on a very tight schedule for this project.

Michele Besso of the News Journal requested a meeting with me to allow for an explanation of our terminating Durkin. This was set up for today, however I have canceled our meeting due to the recent contact. We should wait and see how this recent communication plays out.

We made a good move to terminate Durkin. We are unclear about this change in posture. Perhaps the surety strongly suggested, for business and financial purposes, that Durkin return and complete this job. Bottom line, we intend to continue the termination action until we ascertain more reliable information from the contractor's side of the table.

NEW00144

One note on the media. I strongly suggest any media questions be directed to me or Roger Akin on this matter. Please do not hesitate to contact me if you have any questions.

CFL/mp

c: Roger A. Akin, City Solicitor
Paul Cottrell, Esquire
Carol S. Houck, Administrative Assistant
George L. Sarris, Finance Director
Joseph A. Dombrowski, Water & Wastewater Director

NEW00145

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Donald M. Durkin Contracting, Inc.,

Plaintiff,

v.

City of Newark, *et al.*,

Defendants and Third-Party Plaintiffs,

v.

URS Corporation,

Third-Party Defendant.

C.A. No. 04-163 (GMS)

**ORDER**

Presently before the court in the above-captioned action is a discovery dispute between plaintiff Donald M. Durkin Contracting, Inc. ("Durkin") and defendant City of Newark ("the City"), in which Durkin seeks the production of "all Executive Session meeting minutes and notes taken by City Council members" pertaining to the subject matter of this litigation. (D.I. 113 at 2.) On April 5, 2006, the court ordered the submission the documents in question for *in camera* review. As part of that submission, the court directed the City to "identify the author of each document, the author's relationship to the case, the executive session at which each document was created, the persons in attendance at each session, the asserted source of protection (*i.e.*, privilege or work product) for each document, and any other information relevant to the legal elements of the asserted source of protection." (D.I. 132 at 4.)

After reviewing the documents, it appears that they are in fact the relevant Executive Session minutes authored by the City Secretary, and each document identifies the date of the Executive

Session as well as the persons present. The City contends that all of these documents are protected by Delaware's Freedom of Information Act ("FOIA"), Del. Code Ann. tit. 29, §§ 10001-10005 (2003 & Supp. 2005). FOIA permits the City to withhold Executive Session minutes from "public disclosure so long as public disclosure would defeat the lawful purpose for the executive session, but no longer." § 10004(f). Indeed, the Executive Sessions were called for a lawful purpose, i.e., to discuss the City's strategy for potential litigation against Durkin. § 10004(b)(4). It goes without saying that the City's position in the litigation would be compromised by revealing the substance of its strategy discussions. Therefore, because "public disclosure would defeat the lawful purpose for the executive session," FOIA permits the City to withhold the minutes.

Nevertheless, Delaware's FOIA laws do not alleviate the City of its discovery obligations in federal court. Unless the documents are privileged, the City must produce them.[1] Because this is a case brought pursuant to the court's diversity jurisdiction, the Federal Rules of Evidence provide:

> [I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501. Delaware's attorney-client privilege rule reads as follows:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between the client or the client's representative and the client's lawyer or the lawyer's representative, (2) between the lawyer and the lawyer's representative, (3) by the client or the client's representative or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest, (4) between representatives of the client or between the client and a representative of the

[1] In its submission, the City identifies only FOIA and attorney-client privilege as the sources of protection for the minutes. Because the court directed the City to explicitly set forth the source of protection for each document, any protection under the work product doctrine has been waived.

client, or (5) among lawyers and their representatives representing the same client.

D.R.E. § 502(b). Given that standard, the attorney-client privilege clearly protects minutes from Executive Sessions conducted in the absence of third persons and during which litigation (or imminent litigation) with Durkin was discussed with counsel (either the City Solicitor or the City's trial counsel). Therefore, the City need not produce minutes from the following Executive Sessions: November 24, 2003, February 23, 2004, May 24, 2004, July 12, 2004, September 13, 2004, September 27, 2004, October 11, 2004, October 25, 2004, November 8, 2004, and January 24, 2005. However, the minutes from the Executive Session of February 2, 2004 are not privileged because a representative of third-party defendant URS Corporation ("URS") was present. Likewise, a portion of the minutes from the Executive Session of April 26, 2004 is not privileged because URS representatives were present from 10:22 p.m. until 11:45 p.m. Lastly, regarding the minutes from the Executive Session of June 14, 2004, it appears that a Captain Conway was present from 9:28 p.m. until 10:47 p.m. The City provides no explanation regarding the relationship between Captain Conway and the City. Therefore, the minutes from that portion of the June 14 Executive Session are not privileged.

