## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* | |
| vs. | |
| CITY OF NEWARK, et al., *Defendants* | CASE NO. 04-0163-GMS |
| and | |
| CITY OF NEWARK, *Third-Party Plaintiff* | |
| vs. | |
| DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Intervenor* | |

## FURTHER SUPPLEMENTAL BRIEF OF PLAINTIFF
## IN SUPPORT OF MOTION
## FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 37(b), (c) and (d)

POWELL, TRACHTMAN, LOGAN,
CARRLE & LOMBARDO, P.C.
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
*Attorneys for Plaintiff and Third Party
Defendant Donald M. Durkin Contracting*

Dated: September 25, 2006

KOP:350749v2 3514-04

## TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF PROCEEDINGS ..................................................1

II.   SUMMARY OF ARGUMENT ...................................................................1

III.  CONCISE STATEMENT OF FACTS ...........................................................1

IV.   ARGUMENT ........................................................................................1

     A.    The Recently "Found" Documents Provide Additional Support For
         Durkin's Position that it is Entitled to Have Severe Sanctions Imposed
         Against the City .................................................................................1

V.    CONCLUSION AND RELIEF SOUGHT .......................................................4

## I.    NATURE AND STAGE OF PROCEEDINGS

Plaintiff and Third Party Defendant Donald M. Durkin Contracting, Inc. ("Durkin") filed an action against Defendant City of Newark and members of City Council (collectively "the City") arising out of the City's improper termination of Durkin's Contract for default.  Durkin files this Further Supplemental Brief in support of its Motion for sanctions under Federal Rule of Civil Procedure 37(b), (c) and (d).

## II.    SUMMARY OF ARGUMENT

Additional information has come to Durkin's attention after it filed its Supplemental Brief in support of its Motion for sanctions under Federal Rule of Civil Procedure 37(b), (c) and (d) as requested by the Court.  The additional documents produced by the City and identified on the conference call of today's date with the Court as the "recently found documents" provide further support for Durkin's proposition that it is entitled to have severe sanctions imposed against the City under Rule 37(b), (c) and (d).

## III.    CONCISE STATEMENT OF FACTS

Durkin incorporates the Certification of Paul Logan, Esquire and its Opening Brief (D.I. 247) and its Supplemental Brief in support of its Motion for sanctions under Federal Rule of Civil Procedure 37(b), (c) and (d) (D.I. 261) previously filed with the Court.

## IV.    ARGUMENT

**A.    The Recently "Found" Documents Provide Additional Support For Durkin's Position that it is Entitled to Have Severe Sanctions Imposed Against the City**

Subsequent to filing its Supplemental Brief in Support of its Motion for Sanctions, counsel had the opportunity to review the recently "found" documents identified by the City in the conference call with the Court today.  Based on that review, Durkin is compelled to bring one (1) of those documents to the Court's attention by way of this Further Supplemental Brief.  That

- 1 -

document is the City's Rule 30(b)(6) designee, Carol Houck's, notes from a conference call with URS personnel dated September 11, 2003 – which is just several days after the Zone IV failure and one (1) day after Durkin's notice of probable design problems as required to be given under Section 3.3.2 of the Contract.

First and foremost, the proposition that this document was found in a file containing design documents from the year 2000 is beyond all bounds of reason, logic and candor. There is no reason whatsoever for Ms. Houck or anyone else at the City to be canvassing its circa 2000 files for purposes of the claims and defenses it has asserted in this litigation, and certainly not for a meeting with counsel on the eve of trial. It is, however, far more plausible that Ms. Houck was intent on using this document to "refresh her recollection" on specific conversations she believed would provide substantial benefit to the City's position at trial, and that this document was sufficiently similar in character, content and date of origin to other recently produced non-privileged documents—especially those withheld under the mantle of "joint defense agreement"—that its "discovery" and production was neither coincidental nor inadvertent. What it conclusively establishes is that the City's repeated representations that it has made a diligent and thorough search of its records, and that all relevant and discoverable documents have been disclosed and produced, is entitled to no weight at all.

The document of most significance and moment in today's production contains Ms. Houck's handwritten notes from a phone conference with Joe Dombrowski, and URS personnel Jill Voeller and Mark Prouty—and thus would have been extremely probative and useful in each of their deposition examinations, as well as the City Manager and members of City Council. Written one day after the City received Durkin's initial notice of potential design problems in the

- 2 -

Zone IV embankment, it is a catalogue of the issues and commentary in that conference call, but the dialogue carried a sinister tone and impugning of Durkin's motives and intentions:

- "Durkin doesn't know what he's doing." Mark P.

- *"Doesn't know if it's Durkin who will be finishing the job."* (emphasis supplied)

- Does he want to get thrown off the job?

- Mark P. "Got a feeling they are running out of $."

(App. A1-A3).

The notes also refer to a conversation regarding the bid documents and slope protection, and confirm that armoring the side slopes and other alternatives were then raised as potential measures to be considered to address the problems in the field.

Finally, there was a discussion regarding a time extension due to weather and Durkin's inability to work due to the weather.  This was characterized by one of the participants on the call as an "unforeseen condition" (which under the Contract the City would have to pay) and is consistent with the contention by Durkin that the claims submitted by Durkin were one of the driving factors in the decision to terminate Durkin at the Executive Session Council Meeting on February 2, 2004.  (App. A2).  At the Executive Session, litigation counsel Mr. Cottrell indicated that (1) "the dispute dealt with the fact that [Durkin] was losing money on the project" and (2) "the only way [Durkin] could make money was through change orders."  (App. A5).

The recent productions by the City have confirmed a case-long purposeful pattern and policy of selective disclosure designed to shield from view those internally generated materials which bear directly upon the motives and means by which the City terminated the Contract with Durkin.  While there have been excuses tendered for the improper withholdings, none have risen to the level of excusable conduct, and yet the City persists in steadfast objection to any form of

- 3 -

sanction for these abusive practices.  Not only is Durkin faced with the unreasonable perils of taking discovery during the trial proceedings, the City witnesses clearly gain the advantage of concealed superior knowledge from any documents that remain undisclosed.  On the evening before trial, Durkin is confronted with the impossible and fundamentally unfair choice of proceeding with its case without having the materials to which it is entitled, and the City taking full benefit and advantage of its misconduct in pursuing its claims for breach of contract against Durkin.  At this juncture, the only appropriate measures of relief for Durkin is for the Court to apply the admitted harsh, but eminently equitable sanctions listed below in order to provide redress and relief for the extreme continuing prejudice created by the City's conduct.

## V.    CONCLUSION AND RELIEF SOUGHT

For the reasons set forth above, Defendant Donald M. Durkin Contracting, Inc. respectfully requests that this Court grant its Motion for Sanctions Under Federal Rule of Civil Procedure 37(b), (c) and (d) either: (1) enter an Order of a judgment by default against the City on the claims by Durkin, dismissing the City Counterclaim against Durkin, and award Durkin its attorney's fees and costs; or in the alternative (2) dismissing the City's Counterclaim against Durkin, prohibit the City from calling Houck, Luft, any Member of City Council, Dombrowski and any other person (including URS personnel) who authored or were recipients on any documents that the City withheld from discovery without proper basis, and award Durkin its attorney's fees and costs, together with any such additional relief as this Court deems necessary or appropriate.

- 4 -

**POWELL, TRACHTMAN, LOGAN,
CARRLE & LOMBARDO, P.C.**

By: /s/ Paul A. Logan
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
*Attorneys for Plaintiff and Third Party
Defendant Donald M. Durkin Contracting*

Dated:  September 25, 2006

- 5 -