IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| DONALD M. DURKIN CONTRACTING, INC., | ) ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | |
| CITY OF NEWARK, et al., | ) ) | |
| Defendants | ) ) | |
| and | ) ) | C.A. No. 04-163 GMS |
| CITY OF NEWARK, et al., | ) ) | |
| Third-Party Plaintiff | ) ) | |
| v. | ) ) | |
| DONALD M. DURKIN CONTRACTING, INC., AND FEDERAL INSURANCE COMPANY, | ) ) ) ) | |
| Third-Party Defendants | ) ) | |

**<u>ORDER</u>**

Presently before the court is plaintiff's motion for sanctions under Rule 37 of the Federal Rules of Civil Procedure due to alleged abuses of the discovery process and violations of the court's orders. The plaintiff has set forth a number of bases for its motion and for its requested relief.

I.   INTRODUCTION

The court agrees that the City of Newark ("City") has violated its discovery obligations. As a sanction for these transgressions, Durkin requests that the Court either (1) enter an Order of a judgment by default against the City on the claims by Durkin, dismiss the City Counterclaim against Durkin, and award Durkin its attorney's fees and costs; or in the alternative (2) dismiss the City's Counterclaim against Durkin, prohibit the City from calling Houck, Luft, any Member of City Council, Dombrowski and any other person (including URS personnel) who authored or were recipients on any documents that the City withheld from discovery without proper basis, and award Durkin its attorney's fees and costs.

II.   DISCUSSION

For any sanction that results in a dismissal of a party's claim, the court must consider and balance the factors set forth in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). Those factors include: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Id.*

A. The Extent of the City's Personal Responsibility

While the record contains a number of examples of how the City bears responsibility for the failure to retain or timely produce responsive documents, the court need only point to the City's production of documents as recent as Monday, September

25, 2006–the day the trial was originally scheduled to begin. Counsel for the City informed the court and at the same time, counsel for Durkin, on a teleconference the morning of September 25, 2006, that Ms. Houck–the city's 30(b)(6) designee–just "found" additional documents and brought those documents to counsel's attention on the evening of Friday, September 22nd. By the City's own admission, many of these documents were responsive and relevant to the litigation in that "11 were duplicates of documents which have been produced already." (D.I. 266 at 2.) As to how Ms. Houck just "found" the documents, it is unclear why Ms. Houck looked to this "RFP Reservoir" folder to prepare for trial but did not go to this source in responding to the document requests propounded by Durkin and Federal in this matter when discovery began. If not evidence of bad faith on the part of the City, this revelation is at least indicative of gross negligence. The City had an obligation to make an earnest search for documents to comply with the court's scheduling order and as required under the Federal Rules of Civil Procedure. The City's speculative suggestion that the documents were "misfiled" doesn't change the fact that somehow this information was discovered in preparing for trial but not discovered during the course of discovery. The court concludes that the City bears personal responsibility for the failure to timely produce responsive documents.

### B. Prejudice to Durkin

Durkin argues that at least one document "found" by Ms. Houck and first produced to Durkin the day before trial would have been instrumental in the depositions of several witnesses and relevant to claims that are still at issue for trial. Durkin argues that it has been handicapped by the City's recent production of other documents, produced a week before trial, and which the City has not asserted a defensible basis for

3

withholding. These documents, according to Durkin, are relevant and go to its ability to defend itself against the City's counterclaim.

For example, the City recently produced an undated memorandum, apparently authored by Ms. Carol Houck, entitled "Issues to Be Considered Regarding Durkin's Desire to Complete the Reservoir Project." Ms. Houck, in her affidavit of September 25, 2006, affirms that she wrote the document after Durkin was terminated. Accepting Ms. Houck's statements as true, the City's reasons for withholding the document are not supported by law. The City does not claim attorney-client privilege as its justification for failing to produce the document. It is the court's understanding, from Durkin, that the City withheld the document on the basis of work product. (D.I. 261 at 2.) The City claims to have withheld the document because it was written after the contract termination and because litigation was contemplated. (D.I. 266 at 3.) The work product doctrine is designed to protect the mental impressions of **an attorney**. *See generally Hickman v. Taylor*, 329 U.S. 495 (1947); *see also* FED. R. CIV. P. 26(b)3). Regardless of whether litigation was contemplated, without the element that Ms. Houck was acting at the direction of counsel, Ms. Houck's "thoughts about Durkin returning to complete the reservoir project" (D.I. 266, Houck Affidavit at ¶ 9) are not afforded the protection. *Sterling Drug, Inc. v. Harris,* 488 F. Supp. 1019, 1026 (S.D.N.Y. 1980) (holding that because document was prepared in contemplation of litigation was not enough for the party asserting the privilege to show document was protected as work product, but that it "still had to show that documents were prepared by or at request of an attorney to prepare for the upcoming litigation"). Despite numerous opportunities for the City to provide the court a nexus between its attorneys' preparation for litigation and Ms. Houck's admitted

