# IN THE UNITED STATES DISTRICT COURT DELAWARE
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., ) | |
| ) | C.A. No. 04-0163 GMS |
| Plaintiff, ) | |
| ) | JURY TRIAL DEMANDED |
| v. ) | |
| ) | |
| CITY OF NEWARK, ET AL., ) | |
| ) | |
| Defendants/ ) | |
| Third Party Plaintiffs ) | |
| ) | |
| v. ) | |
| ) | |
| FEDERAL INSURANCE COMPANY, ) | |
| ) | |
| Third-Party Defendant. ) | |
| ------------------------------------------------------------- | |
| CITY OF NEWARK, ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| URS CORPORATION, ) | |
| ) | |
| Third-Party Defendant. ) | |

## URS CORPORATION'S MEMORANDUM
## IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW

### STATEMENT OF FACTS

On March 16, 2004, Donald M. Durkin Contracting, Inc. ("Durkin") filed suit against the Newark and URS. (D.I. 1)(the "Complaint")  All of Durkin's claims against URS sounded in intentional tort.  Durkin never asserted a professional negligence claim against URS and never identified any standard of care expert.  In its Answer, Newark never asserted a crossclaim against URS.  See Newark's Answer and Counterclaim.  (D.I.

7) Third-Party Defendant Federal Insurance Co. ("Federal") asserted no claims against URS and never identified a standard of care expert. On September 8, 2005 all parties voluntarily dismissed URS from the case. (D.I. 93).

On October 7, 2005, Newark filed a Third-Party Complaint against URS (D.I. 98) alleging that:

> "in the event that a judgment should be rendered against Newark related to the design and/or termination, then Newark would be entitled to contribution, indemnification, or a pro-rata determination of the respective shares of liability from URS pursuant to the contract, the provisions of Delaware's Uniform Contribution Among Tortfeasors Law, 10 Del. C. § 6301, common law or any other applicable statute."

On December 6, 2005, URS filed a Motion to Dismiss, or, in the Alternative, to Stay Newark's Third-Party Complaint. (D.I. 100) On April 5, 2006, the Court denied URS's Motion. (D.I. 132) On June 16, 2006, URS filed an Answer denying Newark's third-party claims, raising several affirmative defenses, and asserting a counterclaim for monies which it claims Newark owes it. (D.I. 142) On August 8, 2006, Newark answered URS's counterclaim, denying liability. (D.I. 144) On September 22, 2006, the Court entered summary judgment in favor of Durkin on its breach of contract claim against Newark, ruling that Newark breached its contract with Durkin by failing to follow the necessary termination procedures of their contract. Newark failed to provide seven days notice of its intent to terminate as required by §15.2.4 of the general conditions of the contract between Newark and Durkin. (D.I. 257) The Court's grant of summary judgment on Durkin's wrongful termination claim left Durkin's intentional tort claims as its only remaining claims for trial. Those claims are: Violation of Civil Rights Pursuant to 42 U.S.C. §1983 (Count I); Intentional Interference with Existing and Prospective Contracts (Count II); Defamation (Count III); Conversion (Count IV); Fraud and

Misrepresentation (Count V); and Conspiracy (Count VI) (See Complaint. (D.I. 1). Trial began on September 26, 2006.

URS and Newark entered into a written Agreement for Professional Services dated October 25, 2000 and executed on November 3, 2000 (the "Design Agreement"). (URS Trial Exhibit 19)

The Design Agreement contains the following liability limitation provisions:

> **ARTICLE IV – Responsibility for Others**.  URS shall be responsible to Client (City of Newark) for URS Services and the services of its contractors.  URS shall not be responsible for the acts or omissions of other parties engaged by Client nor for their construction means, methods, techniques, sequences or procedures…
>
> * * *
>
> **ARTICLE V – Risk Allocation**.  The liability of URS….for Client's claims of contribution and indemnification, express or implied, with respect to third party claims relating to services rendered or obligations imposed under this Agreement…shall not exceed the aggregate:
>
> (1)    The total sum of $2,000,000 for claims arising out of professional negligence, including errors, omissions, or other professional acts…..
>
> * * *
>
> **ARTICLE VII – Consequential Damages**.  Neither Party shall be liable to the other for consequential damages….

(Emphasis added).  The Design Agreement controls the relationship between URS and Newark as it relates to the design of the Reservoir.

After Newark awarded to Durkin the contract in April 2002, Newark hired URS to perform certain services during construction.  On May 22, 2002, Newark and URS entered into a Services Agreement for URS to perform inspection, quality assurance and related services (the "Services Agreement").  (URS Trial Exhibit 20)  The Services Agreement is governed by a set of general conditions which are attached thereto.  There

3

is no indemnification provision in the general conditions. The general conditions contain the following provisions:

> STANDARD OF CARE  Any alleged breach of this contract or claim against Engineer…by any person or entity arising from the services provided under this contract is to be judged by the standard of reasonable professional care as rendered by other professionals under similar circumstances at the time when and the place where the services are rendered…
>
> * * *
>
> PROFESSIONAL LIABILITY  The Client (City of Newark) agrees to limit the Engineer's liability to the Client and to all construction Contractors and Subcontractors on the project, due to the Engineer's professional negligent acts, errors, or omissions, such that the total aggregate liability of Engineer to all those named shall not exceed $5,000,000.

