IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff*<br><br>vs.<br><br>CITY OF NEWARK, et al., *Defendants*<br><br>and<br><br>CITY OF NEWARK, *Third-Party Plaintiff*<br><br>vs.<br><br>DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | CASE NO. 04-0163-GMS |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Intervenor* | |

**OPENING BRIEF OF PLAINTIFF
IN SUPPORT OF MOTION
FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 37(b), (c) and (d)**

                                      **POWELL, TRACHTMAN, LOGAN,
CARRLE & LOMBARDO, P.C.**
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
*Attorneys for Plaintiff and Third Party
Defendant Donald M. Durkin Contracting*

Dated: October 4, 2006

**TABLE OF CONTENTS**

**Page**

I. NATURE AND STAGE OF PROCEEDINGS ..................................................................1

II. SUMMARY OF ARGUMENT .......................................................................................1

III. CONCISE STATEMENT OF FACTS ............................................................................1

IV. ARGUMENT ...................................................................................................................2

    A. **The Documents Produced by the City on October 3, 2006 Were Not Privileged, and Provide Substantial Evidence that Contradicts the Evidence Upon Which the City's Defenses Were Predicated.** ............................ 2

**TABLE OF CITATIONS**

**Page**

**Cases**

*Barnett & Son, Inc. et al. v. Outboard Marine, et al.,* 611 F. 2d 32, 1979 U.S. App. LEXIS 9655
    (3d Cir. 1979) ................................................................................................................. 6

**Rules**

Federal Rule of Civil Procedure Rule 37(c) ................................................................................. 6

Federal Rule of Civil Procedure Rule 37(d) ................................................................................. 6

**I.      NATURE AND STAGE OF PROCEEDINGS**

Plaintiff and Third Party Defendant Donald M. Durkin Contracting, Inc. ("Durkin") presented its case-in-chief and has rested as of October 3, 2006. The City has filed motions for a directed verdict on Durkin's claims for civil rights violations (Count I) and for the valuation of damages.

**II.     SUMMARY OF ARGUMENT**

The City's most recent production of improperly withheld materials, after the close of Durkin's case, provides compelling evidence that the City Council and City administration willfully concealed evidence that confirmed they were aware of the legal infirmities in their termination of Durkin's contract, that there was substantial information in the form of "confidential reports" that <u>have yet to be disclosed</u> which was provided to City Council prior to the vote to terminate, that the City Manager had drafted a letter of resignation based upon his acknowledgment of responsibility, and the express direction to City Council to refrain from provoking debate or discussion at public sessions, but to reserve all discussions for executive sessions. The direct consequence to Durkin has been an incurable and overwhelming prejudice in its ability to effectively prepare and present its case, as well as the misrepresentations concerning the propriety of the defenses asserted by the City from the inception of this case. With its case closed, the only appropriate and reasonable remedy is for the entry of a default judgment on all remaining counts, together with an award of counsel fees incurred since the inception of this litigation.

**III.    CONCISE STATEMENT OF FACTS**

Durkin filed its first Motion for Sanctions on September 22, 2006, based upon a pattern and practice of discovery abuses by the City. (D.I. 246). The Court granted Durkin's Motion for Sanctions, dismissing the City's Counterclaim with prejudice and precluding the City from relying upon its affirmative defense to Durkin's breach of contract claims. (D.I. 268). As part of the oral argument made by counsel for the City on the Motion for Sanctions, and prior to the commencement of Durkin's case-in-chief, it was represented to Durkin and the Court by counsel for the City that the City would produce 16 of the 19 documents listed in Durkin's Motion and legal memoranda that Durkin claimed were discoverable and not subject to any proper claim of privilege.

Durkin completed the presentation of evidence in its case-in-chief as of October 3, 2006. At the conclusion of its case-in-chief, Durkin notified the Court that the documents which the City had promised to produce had not yet been produced. No explanation or excuse was offered by the City as to why those documents were not produced either prior to or during the presentation of Durkin's case-in-chief. At 2:30 p.m. on October 3, 2006, the City produced nineteen (19) pages of documents that had been previously withheld by the City under one or more claims of privilege, which represents fewer than the sixteen (16) documents the City offered to produce.

