## **MEASURE OF DAMAGES FOR BREACH OF CONTRACT**

Although the City has indicated that Section 15.4 of the Contract, which applies to terminations for convenience <u>and not for default</u>, is the applicable provision for measuring damages in the event of a breach by the City, that section, similar to Section 15.2, is predicated upon the precondition of providing seven (7) days prior written notice to Durkin, which this Court has judicially concluded as a fact did not take place. On that basis alone, the City cannot satisfy the threshold conditions precedent for determining the measure of damages to be paid to Durkin, and accordingly cannot be permitted to obtain the benefit of any limitations on the amount of recovery for a breach of contract by the City that this section may provide.

Although not restated in the instant Motion, the City also argued in its motion in limine that the Court should look to federal common law in order to constructively convert a wrongful termination by the City into a termination for convenience, citing to *Linan-Faye Construction Co., Inc. v. Housing Authority of the City of Camden*, 49 F.3d 915 (3rd Cir. 1995). That case is inapposite for numerous reasons, not the least of which is that the contract between Linan Faye and the City of Camden included funding provided by a U.S. agency, namely the Department of Housing and Urban Development, which implicated a federal interest. Under those circumstances, the Third Circuit deemed it was appropriate, in the absence of any statute or decision by the courts of New Jersey, to refer to the body of federal common law as a source of guidance in the court's interpretation of that particular provision of the contract. Since there is no federal funding on this project, there is no reason or basis for the Court to look to the *Linan-Faye* decision or the body of federal common law to interpret this Delaware construction contract.

In addition, there is no discussion in the *Linan-Faye* decision of any contention by the contractor that there was any ambiguity in the contract with respect to the manner in which a contractor is to be compensated when the contract is wrongfully terminated by the owner. In point of fact, there is no provision in the contract between Durkin and the City which provides that the measure of damages is to be computed under Section 15.4 in the event the City wrongfully terminated the contract. The law in the state of Delaware is well settled that to the extent of any ambiguity in the contract writings, the interpretation of those provisions must be construed against the drafter, which in this case is the City. *Twin City Fire Ins. Co. v. Del. Racing Assn.*, 840 A.2d 624 (Del. 1993), citing *Kaiser Aluminum v. Matheson*, 681 A.2d 392 (Del. 1996).

Finally, to the City had intended that any wrongful termination automatically convert into a termination for convenience, it could certainly have inserted, or "borrowed" from the long-standing statutory provisions that contain this express clause. See, e.g., 52 FAR 248-10. The City has access to the legal counsel of its City Solicitor, who could have inserted such a clause into the contract had the City deemed it necessary to do so.

The City has suggested that Article 11 is limited to the computation of costs for change orders, and accordingly that it is not an appropriate means for measuring the costs of Durkin's work on the Project. However, that is not what the language of Article 11 says or suggests, and Durkin does not understand the City's position to be that the cost breakdown contained in Article 11 is either unfair or unreasonable. During the course of its case-in-chief, Durkin presented considerable uncontroverted evidence that it had been severely impacted by weather events that both the City and URS recognized as compensable. There was no evidence adduced by the City that the claims of Durkin were untimely, and in fact the evidence contains numerous letters from

Durkin beginning shortly after the construction work commenced in 2002 notifying the City and URS of the tremendous costs being incurred in performing weather-impacted work. Consequently, the City has not identified any plausible reason why this portion of the contract should not be applied in determining the cost of the incomplete work performed by Durkin—and not the work of its subcontractors, whose pricing was fixed under the subcontract agreements and was not recomputed pursuant to Article 11—prior to termination.

The City has advanced the position that Durkin is making a "total cost approach" claim for its damages on the City's breach of contract. That is categorically incorrect. The provisions of Article 11 provide for recovery of certain costs, with specified markup on select items of work, and further disallow certain costs to be claimed. <u>See</u> Section 11.5. Durkin is seeking only those costs expressly authorized by the contract for the computation of costs for impacted work, although there was ample testimony from Don Durkin that the costs in Section 11.5 were incurred, but were not being claimed.

