**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC. )<br>        Plaintiff, )<br>)<br>v. )     CIVIL ACTION NO. 04-0163<br>)<br>CITY OF NEWARK, et al., )<br>        Defendants, )<br>)<br>  and )<br>)<br>CITY OF NEWARK, )<br>        Third-Party Plaintiff, )<br>)<br>v. )<br>)<br>FEDERAL INSURANCE COMPANY, et al., )<br>        Third-Party Defendants. ) | |
| ST. PAUL FIRE & MARINE INSURANCE )<br>COMPANY, )<br>        Intervenor. ) | |

**FEDERAL'S ANSWERING BRIEF TO MOTION OF THE CITY OF NEWARK FOR
RECONSIDERATION AND REARGUMENT AND FOR LEAVE TO AMEND ITS PLEADINGS**

STRADLEY, RONON, STEVENS & YOUNG, LLP
Kevin W. Goldstein, Esquire
Delaware Bar No. 2967
300 Delaware Avenue, Suite 800
Wilmington, DE 19801

Samuel J. Arena, Jr., Esq. (pro hac vice)
Patrick R. Kingsley, Esq. (pro hac vice)
David M. Burkholder, Esq. (pro hac vice)
2600 One Commerce Square
Philadelphia, PA 19103-7098

Attorneys for Third-Party Defendant,
Federal Insurance Company

## STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

Third-Party Plaintiff, the City of Newark (the "City"), moves for reconsideration on the Court's September 22, 2006 Order (the "Order") and Memorandum (the "Memorandum") granting Federal's motion for reconsideration (D.I. 136) and motion for summary judgment (D.I. 122), thereby dismissing the City's remaining claim against Federal. The City further seeks leave from the Court to amend its pleadings to enable the City to argue "alternative theories of defense." On September 26, 2006, by oral order, the Court denied the City's motion. In support of the Court's denial of this motion, Federal supplements the record and opposes the motion for the reasons below.

## SUMMARY OF ARGUMENT

In its motion, the City rehashes the very arguments (and documents) that have been previously rejected by the Court. In fact, none of the letters cited by the City are newly discovered evidence. None of those letters remotely satisfy the seven days' notice requirement of the Construction Contract or Performance Bond. The City has not shown (and cannot show) that there is any intervening change in the controlling law, any new evidence that was not available when the Court issued the Order, or any need to correct a manifest injustice. The Order should stand, and the City's motion should be denied.

## CONCISE STATEMENT OF FACTS

In addition to the facts set forth in the Court's Memorandum, which facts are incorporated herein by reference, Federal offers the following additional facts.[1] On June 23,

---

[1] Federal also incorporates herein by reference the factual summaries and legal arguments in the following submissions to the Court:

- Federal's Motion for Summary Judgment, Opening Brief in Support and Appendix (D.I. 122);
- Federal's Reply Brief in Support of Motion for Summary Judgment (D.I. 129);

2006, Federal took the deposition of the City's former head of Newark's Department of Water and Sewer, Joseph Dombrowski. On July 31, 2006, Federal took the deposition of the City's Manager, Carl Luft. On September 18, 2006, the City produced a one-page memorandum dated January 20, 2004 from the City's litigation counsel, Victoria Petrone, to the City's designated representative, Carol Houck, and Jill Voeller of URS Corporation ("URS") regarding the City's steps taken in order to terminate Durkin's right to complete the Construction Contract. On the fifth day of trial, the City produced fourteen additional documents, including a January 23, 2004 memorandum from City Manager Luft. All of these discovery events took place **after** Federal filed its motion for reconsideration of the Court's April 5, 2006 order denying Federal's motion for summary judgment.

## ARGUMENT

In its motion, the City contends that a jury should consider whether the City's November 21, 2003 and February 3, 2004 letters fulfilled the City's obligations under the termination provisions of the Construction Contract. The City now claims that Ms. Houck's generic reference to a series of unspecified letters somehow permits the City to rely upon "alternative theories of defense." The City argues that these so-called "alternative theories" were

---

- Federal's Motion for Reconsideration and Reargument, Opening Brief in Support, and Appendix (D.I. 136);
- Federal's Reply Brief in Support of Motion for Reconsideration and Reargument (D.I. 139);
- Federal's Motion in Limine to Exclude the Deposition Errata Sheets of Carol Houck and Opening Brief in Support (D.I. 163);
- Federal's Motion in Limine to Exclude the February 4, 2004 Letter and Any Reference Thereto and Opening Brief in Support (D.I. 165);
- Durkin's Motion in Limine Regarding the Judicial Admission of the City of Newark Providing Prior Written Notice of Intent to Terminate the Contract (D.I. 190), Opening Brief in Support (D.I. 191), and Appendix in Support (D.I. 192);
- Federal's Reply Brief in Support of Motion in Limine re Errata Sheets (D.I. 174) and Appendix in Support (D.I. 231); and
- Durkin's Reply Brief in Support of Motion in Limine re City's Judicial Admission (D.I. 235).

