**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| Donald M. Durkin Contracting, Inc. | : | |
| Plaintiff, | : | |
| | : | Civil Action: 04-0163 GMS |
| vs. | : | |
| | : | |
| City of Newark, et al. | : | |
| Defendants. | : | |

**CITY OF NEWARK DEFENDANTS' MOTION FOR JUDGMENT**
**NOTWITHSTANDING THE VERDICT PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 50(b)**

Defendants Karl G. Kalbacher, David J. Athey, Harold F. Godwin, John H. Farrell IV, Jerry Clifton, Frank J. Osborne, Jr. Christina Rewa, in their official capacities, and the City of Newark ( hereinafter collectively, "Newark"), submit this *Motion For Judgment Notwithstanding the Verdict pursuant to Federal Rule of Civil Procedure 50(b)*.  The Defendants are submitting this *Motion* within ten (10) days of the entry of judgment but have received permission from this Court to brief the issues for this motion pursuant to a stipulated briefing schedule regarding the post-verdict motions to be filed with the Court upon receipt of the full trial transcript in this case.

In support of their request that the verdict of the jury be vacated and set aside and Judgment be entered in favor of the Defendants, Defendants state the following:

**I.  INTRODUCTION**

1.  Plaintiff originally  asserted claims for Breach of Contract, Conversion, Interference with Existing and Prospective Contracts, Defamation/Trade Libel, Fraud and Misrepresentation, Conspiracy and violation of Plaintiff's civil rights but withdrew all claims except the Breach Contract, Conversion and Civil Rights claims against the City of Newark. The

matter was tried to a jury from September 26, 2006 to October 5, 2006.

    2.    On October 5, 2006, the jury rendered a verdict in favor of Plaintiff as follows:

        A.    Breach of Contract Damages:

            Compensatory -    $5,492,666.55
            Post Termination -  $6,174,905.78
            Attorney Fees -     $1,740,751.38

        B.    Civil Rights -    $25,000,000.00

        C.    Conversion -    $1.00

        D.    URS Crossclaim -    $566,775.74

    3.    For reasons more fully set forth herein and to be briefed pursuant to a stipulated briefing schedule after receipt of the trial transcripts, said verdict was contrary to the evidence and law.

## II.    <u>BREACH OF CONTRACT</u>

### A.    The Verdict Is Contrary to the Evidence and the Law.

    4.    The breach of contract verdict was contrary to the evidence.

    5.    The breach of contract verdict was contrary to the law.

    6.    The breach of contract verdict was contrary to the law because Plaintiff's valuation of breach of contract damages is not supported by the contract or Delaware law.

    7.    The breach of contract verdict was contrary to the evidence and the law because Plaintiff did not include a quantum meruit claim in its complaint. Plaintiff's Complaint included a breach of contract claim but Plaintiff was permitted to substitute a quantum merit claim.

    8.    The breach of contract verdict was contrary to the evidence and the law because Plaintiff never advanced a claim for payment for change orders.

9. The breach of contract verdict was contrary to the evidence and the law because Plaintiff failed to produce evidence that any of the claimed damages were related to change orders or any pending change order.

10. The breach of contract verdict was contrary to the evidence and the law because the verdict exceeded the remaining amount due to Durkin on the contract.

11. The breach of contract verdict was contrary to the evidence and the law because the verdict exceeded the entire amount of the contract.

12. The breach of contract verdict was contrary to the evidence and the law because the methodology for calculating work performed is contrary to the contract.

13. The breach of contract verdict is contrary to the evidence and the law because the methodology for calculating work performed is contrary to Delaware law.

14. The breach of contract verdict is contrary to the evidence and the law because the contractual provision upon which Plaintiff relied for its damages is not applicable.

15. The breach of contract verdict was contrary to the evidence and the law because economic damages and professional fees are not recoverable under the contract.

16. The breach of contract verdict was contrary to the law because economic loss damages and professional fees are not recoverable for breach of contract under Delaware law.

17. The breach of contract verdict was contrary to the evidence and the law because Durkin admitted that it was only owed $239,682.43.

18. The breach of contract verdict was contrary to the evidence and the law because the damages were not foreseeable.

19. The breach of contract verdict was contrary to the evidence and the law because

Durkin failed to offer evidence substantiating its claims for economic damages and professional fees.

20. The breach of contract verdict was contrary to the evidence and the law because Durkin failed to make any effort to mitigate its damages or offer any evidence of mitigation effort.

