**DURKIN PROPOSED TRIAL EXHIBIT TAB 66**



**CITY MANAGER'S OFFICE**
CITY OF NEWARK
220 Elkton Road • P.O. Box 390 • Newark, Delaware 19715-0390

302-366-_7020_ • Fax 302-366-7160 • http://newark.de.us

May 16, 2006

Paul Cottrell, Esquire
Tighe, Cottrell & Logan, P.A.
704 N. King Street, Suite 500
P.O. Box 1031
Wilmington, DE 19899

Dear Paul:

I have recently completed reviewing the reply brief in support of its Motion for Reconsideration and Reargument prepared by Stradley, Ronon, Stevens & Young and felt compelled to put into writing my impressions as well as share some thoughts. To begin, it is my understanding that the motion I refer to was prepared by Patrick Kingsley. This is my belief as he was the only attorney for the surety present during my dates of deposition.

While Mr. Kingsley is clearly irked by my making corrections to my testimony, I have been advised that the option to make corrections to unclear or misleading responses is my legal right and in fact on behalf of the City of Newark, my responsibility. The motion and comments related to my testimony, fail to paint a picture I would agree to. The following is a summary of certain missing pieces:

The motion content –

- Fails to acknowledge that my deposition was originally scheduled to be held over a period of two days. It subsequently was increased to three days and then to a fourth day. It is my understanding that this is highly unusual.

  o Along the same line - the additional two days were suggested to be appropriate by Judge Sleet during an off the record conference call initiated by Pat Kingsley - during which he assured Judge Sleet that the additional days were necessary as he had new questions and exhibits to present. In reality, a large number of the Houck exhibits he presented were the same as those presented by counsel for the Durkins, Paul Logan. This was disappointing as well as

DUR-66

Paul Cottrell
Page 2
May 17, 2006

enlightening as to his urgency to mislead even the Judge in this case.

- Fails to acknowledge that during my deposition, admittedly an important and highly legal exercise, Mr. Kingsley's behavior was in my viewpoint extremely unprofessional. It included his yelling questions at me, constantly making noises and huffing and puffing following my answers to questions and even continually tossing his pen into the air and catching it directly across the table from me. While at the time I attempted to ignore his unprofessional and possibly intentional behavior, I have since had the opportunity to witness his behavior at the deposition of Donald M. Durkin, Jr. on May 10, 2006. Remarkably, Mr. Kingsley was in great control of himself and did not once toss his pen in the air or attempt to disturb Mr. Durkin's testimony. I should note, nor did I or the four other members of counsel present.

- Does not acknowledge testimony that there is no formal requirement for Newark City Council to agree in advance to the termination of Donald M. Durkin Contracting. However, it is a general policy of City Manager Carl Luft to inform and receive support from Council of such important decisions. Further, Council's motion of February 2, 2003 to terminate Donald M. Durkin Contracting immediately, proceeded in the fashion of most votes of this body.

  o When awarding a contract or approving of a project, Council votes in favor of or to award a contract to a specific entity. Though Council's direction is certainly important, it may take weeks or even months to completely fulfill their wishes. They rely on staff to follow through with the appropriate forms, agreements, etc. often associated with the direction. In fact, they are likely not even aware of most of the steps required to enact their direction. Their motion does not state that the direction is given pending staff completion of necessary requirements. The word immediate simply signals the level of importance and agreement among Council to move forward with our important water supply project amid this contractor's failure to proceed.

I appreciate your review of this correspondence and allowing me the opportunity to share these thoughts with you. Unrelated to the motion, although specific to the litigation I continue to be disappointed by the Surety neglecting its responsibility to protect the City

Paul Cottrell
Page 3
May 17, 2006

of Newark from a contractor that refused to perform, failed to follow the direction of the engineer, would not complete the project at the price it bid, etc. The Surety accepted this responsibility when it provided an unsecured bond to Donald M. Durkin Contracting. The Surety's negligence has been further evidenced by proof that its own internal representatives had concerns about the company's ability to complete our job. And the absence of their bond would have prohibited the hiring of Donald M. Durkin. Newark was never made aware of their concerns.

In addition, I point out that Newark was a good owner to this contractor. We worked to address concerns, paid on time and to the tune of $6.2 million. I am convinced that nothing short of an open checkbook would have kept this group on our site working.

If any of my detail presented within is unclear, I respectfully reserve the opportunity to provide you with additional information. Please call!

Thanks so much!

