within the scope of the discovery requests by Durkin and Federal. If they have been produced, please identify those bates numbers for us; otherwise, please make arrangements for the immediate production and delivery of those documents so that they are available for the deposition on Friday. I have to believe that Carl Luft and/or the City Secretary has some record of what was provided to Council members in advance of/for the public meetings.

Another area of our discovery that we have propounded, but to date not been received, relates to the production of electronic file data. Unless I am mistaken, we have not received any electronic files pertaining to this project from the City. Certainly the electronic files residing on the server drives on a City computer network system and/or the desktop/notebook computers of Carl Luft, Carol Houck, the Mayor, the City Secretary and others in the City employ who were involved in generating, transmitting or receiving any electronic data on this project, whether in the form of e-mail messages or other documents, fall within the ambit of Durkin and Federal's previous document discovery requests--see Definitions section of the respective document requests. Since Mr. Kalbacher testified yesterday that the City was anticipating litigation in the fall of 2003 when there were discussions concerning a potential termination of Durkin's contract, we trust that appropriate controls to secure the retention of all such data were put in place at or about that time. Initially, we will need a representation as to the nature, volume and location of electronic data generated and maintained by the City relating to this project, and what, if any, electronic information has not been preserved and the reasons why it was not maintained. At that point we can discuss the most expeditious manner of making those records available for our inspection or simply copied to CD-ROMs/DVD disks, and we can make our IT consultants available to work with the City in that regard to the extent required. In the event that the City, for whatever reason, is not prepared to provide prompt access to this data, we will involve the Court to compel production of this information.

Finally, although we haven't received any ruling from the Court on the Executive session materials, from your e-mails and our discussions, one of the positions you advanced was that we would be able to obtain the same or substantially similar information through the deposition process. However, Mr. Kalbacher's deposition testimony confirmed that is not the case; in fact, he could not recall the substance of what was discussed at any particular Executive session meeting, but instead recounted that the documents that were provided to Council and/or generated in the course of the Executive sessions would aid in refreshing his recollection of, and accurately reflect, what was discussed and decided at those particular sessions. Since this clearly displaces your argument that the information we are requesting is available from alternate sources (i.e., deposition testimony), and we have both a compelling need and clear right to confront and challenge the factual and legal efficacy of the Council's briefing background and reasons underlying the termination, I am requesting that you reconsider your refusal to provide those documents to us. Without your agreement to produce those documents, we intend to supplement our letter briefs to the Court to reflect this additional development.

Regards,

David.

David T. Bolger, Esquire

*Powell, Trachtman, Logan, Carrle & Lombardo, P.C.*
*475 Allendale Road, Suite 200*
*King of Prussia, PA 19406*
*(610) 354-9700, x131*
*(610) 354-9760 fax*
*(610) 304-7398 mobile*

A-51

2/10/2006

dbolger@powelltrachtman.com
www.powelltrachtman.com

*DISCLAIMER:* This communication, along with any documents, files or attachments, is intended only for the use of the addressee(s) and may contain privileged or confidential information. If you are not the named addressee(s), you are hereby notified that any dissemination, distribution, copying or other use of any information contained in this electronic transmission is strictly prohibited. If you have received this electronic communication in error, please notify the sender immediately by reply to this electronic message and destroy the original communication and all attachments without reading, printing or saving any of the information in any manner. Thank you.

A-52

2/10/2006

# **EXHIBIT K**

**From:** Paul Cottrell [p.cottrell@lawtcl.com]
**Sent:** Thursday, February 09, 2006 11:37 AM
**To:** David T. Bolger
**Cc:** Arena, Samuel; Kingsley, Patrick; Jim Green; jseitz@svglaw.com; Paul A. Logan
**Subject:** Re: D.M. Durkin, City of Newark

Gentlemen,

1.  This will confirm that we will be taking the deposition of Mayor Vance Funk tomorrow at 10 a.m. (ending at 1 p.m.) at Roger Akin's office at 1220 Market Street, Suite 300. Please bring your calendars to discuss further depositions (and a list of who you want to depose; for my side, I want to depose anyone you intend to present at trial).

