## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DONALD M. DURKIN CONTRACTING, INC., *Plaintiff*

    vs.

CITY OF NEWARK, et al., *Defendants*

    and

CITY OF NEWARK, *Third-Party Plaintiff*

    vs.

DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants*

CASE NO. 04-0163-GMS

ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Intervenor*

**SUPPLEMENTAL APPENDIX TO APPENDIX DOCKETED AT D.I. 309 TO OPENING BRIEF OF PLAINTIFF IN SUPPORT OF MOTION IN SUPPORT OF ATTORNEYS' FEES, COSTS AND POST-JUDGMENT INTEREST PURSUANT TO 42 U.S.C. §1988 AND FEDERAL RULE OF CIVIL PROCEDURE 54 (D.I. 308)**

**(A715 – A891)**

**POWELL, TRACHTMAN, LOGAN, CARRLE & LOMBARDO, P.C.**
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: (610) 354-9700
Facsimile: (610) 354-9760

**TYBOUT, REDFEARN & PELL**

David G. Culley
Delaware Supreme Court ID #2141
750 S. Madison Street, Suite 400
Wilmington, DE 19899-2092
Telephone: (302) 658-6901
Facsimile: (302) 658-4018

*Attorneys for Plaintiff and Third Party Defendant Donald M. Durkin Contracting*

Dated: January 26, 2007

## TABLE OF CONTENTS

**Document**                                                                                                    **Page**

Supplemental Unsworn Declaration of Paul A. Logan, Esquire in Support
    of Plaintiff's Motion for Attorneys' Fees, Costs and Post-Judgment
    Interest Pursuant to 42 U.S.C. Section 1988 and Federal
    Rule of Civil Procedure 54 ........................................................................ A-715

Paul A. Logan, Esquire Timesheets for Post Trial Activities ............................... A-736

Davit T. Bolger, Esquire Timesheets for Post-Trial Activities ............................. A-755

Marsha E. Flora, Esquire Timesheets for Post Trial Activities ............................ A-776

Expense Report dated January 22, 2007 .............................................................. A-846

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* | |
| vs. | |
| CITY OF NEWARK, et al., *Defendants* | CASE NO. 04-0163-GMS |
| and | |
| CITY OF NEWARK, *Third-Party Plaintiff* | |
| vs. | |
| DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | |

| | |
|---|---|
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, **Intervenor** | |

### SUPPLEMENTAL UNSWORN DECLARATION OF PAUL A. LOGAN, ESQUIRE IN SUPPORT OF PLAINTIFF'S MOTION (D.I. 307) FOR ATTRONEYS' FEES, COSTS AND POST-JUDGMENT INTEREST PURSUANT TO 42 U.S.C. §1988 AND FEDERAL RULE OF CIVIL PROCEDURE 54

I, Paul A. Logan, Esquire, being of legal age, do herby certify as follows:

1.     I am an attorney for Plaintiff and Third Party Defendant Donald M. Durkin Contracting, Inc. ("Durkin") in the above referenced matter, and as such, I have personal knowledge of the facts and circumstances of this case and of the matter contained within this Supplemental Declaration. If called as a witness, I am competent to testify as to the facts set forth herein.

2.    I previously submitted a Declaration (D.I. 309 at Appendix ("App.") A-1-A19) in support of Durkin's Motion for Attorneys' Fees, Costs and Post-Judgment Interest pursuant to 42 U.S.C. §1988 and Federal Rule of Civil Procedure 54 (D.I. 307) filed on October 25, 2006.

3.    I make this Supplemental Declaration in support of Durkin's Motion for Attorneys' Fees, Costs and Post-Judgment Interest pursuant to 42 U.S.C. §1988 and Federal Rule of Civil Procedure 54 to supplement the attorneys' fees and costs incurred.

### City's Blatant Disregard of Discovery Rules Created a Difficult Course of Litigation

4.    The City of Newark ("City")'s blatant disregard of its discovery obligations under the Federal Rules of Civil Procedure caused great prejudice and injury to Durkin and created an unnecessarily difficult course of litigation.

5.    The City's continued discovery violations up through and including the time of trial caused Durkin to incur needless attorneys' fees.

6.    The City obstructed the discovery process from the inception of this case.

7.    Durkin served each member of City Council with a Request for Production of Documents. *See* Request for Production of Documents directed to Athey attached as Exhibit "A" to my October 25, 2006 Declaration (D.I. 309) (hereinafter "October Declaration") at A-20 to A-25.

