## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DONALD M. DURKIN CONTRACTING, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 04-0163-GMS |
| CITY OF NEWARK, HAROLD F. GODWIN, JOHN H. FARRELL, IV, JERRY CLIFTON, KARL G. KALBACHER, DAVID J. ATHEY, FRANK J. OSBORNE, JR., and CHRISTINA REWA, | ) ) ) ) ) ) ) | |
| Defendants/ Third-Party Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| FEDERAL INSURANCE COMPANY, | ) ) | |
| Third-Party Defendant. | ) ) | |
| ------------------------------------------------ | ) ) | |
| CITY OF NEWARK, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| URS CORPORATION, | ) ) | |
| Third-Party Defendant. | ) | |

## CITY OF NEWARK DEFENDANTS' POST-TRIAL BRIEF
## IN SUPPORT OF THEIR MOTION FOR JUDGMENT
## AS A MATTER OF LAW AND FOR A NEW TRIAL OR REMITTITUR

CONNOLLY BOVE LODGE & HUTZ LLP
Collins J. Seitz, Jr. (Bar No. 2237)
Max B. Walton (Bar No. 3876)
Josiah R. Wolcott (Bar No. 4796)
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

*Attorneys for Defendants, City of Newark, Harold F. Godwin, John H. Farrell, IV, Jerry Clifton, Karl G. Kalbacher, David J. Athey, Frank J. Osborne, Jr., and Christina Rewa*

DATED: January 26, 2007

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................................................. iii

TABLE OF AUTHORITIES ........................................................................ v

NATURE AND STAGE OF THE PROCEEDINGS ......................................... 1

SUMMARY OF ARGUMENT ...................................................................... 1

STATEMENT OF FACTS ........................................................................... 2

ARGUMENT ............................................................................................. 4

I.     THE COURT SHOULD GRANT THE CITY'S MOTION FOR JMOL ON DURKIN'S CONTRACT DAMAGE CLAIMS .................................................. 4

     A.     Because The Construction Contract Could Be Terminated For Convenience, Durkin Was Limited To The Contract Damages ............... 5

     B.     The Jury's Damage Award Is Contrary To The Contract Damages Agreed To By The Parties ...................................................................... 7

          1.     The Construction Contract defined the scope of permissible damages .................................................................. 7

          2.     Durkin could not recover for any economic loss other than as permitted by the Construction Contract ........................................ 7

          3.     Durkin sought and the jury improperly awarded damages under the "Change Order" provisions of the Construction Contract .................................................................................. 8

          4.     Durkin's consultant/professional expenses could not be recovered under the Construction Contract ............................... 10

     C.     The Jury's Contract Damage Award Is Contrary To Delaware Law ....... 12

          1.     The Delaware common law measure of damages for breach of an incomplete construction contract is the unpaid contract price minus the performance costs of the contract ...................... 12

          2.     Post-termination operating revenue loans and sales are not recoverable ........................................................................... 14

II.    THE COURT SHOULD GRANT A NEW TRIAL ON DURKIN'S CONTRACT DAMAGES ............................................................................. 17

III.   THE COURT SHOULD GRANT JMOL ON DURKIN'S CONVERSION CLAIM .................................................................................................. 21

IV.    THE COURT SHOULD GRANT JMOL ON DURKIN'S CIVIL RIGHTS CLAIM ..................................................................................................21

    A.    The City Should Be Granted JMOL On Durkin's Civil Rights Claim ....21

        1.    A liberty interest does not encompass the right to perform a particular contract ..................................................................22

        2.    Durkin's breach of contract evidence is insufficient to support the civil rights claim....................................................25

        3.    The alleged defamatory statements do not support a civil rights claim ...........................................................................27

V.    ALTERNATIVELY THE COURT SHOULD GRANT THE CITY A NEW TRIAL ON THE CIVIL RIGHTS CLAIM.......................................................31

    A.    The Jury Instructions Misstate The Law ..................................................31

    B.    The Jury's Damage Award Was Shockingly Excessive And Duplicative Of The Compensatory Contract Damages..........................34

        1.    Standard for a new trial ...............................................................34

        2.    The damage award is not supported by the trial record ..............35

        3.    The jury award was based on passion and prejudice ..................36

        4.    In the alternative, remittitur should be granted..........................37

VI.    THE COURT SHOULD AMEND URS' AWARD OR GRANT A NEW TRIAL ................................................................................................................39

CONCLUSION..........................................................................................................40

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A/S Dampskibssetskabet Torm v. U.S.*,
64 F. Supp. 2d 298 (S.D.N.Y. 1999)............................................................. 6

*Allied Chemical Corp. v. Daiflon, Inc.*,
449 U.S. 33 (1980)...................................................................................... 17

*Alling v. Johnson Controls*,
No. Civ.A. 00-5228, 2002 WL 59280 (E.D. Pa. Jan. 15, 2002).................. 37

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
421 U.S. 240 (1975).................................................................................... 11

*Anderson v. Liberty Lobby, Inc.*,
477 U .S. 242 (1986).................................................................................... 4

*AR Sales, Inc. v. U.S.*,
49 Fed. Cl. 621 (2001) ................................................................................ 16

*Becton Dickinson & Co. v. Tyco Healthcare Group L.P.*,
No. Civ. A. 021694, 2006 WL 890995 (D. Del. Mar. 31, 2006) ................ 18

*Best Foam Fabricators, Inc. v. U.S.*,
38 Fed. Cl. 627 (1997) ................................................................................ 6

*Blaine Econ. Dev. Auth. v. Royal Elec. Co., Inc.*,
520 N.W.2d 473 (Minn. App. 1994)........................................................... 13

*Boyanowski v. Capital Area Intermediate Unit*,
215 F.3d 396 (3d Cir. 2000) ................................................................. 32, 33

*Brodbeck v. National Rifle Ass'n of America*,
No. Civ. A. 98-5361, 1999 WL 722815 (E.D. Pa. Sept. 14, 1999) ...... 35, 37

*Callaway Golf Co. v. Slazenger*,
384 F. Supp. 2d 735 (D. Del. 2005)............................................................ 17

*Carey v. Piphus*,
435 U.S. 247 (1978).................................................................................... 35

*Chemipal Ltd v. Slimfast Nutritional Foods International, Inc.*,
350 F. Supp. 2d 582 (D. Del. 2004)...................................................... 15, 17

*Chenvert v. DeJohn*, No. 98-111-GMS,
2000 WL 1728257 (D. Del. Apr. 11, 2000),
*aff'd*, 275 F.3d 576 (3d Cir. 2001)............................................................. 25

*Chilingiran v. Boris*,
882 F. 2d 200 (6th Cir. 1989) ..................................................................... 30

*Clopp v. Atlantic County*,
C.A. No. 00-1103, 2002 WL 31242218 (D. N.J. Oct. 7, 2002) ................. 38

*Compass Technology Inc. v. Tseng Labs. Inc.*,
   71 F.3d 1125 (3d Cir. 1995) ........................................................................ 20

*Coney Island Resorts, Inc. v. Giuliani*,
   No. 00-CV-2233, 2000 WL 804636 (E.D.N.Y. May 10, 2000) .................................. 24

*Cooper Laboratories, Inc. v. International Surplus Lines Ins. Co.*,
   802 F.2d 667 (3d Cir. 1986) ........................................................................ 8

*Crowell Corp. v. Himont USA, Inc.*,
   Civ. A. No. 86C-11-125, 1994 WL 762663 (Del. Super. Ct. Dec. 8, 1994) .......... 15, 17

