# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DONALD M. DURKIN                    )
CONTRACTING, INC.,                  )
                                    )
      Plaintiff,                    )
                                    )
    v.                             )    No. 04-0163-GMS
                                    )
CITY OF NEWARK, HAROLD F.           )
GODWIN, JOHN H. FARRELL, IV,        )
JERRY CLIFTON, KARL G.              )
KALBACHER, DAVID J. ATHEY,          )
FRANK J. OSBORNE, JR., and          )
CHRISTINA REWA,                     )
                                    )
      Defendants/                   )
      Third-Party Plaintiffs,       )
    v.                             )
                                    )
FEDERAL INSURANCE COMPANY,          )
                                    )
      Third-Party Defendant.        )
                                    )
------------------------------------------    )
                                    )
CITY OF NEWARK,                     )
                                    )
      Third-Party Plaintiff,        )
                                    )
    v.                             )
                                    )
URS CORPORATION,                    )
                                    )
      Third-Party Defendant.        )

## CITY OF NEWARK DEFENDANTS' POST-TRIAL BRIEF
## IN SUPPORT OF THEIR MOTION FOR JUDGMENT
## AS A MATTER OF LAW AND FOR A NEW TRIAL OR REMITTITUR

### PART 2

Durkin's interrogatory responses and the damages claimed in the pre-trial order,[30] causing unfair surprise to the City and warranting a new trial.[31]

## III.    THE COURT SHOULD GRANT JMOL ON DURKIN'S CONVERSION CLAIM

A conversion claim requires proof of "a property interest in the converted goods; that the plaintiff had a right to possession of the goods; and that the plaintiff sustained damages." *Goodrich v. E.F. Hutton Group, Inc.*, 542 A.2d 1200, 1203 (Del. Ch. 1988). While the jury found the City liable for conversion, there is no evidence about what materials or equipment were converted or their value, the nature of Durkin's alleged property interest, or any damages related to the alleged conversion. Because there is no evidence supporting the conversion claim, let alone substantial evidence, the City should be granted judgment as a matter of law. *See TI Group Automotive Systems, Inc.,* 2002 WL 31051602, at *1.

## IV.    THE COURT SHOULD GRANT JMOL ON DURKIN'S CIVIL RIGHTS CLAIM

### A.    The City Should Be Granted JMOL On Durkin's Civil Rights Claim

The evidence in this case was insufficient, as a matter of law, to submit Durkin's sole constitutional claim to the jury.  As this Court noted at the beginning of the seventh day of the trial, "it is only recently, as recent as Docket Item 272, actually, that Durkin has identified the specific constitutional right at issue." Tr. 1022; A158.  The specific constitutional right identified by Durkin was a "liberty interest" in "the right to pursue one's profession." *Id.* Even though the Complaint did not identify that particular claim, the Court, "pursuant to Rule 15(b)," allowed amendment of the pleadings to assert that

---

[30]  The damage exhibit attached to the pre-trial order is far less detailed than Durkin's "Itemized Statement of Damages."  Compare A181 and D.I. 150, Exhibit G.
[31]  *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222-24 (3d Cir. 2004) (affirming trial court's exclusion of plaintiff's evidence on damages where defendant was prejudiced by plaintiff's failure to provide such evidence upon defendant's request until one week before trial).

specific constitutional claim. *Id.* Under well-established law, however, Durkin could not maintain a claim under § 1983 for deprivation of its liberty interest to pursue its occupation, and judgment as a matter of law should be granted in favor of the City.

   1.   A liberty interest does not encompass the right to perform a particular contract

Although a liberty interest does exist in some circumstances to pursue one's occupation, that liberty interest does not encompass the right to perform a particular job or contract. As the Third Circuit has explained, "[i]t is the liberty [interest] to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994) (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992)). As a result, where governmental action does not cause a blanket prohibition against the pursuit of a calling or occupation, such as where a physician's license is revoked or terminated, a constitutional liberty interest is not implicated. *See, e.g., Piecknick*, 36 F.3d at 1261 ("This case is distinguishable from those in which a person's license to pursue a chosen occupation is revoked or substantially interfered with . . . ."); *Swinehart v. McAndrews*, 221 F. Supp. 2d 552, 556 (E.D. Pa. 2002) ("When a person's license to pursue a calling is taken away or interfered with in a substantial fashion, a plaintiff may demonstrate a due process violation").

Because the liberty interest to pursue a chosen occupation does not include the right to a particular job or contract, the Third Circuit has held that no § 1983 liberty interest claim arises from the breach or termination of a governmental contract. The rule applies regardless of the nature and severity of the economic consequences to the plaintiff arising from the breach or termination of the contract. *Linan-Faye*, 49 F.3d 915, 932.

