## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* | |
| vs. | |
| CITY OF NEWARK, et al., *Defendants* | CASE NO. 04-0163-GMS |
| and | |
| CITY OF NEWARK, *Third-Party Plaintiff* | |
| vs. | |
| DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | |

| | |
|---|---|
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Intervenor* | |

## ANSWERING BRIEF OF PLAINTIFF
### IN OPPOSITION TO CITY OF NEWARK DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL OR REMITTITUR

**POWELL, TRACHTMAN, LOGAN, CARRLE & LOMBARDO, P.C.**
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: (610) 354-9700
Facsimile: (610) 354-9760

**TYBOUT, REDFEARN & PELL**
David G. Culley
Delaware Supreme Court ID #2141
750 S. Madison Street, Suite 400
Wilmington, DE 19899-2092
Telephone: (302) 658-6901
Facsimile: (302) 658-4018

*Attorneys for Plaintiff and Third Party Defendant Donald M. Durkin Contracting*

Dated: March 2, 2007

KOP:362884v1 3514-04

# TABLE OF CONTENTS

**Page**

TABLE OF CITATIONS ................................................................................. iii

NATURE AND STAGE OF PROCEEDINGS ....................................................... 1

SUMMARY OF ARGUMENT ........................................................................... 1

ARGUMENT ................................................................................................. 3

I.    THE CITY WAIVED OBJECTION TO THE JURY INSTRUCTION FOR BREACH OF CONTRACT DAMAGES AND ITS ARGUMENT FOR A DAMAGE CALCULATION BASED ON "CONSTRUCTIVE TERMINATION FOR CONVENIENCE" ................................................. 3

    A.    The City Waived Objection to the Damage for Breach of Contract Jury Instruction ......................................................... 3

    B.    The City Waived its Argument for A Breach of Contract Damage Calculation Based on "Constructive Termination for Convenience" .............. 5

II.    THE BREACH OF CONTRACT AWARD IS CONSISTENT WITH THE CONTRACT AND DELAWARE LAW ...................................................... 7

    A.    The Doctrine of Constructive Termination for Convenience Does Not Apply to this Delaware Construction Contract ......................... 7

          1.    Termination for Convenience Provisions Do Not Apply Because the City Breached the Contract by Not Providing 7 Days' Written Notice ........................................................ 7

          2.    There is No Provision in the Contract to Transform a Default Termination into a Termination for Convenience ................... 8

          3.    Applying Federal Common Law to This Contract Will Violate Delaware's Long-Standing Principle of *Contra Proferentem* .............. 8

          4.    Federal Common Law Does Not Apply to this Local Contract Dispute ................................................................ 10

    B.    The Contractual Cost of Work Calculation is Fair and Reasonable ............ 12

    C.    The Breach of Contract Award is Consistent with Delaware Law ................ 13

    D.    Section 17.5 Permits Recovery of Durkin's Consultant/Professional Expenses ...................................................... 15

  E.  **Durkin Did Not Seek Lost Future Profits, Lost Business or Lost Customers**................................................................................16

III. **THERE IS NO BASIS FOR A NEW TRIAL ON THE CONTRACT DAMAGES**...............................................................................18

IV. **THE CIVIL RIGHTS AWARD IS SUPPORTED BY THE EVIDENCE**.................22

  A.  **Durkin Alleged and Presented Evidence of Deprivation of a Liberty Interest to Pursue its Profession Free from Unreasonable Governmental Interference by the City**.................................................23

  B.  **The Jury was Instructed Based on the Evidence and Returned a Verdict Consistent with the Evidence and Instructions**.....................................27

V. **THE CIVIL RIGHTS AWARD IS SUPPORTED BY THE EVIDENCE THE CITY WAIVED OBJECTION TO THE CIVIL RIGHTS JURY INSTRUCTIONS AND TO ITS ARGUMENT OF LACK OF EVIDENCE TO SUPPORT THE CIVIL RIGHTS AWARD**...............................................28

  A.  **The City Never Objected to the Civil Rights Instructions**...............................28

  B.  **The City Waived Argument of Lack of Evidence to Support the Civil Rights Award**.................................................................................29

VI. **THERE IS NO BASIS FOR A NEW TRIAL ON CIVIL RIGHTS**............................29

  A.  **The Civil Rights Jury Instructions Correctly State the Law**............................29

  B.  **The Evidence Supports the Civil Rights Damage Award**.................................31

  C.  **The Civil Rights Damage Award was Not Based on Passion and Prejudice and the City is Not Entitled to Remittitur**.................................33

VII. **THERE IS NO BASIS TO GRANT JMOL ON CONVERSION CLAIM**...............35

VIII. **CONCLUSION AND RELIEF SOUGHT**................................................35

## TABLE OF CITATIONS

**CASES**

*Abraham v. Pekarski, et al*, 728 F.2d 167 (3d Cir. 1984)..........................28

*Alexander, et al., v. Riga, et al.,* 208 F.3d 419 (3d Cir. 2000) .....................3, 28

*Barbley v. Nationwide Mutual Ins. Co.,* 547 F. Supp. 959 (D.N.J. 1981)....................31

*Becton Dickinson and Co. v. TYCO Healthcare Group LP.,* 2006 U.S. Dist. LEXIS 14999 *4
    (D. Del. 2006)..........................22

*Boyanowski v. CAIU, et al.,* 215 F.3d 396 (3d Cir. 2000)..........................30

*Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988) ..........................10

*Capron Trail Community Development District v. Frenz Enterprises, Inc.,* 674 So.2d 875 (Fl. Ct.
    App. 1996)..........................16

*Chuy v. Phila. Eagles,* 595 F.2d 1265, 1273 (3d Cir. 1979) ..........................18

*Cipriani v. Lycoming County Housing Authority, et al.,* 177 F. Supp. 2d 303
    (M.D. Pa. 2001) ..........................5, 6, 19

