IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff*<br><br>vs.<br><br>CITY OF NEWARK, et al., *Defendants*<br><br>and<br><br>CITY OF NEWARK, *Third-Party Plaintiff*<br><br>vs.<br><br>DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | CASE NO. 04-0163-GMS |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Intervenor* | |

APPENDIX OF DOCUMENTS IN SUPPORT OF
ANSWERING BRIEF OF PLAINTIFF
IN OPPOSITION TO CITY OF NEWARK DEFENDANTS'
MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL
OR REMITTITUR

Part 9

POWELL, TRACHTMAN, LOGAN,
CARRLE & LOMBARDO, P.C.
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
*Attorneys for Plaintiff and Third Party Defendant Donald M. Durkin Contracting*

Dated: March 2, 2007

# TABLE OF CONTENTS

**Document**                                                                                      **Page**

Selected Portions of the Trial Transcript.................................................................A1

Selected Jury Instructions Discussed on October 4, 2006....................................A177

Selected Final Jury Instructions...........................................................................A182

Jury Verdict Form..................................................................................................A193

Chart of City's Arguments Regarding Contract Damages in Its Rule 50a, Rule 50b
And Rule 59 Motions.............................................................................................A199

Judge Sleet's Final Pre-Trial Form Order ............................................................A202

Trial Brief of the City of Newark Defendants.......................................................A207

Court Order dated September 22, 2006.................................................................A217

Chart of City's Arguments Regarding Contract Damage Calculation During Trial....A237

Application and Certificate for Payment No. 23 (DUR9)....................................A240

Selected Portions of the Contract (DUR60)..........................................................A242

Selected Portions of the Complaint.......................................................................A250

Chart of City's Cases Cited in Support of the Doctrine of
Constructive Termination......................................................................................A254

Itemized Statement of Damages (DUR68)...........................................................A255

Memorandum dated May 27, 2004 from
Solicitor Akin to Mayor and Council (DUR37)....................................................A256

Affidavit of Ronald Scott Killen...........................................................................A259

Affidavit of Donald M. Durkin, Jr........................................................................A261

Affidavit of Michael D. Durkin.............................................................................A267

Affidavit of James W. Durkin...............................................................................A273

Selected Delaware Pattern Jury Instructions (2000).............................................A279

City's Communications with Durkin's Subcontractors (DUR13, DUR14, DUR 15, DUR16, DUR17, DUR18, DUR19).................................................................A281

Chart of What Council Did Not Know When it Voted to Terminate Durkin...........A318

Prospective Bidder Memorandum dated July 30, 2004 (DUR10).......................A320

Memorandum from Mayor Funk to City Manager Luft (DUR20).......................A321

Executive Session Meeting Minutes dated February 2, 2004 (DUR34)................A322

Selected Third Circuit Model Jury Instructions............................................A325

```
 1   afternoon to work on these things, yes.
 2            THE COURT:  Just that instruction, I would like
 3   to take a look at that.  The verdict sheet.
 4            MR. LOGAN:  Your Honor, I apologize, P-17, I
 5   think the rule of law currently in the violation of civil
 6   rights is the result of an official policy or custom, that
 7   is the standard, as I understand it, Your Honor, at this
 8   point in time.  So the last page would be -- it is, Your
 9   Honor.
10            THE COURT:  You are at P-17 or Page 17?
11            MR. LOGAN:  It is Page 20.
12            THE COURT:  What about this?  You drafted this?
13            MR. LOGAN:  I admit that we missed the phrase or
14   custom, "was a result of the official policy or custom."
15   That is the correct standard, I believe, currently, Your
16   Honor.
17            THE COURT:  That's now --
18            MR. COTTRELL:  Are we changing this, Your Honor?
19            THE COURT:  We are making an addition.
20            MR. LOGAN:  Page 20, official policy, it should
21   have been "or custom of the City of Newark."
22            Your Honor, one other request for charge before
23   we go to the verdict slip.  A cautionary instruction we
24   would like is with regard that there should be no deduction
25   or diminution of the damages as a result of any
```

