IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* <br><br> vs. <br><br> CITY OF NEWARK, et al., *Defendants* <br><br> and <br><br> CITY OF NEWARK, *Third-Party Plaintiff* <br><br> vs. <br><br> DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | CASE NO. 04-0163-GMS |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Intervenor* | |

APPENDIX OF DOCUMENTS IN SUPPORT OF
ANSWERING BRIEF OF PLAINTIFF
IN OPPOSITION TO CITY OF NEWARK DEFENDANTS'
MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL
OR REMITTITUR

Part 10

POWELL, TRACHTMAN, LOGAN,
CARRLE & LOMBARDO, P.C.
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
*Attorneys for Plaintiff and Third Party Defendant Donald M. Durkin Contracting*

Dated: March 2, 2007

# TABLE OF CONTENTS

**Document**                                                                                         **Page**

Selected Portions of the Trial Transcript……………………………………………..A1

Selected Jury Instructions Discussed on October 4, 2006………………………….A177

Selected Final Jury Instructions……………………………………………………A182

Jury Verdict Form…………………………………………………………………A193

Chart of City's Arguments Regarding Contract Damages in Its Rule 50a, Rule 50b
And Rule 59 Motions………………………………………………………………A199

Judge Sleet's Final Pre-Trial Form Order …………………………………………A202

Trial Brief of the City of Newark Defendants……………………………………..A207

Court Order dated September 22, 2006…………………………………………….A217

Chart of City's Arguments Regarding Contract Damage Calculation During Trial….A237

Application and Certificate for Payment No. 23 (DUR9)………………………….A240

Selected Portions of the Contract (DUR60)………………………………………..A242

Selected Portions of the Complaint………………………………………………..A250

Chart of City's Cases Cited in Support of the Doctrine of
Constructive Termination…………………………………………………………A254

Itemized Statement of Damages (DUR68)………………………………………...A255

Memorandum dated May 27, 2004 from
Solicitor Akin to Mayor and Council (DUR37)…………………………………..A256

Affidavit of Ronald Scott Killen…………………………………………………..A259

Affidavit of Donald M. Durkin, Jr………………………………………………...A261

Affidavit of Michael D. Durkin……………………………………………………A267

Affidavit of James W. Durkin……………………………………………………..A273

Selected Delaware Pattern Jury Instructions (2000)……………………………….A279

City's Communications with Durkin's Subcontractors (DUR13, DUR14, DUR 15, DUR16, DUR17, DUR18, DUR19)..................................................................A281

Chart of What Council Did Not Know When it Voted to Terminate Durkin............A318

Prospective Bidder Memorandum dated July 30, 2004 (DUR10).......................A320

Memorandum from Mayor Funk to City Manager Luft (DUR20).......................A321

Executive Session Meeting Minutes dated February 2, 2004 (DUR34)................A322

