IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* <br><br> vs. <br><br> CITY OF NEWARK, et al., *Defendants* <br><br> and <br><br> CITY OF NEWARK, *Third-Party Plaintiff* <br><br> vs. <br><br> DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | CASE NO. 04-0163-GMS |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Intervenor* | |

**APPENDIX OF DOCUMENTS IN SUPPORT OF
ANSWERING BRIEF OF PLAINTIFF
IN OPPOSITION TO CITY OF NEWARK DEFENDANTS'
MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL
OR REMITTITUR**

**Part 11**

POWELL, TRACHTMAN, LOGAN,
CARRLE & LOMBARDO, P.C.
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
*Attorneys for Plaintiff and Third Party
Defendant Donald M. Durkin
Contracting*

Dated: March 2, 2007

## TABLE OF CONTENTS

**Document**                                           **Page**

Selected Portions of the Trial Transcript......................................................A1

Selected Jury Instructions Discussed on October 4, 2006......................................A177

Selected Final Jury Instructions................................................................A182

Jury Verdict Form..............................................................................A193

Chart of City's Arguments Regarding Contract Damages in Its Rule 50a, Rule 50b
And Rule 59 Motions.............................................................................A199

Judge Sleet's Final Pre-Trial Form Order.......................................................A202

Trial Brief of the City of Newark Defendants...................................................A207

Court Order dated September 22, 2006...........................................................A217

Chart of City's Arguments Regarding Contract Damage Calculation During Trial....A237

Application and Certificate for Payment No. 23 (DUR9)..........................................A240

Selected Portions of the Contract (DUR60)......................................................A242

Selected Portions of the Complaint.............................................................A250

Chart of City's Cases Cited in Support of the Doctrine of
Constructive Termination.......................................................................A254

Itemized Statement of Damages (DUR68)..........................................................A255

Memorandum dated May 27, 2004 from
Solicitor Akin to Mayor and Council (DUR37)....................................................A256

Affidavit of Ronald Scott Killen...............................................................A259

Affidavit of Donald M. Durkin, Jr..............................................................A261

Affidavit of Michael D. Durkin.................................................................A267

Affidavit of James W. Durkin...................................................................A273

Selected Delaware Pattern Jury Instructions (2000).............................................A279

City's Communications with Durkin's Subcontractors (DUR13, DUR14, DUR 15, DUR16, DUR17, DUR18, DUR19)......................................................................A281

Chart of What Council Did Not Know When it Voted to Terminate Durkin............A318

Prospective Bidder Memorandum dated July 30, 2004 (DUR10).......................A320

Memorandum from Mayor Funk to City Manager Luft (DUR20).......................A321

Executive Session Meeting Minutes dated February 2, 2004 (DUR34)................A322

Selected Third Circuit Model Jury Instructions.............................................A325

```
 1   paid for.
 2              Let's talk about the contract claim, because as
 3   I kept saying, initially, that's what this case is really
 4   about.
 5              The Durkin lump-sum bid was $9,679,000. URS, as
 6   the engineering consultant to the city, had previously
 7   advised that a reasonable budget for the construction would
 8   be $13,753,000. At the date of termination, in February
 9   2004, Durkin was only about 70 percent complete with the
10   project, but they were already losing six million dollars.
11              You heard Jim Durkin testify that the company
12   expected an eight-percent profit on the project, with about
13   three million dollars remaining to be paid. The profit on
14   the unperformed portion of the contract would only be
15   $240,000. And they now ask you for 11.6 million in damages.
16              The actual outstanding amount owed to Durkin for
17   work completed at that time was approximately $275,000, you
18   heard from Ms. Houck, and I believe some others.
19              Now, the Court has instructed you that the city
20   breached the contract because of the notice issue. We can't
21   contest that issue. But the amount of the award is up to
22   you, whatever you feel justice requires. We submit that you
23   should return the parties to the position they would have
24   been in at that time, and award the Durkin company $275,000
25   for the work they completed prior to termination.
```

