IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* <br><br> vs. <br><br> CITY OF NEWARK, et al., *Defendants* <br><br> and <br><br> CITY OF NEWARK, *Third-Party Plaintiff* <br><br> vs. <br><br> DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | CASE NO. 04-0163-GMS |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Intervenor* | |

APPENDIX OF DOCUMENTS IN SUPPORT OF
ANSWERING BRIEF OF PLAINTIFF
IN OPPOSITION TO CITY OF NEWARK DEFENDANTS'
MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL
OR REMITTITUR

Part 13

> POWELL, TRACHTMAN, LOGAN,
> CARRLE & LOMBARDO, P.C.
> Paul A. Logan
> Delaware Supreme Court ID #3339
> 475 Allendale Road, Suite 200
> King of Prussia, PA 19406
> Telephone: 610-354-9700
> Telefacsimile: 610-354-9760
> *Attorneys for Plaintiff and Third Party Defendant Donald M. Durkin Contracting*

Dated: March 2, 2007

## TABLE OF CONTENTS

**Document**                                                                                           **Page**

Selected Portions of the Trial Transcript..........................................................................A1

Selected Jury Instructions Discussed on October 4, 2006........................................A177

Selected Final Jury Instructions......................................................................................A182

Jury Verdict Form..............................................................................................................A193

Chart of City's Arguments Regarding Contract Damages in Its Rule 50a, Rule 50b
And Rule 59 Motions.........................................................................................................A199

Judge Sleet's Final Pre-Trial Form Order ....................................................................A202

Trial Brief of the City of Newark Defendants...............................................................A207

Court Order dated September 22, 2006..........................................................................A217

Chart of City's Arguments Regarding Contract Damage Calculation During Trial....A237

Application and Certificate for Payment No. 23 (DUR9)..............................................A240

Selected Portions of the Contract (DUR60)...................................................................A242

Selected Portions of the Complaint.................................................................................A250

Chart of City's Cases Cited in Support of the Doctrine of
Constructive Termination................................................................................................A254

Itemized Statement of Damages (DUR68)....................................................................A255

Memorandum dated May 27, 2004 from
Solicitor Akin to Mayor and Council (DUR37)..............................................................A256

Affidavit of Ronald Scott Killen.......................................................................................A259

Affidavit of Donald M. Durkin, Jr....................................................................................A261

Affidavit of Michael D. Durkin........................................................................................A267

Affidavit of James W. Durkin..........................................................................................A273

Selected Delaware Pattern Jury Instructions (2000)......................................................A279

City's Communications with Durkin's Subcontractors (DUR13, DUR14, DUR 15, DUR16, DUR17, DUR18, DUR19)……………………………………………….A281

Chart of What Council Did Not Know When it Voted to Terminate Durkin…………..A318

Prospective Bidder Memorandum dated July 30, 2004 (DUR10)…………………..A320

Memorandum from Mayor Funk to City Manager Luft (DUR20)…………………...A321

Executive Session Meeting Minutes dated February 2, 2004 (DUR34)…………...…..A322

Selected Third Circuit Model Jury Instructions………………………………………A325

such form that the statement can be read to the jury at the time the expert witness takes the stand[5];

(f) a list of all depositions, or portions thereof, to be read into evidence and statements of any objections thereto[6];

(g) an itemized statement of special damages;

(h) waivers of any claims or defenses that have been abandoned by any party;

(i) for a jury trial, each party shall provide the following:

(i) trial briefs except as otherwise ordered by the court[7];

---

[5] Only one expert witness on each subject for each party will be permitted to testify absent good cause shown. If more than one expert witness is listed, the subject matter of each expert's testimony shall be specified.

[6] If any party objects to the admissibility of any portion, both the name of the party objecting and the grounds shall be stated. Additionally, the parties shall be prepared to present to the court, at such time as directed to do so, a copy of all relevant portions of the deposition transcript to assist the court in ruling *in limine* on the objection. All irrelevant and redundant material including all colloquy between counsel shall be eliminated when the deposition is read at trial. If a video deposition is proposed to be used, opposing counsel must be so advised sufficiently before trial to permit any objections to be made and ruled on by the court and to allow objectionable material to be edited out of the film before trial. If good cause is shown as to why objections to portions of a video tape deposition could not be made sufficiently before trial to permit the court to rule, objections shall be handled by a procedure prescribed by the court in accordance with D.Del. LR 30.4(e). Video tape depositions shall otherwise be handled at trial in accordance with D.Del. LR 30.4(d).