IT IS HEREBY ORDERED THAT:

1. The Executive Session minutes from February 2, 2004 be PRODUCED in full; and

2. The Executive Session minutes from April 26, 2004 and June 14, 2004 be PRODUCED in part as described above.

Dated: May 9, 2006

UNITED STATES DISTRICT JUDGE

FILED
MAY 9 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

# DOCUMENTS WITHHELD BY THE CITY

| Bates No. | Description | Date |
|---|---|---|
| NEW000105 | Luft's handwritten notes of Executive Session | 2/25/04 |
| NEW00151 | Luft's handwritten notes of the Executive Session | 2/2/04 |
| NEW00207 | Correspondence to Luft from Kalbacher re: executive session | 1/26/04 |
| NEW00225 | Correspondence to Godwin and Members of Council marked "Confidential" re: contract dispute (duplicate) | 1/23/04 |
| NEW00226-NEW00227 | Correspondence to Luft from Houck re: surety's engineer | 1/23/04 |
| NEW00245 | Correspondence from TCL to Houck cc: Akin, Voeller | 1/20/04 |
| NEW00249 | Correspondence to Houck, Dombrowski and Sarris from Luft re: budget for URS services | 1/6/04 |
| NEW00269-NEW00269A | Draft letter by Luft to Council and Mayor with notes | 5/24/04 |
| NEW00270-NEW00271 | Email from Luft to Senneway re: recommendation for expert for reservoir litigation | 3/29/04 |
| NEW00281 | Memo from Carol to Carl regarding installation of "no trespassing signs" at site | 5/13/04 |
| NEW00282-NEW00283 | Email from Voeller to Houck cc: TCL re: attached email from Linter | 5/13/04 |
| NEW00338 | Correspondence to Funk and Council from Luft re: info requested during executive session | 4/27/04 |

| Bates No. | Description | Date |
|---|---|---|
| NEW00346 | Construction Project Report prepared by George Sarris re: budget for all capital projects | 3/31/04 |
| NEW00350-NEW00351 | Correspondence to Semple from Akin re: Newark City Council Meeting – April 26, 2004 cc: Luft, Houck, Dombrowski, Sarris, Cottrell | 4/20/04 |
| NEW00461-NEW00462 | Luft's handwritten notes Executive Session | 3/27/04 |
| NEW00581 | Correspondence to Houck from Dombrowski re: Durkin's strategy | 11/21/03 |
| NEW03863-NEW03864 | Carol's handwritten notes re: preliminary calculations of amounts due subcontractor | 7/12/04 |
| NEW10767-NEW10785 | Draft report from Calabria to TCL with Paul Cottrell's handwritten notes | 7/8/04 |
| NEW10786-NEW10804 | Draft report from Calabria to TCL with Vicky Petrone's handwritten notes | 7/8/04 |
| | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - -

DONALD M. DURKIN : CIVIL ACTION
CONTRACTING, INC. :
:
vs. :
:
CITY OF NEWARK, :
HAROLD F. GODWIN, Mayor, :
City of Newark, Delaware :
JOHN H. FARRELL, IV, :
Council Member, City of :
Newark, Delaware :
JERRY CLIFTON, :
Council Member, City of :
Newark, Delaware :
KARL G. KALBACHER, :
Council Member, City of :
Newark, Delaware :
DAVID J. ATHEY, :
Council Member, City of :
Newark, Delaware :
FRANK J. OSBORNE, JR. :
Council Member, City of :
Newark, Delaware :
CHRISTINA REWA, :
Council Member, City of :
Newark, Delaware :
and :
URS CORPORATION :
:
vs. :
:
FEDERAL INSURANCE COMPANY : NO. 04-163 GMS

- - -

DEPOSITION OF JOSEPH A. DOMBROWSKI, JR.
VOLUME II

- - -



Friday, July 7, 2006
Commencing at 9:10 a.m.

- - -

Akin & Herron, P.A.
1220 North Market Street, Suite 300
Wilmington, Delaware

- - -

COUNSEL APPEARED AS FOLLOWS:

POWELL, TRACHTMAN, LOGAN, CARRLE, BOWMAN & LOMBARDO, P.C.
BY: DAVID T. BOLGER, ESQ.
475 Allendale Road
King of Prussia, PA 19406

for the Plaintiff Donald M. Durking Contracting, Inc.