4

"thoughts about Durkin," the City provides nothing more than a bald and unsupported assertion that it was under no obligation to produce the document until ordered to do so by the court. Absent evidence that this document is afforded protection under the work product doctrine, the court concludes that this document should have been produced, upon the City's initial document review. *See, e.g. International Paper Co. v. Fiberboard Corp.*, 63 F.R.D. 88, 94 (D. Del. 1974) ("A proper claim of privilege requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality. Unless the affidavit is precise to bring the document within the rule, the Court has no basis on which to weigh the applicability of the claim of privilege. An improperly asserted claim of privilege is no claim of privilege at all.").

Durkin argues that, had the undated memorandum been produced, Durkin would have questioned several witnesses and that discovery regarding the document could potentially have led to other discoverable material or additional witnesses. Durkin argues that the full extent of the prejudice and harm to it is and remains unknown. The court concludes that Durkin has shown that it has been prejudiced by the City's belated production on the eve of trial. The City's argument that it can't be sanctioned for producing documents that came within the scope of the court's ruling on waiver is not tenable when it is clear that some of the documents produced aren't subject to waiver because they were never privileged or properly withheld in the first place.

### C. History of Dilatoriness

In a certification of counsel pursuant to Fed. R. Civ. P. 37(d), Mr. Logan, counsel for Durkin, accounts a series of communications, from September 2005 through at least February 2006, that demonstrate Durkin's attempt to urge the City to comply with its discovery obligations. (D.I. 248, A-1.) The correspondence, attached as exhibits to Mr. Logan's certification, shows that the scheduling of depositions was frustrated by delays in the City's document production. The correspondence also shows that Durkin raised the perceived deficiencies in the City's document production as well as what appeared, and has now been adjudged, to be improper assertions of privilege in its attempt to seek production of responsive documents from the City. The fact that many of these documents, months later and on the eve of trial, continue to trickle in to plaintiff and the record only support a conclusion that there has been a pattern of delay on the part of the City.

### D. Willful and Bad Faith Conduct

Like the undated Houck memorandum discussed above, Durkin cites to other recently produced documents that the City claims to be producing only after a finding of waiver, but which should have never been withheld in the first instance. As another example, the City withheld, and just recently produced, a January 20, 2004 fax cover from attorney Vicky Petrone to Ms. Carol Houck, copying Jill Voeller of URS. The City asserts that this document was withheld pursuant to a joint defense privilege. The court notes that the plaintiff first filed its complaint in March 2004. The City proffers no authority as to how a joint defense privilege could have existed prior to this litigation. Further, the City's representations as to the nature of any joint defense are insufficient to

establish that any joint defense privilege attached at the time of Ms. Petrone's communication to her client and third-party URS. The City has asserted no other basis for withholding this document nor could they. Albeit a communication by an attorney to a client, the City, quite properly, doesn't raise the attorney-client privilege in its argument. The court suspects that the City recognizes that this privilege was waived by the simultaneous transmission to URS. This document, upon the City's initial document review, should have been produced to Durkin–irrespective of any later ruling of the court. The court concludes that the wrongful withholding of documents without a tenable basis of privilege or work product is evidence of the City's bad faith conduct.

In addition, the substance of Ms. Petrone's fax cover is further evidence of the City's bad faith. In the comment section of the fax cover, dated January 20, 2004, Ms. Petrone states:

> Please find the following report from the Surety and the independent engineer.
> I direct your attention to Paragraph 3 of the letter from the Surety, in which she states that the Surety is under no obligation to take action. This is correct. The Surety's obligation arises after 1) the Surety is notified regarding a default and 2) after meeting with the Surety, declaring a default and terminating the contract. You satisfied step 1 in November. *We have not formally taken step 2* since we were waiting for this report. On Thursday we can discuss this option.

(D.I. 253, App., Part 2 at A-120) (emphasis added).

The content, that is, Ms. Petrone's representations to her client and URS, are contrary to the City's pleadings, arguments and requests of the court. Indeed, juxtaposing Ms. Petrone's communication prior to litigation with the City's representations during litigation brings the City dangerously close to a Rule 11 violation.

*See* FED. R. CIV. P. 11(b)(3).[1]  In Ms. Petrone's own words, as of January 20, 2004, the City had not formally taken the step of declaring Durkin in default and terminating the contract.  This contradicts statements and arguments made by the City suggesting otherwise.  Among the City's representations, the court notes the following[2]:

- "On November 21, 2003 the City gave written notice of *its intent to terminate the Contract.*"  (D.I. 7, Counterclaim at ¶ 19.)