Newark has alleged that in the event that a judgment should be rendered against Newark "related to the design and/or termination," Newark would be entitled to indemnification or contribution from URS. This claim implicates both the 2000 Design Agreement and the 2002 Services Agreement between Newark and URS. The former would govern design issues and the latter would govern "termination" issues. Both agreements require a showing of professional negligence by URS for Newark to be entitled to indemnification from URS.

## ARGUMENT

A.  NEWARK IS NOT ENTITLED TO INDEMNIFICATION FROM URS BECAUSE IT CANNOT PROVE PROFESSIONAL NEGLIGENCE BY URS

Indemnification involves the shifting of the entire burden of liability from one to another. American Ins. Co. v. Material Transit, Inc., 446 A.2d 1101, 1103 (Del. Super. 1982). It arises either by contract or it is implied. Id. Here, Newark and URS have

contracts that limit any indemnification obligations URS owes to Newark. Because URS' liability is expressly limited to the contractual provisions, "there is no reason for any enlargement of that obligation by implication." Howard, Needles, et al. v. Steers, Perini, et al., 312 A.2d 621, 624 (Del. 1973); accord New Zealand Kiwifruit Marketing Board v. City of Wilmington, 825 F. Supp., 1180, 1194 (D. Del. 1993) (Delaware courts have "clearly limited implied indemnification to situations in which no express indemnification exists.") The contract defines the parties' indemnification rights/obligations. Id.

Based on the unambiguous language contained in the Design Agreement and the Services Agreement, the City of Newark would only be entitled to indemnification from URS if it proves the liability against it arose, not from its own conduct, but from the "professional negligence" of URS. To state a claim for professional negligence, the "standard of care applicable to a professional can only be established through expert testimony." See, Brown v. Interbay Funding, LLC, 417 F. Supp. 2d 573, 579 (D. Del. 2006) Newark has presented no expert testimony that URS committed professional negligence in the design of the Reservoir and no witness has testified that any advice given by URS which led to Newark's termination of Durkin breached the applicable standard of care. No witness has testified that URS has failed to meet the standard of care applicable to a professional engineer.

In open Court, counsel for Newark stated that Newark's third-party claim against URS was not based upon professional negligence, but was premised on the theory that URS gave Newark bad advice. Advice is the very essence of what professionals provide and, thus, the burden is the same. Newark cannot prevail on its indemnification claims

5

because it has neither established an appropriate standard of care, nor produced evidence of its breach. Accordingly, URS is entitled to judgment as a matter of law on Newark's claim for indemnification.

Because the URS-Newark Agreements do not contain any provisions which would transfer all of Newark's liability to URS, even if based upon Newark's culpable conduct, Newark cannot shift its breach of contract liability to URS. In this regard, the Court has ruled that Newark has breached its contract with Durkin by failing to provide proper notice of termination. This ruling establishes as a matter of law that the breach was caused by Newark's failure to give proper notice. Ms. Carol Houck, the City's Assistant Manager, testified that the procedural aspects of the termination were dictated by Newark's attorneys. Thus, irrespective of Newark's indemnification claim, the only evidence submitted demonstrates that all advice on the termination was provided by Newark's attorneys and not URS.

URS is entitled to judgment as a matter of law on Newark's third-party claim for indemnification.

B.  URS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON NEWARK'S CLAIMS FOR CONTRIUBTION

Unlike indemnity, where liability is completely shifted to another party (by, in this case, (theoretically) a contractual indemnity provision), contribution is a <u>sharing</u> of liability between joint tortfeasors based on their relative degrees of fault. <u>American Insurance Co.</u>, <u>supra.</u> 446 A.2d at 1103. Contribution is based on Delaware's Uniform Contribution Among Tortfeasor's Law, 10 <u>Del</u>. <u>C</u>. § 6301 *et seq.* To trigger a right to contribution, Newark is required to prove that URS is jointly or severally liable (i.e., has

liability in common) with Newark on Durkin's tort claims. Ulmer v. Whitefield, 1985 WL189262, *2 (Del. Super. 1985)(attached as Ex. "A") citing Fields v. Synthetic Ropes, Inc., 215 A.2d 427 (Del. 1965).

1. There is no Right to Contribution on Durkin's Civil Rights Claim.

Count I of Durkin's Complaint alleges that its civil rights pursuant to 42 U.S.C. §1983 were intentionally violated by the City of Newark Defendants. (D.I. 1 at ¶s 144-156).