**IV.   ARGUMENT**

**A.   The Documents Produced by the City on October 3, 2006 Were Not Privileged, and Provide Substantial Evidence that Contradicts the Evidence Upon Which the City's Defenses Were Predicated**.

Throughout the discovery phase and trial of this case, the City has steadfastly maintained that its termination of Durkin's contract was proper in all respects, and the uniform testimony of City Council members was that they were not made aware of the details surrounding the termination of Durkin and relied principally, if not solely upon, the recommendations of the City Manager in terminating Durkin. The documents produced this afternoon confirm an entirely different reality, that if timely disclosed, would have been outcome-determinative for the entire litigation and could have avoided the devastation of Durkin's business and reputation.

Most importantly, the documents reveal that the City's evidence and City Council's sworn testimony is fraught with misrepresentations and outright falsehoods. Some examples include:

1.   The documents in the City's production on October 3, 2006 provide confirmation that the City administration and City Council were discussing termination of Durkin's contract at least one week in advance of the Council meeting on February 2, 2004, and that City Council was provided with "confidential reports"—which have not been provided even as of the date of this Motion—that outline the steps to be taken to terminate Durkin's contract, all of which is in direct contradiction to the sworn testimony of those City Councilpersons who testified that they were unaware or not informed of the intent to terminate Durkin prior to the February 2, 2004 Council meeting. (see Exh. A. to Durkin's Opening Brief in Support of the Second Motion for Sanctions at NEW00225).

2. The documents in the City's production on October 3, 2006 confirms that as of January 23, 2004, litigation counsel for the City had recommended that Durkin be declared in default and that their services be terminated, which is in direct contradiction of testimony adduced at trial from Ms. Houck and the Council members, who all stated that it was Mr. Luft's recommendation that Durkin be terminated. This also provides further confirmation that the City administration **and City Council** were specifically notified in advance of the termination vote that the City had not taken steps to declare Durkin in default of its contract. (see Exh. A. to Durkin's Opening Brief in Support of the Second Motion for Sanctions at NEW00225). This further amplifies and reinforces the earlier memo from Ms. Petrone to the City administration three days earlier, all of which goes to the utter lack of any good faith basis for contending that the City—and now also its Council—followed the contract requirements for prior written notice of termination in its contract with Durkin.

3. The documents in the City's production of October 3, 2006 confirms that there were discussions at the Executive Session held on February 2, 2004 concerning the computation of funds available to complete the project, as well as specific mention of the $276,000 that was being withheld from Durkin by the City, none of which appears in the official meeting minutes generated and produced by the City pursuant to this Court's order. (see Exh. A. to Durkin's Opening Brief in Support of the Second Motion for Sanctions at NEW00151). This provides irrefutable evidence that the destruction of the briefing packets and any other handwritten notes from any of the Executive Sessions has irreparably disabled Durkin from making proper inquiry into the decision-making process which goes to the heart of the civil rights claims.

4. The documents in the City's production of October 3, 2006 confirms that as early as March 27, 2004, City Council was instructing litigation counsel to request, and that City Council believed that URS Corporation was "not convincing" and that URS "needs more time", none of which was reflected in the testimony of City Council members who were deposed. This completely undermines the testimony of Mr. Joseph Dombrowski and others who claimed in their sworn testimony that they saw no reason to question the URS design.

5.      The documents in the City's production of October 3, 2006 include a letter dated April 20, 2004, from Roger A. Akin, City Solicitor, to James W. Semple, then-counsel for URS, in which Mr. Akin outlines a plan to advise City Council not to ask any questions of URS during a public presentation concerning the reservoir, and that the matter not be opened to public debate, but reserved for a question-and-answer session to be conducted in an Executive Session. (see Exh. A. to Durkin's Opening Brief in Support of the Second Motion for Sanctions at NEW00350). This is, by any fair reading, tantamount to recommending a "gag order" on questions from the Council during the public presentation by URS, and to reserve any questions or concerns for the subsequent executive session, so that the public meeting attendees would not only be shielded from any potentially unfavorable commentary, but deliberately discouraged from soliciting information from the presenters and City Council in a public forum.