With respect to the provisions of Section 17.5, the City argues that this provision only applies to the termination payments associated with subcontractors and suppliers. There is no basis in the language of the contract for that interpretation. Article 17, "Miscellaneous", is not in any sense limited to the costs associated with the termination and settlement with subcontractor and vendors, but in fact the subsections of Article 17 specifically compel a contrary interpretation. Specifically to this point, Section 17.4, which comes under the heading of ***"Cumulative Remedies"***, provides in pertinent part:

> "17.4  The duties and obligations imposed by these General Conditions and the rights and remedies available hereto **to the parties hereto**…are in addition to, and are not to be construed in any way as a limitation and remedies available to any or all of them which are otherwise imposed or available by Laws or Regulations…and the provisions of this paragraph will be as

> effective as if repeated specifically in the Contract Documents in connection with each particular duty, obligation, **right and remedy to which they apply.**" (Emphasis added)

Section 17.5 comes under the heading of "***Professional Fees and Court Costs Included***" and reads as follows:

> "17.5  Whenever reference is made to "claims, costs, losses and damages", it shall include in each case, but not be limited to, all fees and charges of engineers, architects, attorneys and other professionals and all court or arbitration or other dispute resolution costs."

There is no indication that this provision is limited to the costs incurred by the owner, but must be fairly read, particularly under the doctrine of *contra proferentem*, that these costs are recoverable by Durkin for the "claims, costs, losses and damages" it has incurred as a result of the City's wrongful termination.

The City further posits that Durkin's recovery has to be limited to the amounts invoiced as of the date of termination. There is no conceivable basis, either in the contract or at common law, for imposing any such limitation on the quantum of recovery by Durkin when the contract was breached by the City.

Finally, the measure of damages for a breach of contract under Delaware law is the non-breaching party's out-of-pocket costs. See *Hazlett v. Pompeo*, 2002 Del. C.P. LEXIS 75, *6 (Del. C.P., Kent December 27, 2002) *citing* *Strassburger v. Earley*, 752 A.2d 557, 579 (Del. Ch. 2000). These are precisely the costs which are being sought by Durkin with respect to the incomplete work, as well as the costs incurred to stay in business in an effort to mitigate its damages.

Further, the fact that the "sum of the parts is greater than the whole" is of no moment under Delaware law. Delaware's Supreme Court noted in *Heitz v. Sayers*, 32 Del. 207, 219 (Del., 1923) that:

> When the plaintiff's failure to fulfill completely his obligations under the contract, is due to the defendant's default, there is no reason for imposing any limitation on the amount which he may recover on a *quantum meruit* or *quantum valebant* for what he has done other than that set by the principles of fair value. *See, also*, *Connolly v. Sullivan*, 173 Mass. 1, 53 N.E. 143, supra; *Rogers v. Becker-Brainard Milling Co.*, 211 Mass. 559, 98 N.E. 592; *Clark v. Manchester*, 51 N.H. 594; Woodward on Quasi Contracts, § 268.
>
> This rule has also been followed in this state. In *McDaniel v. Webster, supra*, which involved a building contract abandoned and rescinded by the plaintiff through the fault of the defendant, the plaintiff sued on the common counts, for work and materials furnished under the special contract, and Judge Gilpin, in charging the jury, said:
>
> "If there was originally a special agreement between the parties in regard to the matter, under which it was commenced and prosecuted, as far as it was performed by the plaintiff, but which special contract was afterwards rescinded, or abandoned by reason of the misconduct of the defendant, * * * the plaintiff would then, in either case, be entitled to recover on the common counts for his work and the materials furnished, as far as he had proceeded with it, *without any reference to the special agreement*, the same as if none had ever been entered into by him; and in either of those events, * * * his book of original entries would be admissible and competent evidence * * * to prove the work done and materials furnished, and the value of them," etc. (Emphasis provided).

Recent case law reaffirms that this is the law of Delaware, as it is in many other jurisdictions. "The rule prevailing in the majority of jurisdictions is the on default by the defendant, a plaintiff not in default, who has not fully or substantially performed, is not limited to the contract price in a restitution recovery, but can recover a greater sum that if the defendant had allowed him to complete the contract." *Heather Construction v. Gangi*, 1987 Del. Super. LEXIS 1094, *1-2 (Del. Super. Ct. March 31, 1987). The court went on to note that due to the fact that the contract contained no payment terms for partial performance, the court was obligated to determine what is fair value of the work completed.

For the reasons set forth above, Durkin's computation of its damages is a fair and reasonable methodology that is consistent with Delaware decisional law and the terms of the contract, and therefore should be upheld.