2

included in the litigation,[2] and Ms. Houck's deposition testimony supports those theories, thereby entitling the City to amend its pleadings to assert those theories. The City also claims – without any legal or factual support – that it would suffer manifest injustice as a result of the adherence to the Court's factual findings and attendant Order. These contentions are meritless.

Throughout this litigation, the City has been unable to point to a single document that provides Durkin and Federal with the seven days' written notice of the City's intent to terminate the Construction Contract. In its motion, the City now claims that there are potentially seven letters, which might constitute the elusive seven days' written notice for which the City continues to search. The argument is meritless. The City merely rehashes the same arguments and evidence that have been expressly rejected by this Honorable Court. In fact, the City admits that the motion relies upon evidence that has "been included in the litigation." The City has not presented any new evidence that was otherwise unavailable when the Court issued the Order, which could possibly entitle the City to the relief that it now seeks.

The City, moreover, entirely misses the point of Federal's motion for summary judgment. The issue is not "whether Durkin and Federal had sufficient and appropriate notice." The issue is whether the City properly terminated Durkin's right to complete the Construction Contract and Performance Bond in accordance with the specific requirements of those agreements. The deposition testimony the City's designated representative, Carol Houck, cited by the City is not on point and self-evidently fails to address the seven days' notice issue. Rather, through this testimony, the City confirms that its own representative struggles to identify a single document that constitutes the City's seven days' notice of intent to terminate. By contrast, the testimony relied upon by Federal in this case is directly on point. It establishes that

---

[2] The City stops short of arguing that these "alternative theories" were pled in the litigation because they were not pled in this case.

the very letter cited by the City as the seven days' notice – that is, the November 21, 2003 letter – fails to satisfy the requirements of the Construction Contract and Performance Bond.

None of the letters, individually or collectively, now relied upon by the City are new evidence or, more importantly, constitute the seven days notice of intent to terminate, required by the Construction Contract and Performance Bond. In addition to being self-evidently insufficient, each letter fails to satisfy the notice requirements of the Construction Contract. Because the November 21, 2003 letter and the February 3, 2004 letter are plainly insufficient, the City now attempts a shotgun scattershot approach that possibly some, or perhaps all together, the seven letters cited by the City somehow provide Federal and Durkin with the City's seven days' written notice of termination. The letters and evidence adduced during discovery, however, support no such argument.

### The November 20, 2003 Letter

The November 20, 2003 letter cannot constitute the requisite seven days' notice of intent to terminate Durkin. The letter was **never sent to the surety**, Federal, which is a clear requirement under the Construction Contract. (See Construction Contract, § 15.2.) The November 20, 2003 letter did **not** declare any intention to terminate Durkin's right to complete the Construction Contract. In fact, it did **not** mention seven days' notice of intent to terminate the Construction Contract. The letter did **not** even include the word "terminate." This letter was not preceded by a vote of City Counsel and therefore no decision to terminate Durkin could have been made.[3] The November 20, 2003 letter merely announces that another letter to the surety

---

[3] The City admits that a vote of City Council was necessary to terminate the Construction Contract. (See City's Answering Brief to Durkin's Motion at 11 n.1 (D.I. 45).) It is undisputed that the only such vote took place on February 2, 2004.

4

would be forthcoming one day later. That letter, dated November 21, 2003, is equally insufficient.

### The November 21, 2003 Letter

The November 21, 2003 letter is the letter the City has consistently pointed to as the letter satisfying the seven days' notice provision.[4] The City's November 21, 2003 letter simply was **not** a notice of termination. The letter, by its own terms, was a "precautionary letter" that stated that the City is "now considering declaring . . . Durkin . . . in default . . . ." The City's letter was not even a declaration of default, let alone a legally sufficient notice of termination. The City's letter:

- did **not** state that Durkin is in default;
- did **not** mention any defaults, defects or problems with Durkin's work;
- did **not** declare any intention to terminate Durkin's right to complete the Construction Contract; and
- did **not** even include the word "terminate."

As the record clearly reflects, the City's designated representative, Carol Houck, admitted that the November 21, 2003 letter is **not** the seven days' written notice of its termination of Durkin's right to complete the Construction Contract. (See D.I. 129 at 6.) Even assuming that Ms. Houck's clear admissions are somehow insufficient, subsequent to Ms. Houck's deposition, Federal obtained the testimony of the very author of the November 21, 2003 letter, City Manager Carl Luft. Mr. Luft also admitted that this letter did not comply with the terms of the Construction Contract. He testified as follows:

---

[4] In fact, the February 3, 2004, letter, which **immediately** terminates Durkin's right to complete the Construction Contract, specifically references the November 21, 2003 letter as being the City's "written notice of its intent to terminate Durkin." (See February 3, 2004 Letter.) The February 3, 2004 letter does not reference any other writing by the City.