21. The verdict is contrary to the evidence and the law because 10 Del. C. § 3912 limits the recovery of attorneys' fees to 20% of the principal recovered.

**B.   The Court Erred in Issuing Certain Pre-trial Orders.**

22. The Court erred in denying the Defendants Motion in Limine as to Plaintiff's Valuation of Damages filed on 8/22/06 (D.I. 152, reserved judgment on 9/6/06 and Order dated 9/20/06, D.I. 244).

23. The Court erred in denying Defendants Motion in Limine as to Plaintiff's Claim for Economic Damages and Professional Fees filed on 8/22/06 (D.I. 154 and Order dated 9/6/06).

**C.   The Court Erred in its Decisions During Trial.**

24. The Court erred in permitting evidence of equipment sales, loans and line of credit, which are not recoverable for breach of contract.

25. The Court erred in permitting evidence of an improper breach of contract damages valuation.

26. The Court erred in allowing testimony by Durkin regarding an improper method of valuing contract damages over Newark's continued objection.

27. The Court erred in allowing evidence offered by Durkin of its damages over City of Newark's objection because Durkin had failed to produce such evidence prior to trial, in fact,

did not produce it until the fifth day of trial.

28. The Court erred in allowing evidence offered by Durkin of its damages over Newark's objection because Durkin improperly valued damages.

29. The Court erred by overruling the Defendants' objections to Plaintiff's valuation of damages and request for economic loss damages and professional fees.

30. The Court erred by permitting the jury to consider evidence of an improper valuation of damages.

31. The Court erred by permitting the jury to consider evidence of unrecoverable economic loss damages and professional fees.

32. The Court erred in allowing testimony by Durkin about damage to its reputation since Durkin withdrew its defamation claim, which had an unfair and highly prejudicial effect.

33. The Court erred by not ruling on the Defendants' Motion for Directed Verdict prior to submitting the case to the jury.

34. The Defendants incorporate for the purposes of this Motion, Defendants' Motion for Directed Verdict. ( D.I. 277).

**D.  The Court Erred in Sending the Design Claim to the Jury.**

35. The Court erred by refusing to grant summary judgment to Newark on the basis that Plaintiff was advancing a design claim against a layperson and without an expert, or expert testimony, as to the standard of care.

36. The Court erred by allowing Durkin to advance a design claim against a layperson over Newark's objections.

37. The Court erred by permitting the jury to consider the design claim advanced by

Durkin.

38. The Court erred by allowing testimony by Durkin that there were design errors.

39. The Court erred by allowing testimony by three experts regarding the design in the context of its ruling that Durkin was not advancing a design claim.

## III. CONVERSION

### A. The Verdict Is Contrary to the Evidence and the Law.

40. The conversion verdict was contrary to the evidence and the law as Plaintiff failed to offer any evidence substantiating its claim.

41. No evidence was produced at trial that would sustain the conversion verdict.

42. The conversion verdict was contrary to the evidence and the law as Plaintiff admitted the damages duplicated the damages sought for breach of contract.

43. The conversion verdict was contrary to the evidence and the law because Plaintiff offered no rebuttal to evidence by Newark that all materials had been paid for by Newark directly.

44. The conversion verdict was contrary to the evidence and the law because Plaintiff failed to identify the materials, which it contended were converted.

45. The conversion verdict was contrary to the evidence and the law because Plaintiff failed to offer evidence of the cost of materials, which it contended were converted. The jury verdict of $1.00 reflects Plaintiff's failure to offer such evidence.

46. The conversion verdict was contrary to the evidence and the law because Newark had a contractual right to retain all materials on site.

IV. **URS CORPORATION**

    A.    **The Verdict Is Contrary to the Evidence and the Law.**

        47.    The judgment entered for URS Corporation incorrectly reflects the verdict because the judgment amount is a duplication of the awarded attorneys' fees instead of the sum of the award of attorneys' fees ($283,387.87) and judgment entered on the outstanding invoices ($242,000.00). (Jury Verdict Form Section II). The judgment for URS Corporation should be amended to $525,387.87.

        48.    The verdict for URS is contrary to the law because 10 Del. C. § 3912 limits the recovery of attorneys' fees to 20% of the principal recovered.

        49.    The verdict for URS is contrary to the evidence and the law because URS failed to differentiate from its attorneys' fees the costs of collection.

        50.    The contribution verdict against URS was contrary to the evidence because Plaintiff's claims arose out of the design performed by URS and URS provided advice upon which Newark relied.