Carol S. Houck
Assistant to the City Manager

cc:    Carl F. Luft, City Manager
       Victoria K. Petrone, Esquire
       Roger Akin, City Solicitor

**DURKIN PROPOSED TRIAL EXHIBIT TAB 67**

- College Publisher Network

- Join the College Publisher Network
- Advertise Across the Network


- Select your search method
- Search

- ⦿ Search This Paper
- ○ Search Google

- Books
- Job Search
- Housing
- Movies
- Scholarships




We're close to campus.

# __The Review__

- Contact
- About Us
- Advertise
- Login
- **Register**

[ Search ]

Home » News

## Controversy over reservoir drying up

**Ashley Williams**

**Issue date:** 4/25/06 **Section:** News
The controversial Newark Reservoir project, after years of lawsuits and setbacks, is nearing completion and may open in coming months.

The project made headlines after former contractor, Donald M. Durkin Contracting Inc., sued the city

DUR-67

when it was fired for refusing to finish the project. In the lawsuit's latest development, Durkin Contracting took photographs claiming the design was wrong and would be destined to fail due to erosion.

Assistant City Manager Carol Houck said in the fall of 2003 Durkin Contracting determined they would not be able to build the reservoir as designed, and from September to November limited progress was made on the project.

"Newark was forced to begin the process of termination, which finally occurred in February 2004," Houck said. "Our project was in fact built, as designed, by George and Lynch Contracting, further confirming Donald M. Durkin's claims they could not build our reservoir was typical to their company, not all construction companies."

Durkin Contracting refused to comment.

The estimated one-year long project has taken nearly three-and-a-half years to complete due to the problems with Durkin Contracting, Houck said.

"The termination of Durkin, repairs necessary due to the termination and hiring a new contractor lengthened the construction process significantly," she said.

After the fall out with Durkin Contracting, Houck said the city hired George and Lynch Contracting to complete the project.

Mike Hall, George and Lynch project manager for the Newark Reservoir, said the company was aware of the situation between the city and Durkin Contracting, but was not going to get involved and the project would continue as normal, despite the impending lawsuit.

"The reservoir is currently filled with water up to the fill elevation and we should be moving out at the end of this week," Hall said.

As for the erosion, George and Lynch placed rain sheets over the problem areas to limit future erosion, he said.

Continued...

Page 1 of 2 next >

Article Tools

Blog This

- Blogger

Add Our RSS to:

- My Yahoo!
- Google

Bookmark This

- del.icio.us

- digg
- newsvine

<u>National College Advertising and Marketing</u>
<u>Privacy Policy</u>    <u>Article Syndication</u>    <u>RSS Terms of Use</u>

**Sections**

- <u>News</u>
- <u>Mosaic</u>
- <u>Sports</u>
- <u>Editorial</u>

**Options**

- <u>Register</u>
- <u>Login</u>
- <u>About Us</u>
- <u>Message Board</u>
- <u>Events Calendar</u>
- <u>Letter to the Editor</u>
- <u>Classifieds</u>
- <u>Back Issues</u>
- <u>Search</u>

**Links**

- <u>University of Delaware</u>
- <u>UDaily</u>
- <u>College Publisher</u>

© 2006 **The Review**

Powered by **College Publisher**

**DURKIN PROPOSED TRIAL EXHIBIT TAB 68**

# ITEMIZED STATEMENT OF DAMAGES

## Cost of the Work Performed by DMD

| | |
|---|---|
| 1. Payroll Cost for DMD Employees (para. 11.4.1) | $1,633.577.65 |
|     - Contractor's Fee of 15% (para. 11.6.2.1) | $245,036.65 |
| 2. Cost of Materials (para. 11.4.2.) | $687,435.69 |
|     - Contractor's Fee of 15% (para. 11.6.2.1) | $103,115.35 |
| 3. Cost of Equipment (para. 11.4.2) | $5,468,597.90[1] |
|     - Contractor's Fee of 15% (para. 11.6.2.1) | $820,289.68 |
| 4. Amounts Billed By Subcontractors (para. 11.4.3) | $2,771,080.49 |
|     - Contractor's Fee of 5% (para. 11.6.2.2) | $138,554.03 |
| 5. Amounts Paid to Special Consultants (para. 11.4.4) | $313,061.08[2] |
| | $12,180,748.52 |
|     Payments by City of Newark to DMD | ($6,230,744.97) |
|     Payments by City of Newark to DMD Subs | ($457,337.00) |