2.  On the three items below in Bolger's letter:

A.  As to "briefing packets," we are gathering those now and hope to be able to provide you with copy sets by next week.

B.  On email, we are looking into this now. I thought print outs of our relevant emails had been produced but we will look into this in more detail now since David raised the issue. And I object to the threat that you will go to the court if we don't provide "prompt access" as you demand. I think it is incumbent upon us all to work these issues out and I am confident we can do that.

C.  Lastly, I disagree with David's statements as to Executive Session minutes, particularly as we have only deposed one participant (and he's not done).

Regards,
Paul

Paul Cottrell, Esq.
Tighe, Cottrell & Logan, P.A.
704 North King Street
Suite 500
Wilmington, DE 19801
302-658-6400
302-658-9836 Fax

----- Original Message -----
**From:** David T. Bolger
**To:** Paul Cottrell
**Cc:** Arena, Samuel ; Kingsley, Patrick ; Jim Green ; jseitz@svglaw.com ; Paul A. Logan
**Sent:** Tuesday, February 07, 2006 3:40 PM
**Subject:** D.M. Durkin, City of Newark

Paul - in discussing yesterday's deposition with Paul Logan, he indicated that Mr. Kalbacher testified that certain written "briefing packetss", were provided by Carl Luft to the Council members at their residences prior to Council meetings, and that Mr. Kalbacher indicated that he did not retain any copies of those documents. We were not previously aware that any such documents existed, but they are certainly

2/10/2006

within the scope of the discovery requests by Durkin and Federal. If they have been produced, please identify those bates numbers for us, otherwise, please make arrangements for the delivery and reproduction and delivery of those documents so that they are available for the deposition on Friday. I have to believe that Carl Luft and/or the City Secretary has some record of what was provided to Council members in advance of/for the public meetings.

Another area of our discovery that we have propounded, but to date not been received, relates to the production of electronic file data. Unless I am mistaken, we have not received any electronic files pertaining to this project from the City. Certainly the electronic files residing on the server drives on a City computer network system and/or the desktop/notebook computers of Carl Luft, Carol Houck, the Mayor, the City Secretary and others in the City employ who were involved in generating, transmitting or receiving any electronic data on this project, whether in the form of e-mail messages or other documents, fall within the ambit of Durkin and Federal's previous document discovery requests--see Definitions section of the respective document requests. Since Mr. Kalbacher testified yesterday that the City was anticipating litigation in the fall of 2003 when there were discussions concerning a potential termination of Durkin's contract, we trust that appropriate controls to secure the retention of all such data were put in place at or about that time. Initially, we will need a representation as to the nature, volume and location of electronic data generated and maintained by the City relating to this project, and what, if any, electronic information has not been preserved and the reasons why it was not maintained. At that point we can discuss the most expeditious manner of making those records available for our inspection or simply copied to CD-ROMs/DVD disks, and we can make our IT consultants available to work with the City in that regard to the extent required. In the event that the City, for whatever reason, is not prepared to provide prompt access to this data, we will involve the Court to compel production of this information.

Finally, although we haven't received any ruling from the Court on the Executive session materials, from your e-mails and our discussions, one of the positions you advanced was that we would be able to obtain the same or substantially similar information through the deposition process. However, Mr. Kalbacher's deposition testimony confirmed that is not the case; in fact, he could not recall the substance of what was discussed at any particular Executive session meeting, but instead recounted that the documents that were provided to Council and/or generated in the course of the Executive sessions would aid in refreshing his recollection of, and accurately reflect, what was discussed and decided at those particular sessions. Since this clearly displaces your argument that the information we are requesting is available from alternate sources (i.e., deposition testimony), and we have both a compelling need and clear right to confront and challenge the factual and legal efficacy of the Council's briefing background and reasons underlying the termination, I am requesting that you reconsider your refusal to provide those documents to us. Without your agreement to produce those documents, we intend to supplement our letter briefs to the Court to reflect this additional development.

Regards,

David.