8.    On or about September 15, 2005 Durkin served a request for Production of Documents on the City. *See* Exhibit "B" to October Declaration at A-26 to A-31.

9.    The Requests asked for, *inter alia,* all documents relating to the Reservoir Project and Durkin, and all documents relied upon when voting to terminate Durkin. *Id.*

10.    The City and Council did not timely respond to the Requests.

11.    On November 22, 2005 I wrote to counsel for the City indicating that it is imperative that the documents in response to the Request for Production be produced so that depositions could be scheduled.  *See* Correspondence from Paul A. Logan, Esquire to Paul Cottrell, Esquire dated November 22, 2005 attached as Exhibit "C" to October Declaration at A-32 to A-33.

12.    On November 29, 2005, I wrote to counsel for the City again requesting the documents from the Members of the City Council and the Mayor.  *See* Correspondence from Paul A. Logan, Esquire to Paul Cottrell, Esquire dated November 29, 2005 attached as Exhibit "D" to October Declaration at A-34 to A-36.

13.    On December 5, 2005, I indicated that due to the discovery schedule, and with an expectation that the requested documents would be received "next week", counsel for the City was to confirm the depositions for December 19 and 20, 2005.  *See* Correspondence from Paul A. Logan, Esquire to Paul Cottrell, Esquire dated December 5, 2005 attached as Exhibit "E" to October Declaration at A-37 to A-38.

14.    In another good faith attempt to encourage the City to comply with its discovery obligations, I wrote to Paul Cottrell, Esquire on December 21, 2005, indicating that Durkin must receive the documents next week; otherwise, I indicated that I would need to seek Court intervention.  *See* Correspondence from Paul A. Logan, Esquire to Paul Cottrell, Esquire dated December 21, 2005 attached as Exhibit "F" to October Declaration at A-39 to A-41.

15.    Late in December 2005, the City produced documents.  However, the production was, and continued to be deficient, even up through the close of Durkin's case-in-chief.  In fact, there has not been one (1) Project-related document that has ever been produced by City Council.

KOP:359680v1 3514-04

16.    Upon reviewing the documents produced in late December 2005, I immediately emailed counsel for the City on December 29, 2005 indicating that none of the materials produced contained a single document from any of the Council Members. *See* Email from Paul A. Logan, Esquire to Paul Cottrell, Esquire dated December 29, 2005 attached as Exhibit "G" to October Declaration at A-42 to A-43.

17.    I followed up my email on December 30, 2005, again confirming that even though the Council Members were served with discovery on September 15, 2005, they still had not produced a single document. *See* Correspondence from Paul A. Logan, Esquire to Paul Cottrell, Esquire dated December 30, 2005 attached as Exhibit "H" to October Declaration at A-44 to A-46.

18.    On January 8, 2006, I emailed counsel for the City, explaining in detail my review of the documents and the fact that the City's responses were deficient in that they still did not produce a single document from any of the Council Members.   *See* Email from Paul A. Logan, Esquire to Paul Cottrell, Esquire dated January 8, 2006 attached as Exhibit "I" to October Declaration at A-47 to A-48.

19.    On February 6, 2006, Council Member Kalbacher was deposed and for the first time Durkin learned that the City provided its Council Members with "briefing packets".

20.    My office immediately followed up with an email to counsel for the City on February 7, 2006 requesting the immediate production and delivery of the "briefing packets" so that they would be available for the next deposition that was scheduled for February 10, 2006. *See* Email from David T. Bolger, Esquire to Paul Cottrell, Esquire dated February 7, 2006 attached as Exhibit "J" to October Declaration at A-49 to A-52.

4

21.     Paul Cottrell, Esquire, counsel for the City responded on February 9, 2006 indicating that "we are gathering [the 'briefing packets'] now and hope to be able to provide you with copy sets next week." *See* Email from Paul Cottrell, Esquire to David T. Bolger, Esquire dated February 9, 2006 attached as Exhibit "K" to October Declaration at A-53 to A-56.

22.     Durkin learned during the depositions of former Council Member Kalbacher and current Mayor Funk that both Kalbacher and Funk destroy the "briefing packets" and other information provided to them in advance of the City Council Meetings.