*Datskow v. Teledyne Cont. Motors Aircraft Prod.*,
   826 F. Supp. 677 (W.D.N.Y. 1993) ................................................................ 38

*DeCarlo & Doll, Inc. v. Bershtein*,
   No. CV9103232838, 1996 WL 456294 (Conn. Super. Ct. July 31, 1996) ................. 13

*Delaware Limousine Serv., Inc. v. Royal Limousine Serv., Inc.*,
   C.A. No. 87C-FE-104, 1991 WL 53449 (Del. Super. Ct. Apr. 5, 1991) .................... 12

*Diehl v. Albany County School Dist. No. 1*,
   694 F. Supp. 1534 (D. Wyo. 1988) ................................................................ 29

*Dill v. Chastain*,
   507 S.E.2d 872 (Ga. App. 1998) ................................................................... 13

*Diversified Packing & Dev. Corp. v. Dore & Associates Contracting, Inc.*,
   48 Fed. Appx. 392 (3d Cir. 2002) ........................................................ 13, 14, 18

*Duncan v. TheraTx, Inc.*,
   775 A.2d 1019 (Del. 2001) .......................................................................... 12

*Eberts v. Wert*,
   92-CV-3913, 1993 WL 304111 (E.D. Pa. Aug. 9, 1993) ...................................... 24

*Embrey v. United States*,
   17 Cl.Ct. 617 (1989) ................................................................................... 6

*Essen Mall Properties v. United States*,
   21 Cl. Ct. 430 (1990) ................................................................................. 15

*GE Harris Ry. Electronics, LLC v. Westinghouse Air Brake Co.*,
   No. 99-070-GMS, 2004 WL 1854198 (D. Del. Aug. 18, 2004) ............................... 8

*Geressy v. Digital Equip. Corp.*,
   980 F. Supp. 640 (E.D.N.Y 1997) ................................................................. 20

*Goodrich v. E.F. Hutton Group, Inc.*,
   542 A.2d 1200 (Del. Ch. 1988) .................................................................... 21

*Gumbs v. Pueblo Int'l, Inc.*,
   823 F.2d 768 (3d Cir. 1987) .................................................................. 37, 38

*Hancock Electronics Corp. v. Washington Met. Area Transit Auth.*,
   81 F.3d 451 (4th Cir. 1996) ......................................................................... 5

*Hayes v. Cha*,
    338 F. Supp.2d 470 (D. N.J. 2004) .................................................. 34, 38

*Hill v. Borough of Kutztown*,
    455 F.3d 225 (3d Cir. 2006) ................................. 27, 28, 29, 30, 34

*Hirsch Electric Co. v. Community Services, Inc.*,
    536 N.Y.S.2d 141 (N.Y. Supr. Ct. 1988) ............................................. 16

*Hurley v. Atlantic City Police Dept.*,
    933 F. Supp. 396 (D. N.J. 1996) .......................................................... 38

*Interboro Packaging Co. v. Fulton County Schools*,
    1:05-CV-1838, 2006 WL 2850433 (D. Ga. Oct. 2, 2006) ........................... 6

*J.A. Moore & Sons Constr. Co. v. Inden*,
    No. 95L-09-008, 1999 WL 1223762 (Del. Super. Ct. Sept. 28, 1999)......................... 39

*Joelson v. United States*,
    86 F.3d 1413 (6th Cir. 1996) ............................................................... 29

*Keddie v. Pennsylvania State University*,
    412 F. Supp. 1264 (M.D. Pa. 1976) ...................................................... 29

*Klein v. Hollings*,
    992 F.2d 1285 (3d Cir. 1993) .............................................................. 17

*Kurz & Root Co. v. U.S.*,
    227 Ct. Cl. 522, 1981 WL 139581 (Cl. Ct. Mar. 3, 1981) ........................ 15

*Lewis Jorge Const. Management, Inc. v. Pomona Unified School Dist.*,
    102 P.3d 257 (Cal. 2004) ............................................................. 16, 17

*Linan-Faye Const. Co. v. Housing Auth. of Camden*,
    49 F.3d 915 (3d Cir. 1995) ......................................................... passim

*Lyles v. Flagship Resort Devt. Corp.*,
    371 F. Supp.2d 597 (D. N.J. 2005) ...................................................... 35

*Mansuhl Const. Corp. v. Dormitory Authority of N.Y.*,
    444 N.Y.S.2d 792 (N.Y. Supr. Ct. 1981) .............................................. 16

*Massera v. Gulf Oil Corp.*,
    No. 54539, 1988 WL 14481 (Ohio App. Oct. 27, 1988) ........................... 19

*McGee Constr. Co. v. Neshobe Dev., Inc.*,
    594 A.2d 415 (Vt. 1991) ...................................................................... 13

*Millgard Corp. v. E.E. Cruz/Nab/Frontier-Kemper*,
    No. 99-Civ-2952, 2006 WL 1699528 (S.D.N.Y. June 21, 2006).................. 16

*Miner v. City of Glens Falls*,
    999 F.2d 655 (2d Cir. 1993) ......................................................... 30, 31

*Mycogen Plant Science, Inc. v. Monsanto Corp.*,
    61 F. Supp. 2d 199 (D. Del. 1999)....................................................... 17

*Neely v. Martin K. Eby Const. Co.*,
    386 U.S. 317 (1967)..................................................................................... 4

*O'Brien v. Progressive Northern Ins. Co.*,
    785 A.2d 281 (Del. 2001) ............................................................................ 8

*Olin Jones Sand Co. v. United States*,
    225 Cl. Ct. 741, 1980 WL 13211 (Cl. Ct. Nov. 21, 1980)........................... 16

*Patterson v. City of Utica*,
    370 F.3d 322 (2d Cir. 2004) ....................................................................... 31

*Paul v. Davis*,
    424 U.S. 693 (1976)..................................................................................... 27

*Pavlov v. Martin*,
    381 F. Supp. 707 (D. Del. 1974) ................................................................ 29

*Piecknick v. Commonwealth of Pennsylvania*,
    36 F.3d 1250 (3d Cir. 1994) .................................................................. 22, 32

*Price v. Inland Oil Co.*,
    646 F. 2d 90 (3d Cir. 1981) ......................................................................... 28

*Price v. McLeish*,
    No. 04-956-GMS, 2006 WL 2346430 (D. Del. Aug. 14, 2006) .................... 4

*Repola v. Morbark Industries, Inc.*,
    934 F.2d 483 (3d Cir. 1991) ........................................................................ 31

*Rhen v. United States*,
    17 Cl. Ct. 140 (1989) .................................................................................. 16

*Rice Systems v. United States*,
    62 Fed. Cl. 608 (2004) .................................................................................. 6

*Rodgers v. Fisher Body Div., General Motors Corp.*,
    739 F.2d 1102 (6th Cir. 1984) .................................................................... 36

*Rodriquez v. Margotta*,
    71 F. Supp. 2d 289 (S.D.N.Y. 1999), *aff'd,* 225 F.3d 646 (2d Cir. 2000) .................. 27

*Russ-Tobias v. Pa. Bd. of Probation and Parole*,
    No. Civ. A.04-0270, 2006 WL 516771 (E.D. Pa. Mar. 2, 2006) ................. 17

*S & D Maintenance Co. v. Goldin*,
    844 F.2d 962 (2d Cir. 1988).................................................................. passim

*Scarnati v. Washington*,
    599 F. Supp. 1554 (M.D. Pa. 1985).......................................................... 29

*Schreffler v. Bd. Of Ed. Of Delmar Sch. Dist.*,
    506 F. Supp. 1300 (D. Del. 1981)............................................................. 35