As discussed earlier regarding Durkin's contract claims, in *Linan-Faye*, a munici-pal housing authority terminated a housing modernization contract with the plaintiff. Following termination, the contractor brought both a breach of contract and a § 1983 claim, asserting a liberty interest claim based on its inability to pursue its occupation. In support of its liberty interest claim, the contractor contended that after the authority ter-minated the contract, it retained the contractor's performance bond, and in doing so "pre-vented it from accepting other construction contracts." *Id.* at 929, 931. The contractor further alleged that the authority retained the bond "as an inducement to force [the con-tractor] to accept an unreasonable resolution of th[e] dispute [about the termination]." *Id.* Notwithstanding the allegations that the practical effect of the authority's termination of the contract and resulting retention of the performance bond prevented contractor from getting any other work, and allegations that the authority retained the bond to gain lever-age in a settlement, the Third Circuit held that the contractor did not have a maintainable liberty interest claim:

> Turning to Linan-Faye's assertion that it has been deprived of a constitutionally protected liberty interest, we also find that the district court did not err in granting summary judgment for HACC. The Court of Appeals for the Second Circuit addressed a case factually similar to the one at hand in *S & D Maintenance Co. v. Goldin*, 844 F.2d 962 (2d Cir. 1988). In that case, a contractor brought a § 1983 claim against the City of New York, claiming that the City's withholding of payments under a contract to maintain park-ing meters resulted in the contractor being left with insuffi-cient capital to pursue other work. *Id*. at 963, 970. The court held that although the consequential damages of an alleged breach may be severe, this fact alone cannot con-vert a contract claim into a deprivation of liberty. *Id*. at 970. We agree with the reasoning of the Court of Appeals for the Second Circuit, and conclude that Linan-Faye fails to establish a claim of constitutional magnitude.

49 F.3d at 932.

The Second Circuit's decision in *S & D Maintenance Co. v. Goldin*, 844 F.2d 962 (2d Cir. 1988) further illustrates the point. In *S & D*, the contractor claimed essentially the same damages Durkin asserts in this case. The contractor claimed that by breaching its contract, the city left it "tot[t]ering near bankruptcy, unable to get work," and being left "without sufficient capital to pursue other work." *Id.* at 970 (emphasis in original). The Second Circuit held that, as a matter of law, even those severe hardships could not establish a maintainable liberty interest claim: "The fact that consequential damages of the alleged breach may be severe cannot convert a contract claim into a deprivation of liberty." *Id.* The Court in *S & D* specifically held that it did not matter that the practical effects of the breach were to put the contractor out of business and unable to pursue its occupation. Those were damages resulting from the government's breach, and, as such, the contractor's remedy was solely for breach of contract. *Id.*[32]

Another analogous case is *Shifa Services, Inc. v. The Port Authority of New York*, No. 96 Civ. 1361, 1997 WL 16062, *5-7 (S.D.N.Y. Jan. 15, 1997). In *Shifa*, the contractor asserted a liberty interest claim, alleging that the Port Authority intentionally interfered with its right to pursue its occupation by breaching a number of contracts with the contractor and thereafter refusing to allow it to bid on new contracts. *Id.* at *3. The contractor claimed that the Port Authority acted to "deliberately ruined [the contractor's] business" and "forced [it] into bankruptcy." *Id.* *1, 6. Relying on the distinction set forth

---

[32] *See also Stambaugh's Air Service, Inc. v. Susquehanna Area Regional Airport Authority*, 1:00-CV-660, 2006 WL 709229, *2-3 (M.D. Pa. Mar. 16, 2006) (where airport authority was accused of harassment, intimidation, and force to unlawfully exclude plaintiff from providing services at the airport, no liberty interest stated); *Eberts v. Wert*, 92-CV-3913, 1993 WL 304111, *3 (E.D. Pa. Aug. 9, 1993) (holding that "the consequential loss arising out of the alleged breach or interference [by a governmental entity] with a contract cannot convert an interest in an ordinary commercial contract into a viable claim for deprivation of liberty under the Fourteenth Amendment"); *Coney Island Resorts, Inc. v. Giuliani*, No. 00-CV-2233, 2000 WL 804636, *7 (E.D.N.Y. May 10, 2000) ("The fact that consequential damages of the alleged breach may be severe cannot convert a contract claim into a deprivation of liberty.").

in *Linan-Faye* and *S & D*, the District Court held that these allegations, even if true, did not establish government interference with the contractor's right to pursue its chosen occupation. The Court held that "[The contractor] remained free at all times to pursue cleaning and maintenance contracts with other governmental entities and private corporations" and "[T]he allegations of [the contractor's] complaint do not demonstrate that the Port Authority denied [the contractor] the opportunity to pursue its livelihood." *Id.*

Because the Third Circuit and other circuits have unequivocally held that the loss of one contract, no matter how severe the consequences, does not state a claim for unconstitutional interference with a liberty interest, judgment as a matter of law should be granted to the City on Durkin's constitutional claim. *See Chenvert v. DeJohn*, No. 98-111-GMS, 2000 WL 1728257, at *4-5 (D. Del. Apr. 11, 2000), *aff'd*, 275 F.3d 576 (3d Cir. 2001) (dismissing case and holding that "wholesale federalization of state public contract law" are the types of results that *Linan-Faye* sought to avoid).