*Commerce National Insurance Services, Inc. v. Buchler, et al.,* 120 Fed. Appx. 414
    (3d Cir. 2004) ..........................9

*Commonwealth of Pennsylvania v. Quandel Company,* 585 A.2d 1136
    (Pa. Commw. Ct. 1991) ..........................9

*Compass Technology v. Tseng Lab.,* 71 F.3d 1125 (3d Cir. 1995) ..........................21

*Dawn Equip. Co. v. Kentucky Farms, Inc.,* 140 F.3d 1009, 1014 (Fed. Cir. 1998) ..........................22

*Dean v. Brandywine Studios, Inc., et al.,* 2003 U.S. Dist. 2299, *5 (D. Del. 2003) ..........................18, 19

*Dentsply International, Inc. v. Kerr,* 1992 U.S. Dist. LEXIS 22193 (D. Del. 1992)..........................18

*Diversified Packing and Development Corp. v. Dore & Associates, et al,* 48 Fed Appx. 392, 402
    (3d Cir.2002) ..........................15

*Driscoll Construction Co., Inc. v. State of New Jersey,* 371 N.J. Super. 304, 318
    (N.J. Supr. Ct. 2004)..........................9

*Erie R. Co. v. Tompkins,* 304 U.S. 68 (1938) ..........................10, 11

*Fendrick v. PPL Services Corp.,* 2006 U.S. App. LEXIS 18641 (3d Cir. 2006) ..........................3, 29

*Fiorentino v. Travelers*, 448 F. Supp. 1364 (E.D. Pa. 1978).........................................................30

*Green v. Mangold*, 1983 Del. Ch. LEXIS 478 (Del. Ch. Ct. 1983) ...............................................17

*Greiner v. Volkswagenwerk Akteingeselleschaft*, 540 F2d 85 (3d Cir. 1976)...............................3

*Grumbs v. Pueblo International, Inc.*, 823 F2d 768 (3d Cir. 1987) ...............................................34

*Heather Construction v. Gangi*, 1987 Del. Super. LEXIS 1094 (Del. Super. Ct. 1987) .............14

*Hector v. Watt, et al.*, 235 F.3d 154 (3d Cir. 2000) ........................................................................31

*Heitz v. Sayers*, 32 Del. 207, 219 (Del. Sup. Ct. 1923) .................................................................14

*Hurely Atlantic City Policy Dep.'t*, 174 F.3d 95 (3d Cir. 1999) ....................................................33

*Illinois v. City of Milwaukee*, 406 U.S. 91, 105-06 n.6 (1972).......................................................10

*Jacobs v. City of Philadelphia, et al*, 2006 U.S. App. LEXIS 30152 (3d Cir. 2006)..........5, 29, 30

*Kerr-McGee Chemical, LLC v. Kemira Pigments OY, et al.*, 2003 U.S. Dist. LEXIS 17780
(D. Del. 2003) ...........................................................................................................................8

*Linan-Faye Const. Co. v. Housing Auth. Of Camden*, 49 F.3d 915 (3d Cir. 1995) ............9, 10, 11

*Lind v. Schendley Industries, Inc.*, 278 F.2d 79 (3d Cir. 1960) ......................................................31

*Lynch v. Fickers Energy Corp.*, 429 A.2d 497 (Del. Supr. 1981) ...................................................17

*Marrero v. City of Hialeah, et al.*, 625 F.2d 499, 514 (5th Cir. 1980) ...........................................31

*Meyer v. Nebraska*, 262 U.S. 390 (1923) .......................................................................................30

*Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223 (3d Cir. 1989) .................................................19

*Ncube Corporation v. Seacharge International, Inc.*, 313 F. Supp. 2d 361, 366
(D. Del. 2004)..........................................................................................................................22

*Orsini Top Soil, et al. v. Carter*, 2004 Del. C.P. LEXIS 10 (Del. Ct. Com. Pls. 2004) ...............13

*Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)....................22

*Philips-Van Heusen Corp. v. Mitsui O.S.K. Lines, Ltd, et al*, 2002 U.S. Dist.
LEXIS 27057 (2002) ...............................................................................................................11

*Piecknick, et al., v. Commonwealth of Pennsylvania, et al.*, 36 F.3d 1250 (3d Cir. 1994)...........23

*Pierce v. Int'l Ins. Co. of Illinois*, 671 A.2d 1361 (Del. Sup. Ct. 1996).........................................16

KOP:362884v1 3514-04

*Pietroniro, et. al., v. Borough of Oceanport, et al.,* 764 F.2d 976 (3d Cir. 1985)...................23, 26

*Repola v.D.R. Firewood, et al.,* 934 F.2d 483 (3d Cir. 1991) ........................................28

*Simmons v. Philadelphia,* 947 F.2d 1042, 1078 (3d Cir. 1991), *cert. denied,* 503 U.S. 985 (1992)................................................................................................................3

*Smith v. Law Offices of Mitchell Kay,* 124 B.R. 182 (D. Del. 1991)............................28

*Starceski v. Westinghouse Elec. Co.,* 54 F.3d 1089, 1100 (3d Cir. 1995).....................34

*Strassburger v. Earley,* 752 A.2d 557 (Del. Ch. 2000) ................................................13

*Tristrata v. Mary Kay, Inc.* 423 F. Supp. 2d 456 (D. Del. 2006) ...................................34

*True North v. Trinity Inds., Inc.,* 191 F Supp. 2d 484 (D. Del. 2002)...........................16

*Twin City Fire Insurance Company v. Delaware Racing Association, et al.,* 840 A.2d 624 (Del. Supr. Ct. 2003)..................................................................................................9

*U.S. v. Turner Construction Co.,* 819 F.2d 283 (Fed. Cir. 1987)...................................9

*United States v. Algernon Blair, Inc.,* 479 F.2d 638 (4th Cir. 1973).............................14