1
2          THE COURT: Good morning. Please be seated.
3          (Counsel respond "Good morning.")
4          THE COURT: All right. Until a few minutes ago
5  I thought we had about eight matters to discuss.
6  Apparently, we have some additional matters. We are going
7  to go through my list first.
8          The city's good-faith defense. The Court is
9  going to permit the city to call its witnesses in support of
10 that defense and the Court will permit the amendment
11 pursuant to Rule 15(b) of the pleadings to conform to the
12 evidence in the case.
13         Durkin's identification of a constitutional
14 right. The city correctly points out that it is only
15 recently, as recent as Docket Item 272, actually, that
16 Durkin has identified the specific constitutional right at
17 issue. However, again, pursuant to Rule 15(b), the Court
18 will allow Durkin to amend to specifically identify the
19 alleged deprivation, constitutional deprivation, which, as I
20 understand it, is a deprivation of the right to pursue one's
21 profession. Is that correct?
22         MR. LOGAN: Yes, Your Honor. It is a liberty
23 interest.
24         THE COURT: That will, just to fast-forward a
25 bit, we will presently have a discussion about the jury

1  very distinguished and experienced judges from this circuit,
2  in addition to two very fine academics. The comments
3  section, the commentary in the Model Instructions is
4  excellent. That's where you need to be. 4.8.2 as well.
5              There needs to be a nominal damages instruction
6  as well.
7              Mr. Green, I would like a copy of that case.
8              MR. GREEN: Yes, sir. May I read the citation
9  into the record?
10             THE COURT: If I don't have a copy.
11             MR. GREEN: I can read the citation and I can
12 find another.
13             THE COURT: We will get a copy.
14             MR. GREEN: I should also state for the record,
15 Your Honor, I marked it up with my markings.
16             THE COURT: The only reason I am willing to look
17 at it is because it is Judge Schwartz. I will tell you that
18 right now.
19             MR. GREEN: The case is Hollman v. Cassell, 648
20 F.Supp. 947, District of Delaware, 1986. So it is post-
21 Miller. It distinguishes Miller, Your Honor. I will get
22 copies for everybody.
23             THE COURT: We will get it.
24             Then we have the city, I think, had an issue
25 regarding the jury instruction for damages. I believe when

1  we broke at the end of the day counsel were going to confer,
2  counsel for the city were going to confer with counsel for
3  Durkin and the city was going to come up with a proposed
4  instruction?
5         MR. COTTRELL: Your Honor, with the number of
6  other things we had to do, we weren't able to complete that
7  chore. It had to do with the sympathy instruction which
8  should not --
9         THE COURT: Clearly, there is some instruction
10 work that needs to be done. So that can be done.
11        Then there was also, I think, a separate jury
12 instruction issue regarding sympathy. Did you find a
13 sympathy instruction?
14        MR. COTTRELL: Yes, Your Honor.
15        THE COURT: And then Durkin had an issue with
16 regard to a separate instruction regarding the offset for
17 the water cost. Did you have a chance to do anything about
18 that?
19        MR. LOGAN: We have a proposed instruction.
20        THE COURT: Did you talk with opposing counsel
21 about this? If you haven't, you can do that.
22        MR. BOLGER: I think we read it into the record.
23        THE COURT: When was that?
24        MR. BOLGER: Just yesterday.
25        THE COURT: Did we do that yesterday?

```
 1              MR. COTTRELL:  Your Honor, you have already
 2   addressed that.  We wanted to place that on the record.
 3              THE COURT:  You preserved the issue.
 4              Mr. Cottrell, did you want to say anything about
 5   your damages memorandum?  Is there anything more you wanted
 6   to say on the issue of damages that hasn't been said?
 7              MR. COTTRELL:  No, Your Honor.  We just
 8   reiterate that we believe it's a matter for the Court to
 9   determine what the measure of damages are and properly
10   instruct the jury, which we have already addressed.
11              THE COURT:  All right.
12              Then finally, I think, at least based upon the
13   papers I have received, there is the plaintiff's second
14   motion for sanctions which, frankly, I haven't digested yet.
15   But I take it it has something to do with the 16 documents
16   we discussed yesterday.
17              MR. COTTRELL:  Your Honor, we haven't had a
18   complete opportunity to digest that.  We would ask the Court
19   for sufficient time to properly respond because of the
20   gravity of the charges.
21              We have already started a motion for
22   reconsideration, and we would like to point out to the
23   Court --
24              THE COURT:  Reconsideration of what?
25              MR. COTTRELL:  The original motion for
```

Jim Durkin - direct

1  Q.    And if you will look at Question 35, which is on the
2  first page of what I handed you?
3  A.    Yes.
4  Q.    It says, What was Durkin's anticipated profit for the
5  reservoir project?
6            Answer:  The anticipated profit for project as
7  bid was $755,081, or eight percent.  Is that correct?
8  A.    Yes, it is.
9            MR. COTTRELL:  Thank you, sir.  That is all the
10 questions I have for this witness, Your Honor.
11           THE COURT:  Mr. Logan.
12                    CROSS-EXAMINATION
13 BY MR. LOGAN:
14 Q.    Mr. Durkin, can you tell the jury what work was on
15 hand with regard to at the time the Newark reservoir project
16 was bid?
17 A.    At that time, we had -- we had bid or were just about
18 ready to bid, I don't know the exact time frames, a site
19 development job for Central Bucks School District up in
20 Bucks County, Pennsylvania.  And we were the low bidder on
21 that job.
22 Q.    Mr. Durkin, do you recall what the approximate dollar
23 value was of that project?
24 A.    I believe it to be 3.6 million.  But it's somewhere in
25 the three- to four-million-dollar range.