Selected Third Circuit Model Jury Instructions............................................A325

```
 1              MR. LOGAN:  I am sorry, page?
 2              MR. COTTRELL:  31.
 3              THE COURT:  This is out?
 4              MR. LOGAN:  Yes.
 5              MR. COTTRELL:  Your Honor, for the record, I
 6   understand, we looked at Instruction 24 at Pages 28 and 29
 7   previously.  I know Your Honor has ruled that that will come
 8   in.  Again, we just want to note for the record our
 9   objection.
10              THE COURT:  I understand your position.  You are
11   talking about the attorneys' fees?
12              MR. COTTRELL:  Not only the attorneys' fees.  It
13   is our position that the only proper measure of damages is
14   for Durkin to recover what it would have had but for the
15   breach, and that it's unpaid for work performed, unpaid
16   fees.
17              This is far afield of that.  I understand we
18   have already had a previous meeting.
19              THE COURT:  Let me get Mr. Bolger to remind me,
20   or Mr. Logan, somebody to remind me of your view on this.
21              MR. LOGAN:  Your Honor, I believe that these
22   items, first of all, a number of them are specifically
23   included within the contract itself as recoverable.  That is
24   17.5, I believe, covers it.  I believe these are correctly
25   stated, Your Honor.
```

```
 1                THE COURT:  Counsel disagrees.  That is fine.
 2   Ms. Petrone?
 3                MS. PETRONE:  Your Honor, Paragraph 17.5 of the
 4   contract talks about claims losses.  It says anywhere in the
 5   contract that talks about claims or losses that should
 6   include attorneys' fees and professional fees.  And the only
 7   place that that clause appears otherwise in the contract is
 8   in the damages Newark is entitled to for breach, for default
 9   and termination and for the damages Durkin is entitled to
10   but only as it relates to the termination of its
11   subcontractors.
12                MR. BOLGER:  I haven't read through the entire
13   contract.  I know there are references to claims, losses and
14   damages throughout the country.  Maybe not grouped in that
15   particular phrase.  And the entire Paragraph 17, this
16   colloquy we are having is all an outgrowth of the motions in
17   limine that you have reserved judgment on, Your Honor, the
18   motion for directed verdict.
19                It's our position that under Article 17, which
20   is under Miscellaneous, these terms apply to both parties,
21   and there is no restrictive language within 17.5 that
22   indicates that it's merely for the purpose of a default
23   judgment in favor of the city or a termination payment out
24   for reconciling with subcontractors and vendors.
25                It is our position that any claim and loss that
```

1   is made includes these fees.

2           THE COURT:  Would it be helpful, perhaps, to get

3   the jury to answer a specific interrogatory on this issue,

4   give the Court the ability later on to correct any error

5   that it might be committing by submitting this?

6           MR. COTTRELL:  I think so.  I think perhaps a

7   jury interrogatory as to whether their award is based on

8   what remains owed to Durkin under the contract, as opposed

9   to these items listed in Instruction 24, might do it.

10          MR. BOLGER:  I am not sure there is any

11  consensus on what is owed under the contract.  It's been the

12  city's position that if it has not been submitted in a pay

13  requisition, it can't be owed.  That is certainly not our

14  position with respect to the entitlement that was clearly

15  established by the city and URS, that our client was

16  entitled to a compensable time extension.

17          MR. LOGAN:  Your Honor, if I may.  I am always

18  hesitant with the litigation gods who listen.  But I think

19  the item that is listed that needs to be separately

20  addressed is counsel fees, because what we would not want to

21  have is, if there is a recovery under 1983 and a fee claim

22  is made, then there could be a double -- and that is why I

23  think separate, a separate interrogatory as to the amount of

24  counsel fees that are recoverable may be appropriate in the

25  event there is a fee claim under the Civil Rights Act.

1    That is --

2        THE COURT: At the very least, I think that is
3 helpful. I think Ms. Petrone was saying something
4 additional.

5        MS. PETRONE: Your Honor, it is our position
6 that every bullet point after the unpaid contract balance
7 should be separate.

8        THE COURT: Should not be a part of this.

9        MS. PETRONE: Should not be a part of it at all,
10 certainly. But if we are talking about a jury
11 interrogatory, that allows us to deal with it at a later
12 time.

13        MR. BOLGER: It is our position there is nothing
14 in the contract which contains the limitation Ms. Petrone is
15 seeking. She is essentially looking for, as she has argued
16 earlier, just to roll this from a termination for default to
17 a termination for convenience and essentially eliminate all
18 follow-on economic damages. That is an interpretation which
19 clearly works a forfeiture of my client at the expense of
20 their wrongdoing. That is not something that is
21 countenanced.