1   about midway through the book. And the first page of that
2   Article 11 is not there. It's at Page 32 of these general
3   conditions. It shows that this article is for change
4   orders. You will see that it only applies to a change of
5   the contract price by a written change order.
6          Paragraph 11.2 says that the contract price may
7   only be changed by a change order or by a written amendment.
8   And the contract price here is the lump sum of 9,679,000.
9          The written change order process outlined in
10  Article 11 obviously refers to new work added to the
11  project, not work performed to date under the agreement,
12  under the lump-sum contract price. That is obvious. The
13  contract simply does not provide for a rebid.
14         With regard to the post-termination costs and
15  expenses, how can these be related to this breach of
16  contract? There is nothing in the contract to address these
17  items in the case before you. The change order section,
18  Article 11, is not applicable here. There was no written
19  change order.
20         At Page 42 of the general conditions, there is a
21  Section 17.5, it does define some of these costs with regard
22  to litigation expenses, but only where reference is made in
23  the contract to, quote, claims, costs, losses and damages,
24  unquote. And the only place you find that is at Paragraph
25  15.4.3, which is at Page 41 of those general conditions.

1   That deals with termination for convenience by the owner,
2   which is not the case here.
3           15.4.3 also only deals with, quote, terminated
4   contracts with subcontractors, suppliers, and others, close
5   quote. Item 6 of the itemized damages relates to expenses
6   of this litigation, perhaps some claims with subcontractors.
7   But you have no way of knowing what that number is. And
8   even this Paragraph 15.4 does not apply to this case in any
9   event, because it deals with termination for convenience.
10          Now, the bottom line. Does any of this make
11  sense? Close to 4.5 million dollars in operating expenses
12  for two and a half years of a business that has no jobs?
13  No. 6, on their itemized damages, 1.7 million for litigation
14  expenses.
15          The greatest tool that you have going into the
16  deliberation room is your common sense. How is it possible
17  that a contractor can bid a project for $9,679,000, then
18  refuse to complete that project when he is losing 6 million
19  dollars so he has to be terminated, and then claim damages
20  of nearly 12 million dollars? Again, you heard Jim Durkin's
21  admission that the company had virtually no work at the time
22  they bid the reservoir project. You heard that the Durkin
23  Company has had no jobs since the reservoir project. Do you
24  believe they could not have secured some private jobs? They
25  admit they won't give personal guarantees to secure bonding