[7] No party's trial brief shall exceed 15 pages without prior approval of the court. Trial briefs are intended to provide full and complete disclosure of the parties' respective theories of the case. Accordingly, each trial brief shall include statements of:
    (a) the nature of the case,
    (b) the contested facts the party expects the evidence will establish,
    (c) the party's theory of liability or defense based on those facts and the uncontested facts,
    (d) the party's theory of damages or other relief in the event liability is established, and
    (e) the party's theory of any anticipated motion for directed verdict.
The brief shall also include citations of authorities in support of each theory stated

3

  (ii) three sets of marked proposed jury instructions, verdict forms, and special interrogatories, if any[8]; and

  (iii) a list of the questions the party requests the court to ask prospective jurors in accordance with Fed.R.Civ.P. 47(a) and D.Del. LR 47.1(a)[9];

(j) for a non-jury trial, each party shall provide proposed *Findings of Fact and Conclusions of Law* in duplicate[10];

(k) a statement summarizing the history and status of settlement negotiations, indicating

---

in the brief. Any theory of liability or defense that is not expressed in a party's trial brief will be deemed waived.

[8] When this Order is filed, it shall be the responsibility of counsel for the plaintiff to file with the Clerk, in triplicate <u>and</u> on diskette, joint instructions <u>with</u> objections (i.e., the parties shall submit three separate, stapled copies of a single set of proposed jury instructions which shall include either side's objections to any given instruction along with their proposed instruction directly on the page following the instruction to which there is an objection). Prior to this submission, counsel must confer and make every reasonable effort to resolve objections and to submit agreed upon proposed jury instructions. The joint instructions shall contain a table of contents. Each proposed jury instruction shall carry a descriptive title. Each instruction shall be numbered in such a way as to identify which party is the proponent or whether it has been submitted jointly. All instructions, including objections, shall be in writing and include citations of supporting authorities. Failure to object may constitute waiver of any objection.

  At the time of trial, counsel for the plaintiff shall submit an unmarked original set of instructions, verdict sheet, and any special interrogatories to the court in triplicate; to be sent to the jury room after being read to the jury. Supplemental requests for instructions during the course of the trial or at the conclusion of the evidence will be granted solely as to those matters that cannot be reasonably anticipated at the time of presentation of the initial set of instructions.

[9] Special voir dire questions shall be filed in triplicate and on diskette along with this Order but shall otherwise be filed in accordance with D.Del. LR 47.1(a).

[10] These shall be separately stated in separately numbered paragraphs. Findings of Fact should contain a detailed listing of the relevant material facts the party intends to prove. They should not be in formal language, but should be in simple narrative form. Conclusions of Law should contain concise statements of the meaning or intent of the legal theories set forth by counsel.

whether further negotiations are ongoing and likely to be productive;

(l) a statement that each party has completed discovery, including the depositions of expert witnesses (unless the court has previously ordered otherwise). Absent good cause shown, no further discovery shall be permitted[11]; and

(m) motions *in limine*: **No party shall file more than ten (10) motions in limine without prior approval of the court. Briefs (opening, answering, and reply) on all such motions shall be due at the time of the filing of this Pretrial Order. Opening and answering briefs shall not exceed five (5) pages and reply briefs shall not exceed three (3) pages. The parties should submit an original and two (2) copies.**

(3) Trial of this case is expected to take [insert the number of days estimated at the Rule 16 conference and the assigned trial date] days.

(4) [Indicate the type of trial by placing an X in the appropriate box]

Jury ☐        Non-jury ☐

(5) The parties recommend that [indicate the number of jurors recommended] jurors be selected at the commencement of the trial.

(6) This Order will control the course of the trial and may not be amended except by consent of the parties and the court, or by order of the court to prevent manifest injustice.

(7) Possibility of settlement of this case was considered by the parties.

---

[11] If this is a case in which (contrary to the normal requirements) discovery has not been completed, this Order shall state what discovery remains to be completed by each party.