TIGHE, COTTRELL & LOGAN, P.A.
BY: VICTORIA K. PETRONE, ESQ.
First Federal Plaza, Suite 500
Wilmington, DE 19801
for the Defendants City of Newark, Godwin, Farrell, Clifton, Kalbacher, Athey, Osborne, and Rewa

SEITZ, VAN OGTROP & GREEN, P.A.
BY: JAMES S. GREEN, ESQ.
222 Delaware Avenue, Suite 1500
Wilmington, DE 19899
for the Defendant URS Corporation



COUNSEL APPEARED AS FOLLOWS: (Continued)

STRADLEY, RONON, STEVENS & YOUNG, LLP
BY: PATRICK R. KINGSLEY, ESQ.
2600 One Commerce Square
Philadelphia, PA 19103
for the Third-Party Defendant Federal Insurance Company

- - -

ALSO PRESENT:

ROGER A. AKIN, ESQ.
City Solicitor's Office
City of Newark

JIM DURKIN

- - -



INDEX


| Witness Name | Page |
|---|---|
| JOSEPH A. DOMBROWSKI, JR. | |
| By Mr. Kingsley | 329, 438, 473 |
| By Mr. Bolger | 389, 459, 488, 491 |
| By Mr. Green | 420, 490 |


- - -

EXHIBITS


| No. | Description | Page |
|---|---|---|
| Dombrowski 50 | Excerpt of testimony, Page 93 | 341 |
| Dombrowski 51 | Memorandum, 4/15/03, to Godwin and City Council from Luft | 348 |
| Dombrowski 52 | Letter, 10/22/03, to Durkin from Voeller and Kula | 360 |
| Dombrowski 53 | Letter, 10/29/03, to Voeller from Durkin | 366 |
| Dombrowski 54 | Letter of Transmittal, 1/23/04, to Dombrowski from Voeller, with attachments | 466 |


- - -

(NOTE: No documents marked Dombrowski Exhibits 12 through 49 inclusive.)

- - -

JOSEPH A. DOMBROWSKI, JR.

A. That's correct.

Q. You don't recall there being any discussions concerning the liner at this time?

A. Well, no, I do not, because the liner was down and it was being made and orders were placed and it was coming. But these are the original drawings of the different type liners we were thinking of back in 2000-2001.

Q. So you don't recall any discussions about the liner design at all in January 2004?

A. Not of the liner design. We were beyond that.

Q. Let me ask you, Mr. Dombrowski: When you were still in your position as director of the water and wastewater department, what was your policy on keeping records within your office? And by that I mean let's start with electronic mail communications. Did you ever print out e-mails and keep them in a separate file somewhere?

A. They'd be in the file cabinet; yes.

Q. And the file cabinet was in the office?

A. In the water department office, right.

Q. So was it at least your personal policy



JOSEPH A. DOMBROWSKI, JR.

to print out e-mails that you received and put them in the file cabinet?

A. Not all of them, no.

Q. How would you decide which ones to keep?

A. Whichever one had some relevance.

Q. What about, for example, documents like this that would have been transmitted to you? And by that I am saying the last exhibit, which would be Dombrowski 54.

A. Correct.

Q. Would you have a separate folder for correspondence received from URS, for example? Did you break it down in that way?

A. Only in prebid, bid, and the massive drawer for construction.

Q. Okay. The massive drawer for construction, was that in the same file cabinet?

A. Yes.

Q. Was there just one file cabinet or more than one?

A. I think I rolled over into a box. So it was a file drawer and a box.

Q. And that file drawer and box would be



JOSEPH A. DOMBROWSKI, JR.

solely dedicated to this project?

A. Correct.

Q. Were all the records that were coming in relating to this project coming in to your office that were being sent to you?

A. Not particularly. Anything related to the boilerplate, the front of the document, would go to Carol Houck. Anything related to engineering we'd all get copies.

Q. And anything specifically addressed to you, whether it was a cc. or addressed to you personally and directly, as in Dombrowski 54, would go directly into your office?

A. That's correct.

Q. And you would make a decision whether or not it should be placed for filing?

A. A paper copy would be put in the file or the box.

Q. And that was -- I'm sorry; go ahead.

A. An electronic one would stay on the computer.

Q. Did you ever delete incoming messages or outgoing messages from your e-mail system?

A. Oh, regularly.



JOSEPH A. DOMBROWSKI, JR.

Q. Did you have your own personal policy of whether or not you kept a certain segment of messages?

A. If I felt like I needed to refer to it later, I would have kept it. Otherwise, it would be deleted.

Q. Did you create any little subfolders within your e-mail for specific saved messages that you wanted to keep longer?

A. Let's see.

Excel, I did, but e-mail? I think they just all stayed in my in-box.

Q. So unless you made a conscious decision to delete them, they would have still been in your in-box?

A. That's correct.

Q. At the time you left your position as the head of the water and wastewater department, did you purge the messages in your in-box?

A. No. They all just stayed there.

MR. BOLGER: That's all I have, sir.

MR. KINGSLEY: I just have one followup question.