- "The City declared Durkin in default and formally terminated Durkin's right to complete the Contract on February 3, 2004, not earlier than twenty days after *notice was provided on November 21, 2003*, in accordance with Paragraph 3.2 of the Bond."  (D.I. 7, Third Party Claim at ¶9.)

- "The opportunity for Durkin to bring a declaratory judgment action was during the 73 days between *the November 21, 2003, Notice of intention to terminate*, and the February 2, 2004, resolution to terminate."  (D.I. 21 at 18.)

- "After Durkin was notified on November 20 *regarding its default* and again on November 21 with notice to its surety, Durkin did not perform any liner work." (D.I. 45 at 17.)

---

[1] "**Representations to Court**.  By presenting to the court ... a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, ... (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery...."

[2] Emphasis has been added by the court.

- "Newark contends that a *letter sent November 21, 2003 satisfied the seven-day requirement*, and that even if it did not, the requirement was met by another letter sent February 4 providing an additional seven days." (D.I. 172 at 1.)

- "November 21, 2003: *Newark advises Durkin and its surety of the default.*" (D.I. 260, Att. 1 at 2.)

These statements, while not 180-degree reversals of Ms. Petrone's January 2004 representations, cast doubt as to whether there was evidentiary support, within the meaning of Rule 11, for the proposition that the November 21, 2003 letter could satisfy the notice requirement of the contract when, in the City's attorneys' own view, the same letter had not yet even formally declared Durkin in default.[3] The City, when making its determination of whether to withhold or to produce, had to have recognized that the substance of the communication went to issues central in the case. The court concludes that the City's withholding of this document, without a proper basis to do so, combined with the potentially issue-dispositive nature of its content, demonstrates bad faith.

### E. Effectiveness of Alternative Sanctions

The court recognizes that there is no substantial justification for the City's failure to meet its discovery obligations and acknowledges that there may be additional documents that should have been produced but were not. The court, however, is not persuaded that the sanction of default judgment is appropriate here. The court is not

---

[3] Rule 11 evidentiary support may be further lacking at the time the City files its Motion for Reconsideration of the court's September 22nd Order, in light of the depositions of Carl Luft and Joseph Dombrowski, Jr. (D.I. 254). *See* FED. R. CIV. P. 11(b)(2).

prepared to conclude that the production has been so deficient as to warrant the extreme sanction of ordering the entry of a default judgment, or the plaintiff's alternative request that is effectively tantamount to a default judgment.

Moreover, the request to limit testimony of certain witnesses will require the court to micro-manage the testimony, engage in innumerable sidebars to determine the boundaries of testimony, and would likely lengthen the trial significantly.  This alternative is simply unworkable.

Continuing discovery or postponing trial, in the view of the plaintiff, would only exacerbate the harm to Durkin as it would further delay the administration of justice, require Durkin to conduct discovery in the midst of a trial, or essentially allow the misdeeds of the City to be cured without repercussion or deterrence.

An adverse inference instruction also falls short in addressing Durkin's legitimate concern that it has been deprived of the benefit of material knowledge and facts to which it was entitled so as to enable Durkin to effectively prosecute and defend the claims in the case because of the City's belated production and Durkin's lost opportunity to conduct further discovery on topics raised in the recent productions.

The court believes that the City's transgressions place Durkin at a significant disadvantage–most particularly in its ability to defend itself against the City's counterclaim for breach of contract.

### F.  Meritoriousness of Claim or Defense

The court acknowledges that the City's counterclaim for breach of contract is meritorious.  Indeed, the same claims successfully survived Durkin's motion for summary judgment.  *See Poulis*, 747 F.2d 869-870 ("A claim, or defense, will be deemed

meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense."). The court, however, need not conclude that every *Poulis* factor favors the sanction of dismissal. *See Ware v. Rodale Press Inc.*, 322 F.3d 218, 221 (3d Cir. 2003) ("Each factor need not be satisfied for the trial court to dismiss a claim.").

### III.  CONCLUSION

Having determined that sanctions are warranted, the court concludes that the great weight of the *Poulis* factors support sanctions in the form of exclusion and dismissal. The court will, therefore, dismiss the City's counterclaim (D.I. 7, Counterclaim at ¶25) with prejudice and will preclude the City from relying on its affirmative defense to Durkin's Breach of Contract Claim, Count VII(b). (D.I. 7, Affirmative Defenses at ¶ 3). The court also awards Durkin its attorney's fees and costs related to the motion practice that gave rise to this court order (D.I. 246-253; 261-264).

Dated: September 28, 2006            /S/ Gregory M. Sleet
                                     UNITED STATES DISTRICT JUDGE

11