The United States District Court for the Northern District of Georgia, relying on Supreme Court precedent, recently held that there is no right of contribution under §1983. Katka v. Mills, 422 F. Supp. 2d 1306, 1310 (N.D. Ga. 2006), citing Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77 (1981). The Court found that "most cases decided since Northwest Airlines have held that there is no right for contribution under § 1983." Id. at 1308-09 (citations omitted)[1]. See also, Bowers v. N.C.A.A., 346 F.3d 402 (3rd Cir. 2003) (relying on reasoning of Northwest Airlines, Third Circuit held no right to contribution in Title II of the Americans with Disabilities Act).

2. An Intentional Tortfeasor is not Entitled to Contribution.

Contribution, whereby parties are responsible for their fair share of fault, originated based on principles of equity. Thus, an intentional tortfeasor has no right of contribution. Eastridge v. Thomas, 1987 WL 9605 (Del. Super. 1987)(attached as Ex. "B") In Eastridge, the plaintiff alleged that defendants Thomas and V.F.W. were liable when Thomas struck plaintiff in the face with a beer bottle while at the V.F.W. The Court granted the V.F.W.'s motion for summary judgment on defendant Thomas's

---

[1] In Katka, the court did not rely on Miller v. Apartments & Homes of New Jersey, Inc., 646 F.2d 101 (3rd Cir. 1981) because its reasoning was contrary to the Supreme Court's in Northwest Airlines. In addition, Miller involved a right of contribution among co-defendants, not a third-party claim as is present here.

crossclaims for indemnification and contribution.  The Court ruled that where the "act complained of is an intentioned tort…no contribution or indemnification will lie."  Accord:  <u>Alten v. Ellin & Tucker Chartered</u>, 854 F. Supp. 282, 289 fn. 5 (D. Del. 1994)(citing <u>Eastridge</u>)  <u>See</u> <u>also</u>, <u>Andersen v. Local Union No. 3</u>, 582 F. Supp. 627, 632 (S.D. N.Y. 1984) ("It has long been the rule at common law, still followed in the vast majority of jurisdictions, that contribution will not lie in favor of an intentional tortfeasor.")

Judge Latchum's decision in <u>Allen v. Ellin & Tucker</u>, <u>Id</u>., although based upon a theory of implied indemnification, is most instructive.  The Court held that implied-in-contract indemnity is not available to a party whose active participation in the injury has gone beyond negligence.  <u>Id</u>. at 289.  Judge Latchum quoted from <u>Eastridge</u>, <u>supra</u>., as follows:

> "It is the elementary tenet of the law of indemnity and contribution that such a cause of action will not arise for an unlawful or illegal act by a party, not expressly approved or authorized by the party against whom relief is sought….<u>Thus, in a case such as this where the act complained of is an intentional tort by [the indemnitee], no contribution or indemnification will lie</u>."

<u>Id</u>.  (Emphasis added).

Applying the foregoing to the present case, the torts on which Newark claims a right to obtain contribution from URS are all <u>intentional</u> torts.  See Complaint, (D.I. 1) Count I (Violation of Civil Rights); Count II (Intentional Interference with Existing and Prospective Contracts), Count III (Defamation), Count IV (Fraud and Misrepresentation); and Count VI (Conspiracy).  Accordingly, Newark has no right as a matter of law to have URS share responsibility if Newark is found liable for these <u>intentional</u> torts.

       3.      <u>In the Alternative, There is no Common Liability with Newark</u>.

Alternatively, even if Newark had a right to contribution from URS, there is no evidence that URS has common liability with Newark in tort. Durkin has no tort claims pending against URS. In addition, there is no evidence for a jury to decide that URS, like Newark, committed the torts Durkin complains of.

Furthermore, even if there were sufficient evidence that URS committed a tort, those claims would be barred by the economic loss doctrine as asserted in URS Corporation's Eighth Affirmative Defense. See Danforth v. Acorn Structures, Inc.., 608 A.2d 1196 (Del. 1992). Based on that doctrine, a party cannot recover on a tort claim for purely economic losses. Thus, because Durkin's claims would be barred by the economic loss doctrine, there is no "common liability," a prerequisite to contribution. See Ulmer and Fields, supra.

URS requests that the Court enter judgment as a matter of law on Newark's third-party contribution claims.

## CONCLUSION

For the foregoing reasons, Third-Party Defendant URS Corporation respectfully pray that the Court grant its Motion and enter Judgment as a Matter of Law against Newark o n its Third-Party Complaint.

**SEITZ, VAN OGTROP & GREEN, P.A**

**/S/ James S. Green**
**JAMES S. GREEN, ESQ. (DE0481)**
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE  19899
(302) 888-0600
    Attorneys for Third-Party Defendant
    URS Corporation

Dated:  October 3, 2006

56089 v1

## CERTIFICATE OF SERVICE

I, James S. Green, Esquire, hereby certify that on this 3rd day of October, 2006, I electronically filed the following document with the Clerk of Court using CM/ECF which will send notification of such filing to counsel of record.

**URS CORPORATION'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW**

/s/  James S. Green
_____
James S. Green (ID No. 0481)
jgreen@svglaw.com

56089 v1