6.      The documents in the City's production of October 3, 2006 include an undated note from Carl Luft that reads "I am responsible and would like to see it through. If there was a mistake, it was that I trusted & believed the experts who we hired…and so did everyone else from the City" and a draft letter from Carl Luft to City Council dated May 24, 2006, offering his resignation. (see Exh. A. to Durkin's Opening Brief in Support of the Second Motion for Sanctions, NEW00269, New00269A) In his deposition, Mr. Luft was unable, in large measure, to recite the salient events with any degree of recollection, yet it appears from these documents that the events surrounding the termination were sufficiently unsettling to cause him to draft a letter offering his resignation.

The records that have been produced by the City on October 3, 2006, do not fall within any recognized legal privilege that would exempt them from the request for production of documents that was propounded by Durkin at the inception of this case. Although there are any number of (obvious) reasons why one or more of the City's staff, Council and legal counsel would prefer these documents not be disclosed, there is no justification for why they were withheld, and certainly no reason why they were first tendered after Durkin closed its case-in-chief.

The import and impact of the documents produced today cannot be overstated. In short, they provide conclusive evidence of a previously undisclosed and significant level of knowledge and awareness by City Council and City administration of the legal infirmities in the termination of Durkin

without providing the prior seven day written notice, and a commitment to delay the ultimate resolution of this case, to the extreme detriment and prejudice of Durkin, all of which was never disclosed to Durkin or available to Durkin from any other source. The Court will recall that Durkin sought a prompt resolution to this dispute in the form of a Motion for Preliminary and Permanent Injunctive Relief in April of 2004 (D.I. 5). Although armed with the knowledge set out in these documents, the City began its calculated denial and practice of delay and obfuscation in the central issues in this case, content to allow the fading recollections of its Council members, whose memories were unable to be recharged with the "briefing packet" materials that were provided to them and thereafter routinely destroyed, to portray the City as an innocent victim of misinformation and malfeasance by contractors and engineering consultants alike.

The injustice and prejudice to Durkin as a result of this incredible and indefensible course of conduct has been the total extinguishment of their ability to earn a living in their chosen profession and the continuing denigration in the public commentary at the hand of the City administration, as evidenced by the press releases, the handout to the bidders, and the internet postings that provide unrestricted access and unlimited distribution of the defamatory and demeaning references to Durkin's abilities and intentions at the project site. What makes this all the more egregious is that timely disclosure of the documents produced on October 3, 2006 would have provided issue-dispositive evidence to support Durkin's motion for preliminary and permanent injunctive relief that was filed in April of 2004, and avoided the millions of dollars expended by Durkin and destruction of their reputation and business (D.I. 5).

These documents reveal a willful, purposeful and calculated concealment of highly relevant evidence, both to Durkin and to the public, in order to maximize the City's changes of a favorable outcome in the litigation without a proper legal basis for asserting the defenses pled by the City in this lawsuit, all of which was done at the expense of, and the deliberate and conscious disregard to the rights of Durkin. Although the Court was unwilling to impose the severe sanction of default in the first motion for sanctions, the content and consequences that attend this most recent production can compel nothing less than a directed verdict on all remaining counts—especially since there are yet undisclosed, but clearly

referenced documents, within what has just been produced. *Barnett & Son, Inc. et al. v. Outboard Marine, et al.,* 611 F. 2d 32, 1979 U.S. App. LEXIS 9655 (3d Cir. 1979) (When it is determined that a party willfully failed to comply with the rules of discovery, it is within the discretion of the Court to dismiss the action. Anything less simply communicates to the City, its Council, its counselors and others similarly situated that the profit in withholding case-dispositive adverse information far outweighs the detriment of sanctions will impose, no matter what the transgression.

      WHEREFORE, Plaintiff Donald M. Durkin Contracting, Inc. respectfully requests that this Court grant its Motion for Sanctions Under Federal Rule of Civil Procedure 37(b), (c) and (d) and enter a judgment of default against the City on the civil rights and conversion, to enter a directed verdict on the breach of contract claims, award Durkin its counsel fees incurred as of the date the Motion for Preliminary and Permanent Injunction was filed, together with such additional relief as this Court deems necessary or appropriate.

**POWELL, TRACHTMAN, LOGAN, CARRLE & LOMBARDO, P.C.**

By:    /s/ Paul A. Logan
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
*Attorneys for Plaintiff and Third Party Defendant Donald M. Durkin Contracting*

Dated: October 4, 2006