5

> Q.  Does this letter, the November 21, 2003, letter, formally terminate Durkin's right to complete the construction contract?
>
> A.  No.
>
>    \*   \*   \*
>
> Q.  When you wrote this letter or signed this letter, did you intend to convey to Federal and Durkin that seven days after this letter they would be fired?
>
> A.  No. My intent was to declare that we are considering declaring the contractor in default and let's meet according to the bond and contract. That was my intent in this letter.
>
>    \*   \*   \*
>
> **Q.  Now, this letter that we are looking at, the November 21, 2003 letter, doesn't fulfill the function of seven days' notice as specified in the construction contract; right?**
>
> **A.  No it does not.**
>
> Q.  In fact, the word "terminate" isn't even contained in the four corners of this document; correct?
>
> A.  "Terminate" is not in this document.

See D.I. 254 at 31 through 34 (emphasis added).

  The author of the letter agrees with Federal. There is simply no genuine issue regarding this letter.

## The December 12, 2003 Letter

  The December 12, 2003 letter, authored by Newark's litigation counsel, fails to provide Durkin and Federal with any notice that the City intends to declare a default and terminate Durkin's contract seven days' hence. Although it mentions default in passing, this letter is clearly not a declaration of default. Another letter authored by the very same law firm

6

makes that clear. The City's litigation counsel confirmed that no declaration of default had yet occurred in her January 20, 2004 memorandum to the City's designated representative, Ms. Houck. In the memorandum, Attorney Petrone states:

> I direct your attention to Paragraph 3 of the letter from the Surety, in which she states that the Surety is under no obligation to take action. This is correct. The Surety's obligation arises after 1) the Surety is notified regarding a default and 2) after meeting with the Surety, declaring a default and terminating the contract. **You satisfied step 1 in November [2003]. We have not formally taken step 2 since we were waiting for this report.** On Thursday we can discuss this option.

(See Appendix at A-1, January 20, 2004 Memorandum (emphasis added).)[5] Therefore, even if this December 12, 2003 letter could constitute a declaration of default (which it cannot), it still fails to provide Federal and Durkin with the requisite seven days' notice of intent to terminate.

### The December 30, 2003 Letter

The December 30, 2003 letter contains a single sentence and is obviously not a seven day notice letter.

### The February 3, 2004 Letter

Pursuant to the February 3, 2004 letter, the City terminated Durkin's rights under the Construction Contract **on the same day** it notified Federal of the termination.[6] (See February

---

[5] In a memorandum dated January 23, 2004, the City Manager notified the Mayor and all Council Members that the City's litigation counsel "has recommended that Durkin be declared in default of this contract and that their services be terminated." (See Appendix at A-2.) Thus, even as late as January 23, 2004, it is clear that the City had not declared Durkin in default and has not terminated the Construction Contract. Significantly, this document was only produced by the City on the fifth day of trial.

[6] The City's head of the department in charge of the project, Joseph Dombrowski, agrees with Federal. As to the intent conveyed by the City to Durkin in this letter, Mr. Dombrowski testified as follows:

> Q. As you read the letter, do you read this letter to be a transmittal to Durkin, firing Durkin?
> A. Yes. That's what declares a contractor in default, it says.
> Q. And to read the language, it says it declares a contractor in default and hereby formally terminates Durkin. Right?
> A. That is correct.

3, 2004 Letter.) It is self-evidently not a seven day notice letter. To the contrary, it is an **immediate** termination letter and, therefore, a breach of the Construction Contract and a violation of the conditions precedent of the Performance Bond.

The author of the letter agrees with Federal on this point. As to the February 3, 2004 letter, City Manager Carl Luft testified:

> Q. And consistent with the vote cast the previous evening, on February 2, where it was decided five to nothing to immediately terminate Durkin, this February 3, 2004, letter immediately terminates Durkin; correct?
>
> A. Yes
>
>       \*      \*      \*
>
> Q. This letter immediately terminates Durkin; correct?
>
> A. Yes it does.

See D.I. 254 at 104 to 105.

### The February 4, 2004 Letter

By the time that the City's litigation counsel issued the February 4, 2004 letter, the City had materially breached the Construction Contract by improperly terminating Durkin without providing seven days' written notice of the termination.[7] Regardless, Durkin's right to

---

> Q. And by formally terminating Durkin, is this letter consistent with the resolution passed on the previous evening by which Durkin was immediately terminated?
> A. I would say so, yes.
> Q. So as you read this letter, when Durkin gets this letter, it is conveyed to them that they are fired, pack up your bags and go home. Correct?
> A. That's correct.
>       \*      \*      \*
> Q. Do you read Federal Exhibit 7 to threaten that Durkin will be fired seven days hence, or do you read it as an immediate termination of Durkin?
> A. It is an immediate termination, is how I read it.