    B.    **The Court Erred in its Decisions During Trial.**

        51.    The Court erred by partially granting URS's Motion for Judgment as a Matter of Law (D.I. 273 and minute entry of 10/3/06) on the basis that Newark did not prove professional negligence by URS because it was Durkin advancing the claim of professional negligence, and since Durkin failed to make such a claim, judgment should have been granted as to both URS and Newark. Alternatively, the Court erred by allowing Durkin to advance the claim of professional negligence but not allow Newark to seek indemnification, based on breach of contract, from URS.

52. The Court erred by partially granting URS's Motion for Judgment as a Matter of Law because the contract between URS and Newark obligated URS to indemnify Newark.

53. The Court erred in permitting evidence of the entire amount URS's attorneys' fees since the contract only permitted recovery of attorneys' fees arising out of collection.

54. The Court erred in permitting evidence of the entire amount of URS's attorneys' fees since 10 Del. C. § 3912 limits the recovery of attorneys' fees to 20% of the principal recovered.

55. The Court erred by denying Newark's request to limit the recovery of attorneys' fees by URS to 20% of the principal.

## V. CIVIL RIGHTS

### A. The Verdict Is Contrary to the Evidence and the Law.

56. The civil rights verdict was contrary to the evidence.

57. The civil rights verdict was contrary to the law.

58. No evidence was produced at trial that would sustain the civil rights verdict.

59. Plaintiff failed to prove the existence of a property right.

60. Plaintiff failed to prove the existence of a liberty interest.

61. Plaintiff failed to prove, in connection with its procedural due process claims, that it had made any request for a hearing of any kind and such failure is fatal to Plaintiff's civil rights claims.

62. Plaintiff failed to establish that it had suffered a constitutionally cognizable stigma.

63. Plaintiff failed to establish the existence of a constitutionally cognizable liberty

interest claim because of the availability of adequate post-deprivation state law remedies.

64. Plaintiff failed to establish the existence of a constitutionally cognizable property interest claim because of the availability of adequate post-deprivation state law remedies.

65. Plaintiff failed to produce evidence of damages sufficient to establish its procedural due process liberty or property interest claim because it failed to prove that, but for its failure to receive a hearing, it would not have suffered such damages.

66. Plaintiff failed to produce evidence of damages sufficient to establish its procedural due process liberty or property interest claim because it failed to prove what damages it suffered by reason of failing to receive a hearing.

67. Plaintiff failed to prove a deprivation of its substantive due process rights because contract and employment rights are not fundamental rights entitled to substantive due process protection.

68. The civil rights verdict is contrary to the evidence and the law because a substantive due process claim asserted on the basis of the loss of public employment or a public contract, and alleged reputational injury connected therewith that is claimed to have decreased the Plaintiff's ability to earn a living, does not constitute a constitutionally cognizable claim under the 14th Amendment.

69. The civil rights verdict is contrary to the evidence because alleged reputational injury is insufficient to form the basis for a constitutionally cognizable damage claim under the 14th Amendment.

70. The civil rights verdict was contrary to the evidence and the law because the alleged breach of a public contract by governmental entity, and the alleged accompanying

damages flowing therefrom do not form the basis of liberty or property interest claim cognizable under the 14th Amendment.

71. The civil rights verdict was contrary to the evidence and the law as Plaintiff failed to establish by competent evidence that it suffered any violation of its procedural due process property interest rights under the 14th Amendment.

72. The civil rights verdict was contrary to the evidence and the law as Plaintiff failed to establish by competent evidence that it suffered any violation of its procedural due process liberty interest rights under the 14th Amendment.

73. The civil rights verdict was contrary to the evidence and the law as Plaintiff failed to prove by competent evidence that its substantive due process rights under the constitution were violated.

74. The civil rights verdict was contrary to the evidence and the law as Plaintiff failed to produce any evidence before or during trial that it sustained any constitutional violation as the result of any action or inaction by the defendants.

75. The civil rights verdict was contrary to the evidence and the law as Plaintiff failed to produce any evidence that Newark had an official policy, practice, custom, or authorized any action or acquiesced in a longstanding practice or custom that constituted the standard operating procedure of Newark, which caused a violation of Plaintiff's constitutional rights.

76. The civil rights verdict was contrary to the evidence and the law as Plaintiff failed to establish by competent evidence that it suffered any constitutional violation under the 5th Amendment.

77. The civil rights verdict is contrary to the evidence and the law as the Plaintiff

failed to produce any competent evidence that Newark violated Plaintiff's constitutional rights through conduct that shocks the conscience under the facts and circumstances of this case.