**Unpaid Cost of the Work as of the Date of Termination:**    **$5,492,666.55**

## Post-Termination Costs and Expenses

| | |
|---|---|
| 6. Unpaid Consultant/Professional/Expenses (para. 17.5) | $1,740,751.38[3] |
| 7. Equipment Sales for Operating Revenue: | $433,891.79 |
| 8. Loans and Expenses on Life Insurance Policies: | $1,210,262.61 |
| 9. Repayment of Line of Credit Agreement: | $2,790,000.00[4] |

**TOTAL**    **$11,667,572.33**

---

[1]  Includes $3,514,466.30 of operating costs, and $1,954,131.60 of standby equipment costs
[2]  Vibratech ($12,478.00); JSM Assoc. ($2,546.25); Hillis-Carnes ($945.00); Langan Eng. ($140,266.31); Duffield Assoc. ($1,424,40); Navtech ($86,900.00); and GeoSyntec ($68,501.12—pre-termination costs only).
[3]  Includes unpaid counsel fees of DMD and Federal incurred through 09/29/06 and estimated through 10/02/06.
[4]  The loans on the life insurance policy and the line of credit draws were used to pay ongoing business operating expenses, as well as some of the litigation expenses, including partial payment of DMD's attorney's fees.

DUR-68

**DURKIN PROPOSED TRIAL EXHIBIT TAB 69**




July 26, 2006

Invoice #347

Cleveland Brothers

Attn:  Bill Yurkovic

Phone:  (800) 482-2378
Fax:     (717) 564-3964

Re:    Sale of CAT 773D, S/N 7CS00093

# Bill of Sale

(1) 773D, S/N 7CS00093                          $425,000.00

TERMS: $200,000.00 due immediately and to be overnighted.  This is broken down by a payment to CAT Financial in the amount of $116,608.21 and the balance $83,391.79 being paid to Donald M. Durkin Contracting, Inc.  The CAT Financial contact is Stephen Tsang at (615) 341-1308.

The balance of the sale price ($225,000.00) will be paid to and received by Donald M. Durkin Contracting, Inc. prior to 8/15/06.  Sales tax is the responsibility of Cleveland Brothers which is purchasing the unit under Pennsylvania Sales Tax Exemption #22014295.

DUR-69

Cleveland Brothers Equipment Co., INC.
P.O. Box 2535
Harrisburg PA 17111
717-564-2121

| CHECK DATE | VENDOR NUMBER | PAY AS OF |
|---|---|---|
| 07.26.2006 | 104058 | 07.26.2006 |

4000023925

Page   1 of   1

| INVOICE NUMBER | INVOICE DATE | REFERENCE | GROSS | DISCOUNT | NET AMOUNT |
|---|---|---|---|---|---|
| 347 | 07.26.2006 | 4500000008 | 83,391.79 | 0.00 | 83,391.79 |
| | | | 83,391.79 | 0.00 | 83,391.79 |

Cleveland Brothers Equipment Co., INC.
P.O. Box 2535
Harrisburg PA 17111
717-564-2121

M&T BANK
60-295
313

4000023925

DATE
07.26.2006

PAY    EIGHTY-THREE THOUSAND THREE HUNDRED NINETY-ONE DOLLARS and 79
CENTS

*******83,391.79*

To T    Donald M. Durkin Contracting, Inc.
Order    1310 Industrial Boulevard - Suite 2
Of    Southampton PA 18966
US

⑈4000023925⑈ ⑊031302955⑈230915584⑈

Cleveland Brothers Equipment Co., INC.
P.O. Box 2535
Harrisburg PA 17111
717-564-2121

| CHECK DATE | VENDOR NUMBER | PAY AS OF |
|------------|---------------|-----------|
| 07.26.2006 | 100442 | 07.26.2006 |

4000023924

Page   1  of   1

| INVOICE NUMBER | INVOICE DATE | REFERENCE | GROSS | DISCOUNT | NET AMOUNT |
|----------------|--------------|-----------|-------|----------|------------|
| 347 | 07.26.2006 | 4500000008 | 116,608.21 | 0.00 | 116,608.21 |
| | | | | | |
| | | | 116,608.21 | 0.00 | 116,608.21 |

COPY

Cleveland Brothers **CAT**

Cleveland Brothers Equipment Co., INC.
P.O. Box 2535
Harrisburg PA 17111
717-564-2121