David T. Bolger, Esquire

*Powell, Trachtman, Logan, Carrle & Lombardo, P.C.*
*475 Allendale Road, Suite 200*
*King of Prussia, PA  19406*
*(610) 354-9700, x131*
*(610) 354-9760 fax*
*(610) 304-7398 mobile*

2/10/2006

dbolger@powelltrachtman.com
www.powelltrachtman.com
Case 1:04-cv-00163-GMS    Document 309-4    Filed 10/25/2006    Page 6 of 27

DISCLAIMER: This communication, along with any documents, files or attachments, is intended only for the use of the addressee(s) and may contain privileged or confidential information. If you are not the named addressee(s), you are hereby notified that any dissemination, distribution, copying or other use of any information contained in this electronic transmission is strictly prohibited. If you have received this electronic communication in error, please notify the sender immediately by reply to this electronic message and destroy the original communication and all attachments without reading, printing or saving any of the information in any manner. Thank you.

**CITY OF NEWARK**
Delaware

December 9, 2003

TO:     Mayor Harold F. Godwin
        Members of City Council

FROM:   Carl F. Luft, City Manager

SUBJ:   Water Reservoir Meeting

We had a major meeting this morning with all companies and people involved in the dispute over the construction of our water reservoir. These included Paul Cottrell and Vicky Petrone from Tighe, Cottrell & Logan (our attorneys in this matter), URS, Roger Akin, me and staff, Durkin Construction Company, their attorney and engineering consultant, and a representative from the surety bonding company. Needless to say, it was a large contingent.

Unfortunately, we made little progress as the contractor essentially put us on notice that they intend to do nothing more in the way of safety, protection or construction, until such time the impasse on the liner issue is settled, at least in their opinion. Each "side" explained their positions in front of the surety representative. It is clear that Durkin Construction Company disagrees with the methods designed by URS for construction of the lower part of the liner. The meeting did nothing to change the degree of disagreement.

Following the meeting, we met with our representatives to discuss where we go from here. Paul Cottrell will write a letter to Federal Insurance Company, the surety, bringing them up to speed on the rationale behind our design. We will offer to help the surety company identify independent engineering consultants to provide another look and second opinion about the URS design procedures and criteria.

At the same time, URS will undergo some additional tests and samples to determine if the integrity of the reservoir base has diminished any since Durkin has slowed down and essentially stopped working. In addition, our attorneys have directed URS to account carefully for their time and services related to this dispute as a result of Durkin's breach of the current contract.

In summary, we still claim that Durkin is not performing the contract as specified and continue to support the URS design itself. Our attorneys have reviewed much of the correspondence and contract documents, and find nothing to lead us to believe otherwise.

NEW00246

A-57

Mayor and City Council
Page 2
December 9, 2003

Mr. Cottrell intends to put this on a fast track and encourage future actions by the
surety company in the immediate weeks ahead. I will report back with anything
further as the issue continues and develops. Please do not hesitate to contact me if
you have any questions.

CFL/mp
c:    Roger A. Akin, City Solicitor
      Paul Cottrell, Attorney
      Carol S. Houck, Assistant Administrator
      George L. Sarris, Finance Director
      Joseph A. Dombrowski, Water & Wastewater Director

NEW00246 A

A-58

**CITY OF NEWARK**
Delaware

January 23, 2004

**C O N F I D E N T I A L**

TO:    Mayor Harold F. Godwin
       Members of City Council

FROM:  Carl F. Luft, City Manager

SUBJ:  Reservoir Construction Contract Dispute

As mentioned in my Administrative Report this week, it is important that we meet in executive session to review the background and further direction related to the contract dispute over the reservoir construction by contractor Donald M. Durkin. I have asked our construction contract attorney, Paul Cottrell, to attend Monday's meeting and provide a concise update for you on this matter.

Our attorney has recommended that Durkin be declared in default of this contract and that their services be terminated. In preparation of the executive session, I am attaching confidential reports related to the contract dispute. It is important to remember that this material is **confidential** since this matter could possibly result in litigation. This is for your information only.

As you review this material, remember that Cottrell has discussed the issue of design vs. construction in detail with URS. He is confident the design is proper and that there are no problems or improprieties with the specifications.

I encourage you to ask whatever questions you may have on Monday night.