### City's Late Production of Significant Documents

23.     The City produced three (3) groups of documents that were previously (and improperly) withheld during the entire discovery phase of this matter.   The 1st group was produced approximately a week before trial; the 2nd group was produced on the day trial was originally scheduled to begin; and the 3rd group was produced *after* the close of Durkin's case-in-chief.

24.     Documents contained in these three (3) groups could have streamlined this matter and saved Durkin hundreds of thousands of dollars in attorneys' fees and costs.

25.     One problem Durkin faced in preparing this matter for trial was that most of the Council Members (as well as the City Manager Carl Luft) testified that they were unable to recall much information surrounding the termination of Durkin and the events that followed.

26.     Some of these documents that were improperly withheld by the City could have been used to streamline the process, save attorneys' fees and time, refresh recollections or impeach sworn testimony.

27.    Durkin was forced to spend time, money and resources in certain areas of this litigation that could have been short circuited, if the City had just fully and faithfully complied with its discovery obligations.

28.    The City's withholding of documents frustrated Durkin's discovery efforts, trial preparation and caused Durkin to incur additional attorneys' fees.

29.    Durkin sought a prompt resolution to its dispute with the City by filing a Motion for Preliminary and Permanent Injunction on April 7, 2004. (D.I. 6).

30.    The City withheld certain documents that were issue and/or claim-dispositive.

31.    For example, the City withheld a January 20, 2004 memorandum (NEW16304) that indicated that the City was well aware of the legal infirmities in the steps it took to terminate Durkin.

32.    Durkin and its surety spent two (2) years – and countless legal fees – attempting to pin down the City's position on the alleged "notice of default" and "notice of termination, which the January 20, 2004 document would have conclusively refuted the arguments and positions taken by the City in its pleadings.

**Discovery Was Voluminous and the Construction and Design Issues Were Complex**

33.    Discovery in this matter was extensive.

34.    Approximately twenty one (21) banker's boxes of documents were produced, which included over 50,000 pages of documents, thousands of photographs and several sets of construction drawings.

35.    My firm had to thoroughly review and analyze these documents to conduct discovery in this matter and adequately prepare for trial.

6

36.     Myself, and attorneys David T. Bolger and Marsha E. Flora had to master the extensive documents produced, thousands of photographs and multiple sets of construction drawings, select documents for depositions and ultimately for trial exhibits.

37.     Not only was the volume of documents, drawings and photographs extensive, the construction and design issues were extremely complex.

38.     The complexity of the case is also demonstrated by the fact there were seven (7) engineering experts, analysis of the performance of two (2) separate prime contractors, and multiple types and manner of testing performed, including soil testing and analysis and stability calculations.

39.     Over twenty (20) individuals were deposed – sometimes expanding multiple days.

40.     There were many legal issues that had to be researched and briefed, including, but not limited to, notice issues, breach of contract issues, civil rights violations, liberty interests, judicial admissions, expert testimony, sharing of experts, spoliation, joint defense, attorney client privilege, attorney work product, discovery abuses and sanctions.

41.     During the course of the litigation, Durkin filed a Motion for Preliminary and Permanent Injunction (D.I. 5) and a Motion for Partial Summary Judgment (D.I. 26).

42.     Durkin filed eight (8) Motions in Limine (D.I. 175, 178, 181, 184, 190, 193, 196 and 205).

43.     Durkin filed four (4) Motions or supplemental briefs for sanctions against the City for discovery abuses.  (D.I. 246, 261, 263 and 279).

44.     Durkin also filed a Motion to Strike the City's Motions in Limine.  (D.I. 203).

45.     Durkin responded to ten (10) Motions in Limine filed by parties in this matter. (D.I. 208, 211, 214, 215, 216, 217, 218, 219, 220 and 223).

7

46.     Durkin filed five (5) Reply Briefs regarding Motions in Limine. (D.I. 233, 234, 235, 236 and 237).

47.     Durkin also filed a Motion to Preclude the City from offering additional affirmative defenses (D.I. 271) and an Answering Brief in Opposition to the City's Motion for Directed Verdict. (D.I. 280).

### The Goals of this Litigation and the Jury Verdict

48.     In the litigation, Durkin sought, as set forth in its Complaint, compensatory damages for the City's breach of contract, including compensatory damages for unpaid cost of work as of the date of termination, post termination costs and expenses, including interest. Durkin also sought compensatory damages for the City's violation of Durkin's civil rights, including interest. (D.I. 1).

49.     After an eight (8) day trial and after several hours of deliberation, the Jury returned a Verdict in the amount of $36,667,573.33 for Durkin and against the City. (D.I. 298).