*Scott Paper Co. v. Moore Bus. Forms, Inc.*,
    594 F. Supp. 1051 (D. Del. 1984).............................................................. 11

*Shifa Services, Inc. v. The Port Authority of New York*,
   No. 96 Civ. 1361, 1997 WL 16062  (S.D.N.Y. Jan. 15, 1997) ............................ 24, 26

*Siegert v. Gilley*,
   500 U.S. 226 (1991).......................................................................................... 27

*SMS Data Products Group Inc. v. United States*,
   19 Cl.Ct. 612 (1990) ........................................................................................... 6

*Spence v. Bd. Of Ed. Of Christiana School Dist.*,
   806 F.2d 1198 (3d Cir. 1986) ............................................................................. 38

*Springer v. Henry*,
   No. 00-885-GMS, 2004 WL 2127172 (D. Del. Sept. 16, 2004) ..................................... 4

*Stambaugh's Air Service, Inc. v. Susquehanna Area Regional Airport Authority*, 1:00-
   CV-660, 2006 WL 709229, *2-3 (M.D. Pa. Mar. 16, 2006)................................. 24, 26

*Stretten v. Wadsworth Veterans Hospital*,
   537 F.2d 361 (9th Cir. 1976).............................................................................. 29

*Suburban Trust and Sav. Bank v. University of Delaware*,
   910 F. Supp. 1009 (D. Del. 1995)......................................................................... 8

*Swinehart v. McAndrews*,
   221 F. Supp. 2d 552 (E.D. Pa. 2002) ................................................................. 22

*Tanner v. Exxon Corp.*,
   No. 79C-JA-5, 1981 WL 191389 (Del. Super. Ct. July 23, 1981) ........................... 15

*Tigg Corp. v. Dow Corning Corp.*,
   962 F.2d 1119 (3d Cir. 1992) ........................................................................ 18, 31

*Tunis Bros. Co., Inc. v. Ford Motor Co.*,
   952 F.2d 715 (3d Cir. 1991).............................................................................. 18

*U.S. v. Alferahin*,
   433 F.3d 1148 (9th Cir. 2006) ...................................................................... 19, 20

*Ware v. Rodale Press, Inc.*,
   322 F.3d 218 (3d Cir. 2004) .............................................................................. 21

*Wells Fargo Bank v. U.S.*,
   88 F.3d 1012 (Fed. Cir. 1996) ........................................................................... 15

*Williams v. Kerns*,
   265 S.E.2d 605 (Ga. App. 1980) ....................................................................... 13

*Winskowski v. City of Stephen*,
   442 F.3d 1107 (8th Cir. 2006) ........................................................................... 29

*Wojcik v. Mass. State Lottery Comm'n*,
   300 F.3d 92 (1st Cir. 2002) ............................................................................... 30

*Wroblewski v. City of  Washburn*,
   965 F.2d 452 (7th Cir. 1992)............................................................................. 22

*YRT Services Corp. v. U.S.,*
   28 Fed. Cl. 366 (Fed. Cl. 1993) ............................................................................. 8

*Zimmerman v. First Federal Savings & Loan,*
   848 F.2d 1047 (10th Cir. 1988) ............................................................................. 19

*Zook Brothers Const. Co. v. State of Montana,*
   556 P.2d 911 (Mont. 1976) ................................................................................. 16

**Statutes**

10 *Del. C.* § 3912 ................................................................................................. 39

**Other Authorities**

9 James Wm. Moore, *Moore's Federal Practice* § 50.05[3] (2006) ................................ 4

Charles T. McCormick, *Handbook on the Law of Damages* § 164 (1935) ..................... 13

Philip L. Bruner & Patrick J. O'Connor, Jr.,
   *Bruner and O'Connor* on Construction Law § 19:71 (2006) ...................................... 13

Restatement (First) of Contracts
   § 346(2)(a) (1932) .......................................................................................... 13

*Rumsfeld v. Freedom N.Y., Inc.,*
   329 F.3d 1320 (Fed. Cir. 2003) ............................................................................ 15

**Rules**

Fed.R.Civ.P. 26(e)(2) ......................................................................................... 20

Fed.R.Civ.P. 50 ................................................................................................... 1

Fed.R.Civ.P. 50(b) .............................................................................................. 1

Fed.R.Civ.P. 59 ................................................................................................. 17

## NATURE AND STAGE OF THE PROCEEDINGS

This is a construction contract dispute between Donald M. Durkin Contracting, Inc. ("Durkin") and the City of Newark, Delaware. Newark's City Council members are also named as defendants in their official capacities only (collectively "the City"). The Court held a jury trial from September 26 to October 5, 2006. Based on a $9.8 million construction contract ("Construction Contract"), of which $6.2 million had been paid to Durkin, the jury returned a $11.6 million verdict on the contract claim. The jury also awarded Durkin $25 million in compensatory damages on its civil rights claim.

On October 12, 2006, the Court denied the City's pending motion for directed verdict as moot and ordered that "the City may renew its motion for a directed verdict pursuant to the provisions of Fed.R.Civ.P. 50(b)." D.I. 299. On October 24, 2006, the City timely filed a motion for judgment as a matter of law ("JMOL") under Fed.R.Civ.P. 50 and a motion for a new trial or remittitur under Rule 59. D.I. 303, 304.

## SUMMARY OF ARGUMENT

1.     The City should be granted judgment as a matter of law for breach of contract damages because the jury's damage award is contrary to the measure of damages that the parties agreed to in the Construction Contract and is contrary to Delaware law.

2.     The City should be granted a new trial on the Construction Contract damage claims because: (a) the jury's damage calculation is contrary to the Construction Contract and Delaware law; (b) the damage award is grossly excessive; (c) there is newly discovered evidence that would likely alter the outcome of the trial; and (d) Durkin's changing damages claims caused the City unfair surprise at trial.

3.     The City should be granted judgment as a matter of law on Durkin's conversion claim because the award is not supported by any evidence.

4.      The City should be granted judgment as a matter of law on Durkin's civil rights claim because, under well-established Third Circuit law, the claim is deficient as a matter of law.  Furthermore, the trial evidence did not establish either a constitutional violation or any basis for the $25 million in compensatory damages awarded by the jury.

5.      In the alternative, the City should be granted a new trial on Durkin's civil rights claim because the jury instructions inaccurately stated the governing law, and because the jury award is grossly excessive.

6.      If the Court does not grant the City judgment as a matter of law or a new trial on Durkin's civil rights claim, the City should be granted remittitur.

7.      The City should be granted judgment as a matter of law or a new trial on a portion of the jury's award to URS Corporation ("URS").[1]

## STATEMENT OF FACTS

The Court is familiar with the background facts, having conducted the trial. Therefore, the City will only summarize the key events leading to the instant motions. On September 22, 2006, the Court granted partial summary judgment to Durkin "with respect to the failure to provide seven-day notice to terminate as required by the Construction Contract."  D.I. 257.  On the fifth day of trial, and without notice to the City, Durkin for the first time produced a document entitled "Itemized Statement of Damages." A181.[2]  The City had consistently objected to damage testimony that conflicted with the terms of the Construction Contract and Delaware law.  *See infra* n.4, Tr. 884; A104.  The "Itemized Statement of Damages" claimed alleged compensatory damages, of which the pre-termination damages were based on Article 11 of the Construction Contract.

---

[1]  In its post-trial motions, the City has not challenged the Court's partial summary judgment breach of contract ruling as well as its discovery sanctions ruling.  The City respectfully reserves its right to challenge these determinations on appeal if necessary.
[2]  "A" refers to the appendix filed concurrently with this brief.