2.    Durkin's breach of contract evidence is insufficient to support the civil rights claim

In support of its § 1983 claim for loss of ability to pursue its occupation, Durkin offered two types of evidence: (1) evidence of damages allegedly resulting from the breach; and (2) evidence of allegedly defamatory statements. Neither is sufficient to provide the basis for a liberty interest loss of occupation claim.

Regarding evidence of damages allegedly resulting from the breach of contract, Durkin introduced evidence that the City withheld payments, terminated the contract, and notified Durkin's surety that Durkin was in default on the performance bond. As a matter of law, however, this evidence was insufficient to state a claim for violation of Durkin's liberty to pursue its occupation.

Durkin's testimony relates to alleged damages for breach of the Construction Contract. Tr. 888-911; A107-30. The same evidence was offered in *Linan-Faye* and in *S & D*, and was held insufficient in those cases. As noted earlier, in *Linan-Faye*, the contractor claimed its liberty interest to pursue an occupation was violated by both the termination of the contract and the retention of its security bond which had the effect of preventing it from obtaining new contracts. The Third Circuit flatly rejected that claim because those effects were nothing more than the consequences of the breach of contract and therefore insufficient to form the basis of a liberty interest claim. 49 F.3d at 932. In *S & D*, the consequential damages were equally as severe as those claimed by Durkin.

Relying on *Linan-Faye* and *S & D*, other courts have rejected liberty interest claims even when evidence of damages claims is far more extensive than that offered by Durkin. For example, in *Shifa*, the plaintiff testified that the Port Authority intended to destroy its business and drive it into bankruptcy, and succeeded in doing both. 1997 WL 16062, *1-2. Still, the District Court held that the government did not deprive the contractor of the ability to pursue its occupation. *Id.* at *6. Likewise, in *Stambaugh*, the contractor claimed that the airport authority used harassment and intimidation to force the contractor out of its lease, and the District Court held that without a more direct connection between the airport authority and the contractor's inability to get other business, the contractor had no liberty interest claim. 2006 WL 709229, *1, 3. For the same reasons set forth in these cases, Durkin's evidence is insufficient as a matter of law to establish unconstitutional interference with a liberty interest.

3.    <u>The alleged defamatory statements do not support a civil rights claim</u>

Durkin also offered evidence of alleged defamatory statements made by the City. These alleged defamatory statements, however, cannot support an unconstitutional interference with Durkin's liberty interest right to pursue its occupation.

There is no free-standing constitutional claim premised upon defamation and resultant damage to reputation.  *See Paul v. Davis*, 424 U.S. 693, 701 (1976); *see also Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (recognizing that "[d]efamation, by itself, is a tort actionable under the laws of most states, but not a constitutional deprivation").  To state a claim that alleged defamation has implicated a liberty interest, loss of reputation must be coupled with the loss of some other tangible element.  *Paul*, 424 U.S. at 701. This is the so-called "stigma plus" claim.  *See Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006).

A liberty interest "stigma plus" claim alleging damage to the ability to conduct one's business as a consequence of alleged defamatory statements is an entirely separate and independent claim from a liberty interest claim based on governmental interference with the right to pursue a chosen occupation.  It has wholly separate elements and is subject to a completely different analysis and standard of proof.  *See S & D*, 844 F.2d at 970 (explaining that the liberty claims based on the right to pursue a chosen occupation, and injury of the ability to conduct one's business on account of injury to reputation are two entirely distinct claims, analyzed separately under different standards); *Rodriquez v. Margotta*, 71 F. Supp. 2d 289, 296-97 (S.D.N.Y. 1999), *aff'd,* 225 F.3d 646 (2d Cir. 2000) (analyzing a liberty interest claim premised on the right to pursue an occupation as a separate claim with distinct standards from a procedural due process stigma-plus

claim).  Liberty interest claims alleging "stigma plus" liability implicate the procedural component of the Fourteenth Amendment Due Process Clause.  *Hill*, 455 F.3d at 236.

A stigma-plus claim – according to this Court's oral order on page 1022 of the trial transcript – was never at issue in this case.  This Court amended the pleadings under Rule 15(b) to include *only* a liberty interest right to pursue a chosen occupation claim, *not* a stigma-plus procedural due process claim.  A158.  Because Durkin had only one constitutional claim, any "stigma plus" claim could never have gone to the jury as an issue in the case.  *See, e.g., Price v. Inland Oil Co.*, 646 F. 2d 90, 95 (3d Cir. 1981) (remanding for new trial where the District Court erroneously allowed plaintiff to argue a negligence-based theory of liability despite the fact the plaintiff had limited itself to a strict liability theory in its own pre-trial memoranda).  Indeed, the jury was never instructed on the claim's elements, standards, or proof requirements.