*Walters v. Mintec/International,* 758 F.2d 73 (3d Cir. 1985)........................................33

*Williams v. Runyon, et al.,* 1997 U.S. App. LEXIS 33854 (3d Cir. 1997)............................5, 6, 29

*Williamson v. Consolidated Rail Corp.,* 926 F.2d 1344 (3d Cir. 1991) .......................31

*Zook Brothers Const. Co. v. State of Montana,* 556 P.2d 911 (Mont. 1976) ................17

## STATUTES

28 U.S.C.A. §1332............................................................................................................10

52 FAR 248-10 ................................................................................................................8

## OTHER AUTHORITIES

Delaware Pattern Jury Instructions (2000 Ed.).............................................................19

Restatement (Second) §351 ..........................................................................................17

## RULES

Fed. R. Civ. P. 50.............................................................................................................1

Fed. R. Civ. P. 51.............................................................................................................3

KOP:362884v1 3514-04

- vi -

## NATURE AND STAGE OF PROCEEDINGS

The jury returned a verdict for Plaintiff and Third Party Defendant Donald M. Durkin Contracting, Inc. ("Durkin") against Defendant City of Newark and Councilpersons (collectively the "City") on October 5, 2006, and the Court entered judgment for Durkin on October 11, 2006. The City filed a Motion for Judgment Notwithstanding the Verdict[1] ("Motion for JMOL") (D.I. 303) and a Motion to Alter, Amend or Vacate Judgment, for New Trial/Remittitur Pursuant to Federal Rule Civil Procedure 59 (D.I. 304) on October 24, 2006. On January 26, 2007, the City filed its Opening Brief in Support of its Motion for Judgment as a Matter of Law and for a New Trial or Remittitur ("Post-Trial Brief"). Durkin files this Answering Brief in Opposition to the City's Post-Trial Brief.

## SUMMARY OF ARGUMENT

1.     The City waived objection to the breach of contract damage jury instruction. Accordingly, the City must demonstrate a miscarriage of justice or "plain error" as it relates to the instruction – which is cannot do. (Sections IA and IIC).

2.     The City waived its argument that Durkin's breach of contract damages should be based on the "constructive termination for convenience" doctrine. (Section IB).

3.     Even if the Court finds that the City preserved its argument for a damage calculation based on the doctrine of constructive termination, the doctrine does not apply to this Delaware construction Contract. (Section IIA).

4.     The breach of contract award was consistent with the Contract and Delaware law. (Section IIB to E). The cost of work calculation presented by Durkin was based on the Contract drafted by the City and is a fair and reasonable basis for calculating Durkin's damages.

---

[1] The City styled its motion as a "Motion for Judgment Notwithstanding the Verdict Pursuant to Federal Rule of Civil Procedure 50(b)" rather than a Motion for Judgment as a Matter of Law ("Motion for JMOL"). Under the Rules, the motion is treated as a Motion for JMOL. *See* Advisory Comment to Fed. R. Civ. P. 50.

- 1 -

5.    The jury award of Durkin's consultant/professional expenses and its costs incurred in an effort to mitigate its damages was proper under the Contract and Delaware law. (Section IID and E).

6.    The City is not entitled to a new trial on the Contract damages. (Section III).

7.    The evidence clearly supports the civil rights award. (Section IV). Durkin presented extensive, uncontroverted evidence of a deprivation of its liberty interest to pursue its profession free from unreasonable governmental interference by the City. The jury was instructed based on that evidence and returned a verdict consistent with the evidence and the jury instructions.

8.    The City waived any objection to the civil rights jury instructions and its argument of lack of evidence to support the civil rights award. (Section V).

9.    The City failed to demonstrate "plain error" with regard to the civil rights jury instructions since they accurately state the law. (Section IVA).

10.    Even if the Court finds that the City did not waive its argument that there was no evidence to support a constitutional compensatory damage award, the City still is not entitled to a new trial on this basis. (Section VIB). There was substantial evidence – not refuted by the City – to support the jury's award.

11.    There is no evidence that the civil rights award was based on passion and prejudice. (Section VIC). Furthermore, remittitur is inappropriate since the civil rights award was supported by the evidence.

12.    The City failed to demonstrate a legal basis to grant JMOL on the conversion claim. (Section VII).

<u>ARGUMENT</u>

I.    **THE CITY WAIVED OBJECTION TO THE JURY INSTRUCTION FOR BREACH OF CONTRACT DAMAGES AND ITS ARGUMENT FOR A DAMAGE CALCULATION BASED ON "CONSTRUCTIVE TERMINATION FOR CONVENIENCE"**

A.    <u>The City Waived Objection to the Damage for Breach of Contract Jury Instruction</u>

It is fundamental that a party who did not challenge the jury instructions at an appropriate time is deemed to have waived its objections. *See Alexander, et al., v. Riga, et al.,* 208 F.3d 419 (3d Cir. 2000). All objections to the jury instructions must be made prior to the jury beginning its deliberations. Fed. R. Civ. P. 51; *Simmons v. Philadelphia,* 947 F.2d 1042, 1078 (3d Cir. 1991), *cert. denied,* 503 U.S. 985 (1992) (internal citations omitted); *see also Greiner v. Volkswagenwerk Akteingeselleschaft,* 540 F2d 85 (3d Cir. 1976) (failure to object to an improper instruction or to state distinctly the grounds for objection constitutes a waiver.).

As is true for numerous elements of its post-trial submissions, the City failed to clearly and specifically object to the breach of contract damage award instruction, and therefore its right to appeal those claims of error has been waived. Under these circumstances, the City's claims of error must be reviewed under a miscarriage of justice or "plain error" standard. *Fendrick v. PPL Services Corp.,* 2006 U.S. App. LEXIS 18641 (3d Cir. 2006). As discussed *infra* in Sections II and III, the City is unable to meet this high standard.