1    Q.    And so it was you and Mr. Luft who decided what
2    documents City Council could even see. Correct?
3    A.    And also, just to better answer your first question,
4    also Roger Akin, our City Solicitor, would forward
5    information to counsel.
6    Q.    So there was first a process which involved yourself,
7    Mr. Luft, Mr. Akin to decide what City Council would see and
8    what City Council would not see. Correct?
9    A.    Correct.
10   Q.    And as it relates to the white binders, isn't it
11   correct, Ms. Houck, that not a single city councilman came
12   and visited and looked at those documents?
13   A.    I don't have any records of who did what other than
14   the testimony I have heard here.
15   Q.    Well, Ms. Houck, let me ask you affirmatively, do you
16   know of any single City Council member that even stopped to
17   look at the binders?
18   A.    I do not.
19   Q.    Now, it appeared from what you were saying earlier
20   that your educational background does not include
21   engineering. Is that right?
22   A.    It does not, no.
23   Q.    And you don't have any expertise or claim to have any
24   expertise in the design or construction of a reservoir.
25   Correct?

```
 1              MR. GREEN:  Yes, Your Honor.
 2              THE COURT:  As a substitute for No. 11.
 3              MR. COTTRELL:  What is being substituted?
 4              THE COURT:  Mr. Green is proposing that, instead
 5   of what is presently called at No. 11
 6   counterclaim/third-party claims, that we insert his proposed
 7   URS Corporation's damage claim.
 8              MR. COTTRELL:  Yes, Your Honor.
 9              THE COURT:  Agreeable to Durkin?
10              MR. BOLGER:  Yes, Your Honor.
11              THE COURT:  All right.  That's done.  The next
12   thing I have --
13              MR. COTTRELL:  Your Honor, I beg your pardon.
14   We do have a proposed jury instruction related to the
15   attorneys' fees, if I may approach the Bench.
16              THE COURT:  Sure.  In addition you have handed
17   up some others as well, the sympathy, the good-faith defense
18   to civil rights claims, and proper measure of damage.
19              MR. COTTRELL:  Yes, Your Honor.
20              THE COURT:  I don't think we are quite yet at
21   attorneys' fees.
22              The next matter that I have tabbed, the next
23   instruction, and I would be interested in the city and URS's
24   view, is No. 14.  Do we need No. 14?  Maybe I am just
25   misreading No. 14.
```

```
 1              MR. COTTRELL:  Your Honor, at Page 22,
 2   Instruction 19.  If you look at the two bullets, there is an
 3   "or" after the second bullet, should that be in front of the
 4   first bullet?
 5              THE COURT:  Yes.  Do you have that, Mr. Bolger?
 6              MR. BOLGER:  Yes.
 7              THE COURT:  Anything else before Page 30?
 8              MR. COTTRELL:  Page 23, the reference is in the
 9   second paragraph, Thus, when the City Council or the city
10   administration, shouldn't it just be City Council?
11              MR. LOGAN:  No.
12              THE COURT:  I don't think so.  I think under the
13   current state of the law -- I will let you -- Mr. Akin, go
14   ahead and make your point to your colleague.
15              MR. AKIN:  I will be happy to make it on the
16   record.  I think the state of the record at this point, Your
17   Honor, is that with respect to policy, I believe the only
18   testimony the jury heard is that the City Council sets
19   policy for the city and the staff recommends and informs and
20   advises the counsel with regard to policy making.
21              I am specifically referring to the last
22   paragraph, first line, where it appears that the current
23   instruction suggests that the council and the administration
24   are policy makers.  I am not sure that is the correct
25   statement of the record that the jury has before it.
```