22        MS. PETRONE: I would say the contract, which we
23 are talking about what the contract provision provides, it
24 provides for recovery of those certain types of damages only
25 in two specific instances, to the city's advantage in the

```
 1    event of a default and termination and to Durkin's advantage
 2    in the event of a termination for convenience provision,
 3    again only as to the costs for terminating their
 4    subcontracts.
 5             It is also our position, as we included in our
 6    proposed jury instructions, that Delaware law says lost
 7    profits and all these other types of things aren't
 8    recoverable in a breach of contract action.
 9             MR. BOLGER:  As far as I can tell, Your Honor,
10    we haven't pled or introduced evidence of lost profits.
11             What we have introduced evidence on the board is
12    of our computation of the work that was performed as well as
13    those costs that directly flow from the breach.  I think Ms.
14    Petrone was alluding earlier to the two instances.  She is
15    talking about specifically attorneys' fees and professional
16    fees when she is talking about the two instances in the
17    contract.
18             As far as the other elements, we are not seeking
19    lost profits.  We are not seeking lost opportunities.  We
20    are seeking reimbursement for costs as a direct and
21    proximate result of the breach.
22             MS. PETRONE:  Then none of that should be in
23    there.  If they are not seeking that, none of that should be
24    listed.
25             THE COURT:  I confess that, as I read it rather
```

1  quickly, I was wondering what proofs I had heard on the
2  subject. I didn't want to rely solely on my memory of what
3  had been adduced to support any of these bulleted items. I
4  would imagine that counsel should be able to agree on these
5  things, as you have just suggested, Mr. Bolger, you are
6  right. I don't recall lost profits testimony. I don't
7  recall loss of revenue.
8              I won't presume to go through the rest of them.
9              MR. COTTRELL: It might be simpler, Your Honor,
10 to leave it to the first paragraph, the measure of damages
11 is the loss actually sustained as a result of the breach of
12 the contract.
13             THE COURT: What you are trying to do with the
14 bullets is trying to give some examples, if not specific
15 instances, but some guidance as to the type -- and the jury
16 has been told, their decision has to be based on evidence.
17 And there is no evidence, for instance, of lost profits.
18 Mr. Bolger is conceding that. Ms. Petrone's response is it
19 shouldn't be in there. That is fair. Probably there are
20 other items that shouldn't be in there as well.
21             So I am going to leave that to counsel to
22 discuss a little bit.
23             What about Mr. Logan's suggestion under the
24 attorneys' fees bullet?
25             MR. COTTRELL: It probably should be all

1  professional fees, not just attorneys' fees. You know,
2  there are consultants involved in litigation. That would be
3  the same. So I suppose we could have a special jury
4  interrogatory as to whether they are awarding any one of
5  those things. But I still think maybe the best course of
6  action is simply to leave it the measure of damages, the
7  loss actually sustained as a result of the breach of the
8  contract.
9            THE COURT: Is there evidence on the subject of
10 professional fees?
11           MR. LOGAN: There is, Your Honor.
12           MR. COTTRELL: Your Honor, it is in summary
13 fashion on their statement.
14           THE COURT: That's right.
15           MR. LOGAN: It is in summary fashion with a
16 footnote with the detailed identity of those professional
17 fees, which would include GeoSyntec, the -- there were a
18 number of specifically listed professionals that were
19 related to the contract. I believe it has been set forth
20 there in a footnote, again, referencing the dollars. But in
21 this case --
22           THE COURT: Is this something that can be, if it
23 needs to be, corrected post-verdict regardless of whether
24 there is a jury interrogatory or not?
25           MR. LOGAN: Since there is a line item, there is

```
 1   a line item, yes, Your Honor, I think that is possible.
 2              THE COURT:  Mr. Cottrell.
 3              MR. COTTRELL:  I just don't think so, Your
 4   Honor.  To lay -- they have heard the evidence.  They have
 5   all these different elements --
 6              THE COURT:  Certain of these need to come out,
 7   where there is no evidence.  There is an honest dispute
 8   between the parties as to these others where there has been
 9   evidence, attorneys' fees, consultants' fees.  I know your
10   position has been that the Court should make this
11   determination.
12              MR. COTTRELL:  That's correct, Your Honor.
13              THE COURT:  I am not convinced of that at this
14   time.
15              MR. COTTRELL:  I understand.
16              THE COURT:  I am not convinced you are wrong, I
17   am not convinced you are right.  I will look at it some more
18   over the evening.  But to the extent that we can get these
19   ready for the jury and not have to fuss around with them, I
20   would just as soon do what we can to put it to bed.  Is this
21   something I can fix, if you are right, Mr. Cottrell, is this
22   something that I cam repair post-verdict, assuming that it
23   needs repair?
24              MR. COTTRELL:  I guess it would be cumbersome.
25   But if we had a list of different elements -- although that
```