1  for public work. And they refused to come back to the site
2  when invited to do so and complete the Zone IV materials.
3           So with regard to your verdict, as to the breach
4  of contract claim, the only sum specifically owed under the
5  Durkin contract was the sum of approximately $275,000. We
6  ask that you award that to the Durkins as compensation.
7           As to the conversion claim, I submit you should
8  find for the defendants, as no tort claim has been proven
9  and there has been no damage, as to the civil rights claim,
10 again, that council acted in a reasonable manner. And we
11 ask that you return a verdict in favor of the defendants.
12          Again, I thank you for your patience, ladies and
13 gentlemen. And I am sure you will seek to do justice here.
14          Thank you.
15          THE COURT: Does any member of the jury need a
16 break before we hear from Mr. Green and then Mr. Logan's
17 rebuttal?
18          Everyone is okay. All right.
19          Mr. Green.
20          MR. GREEN: Thank you, Your Honor.
21          If it please the Court, members of the jury, I
22 am not sure if it is morning or afternoon. I will say both.
23          I, too, would like to sincerely thank you on
24 behalf of my client, URS, and my colleague, Kevin Guerke. I
25 apologize for him, he has another court appearance that he

```
 1              MS. PETRONE:  I think, to respond to the first
 2   part of what Mr. Logan said, we certainly did agree to the
 3   itemized statement of damages.  And we discussed that with
 4   Your Honor.  And that came in.  But as to the other
 5   documents, there were about five documents in the packet,
 6   and the other documents in that packet we hadn't seen
 7   before, we asked them, where were they, they didn't have
 8   Bates numbers on them.  And it never went any further.  That
 9   is the first part.
10              The second part is, I don't think we know what
11   it is otherwise.  I don't think it's appropriate to allow
12   them to explain it to the jury without having offered
13   evidence.
14              THE COURT:  You didn't discuss it in your
15   closing, I don't think.
16              MR. LOGAN:  I don't believe I made any specific
17   reference to it, Your Honor.  I kind of have a blur of what
18   I was saying.
19              THE COURT:  I don't recall a discussion about
20   that.
21              MR. LOGAN:  I don't, either, Your Honor.
22              THE COURT:  I guess it would be appropriate to
23   advise the jury that insofar as this particular question is
24   concerned, that the Court can offer no further clarification
25   and that you will have to rely on your recollection of the
```

```
 1   to.  You are saying it's linked to the sale, about which
 2   there was evidence or testimony.
 3              MR. LOGAN:  Yes, there was testimony to that
 4   effect, yes.
 5              THE COURT:  There was no argument intended to
 6   guide the jury as to the respective sides' view of the
 7   evidence.
 8              MR. LOGAN:  I agree, Your Honor.  I don't think
 9   I did, other than globally -- and I have to admit that I
10   only have a veiled recollection of what I said this morning.
11   But I think I pointed to the post-termination costs.  But I
12   don't believe I did any specifics as to what each one of
13   those meant.  I was relying on the testimony from the
14   witness as well.
15              THE COURT:  Ms. Petrone.
16              MS. PETRONE:  Your Honor, I am just refreshing
17   myself with my notes from when Mr. Durkin testified.  I
18   wrote that there was Items 7, 8 and 9, he testified, as Your
19   Honor noted, that the company had incurred costs, they had
20   to borrow or sell, operating expenses.  I don't recall and
21   my notes don't give me any further guidance as to any
22   specific testimony on that line item.
23              THE COURT:  While sitting here, I want to think
24   about this for a few more minutes, there is a Question 2:
25   Conversion.  Is the value of the property included in the
```

1   cost of materials itemized under No. 2, Cost of Materials?
2   We are talking about the same exhibit, 68. Again, the
3   question is, Conversion, is the value of the property -- let
4   me repeat the question so I am sure everybody has it. Is
5   the value of the property included in the cost of materials
6   itemized under No. 2? There is a -- cost of materials?
7               MR. LOGAN: The answer is yes, Your Honor, it
8   is.
9               MS. PETRONE: That is news to us.
10              MR. LOGAN: I think the answer is no from Mr.
11  Durkin back there, who is whispering to me. There is no
12  redundancy in those.
13              MR. COTTRELL: Your Honor, I understand the
14  answer that just came from Mr. Durkin. But I don't recall
15  that being in evidence in the case.
16              THE COURT: I don't know whether it was or
17  wasn't. I wasn't paying any attention to what Mr. Durkin
18  said. The evidence is closed. That's the question, with
19  due respect to you, Mr. Durkin.
20              MR. LOGAN: Excuse me, Your Honor.
21              (Counsel confer.)
22              MR. LOGAN: Your Honor, it would be a redundant
23  number. It would not be under materials as one would have
24  thought. It would be included within the subcontractor
25  amount.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* | |
| vs. | |
| CITY OF NEWARK, et al., *Defendants* | CASE NO. 04-0163-GMS |
| and | |
| CITY OF NEWARK, *Third-Party Plaintiff* | |
| vs. | |
| DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | |

## FINAL JURY INSTRUCTIONS

Dated: October ___, 2006

## TABLE OF CONTENTS

1.  ROLE OF THE JURY ............................................................................................. 4

2.  EVIDENCE DEFINED ........................................................................................... 5

3.  CONSIDERATION OF EVIDENCE ..................................................................... 6

4.  DIRECT AND CIRCUMSTANTIAL EVIDENCE ............................................... 7

5.  STATEMENTS OF COUNSEL ............................................................................. 8

6.  CREDIBILITY OF WITNESSES .......................................................................... 9

7.  EXPERT TESTIMONY ........................................................................................ 10

8.  NUMBER OF WITNESSES ................................................................................. 11

9.  BURDEN OF PROOF; PREPONDERANCE OF THE EVIDENCE ................. 12

10. CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY ......................................................................................................... 13