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC. | ) Civil Action No.: 04-0163 GMS |
| Plaintiff, | ) |
| vs. | ) |
| CITY OF NEWARK, HAROLD F. GODWIN, JOHN H. FARRELL, IV, JERRY CLIFTON, KARL G. KALBACHER, DAVID J. ATHEY, FRANK J. OSBORNE, JR., CHRISTINA REWA AND URS CORPORATION, | ) JURY TRIAL DEMANDED |
| Defendants, | ) |
| vs. | ) |
| FEDERAL INSURANCE COMPANY, | ) |
| Third-Party Defendant. | ) |
| CITY OF NEWARK, | ) |
| Third-Party Plaintiff, | ) |
| vs. | ) |
| URS CORPORATION, | ) |
| Third-Party Defendant. | ) |

**TRIAL BRIEF OF THE CITY OF NEWARK DEFENDANTS**

COMES NOW Defendants City of Newark ("Newark"), Harold F. Godwin, John H. Farrell, IV, Jerry Clifton, Karl G. Kalbacher, David J. Athey, Frank J. Osborne, Jr. and Christina Rewa (collectively "City of Newark Defendants") and offer the following Trial Brief.

A207

A.  **Nature of the Case**

This is a breach of contract action.

On April 30, 2002 Donald M. Durkin Contracting, Inc. ("Durkin") entered into a construction contract (the "Contract") in the amount of $9,679,000 with the City of Newark (the "City") for the construction of a water supply reservoir in Newark, Delaware (the "Reservoir"). The Reservoir was designed by the engineering firm URS Corporation ("URS"). Federal Insurance Company ("Federal") supplied the performance bond required by the Contract.

In September, 2003 Durkin ceased working on certain aspects of the Reservoir claiming safety and constructability concerns. Durkin said it was impossible to build the reservoir as it was designed. As a result, Durkin's Contract was terminated in February, 2004. The City hired a replacement contractor (George & Lynch) which finished construction in early-2006 as per the original URS design.

Durkin filed its *Complaint* on March 16, 2004 (D.I. #1). There are seven counts based upon a civil rights violation, torts and breach of contract against nine separate Defendants: the City, its Mayor and six City Council members, and URS. The City filed a *Counterclaim* and *Third-Party Claim* naming as Third-Party Defendant Federal, Durkin's surety for its Contract performance (D.I. #7).

Durkin's claims directly against URS were dismissed by voluntary stipulation (D.I. # 93), however, the City filed a *Third-Party Complaint* against URS on the basis of contribution and indemnification (D.I. #98). URS' *Motion to Dismiss* (D.I. #100) was denied (D.I. #132).

Plaintiff's *Motion for Preliminary and Permanent Injunctive Relief and for Declaratory Judgment* (D.I. #5) was denied (D.I. #94). Plaintiff's *Motion for Partial Summary Judgment* (D.I. #36) was denied (D.I. #63). Federal's *Motion for Summary Judgment* (D.I. #122) was

denied (D.I. #132). Federal's *Motion for Reconsideration* is still pending.

The City's termination of its Contract with Durkin was appropriate and procedurally proper. As set forth in the Contract, the City is entitled to damages from Durkin for the costs to repair completed work and costs to complete the Reservoir. The City is also entitled to damages from Federal by virtue of its obligation under the performance bond.

Should Durkin prevail on any claim against the City, the City is entitled to contribution and/or indemnification from URS as the Reservoir designer and construction manager, whose advice the City relied upon.

URS is also liable to the City for costs spent to defend the claims by virtue of the contract between URS and the City.

### B. Contested Facts The Evidence Will Establish

Durkin was in breach of contract for its refusal to proceed with Zone IV work.

The City properly terminated Durkin's contract.

The City incurred costs of $4,958,017 to complete the project.

The project was constructable as designed and has now been built as designed.

The project was constructed as Durkin's contract required.

The erosion mitigation techniques utilized by the replacement contractor were not extraordinary means or methods of construction.

The reservoir was safe during construction (should City's Motion in Limine on that be denied).

The reservoir is safe now (should City's Motion in Limine be denied).

Durkin is liable to the City in the amount of total damages of $6,533,956.

The City followed the Bond procedures.

Federal is liable to the City in the amount of total damages of $6,533,956.

The City relied on URS in terminating Durkin, relying on the advise of URS as to whether the Reservoir could be constructed as designed and whether Durkin should be terminated.

URS is liable to the City for defense of this lawsuit as per its contract with the City, which projected costs are approximately $450,000.

If City is liable to Durkin, URS is liable to City for same amount.