See D.I. 254 at 273 and 277.

[7] Termination of a construction contract without providing the proper notice to cure "is itself a material breach of contract." 5 Bruner and O'Connor on Construction Law § 18:15; see Cuddy Mountain Concrete, Inc. v.

complete the Construction Contract had been terminated by an act of City Council and a letter one day later is, therefore, not relevant to this issue. The City admits that only City Council could terminate Durkin's right to complete the Construction Contract.[8] There is no evidence to suggest that the City's attorney had within his power the right to somehow rescind the termination ordered by City Counsel by offering to suspend the effective date of the termination. There is certainly no evidence of another City Council vote to cancel or otherwise suspend the termination.[9] The City's material breach completely discharged any further performance obligation by Durkin or Federal (including any obligation to accept or even recognize this offer from the City's attorney). See BioLife Solutions, Inc. v. Endocare, Inc., 838 A.2d 268, 278 (Del. Ch. Ct. 2003) (citation omitted) ("A party is excused from performance under a contract if the other party is in material breach thereof.").

The February 4, 2004 letter, therefore, is nothing more than a post-termination effort to rectify the improper termination. It does not un-do the City's improper termination and certainly does not act as a substitute for the City's failure to provide Federal and Durkin with the requisite seven days' notice of intent to terminate.

---

Citadel Constr., Inc., 824 P.2d 151, 158 (Idaho Ct. App. 1992) (general contractor breached construction contract by failing to provide subcontractor with seven days' written notice of termination); Blaine Econ. Dev. Auth. v. Royal Elec. Co., 520 N.W.2d 473, 477 (Minn. Ct. App. 1994) (owner breached construction contract by failing to provide contractor with seven days' written notice of termination); see also Bruning Seeding Co. v. McArdle Grading Co., 439 N.W.2d 789, 792 (Neb. 1989) (failure to provide five days' notice for opportunity to cure under construction contract constituted breach of contract).

[8] The City admits that a vote of City Council was necessary to terminate the Construction Contract. (See City's Answering Brief to Durkin's Motion at 11 n.1 (D.I. 45).) It is undisputed that the only such vote took place on February 2, 2004.

[9] Only City Council has the authority to reinstate a cancelled contract. See Appendix at A-5.

## **CONCLUSION**

The evidence adduced during discovery only supports Federal's argument that these additional letters cited by the City cannot constitute the City's seven days' notice of intent to terminate Durkin.  Further, the City has not pled any alternative legal theories in connection with its failure to satisfy the seven days' notice of intent to terminate.  Rather, the City attempts to create new facts from those already admitted and soundly of record.  This cannot be permitted.

For all the foregoing reasons, Federal respectfully requests that the City's motion be denied.

Respectfully submitted,

/s/
Kevin W. Goldstein, Esquire
Delaware Bar No. 2967
STRADLEY, RONON, STEVENS & YOUNG, LLP
300 Delaware Avenue
Suite 800
Wilmington, DE  19801
(302) 576-5850
(302) 576-5858 Fax

Samuel J. Arena, Jr., Esquire (pro hac vice)
Patrick R. Kingsley, Esquire (pro hac vice)
David M. Burkholder, Esquire (pro hac vice)
STRADLEY, RONON, STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098
(215) 564-8000
(215) 564-8120 Fax
Attorneys for Third-Party Defendant,
Federal Insurance Company

**CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2006, I caused a true and correct copy of the foregoing to be served via electronic delivery upon the following:

Paul A. Logan, Esquire
David T. Bolger, Esquire
POWELL, TRACHTMAN, LOGAN,
CARLE & LOMBARDO, P.C.
475 Allendale Road, Suite 200
King of Prussia, PA 19406
*Attorneys for Plaintiff,*
*Donald M. Durkin Contracting, Inc.*

Paul Cottrell, Esquire
Victoria K. Petrone, Esquire
TIGHE, COTTRELL & LOGAN, P.A.
704 N. King Street
P.O. Box 1031
Wilmington, DE 19899
*Attorneys for Defendants,*
*City of Newark, Harold F. Godwin,*
*John H. Farrell, IV, Jerry Clifton,*
*Karl G. Kalbacher, David J. Athey,*
*Frank J. Osborne, Jr., and Christina Rewa*

James S. Green, Esquire
George H. Seitz, III, Esquire
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
Wilmington, DE 19899
*Attorneys for Defendant,*
*URS Corporation*

/s/
Kevin W. Goldstein

# 504480