78.     The civil rights verdict was contrary to the law because the civil rights claim is barred by the doctrine of collateral estoppel.  At trial, Plaintiffs voluntarily dismissed their defamation and tortious interference claims.  By virtue of the operation of the doctrine of collateral estoppel, the facts of reputational injury and lost business opportunities upon which Plaintiff based their civil rights claims,  have been established adversely to them as a matter of law.

**B.    The Court Erred in Issuing Certain Pre-trial Orders.**

79.     The Court erred in denying Defendants Motion In Limine as to the Plaintiff's civil rights claims filed on August 22, 2006 (D.I. 136 and Order dated September 6, 2006).  Plaintiff refused to identify the specific alleged civil rights violations it was pursuing, for over 2 ½ years of litigating this matter.  Plaintiff did not advise the Court of the specific civil rights violations until October 3, 2006, on the fifth day of trial and 27 days after the Court denied the Defendants Motion In Limine concerning Plaintiff's failure to identify which civil rights claim Plaintiff was prosecuting at trial.  The Plaintiff should not be permitted to perpetuate a fraud on this Court by failing to comply with the Federal Rules of Civil Procedure and not identifying the alleged rights violated, when requested to do so in interrogatories, discovery depositions and responses to Defendants motions.  Plaintiff knowingly ignored the Federal Rules of Civil Procedure and put forth a case of litigation by ambush by withholding its civil rights claim identification until after it rested its case in chief on October 3, 2006.  Plaintiff's conduct and the Court's refusal to grant Defendants Motion In Limine resulted in prejudice to Defendants by denying the Defendants  the

opportunity to adequately defend against Plaintiff's claim.

    **C.    The Court Erred in its Decisions During the Trial.**

    80.    The Court erred in allowing the Plaintiff's civil rights claims to go to the jury, where the Plaintiff refused to identify any alleged civil rights violation until the fifth day of the jury trial, despite 2 ½ years of pre-trial discovery.

    81.    The Court erred in permitting the Plaintiffs' civil rights claim to be decided by the jury.

    82.    The Court erred in allowing testimony by Durkin about damage to its reputation when Durkin had withdrawn its defamation claim, which had an unfair and highly prejudicial effect.

    **D.    The Court Erred in its Treatment of the Defendants' Motion for Directed Verdict.**

    83.    The Court erred in not ruling on the Motion for Directed Verdict prior to submitting the case to the jury.

    84.    Defendants incorporate, for the purposes of the is Motion, Defendants' Motion for Directed Verdict. (D.I. 277).

**VII.  CONCLUSION**

    85.    There have been clear errors of law as outlined above and which will be briefed upon receipt of the trial transcripts, which must be corrected by the granting of this Motion for Judgment Not Withstanding the Verdict.

    86.    A manifest injustice will occur unless this Court grants the Motion for Judgment Notwithstanding the Verdict.

    87.    Defendants respectfully request leave to file an Amended/Supplemental Motion

for Judgment Not Withstanding the Verdict pursuant to FRCP 50(b) after the Defendants review the trial transcripts when the transcripts become available at the end of November 2006.

WHEREFORE, City of Newark Defendants respectfully request that the Court grant Defendants' Motion for Judgment Not Withstanding the Verdict and direct entry of judgement as a matter of law for the Defendants, as will be set forth more fully after the Defendants review the trial transcripts and brief the issues contained in this Motion. The Defendants also ask that this Court grant such additional relief as justice requires.

       Respectfully submitted,

       TIGHE, COTTRELL & LOGAN, P.A.
       By: /s/ Paul Cottrell
       Paul Cottrell (Delaware I.D. No. 2391)
       Victoria K. Petrone (Delaware I.D. No. 4210)
       704 N. King Street, Suite 500
       P.O. Box 1031
       Wilmington, DE 19899
       P:  (302) 658-6400
       email:  p.cottrell@lawtcl.com

       *and*

       Thomas C. Gallagher, Esq. (Pro Hac Vice, Pa. I.D.  27156 )
       Deasey, Mahoney & Bender Ltd.
       1800 John F. Kennedy Boulevard, Suite 1300
       Philadelphia, PA 19107
       P: (215) 587-9400
       email: tcgallagher@dmbphila.com
       *Attorneys for Defendant City of Newark*
       *Harold F. Godwin, John H. Farrell, IV, Jerry Clifton,*
       *Karl G. Kalbacher, David J. Athey,*
       *Frank J. Osborne, Jr. and*
       *Christina Rewa, in their official capacities*

Dated: October 24, 2006