M&T BANK
60-295
313

4000023924

DATE
07.26.2006

PAY    ONE HUNDRED SIXTEEN THOUSAND SIX HUNDRED EIGHT DOLLARS and 21
CENTS

*******116,608.21*

To The
Order
Of

CATERPILLAR FIN. SERVICES
CUSTOMER BUSINESS CENTER
2120 WEST END AVENUE
NASHVILLE TN 37203
US

⑈4000023924⑈ ⑆031302955⑆ 23091584⑈

Cleveland Brothers Equipment Co., INC.
P.O. Box 2535
Harrisburg PA 17111
717-564-2121

| CHECK DATE | VENDOR NUMBER | PAY AS OF |
|---|---|---|
| 08.11.2006 | 104058 | 08.11.2006 |

4000024459

Page   1 of   1

| INVOICE NUMBER | INVOICE DATE | REFERENCE | GROSS | DISCOUNT | NET AMOUNT |
|---|---|---|---|---|---|
| 347 | 07.26.2006 | 4500000008 | 225,000.00 | 0.00 | 225,000.00 |
| | | | 225,000.00 | 0.00 | 225,000.00 |

Cleveland Brothers  CAT

Cleveland Brothers Equipment Co., INC.
P.O. Box 2535
Harrisburg PA 17111
717-564-2121

M&T BANK
60-295-
313

4000024459

DATE
08.11.2006

PAY      TWO HUNDRED TWENTY-FIVE THOUSAND DOLLARS and 00 CENTS

******225,000.00*

To 1.
Order
Of
Donald M. Durkin Contracting, Inc.
1310 Industrial Boulevard - Suite 2
Southampton PA 18966
US

⑈4000024459⑈ ⑆031302955⑈ 23091584⑈

 

March 8, 2006

**Invoice #327**

**Joyce Consulting, LLC**
143 Woodbine Drive
Hershey, PA  17033

Phone:  (717) 312-1065
Fax:      (717) 312-1047
Cell:     (717) 315-1576

## Bill Of Sale

(1) KOMATSU D155A – S/N 29081          $  60,000.00

(1) KOMATSU D155A – S/N 29082          $  60,000.00

           **TOTAL AMOUNT DUE**     $120,000.00

### Notes:

\*      Pennsylvania Sales Tax has not been charged due to units to be
resold under Pennsylvania License #83159974 (attached).

\*      Units were purchased new by seller and hour meter show correct
machine hours.

\*      Units are owned by Donald M Durkin Contrtacting, Inc free and
clear.  There are no liens or encumbrances.

 

May 15, 2006

G.M.T. Transport
4867 Main Street
Walnutport, PA  18058

## AGREEMENT OF SALE

Seller:    Donald M. Durkin Contracting, Inc.
           1310 Industrial Blvd., Suite 201
           Southampton, PA  18966

Buyer:     G.M.T. Transport
           4867 Main Street
           Walnutport, PA  18088

For the Sale of:
           (1) 1967 Custom Tank Trailer
               S/N S164266
           (1) 1970 Butler Tank Trailer
               S/N 7740NAM

Purchase Price:  $5,500.00 for the pair of trailers

Paid in Full Date:_____  Check #_____

Trailers are sold in "as is condition" with no warranty expressed or implied.
PA Sales Tax is the responsibility of the buyer to pay.

Seller:_____ 5/15/06
       James W. Durkin

Buyer:_____ 5/15/06

Printed Name:_____



GMT TRANSPORT, INC.
4867 MAIN STREET
WALNUTPORT, PA 18088-9314

5128

PAY TO THE
ORDER OF _Donald M Deiter_  contracting

_Five thousand five hundred_  oo  DOLLARS

$ 5,500.00

5/18/06

PNC BANK
NATIONAL ASSOCIATION
ALLENTOWN, PA 18103
60-1/313

MEMO

© 2005 INTUIT INC. # 728  1-800-433-8810

⑆005128⑆  ⑉031300013⑈  9006595598⑆

#5128

**DURKIN PROPOSED TRIAL EXHIBIT TAB 70**

06/10/2005 FRI 13:16 FAX                                      ☐003/004

06/09/2005 06/09/2005   10:02AM Received FAXATTACH FAX42A813C46FA4 • Pg 2/3

JUN-09-2005 10:02 FROM:                                   TO:Chubb          P.2/3