CFL/mp
Attachments
c:    Paul Cottrell, Tighe, Cottrell & Logan
      Roger A. Akin, City Solicitor
      Carol S. Houck, Assistant Administrator
      Joseph A. Dombrowski, Water & Wastewater Director
      George L. Sarris, Finance Director

NEW00225

A-59

Executive Session
9:45 pm. 2/2/04

Paul Cottrell, Mark Prendy — CH, CL, JD, GS, RA —

# 600,000 in claims ? no arbitration —
Dispute ?, losing # on project — low bid —
JC — was bid "fraudulent" ?
Hal — contracted Dublin — soil, compacted — 90%
        challenging engg (Dublin's)
Surety — went out + got their own

Finish C, '04 on budget — council — #
6.1 million — # 3.  Dublin          276,000 holding
                1.25 contingency
                20 spread —
              # 6.25 million

damages to claim — legal, engg. Exh "A"

Eng. explain — KK

⊗ Copy of motion —
                fulfill lawful obligation —
demand on surety to honor bond —
Dublin turned inward ?
Hpm  end —

NEW00151

**A-60**

Exec Session      3/27/04   9:15 A.

1) FOP Negotiations:

Dover 3% for 3 yrs - s/sift cost
Review over proposal - short pass out - Sheldon -

18¢   $1.10 - Dover    Shift diff'l, plus wage
                            all part of 3.5%

WC - third party dispute
    settlement?   part of Jedger, lawyer -

                            Bd
                Down - mediator - Glasson

2) Reservoir Suit

Bid doc's - almost done
litigation - Tech A - project to Se Suit

- ask Judge - stay contract suit until project done -
- revised suit papers -
- Durlin - GWRA setup -
    → lot of backup -
URS - not convincing - needs            more   time
civil suit - consider (forensic expert)

    → Out to bid - ?

NEW00461

A-61



**CITY MANAGER'S OFFICE**
CITY OF NEWARK
220 Elkton Road • P.O. Box 390 • Newark, Delaware 19715-0390

302-366-7020_____ • Fax 302-366-7160 • http://newark.de.us

May 24, 2004

The Honorable Mayor and City Council:

As desired by City Council, I hereby resign by position as City Manager of Newark effective May 25, 2004. Severance pay will be granted in the amount of one week of base pay and longevity for each year of continuous service I have completed.

Sincerely,

Carl F. Luft
City Manager

CFL/mp

A Council-Manager City
Committed to Service Excellence

NEW00269

A-62

I am responsible and would like to see it through.

If there was any mistake, it was that I trusted &
believed the experts who we hired ...
and so did everyone else for the City.

NEW00269A

A-63

Notes of Phone conv - Mark P + JoeD (9/11/03)
                                    Jim V + CSH

- fact that soil becomes eroded
  on hillside he built everytime
  it rains
  This always happens - burden on
  Contractor in contractor
Note #4. in Contract

My questions:
  1. - What is their protection of the
       slope?  Nothing.
     Have you thought it was sufficient?
     *should it we have pointed this out in
       inspection process. - yes-
  2. - Material over liner - eroded so
       needs to be placed again. - YES


  - "Durkin doesn't know what he's doing." Mark P
  - "Doesn't know if its Durkin who will be
      finishing this job."


  - Prep of letter going out to Durkin. ref letter
     of 9/10/03.


  -"Durkin making outrageous claims" - maybe in
   over his head - does he want to get thrown
   off the job.

     Durkin
  -*Has been put on notice about trench.
      + noted on log.

NEW16340
Plaintiff's Exhibit
DUR-61

* Retainage  — 10% of installed work until 50% completion of project.

     Then stop holding retainage.

* Stored Mat. — Pay Stored Mat. + retain 10%
     But release when stalled materials are installed.

OPTION
Ask contractor to construct more armor of the bottom / slope + bottom of Reservoir

Manage costs against risks ⟹

     90% of time don't expect to fall below that level

* other options — armor the side slope — more fabri form / rip rap / shell support

Time extension due to weather  * He does own the erosion problems.
     ie. clean out of E + S pond
          inability to work — wet question.
          could also play into erosion problems.
     * unforeseen condition

NEW16341

URS

Jerry Katsmaier — why cover the liner at all 9/11/03
90% liner won't be exposed

Part below 169 elevation
rest of 10% exposure some only — during life

Kennett Square — covered w/ 4 ml poly — Protection visqueen?