50.     Specifically, the Jury found that Durkin was entitled to: compensatory damages from the City for work performed in the amount of $5,492,666.55 (Jury Verdict Form I.A.1): compensatory damages for post termination incurred expenses in the amount of $6,174,905.78 (Jury Verdict Form I.A.2); and $25,000,000.00 for violation of civil rights (Jury Verdict Form I.B.1).

### My Background and the Background of Attorneys David T. Bolger and Marsha E. Flora

51.     I graduated from the University of Illinois in 1973 with a Bachelor of Science in engineering and business.

52.     I received my law degree from the University of Toledo School of Law in 1979 with honors. I have been practicing law for twenty seven (27) years.

8

53.    From 1979 until 1981 I served as Assistant Attorney General for the Commonwealth of Pennsylvania, Department of Transportation.

54.    In 1981 I entered private practice, focusing on the representation of contractors and businesses which deal with local, state and federal governments.

55.    I am licensed to practice in Delaware, Pennsylvania, New Jersey, Maryland, and North Carolina.

56.    I am also admitted to practice in the following Courts: United States Supreme Court; United States Third Circuit Court of Appeals; United States District Court, Eastern District of Pennsylvania; United States District Court, Middle District of Pennsylvania; United States District Court, Western District of Pennsylvania; United States District Court, District of New Jersey; United States District Court, District of Maryland; United States District Court, District of Delaware; United States Tax Court; and United States Court of Federal Claims.

57.    I am a Founding Partner of Powell, Trachtman, Logan, Carrle & Lombardo, P.C. in King of Prussia, Pennsylvania.

58.    I am currently the Township Solicitor for Solebury Township in Bucks County, Pennsylvania.

59.    For 2005 and 2006 I have received *Philadelphia Magazine's* designation of "Super Lawyer: Construction Litigation."

60.    I have also been qualified as an expert witness in construction litigation cases.

61.    I am Durkin's lead counsel in this matter.

62.    David T. Bolger, Esquire and Marsha E. Flora, Esquire assisted me in preparing this case for trial and in trying this case.

9

63.    David T. Bolger, Esquire is a partner with Powell, Trachtman, Logan, Carrle & Lombardo, has been practicing law for twenty (20) years and has extensive construction litigation experience.  He graduated from Delaware School of Law of Widener University in 1986.  Mr. Bolger has served as an adjunct counsel to a multi-disciplinary contracting firm with offices throughout the country.  In that capacity, Mr. Bolger has provided all manner of legal services to the various subsidiary organizations, to include advice on estimating and budgeting procedures, contract review and administration, project management and supervision, contractor licensing and registration, labor and employment issues, claims review and prosecution, litigation management, and the sale of corporate assets.   Mr. Bolger is licensed to practice in Pennsylvania, North Carolina, Third Circuit Court of Appeals and the United States Court of Federal Claims.  This Court admitted Mr. Bolger *pro hac vice* for this case.

64.    Marsha E. Flora, Esquire is a former partner with Lavin, O'Neil, Ricci, *et al* in Philadelphia, Pennsylvania.  Ms. Flora has been practicing law for fourteen (14) years.  She graduated from Dickinson School of Law in 1992.  She has extensive litigation experience focusing on complex litigation, including construction litigation.  Ms. Flora is an experienced litigator with experience in coordinating and managing national litigation for General Motors Corporation, General Motors of Canada, Suzuki, American Suzuki and CAMI.   She has represented clients in complex litigation in over twenty (20) states.  She is licensed to practice in Pennsylvania, New Jersey and the Third Circuit Court of Appeals.  This Court admitted Ms. Flora *pro hac vice* for this case.

65.    While David T. Bolger, Esquire, Marsha E. Flora, Esquire and I each handled numerous issues in this matter, we employed a division of labor to avoid unnecessary duplication of effort.  I concentrated on the depositions, trial and overall case management and trial strategy.

KOP:359680v1 3514-04

David T. Bolger, Esquire and Marsha E. Flora, Esquire concentrated on motions, briefing, pre-trial filings, trial preparation and extensive document management. David T. Bolger, Esquire oversaw most of the final work product in all the briefing and pre-trial submissions. David T. Bolger, Esquire helped to prepare witnesses for trial. He concentrated on the preparation and presentation of expert witness Thomas Ramsey and fact witness Archie Filshill at trial. Marsha E. Flora, Esquire mastered and organized all of the evidence used at trial. She conducted the majority of the research and drafted the majority of the pre-trial motions and submissions. David T. Bolger, Esquire and Marsha E. Flora, Esquire are also concentrating on all of the post-trial submissions.