2

Although the total adjusted contract price was $9,833,053,[3] and the City paid Durkin $6,230,744 for completing seventy percent of the work (Tr. 948; A140; 181), the jury awarded Durkin $11,667,572 (A232) – much more than the total contract price, and far more than Durkin could have received if it had completed the Construction Contract.

On the sixth day of trial, Durkin was forced to identify the source of its civil rights claim – an alleged denial of a "liberty" interest to pursue a chosen occupation. Tr. 933, 1022; A137; 158. Although the City had consistently objected to the submission of any constitutional claim to the jury (*see infra* n.35; Tr. 934; A138; D.I. 276), and with no compensatory damages tied to the constitutional claim, the jury awarded Durkin $25 million in compensatory damages on its civil rights claim. A233.

At several points during the trial, the Court noted that certain legal issues would be addressed post-trial.[4] This is the City's motion addressing Durkin's many erroneous legal positions presented to the Court before and at trial, which caused the jury to award legally unsupportable and excessive damages on the contract and constitutional claims.

---

[3] Durkin's initial bid totaled $9,679,000. The City's Jury Notebook at 9; A183. After approved change orders, the final contract price increased to $9,833,053. *See* Pretrial Order, D.I. 150 (Exhibit G "City of Newark Damages").

[4] The City first addressed the proper measure of damages in a motion *in limine*, which was denied by the Court. D.I. 152; 244. On the fifth day of trial, the City objected to the types of damages that could be considered by the jury. Tr. 808-09; A101-02. The City reiterated its objection later the same day, and the Court determined that the City's objection was preserved. Tr. 884; A104. The City also raised this issue in its motion for directed verdict (D.I. 277), and at the prayer conference on October 3, 2006. At the prayer conference, the Court stated that the proper measure of damages was something that "can be corrected . . . post verdict." Tr. 995-98; A-150-53. The City's counsel also submitted a proposed alternate jury instruction on the issue of damages. Tr. 1148; A172. During the colloquy with the Court over instructions and special interrogatories, the City again addressed the proper measure of damages, and the Court once again stated that the scope of permissible damages could be addressed post-verdict. Tr. 1161, 1164, 1174; A177-80.

## ARGUMENT

**I.**    **THE COURT SHOULD GRANT THE CITY'S MOTION FOR JMOL ON DURKIN'S CONTRACT DAMAGE CLAIMS**

The standards are well established for evaluating a post-trial motion requesting judgment as a matter of law.  As stated by this Court, "the moving party 'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusions implied [by] the jury's verdict cannot in law be supported by those findings.'"  *TI Group Automotive Systems, Inc. v. VDO North America L.L.C.*, No. 00-423-GMS, 2002 WL 31051602, at *1 (D. Del. Sept. 4, 2002); *Springer v. Henry*, No. 00-885-GMS, 2004 WL 2127172, at *5 (D. Del. Sept. 16, 2004).[5]  Judgment as a matter of law is appropriate where purely legal issues are raised to challenge the jury's verdict.  9 James Wm. Moore, *Moore's Federal Practice* § 50.05[3] (2006) (citing *Neely v. Martin K. Eby Const. Co.*, 386 U.S. 317 (1967)).

As will be demonstrated below, the jury's breach of contract damage award cannot be supported under the law.  Under the constructive termination for convenience doctrine, even if the City breached the Construction Contract, the City cannot be liable for damages other than those damages specified in the Construction Contract (Arguments A and B).  Alternatively, if the Court determines that breach of contract damages should be awarded according to Delaware common law, the jury's damage award is directly contrary to Delaware law (Argument C).

---

[5]  "[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  *Price v. McLeish*, No. 04-956-GMS, 2006 WL 2346430, at *2 (D. Del. Aug. 14, 2006) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U .S. 242, 250-51 (1986)).

### A.   Because The Construction Contract Could Be Terminated For Convenience, Durkin Was Limited To The Contract Damages

The Court has ruled that the City did not provide the required seven-day notice of termination for cause under Article 15.2 of the Construction Contract. D.I. 257. This ruling does not, however, require the parties to default to the Delaware common law measure of damages for breach of contract. Instead, absent bad faith or an abuse of discretion by the City, the City's failure to terminate Durkin properly for cause should be treated as a constructive termination for convenience, with the remedies for termination without cause specifically set forth in the Construction Contract.

The doctrine of constructive termination for convenience applies to government contracts. Where a contract allows for termination for convenience, the government's contract termination is viewed as a termination for convenience even if the entity fails to terminate properly for cause. Under the doctrine, the contracting party is entitled to the measure of damages agreed upon in the termination for convenience provision, not damages under common law. The leading case describing the doctrine in the Third Circuit is *Linan-Faye Const. Co. v. Housing Auth. of Camden*, 49 F.3d 915 (3d Cir. 1995).

In *Linan-Faye*, the Camden housing authority improperly terminated for default a contract with a contractor renovating a public housing project. The Third Circuit considered whether, given the housing authority's original termination for default, "the court should retroactively convert" the "termination for default into a termination for convenience." *Id.* at 920-26. The Court held that New Jersey courts, looking to federal law as persuasive authority, would permit the housing authority to invoke the doctrine of termination for convenience and would limit the damages available to the contractor to those provided for in the contract. *Id.* at 926; *see also Hancock Electronics Corp. v. Washington Met. Area Transit Auth.*, 81 F.3d 451, 454 (4th Cir. 1996) (holding that "[u]nder set-

5

tled law" when the transportation authority "breaches or wrongfully terminates a contract, the event is treated as a constructive termination" under the termination for convenience clause); *Best Foam Fabricators, Inc. v. U.S.,* 38 Fed. Cl. 627, 638 (1997) (holding that even when the termination for convenience clause is not invoked "the court will construc-tively invoke the clause to retroactively justify the government's actions, avoid breach and limit liability."); *see also A/S Dampskibssetskabet Torm v. U.S.*, 64 F. Supp. 2d 298, 313 (S.D.N.Y. 1999) ("There is little reason, after all, why the taxpayers should bear ad-ditional economic burdens because a government contract officer misapprehended the legal rights available to the government.").

In this case, the jury was not asked to determine bad faith, and it is respectfully submitted that a mistake with the seven-day notice period in a contract that can be termi-nated by the City for convenience (meaning for any reason) does not as a matter of law demonstrate bad faith.[6] Therefore, the City's termination for cause should be converted into a termination for convenience. Under *Linan-Faye*, the measure of damages should be calculated under the termination for convenience provisions in Article 15.4 of the Construction Contract. A43.

---

[6] Bad faith by the government must be demonstrated by clear and convincing evidence. *Rice Systems v. United States*, 62 Fed. Cl. 608, 621-22 (2004). A post award deterioration of the rela-tionship between an owner and contractor "which included conflict over the specifications would likely constitute sufficiently changed circumstances to justify application of the doctrine of con-structive termination for convenience." *Linan-Faye*, 49 F.3d at 925-26 (citing *Embrey v. United States*, 17 Cl.Ct. 617, 624-25 (1989) (deterioration of business relations considered sufficiently changed circumstances to allow government to terminate for convenience) and *SMS Data Prod-ucts Group Inc. v. United States*, 19 Cl.Ct. 612, 621 (1990) (genuine concern that contractor could not meet the contract's mandatory requirements constituted changed circumstances)); *see also Interboro Packaging Co. v. Fulton County Schools*, 1:05-CV-1838, 2006 WL 2850433, at *6 (D. Ga. Oct. 2, 2006) ("[e]vidence of business disputes, or even personal disputes, does not raise an inference of 'bad faith'" in terminations for convenience).