Even assuming that a stigma-plus claim was at issue, the evidence in the record could not have supported such a claim.[33]  Under the stigma-plus line of cases, "a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest."  *Hill*, 455 F.3d at 236 (emphasis in original).  Where there has been both a "stigma" and a "plus," the due process required is a name-clearing hearing.  *Id.*  It is only where the government has failed to give the name-clearing hearing that an individual has a maintainable liberty interest claim under the stigma-plus test.  Only then is the constitutional deprivation complete.

Durkin wholly failed to satisfy any of the required evidentiary for any potential stigma-plus claim.  First, there was no proof of the "stigma" part of the claim.  Only

---

[33]  The evidence does not support any other due process claim.  The contract could be terminated for convenience.  Therefore, Durkin had no property right in the contract protected by the procedural due process clause.  *Linan-Faye*, 49 F.43d at 932.

statements that accuse the plaintiff of dishonesty or conduct involving moral turpitude are sufficient to constitute a stigma for due process purposes.  Allegations of incompetence and refusal to perform made by the City are not enough.  *See, e.g., Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361, 365-66 (9th Cir. 1976) ("This distinction [between charges of incompetence and moral turpitude] is a reasonable one"); *Joelson v. United States*, 86 F.3d 1413, 1420-21 (6th Cir. 1996) (applying same distinction).

District courts in this circuit have also held that statements attributing incompetence to a plaintiff are not sufficient to form the basis of a stigma-plus claim.  *See Keddie v. Pennsylvania State University*, 412 F. Supp. 1264, 1274 (M.D. Pa. 1976); *Pavlov v. Martin*, 381 F. Supp. 707, 709-710 (D. Del. 1974).  At best, the only evidence that Durkin offered as injurious to its reputation was that the City deemed it incapable of performing the work at issue or that Durkin refused to finish the work.  Tr. 550, 586-87, 592-94, 596-97; A76; A82-83; A86-88; A89-90.[34]  Such evidence was insufficient to establish a "stigma" as that term is used in stigma-plus cases.

Durkin also failed to show that it had ever requested a name-clearing hearing, but was not given one.  *See Winskowski v. City of Stephen*, 442 F.3d 1107, 1112 (8th Cir. 2006) (" . . . when suing for deprivation of a name-clearing hearing, a plaintiff must prove that he sought one before litigation"); *Wojcik v. Mass. State Lottery Comm'n*, 300

---

[34]  During the trial, Durkin read into the record the deposition testimony of George Clifton, a City Council member.  Mr. Clifton was asked about a Council executive session where he apparently stated that Durkin's refusal to perform under the contract was "almost fraudulent."  Tr. 745-746; A98-99.  Statements made during private, executive sessions of the council are not public, and there is no evidence that it was otherwise made public.  *See Hill*, 455 F.3d at 236 ("To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statement(s) (1) were made publicly . . . ."); *Diehl v. Albany County School Dist. No. 1*, 694 F. Supp. 1534, 1537 (D. Wyo. 1988) ("Plaintiff cannot rely on statements made by board members in executive session . . . These statements were made in private."); *see also Scarnati v. Washington*, 599 F. Supp. 1554, 1557 (M.D. Pa. 1985) (holding that "unpublicized accusations do not infringe constitutional liberty interests because, by definition, they cannot harm good name, reputation, honor, or integrity") (internal marks omitted).

F.3d 92, 103 (1st Cir. 2002) (stating that, before an employee can succeed in a liberty interest deprivation claim, "the government must have failed to comply with the employee's request for an adequate name-clearing opportunity").  Durkin never requested a name-clearing hearing before the City Council to rebut the alleged defamatory or stigmatizing statements.  Tr. 591, 615-16; A85; A92-93.  It therefore could not have stated a *prima facie* stigma-plus claim as a matter of law.

Finally, Durkin failed to adduce evidence that could have proven damages on a stigma-plus claim.  As demonstrated above, even with a stigma and plus, there is no violation of procedural due process unless the defendant fails to provide the process due, often called a name-clearing hearing.  Simply proving stigma and the plus, therefore, and proving damages is insufficient.  Rather, the plaintiff must prove in a stigma-plus case that the damages sought were the result of the failure to obtain a hearing, not that the damages were the result of the stigma's effect on its reputation.  *Miner v. City of Glens Falls*, 999 F.2d 655, 660 (2d Cir. 1993) (holding claimant must show that "the property or liberty deprivation for which he [seeks] compensation would not have occurred had proper procedure been observed").