The parties held two (2) prayer conferences with the Court to discuss the jury instructions and the verdict form. Transcript ("Tr.") 976-1019; 1022-1028; and 1137-1182. At the first prayer conference, the City twice asked permission to submit a jury instruction in order to address what the City believed to be the proper measure of damages for its breach of the City's contract with Durkin ("Contract"). A133-A135; Tr. 1003-1004: 25-2; 1005:10-13. The Court granted the City's request and advised counsel to discuss the alternate instruction and "fax [it]

- 3 -

over [to the Court] as soon as you have got it." A135; Tr.1005:21-24. City's counsel promised to circulate the proposed instruction by the "afternoon". A134-A135; Tr. 1004:14-16; 1005:25-1.

The next morning, the Court inquired into the status of the City's alternate damage instruction. A138-A139; Tr. 1026-1027:25-4. City's counsel advised, "Your Honor, with the number of other things we had to do, we weren't able to complete that chore." A139; Tr. 1027:5-7.

That afternoon, the City's counsel provided certain proposed instructions, but at no time did City ever provide an alternate damage instruction. A143; Tr. 1148:13-15;[2] A162-A164; Tr. 1174-1175: 24-23; Tr. 1179:8-19.   The only City-proposed instructions provided were (1) sympathy; (2) good faith defense on the civil rights claim; and (3) attorneys' fees with regard to URS' claim.

The Court and the parties do discuss Durkin's proposed instruction on contract damages (draft instruction No. 24).   A153-A168; Tr. 1161-1168:5-7.   Draft Final Jury Instructions discussed on October 4, 2006, A177-A181.   The City commented that the bullet point example damages in draft instruction No. 24 were "far afield" and "every bullet point after the unpaid contract balance" should not be a part of the instruction.  A153, A156; Tr. 1161:12-17; Tr. 1164:5-10.  City's counsel suggested that "[I]t might be simpler, Your Honor, to leave it to the first paragraph, the measure of damages is the loss actually sustained as a result of the breach of the contract." A158-A159; Tr. 1166: 9-12; 1167:5-8.  At the City's request, Durkin agreed to remove *all* of the bullet point examples. *Compare* A180-A181 to Final Jury Instruction No. 21, A189.  Thereafter, the City never again objected to the contract damage instruction, nor did it provide any alternate form of jury instruction for consideration.

---

[2] Contrary to the assertion in footnote 29 of the City's Post-Trial Brief, the City *never* provided an instruction on an alternate measure of damages to the Court or to Durkin.  The City *never* discussed such an instruction with Durkin.  Consistent with this, the City does not provide a copy of the alleged "instruction" in its post-trial submissions.

- 4 -

During the discussion of the verdict form, the City was again given an opportunity to express its theory on the contract damages. The Court asked if it would be helpful to provide two (2) interrogatories – one (1) based on the City's theories and one (1) based on Durkin's. A161; Tr. 1169:12-14. The City's counsel thought it would, but the City never drafted a second jury interrogatory, and ultimately agreed to the verdict form as submitted to the jury. A161, A267-A168; Tr. 1169:15; 1186-1187:24-1, 4; Verdict Form, A193-A198 (D.I. 291).

Recently, the Third Circuit made it clear that after a party objects to an instruction and the instruction is then revised, if the party still has an objection it must be raised again. *Jacobs v. City of Philadelphia, et al,* 2006 U.S. App. LEXIS 30152 (3d Cir. 2006). Here, the City initially objected to the proposed jury instruction, but thereafter agreed to the modifications proposed by Durkin, declined the Court's invitation to submit an alternate measure of damages jury instruction, elected not to submit a separate jury interrogatory and agreed to the verdict form. Against this backdrop, the City's objections to the damages instruction are waived and it must now attempt to meet the difficult burden of "plain error." *Jacobs,* 2006 U.S. App. LEXIS at *6-*7.

**B.    The City Waived its Argument for A Breach of Contract Damage Calculation Based on "Constructive Termination for Convenience"**

A defendant who fails to raise an issue in a Rule 50(a)(2) motion with sufficient specificity to put the plaintiff on notice waives the right to raise the issue in its Rule 50(b) motion. *Williams v. Runyon, et al.,* 1997 U.S. App. LEXIS 33854 (3d Cir. 1997); *see also Cipriani v. Lycoming County Housing Authority, et al.,* 177 F. Supp. 2d 303 (M.D. Pa. 2001) (a Rule 50(b) motion must be preceded by a Rule 50(a) motion *sufficiently specific* to afford the party against whom the motion is directed with an opportunity to cure possible defects in its case.) (Internal citations omitted).

- 5 -

There can be no reasoned claim that the City preserved the issue of constructive termination for convenience by raising it in its Rule 50(a) motion. In fact, the City' succinct position at that time was that "it's a matter for the Court to determine what the measure of damages are and properly instruct the jury ..." A140, Tr. 1029:7-10. The City's Rule 50(b) and its Rule 59 Motions do not address this argument, and none of the broad statements in the City's Rule 50(a), Rule 50(b) or its Rule 59 motions contain the degree of specificity necessary to meet the requirements of Rule 50.[3]  Chart of the City's Arguments Regarding Contract Damage Calculation, A199-A201.

The record reveals that the City did advance this argument in one of its Motions in Limine, but that is legally insufficient to preserve this issue in a post-trial setting. (D.I. 152).[4] What the record further demonstrates is that the City changed its theory and approach to measuring damages, and by the conclusion of the trial was expressly rejecting this platform in presenting its closing argument to the jury.[5]

Consistent with its trial brief,[6] the City's focus on damages shifted to what it considered to be the unpaid amounts from progress payment billings, which in the City's view should be translated to mean "simply what remains", "unpaid work performed" and "unpaid fees". Chart of the City's Arguments Regarding Contract Damage Calculation During Trial, A237-A239; A131, A153, Tr. 996:8; 1161:12-16. In its closing arguments, the City urged the jury to award

---

[3] The City's statements are similar to the following statement which the Third Circuit found to be "obviously insufficient": "there is no legally sufficient evidentiary basis for a reasonable jury to find for Plaintiff [on] any of the issues that counsel have set forth in this case." *Williams* at **10.