1    MR. BOLGER: Your Honor, it is our position that
2  the testimony on the record was that there was delegation by
3  the council members down to and in considerable deference
4  and latitude given to city things to develop and implement
5  policy.
6    MR. AKIN: Implement I will concede, Your Honor.
7  But I believe again that the record is that the council is
8  the policy-making body. I think that was from either Mr.
9  Clifton's deposition or Mr. Osborne's live testimony.
10   THE COURT: Mr. Akin, look at the first sentence
11 in the second paragraph. I am wondering -- I think that is
12 a correct statement of the law. I am wondering whether that
13 doesn't, whether the jury wouldn't be free on the record to
14 find that the city, in making deliberate choices relative to
15 the contract, even the choice to let, was making, to whom to
16 let, was making a deliberate choice which represented the
17 official policy of the City of Newark.
18   MR. AKIN: I think the record reflects, Your
19 Honor, with regard to the letting of the contract, the
20 contract was placed out for bids, and bids were received,
21 but the actual decision to accept the Durkin bid was a
22 decision made by the council, rather than the staff.
23   MR. BOLGER: Your Honor, I refer you back to the
24 preceding Instruction No. 19, and refer the Court's
25 attention down two bullets where the case law has defined

```
 1   what an official policy or custom is.  I believe that the
 2   Court's interpretation is that conduct by itself is a
 3   widespread well-settled practice and can constitute official
 4   policy or custom.
 5              I think there is ample evidence of that in the
 6   record.
 7              MR. AKIN:  One final point on that comment, Your
 8   Honor.  I think that this case has focused on the actual
 9   termination of Durkin, and that was a decision made by
10   council and no one else, that is, the actual termination
11   vote was a vote taken by council, albeit with the advice and
12   recommendation of staff, as well as perhaps URS.
13              THE COURT:  Is it possible, Mr. Akin, that the
14   jury could properly determine that it was nonetheless staff
15   that effectively made the policy because of the amount of
16   deference that was given to staff, recommendations and staff
17   choices?  The jury could find otherwise, I think.  But I
18   wonder if there isn't sufficient evidence, given the
19   testimony from the councilman who appeared and the
20   depositions that were read, to sustain such a conclusion.
21              MR. AKIN:  If I could respond.  I still think,
22   Your Honor, again, I think the state of the record is
23   abundantly clear here that the council acts, and I think
24   that the council members, as the testimony was provided to
25   the jury, amply demonstrated to the jury that the council
```

1  essentially acts pursuant to recommendations, advice and
2  information provided by staff and perhaps legal counsel.
3          But ultimately, the decision to terminate, the
4  decision to hire Durkin, those were decisions ultimately
5  made by the Mayor and council of the city.
6          THE COURT:  I understand your argument.  With
7  respect, I would suggest that that might have been -- one
8  might expect that to be the case.  But isn't the state of
9  the record that there were no questions asked?  Or it may be
10 that I have forgotten something, it is entirely possible
11 that the councilmen did not question the staff on its
12 recommendations.  The recommendations I thought I understood
13 in the main were more or less accepted without
14 qualification.
15         MR. AKIN:  Well, Your Honor, the executive
16 session minutes that are part of the record now of that
17 meeting of February 2, '04 are not verbatim minutes.  And I
18 don't think they recorded the entire discussion that
19 occurred before counsel that night.  I don't think there is
20 any record that has been made that there were no questions
21 asked of the status of the matter.
22         I think that the council -- I think the record
23 shows that council had been routinely advised of a stalemate
24 with regard to design issues raised by Durkin, and they had
25 been brought along on that stalemate and then, as the

1  policy-making body, made that decision to terminate.

2            I am just making the point, because I think
3  that's what the record in the case reflects.

4            THE COURT: I think you have to make the point.

5            MR. BOLGER: Your Honor, Mr. Akin's view, with
6  due respect, is a very selective and limited perspective on
7  what we contend are the civil rights violations. We are
8  talking about a pattern and practice of conduct here. I
9  think there was ample testimony in the record from the
10 depositions of the council members that they were not
11 apprised of all the actions that were taken by city
12 administration.

13           So to suggest that they were fully informed, I
14 think the record clearly demonstrates to the contrary. For
15 a number of our continuing civil rights violations,
16 particularly with the press releases and such, there is no
17 indication that that was done at the hand or with the
18 consent of council.