1  would seem to overemphasize it as well. Perhaps if the jury
2  interrogatory was simply, you know, what damages do you find
3  related to unpaid contract balance, and then a second
4  interrogatory, what damages if any do you find that are in
5  addition to unpaid contract balance.
6          THE COURT: Mr. Logan.
7          MR. LOGAN: I don't think that takes all of the
8  elements of the damage that has been placed before the jury.
9  I believe that at least, and I am going to jump back to the
10 issue, we need to have a special interrogatory where
11 regardless of the amount that they come up with if any --
12         THE COURT: Would it be helpful to have the jury
13 have two interrogatories, one based on the city's theories
14 and one based on yours?
15         MR. COTTRELL: I think so. Then, as you said,
16 the Court would have the basis to do whatever needs to be
17 done post-verdict.
18         MR. LOGAN: I think we can work that out, Your
19 Honor. I think that's not a bad idea. But I still believe
20 we need to have a very separate pocket for identity of the,
21 whatever amounts, what is the amount of counsel fees that
22 you have awarded for Durkin, if any.
23         THE COURT: All right. See what you can agree
24 on.
25         Those were the issues that I spotted in the

1  am not sure where that is now with the contribution and
2  indemnification claim based on our breach of contract or
3  tort law out. But I am still concerned that that might be
4  considered as part of the civil rights issue.
5           I honestly am not sure.
6           THE COURT: I don't think it's a problem. Do
7  you, Mr. Cottrell?
8           MR. COTTRELL: I guess, because with regard to
9  the civil rights claim and contribution and the testimony
10 that has been entered by the city's reliance upon URS and so
11 forth, this seems to negate that. So, I mean, that's why we
12 would object.
13          THE COURT: Mr. Green.
14          MR. GREEN: Well, I think it's still true, Your
15 Honor. It is legally impermissible for the jury to consider
16 the engineer's testimony against us for any purpose related
17 to a breach of the duty that we owe.
18          THE COURT: I don't think it negates anything,
19 Mr. Cottrell. I understand your concern. I think it
20 helpful to remind the jury of this fact. So it needs to be
21 in here somewhere. You can decide. Any suggestions on
22 where it should best be placed? Near the end?
23          I will leave that to counsel.
24          Let's go to the city's proposed instructions,
25 additional instructions. We have sympathy, that is agreed.

    1            How about proper measure of damages?  Has this

    2   been discussed and agreed upon?  Have we already decided

    3   this issue?

    4            MR. LOGAN:  I thought we did, Your Honor.  I

    5   thought we were going to get together and finalize that.

    6            THE COURT:  Good-faith defense, the civil rights

    7   claim.

    8            MR. LOGAN:  Your Honor, I don't believe that

    9   belongs in this case any longer.  Let me explain why.  The

  10   citations that are given as the authority for the good-faith

  11   defense apply only in the instance where there is an

  12   individual sued in his individual capacity.  That has not

  13   happened.  I do acknowledge that in haste to get civil

  14   rights verdict, the jury verdict prepared, we still left the

  15   individuals in as if they are separate and distinct from the

  16   city and they are not.

  17           So this good-faith defense, the civil rights

  18   claim, the Owen case and I believe the Carrigan case apply

  19   only in the instance where an individual is relying upon and

  20   can claim good-faith reliance.