11. COUNTERCLAIM / THIRD PARTY CLAIMS ................................................. 14

12. EXISTENCE OF A BREACH OF CONTRACT ................................................ 15

13. DONALD M. DURKIN CONTRACTING, INC.'S RECOVERY FOR BREACH OF CONTRACT ................................................................................. 16

14. RECOVERY FOR BREACH OF CONTRACT REGARDING CONTRACT BETWEEN URS AND THE CITY ....................................................................... 17

15. BREACH OF CONTRACT BURDEN OF PROOF – GENERALLY ............... 18

16. SECTION 1983 – ELEMENTS OF CLAIM ....................................................... 19

17. SECTION 1983 – ACTION UNDER COLOR OF STATE LAW – ACTION UNDER COLOR OR STATE LAW IS NOT IN DISPUTE ................................ 20

18. SECTION 1983 – DEPRIVATION OF A FEDERAL RIGHT ........................... 21

19. SECTION 1983 – LIABILITY IN CONNECTION WITH THE ACTIONS OF ANOTHER – MUNICIPALITIES GENERAL INSTRUCTION .................. 22

20. SECTION 1983 – LIABILITY IN CONNECTION WITH THE ACTIONS OF ANOTHER – MUNICIPALITIES – CHOICE BY POLICYMAKING OFFICIAL ............................................................................................................. 23

21. SECTION 1983 – DAMAGES – COMPENSATORY DAMAGES ................... 24

22. SECTION 1983 – DAMAGES – NOMINAL DAMAGES ................................. 26

23. CONVERSION ..................................................................................................... 27

24. DAMAGES – BREACH OF CONTRACT FOR DURKIN M. CONTRACTING, INC. – GENERAL ..................................................................28

25. DAMAGES – BREACH OF CONTRACT FOR URS CORPORATION, INC. – GENERAL ..................................................................30

26. DAMAGES – BREACH OF CONTRACT – METHOD OF PAYMENT FOR INCOMPLETE WORK UNDER THE CONTRACT..................................................................31

27. CONSTRUCTION OF AMBIGUOUS TERMS – BREACH OF CONTRACT..................................................................32

28. DUTY TO MITIGATE DAMAGES – CONTRACT ..................................................................33

29. DEPOSITION – USE AS EVIDENCE ..................................................................34

30. DELIBERATION AND VERDICT ..................................................................35

31. CAUTIONARY INSTRUCTION - OFFSETS ..................................................................37

## 24. DAMAGES – BREACH OF CONTRACT FOR DURKIN M. CONTRACTING, INC. – GENERAL

The Court has determined that the City of Newark committed a breach of contract, Donald M. Durkin Contracting, Inc. is entitled to compensation in an amount that will place it in the same position it would have been if the contract had been properly performed. The measure of damages is the loss actually sustained as a result of the breach of the contract.

These damages may include, but are not limited to:

- Unpaid Contract balance

- Lost profits

- Loss revenue

- Loss of bonding capacity

- Loss of ability to conduct business

- Cost of demobilization of equipment and related expenses

- Loss of equipment equity due to turn back

- Cost of idle equipment fleet

- Cost of overhead

- Cost of business loans, including interest on loans

- All fees and charges of engineers or other professionals retained

- All attorneys' fees Donald M. Durkin Contracting, Inc is responsible for in this litigation (including those of its surety Federal Insurance Company)

- All professional and expert fees Donald M. Durkin Contracting, Inc is responsible for in this litigation (including those of its surety Federal Insurance Company)

- All court costs Donald M. Durkin Contracting, Inc. incurred in this litigation (including those of its surety Federal Insurance Company)