C.      **Theories of Liability and Defense**

**Liability:**

As to Durkin, it refused to honor its contract under the false assertion that the reservoir could not be built as designed. *See, Ridley Inv. Co. v. Croll*, Del. Supr., 192 A.2d 925, 926-27 (1963); *Hudson v. D&V Mason Contractors, Inc.*, Del. Super., 252 A.2d 166, 169-70 (1969); *Emmett S. Hickman Co. v. Emelio Capaldi Developer, Inc.*, Del. Super., 251 A.2d 571, 572-73 (1969).

As to Federal, it refused to honor its bond asserting that Durkin was correct in claiming that the reservoir could not be built as designed. *See, Kent Cty. Levy Court v. International Underwriters, Inc.*, 1985 Del. Ch. LEXIS 480, *9 (Del. Ch. Ct. July 21, 1985); *Triple C Railcar Service, Inc. v. City of Wilmington*, Del. Supr., 630 A.2d 629, 633 (1993); *Rumsey Elec. Co. v. University of Delaware*, Del. Supr., 358 A.2d 712, 714 (1976); *Ridley Inv. Co. v. Croll*, Del. Supr., 192 A.2d 925, 926-27 (1963).

As to URS, under its contract with the City, it is liable to the City for costs of defending this matter under an indemnification clause in the contract and, should there be any judgment against the City in favor of Durkin, then URS would also be liable to indemnify the City for

those monies under a breach of contract theory and implied indemnification. *See, Pike Creek Chiropractic Ctr., P.A. v. Robinson*, 637 A.2d 418, 420 (Del. Supr. 1994); *Ridley Inv. Co. v. Croll*, Del. Supr., 192 A.2d 925, 926-27 (1963); *Diamond State Tel. Co. v. University of Delaware*, 269 A.2d 52, 56 (Del. Supr. 1970).

**Defense:**

The City's defenses to the Durkin Complaint:

<u>As to Count I</u> - Violation of Civil Rights: The contract creates no protected property interest in the continuation of the contract and, therefore, Durkin has no protected property interest with regards to the expectation of receiving the continued benefits under same. *See, Linan-Faye Construction Co., Inc. v. Housing Authority of the City of Camden*, 49 F.3d 915 (3rd Cir. 1995); *Slawik v. State*, 480 A.2d 636, 641-42 (Del. Super. 1984); *Delaware State Troopers Lodge, etc. v. O'Rourke*, 403 A.2d 1109, 1111 (Del. Ch. 1979).

<u>As to Count II</u> - Interference with Contract: Durkin cannot prove that there has been an actual breach of a valid and enforceable contract; nor that the alleged interference is the cause of the speculative damages asserted by Durkin; and the City's lawful termination of the Durkin contract is not a cognizable basis for an interference claim. *See, Ariba, Inc. v. Elec. Data Sys. Corp.*, 2003 Del. Super. LEXIS 82, *17 (Del. Super. Ct. march 7, 2003); *Nye v. Univ. of Del.*, 897 A.2d 768, (2006); *De Bonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. Supr. 1981); *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1058 (Del. Ch. 1984); Restatement of Torts (Second) § 767.

<u>As to Count III</u> - Defamation: The truth as to all statements allegedly defamatory and no reliable evidence of any causal connection between any statement and the speculative damages asserted by Durkin. *Gannett Co., Inc. v. Kanaga*, Del. Supr., 750 A.2d 1174, 1183-90 and 1191-

97 (2000)(Chandler, Chancellor, dissenting); *Ramunno v. Cawley*, Del. Supr., 705 A.2d 1029, 1035-36 (1998); *Riley v. Moyed*, Del. Supr., 529 A.2d 248, 253 (1987); *Gannett Co. v. Re*, Del. Supr., 496 A.2d 553, 557 (1985); *Ramada Inns, Inc. v. Dow Jones & Co.*, Del. Super., 543 A.2d 313, 317-18 (1987); *Kanaga v. Gannett Co., Inc.*, Del. Supr., 687 A.2d 173, 183 (1996).

<u>As to Count IV</u> - Conversion: The Defendants are entitled to the goods at the site upon Durkin's termination as per the Contract, and the City either did not interfere with Durkin's possession of certain equipment or had previously paid for the equipment or materials and, therefore, had superior title to those items. *See, Baker v. Spruance*, 28 Del. 140 (Del. Super. Ct. 1914); Restatement 2nd (Second) of Torts § 272; *International Business Machs. Corp. v. Comdisco, Inc.*, 1993 Del. Super. LEXIS 183, * (Del. Super. Ct. June 30, 1993).