 CHUBB GROUP OF INSURANCE COMPANIES

15 Mountain View Road, P.O. Box 1615, Warren, New Jersey 07061-1615

## GENERAL AGREEMENT OF INDEMNITY

WHEREAS, the undersigned (hereinafter individually and collectively called "Indemnitor") desires FEDERAL INSURANCE COMPANY or any of its subsidiary or affiliated insurers (hereinafter called "Company") to execute bonds including undertakings and other like obligations (hereinafter referred to as bond or bonds) on its behalf and on behalf of any of its subsidiaries or on behalf of any subsidiary of a subsidiary or successive subsidiaries, direct or indirect, now existing or hereafter created (hereinafter called "Subsidiaries") or on behalf of any one or more of them and also desires the execution of bonds on behalf of individuals, partnerships, corporations, limited liability companies or any other similarly unincorporated associations of members (hereinafter called "Affiliates").

WHEREAS, from time to time either the Indemnitor or one or more of its Subsidiaries or Affiliates may be a participant in joint ventures with others, and bonds will be required on behalf of the Indemnitor or one or more of its Subsidiaries or Affiliates along with the other participants in such joint ventures.

NOW, THEREFORE, in consideration of the Company executing said bond or bonds, and the undersigned Indemnitor hereby requests the execution thereof, and in consideration of the sum of One Dollar paid to the Indemnitor by said Company, the receipt whereof is hereby acknowledged, the Indemnitor, being benefited by the execution and delivery of said bond or bonds, hereby agrees that it will at all times jointly and severally indemnify and save harmless said Company from and against any and all loss, cost, damage or expense, including court costs and attorneys' fees, which it shall at any time incur by reason of its execution and/or delivery of said bond or bonds or the payment of any claim or liability thereunder and will place the said Company in funds to meet all its liability under said bond or bonds promptly on request and before it may be required to make any payment thereunder and that the voucher or other evidence of payment by said Company of any such loss, cost, damage, expense, claim, or liability shall be prima facie evidence of the fact and amount of the Indemnitor's liability to said Company under this Agreement.

IT IS UNDERSTOOD AND AGREED that with respect to any bonds on behalf of the Indemnitor, or any Subsidiary or Affiliate, participating in a joint venture that if specific application is filed with the Company for such bonds the liability of the Indemnitor to the Company with respect to such joint venture bonds shall be limited to the amount expressly set forth in said application.

IT IS UNDERSTOOD AND AGREED that all of the terms, provisions, and conditions of this Agreement shall be extended to and for the benefit not only of the Company either as a direct writing company or as a co-surety or reinsurer but also for the benefit of any surety or insurance company or companies with which the Company may participate as a co-surety or reinsurer and also for the benefit of any other company which may execute any bond or bonds at the request of the Company on behalf of the Indemnitor or any of its Subsidiaries or Affiliates.

IT IS FURTHER UNDERSTOOD AND AGREED that the Indemnitor, its heirs, successors and assigns are jointly and severally bound by the foregoing conditions of this Agreement.

IN WITNESS WHEREOF the Indemnitor has signed this instrument this _____ 5ᵗʰ _____ day of \_\_DECEMBER\_\_ - 19 \_77\_

Donald M. Durkin Contracting

BY: _____        BY: _____
Donald M. Durkin, Jr.                      Donald M. Durkin, President

BY: _____

BY: _____
NOTARIAL SEAL
JOHN G. SIMONCINI, Notary Public
City of Philadelphia, Phila. County
My Commission Expires May 21, 2001

Form 10-02-0038 ETD (Rev. 3-77)

DUR-70

06/10/2005 FRI 13:16 FAX @004/004

06/09/2005 06/09/2005  10:02AM Received FAXATTACH FAX42A813C46FA4  * Pg 3/3
JUN-09-2005 10:02 FROM:                                        TO:Chubb                    P.3/3

## CERTIFICATE OF ACKNOWLEDGMENT

State of
County of _____ }

On _____ before me _____ , personally appeared _____
(here insert name and title of the officer)
_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

## CERTIFICATE OF ACKNOWLEDGMENT

State of
County of _____ }

On _____ before me _____ , personally appeared _____
(here insert name and title of the officer)
_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

## CERTIFICATE OF ACKNOWLEDGMENT

State of
County of _____ }

On _____ before me _____ , personally appeared _____
(here insert name and title of the officer)
_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

## CERTIFICATE OF ACKNOWLEDGMENT

State of
County of _____ }

On _____ before me _____ , personally appeared _____
(here insert name and title of the officer)
_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)