I kP
Got a feeling they are running out of $ "

Sequence of construction   Draw 7 — only E+S.

* Consider / ask solicitor create letter
    that copies bonding company.

Isabelle  2 wks away — Volume large.

How soon ltr. out. — today  9/11/03.

NEW163242

A-66



# CITY SOLICITOR'S OFFICE

CITY OF NEWARK

220 Elkton Road • P.O. Box 390 • Newark, Delaware 19715-0390

302-366-7070 • Fax 302-366-7067 • http://newark.de.us

April 20, 2004

BY FAX:  571-1750

James W. Semple, Esquire
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
P. O. Box 2306
Wilmington, DE  19899-2306

RE:  Newark City Council Meeting - April 26, 2004

Dear Jim:

This letter follows our discussion on the phone earlier this afternoon.

As promised, I am faxing with this letter a copy of the City Council agenda for April 26.  The URS public presentation is Item 10.A.3 on the agenda.  In a memo from me to the Mayor and Council this week, I will strongly advise them not to raise any questions of URS during the presentation.  Similarly, I will advise that this matter not be opened for public comment or questions as if the matter were to be the subject of a public hearing.

Item 10.C on the agenda is the executive session which will follow the regular meeting.  URS representatives will be invited into that session (with Mr. Lintner of your firm) to answer any questions the Mayor and Council have regarding the reservoir, the design, or issues addressed during the public presentation.

James W. Semple, Esquire
Page Two
April 20, 2004


      Please do not hesitate to contact me if there are questions regarding these matters.

                          Sincerely,

                          Roger A. Akin
                          City Solicitor

RAA:pmf
Enc.
cc - Carl F. Luft, City Manager
       Carol Houck, Assistant Administrator
       Joseph Dombrowski, Water & Waste Water Director
       George Sarris, Finance Director
       Paul Cottrell, Esquire

NEW00351

PRIVILEGED - ATTORNEY-CLIENT COMMUNICATION

CITY OF NEWARK
DELAWARE

May 27, 2004

TO:     Mayor & Council

FROM:   Roger A. Akin, City Solicitor

RE:     Reservoir Litigation Status Report

The purpose of this memorandum is to update you on recent developments in the reservoir litigation since Council met on May 24, 2004.

On Tuesday morning our construction counsel (Mr. Cottrell and Ms. Petrone) conveyed to URS the fact that our separately retained engineer (Mr. Calabria) had come to the conclusion that the Zone 4 materials and the means by which they were to be installed per the URS reservoir design would present constructibility problems. As was described during the May 24 executive session, it is Mr. Calabria's opinion that the soils would wick underlying moisture upward and the saturated soils would slump or slide during or after construction.

When learning of Mr. Calabria's conclusion, URS immediately requested a "technical" meeting. Later on Tuesday representatives of URS met with Mr. Calabria at URS offices. Our attorneys were present. URS was also represented at the meeting.

I am informed that URS' predictable initial reaction was to become extremely defensive about its design. URS engineers and Mr. Calabria spent some time discussing the design, graphically depicting different theories, and the like. URS continued to maintain that Mr. Calabria had made certain miscalculations and committed other errors.

At the close of this "technical" meeting, URS proposed that a portion of its finally designed system be built at the reservoir site. URS argued that, while Mr. Calabria's theory may have been borne out in a controlled lab setting, it may or may

Plaintiff's Exhibit
DUR - 37

NEW10628

Mayor & Council
May 27, 2004
Page 2

not be borne out in actual field application. Calabria, apparently wanting to show that he has an open scientific mind. agreed to have his conclusion tested in a carefully constructed and monitored field test.

Today approximately ten individuals toured the reservoir. They included Calabria and his partner, several URS representatives, Carol Houck and Joe Dombrowski. At the present time all concerned are negotiating the details of a protocol which will govern setting up and then running the test. As I understand it, a section of the system will be built with Zone 4 materials and then will be soaked over an extended period. The sample is being constructed by a URS-selected contractor. I am informed that construction is being funded by URS. Mr. Calabria will confirm the validity of the test section before the test is run. As I understand it, Joe Dombrowski is also running his own independent test.