66.    From time to time throughout the course of this litigation, I have used the services of several associates in my firm to conduct associate related tasks. The associates who performed tasks on this file from time to time for which my firm is seeking compensation are: M.J. Pedersen; K.K. Carton, Jr.; and J.S. Bainbridge.

67.    Also for appropriate tasks I used the services of paralegals. The paralegals who performed tasks on this file from time to time were D. Pierson, S.M. Goss and A.M. Detitto.

68.    Also from time to time I enlisted the help of the Durkins in order to save money in attorneys' fees. For example, the Durkins conducted various Reservoir site visits to obtain photographs for review and use during this matter. The Durkins also helped in analyzing certain of the documents produced and in organizing and collecting documentation in support of the damages claimed.

69.    To the best of my ability, I endeavored to limit the time expended on discovery, briefing and trial, consistent with my professional obligation to my clients and the high financial losses they were suffering.

KOP:359680v1 3514-04

70.     I believe I achieved these goals and the services for which my firm requests compensation as set forth herein were reasonable and necessary to the prosecution of this action.

## Time Keeping Records

71.     My office's normal practice of keeping time for billing purposes consists of recording electronically time, the date, a timekeeping code, and a brief description of the services rendered into a software program called Carpe Diem.  The information can then be collated and retrieved.  A document setting forth descriptions for the Carpe Diem Phase Codes and the Task Codes referenced on my firm's timesheets is found at App. A100-A102 (D.I. 309).

72.     The timesheets for the attorneys and paralegals who did work on this file for which my firm is seeking payment are found in the Appendix.  Timesheets for Paul A. Logan, Esquire App. A103-A390 (D.I. 309) and App. A-736 to A-754.  Timesheets for David T. Bolger, Esquire App. A391-A508 (D.I. 309) and App. A-755 to A-775.  Timesheets for Marsha E. Flora, Esquire App. A509-A627 (D.I. 309) and App. A-776 to A-845.  Timesheets for M.J. Pedersen, Esquire App. A628-A639 (D.I. 309).  Timesheets for K.K. Carton, Jr., Esquire App. A640-A644 (D.I. 309).  Timesheets for J.S. Bainbridge, Esquire App. A645-A654 (D.I. 309).  Timesheets for Paralegal S.M. Goss App. A655-A656 (D.I. 309).  Timesheets for Paralegal D.R. Pierson App. A657-A662 (D.I. 309). Timesheets for Paralegal A.M. Detitto App. A663-A665 (D.I. 309).

## Reasonable Hourly Rates

73.     During the course of this litigation my hourly rate was $250 per hour.  My rate of $250 per hour is the normal rate I regularly bill clients who pay on an hourly, non-contingent basis.  I am familiar with the hourly rates charged in many areas, especially Philadelphia and Wilmington.  In my opinion, my rate of $250 per hour is not excess of the usual and customary

rates for Philadelphia or Wilmington attorneys who enjoy comparable reputations, skill and experience.

74.    My normal billing rate as of January 1, 2005 was $275 per hour. However, based on the financial constraints of Durkin, I have never increased my rate from $250 for this litigation.

75.    During the course of this litigation David T. Bolger, Esquire's hourly rate was $250 per hour. Mr. Bolger's rate of $250 per hour is the normal rate my firm regularly bills clients who pay on an hourly, non-contingent basis. I am familiar with the hourly rates charged in many areas, especially Philadelphia and Wilmington. In my opinion, Mr. Bolger's hourly rate of $250 per hour is not excess of the usual and customary rates for Philadelphia or Wilmington attorneys who enjoy comparable reputations, skill and experience.

76.    Mr. Bolger's billing rate as of January 1, 2005 was $275 per hour. However, based on the financial constraints of Durkin, our firm has never increased his rate from $250 for this litigation.

77.    During the course of this litigation Marsha E. Flora, Esquire's hourly rate was $200 per hour. Ms. Flora's rate of $200 per hour is the normal rate my firm regularly bills clients who pay on an hourly, non-contingent basis. I am familiar with the hourly rates charged in many areas, especially Philadelphia and Wilmington. In my opinion, Ms. Flora's hourly rate of $200 per hour is not excess of the usual and customary rates for Philadelphia or Wilmington attorneys who enjoy comparable reputations, skill and experience.