**B.    The Jury's Damage Award Is Contrary To The Contract Damages
Agreed To By The Parties**

1.    The Construction Contract defined the scope of permissible damages

Because the City is deemed to have constructively terminated the Construction
Contract for convenience, Article 15.4 governs the scope of permissible damages. A43.
Under Article 15.4, Durkin is entitled to payment for: (1) completed and acceptable
work[7] done prior to termination with fair and reasonable sums for overhead and profit on
this work; (2) expenses sustained prior to termination for performing services and fur-
nishing labor with fair and reasonable sums for overhead and profit; (3) claims, costs,
losses and damages incurred "in settlement of terminated costs with Subcontractors,[8]
Suppliers[9] and others;" and (4) reasonable expenses attributable to the termination.  Arti-
cle 15.4.1-4.4; A43.[10]  As will be shown, Durkin's "Itemized Statement of Damages"
upon which the jury relied (A181), disregarded this contractual measure of damages.

2.    Durkin could not recover for any economic loss other than as permitted by
the Construction Contract

The Construction Contract expressly provided that upon a termination for conven-
ience, Durkin could recover the amounts set forth in Article 15.4, and could not recover
for "loss of anticipated profits or revenue or other economic loss[.]"  Article 15.4; A43.
Therefore, as a matter of law, Durkin was limited to the damages set forth in Article 15.4.

---

[7]  "Work" is the "entire completed construction or the various separately identifiable parts thereof
required to be furnished under the Contract Documents."  Article 1.43; A17.
[8]    "Subcontractor" is an "individual, firm or corporation having a direct contract with
CONTRACTOR or with any other Subcontractor for the performance of a part of the Work at the
site."  Article 1.37; A16.
[9]  "Supplier" is a "manufacturer, fabricator, supplier, distributor, materialman or vendor having a
direct contract with CONTRACTOR or with any Subcontractor to furnish materials or equipment
to be incorporated in the Work by CONTRACTOR or any Subcontractor."  Article 1.40; A16.
[10]  If the Construction Contract had been terminated for cause under Article 15, Durkin would be
entitled to be paid only the unpaid contract price minus the owner's expenses and attorneys' fees
incurred to complete the contract.  Article 15.2; A42-43.

     3.     <u>Durkin sought and the jury improperly awarded damages under the</u>
           <u>"Change Order" provisions of the Construction Contract</u>

Instead of following Article 15.4, the jury relied on Durkin's contract interpreta-

tion and awarded pre-termination damages based upon Articles 11.4-11.6 (entitled

"Change of Contract Price"). *See* A181 (citing Article 11.4); *see also* Tr. 889-904;

A108-23. Articles 11.4-11.6 are the change order provisions of the Construction Con-

tract. A plain reading of the Construction Contract reveals that, as a matter of law,[11] the

change order calculation procedure was not intended to and cannot replace the specified

pre-termination damages spelled out in Article 15.4.

The damages recoverable when the Construction Contract is terminated for con-

venience are set forth in Article 15.4. Other than as specifically set forth in Article 15.4,

Durkin could not recover "loss of anticipated profits or revenue or other economic

loss[.]" A43. It is a well-settled contract interpretation doctrine under Delaware law that

the expression of one form of remedy excludes another. *See Active Asset Recovery, Inc.*

*v. Real Estate Asset Recovery Services, Inc.*, No. Civ. A. 15478, 1999 WL 743479 (Del.

Ch. Sept. 10, 1999) (*expressio unius est exclusio alterius*). Therefore, as a matter of law,

Article 15.4 is the exclusive remedy for a termination for convenience, as opposed to the

change order provisions or any other provisions of the Construction Contract.

Even if the Court considers the change order provisions of the Construction Con-

tract, as a matter of law, they do not represent a damages remedy. Under Article 10.3, the

---

[11] The construction or interpretation of a contract is governed by state law. *Cooper Laboratories, Inc. v. International Surplus Lines Ins. Co.*, 802 F.2d 667, 672 (3d Cir. 1986); *see also Suburban Trust and Sav. Bank v. University of Delaware*, 910 F. Supp. 1009, 1013 (D. Del. 1995). Under Delaware law, the interpretation of a contract is a matter of law to be determined by the Court. *O'Brien v. Progressive Northern Ins. Co.*, 785 A.2d 281, 286 (Del. 2001); *see also GE Harris Ry. Electronics, LLC v. Westinghouse Air Brake Co.*, No. 99-070-GMS, 2004 WL 1854198, at *8 (D. Del. Aug. 18, 2004) (holding that interpretation of a patent license agreement, like a contract, is a question of law); *see also YRT Services Corp. v. U.S.,* 28 Fed. Cl. 366, 389 (Fed. Cl. 1993) ("Interpretation of the terms of a government contract is a matter of law").

contractor is not entitled to an increase in the contract price[12] with respect to any work performed that is not required by the contract documents, unless amended by Articles 3.5, 3.6,[13] 6.23 (emergencies) or 13.9 (uncovering of work performed). Article 10.3; A34.[14] Article 11 of the contract confirms that the contract price is the "total compensation" payable to Durkin, and Durkin's duties and obligations are to be undertaken "without change in the Contract Price" (here, Durkin's bid price – $9,697,000). Article 11.1; A34.

The contract price "may only be changed by a Change Order or by a Written Amendment."[15] Article 11.2; A34. A change order or a written amendment must be based on "written notice delivered by the party making the claim to the other party and to ENGINEER promptly . . . after the start of the occurrence or event[.]" *Id.* "All claims for adjustment in the Contract Price shall be determined by ENGINEER . . . if OWNER and CONTRACTOR cannot otherwise agree on the amount involved[]" and "[n]o claim for an adjustment in the Contract Price will be valid if not submitted in accordance with this paragraph 11.2." *Id.*

If a change order is approved, the value of the work covered by the change order (Article 11.3) can be calculated by unit prices (Article 11.3.1), by a mutually agreed lump sum payment when the work involved is not covered by unit prices (Article 11.3.2), or on the basis of the "Cost of the Work," as calculated pursuant to Articles 11.4-11.6 if the

---

[12] The "Contract Price" is "[t]he moneys payable by OWNER to CONTRACTOR for completion of the Work in accordance with the Contract Documents as stated in the Agreement (subject to the provisions of paragraph 11.9.1 in the case of Unit Price Work)." Article 1.11; A15.

[13] Article 3.5 allows the contract documents to be amended by a written amendment, change order or a change work directive. Article 3.6 allows the contract documents to be supplemented by a field order, an engineer's approvals of shop drawings, or through an engineer's written interpretation of clarification. A19.

[14] As Donald Durkin testified, the contract with the City "was a lump-sum contract." Tr. 889; A108.

[15] A "Written Amendment" is a "written amendment of the Contract Documents, signed by OWNER and CONTRACTOR on or after the Effective Date of the Agreement and normally dealing with the nonengineering or nontechnical rather than strictly construction-related aspects of the Contract Documents." Article 1.45; A17.

work involved is not covered by unit prices or if a lump sum agreement cannot be reached pursuant to Article 11.3.2. Article 11.3.3; A35. Consequently, the "Cost of the Work" calculations in Articles 11.4-11.6 can only be used where: (1) a change order is submitted to and approved by the engineer;[16] (2) the "Work involved is not covered by unit prices;" and (3) when the owner and the contractor cannot agree to a lump sum payment. None of these circumstances is present in this case.