The Third Circuit has never held that a stigma-plus plaintiff may recover damages.  *See Hill*, 455 F.3d at 236 n.15 ("We have not in the past decided – and do not have occasion to decide here – whether a plaintiff who prevails on a 'stigma-plus' claim may be entitled remedies other than a name-clearing hearing.").  A name clearing hearing may be the only remedy that is available.  *See, e.g.*, *Chilingiran v. Boris*, 882 F.2d 200, 206 (6th Cir. 1989) ("No more process is required" other than name clearing hearing).  Even if damages are recoverable, the only damages that the plaintiff is entitled to recover are damages that directly stem from his failure to receive a hearing, which Durkin never

claimed. *See Patterson v. City of Utica*, 370 F.3d 322, 338 (2d Cir. 2004) ("plaintiff has the 'burden to show that the property or liberty deprivation for which he sought compensation would not have occurred had proper procedure been observed'"); *Miner*, 999 F.2d at 660.

Durkin presented no evidence showing that the reputational injury complained of would not have occurred had it been given the name-clearing hearing or, conversely, that the reputational damages were the failure of the City to provide it with a name-clearing hearing. Because Durkin provided no evidence that its reputational damages were the result of the failure of the City to give it a name-clearing hearing (as opposed to simply being the loss of reputation damages generally), it has no maintainable stigma-plus claim that could have been properly submitted to the jury in this case.

## V.     ALTERNATIVELY THE COURT SHOULD GRANT THE CITY A NEW TRIAL ON THE CIVIL RIGHTS CLAIM

If the Court declines to grant the City's request for judgment as a matter of law, then in the alternative, the Court should grant the City a new trial on the civil right claim because the jury instructions tendered by Durkin incorrectly stated the law.[35]

### A.     The Jury Instructions Misstate The Law

Where the jury instructions do not adequately apprise the jury of the applicable law, a new trial should be granted. *See Tigg Corp.*, 962 F.2d at 1131 (explaining that jury

---

[35] The City has consistently maintained that Durkin does not have a viable civil rights claim. Initially, the City argued this in its answering brief in opposition to Durkin's motion for a preliminary injunction. D.I. 21, at 28-29. Thereafter, in briefing on two separate motions *in limine* the City argued that Durkin did not have a viable civil rights claim (D.I. 151, D.I. 155), and argued the same thing in its pre-trial brief. D.I. 158. After Durkin finally identified its particular constitutional claim on the fifth day of trial, Tr. 1022; A158; D.I. 272, the City in its opposition again argued that Durkin did not have a liberty interest claim arising out of a breach of one contract. D.I. 276. The City made the same argument yet again in its Rule 50(a) motion (D.I. 277), which this Court, on the same day that the civil rights jury instructions were discussed, reserved ruling on until after the jury returned its verdict. Tr. 1028; A161. Under these circumstances, no more was required of the City by Fed.R.Civ.P.51. *See Repola v. Morbark Industries, Inc.*, 934 F.2d 483, 488 (3d Cir. 1991).

instructions must apprise the jury of the applicable law and holding that, when they do not because of a mistake in setting out the law, a new trial is warranted). There are two principal errors in the jury instructions on the civil rights claim. The first is the definition of the constitutional right at stake. The jury was instructed that "[t]he right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within both the 'liberty' and 'property' concepts of the Fifth and Fourteenth Amendments." Jury Instruction 14; *see also* Jury Instructions 15 and 16; A210-15. The definition was taken verbatim from *dicta* in *Piecknick*, 36 F.3d at 1259. While the definition may be correct as an abstract matter, it was entirely inapplicable to the facts of this case.

As set forth above, where the government terminates or breaches one contract, it does not rise to the level of interfering with the right to pursue a chosen occupation. *Linan-Faye*, 49 F.3d at 932. This is so even when the economic consequences to the plaintiff from the breach are severe. *See id.*; *see also S & D*, 844 F.2d at 970. There is no general substantive due process right to pursue a chosen occupation that is violated by each and every government action that has some effect on the ability to pursue a chosen occupation. *See Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 404-405 (3d Cir. 2000). Rather, in this circuit and others, before the liberty to pursue a chosen occupation is violated, the government action must be such that it resulted in a blanket prohibition against the pursuit of a calling or occupation, as in a license revocation or termination. *See, e.g., Piecknick*, 36 F.3d at 1261 ("This case is distinguishable from those in which a person's license to pursue a chosen occupation is revoked or substantially interfered with . . . .").

Jury instructions 15 and 16 were erroneous because they suggested that the jury was free to find that the City violated Durkin's right to pursue a chosen occupation simply by breaching the Construction Contract or harming Durkin's reputation. A211-13. The Third Circuit has considered the same type of overly-general jury charge, and has squarely held that such a charge is error. *See Boyanowski*, 215 F.3d at 404-405.