[4] "[T]he fact that defendants raised the issue ... previously is simply not enough for purposes of their instant Rule 50(b) motion ..., given the Third Circuit's holding in [*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1173 (3d Cir. 1995)]." *Ciprian*, 177 F. Supp. 2d at 316.

[5] In the City's closing arguments, its trial counsel argued this was not a termination for convenience case and specifically stated that Section 15.4 "does not apply to this case in any event, because it deals with termination for convenience." A172; Tr. 1252; 1-2, 7-9. A248, DUR-60.

[6] The Court's Pre-Trial Order instructed that "[t]rial briefs are intended to provide full and complete disclosure of the parties' respective theories of the case." A202-A206; FN 7. It also warned "[a]ny theory of liability or defense that is not expressed in a party's trial brief will be deemed waived." *Id.*

Durkin $275,000 on the breach of contract claim, which, according to the City, "was the only sum specifically owed under the Durkin contract." A173; Tr. 1253:4-6. As was pointed out by Durkin in its closing comments, that amount was plainly erroneous in failing to account for the accrued retainage[7] of $499,379.79 held by the City, which additional sums were due and owing to Durkin at the time of termination. A240-A241, DUR-9.

The City's arguments and representations during trial, combined with the City's failure to provide a jury instruction and a specific jury interrogatory on any proposed theory and/or method of calculating damages, confirm that the City had abandoned its pre-trial position that the default termination be converted retroactively to a termination for convenience, and it may not now be resuscitated for appeal purposes.

## II.    THE BREACH OF CONTRACT AWARD IS CONSISTENT WITH THE CONTRACT AND DELAWARE LAW

### A.    The Doctrine of Constructive Termination for Convenience Does Not Apply to this Delaware Construction Contract

If the Court finds that the City did not waive its argument for a damage calculation based on the doctrine of constructive termination for convenience, the Court must still find that the doctrine is inapplicable.

#### 1.    Termination for Convenience Provisions Do Not Apply Because the City Breached the Contract by Not Providing 7 Days' Written Notice

Contrary to the City's assertions, Section 15.4 (termination for convenience) does not apply. A248. First and foremost, the Court's judicial finding that the City did not provide Durkin with the required seven (7) days' prior written notice of termination operates with equal force to judicially foreclose the City from availing itself of the termination for convenience provisions under Section 15.4, as this section contains the identical requirement of providing

---

[7] Retainage is that portion of each approved progress payment that was withheld by the City until such time as substantial completion of the Project was achieved. At the time Durkin was terminated, the total accrued retainage was $499,379.79.

Durkin with seven (7) days' prior written notice. A217-A236 (D.I. 257). It is legally incongruous to assert that a judicially established fact that is legally dispositive for purposes of evaluating the City's conduct under Section 15.2 should be either ignored or excluded from consideration for purposes of measuring compliance with Section 15.4 of the Contract.

**2.      There is No Provision in the Contract to Transform a Default Termination into a Termination for Convenience**

There is no provision in the Contract, express or otherwise, to transform an improper termination for default into a termination for convenience, nor is there any plausible interpretation of the plain language of the Contract that reaches the City's desired result. DUR60. As the drafter of the Contract, the City unquestionably could have included an express provision to address this contingency, since these types of clauses have long been statutorily institutionalized in federal contracting. *See e.g.* 52 FAR 248-10; A132-A133, Tr. 1002:11-22; 1003:1-5. What the City is asking the Court to do is nothing less than revising the Contract to insert language the City did not include for the sole purpose of avoiding the contractual damages awarded by the jury.

**3.      Applying Federal Common Law to This Contract Will Violate Delaware's Long-Standing  Principle of *Contra Proferentem***

There is no provision in the Contract that can reasonably be read to provide that the measure of damages is to be computed under Section 15.4 (termination for convenience) in the event that the City wrongfully terminates the Contract. In fact, the Contract does not contain any express directive on how damages are to be calculated if and when the City breaches the Contract. The City appears to acknowledge that, at the very least, this presents an ambiguity, as evidenced by their resort to principles of federal common law in an effort to guide the Court's interpretation of the Contract.

- 8 -

Delaware law is well settled that if there is an ambiguity "a court should construe ambiguous language against the interest of the party that drafted that language." *Kerr-McGee Chemical, LLC v. Kemira Pigments OY, et al.,* 2003 U.S. Dist. LEXIS 17780 (D. Del. 2003) (internal citations omitted). *See also Twin City Fire Insurance Company v. Delaware Racing Association, et al.,* 840 A.2d 624 (Del. Supr. Ct. 2003) (applying the "well accepted *contra proferentem* principle of contract construction"); *Commerce National Insurance Services, Inc. v. Buchler, et al.,* 120 Fed. Appx. 414 (3d Cir. 2004). The doctrine of *contra proferentem* is not confined to transactions between private parties. Even if the drafting party is a governmental entity, the ambiguity will be construed against it. *See e.g. Driscoll Construction Co., Inc. v. State of New Jersey,* 371 N.J. Super. 304, 318 (N.J. Supr. Ct. 2004) ("Public authorities, who choose contract terms when they invite contractors to bid on construction projects are not exempt from [the] doctrine [of *contra proferentem*]"); *Commonwealth of Pennsylvania v. Quandel Company,* 585 A.2d 1136 (Pa. Commw. Ct. 1991); *U.S. v. Turner Construction Co.,* 819 F.2d 283 (Fed. Cir. 1987).