19           THE COURT: Considering the sentence, as I do
20 understand it to be a correct statement of the law, that
21 reads in No. 20, Thus, when counsel or the city
22 administration makes a deliberate choice to follow a course
23 of action, I think the record could support a -- a
24 reasonable jury could find that effectively, once the
25 decision was made by staff and with the advice of counsel,

```
 1   that the choice had been made, the die had been cast, as it
 2   were, under what I understand to be the operating
 3   procedures, the normal operating -- the SOPs of Newark City
 4   Government.
 5              So, again, Mr. Akin, I am going to disagree with
 6   you and leave it stand as it is.
 7              MR. COTTRELL:  Your Honor, I have another issue
 8   with regard to the last paragraph of Page 23, and two
 9   paragraphs above.  In the last paragraph, the last,
10   second-to-last line, it's phrased "of and the moving force
11   behind the violation of Donald Durkin's federal
12   constitutional right."  As presently written, this is
13   instructing the jury that there has been a violation.
14              And similarly, in the --
15              THE COURT:  Well, I think that's a fair point.
16   Would you rather say the violation alleged or the alleged?
17              MR. COTTRELL:  The alleged violation, that would
18   be better.
19              THE COURT:  Any problem with that, Mr. Bolger?
20              MR. BOLGER:  No, Your Honor.
21              THE COURT:  What was the other point?
22              MR. COTTRELL:  Similarly, the paragraph below
23   the bullets, the City Council, city administration may also
24   cause violation through failure to adopt a needed policy but
25   only the City of Newark was deliberately indifferent for the
```

1  fact that a violation of the right -- could we again change

2  "that is deliberately indifferent" to "the alleged violation

3  of the right?"

4           THE COURT:  Any problem with that?

5           MR. LOGAN:  Your Honor, I believe this is the

6  correct statement of the law.

7           THE COURT:  Let's see.

8           MR. LOGAN:  That is from the Third Circuit

9  Pattern Instructions, Your Honor.

10          THE COURT:  I think it could have been worded

11  differently.  But I am not going to wordsmith my colleagues.

12  I think what they are saying, it could have been, for

13  instance, deliberately indifferent to an individual's right

14  or an entity's right to hold the specific private employment

15  and to follow one's chosen profession, without the fact.

16  But that is a fact that you have a constitutional right to

17  follow your chosen profession.  I think that is what they

18  are trying to say there.

19          I understand why it sort of jumps off the page

20  that way.  But I don't think the Court is establishing

21  anything more than the current state of constitutional

22  jurisprudence.

23          MS. FLORA:  Your Honor, the word fact is right

24  in the jury instruction, 4.6.5.

25          THE COURT:  You know, again, anybody who, we all

1  do use model instructions, will tell you just that they are
2  models. And they are not fonts of all wisdom. These happen
3  to be, I think, particularly helpful because of, they are in
4  the Third Circuit, and they are so recent.
5              I don't have difficulty with that word. If
6  there is some other language, Mr. Cottrell, that you will be
7  more comfortable with and you want to talk --
8              MR. COTTRELL: Is it possible to just add a
9  sentence at the bottom of this instruction: All of this, of
10 course, assumes that you find a violation of a
11 constitutional right?
12             MR. LOGAN: I think that's the last paragraph,
13 the curative word was adding the word "alleged."
14             THE COURT: They, have they not, previously, the
15 jury will be previously advised as to the elements, will it
16 not?
17             MR. LOGAN: Yes.
18             THE COURT: Of the 1983 action. I think it's
19 pretty clear, I am not directing them one way or the other.
20 It is a statement of the law, really. I don't think it's
21 harmful.
22             MR. COTTRELL: Very well, Your Honor.
23             THE COURT: Let's see. I was up to Page 30.
24 Anything else before Page 30.
25             MS. PETRONE: Your Honor, we may have something.

```
 1              MR. COTTRELL:  With regard to the bullets on the
 2    second page, there is already independent instruction as to
 3    the elements of damages.
 4              THE COURT:  Where are you now?
 5              MR. COTTRELL:  I am sorry.  Page 25.  It starts
 6    at Page 24, "Donald M. Durkin claims the following items of
 7    damage."  If we already have a separate instruction on the
 8    elements of damage, we would prefer not to overemphasize
 9    that repeated in another general instruction.
10              THE COURT:  It shouldn't be overemphasized.  Mr.
11    Bolger.
12              MS. FLORA:  Your Honor, this is again taken from
13    the standard Delaware instructions, with the bullets.
14              THE COURT:  Where does it appear elsewhere, Mr.
15    Cottrell?
16              He is concerned about overemphasis.
17              MR. COTTRELL:  We have it at Page 28, the
18    Instruction 24 lists all the --
19              MR. LOGAN:  That is a different part of the
20    claim.  That is breach of contract.
21              THE COURT:  I think these are two separate
22    issues.
23              MR. COTTRELL:  They are, Your Honor.
24              THE COURT:  Take a look at Page 26, unless you
25    have anything before Page 26.  Look at Page 26 of mine.
```