  21           I think the Owen case, Mr. Bolger would actually

  22   have it here with regard to what the pronouncement of the

  23   law is.

  24           MR. BOLGER:  Your Honor, as drafted, this

  25   instruction would suggest to the jury that good faith would

1       In light of -- take another look at the civil
2  rights instructions and conform them to what's just been
3  agreed.  I will take a look at them before I deliver them
4  tomorrow, whatever the time is when you finished, just
5  e-mail them over, I will take a look.
6       MR. LOGAN:  My legal advisors to the right tell
7  me that 17 has to stay in.  I would have them explain it.
8       THE COURT:  That is fine.  Then we have the
9  verdict form.  URS has proposed a damages interrogatory.
10      MR. COTTRELL:  I am sorry, Your Honor.  We did
11 have in our instructions with regard to damages attorneys'
12 fees.
13      THE COURT:  Oh, yes.
14      MR. COTTRELL:  This goes to the URS claim.  And
15 we site the Andrews Miller case, which limits the amount of
16 attorneys' fees in a collection case such as this to 20
17 percent of the amount of the principal.  So there is a
18 better way to word this.  In the press for time, I am sure
19 it is a problem.  But that would be the gist of it.
20      MR. GREEN:  I guess that is directed to me, Your
21 Honor.  I haven't looked at that case.  I had to pull these
22 out of the printer when we were on our way over.  My
23 understanding of the statute is if there is not a
24 contractual provision and there is a provision in the
25 contract which says a party -- I am double-speaking.

```
 1              If there is not a contractual provision that
 2   says a party is entitled to their attorneys' fees, as our
 3   contract, we believe, says, for collection, there is not a
 4   limitation.  But if it says reasonable attorneys' fees,
 5   there is a limitation by statute.  A lot of -- and I believe
 6   this law developed, I don't know if this is a confessed
 7   judgment case, in confession of judgment, there is usually a
 8   provision in a note or a bond that in addition to the amount
 9   due on the note or the bond, if they have to default or
10   foreclose, there be reasonable attorneys' fees.  And I
11   believe the Delaware law has imposed upon that a limitation.
12   That's about as much as I can remember.
13              I will be happy to take a look at it.  I don't
14   think this should be a big issue between us.  We can keep
15   the Court out of it.
16              THE COURT:  I would appreciate that.
17              MR. GREEN:  We will look at this case and talk
18   to Mr. Cottrell.
19              THE COURT:  Mr. Green, didn't you give me a
20   second interrogatory?
21              MR. GREEN:  One on damages, Your Honor, and then
22   one on contribution.  The one in the set submitted by --
23   with the group, I tried to mark up last night.  It didn't
24   get in there.  It's a pretty lousy job.  I thought this was
25   a little bit simpler.  I don't know if it does the trick.
```

recess

|   |   |
|---|---|
| 1 | THE COURT: Fine with me. Counsel, that does it |
| 2 | for me. Anybody else have anything else? |
| 3 | MR. LOGAN: When we do have a revised version, |
| 4 | you wish us to e-mail it to Your Honor? |
| 5 | THE COURT: Would you e-mail it? |
| 6 | MR. LOGAN: Absolutely. |
| 7 | THE COURT: I will take another look. |
| 8 | MR. BOLGER: A Word Perfect format. |
| 9 | THE COURT: That would be great. That would |
| 10 | make it a lot easier. |
| 11 | MR. GREEN: Your Honor, I don't know, who is it, |
| 12 | the GSA or Marshals, could we maybe spend ten minutes here |
| 13 | after Your Honor leaves? |
| 14 | THE COURT: Yes. |
| 15 | MR. GREEN: Make sure we are all on the same |
| 16 | page. |
| 17 | THE COURT: Yes. Just remember that my case |
| 18 | manager has to go home at some point. You can stay here for |
| 19 | a while, ten minutes or so. We are going to need to lock |
| 20 | the courtroom. Though we could get a CSO, we could get a |
| 21 | CSO to lock the courtroom. We will get a Court security |
| 22 | officer to lock the courtroom. Stay as long as you need and |
| 23 | we will take care of it. We will see you at 9:30. |
| 24 | (Court recessed.) |
| 25 | Reporter: Kevin Maurer |

1          MR. GREEN:  No preference, Your Honor.

2          THE COURT:  I will just give the instruction.
3  If we get a question from the jury, then we will deal with
4  it when we cross that bridge.