- All attorneys' fees Donald M. Durkin Contracting, Inc. is responsible for as a result of lawsuits commenced against it by its subcontractors as a result of the breach of contract

- All court costs Donald M. Durkin Contracting, Inc. incurred in lawsuits commenced against it by its subcontractors as a result of the breach of contract

- All fees and charges of engineers or other professionals retained by Donald M. Durkin Contracting, Inc. in lawsuits commenced against it by its subcontractors as a result of the breach of contract

- All surety Federal Insurance Company reimbursement obligations

- All claims, losses and damages incurred in settlement of terminated subcontractor and supplier agreements as a result of the breach of contract

- All other expenses incurred by Donald M. Durkin Contracting, Inc. as a result of the breach of contract

A182

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* <br><br> vs. <br><br> CITY OF NEWARK, et al., *Defendants* <br><br> and <br><br> CITY OF NEWARK, *Third-Party Plaintiff* <br><br> vs. <br><br> DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | CASE NO. 04-0163-GMS |

# FINAL JURY INSTRUCTIONS

Page 1 of 38

14. **SECTION 1983 – DEPRIVATION OF A FEDERAL RIGHT**

The second element of Donald M. Durkin Contracting, Inc. claim is that the City of Newark deprived it of a federal constitutional right.

The right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within both the 'liberty' and 'property' concepts of the Fifth and Fourteenth Amendments. Donald M. Durkin Contracting, Inc. alleges that the City of Newark has deprived it of this federal constitutional right.

15. **SECTION 1983 – LIABILITY IN CONNECTION WITH THE ACTIONS OF ANOTHER – MUNICIPALITIES GENERAL INSTRUCTION**

If you find that Donald M. Durkin Contracting, Inc. was deprived of right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference, the City of Newark is liable for that deprivation if Donald M. Durkin Contracting, Inc. proves by a preponderance of the evidence that the deprivation resulted from the City of Newark's official policy or custom – in other words, that the City of Newark's official policy or custom caused the deprivation.

It is not enough for Donald M. Durkin Contracting, Inc. to show that the City of Newark employed a person who violated Donald M. Durkin Contracting, Inc.'s rights. Donald M. Durkin Contracting, Inc. must show that the violation resulted from the City of Newark's official policy or custom. "Official policy or custom" includes any of the following:

- a policy statement or decision that is officially made by the City of Newark City Council or City Administration; or
- a custom that is a widespread, well-settled practice that constitutes a standard operating procedure of.

I will now proceed to give you more details on each of the ways in which Donald M. Durkin Contracting, Inc. may try to establish that an official policy or custom of the City of Newark caused the deprivation.

Page 19 of 38

16. **SECTION 1983 – LIABILITY IN CONNECTION WITH THE ACTIONS OF ANOTHER – MUNICIPALITIES – CHOICE BY POLICYMAKING OFFICIAL**

The City Council of the City of Newark is a policymaking entity whose actions represent a decision by the government itself. The same is true of an official or body to whom the City Council has given final policymaking authority: The actions of that official or body represent a decision by the government itself.

Thus, when the City Council or the City Administration makes a deliberate choice to follow a course of action, that choice represents an official policy. Through such a policy, the City Council or the City Administration may cause a violation of a federal right by:

- directing that the violation occur,
- authorizing the violation, or
- agreeing to a subordinate's decision to engage in the violation.

The City Council or City Administration may also cause a violation through failure to adopt a needed policy, but only if the City of Newark is deliberately indifferent to the fact that a violation of the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference is a highly predictable consequence of the failure to adopt a needed policy.

I will instruct you further on this in a moment.

I instruct you that the City Council and the City Administration are policymakers whose deliberate choices represent official policy. If you find that such an official policy was the cause of and the moving force behind the alleged violation of Donald M. Durkin

Page 20 of 38

**Contracting, Inc.'s, federal constitutional right then you have found that the City of Newark caused that violation.**