<u>As to Count V</u> - (A) Fraud: The Defendants made no false representations to Durkin, nor did they posses the requisite knowledge of the alleged falsity of any statements nor the intent to mislead and, as a matter of law, Plaintiff has failed to allege with specificity the alleged misrepresentations or false statements upon which it relied. Furthermore, failure to perform a future obligation or promise is not actionable fraud. Lastly, Durkin is obligated to read and understand the Contract. *See, Gaffin v. Teledyne, Inc.*, Del. Supr., 611 A.2d 467, 472 (1992); *Stephenson v. Capano Dev., Inc.*, Del. Supr., 462 A.2d 1069, 1074 (1983); *Harmon v. Masoneilan Intern, Inc.*, Del. Supr., 442 A.2d 487, 499 (1982); *Scott-Douglas Corp. v. Greyhound Corp.*, Del. Super., 304 A.2d 309, 317 (1973)(applying Michigan law); *Twin Coach Co. v. Chance Vought Aircraft, Inc.*, Del. Super., 163 A.2d 278, 283-84 (1960); *Wolf v. Magness Constr. Co.*, 1995 Del. Ch. LEXIS 122, *6-7 (Del. Ch. Ct. Sept. 11, 1995).

(B) Misrepresentation: The Defendants made no false representations to Durkin, any alleged failure to perform a future obligation or promise is not actionable

misrepresentation, and the Defendants did not intend to mislead nor was Durkin justified in foregoing any further investigation into the terms of the proposed agreement or contractual relationship. *Mark Fox Group, Inc. v. E.I. Dupont De Nemours & Co.*, 2003 Del. Ch. LEXIS 71, *20 (Del. Ch. Ct. July 2, 2003); *Scott-Douglas Corp. v. Greyhound Corp.*, Del. Super., 304 A.2d 309, 317 (1973)(applying Michigan law); *Wolf v. Magness Constr. Co.*, 1995 Del. Ch. LEXIS 122, *4 - 7 (Del. Ch. Ct. Sept. 11, 1995); *In re Brandywine Volkswagen, Ltd.*, 306 A.2d 24, 27-28 (Del. Super. Ct. 1973); Omar Oil & Gas Co. v. Mackenzie Oil Co., 33 Del. 259, 285 (Del. Supr. Ct. 1926).

As to Count VI - Conspiracy: Durkin has no sustainable underlying claim which is a pre-requisite to a conspiracy claim and, as a matter of law, Plaintiff has failed to meet its burden. See, *Local No. 98, IBEW v. First USA*, 2001 Del. Super. LEXIS 427, *4 (Del. Super. Ct. October 31, 2001); *Connolly v. Labowitz*, 519 A.2d 138, 143 (Del. Super. Ct. 1986).

As to Count V - Breach of Contract: Defendants did not breach the relevant contract in that they materially followed the terms of said contract, and Durkin's refusal to perform gave the Defendants the right to suspend further performance and terminate Durkin. *Emmett S. Hickman Co. v. Emelio Capaldi Developer, Inc.*, Del. Super., 251 A.2d 571, 572-73 (1969); *Ridley Inv. Co. v. Croll*, Del. Supr., 192 A.2d 925, 926-27 (1963); *Hudson v. D&V Mason Contractors, Inc.*, Del. Super., 252 A.2d 166, 169-70 (1969); *Wells v. Lee Builders, Inc.*, Del. Supr. 99 A.2d 620 (1953).

**Liability, Generally:**

As to individual city defendants and the City, there is immunity under the Delaware Tort Claims Act, as well as the Doctrine of Qualified Immunity. *See,* 10 *Del. C.* §§ 4010-4013; *Dale v. Town of Elsmere*, 702 A.2d 1219, 1223 (Del. Supr. 1997); Walls v. Rees, 569 A.2d 1161,

1165-66 (Del. Supr. 1988); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

As to the damages sought by Durkin, punitives are inappropriate on the Tort claims as the City has statutory immunity from such liability, and Durkin has failed to allege, and further cannot show, that the individual defendants acted in a willful, wanton or malicious manner. *See*, 10 *Del. C.* §§ 4011 and 4012; *Schueler v. Martin*, 674 A.2d 882 (Del. Super. 1996); *Dale v. Town of Elsmere*, 702 A.2d 1219, 1223 (Del. Supr. 1997); *Izquierdo v. Sills*, 2004 Del. Ch. LEXIS 142 *28 (Del. Ch. Ct. June 29, 2004).