It is presently anticipated that the test section will be built next week, and that soaking will begin on or about June 4, 2004. It is hoped that results will be verified and final conclusions reached on or about June 12.

Given the importance of "getting it right" and the substantial nature of this investment and the protection of the City's legal position, I concur that this additional two week period of delay is necessary and proper. Presumably by June 12 we will know if Calabria is right or wrong in actual field application.

Yesterday afternoon U. S. District Judge Sleet convened a teleconference with regard to Durkin's request for an early hearing to try the issue of whether or not Durkin was properly terminated by the City. The Court has denied Durkin the right to such a hearing. He is essentially denying Durkin a preliminary injunction.

Judge Sleet has directed the parties to take some time to prepare and present legal briefs and supporting documents on the issue of wrongful termination. Those materials will be presented to the Court and considered in due course.

We perceived that Durkin would like early resolution of the

NEW10629

A-70

Mayor & Council
May 27, 2004
Page 3


wrongful termination question.  Hence, some delay in getting that
resolution may (or may not) cause Durkin to be more amenable to a
settlement or a mediation of certain issues.  Candidly, most
activity in the matter will now await the results of the on-site
testing.  Presumably those results will tell the City what its
litigation goal and strategy should be.  (Note: Even if the test
results confirm Mr. Calabria's conclusion regarding
constructibility, it is not presently known whether URS will
concede engineering error.)

    I would like to reiterate that this is a communication
protected by the attorney-client privilege.  Since this matter is
now in litigation, and since this memo discusses strategies and
the theories of counsel, the memorandum should not be shared with
any third parties.

    Please do not hesitate to contact me if there are any
questions.

    Thank you.

cc: Carl Luft, City Manager
    Carol Houck, Assistant Administrator
    Joseph Dombrowski, Water & Wastewater Director
    Paul Cottrell, Esq. (via facsimile)


NEW10630

First Federal Plaza
Suite 500
Wilmington, DE 19899
302.658.6400
302.658.9836 Fax

# TIGHE, COTTRELL & LOGAN, P.A.

# Fax

| To: | Carol Houck (for City of Newark distribution) | From: | Vicky Petrone |
|-----|-----|-----|-----|
| Fax: | 366-7160 | Pages: | 13 |
| Phone: | | Date: | 1/20/2004 |
| Re: | City of Newark | CC: | Roger Akin / 656-3697 |
| | | | Jill Voeller / 791-0708 (for URS distribution) |

● **Comments:**

Please find the following report from the Surety and the independent engineer.

I direct your attention to Paragraph 3 of the letter from the Surety, in which she states that the Surety is under no obligation to take action. This is correct. The Surety's obligation arises after 1) the Surety is notified regarding a default and 2) after meeting with the Surety, declaring a default and terminating the contract. You satisfied step 1 in November. We have not formally taken step 2 since we were waiting for this report. On Thursday we can discuss this option.

The pages comprising this facsimile transmission contain confidential information from either this law firm or client. This information is intended solely for use by the individual entity named as the recipient hereof. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this transmission is prohibited. If you have received this transmission in error, please notify us by telephone immediately so that we may arrange to retrieve the transmission at no cost to you.

NEW 16304

A-72

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* | |
| vs. | |
| CITY OF NEWARK, et al., *Defendants* | CASE NO. 04-0163-GMS |
| and | |
| CITY OF NEWARK, *Third-Party Plaintiff* | |
| vs. | |
| DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | |
| | |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Intervenor* | |

## UNSWORN DECLARATION OF SHERRY RUGGIERO FALLON UNDER 28 U.S.C. SECTION 1746 IN SUPPORT OF PLAINTIFF'S MOTION FOR REASONABLE ATTORNEY'S FEES

I, Sherry Ruggiero Fallon, hereby state that the following facts are true and correct to the best of my knowledge, information and belief:

1.    I make this declaration on my own personal knowledge and I will testify hereto if called as a witness.

2.    My educational background is as follows: University of Pennsylvania, B.A., 1983; Delaware School of Law of Widener University, J.D., 1986.  I was admitted to the Bar of the States of Delaware and New Jersey in 1986, and I am currently a member in good standing in both states.  I am also admitted in the following jurisdictions: United States District Court for the District of Delaware, 1986; United States District Court for the District of New Jersey, 1986; U.S. Court of Appeals for the Third Circuit, 1987.