78.    During the course of this litigation three (3) associates did work on this file for which my firm is seeking reimbursement. These associates, their hourly rates and experience is listed in the chart below:

13

| Associate | Rate | Experience |
|---|---|---|
| M.J. Pedersen | $175 | Practicing for approximately 9 years |
| K.K. Carton, Jr. | $175 | Practicing for approximately 7 years |
| J.S. Bainbridge | $150 | Practice for approximately 6 years |

79.    The hourly rates for the associates listed above of $150 per hour and $175 per hour are the normal rates my firm regularly bills clients who pay on an hourly, non-contingent basis for associates with the relative experience listed above.  I am familiar with the hourly rates charged in many areas, especially Philadelphia and Wilmington for associates.  In my opinion, the associate hourly rates of $150 per hour and $175 per hour are not excess of the usual and customary rates for Philadelphia or Wilmington attorneys who enjoy comparable reputations, skill and experience.

80.    During the course of this litigation the hourly rate for Paralegals D. Pierson, S.M. Goss and A.M. Detitto was $60 per hour.  The Paralegal's rate of $60 per hour is the normal rate my firm regularly bills clients who pay on an hourly, non-contingent basis.  I am familiar with the hourly rates charged in many areas, especially Philadelphia and Wilmington.  In my opinion, the Paralegal hourly rate of $60 per hour is not excess of the usual and customary rates for Philadelphia or Wilmington Paralegal who enjoy comparable reputations, skill and experience.

81.    In the exercise of billing judgment I have eliminated 38.5 hours representing $7,117.50.[1]

---

[1] The 38.5 hours eliminated representing $7,117.50 consists of the following:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Crawley | 1.4 | $175 | $245 |
| Star | 4.4 | $150 | $660 |

14

82.    The time set forth in this declaration is taken from my office records.  I believe that this time accurately reflects the time and services for this case and for which my firm is seeking payment.

### Total Lodestar Time for Litigation Case Assessment, Development and Evaluation[2]

83.    Litigation case assessment, development and evaluation includes fact investigation and development, analysis/strategy, work with experts and consultants, document and file management, budgeting, settlement (and non-binding ADR, if applicable), and other case assessment, development and evaluation.

84.    I spent 908.1 hours at $250 per hour for $227,025.00 on litigation case assessment, development and evaluation.  *See* App. A103-A285 (D.I. 309).

85.    David T. Bolger, Esquire spent 336.3 hours at $250 per hour for $84,075.00 on litigation case assessment, development and evaluation.  *See* App. A391-A446 (D.I. 309).

86.    Marsha E. Flora, Esquire spent 42.5 hours at $200 per hour for $8,000.00 on litigation case assessment, development and evaluation.  *See* App. A509-A517 (D.I. 309).

87.    Associate M.J. Pedersen, Esquire spent 12.5 hours at $175 per hour for $2,187.50 on litigation case assessment, development and evaluation.  *See* App. A628-A632 (D.I. 309).

| Ginsberg | 5.3 | $150 | $795 |
|----------|-----|------|------|
| Herbert | 3.6 | $175 | $630 |
| Koller | 3.9 | $150 | $585 |
| Nofer | 8.3 | $175 | $1,452.5 |
| Jacobson | .5 | $250 | $125 |
| Logan | 8.1 | $250 | $2,025 |
| Flora | 3 | $200 | $600 |
| **TOTAL** | **38.5** | | **$7,117.50** |

[2] Litigation Case Assessment, Development and Evaluation is reflected on my firm's timesheets with the Phase Code "L100".

KOP:359680v1 3514-04

A-729

88.     Associate K.K. Carton, Jr., Esquire spent 15.6 hours at $175 per hour for $2,730.00 on litigation case assessment, development and evaluation. *See* App. A640-A644 (D.I. 309).

89.     Associate J.S. Bainbridge, Esquire spent 1.8 hours at $150 per hour for $270 on litigation case assessment, development and evaluation. *See* App. A645-A646 (D.I. 309).

90.     The total for litigation case assessment, development and evaluation that my firm is seeking is **$324,288.00**.

### Total Lodestar Time for Pre-Trial Pleadings and Motions[3]

91.     Pre-trial pleadings and motions includes pleadings, preliminary injunction/provisional relief, court mandated conferences, dispositive motions, other written motions and submissions.