Durkin's use of (and the jury's acceptance of) the "Cost of the Work" damage calculations in Articles 11.4-11.6 was erroneous as a matter of law because under the plain meaning of the Construction Contract, the "Cost of the Work" calculations can only be used if a change order is submitted and approved. *See* Articles 3.5, 11.2; A19, A34. The only change order submitted to the engineer was for $275,926.79, and that request was never approved. City's Jury Notebook, at 56; A185. Durkin never submitted a change order for $5,492,666.55, and the engineer never approved the request as required by Article 11.2 of the Construction Contract. Because Durkin never submitted and obtained approval of a change order for the alleged pre-termination damages listed in DUR-68 (A181), and Durkin never performed any work (as defined by the Construction Contract) that would permit Durkin to submit and/or receive approval for a $5.4 million change order, the change order calculations cannot increase the contract price, and cannot be used to calculate alleged losses following contract termination.

    4.     <u>Durkin's consultant/professional expenses could not be recovered under the Construction Contract</u>

The jury awarded Durkin $1,740,751.38 for consultants and professional expenses, including "unpaid counsel fees of Durkin and Federal [Insurance Company] in-

---

[16] Under Article 9.11, the engineer renders a decision on any claim for a change order. The engineer's decision is final and binding unless the owner or the contractor appeal the decision to an appropriate body. A33.

curred through 09/26/06 and estimated through 10/02/06." DUR-68; Jury Verdict Form, I.A; A181, A223. This damage award was based on Article 17.5, which defines "claims, costs, losses and damages" to include attorneys' and professional fees.[17] A44. Article 17.5, however, is only a definitional provision for the phrase "claims, costs, losses and damages."[18] One must find where the phrase is used in the Construction Contract to determine when Durkin is entitled to recover under this provision. A44.[19]

While Durkin relied upon Article 11 to calculate its pre-termination damages (A181), Article 11 never references "claims, costs, losses and damages." However, the phrase is employed in Article 15.4 (the termination for convenience provision), which allows the contractor to recover "claims, costs, losses and damages" when the owner terminates without cause, but only for "claims, costs, losses and damages" incurred in settlement of terminated contracts with subcontractors, suppliers and others.[20] Article 15.4.3; A43. This provision does not allow Durkin to recover attorneys' fees for bringing suit against the City or for fees incurred by Durkin's insurance company. On the contrary, Article 15.4 specifically states that the "CONTRACTOR [Durkin] shall not be paid on account of loss of anticipated profits or revenue or other economic loss arising out of or resulting from such termination." A43.

---

[17] Article 17.5 states that "[w]henever reference is made to 'claims, costs, losses and damages,' it shall include . . . all fees and charges of engineers, architects, attorneys and other professionals and all court . . . costs." A44.

[18] This issue was raised at the prayer conference. At that time, Durkin's counsel admitted "I haven't read through the entire contract." Tr. 1162; A175.

[19] Pursuant to the "American Rule," litigants are generally responsible for their own attorney's fees. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). "Under the American rule, counsel fees are to be borne by the party who retains the attorney in the absence of contract or statute." *Scott Paper Co. v. Moore Bus. Forms, Inc.*, 594 F. Supp. 1051, 1090 (D. Del. 1984).

[20] The defined phrase "claims, costs, losses and damages" also occurs in Article 15.2. Nothing in Article 15.2 allows the contractor to recover attorneys' fees because only the City can recover its "claims, costs, losses and damages" under this provision. A42-43.

Durkin asked for and the jury awarded far more than attorneys' fees for "settlement with Subcontractors, Suppliers and others." Instead, the jury erroneously awarded Durkin and its insurer's fees and expenses in bringing this action against the City. A181 n.3 (seeking unpaid counsel fees of Durkin and Federal Insurance Company); Tr. 904; A123; Jury Verdict Form I.A; A232. Because these fees and expenses are not recoverable under the Construction Contract, the jury's damage award is erroneous as a matter of law.

### C.    The Jury's Contract Damage Award Is Contrary To Delaware Law

The constructive termination for convenience doctrine, and Article 15.4 of the Construction Contract, were the proper legal guideposts for the jury to follow when considering damages. Durkin, however, only presented the jury with its "Itemized Statement of Damages," which disregarded Article 15.4 and instead relied on the change order provisions of the Construction Contract. A-181. If, however, the Court does not accept the constructive termination for convenience doctrine, then the Court's pretrial determination that the City breached the Construction Contract requires application of Delaware common law to measure breach of contract damages. As shown below, even under Delaware common law, Durkin's "Itemized Statement of Damages" was legally flawed.

    1.    <u>The Delaware common law measure of damages for breach of an incomplete construction contract is the unpaid contract price minus the performance costs of the contract</u>

Under Delaware law, damages for breach of contract are awarded in an amount "sufficient to return the party damaged to the position they would have been in had the breach not occurred." *Delaware Limousine Serv., Inc. v. Royal Limousine Serv., Inc.*, C.A. No. 87C-FE-104, 1991 WL 53449, at *3 (Del. Super. Ct. Apr. 5, 1991); *see also Duncan v. TheraTx, Inc.*, 775 A.2d 1019, 1022 (Del. 2001). In a construction contract, where the contractor is prevented from completing performance by an alleged breach of

the owner, the contractor is entitled to damages consisting of "the 'contract price (or so much as remains unpaid) less the amount it would cost the [contractor] . . . to complete the job.'" *Diversified Packing & Dev. Corp. v. Dore & Associates Contracting, Inc.*, 48 Fed. Appx. 392, 399-400 (3d Cir. 2002) (quoting Charles T. McCormick, *Handbook on the Law of Damages* § 164 (1935)); *Dill v. Chastain*, 507 S.E.2d 872, 873 (Ga. App. 1998) (stating that "net profit … is calculated by subtracting from the contract price the amount full performance would have cost the contractor"); *DeCarlo & Doll, Inc. v. Bershtein*, No. CV9103232838, 1996 WL 456294, at *6 (Conn. Super. Ct. July 31, 1996).[21] This amount places the contractor in the same position it would have been had no breach occurred. *See Diversified Packing*, 48 Fed. Appx. at 399.

The jury's damage award was contrary to this well-established law, due to the jury's reliance on Durkin's "Itemized Statement of Damages." The Construction Contract totaled $9,833,053. Pretrial Order, D.I. 150, Exhibit G. Even assuming that the change orders were valid (which they were not because they were never accepted), the maximum contract price is $10,108,979.79 (contract price plus the change order amounts of $275,926.79).[22] As Donald Durkin testified, at the time of termination, Durkin performed approximately seventy percent of the work on the reservoir. Tr. 948; A140. The

---

[21] *See also Blaine Econ. Dev. Auth. v. Royal Elec. Co., Inc.*, 520 N.W.2d 473, 477 (Minn. App. 1994); *McGee Constr. Co. v. Neshobe Dev., Inc.*, 594 A.2d 415, 419 (Vt. 1991); *Williams v. Kerns*, 265 S.E.2d 605, 609 (Ga. App. 1980) ("If performance by either party had begun prior to the breach, adjustments must be made to ensure that the contractor receives the full amount of the profit, but no more."); Restatement (First) of Contracts § 346(2)(a) (1932); Philip L. Bruner & Patrick J. O'Connor, Jr., *Bruner and O'Connor* on Construction Law § 19:71 (2006) (providing formula for measuring a contractor's "expectancy" damages after owner wrongfully terminates, which eliminates saved costs of completion and other "unforeseeable consequential damages").