In *Boyanowski*, like here, the jury instructions defined the plaintiff's constitutional right as the "liberty interest to engage in the transportation business." *Id.* at 404. The District Court described the plaintiff's claim "as 'derived from a fundamental liberty interest to engage in the common occupations of life protected by the Fourteenth Amendment.'" *Id.* The Third Circuit held that such a general and broad description of the constitutional liberty interest at stake was erroneous: "[O]ur precedent has never read substantive due process as extending as far as did the District Court." *Id.* The Third Circuit explained that the liberty to pursue a chosen occupation does not "constitutionalize all executive actions that affect the pursuit of a profession in any way." *Id.* Rather, it is only under certain circumstances that government action can be said to interfere with the constitutional right to pursue a chosen occupation. *Id.* at 404-05. Because the jury instructions did not provide the correct legal standard, the charges were erroneous and the Court reversed the judgment entered on the jury's verdict. *Id.* at 405.

The jury charge also specifically instructed the jury that it could award damages for "impairment to reputation" as damages available to Durkin for its liberty interest claim. A215. This instruction conflates two separate and independent civil rights claims. Durkin cannot recover damages for impairment to its reputation based on the right to pursue its occupation. *See Boyanowski*, 215 F.3d at 404-405 ("Equating a defamatory statement that leads to a third party's not extending a contract to a frustrated plaintiff with the

deprivation of the plaintiff's legal right to engage in the common occupations of life in a manner protected by the Fourteenth Amendment goes too far."). Rather, the only way Durkin can recover for the loss of its reputation is to satisfy the stigma-plus test. *See Hill*, 455 F.3d at 236. As discussed above, a stigma-plus claim is a separate and independent claim from a right to pursue a chosen occupation claim. *See S & D*, 844 F.2d at 970 (explaining that the liberty claims based on the right to pursue a chosen occupation, and injury of the ability to conduct one's business on account of injury to reputation are two entirely distinct claims, analyzed separately under different standards). A stigma-plus claim did not go to the jury in this case. This Court only amended the pleadings under Rule 15(b) at the beginning of day seven of the trial to include only a liberty interest claim based on the right to pursue a chosen occupation, not a liberty interest stigma-plus claim. Tr. 1022; A158; *see also* discussion *supra* Part IV.A.3. Because the jury relied on incorrect legal standards, its $25 million verdict cannot stand for violating a constitutional right that as a matter of law could not be violated in this case. A233.

### B. The Jury's Damage Award Was Shockingly Excessive And Duplicative Of The Compensatory Contract Damages

Should this Court disagree that the City is entitled to a judgment as a matter of law as to Durkin's civil rights claim, the City should be entitled to a new trial or remittitur of the excessive $25 million damage award. A233. Durkin failed to introduce any evidence of compensatory damages related to any constitution violations, there was no relationship between the injury and the damages suffered, and the jury's verdict was the result of passion and prejudice and was therefore not based on evidence submitted at trial.

#### 1. Standard for a new trial

The Court has a responsibility to ensure that jury awards do not extend beyond all reasonable bounds. *Hayes v. Cha*, 338 F. Supp.2d 470, 510 (D. N.J. 2004). A new trial

or remittitur should be granted when the "damage award is so grossly excessive as to shock the judicial conscience 'or' if a miscarriage of justice would result if the verdict were to stand." *Brodbeck v. National Rifle Ass'n of America*, No. Civ. A. 98-5361, 1999 WL 722815, at *2 (E.D. Pa. Sept. 14, 1999); *Lyles v. Flagship Resort Devt. Corp.*, 371 F. Supp.2d 597, 604 (D. N.J. 2005) (holding that a new trial is warranted where the verdict is grossly excessive and bears no rational connection to the evidence). The Court "must grant a new trial" if the trial court finds "that the verdict is a result of passion or prejudice by the jury." *Id.*; *see also Schreffler v. Bd. Of Ed. Of Delmar Sch. Dist.,* 506 F. Supp. 1300, 1309 (D. Del. 1981); *Brodbeck*, 1999 WL 722815, at *2.

    2.    <u>The damage award is not supported by the trial record</u>

The basic purpose of civil rights damages is to compensate plaintiffs for injuries that are caused by the deprivation of constitutional rights. *Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("substantial damages should be awarded only to compensate actual injury."). Here, however, the jury awarded Durkin $25 million in compensatory damages on the constitutional claim in addition to $11.6 million for breach of contract, for a total damage award of $36.6 million. A232-33. This award arises from a $9.8 million contract for which the City had already paid Durkin $6.6 million. A181. There is simply no evidence to support a $25 million compensatory damage award for a constitutional violation.[36]

Only two Durkin witnesses testified about Durkin's alleged loss of business and reputational harm – Michael Durkin and Donald Durkin. Michael Durkin testified that Durkin had not performed any jobs after termination by the City and that Durkin was "watching the grass grow." Tr. 302; A62. Donald Durkin testified about alleged contract

---

[36] Durkin withdrew the punitive damage claim after the fifth day of trial. Tr. 993-94; A148-49. The $25 million award is, however, more in the nature of punitive damages because there were no compensatory damages claimed at trial attributable to the alleged constitutional violation.

damages, including: (1) indemnity for the bonding company (Tr. 891; A110); (2) damages for breach of contract under the change order provisions (Tr. 891- 905; A110-24); and (3) loss of business reputation and loss of business resulting from the default (including selling equipment and borrowing money).  Tr. 905-911; A124-30.