It is undisputed that Durkin did not have any role in drafting the Contract, but rather the City was in control of the process of articulating the terms and conditions. A132-A133, Tr. 1002:11-22; 1003:1-5. The Court endorsed the application of this tenet of contract interpretation as part of the instructions to the jury – <u>without objection from the City</u> – that if the jury found an ambiguity in the Contract, it "must construe and interpret those terms in favor of [Durkin] and against the City…" Final Jury Instruction No. 22, A190 (D.I. 290).

It cannot be disputed that the application of federal common law and the doctrine of a constructive termination for convenience would have the effect of eliminating all damages not expressly included in Section 15.4. When measured against the jury verdict, this contract

- 9 -

interpretation provides an enormous benefit to the City at the expense of Durkin, in clear derogation of the principles of *contra proferentem*.

Even those cases cited by the City do not countenance this result. *See e.g. Linan-Faye Const. Co. v. Housing Auth. Of Camden*, 49 F.3d 915 (3d Cir. 1995). In *Linan-Faye*, the Third Circuit believed that New Jersey courts would look to federal common law in the absence of New Jersey law "because courts in New Jersey would recognize that where the parties have incorporated a particular clause pursuant to federal regulation, *they do so against the backdrop of federal case law addressing the clause*." *Linan-Faye,* 49 F.3d at 922 (internal citations omitted) (emphasis supplied), and further held that federal common law could only be applied if it did not violate an enshrined principle of state law. *Id.*

There is, and can be, no contention by the City that the parties incorporated any clause into the Contract pursuant to a federal regulation. Further, the Third Circuit did not find the application of federal common law in *Linan-Faye* to violate an enshrined principle of New Jersey law. Indeed, there is no discussion of the doctrine of *contra proferentem* at all. These considerations, individually and collectively, lead to the conclusion that the *Linan-Faye* decision has no application to the facts of this case.

### 4.    Federal Common Law Does Not Apply to this Local Contract Dispute

This case involves a dispute between a private contractor and a political subdivision of the State of Delaware. A252, ¶¶ 1, 2. Jurisdiction for the breach of contract claim is based on complete diversity. 28 U.S.C.A. §1332. A253, ¶13. Therefore, the Court correctly noted that Delaware law applies to the contract claim.[8] *Erie R. Co. v. Tompkins*, 304 U.S. 68 (1938).

Since there is no express grant for this Court to apply federal common law in this local dispute, a two (2) prong test must be applied. *Boyle v. United Technologies Corp.,* 487 U.S. 500

---

[8] The Contract also indicated that Delaware law shall govern the Contract. A242.

- 10 -

KOP:362884v1 3514-04

(1988). First, the Court must determine if the action implicates uniquely federal interests.[9] *Boyle,* 487 U.S. at 504. If the question is answered in the affirmative, the Court must then determine whether a significant conflict exists between an identifiable federal policy or interest and the application of state law to the dispute. *Boyle,* 487 U.S. at 507.

The City is unable to satisfy the first prong of this test, as the Contract between Durkin and the City does not implicate any federal interest. This is not a contract with the federal government or a subcontract with a government prime contractor. There is no federal funding involved. No federal forms were used in the Contract and there is no mandate by the federal government or any of its agencies that certain terms or conditions be used. DUR-60.[10]

As discussed above, the operative facts that persuaded the Third Circuit in *Linan-Faye* to seek out federal common law as a guide to interpreting a state contract simply do not exist here. *Linan-Faye* involved federal funding – which is not present here – and the parties in *Linan-Faye* incorporated a particular clause pursuant to a federal regulation – which is also not present here. *Linan-Faye,* 49 F.3d at 922. Thus, the principal motivating elements that prompted the District Court and Third Circuit to resort to federal common law are conspicuously absent from this case.

Because this case involves a breach of contract, where the Contract by its own terms does not apply federal law, and where there is no unique federal interest, the Court must apply state law contract principles. *Philips-Van Heusen Corp. v. Mitsui O.S.K. Lines, Ltd, et al,* 2002 U.S. Dist. LEXIS 27057 (2002). Accordingly, this Court must look to Delaware law on contract

---

[9] Uniquely federal interests have been defined as "where there is an overriding federal interest in the need for a uniform rule or decision or where the controversy touches basic interests of federalism." *Illinois v. City of Milwaukee,* 406 U.S. 91, 105-06 n.6 (1972).
[10] In fact, every case cited by the City in its Post-Trial Brief in support of the doctrine of constructive termination is inapposite to the case *sub judice.* The cases cited by the City all involve the federal government, federal agencies or contracts where the parties have incorporated clauses pursuant to federal regulations. *See* Chart of City's Cited Cases in Support of the Doctrine of Constructive Termination, A254. None of those circumstances are present here.

- 11 -

principles to determine the proper measure of damages arising from the City's breach of contract.[11] *Erie R. Co., supra.*

**B.     The Contractual Cost of Work Calculation is Fair and Reasonable**

Although the Contract does not specifically describe the scope or computational basis for awarding damages in a wrongful termination/breach of contract by the City breaches, it does contain a methodology for deriving the "cost of the work" completed as of the date the Contract was terminated by the City.   Article 11 sets out a procedure for determining those costs which are compensable (Section 11.4), those costs that are excluded (Section 11.5) and the supporting documentation (Section 11.5).   Contrary to the City's assertions, there is no language of limitation in those sections that confines the application of this methodology to change order work.   In fact, the "cost of work" is defined as "the sum of all costs necessarily incurred and paid by [Durkin] in the proper performance of the Work."[12]   A243-A246.