5          Just for your edification, tell me whether you
6  intend during your statements to the jury to discuss the
7  verdict form.  If you do, I won't feel a need to go over it
8  with them.  Or if you prefer, I can go over it with them.

9          MR. LOGAN:  Your Honor, I do intend to address
10 the jury with regard to the verdict form.  I believe it
11 would be appropriate, I would request Your Honor to go over
12 the verdict form just so they know mechanically how to do
13 that.

14         MR. COTTRELL:  Agreed.

15         MR. GREEN:  Agreed, Your Honor.

16         THE COURT:  Then, just so you will know, it is
17 not important, but I have a different introduction that I am
18 going to give.  And I have a discussion that I labeled
19 Province of the Court and Jury.  I am sorry I didn't think
20 about it yesterday.  They won't have it in writing.  They
21 will have what you prepared.  And they don't need to have
22 it.  That is fine.  I can make copies of it for you if you
23 want.

24         Other than that, is there anything -- the
25 verdict form looks fine to me.  I take it it is an

```
 1  agreed-upon form.  Isn't that correct?
 2              MR. LOGAN:  Yes, Your Honor.
 3              MR. GREEN:  Yes, Your Honor.
 4              MR. COTTRELL:  Yes.
 5              THE COURT:  Anything else?
 6              MR. LOGAN:  I don't believe so, Your Honor.
 7              MS. FLORA:  Your Honor, are we supposed to have
 8  six copies available for the jury?  Would you like us to do
 9  that?
10              THE COURT:  We will need eight.
11              Ms. Walker has them.  She will take care of
12  that.
13              Do you want to set up now, Mr. Logan, so you can
14  go right into your opening?
15              MR. LOGAN:  Other than moving --
16              THE COURT:  Perhaps we will do this.  We will
17  take a short break after I deliver the instructions and give
18  you the opportunity to set up, then come back and begin that
19  process.
20              Anything else?
21              MR. LOGAN:  No, Your Honor.
22              THE COURT:  Okay.  Ms. Walker.
23              (Jury enters courtroom at 9:45 a.m.)
24              THE COURT:  Good morning, ladies and gentlemen.
25  Please take your seats.
```

```
 1     as October of 2003?
 2     A.    It was never recommended to solve the problem by URS,
 3     as we evaluated these.  It was just one of eight.  They
 4     never suggested that this is an area we should move into,
 5     other than it being here.
 6     Q.    Ms. Houck, do you know whether or not City Council was
 7     ever provided the October 14, 2003 letter?
 8     A.    I can't say for sure, unless -- if we go through and
 9     see if it is in that packet or it was something else.  I
10     can't say for sure.
11     Q.    When you say that packet --
12     A.    In the binder.  I am not sure if it's there or it was
13     provided to them in some other fashion.
14     Q.    In point of fact, you don't know if they ever saw it.
15     Right?
16     A.    I don't know.  I can't say.
17     Q.    Do you recall ever personally telling City Council
18     that URS has come up with eight different alternatives, one
19     of which would solve the constructibility problem for the
20     price of a hundred to two hundred thousand dollars?
21     A.    I don't recall that.
22     Q.    Do you know if City Council was ever told by anyone
23     else, not yourself, because you don't remember doing it, do
24     you know if anyone ever told City Council this problem could
25     have been addressed for a hundred to two hundred thousand
```