If Durkin were to prevail on its breach of contract claim, the only viable claim in this action, it can only recover its lost profit on the unperformed portion of the Contract. *J.J. White, Inc. v. Metropolitan Merchandise Mart*, 107 A.2d 892 (Del. Super. 1954); *Genencor International, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 11 (Del. 2000); Expectation damages or termination for convenience damages provisions govern, and Durkin is not entitled to other alleged economic loss. *Eisenmann Corp. v. General. Motors Corp.*, 2000 WL 140781 at *14 (Del.Super.), *Stoltz Realty Co. v. Paul*, 1995 WL 654152 at *10 (Del. Super.).

<u>The City's defenses to URS' counterclaim for fees</u>. A portion of the fees sought by URS were incurred in defending its own interests in this litigation and, therefore, not recoverable from the Defendants. *See, Pike Creek Chiropractic Ctr., P.A. v. Robinson*, 637 A.2d 418, 422 (Del. Supr. 1994). The remaining portion of its fee claim concerns added work which resulted from Durkin's breach of contract and URS' defense of its design plan. URS would be entitled to that sum only if awarded to the City in its counter-claim against Durkin because Durkin's prevailing in its claims against the City necessitates a finding that the URS design was faulty or that the advise relied upon by the City was the cause of Durkin's damages, thus entitling the City to indemnification from URS as a matter of indemnification or breach of contract

### D. Damages

The City's damages against Durkin to complete the Contract with George & Lynch, as well as other damages incurred as a result of Durkin's breach (and Federal's breach) are contained in the George Sarris' City of Newark Damages summary and attorneys' fees for claim against URS are also shown there.

The City is entitled to the damages outlined in the contract in the event of termination. In Delaware the proper measure of damages for breach of contract is generally the loss actually sustained as a result of the breach. *J.J. White, Inc. v. Metropolitan Merchandise Mart*, 107 A.2d 892 (Del. Super. 1954). The remedy seeks to give the nonbreaching the party the benefit of its bargain by putting that party in the position it would have been **but for** the breach. *Genencor International, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 11 (Del. 2000) (citing Restatement (Second) of Contracts § 344(a) (1981) (defining "expectation interest" as a party's interest in "having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed.")).

### E. Anticipated Motions for Directed Verdict

As to Durkin's tort claims, the City anticipates filing a Motion for Directed Verdict for failure to meet the burden of proof.

As to Durkin claims against individual defendants, the City anticipates filing a Motion for Directed Verdict based on the Delaware Tort Immunity Act and their qualified immunity as public officials.

TIGHE COTTRELL & LOGAN, P.A.

/s/ Paul Cottrell
Paul Cottrell, Esquire (# 2391)
Victoria Petrone, Esquire (# 4210)
One Customs House
704 North King Street, Suite 500
P.O. Box 1031
Wilmington, DE 19899 - 1031
tel. 302.658.6400
fax. 302.658.9836
e-mail: p.cottrell@lawtcl.com
*Counsel for the City of Newark, its Mayor and Council*

Dated: August 20, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., <br><br> Plaintiff <br><br> v. <br><br> CITY OF NEWARK, et al., <br><br> Defendants <br><br> and <br><br> CITY OF NEWARK, et al., <br><br> Third-Party Plaintiff <br><br> v. <br><br> DONALD M. DURKIN CONTRACTING, INC., AND FEDERAL INSURANCE COMPANY, <br><br> Third-Party Defendants | C.A. No. 04-163 GMS |

## MEMORANDUM

I. **INTRODUCTION**

Presently before the court is Federal Insurance Company's motion for reconsideration (D.I. 136) of the court's April 5, 2006 Order denying summary judgment. Also pending are several related motions in limine (D.I. 163, 165, 190). For the reasons that follow, the court will grant the motion for reconsideration and will reconsider, *sua sponte*, related aspects of its September 2, 2004 Order that denied the plaintiff's motion

for partial summary judgment. In doing so, the court grants summary judgment to Federal Insurance Company ("Federal"). Durkin's motion for partial summary judgment is granted in part and denied in part.