A-73

3.      Since 1986, I have been in private practice, exclusively with the law firm of Tybout, Redfearn & Pell.  I am presently a Senior Partner and Secretary of the firm.

4.      I have extensive experience in the preparation, trial and management of construction cases and other civil litigation.

5.      My litigation experience includes representation of a substantial number of plaintiffs and defendants in general civil litigation actions, including construction, employment and insurance coverage.  For example, I have served as lead counsel and/or local counsel,  in the following matters:

Council of Unit Owners of Sea Colony East Condominiums v. Carl M. Freeman Associates, et al., Del Super., C.A.Nos. 86C-AU-49 through 52;

Collier v. Target Stores Corporation, D. Del., C.A.No.03-1144-SLR;

Heddinger v. Ashland Oil, Inc., et al., Del. Super., C.A.No.06C-05-295 BEN;

Murphy v. United States Automobile Association, et al., Del. Super. 04C-07-003 RFS;

McNight v. USAA Casualty Insurance Company, Del. Super., 04C-09-134 SCD.

6.      I am a currently a member of the Delaware and New Jersey Bar, a member of the American Bar Association,  a member of the Defense Counsel of Delaware and a member of the Delaware Chapter of American Board of Trial Advocates (ABOTA). I have been a member of Phi Delta Phi Legal Fraternity since 1985.  I was a member of the Moot Court Honor Society from 1985-1986 and a member of the Delaware Journal of Corporate Law from 1985-1986.

7.      I have known David T. Bolger, Esquire, since we attended Widener University School of Law, commencing in 1983 and graduating in 1986.  I have not practiced law with Mr. Bolger, but I have personal knowledge of his extensive experience practicing in the field of construction litigation.

8.    To successfully litigate wrongful termination, construction cases, the practitioner needs to be both skillful and diligent.  Additionally, Section 1983 civil rights cases are often complicated particularly because the adversary is a governmental entity

and they involve complex issues of immunity and whether liberty or property interests are involved and have been denied without the due process of law.

9.    Successful representation of a plaintiff in complex construction cases, where wrongful termination has been alleged, and where there are allegations of violation of the plaintiff's civil rights requires a high degree of competence and dedication, as well as a greater time commitment than would be required of less complex areas of law.

10.    In my years of practice, I have become familiar with the market rates for attorneys who engage in construction, civil rights and other civil litigation in the geographical boundaries of the Third Circuit, including Wilmington, Delaware and Philadelphia, Pennsylvania.

11.    I am personally familiar with the background, skill, reputation and litigation practice of David T. Bolger, Esquire.

12.    I understand that Mr. Logan is a partner with Powell, Trachtman, Logan, Carrle & Lombardo, P.C., who was lead counsel in this case, has been practicing law for over twenty-five (25) years and has extensive litigation experience, particularly in the areas of construction litigation and civil rights claims.

13.    Paul A. Logan, Esquire and David T. Bolger, Esquire's requested rate of $250 per hour is well within the range of rates prevailing in the community for representation before the District Court of Delaware, and other services of similar complexity and specialization of lawyers whose skill, experience and reputation are reasonably comparable to theirs.

14.    I also understand Marsha E. Flora, Esquire participated in the trial and trial preparation with Mr. Logan.

15.    I understand that Ms. Flora is a former partner with Lavin, O'Neil, Ricci, *et al* in Philadelphia, Pennsylvania, has been practicing law for fourteen (14) years and has extensive litigation experience.

16.    I am familiar with the range of rates prevailing in the community for partner-level attorneys with the background, skill and experience of Ms. Flora.

17.    The hourly rate of $200 for Ms. Flora is reasonable and within the range of rates prevailing in the community for attorneys with the litigation background, skill and experience of Ms. Flora.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on October 23, 2006.


SHERRY RUGGIERO FALLON #2464
Tybout, Redfearn & Pell
750 S. Madison St., Suite 400
P.O. Box 2092
Wilmington, DE   19899-2092
(302)658-6901

A-76

**PAGES A-77 THROUGH A-99**

**INTENTIONALLY LEFT BLANK**