92.     I spent 296.4 hours at $250 per hour for $74,100.00 on pre-trial pleadings and motions. *See* App. A286-A318 (D.I. 309).

93.     David T. Bolger, Esquire spent 98.2 hours at $250 per hour for $24,550.00 on pre-trial pleadings and motions. *See* App. A447-A454 (D.I. 309).

94.     Associate M.J. Pedersen, Esquire spent 36.8 hours at $175 per hour for $6,440.00 pre-trial pleadings and motions. *See* App. A633-A639 (D.I. 309).

95.     Associate J.S. Bainbridge, Esquire spent 5.2 hours at $150 per hour for $780 on pre-trial pleadings and motions. *See* App. A647-A648 (D.I. 309).

96.     Paralegal S.M. Goss spent 4.2 hours at $60 per hour for $312 on pre-trial pleadings and motions. *See* App. A655-A656 (D.I. 309).

---

[3] Pre-Trial Pleadings and Motions is reflected on my firm's timesheets with the Phase Code "L200".

16

97.    The total for pre-trial pleadings and motions that my firm is seeking is **$106,182.00**.

### Total Lodestar Time for Discovery[4]

98.    Discovery includes written discovery, document production, depositions, expert discovery, discovery motions, and other discovery.

99.    I spent 489.8 hours at $250 per hour for $122,450.00 on discovery. *See* App. A319-A368 (D.I. 309).

100.    David T. Bolger, Esquire spent 243.8 hours at $250 per hour for $60,950.00 on discovery. *See* App. A455-A481 (D.I. 309).

101.    Marsha E. Flora, Esquire spent 36.1 hours at $200 per hour for $7,220.00 on discovery. *See* App. A518-A523 (D.I. 309).

102.    Associate J.S. Bainbridge, Esquire spent 31.1 hours at $150 per hour for $4,665.00 on discovery. *See* App. A649-A654 (D.I. 309).

103.    Paralegal A. M. Detitto spent 11.7 hours at $60 per hour for $702 on discovery. *See* App. A663-A665 (D.I. 309).

104.    The total for discovery that my firm is seeking is **$195,987.00**.

### Total Lodestar Time for Business Transactions[5]

105.    Business transactions includes miscellaneous time spent on the file by Paralegals.

106.    Paralegal D.R. Pierson spent 3.8 hours at $60 per hour for $228.00 on miscellaneous business transactions. *See* App. A657-A662 (D.I. 309).

107.    The total for business transactions that my firm is seeking is **$228.00**.

### Total Lodestar Time for Trial and Trial Preparation[6]

---

[4] Discovery is reflected on my firm's timesheets with the Phase Code "L300".
[5] Discovery is reflected on my firm's timesheets with the Phase Code "B200".

KOP:359680v1 3514-04

108.    Trial and trial preparation includes fact witnesses, expert witness, written motions and submissions, other trial preparation and support, trial and hearing attendance, post trial motions and submissions and enforcement.

109.    I spent 302.8 hours[7] at $250 per hour for $75,700.00 on trial time and trial preparation. *See* App. A369-A390 (D.I. 309).

110.    David T. Bolger, Esquire spent 479 hours at $250 per hour for $119,750.00 on trial and trial preparation. *See* App. A482-A508 (D.I. 309).

111.    Marsha E. Flora, Esquire spent 1,116.30 hours[8] at $200 per hour for $223,260.00 on trial time and trial preparation. *See* App. A524-A627 (D.I. 309).

112.    The total for trial time and trial preparation that my firm is seeking up to and including October 5, 2006 is **$418,710.00**.

### Total Lodestar Time for Post Trial

113.    Up until January 19, 2007 I have spent 51.8 hours at $250 per hour for $12,950.00 on post trial activities. *See* App. A-736 to A-754.

114.    Up until December 20, 2006 David T. Bolger, Esquire spent 155.8 hours at $250 per hour for $38,950.00 on post trial activities. *See* App. A-755 to A-775

115.    Up until January 19, 2007 Marsha E. Flora, Esquire spent 403.4 at $200 per hour for $80,680.00 on post trial activities. *See* App. A-776 to A-845.