[22] On redirect, Donald Durkin testified that Durkin had "these outstanding claim issues" and "never addressed the impact of the weather." Tr. 960; A146. Mr. Durkin, however, did not provide any testimony about what "these other claims issues" are, or the value that Durkin might or could have received for any change order submitted related to any weather delays if the contract had not been terminated by the City. Mr. Durkin had previously admitted that Durkin never submitted a change order for weather related delays. Tr. 950; A142.

City paid Durkin $6,230,744.97, plus $457,337 to Durkin's subcontractors, for a total of $6,668,081.97. A181. Under Delaware law, the most Durkin could be awarded was the difference between the adjusted contract price ($10,108,979.79) and the amount paid ($6,668,081.97), totaling $3,440,897.82. Durkin was required to subtract from this amount the cost to complete the remaining thirty percent of the work, but Durkin never offered evidence of the cost to complete the work.

Instead of following Delaware law, the jury awarded Durkin $11,667,572.33, and obviously relied on Durkin's legally flawed "Itemized Statement of Damages." A181, A232. The award exceeds the original contract price, and fails to consider amounts already paid and the cost to complete the work. If the jury award is upheld, Durkin will receive $17.8 million in contract damages for a $9.8 million contract – a recovery far in excess of what is permitted under Delaware law. *See Diversified Packing*, 48 Fed. Appx. at 399, 402 (granting a new trial where the jury did not take into account the non-breaching party's saved costs of completion, which produced an award that put the party "in a better position than it would have been absent the breach"). Because the jury's contract damage award far exceeded the amount of breach of contract damages permitted under Delaware law, the jury's verdict was contrary to law.

2.     Post-termination operating revenue loans and sales are not recoverable

The jury also erroneously awarded Durkin $6.17 million in post-termination breach of contract damages. *See* A181 (Nos. 7-9); A232. Donald Durkin testified that these post-termination damages were incurred by Durkin to maintain its operation following the City's termination (Tr. 912; A131), because Durkin was not awarded new contracts since the City's alleged default. Tr. 906; A125. These post-termination damages

14

are not recoverable because they relate to loss of goodwill, customers, and <u>future</u> profits, which are not recoverable for breach of a construction contract under Delaware law.

Under Delaware law, loss of customers, business, and <u>future</u> profits (as opposed to lost profits arising under the Construction Contract) are not recoverable in breach of contract actions. As Judge Jordan recently held, "under Delaware law, consequential damages in the form of goodwill, lost future profits, and lost customers are not awarded in breach of contract actions." *Chemipal Ltd v. Slimfast Nutritional Foods International, Inc.*, 350 F. Supp. 2d 582, 595 (D. Del. 2004) (quoting *Crowell Corp. v. Himont USA, Inc.*, Civ. A. No. 86C-11-125, 1994 WL 762663, at *3 (Del. Super. Ct. Dec. 8, 1994)). In *Chemipal Ltd.,* Judge Jordan also held that, "recovery for lost profits is limited to those profits which might have been made pursuant to the performance of the particular contract sued on, during the period for which the contract was to run." *Chemipal Ltd.*, 350 F. Supp. 2d at 597 (citing *Tanner v. Exxon Corp.*, No. 79C-JA-5, 1981 WL 191389, at *3 (Del. Super. Ct. July 23, 1981)).[23]

Courts "repeatedly refuse[]" to award damages for lost business "on transactions not related to the contract that was breached" because such losses are "too uncertain and remote to be taken into consideration as part of the damages occasioned by the breach . . . ." *Wells Fargo Bank v. U.S.*, 88 F.3d 1012, 1022-23 (Fed. Cir. 1996).[24] Similarly, Courts routinely hold that lost business and lost future profits are not recoverable as dam-

---

[23] "Delaware law does not allow future profits as damages for a period beyond the termination date of the contract sued on since termination automatically extinguishes the relationship between the parties." Tanner, 1981 WL 191389, at *3.

[24] *See also Rumsfeld v. Freedom N.Y., Inc.*, 329 F.3d 1320, 1333 (Fed. Cir. 2003) (holding that damages for government breach do not include damages for "other independent and collateral undertakings"); *Essen Mall Properties v. United States*, 21 Cl. Ct. 430, 447 (1990) ("damages claims for loss of anticipated profits are generally 'too remote, consequential and speculative' from any breach that may have occurred to be recoverable as a matter of law"); *Kurz & Root Co. v. U.S.*, 227 Ct. Cl. 522, 1981 WL 139581, at *7 (Cl. Ct. Mar. 3, 1981) (general business injury and loss of net worth suffered as a consequence of a breach of contract are too remote and are not recoverable).

ages when the government breaches a construction contract. *See Lewis Jorge Const. Management, Inc. v. Pomona Unified School Dist.*, 102 P.3d 257, 267 (Cal. 2004) (reversing lost future profits awarded by the jury and holding that recovery for future, unawarded contracts is too speculative); *AR Sales, Inc. v. U.S.*, 49 Fed. Cl. 621, 630 (2001) (holding that plaintiff cannot recover money "it anticipated to make on other, unrelated contracts" because "such contracts are too remote.").[25]

Here, all of Durkin's post-termination damages are for lost customers, lost business, and lost future profits which were allegedly caused by the City's breach. Donald Durkin, the only Durkin witness to testify about damages, claimed that the effects of the City's default included: (1) reputation harm (Tr. 905-06, 909; A125-26); (2) lost customers (Tr. 906, 909; A125, 128); (3) inability to obtain a bond[26] (Tr. 907-09, 958; A126-28; A144); (4) loss of goodwill with subcontractors (Tr. 910; A129); (5) loss of goodwill with the union (Tr. 912; A131); and (6) sales of equipment[27] and borrowing of money for continued operation of the business. Tr. 911; A130. Because these alleged losses stem

---

[25] *See also The Millgard Corp. v. E.E. Cruz/Nab/Frontier-Kemper*, No. 99-Civ-2952, 2006 WL 1699528, at *3 (S.D.N.Y. June 21, 2006) (general knowledge that a termination for cause could negatively affect bonding capacity held insufficient to establish consequential damages for other jobs); *Hirsch Electric Co. v. Community Services, Inc.*, 536 N.Y.S.2d 141, 142-43 (N.Y. Supr. Ct. 1988) (plaintiff's claim that government delay made it impossible to obtain a bid bond for a future project was "based upon inferences upon inferences" and was "too remote and speculative to give rise to the recovery of damages."); *Mansuhl Const. Corp. v. Dormitory Authority of N.Y.*, 444 N.Y.S.2d 792, 804 (N.Y. Supr. Ct. 1981) ("The intervening factors, the open-ended possibilities and the wishful nature of the inferences leads this court to the inevitable conclusion that plaintiff's . . . claim for damages for loss of anticipated revenues is too speculative to stand as a matter of law.").

[26] Damages for loss of future work relating to the ability to obtain a bond are generally too speculative to be recoverable. *See Rhen v. United States*, 17 Cl. Ct. 140, 143-44 (1989) (holding that claims relating to the lack of ability to obtain bonding prevented the contractor from obtaining other contracts are too remote and speculative to permit recovery as a matter of law); *Olin Jones Sand Co. v. United States*, 225 Cl. Ct. 741, 1980 WL 13211, at *1 (Cl. Ct. Nov. 21, 1980) (ORDER) (damages from breach allegedly resulting in bonding companies refusing to issue bonds which prevented future contracts are "too remote and speculative to be recoverable").