Other than Donald Durkin's testimony and Durkin trial exhibit 68 addressing contract damages (A181), there was no evidence of compensatory damages related to the constitutional claim.  There was no testimony about the profit made by Durkin in the years before the termination and the years after termination.  There is no testimony about the alleged losses suffered by Durkin independent of the breach of contract damages. There was no evidence, expert or otherwise, regarding the value of Durkin's contracting business.  The only basis for compensatory damages was contract damages, which the jury already awarded to Durkin – a clear duplication of damages.

Simply stated, there is no evidence to support any constitutional compensatory damage award to Durkin based upon the testimony submitted at trial.  Because there is no evidence, let alone substantial evidence, to support the constitutional compensatory damage award, a new trial should be granted.  *Rodgers v. Fisher Body Div., General Motors Corp.*, 739 F.2d 1102, 1108 (6th Cir. 1984) (remanding for new trial on damages where plaintiff's evidence was insufficient to support jury's compensatory damage award).

3.    The jury award was based on passion and prejudice

The jury's $25 million damage award is not based upon any damage-related evidence in the record.  Rather, the award is based upon sympathy, premised on Donald Durkin's testimony that: (1) the company is named for his father (Tr. 912; A131); (2) he and his brothers run the business (Tr. 913; A132); (3) his family has been in the business since 1920 (Tr. 913-14; A132-33); (4) Donald Durkin, Sr. is in poor health (*id.*); and (5)

his grandmother and family members liquidated personal assets for the company. Tr. 914-15; A133-34.[37] The jury could only have based its compensatory damage award on this sympathetic testimony because there is no evidence of actual damages arising from the constitutional claim. Trial exhibit DUR-68, which identifies total damages claimed by Durkin of approximately $11.68 million, only relates to contract damages. A181.

Under these circumstances, the District Court has "an obligation . . . to ensure that the compensatory damage award finds support in the record and that the jury did not 'abandon analysis for sympathy.'" *Alling v. Johnson Controls*, No. Civ. A. 00-5228, 2002 WL 59280, at *2 (E.D. Pa. Jan. 15, 2002); *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 773 (3d Cir. 1987) ("a jury may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket"). Because the jury's verdict on constitutional damages was based upon passion and prejudice, and not on the evidence submitted in the case, a new trial should be granted. *See Brodbeck*, 1999 WL 722815, at *2, 6 (finding that "the damages in this case are so grossly excessive as to be shocking" and ordering a new trial to "prevent a manifest injustice").

4.    In the alternative, remittitur should be granted

In the event that the Court finds that there is record evidence to support a $25 million compensatory damage award, and decides that the award is not based upon passion or prejudice, the Court should grant remittitur to reduce the shocking constitutional compensatory damage award. *See id.* at *2 ("Damage awards that are . . . excessive or so large as to appear contrary to reason are subject to remittitur rather than a new trial").

---

[37] Durkin's testimony concerning the problems his company endured as a result of the default on the bond (Tr. 906-10, 958-59; A125-29; A144-45), as well as the allegedly strained relationship with the Durkin subcontractors and suppliers (Tr. 906-10; A125-29), are related to the breach of contract damages.

The use of remittitur is well established where a trial judge finds that a decision of the jury is clearly unsupported or is excessive. *Spence v. Bd. Of Ed. Of Christiana School Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986). Remittitur of the verdict is warranted where the jury verdict exceeds the amount needed to make the plaintiff whole. *Hayes,* 338 F.Supp.2d at 510 (citing *Hurley v. Atlantic City Police Dept.,* 933 F. Supp. 396, 423 (D. N.J. 1996)). It is also granted to assure that a "rational relationship between the specific injury sustained and the amount awarded." *Clopp v. Atlantic County*, C.A. No. 00-1103, 2002 WL 31242218, at *3 (D. N.J. Oct. 7, 2002) (quoting *Gumbs,* 823 F.2d at 773).[38]

Here, the award of $25 million as compensatory damages on the constitutional claim is grossly excessive. After awarding Durkin $11.6 million for the breach of contract (on a partially completed $9.8 million construction project) the jury added an additional $25 million. A232-33. The "extra compensation" is excessive because it is far more than is required to make Durkin whole (*see Hayes,* 338 F.Supp.2d at 510), especially when Durkin offered no evidence of the damages specifically attributable to the constitutional claim over and above what was submitted to the jury on the breach of contract. *See* Tr. 891-910; A110-29. There is no reasonable relationship between the specific injury sustained and the amount awarded. *Clopp,* 2002 WL 31242218, at *3; *Gumbs,* 823 F.2d at 773. Consequently, the damage award should be reduced significantly in proportion to the actual harm. *See id.*