Donald Durkin, Jr. testified that the damages (Items 1 to 5) were calculated in accordance with the Contract, using a cost of work methodology drafted by the City, and the jury, although free to select an alternate measure of damages, rendered a verdict that was consonant with the computations under Article 11.  A255, DUR-68, A99-A111, A124. Tr. 891-903:19-19, 950:20-24.   There was literally no contrary evidence presented by the City.  In fact, the City did not attack the damages or the detail behind them on the cross examination of Mr. Durkin.[13]   Further, during its case-in-chief, the City failed to provide any evidence to refute Durkin's damages. In

---

[11] Because there is no unique federal interest involved, the Court does not need to proceed to the second prong of the *Boyle* test.

[12] "Work" means "construction of an earthen impoundment, liner, inlet/outlet structure, prefabricated bridge, pump, piping, valves, gates, roadway, overlook, wetlands, and landscaping." Article 1; DUR-60.

[13] In point of fact, Mr. Durkin was asked on cross by the City to "ignore" the cost of work calculation provided for in the Contract and answer whether Durkin was losing $6 million at the time of termination. Mr. Durkin answered in the negative.  Also on cross, the City asked Mr. Durkin if he agreed that Durkin was only owned the monies in the unpaid pay applications. Mr. Durkin disagreed.  A122-A125, Tr. 946-947:23-13; 950-951:25-5.  A240-A241, DUR-9.

- 12 -

short, the evidence presented by Durkin of its cost of unpaid work as of the date of termination was uncontroverted.

There was also no challenge to the evidence presented by Durkin that it incurred substantial unreimbursed additional costs because it was severely impacted by weather events, which both the City and URS recognized as compensable under the Contract. A7-A8, Tr. 411-412:12-18,11-16; 412:9-16; DUR-43. These were costs included in the damages being claimed by Durkin. A255, DUR-68. [14] There was no objection taken or evidence adduced that these claims were untimely. To the contrary, both the City and URS were on notice beginning shortly after the construction work commenced in 2002 of the tremendous costs being incurred in performing weather impacted work. DUR-43. The jury's findings and award were consistent with the Contract and Delaware law governing the measure of damages on a breach of contract claim, and should not be disturbed.

### C.    The Breach of Contract Award is Consistent with Delaware Law

Under Delaware law, the measure of damages for a breach of contract is the non-breaching party's out-of-pocket expenses so that the party can be put in the same position it would have been in had the contract been properly performed. *Orsini Top Soil, et al. v. Carter,* 2004 Del. C.P. LEXIS 10 (Del. Ct. Com. Pls. 2004). *See also Strassburger v. Earley,* 752 A.2d 557 (Del. Ch. 2000). Final Jury Instruction No. 21 – which was revised per the City's request and then agreed to by the City – set forth this rule of law. A189  Moreover, these are precisely the damages the jury awarded Durkin with respect to the cost of work, costs for unpaid consultants/professional expenses and post-termination costs to stay in business in an effort to mitigate its damages. A117, Tr. 911:7-18; A255, DUR-68.

---

[14] Durkin did not claim as damages (and the jury did not award) any item that was to be excluded from the cost of work calculation (Section 11.4). A106-A107, Tr. 898-899:18-6. Durkin also maintained backup documentation (Section 11.7) and provided that to the City. Produced in discovery at DUR009710-DUR010473; DUR009089-DUR009707; DUR008305-DUR009087; and Damages Binders #1 and #2.

- 13 -

The City argues, *inter alia,* that the jury Contract damage award was contrary to Delaware law because the "award exceeds the original contract price", "fails to consider the amount paid" and "fails to consider the cost to complete the work".[15]  The City's arguments are without merit and not supported by either Delaware law or the Contract.

First, the fact that the "sum of the parts is greater than the whole" is of no moment in, nor is it contrary to, Delaware law.   The Delaware Supreme Court stated:

> When the plaintiff's failure to fulfill completely his obligations under the contract, is due to the defendant's default, there is no reason for imposing any limitation on the amount which he may recover on a *quantum meruit* or *quantum valebant* for what he has done other than that set by the principles of fair value. (Internal citations omitted).

> This rule has also been followed in this state. In *McDaniel v. Webster, supra,* which involved a building contract abandoned and rescinded by the plaintiff through the fault of the defendant, the plaintiff sued on the common counts, for work and materials furnished under the special contract, and Judge Gilpin, in charging the jury, said:

> If there was originally a special agreement between the parties in regard to the matter, under which it was commenced and prosecuted, as far as it was performed by the plaintiff, but which special contract was afterwards rescinded, or abandoned by reason of the misconduct of the defendant, * * * the plaintiff would then, in either case, be entitled to recover on the common counts for his work and the materials furnished, as far as he had proceeded with it, without any reference to the special agreement, the same as if none had ever been entered into by him; and in either of those events, * * * his book of original entries would be admissible and competent evidence * * * to prove the work done and  materials furnished, and the value of them...

*Heitz v. Sayers,* 32 Del. 207, 219 (Del. Sup. Ct. 1923).   Recent Delaware case law confirms that this is the law of Delaware, as it is in many other jurisdictions.  *Heather Construction v. Gangi,* 1987 Del. Super. LEXIS 1094 (Del. Super. Ct. 1987).  *See also United States v. Algernon Blair, Inc.,* 479 F.2d 638 (4th Cir. 1973).

---

[15] City's Post-Trial Brief, page 14.

The Delaware Superior Court recently stated that "[t]he rule prevailing in the majority of jurisdictions is that on default by the defendant, a plaintiff not in default, who has not fully or substantially performed, is not limited to the contract price in a restitution recovery, but can recover a greater sum than if the defendant had allowed him to complete the contract." *Heather Construction* at *1-2.

Second, the City contends that the jury contract damage award does not account for the amounts already paid by the City. This is patently wrong. A255, DUR-68. Durkin's cost of work calculation based on the Contract specifically subtracted the payments by the City to Durkin ($6,230,744.97). *Id.* Also, the calculation subtracted the payments the City *improperly* made to Durkin's subcontractors after termination ($457,337.00). *Id.*

Third, the City asserts that the law in Delaware is that where the contractor is prevented from completing performance by an owner breach, the contractor is entitled to the remaining contract balance, less the amount to complete the contract.[16]  Notably, the City does not cite a single Delaware case in support of that proposition,[17] and consequently there is no cognizable basis for treating this as the state of Delaware law.