## II. FACTUAL BACKGROUND

In the summer of 2000, the City of Newark ("City") contracted with URS Corporation ("URS") "for professional services related to the design and construction administration" of a water-supply reservoir. (D.I. 98 ¶ 1.) In April of 2002, the City also contracted with Durkin to perform the actual construction (hereinafter, the "Construction Contract"). Federal provided a Performance Bond (the "Bond") to the City in connection with work to be performed by Durkin. Everything was proceeding more-or-less as expected until late 2003, when Durkin claims to have discovered defects in URS' design. From there, the relationship among the parties deteriorated, and the City eventually terminated Durkin by a letter dated February 3, 2004. In response, Durkin initiated the present action on March 16, 2004, naming as defendants the City, the mayor of Newark, certain members of the Newark City Council, and URS.

With respect to terminating Durkin, the City had contractual obligations under both the Bond and the Construction Contract. Under the terms of Section 15.2 of the Construction Contract between the City and Durkin, the City was required to provide Durkin and its surety, Federal, with seven days written notice of its intention to terminate Durkin for default. (D.I. 122, Ex. A, Att. B, Sec. 15.2.) The Bond also set forth a series of procedural steps that the City had to take before Federal became obligated under the Performance Bond:

2

>   If there is no Owner Default, the Surety's obligation under the Bond shall arise after:
>
> 3.1  The Owner has notified the Contractor and the Surety ... that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and
>
> 3.2  The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1 ....

(D.I. 122, Ex. A, Att. A.)

The City claims that its letter of November 21, 2003 satisfied the seven-day notice requirement of Section 15.2 of the Construction Contract, as well as its obligation under Paragraph 3.1 of the Bond. The pertinent portion of that letter reads:

> On behalf of the City of Newark, Delaware, I am writing to inform you that we are now considering declaring Donald M. Durkin Contracting, Inc. (DMD) in default of Newark Municipal Contract No. 02-02, pertaining to Construction of a Municipal Water Supply Reservoir. This precautionary letter has become necessary following DMD's failure to present a response to a means and methods for continuation of the project in accordance with our contract.

(D.I. 122, Ex. A, Att. C.)

After the November 21st letter, Durkin, Federal and the City had a series of communications and interactions, which failed to resolve the ongoing disputes. Finally, the City voted to terminate Durkin. It is undisputed that the City terminated Durkin via a letter dated February 3, 2004, which stated:

3

> Pursuant to the terms of the Contract and the Construction Performance Bond, the City of Newark declares a Contractor default and hereby formally terminates Donald M. Durkin Contracting, Inc.'s ("Durkin") right to complete the contract for the Construction of the City of Newark Water Supply Reservoir. The termination is for cause due to Durkin's refusal to complete the Work. This Default has been declared after notifying both the Surety and Durkin and attending a conference with the Surety and Durkin as the Bond requires.

(D.I. 122, Ex. A, Att. F.)

The City of Newark sent another letter to Durkin and Federal, on February 4, 2004, offering to extend the effective date of termination for an additional seven days.

### III. PROCEDURAL BACKGROUND

Durkin moved for partial summary judgment on June 29, 2004 (D.I. 36). On September 2, 2004, the court issued an Order (D.I. 63) denying Durkin's motion for partial summary judgment (the "September 2nd Order"). On March 14, 2006, Federal filed a motion for summary judgment (D.I. 122). On March 22-23, 2006, Ms. Carol Houck was deposed as the 30(b)(6) designee of the City. On March 24, 2006, the City filed its Answer to Federal's motion for summary judgment (D.I. 126). Ms. Houck's deposition continued on March 28, 2006, and again on March 30, 2006. On March 31, 2006, Federal filed a Reply Brief to the City's March 24th Answer, relying for the first time on testimony from Ms. Houck's March 28th deposition. On April 5, 2006, the court issued a Memorandum and Order (D.I. 132) denying Federal's motion for summary judgment (the "April 5th Order"). On April 17, 2006, Federal filed a motion for reconsideration (D.I. 136) of the court's April 5th Order. Four days after Federal filed its motion for reconsideration, which expressly relies in part on the deposition testimony of Ms. Houck, Ms. Houck executed an errata sheet for her March 23rd deposition,