116.    The total for post trial activities that my firm is seeking (a) up to and including January 19, 2007 for me and Marsha E. Flora, Esquire is $93,630.00 and (b) up to and including December 20, 2006 for David T. Bolder, Esquire is $38,950.00 for a total of is **$132,580.00.**

---

[6] Discovery is reflected on my firm's timesheets with the Phase Code "L400".
[7] This number of hours reflects the reduction of 8.1 hours discussed above.
[8] This number of hours reflects the reduction of 3 hours discussed above.

18

117.    My firm will also be seeking reimbursement for all additional post trial activities not included herein.  All post trial activities from January 20, 2007 forward for me and Marsha E. Flora, Esquire and from December 21, 2006 for David T. Bolger, Esquire  will be provided by a supplemental Motion.

### Total Lodestar Value

118.    The total lodestar value for which my firm is currently seeking reimbursement is **$1,177,975.00**.  My firm will provide a supplemental Motion discussing the fees for all additional post trial activities for which we will be seeking reimbursement and which are not included herein.

### Enhancement Multiplier for Delay is Appropriate

119.    As discussed at length above, the City's blatant disregard for its discovery obligations caused Durkin to expend needless monies on attorneys' fees, unnecessarily drew out this litigation and wasted judicial resources.

120.    Accordingly, I believe that an enhancement multiplier for delay is appropriate to augment the lodestar.  I suggest that the Court look to 6 Del. C. §2301 and apply a multiplier of "5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due" to the lodestar.  *Id.*

121.    I suggest that the time period "when the interest was due" as set forth in 6 Del. C. §2301 should be April 7, 2004 when Durkin filed its Motion for Preliminary and Permanent Injunction, seeking an early resolution of this matter.  (D.I. 6).  In my opinion, at that time if the City came forward with the information that it was well aware of regarding the legal infirmities in the steps that it took to terminate Durkin (as evidenced in the January 20, 2004 Memorandum

(NEW16304) discussed above), much, if not all, of this extended litigation could have been avoided.

### Costs

122.    Durkin has incurred out of pocket expenses of **$63,147.07**[9] in connection with the prosecution of the case up to and including January 22, 2007 which are not covered by the bill of costs.  A report summarizing these costs is attached in the Appendix to Plaintiff's Supplemental Memorandum for Attorneys' Fees, Costs and Post-Judgment Interest Pursuant to 42 U.S.C. §1988 and Federal Rule of Civil Procedure 54 App. A-846 to A-891.

123.    My firm will provide a supplemental Motion for the additional costs incurred in the post trial phase from January 23, 2007 forward for which we are seeking reimbursement.

124.    These expenses are reflected in the books and records of my firm and are based on expense vouchers, check records and other similar documentary backup, all of which are maintained in the ordinary course of our practice.

125.    All of the expenses referenced in the report at App. A-846 to A-891 were reasonably and necessarily incurred in prosecuting this case.

### Conclusion

126.    My firm is seeking compensation for attorneys' fees incurred (a) up to and including January 19, 2007 for me and Marsha E. Flora, Esquire and (b) up to and including December 20, 2006 for David T. Bolder, Esquire at normal billing rates resulting in the amount of **$1,177,975.00** as reflected above[10] plus an enhancement multiplier for delay.

---

[9] This is the amount reflected under the heading "Recorded Value" on page 46 of the Expense Report (App. A-891).
[10] We reserve the right to supplement our Motion for Attorneys' Fees, Costs and Post Judgment Interest Pursuant to 42 U.S.C. §1988 and Federal Rule of Civil Procedure 54 as additional attorneys' fees and costs are incurred in the post-trial phase of this matter which are not included herein.

127.    Accordingly, I believe that an attorneys' fee award of **$1,177,975.00** plus an enhancement multiplier for delay is reasonable and appropriate in this case for my offices' work as indicated above, plus post-judgment interest.   An award of **$63,147.07** for costs incurred through January 22, 2007 plus post-judgment interest also should be made.

128.    I declare under penalty of perjury that the foregoing is true and correct.   Executed on 26th January, 2007.


                                        **POWELL, TRACHTMAN, LOGAN,**
                                        **CARRLE & LOMBARDO, P.C.**

                                        By: /s/ Paul A. Logan
                                        Paul A. Logan
                                        Delaware Supreme Court ID #3339
                                        475 Allendale Road, Suite 200
                                        King of Prussia, PA 19406
                                        Telephone: 610-354-9700
                                        Telefacsimile: 610-354-9760
                                        *Attorneys for Plaintiff and Third Party*
                                        *Defendant Donald M. Durkin Contracting*