[27] A contractor may not recover damages in a breach of contract action for sales of equipment for revenue because these alleged damages are "vague and speculative." *Zook Brothers Const. Co. v. State of Montana*, 556 P.2d 911, 918 (Mont. 1976).

from the alleged loss of goodwill, lost customers, and lost future profits, they are not recoverable in a breach of contract action. *Chemipal Ltd.*, 350 F. Supp. 2d at 595; *Crowell Corp.*, 1994 WL 762663, at *3. Even if the City's termination of the contract would have caused Durkin's business to close down, such disastrous consequences would not be recoverable as damages for the City's alleged breach. *See Lewis Jorge Const. Management, Inc.*, 102 P.3d at 267 (holding that even if the District's breach caused loss of bonding capacity and forced plaintiff to close its doors, such events are "not the natural and necessary result of the breach . . ."). Consequently, the jury verdict awarding Durkin $6.17 million in post termination damages should be set aside because the legal conclusions implied by the jury's verdict are erroneous as a matter of law.

## II.    THE COURT SHOULD GRANT A NEW TRIAL ON DURKIN'S CONTRACT DAMAGES

Under Fed.R.Civ.P. 59, the decision to grant a new trial is committed to the sound discretion of the Court. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). The Court should order a new trial where any of the following has occurred: "(1) a prejudicial error of law;[28] (2) a verdict against the weight of the evidence; or (3) the jury's grossly excessive or inadequate award is against the weight of the evidence." *Mycogen Plant Science, Inc. v. Monsanto Corp.*, 61 F. Supp. 2d 199, 260 (D. Del. 1999). A new trial should also be granted when "newly discovered evidence exists that would likely alter the outcome of the trial," *Callaway Golf Co. v. Slazenger*, 384 F. Supp. 2d 735, 740 (D. Del. 2005), or if a party suffers unfair surprise at trial. *Becton Dickinson & Co. v. Tyco Healthcare Group L.P.*, No. Civ. A. 021694, 2006 WL 890995, at *10 (D. Del.

---

[28]    When the District Court considers a prejudicial error of law, it has wide discretion in deciding a motion for a new trial. *Russ-Tobias v. Pa. Bd. of Probation and Parole*, No. Civ. A.04-0270, 2006 WL 516771, at *5 (E.D. Pa. Mar. 2, 2006) (citing *Klein v. Hollings*, 992 F.2d 1285, 1289-90 (3d Cir. 1993)).

Mar. 31, 2006). In this case, the Court should order a new trial on Durkin's contract damages for the following reasons.

**First,** as demonstrated previously, the jury relied on Durkin's legally-flawed "Itemized Statement of Damages," and used it to award damages inconsistent with the Construction Contract and Delaware law. *Compare* Jury Verdict Worksheet (A232) and A181. Where the jury has used the incorrect measure of damages, a new trial should be ordered. *Diversified Packing*, 48 Fed. Appx. at 402 (granting new trial on damages because jury's verdict was not supported by evidence where the incorrect measure of damages was used); *Tigg Corp. v. Dow Corning Corp.*, 962 F.2d 1119, 1129 (3d Cir. 1992) (granting a new trial on damages where the court incorrectly instructed the jury on the proper measure of damages); *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 952 F.2d 715, 734 (3d Cir. 1991) (granting new trial on damages where the jury incorrectly calculated compensatory damages stemming from a fraudulent misrepresentation claim under a gross profits measure rather than the legally correct measure of net profits).

**Second,** damage instruction number 21 constitutes a prejudicial error of law. A221.[29] Although the instruction sets forth the general measure of damages for a breach of contract, the instruction does not reflect the measure of damages negotiated by the parties under Article 15.4 of the Construction Contract or under Delaware law for a partially-completed construction contract. An erroneous or incomplete jury instruction constitutes plain error requiring a new trial. *See Tigg Corp.*, 962 F.2d at 1131 (holding that the trial court's instruction on the measure of damages was erroneous and required a new trial on damages); *Zimmerman v. First Federal Savings & Loan*, 848 F.2d 1047, 1058

---

[29] The City's counsel objected on several occasions to the instruction on damages, and submitted a separate instruction for the Court's consideration. See Tr. 1004-05; 1028-29; 1148 (submission of instruction); 1161; 1164-65; 1168; A155-56; 161-62; 172; 174; 177-78; 180.

18

(10th Cir. 1988) (holding that an incomplete jury instruction is plainly erroneous and prejudicial); *Massera v. Gulf Oil Corp.*, No. 54539, 1988 WL 114481, at *2 (Ohio App. Oct. 27, 1988) (holding that the jury instruction was plain error when "the court improperly instructed the jury about damages by inviting them to speculate"); *U.S. v. Alferahin*, 433 F.3d 1148, 1157 (9th Cir. 2006) (finding that District Court's error is plain when its jury instructions fail to incorporate an element).

**Third,** the damages awarded for breach of contract are grossly excessive as a matter of law. As previously discussed, the maximum contract price (even accepting as valid all disputed change orders) is $10,108,979.79. The undisputed testimony confirms that the City paid Durkin $6,230,744.97, and paid $457,337 to Durkin's subcontractors, for a total of $6,668,081.97. A181. Yet, the jury awarded Durkin $11,667,572.33 in breach of contract damages. A232. If the jury award stands, Durkin will receive $17.8 million resulting from the breach of a $9.8 million contract for which Durkin performed only seventy percent of the work. Because such an award is grossly excessive, a new trial should be granted on the issue of damages.

**Fourth,** the City has newly discovered evidence about Durkin's trial testimony. At trial, Michael Durkin testified that Durkin had been "sitting around basically watching the grass grow" for two and a half years. Tr. 302; A62. Donald Durkin testified that they "have not performed a job since the date of this termination" because of the City's termination and the alleged inability to obtain a bond. Tr. 906-910; A125-29. Immediately after trial, however, the City learned that Ronald Scott Killen, an estimator with Mason Building Group, had requested that Durkin submit a bid on a $2 million project that did not require a bond. Killen Aff. at ¶¶ 7-9; A237-38. Durkin advised Mr. Killen that it "would not be bidding on any work until after the litigation was over with the City of

Newark." *Id.* at ¶ 9. This newly discovered evidence would likely alter the outcome of the trial because it shows, contrary to Mr. Durkin's testimony that Durkin could have bid on and possibly obtained work post-termination, but chose not to pursue other work and failed to attempt to mitigate its damages as required by law. In light of this newly discovered evidence, a new trial on the issue of damages should be granted. *See Compass Technology Inc. v. Tseng Labs. Inc.*, 71 F.3d 1125, 1130 (3d Cir. 1995) (holding that the District Court abused its discretion in refusing to allow a newly discovered witness to testify); *Geressy v. Digital Equip. Corp.*, 980 F. Supp. 640, 646-648 (E.D.N.Y 1997) (granting a new trial due to newly discovered evidence).

**Finally,** a new trial should be granted on the basis of unfair surprise. In interrogatories directed to Durkin, the City requested that Durkin quantify its alleged damages. A52; A50. Durkin's interrogatories state that "[a] full accounting of the damages is being computed and will be the typic [sic] of damage and accounting experts." A52. The City's counsel relied on this representation when deposing Donald Durkin. A58-59. Durkin never supplemented its interrogatory response as required by the Rules. *See* Fed.R.Civ.P. 26(e)(2) ("A party is under a duty seasonably to amend a prior response to an interrogatory . . . if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."). Durkin never produced an expert report and did not offer expert testimony at trial. Instead, on the fifth day of trial, Durkin for the first time produced its "Itemized Statement of Damages" and used Donald Durkin to testify regarding damages. Tr. 888-916; A107-35. Durkin's mid-trial production of a new document directed to damages deviated from