The damage award entered by the jury is, in reality, a punitive damage award (which Durkin withdrew at trial) because it has no relation to any evidence in the record concerning any alleged damage suffered by Durkin for the purported constitutional viola-

---

[38] Remittitur can also be employed by the District Court where the jury makes an excessive award and "the surplus cannot be ascribed to a particular, quantifiable error." *Clopp,* 2002 WL 31242218, at *3 (quoting *Datskow v. Teledyne Cont. Motors Aircraft Prod.*, 826 F. Supp. 677, 690 (W.D.N.Y. 1993)).

tion.  The $25 million award, rather than compensating Durkin, punishes the City to an extent that is not proportional to Durkin's supposed losses.  Durkin, however, cannot receive compensation for punitive damages because Durkin withdrew the claim at trial.  Tr. 993-94; A148-49.  Under these circumstances, the $25 million award for a civil rights violation is not even in the outermost limits of the range of reasonable and acceptable award of compensatable damages.  Because such a verdict is conscience shocking, the court should exercise its discretion and grant remittitur to reduce the damage award on the alleged constitutional violation.

## VI.    THE COURT SHOULD AMEND URS' AWARD OR GRANT A NEW TRIAL

The City does not dispute that money is owed to URS under the invoices.  Tr. 1138; A169.  However, because URS' claim against the City is for unpaid invoices, under Delaware law and therefore as a matter of law, the attorneys' fees are limited to 20% of the amount adjudged for principal and interest.  *See* 10 *Del. C.* § 3912; *J.A. Moore & Sons Constr. Co. v. Inden*, No. 95L-09-008, 1999 WL 1223762, at *1-3 (Del. Super. Ct. Sept. 28, 1999).  The award of attorneys' fees to URS should be limited to $48,400 (20% of the invoices owed).  Therefore, the jury's award is contrary to Delaware law.

Equally important, the City's contract with URS only provides for attorneys' fees: (1) to the prevailing party in a dispute for unpaid invoices, or (2) where URS is required, either at the request of the City or by subpoena, to produce documents or to provide testimony in an action where URS is not a party. A187-88.  URS made no attempt to allocate fees owed to them by the City under either of these two provisions. Thus, the jury's award is far more than permitted under the URS contract.  Finally, the judgment awarded URS is $566,775.74 for fees and costs, which is double the amount of attorneys' fees ac-

tually awarded by the jury to URS.  A235.  At a minimum, the judgment should be

amended to reflect that the jury awarded URS only $283,387.87.  A235.

## **CONCLUSION**

The City respectfully requests that its Rule 50 and 59 motions be granted.

CONNOLLY BOVE LODGE & HUTZ LLP

_____

Collins J. Seitz, Jr. (Bar No. 2237)
Max B. Walton (Bar No. 3876)
Josiah R. Wolcott (Bar No. 4796)
1007 North Orange Street
Wilmington, DE 19899
(302) 658-9141
*Attorneys for the City Defendants*

Dated:  January 26, 2007

40

## CERTIFICATE OF SERVICE

I certify that on January 26, 2007, I electronically served CITY OF NEWARK

DEFENDANTS' POST-TRIAL BRIEF IN SUPPORT OF THEIR MOTION FOR

JUDGMENT AS A MATTER OF LAW AND NEW TRIAL OR REMITTITUR by

CM/ECF to counsel of record as follows:

Paul Logan, Esquire
Powell, Trachtman, Logan, Carrle &
   Lombardo, P.C.
475 Allendale Road, Suite 200
King of Prussia, PA 19406

David G. Culley, Esquire
Tybout Redfearn & Pell
750 South Madison Street
Suite 400
P.O. Box 2092
Wilmington, DE 19899

*Attorneys for Plaintiff,*
*Donald M. Durkin Contracting, Inc.*

William J. Cattie, III, Esquire
Rawle & Henderson
300 Delaware Avenue, Suite 1130
P.O. Box 588
Wilmington, DE 19899

*Attorneys for Intervener Plaintiff,*
*St. Paul Fire & Marine Insurance*
*Company*

James S. Green, Esquire
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899

*Attorneys for URS Corporation, Inc.*

Patrick Kingsley, Esquire
Kevin W. Goldstein, Esquire
Stradley Ronon Stevens & Young, LLP
300 Delaware Avenue
Suite 800
Wilmington, DE 19801

*Attorneys for Federal Insurance Company*

_____
Collins J. Seitz, Jr. (Bar No. 2237)