**D.**  **Section 17.5 Permits Recovery of Durkin's Consultant/Professional Expenses**

The City's contention that Section 17.5 does not permit it to recover its professional fees and court costs is also without merit. A255, DUR-68. Article 17 is not in any way limited to costs associated with subcontractors and suppliers. In fact, Section 17.4 compels a contrary interpretation:

---

[16] City's Post-Trial Brief, pages 12-13.
[17] Rather than cite Delaware case law in support of what the City states to be the law in this state, the City cites cases from Georgia, Connecticut, Vermont and Minnesota. Post-Trial Brief pp. 12-13. The City also cites a Third Circuit case which was on appeal from the Western District of Pennsylvania and involved equipment located in California and a steel mill in Pennsylvania—that per the Third Circuit is a non-precedential case. *Diversified Packing and Development Corp. v. Dore & Associates, et al,* 48 Fed Appx. 392, 402 (3d Cir.2002). There is no indication anywhere in the case that Delaware law was being applied. Moreover, from the limited facts provided, there does not appear to be any nexus to Delaware.

- 15 -

> The duties and obligations imposed by these General Conditions and the rights and remedies available hereunder <u>to the parties</u> thereto …, are in addition to, and <u>are not to be construed in any way as a limitation</u> of, any rights and remedies available to any or all of them which are otherwise imposed or available … by any other provisions of the Contract Documents, and the provisions of this paragraph will be as effective as if repeated specifically in the Contract Documents <u>in connection with each particular duty, obligation, right and remedy to which they apply</u>.

A249, Section 17.4 (emphasis supplied).  Accordingly, Section 17.5 cannot be construed – as the City suggests – as a limitation to Durkin's rights and remedies.

Another court ruling on the identical language in Section 17.5 held that under this section a contractor is permitted to recover its attorneys' fees and court costs in a dispute with the owner. *Capron Trail Community Development District v. Frenz Enterprises, Inc.,* 674 So.2d 875 (Fl. Ct. App. 1996).  Durkin's evidence that it incurred $1,740,751.38 in unpaid consultant/professional expenses was not assailed in any way by the City.  Accordingly, the jury's award of these damages was proper.

### E.    Durkin Did Not Seek Lost Future Profits, Lost Business or Lost Customers

Among the more perplexing arguments advanced by the City is that Durkin was seeking, and the jury awarded, compensation for lost future profits, lost business or lost customers.  This is utterly contrary to all the evidence presented by Durkin, and fundamentally mischaracterizes the nature of Durkin's claims.

Durkin made numerous representations throughout trial that Durkin was <u>not</u> seeking compensation for lost profit type damages.  A121, A157, Tr. 915:14-16; 1165:9-10.  Nowhere in the direct testimony of Mr. Durkin does he state that Durkin is seeking lost profits.  Rather, he describes the tremendous efforts and sacrifices Durkin made to stay in business after being wrongfully terminated in an effort to mitigate its damages.  Tr.903-912. He also explained the loans Durkin incurred for operational capital to stay in business (Items 7 to 9).  A118, Tr.912:17-22.  In fact, when asked on cross examination, Mr. Durkin confirmed City's counsel's

- 16 -

understanding that Items 7 to 9 were not lost profits, but were "operating expenses of [Durkin] since February '04". A121, Tr. 915:14-16; A255, DUR-68.

Under Delaware law, Durkin is entitled to be compensated for consequential damages that were reasonably foreseeable at the time the parties entered into the Contract. *Pierce v. Int'l Ins. Co. of Illinois,* 671 A.2d 1361 (Del. Sup. Ct. 1996). *See also True North v. Trinity Inds., Inc.,* 191 F Supp. 2d 484 (D. Del. 2002). The post-termination costs and expenses (Items 7 to 9) are readily foreseeable consequential damages Durkin incurred in an effort to stay in business and mitigate its damages, and as such are fully recoverable under Delaware law. A121, Tr. 915:14-16; A255, DUR-68. These included loans and sale of equipment[18] to generate operating capital for Durkin since termination. *Id.* Restatement (Second) §351.[19] It is entirely foreseeable that when a large revenue stream – such as this multi-million dollar earthwork Contract – is prematurely terminated after work has commenced, equipment is on site, and subcontractors have been hired and performing work, that a company such as Durkin will need to incur loans or otherwise generate operating capital, both to continue to operate the business and to mitigate its damages,[20] which include its continuing financial obligations under the Contract. *Green v. Mangold,* 1983 Del. Ch. LEXIS 478 (Del. Ch. Ct. 1983) (Finding that recovery of a "bridge loan" to cover expenses was reasonably foreseeable).

The Court need look no further than the Contract to satisfy itself that these were foreseeable consequential damages resulting from a termination prior to completion of the work.

---

[18] In footnote 27 of its Post-Trial Brief, the City cites a Montana case for the proposition that sales of equipment for revenue is not recoverable because such damages are vague and speculative. *Zook Brothers Const. Co. v. State of Montana,* 556 P.2d 911 (Mont. 1976). That is not the holding of *Zook*. In *Zook* the contractor was attempting to recover lost future profits – which Durkin was not attempting to recover – and attempted to show that by being forced to sell its equipment its profits decreased.

[19] "[T]he party in breach need not have made a 'tacit agreement' to be liable for the loss in mind when making the contract, for the test is an objective one based on what he had reason to foresee." Restatement (Second) §351, comment a.

[20] Durkin had a legal obligation to mitigate its damages. *Lynch v. Fickers Energy Corp.,* 429 A.2d 497 (Del. Supr. 1981).

- 17 -