IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* <br><br> vs. <br><br> CITY OF NEWARK, et al., *Defendants* <br><br> and <br><br> CITY OF NEWARK, *Third-Party Plaintiff* <br><br> vs. <br><br> DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | CASE NO. 04-0163-GMS |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Intervenor* | |

APPENDIX OF DOCUMENTS IN SUPPORT OF
ANSWERING BRIEF OF PLAINTIFF
IN OPPOSITION TO CITY OF NEWARK DEFENDANTS'
MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL
OR REMITTITUR

Part 14

POWELL, TRACHTMAN, LOGAN,
CARRLE & LOMBARDO, P.C.
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
*Attorneys for Plaintiff and Third Party
Defendant Donald M. Durkin
Contracting*

Dated: March 2, 2007

## TABLE OF CONTENTS

**Document**                                                                               **Page**

Selected Portions of the Trial Transcript................................................................A1

Selected Jury Instructions Discussed on October 4, 2006...................................A177

Selected Final Jury Instructions..........................................................................A182

Jury Verdict Form...............................................................................................A193

Chart of City's Arguments Regarding Contract Damages in Its Rule 50a, Rule 50b
And Rule 59 Motions...........................................................................................A199

Judge Sleet's Final Pre-Trial Form Order .........................................................A202

Trial Brief of the City of Newark Defendants......................................................A207

Court Order dated September 22, 2006..............................................................A217

Chart of City's Arguments Regarding Contract Damage Calculation During Trial....A237

Application and Certificate for Payment No. 23 (DUR9)...................................A240

Selected Portions of the Contract (DUR60)........................................................A242

Selected Portions of the Complaint.....................................................................A250

Chart of City's Cases Cited in Support of the Doctrine of
Constructive Termination....................................................................................A254

Itemized Statement of Damages (DUR68)..........................................................A255

Memorandum dated May 27, 2004 from
Solicitor Akin to Mayor and Council (DUR37)...................................................A256

Affidavit of Ronald Scott Killen..........................................................................A259

Affidavit of Donald M. Durkin, Jr......................................................................A261

Affidavit of Michael D. Durkin...........................................................................A267

Affidavit of James W. Durkin..............................................................................A273

Selected Delaware Pattern Jury Instructions (2000)..........................................A279

City's Communications with Durkin's Subcontractors (DUR13, DUR14, DUR 15, DUR16, DUR17, DUR18, DUR19)……………………………………………………..A281

Chart of What Council Did Not Know When it Voted to Terminate Durkin………...A318

Prospective Bidder Memorandum dated July 30, 2004 (DUR10)……………………A320

Memorandum from Mayor Funk to City Manager Luft (DUR20)……………….…..A321

Executive Session Meeting Minutes dated February 2, 2004 (DUR34)………....…..A322

Selected Third Circuit Model Jury Instructions………………………………………A325

"clarifying" statements she made under oath. On May 2, 2006, Ms. Houck executed an errata sheet for her March 28th deposition, further "clarifying" statements made under oath. On May 3, 2006, the City filed its Answer to Federal's Motion for Reconsideration, in which it relied upon the errata sheets to rebut Federal's position.

In conjunction with the pretrial conference held before the court on September 5, 2006, Durkin and Federal filed motions in limine (D.I. 163, 165, 190), which have helped to bring into sharper focus the issues raised in the previous motions for summary judgment.

## IV.   STANDARDS OF REVIEW

### A. Exclusion of Evidence

A court has broad discretion to admit or exclude evidence under the Federal Rules of Evidence. *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 97 (3d Cir. 1983). Motions to exclude evidence are committed to the court's discretion. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994) (on a motion to exclude proffered expert testimony, the trial court's inquiry is a flexible one, and its decision to admit or exclude expert testimony is reviewed under an "abuse of discretion" standard) (internal citations omitted). "[W]hen the district court's exclusionary evidentiary rulings with respect to scientific opinion testimony will result in a summary or directed judgment," the Court of Appeals will give those rulings "a 'hard look' to determine if a district court has abused its discretion in excluding evidence as unreliable." *Id.* at 750.

### B. Reconsideration

As a general rule, motions for reconsideration should be granted only "sparingly." *Tristrata Tech., Inc. v. ICN Pharms., Inc.*, 313 F. Supp. 2d 405, 407 (D. Del. 2004); *Karr*

5

*v. Castle*, 768 F. Supp. 1087, 1090 (D. Del. 1991). In this district, these types of motions are granted only if it appears that the court has patently misunderstood a party, has made a decision outside the adversarial issues presented by the parties, or has made an error not of reasoning, but of apprehension. *See, e.g., Shering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998); *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990) (citing *Above the Belt, Inc. v. Mel Bonhannan Roofing, Inc.*, 99 F.R.D. 99 (E.D. Va. 1983)); *see also Karr*, 768 F. Supp. at 1090 (citing same). Motions for reconsideration should not be used to rehash arguments already briefed. *See Quaker Alloy Casting v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) ("This Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure."). However, a court should reconsider a prior decision if it overlooked facts or precedent that reasonably would have altered the result. *Weissman v. Fruchtman*, 124 F.R.D. 559, 560 (S.D.N.Y. 1989).

A court may grant a motion for reconsideration "if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

### C. Summary Judgment

A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Biener v. Calio*, 361 F.3d 206 (3d Cir. 2004). In reviewing summary judgment decisions, the Third Circuit

views all evidence and draws all inferences in the light most favorable to the non-movant, affirming if no reasonable jury could find for the non-movant. *See Whiteland Woods, L.P. v. Twp. of West Whiteland*, 193 F.3d 177, 180 (3d Cir.1999). Thus, a trial court should only grant summary judgment if it determines that no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

If a moving party has demonstrated the absence of a genuine issue of material fact–meaning that no reasonable jury could find in the nonmoving party's favor based on the record as a whole–concerns regarding the credibility of witnesses cannot defeat summary judgment. Instead, the nonmoving party must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Liberty Lobby*, 477 U.S. at 256-57, 106 S.Ct. at 2514 (citation omitted). Thus, summary judgment is particularly appropriate where, notwithstanding issues of credibility, the nonmoving party has presented no evidence or inferences that would allow a reasonable mind to rule in its favor. In this situation, it may be said that the record as a whole points in one direction and the dispute is not "genuine." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), 106 S.Ct. 1348, 1355-56 (1986).

## V. DISCUSSION

### A. Motions In Limine

1. Federal's Motion In Limine to Exclude the Deposition Errata Sheets of Carol Houck

Federal moves to exclude from admission into evidence at trial the errata sheets for the deposition of Ms. Carol Houck, the City's designated 30(b)(6) witness. Federal

7

argues that the errata sheets provide a narrative substitute for Ms. Houck's sworn testimony and are, therefore, an attempt on the part of the City to create a sham fact issue. Specifically, Federal contends that Ms. Houck admitted in her March 28th deposition that the November 21st letter from the City to Durkin and Federal did not constitute notice under the terms of the Construction Contract. In her May 2nd errata sheet, Ms. Houck writes: "my reply on line 9 is incorrect if it suggests that the November 21, 2003 letter was not the seven-day notice letter."

In response, the City argues that Ms. Houck was deposed over four days "in a random and confusing manner...." In arguing that Ms. Houck's errata sheet clarifications were appropriate, the City quotes from Ms. Houck's errata sheet regarding her third day of testimony, in which she states:

> Once again during my deposition there were repeated references to various exhibits, out of order and with, I believe, the intent to confuse. I have now had the opportunity to review the deposition and further clarify that it is my belief that the letter of November 21, 2003 (Exhibit 20) served to ... provide notice of Default and termination to both the Surety (Bond) and Durkin (Contract) ...

(D.I. 137, Ex. A, Page 2.)

Corrections to deposition testimony are governed by Rule 30(e) of the Federal Rules of Civil Procedure. Rule 30(e) corrections are treated as affidavits. *Burns v. Board of County Comm'rs of Jackson County*, 330 F.3d 1275, 1282 (10th Cir. 2003). In *Franks v. Nimmo*, the Tenth Circuit set forth a test for analyzing whether a party's affidavit constitutes an attempt to create sham issues of fact. 796 F.2d 1230 (10th Cir. 1986)). Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during her earlier testimony, whether the affiant had access to the

pertinent evidence at the time of her earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain. *Franks*, 796 F.2d at 1237 (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1364-65 (8th Cir. 1983); *Perma Research & Dev. Co. v. The Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).

Here, Ms. Houck's earlier testimony occurred during a deposition, at which counsel for both the City and Federal were present and able to question the witness. Ms. Houck was not just a fact witness testifying on her personal knowledge; she was also the City's 30(b)(6) designee, and as such, had an affirmative obligation to be prepared on the noticed topics so that she could give complete, knowledgeable, and binding answers on behalf of the party. *See Ierardi v. Lorillard, Inc.*, Civ. A. No. 90-7049, 1991 WL 158911, at *1 (E.D. Pa. Aug. 3, 1991). Ms. Houck's corrections were not based on new evidence, but concerned documents and actions about which she was obviously well acquainted. In her May 2nd errata sheet, Ms. Houck does take issue with the manner in which she was deposed and states that she felt that counsel intended to confuse her. Notably, however, she stops short of saying she was in fact confused. Instead, Ms. Houck, after further review of her testimony, "clarifies" her answers by providing a substitute narrative for an appreciable portion of her deposition. The court can find no indication of confusion in the deposition transcript. In addition, it does not appear that Ms. Houck's attorney recognized any either. There is nothing in the record that suggests any attempt to rehabilitate Ms. Houck during, or immediately after the deposition, or

9

otherwise clarify her statements until after Federal filed its motion for reconsideration.[1] Moreover, not only do Ms. Houck's errata sheet "clarifications" alter her answers on key issues in the case, they posit alternative theories and defenses that the City now appears to be preparing to advance at trial—an issue that the court will address below in a related motion in limine.

The court recognizes that Fed. R. Civ. P. 30(e) allows a deponent to make changes to deposition testimony in form or substance. Nevertheless, the court finds that Ms. Houck's errata sheets exceed the scope of the type of revisions contemplated by the Rule and serve only to improperly alter what was testified under oath. As has been aptly acknowledged by the Tenth Circuit, a deposition is not a take home exam. *See Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 (10th Cir. 2002) (quoting *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992)). The errata sheet "clarifications" in this case are akin to a student who takes her in-class examination home, but submits new answers only after realizing a month later that the import of her original answers could possibly result in a failing grade. The court is troubled by the timing of Ms. Houck's errata sheets as well as their use in the City's responsive briefing on Federal's motion for reconsideration. Nor can the court ignore the fact that Ms. Houck was the City's 30(b)(6) designee, intimately familiar with the facts and issues in this case. Accordingly, the court holds that the errata sheets constitute a sham fact issue under *Franks* and, as such, the

---

[1] In *Franks*, the Tenth Circuit also found noteworthy the timing of the disputed affidavit in concluding that the conflict between the earlier testimony and the affidavit raised only a sham issue. There, it was offered only after summary judgment had been granted against the party offering the conflicting affidavit. *Franks*, 796 F.2d at 1237.

10

errata sheets shall not be admitted as evidence at trial.

    2. Durkin's Motion Regarding the Judicial Admission of the City of Newark Providing Prior Written Notice of Intent to Terminate the Contract

A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding. *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., Inc.*, 976 F.2d 58, 61 (1st Cir. 1992) (quoting *Bellefonte Re Insurance Co. v. Argonaut Insurance Co.*, 757 F.2d 523, 528 (2d Cir.1985)). If factual matters in issue have been judicially admitted, they are binding on the tendering party. *See, e.g., Parilla v. IAP Worldwide Services, VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) (internal citations omitted). An admission in a pleading is a judicial admission, which is binding on the litigant. *See, e.g., Consol. Rail Corp. v. Providence & Worcester Co.*, 540 F. Supp. 1210, 1220 n.12 (D. Del. 1982) (citing *Giannone v. United States Steel Corp.*, 238 F.2d 544, 547 (3d Cir. 1956)).

With this principle in mind, Durkin moves in limine to preclude the City from arguing or attempting to present any evidence that controverts the City's prior contentions in pleadings that its November 21, 2003 letter from Carl Luft to Durkin and Federal represented the required seven-day written notice to Durkin of the City's intention to terminate the Construction Contract. Durkin contends that the City has maintained throughout this litigation that the November 21st letter gave written notice of its intent to terminate Durkin as required by the Construction Contract. Durkin points to the City's Answer, Counterclaim, and responsive briefs to the following motions: Durkin's Motion for Declaratory Judgment, Durkin's Motion for Partial Summary Judgment, and Federal's Motion for Summary Judgment, as examples of this affirmative

11

representation. The City does not dispute this contention. Durkin contends that this consistently pled position is a judicial admission to which the City must be held. The court agrees.

In response to Durkin's motion, the City states: "It is uncontested that Newark's position is that its November 21, 2003 letter provided the requisite seven-day notice required by the Construction Contract termination provision." As to why this consistently pled assertion would not be a judicial admission, the City suggests that the doctrine of judicial admission conflicts with Rule 8(e)(2) of the Federal Rules of Civil Procedure. The City argues that Rule 8(e)(2) allows a party to set forth inconsistent, alternative and hypothetical pleadings. The City, however, did not *plead* the alternative defense it now seeks to be permitted to argue at trial. Additionally, in the City's Counterclaim, it admits that its November 21st letter constituted written notice of its intent to terminate Durkin. (D.I. 7, Counterclaim ¶ 19.)

Although the City pleads that it "further offered to suspend Durkin's termination if it would, in writing, agree to complete construction of the reservoir according to the design," (D.I. 7, Counterclaim ¶ 21), the court can not find an averment by the City that sets forth the contention that the letter dated February 4, 2004, could also satisfy the notice provision of Section 15 of the Construction Contract. Further, the City's reference to a suspension of Durkin's termination in its Counterclaim was not made in the context of an alternative or hypothetical pleading. *See Schott Motorcycle Supply*, 976 F.2d at 61 (citing 5 Wright & Miller, *Federal Practice and Procedure* § 1282 at 525 (2d ed. 1990) (generally an alternative claim is drafted in the form of "either-or" and a hypothetical claim is in the form of "if-then")).

It would be patently unfair and judicially inefficient to allow the City's defense to be a moving target, after the parties and the Court have relied upon the City's admissions. *See Soo Line R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir.1997) (holding that at summary judgment "judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible."); *Keller v. U.S.*, 58 F.3d 1194, 1198 n.8 (7th Cir.1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are 'not evidence at all but rather have the effect of withdrawing a fact from contention.' " (citations omitted)).

The notice requirement of the Construction Contract is one of the central issues in this case, and as a factual matter now judicially admitted by the City, it is binding. The court will, therefore, preclude the City from arguing or presenting evidence at trial that any other writing constituted the seven-day notice required by the Construction Contract.[2]

---

2

Federal also moves in limine to exclude the February 4th letter and any reference thereto (D.I. 165). Federal's argument appears to be most concerned with the possibility that the City may try to use the February 4th letter as alternative proof that the City provided Durkin with a seven-day notice required by the Construction Contract, in the event that the November 21st letter is deemed insufficient to constitute notice under the Construction Contract. For the reasons stated above, the City is limited to the judicial admission that the November 21st letter constituted notice under the Construction Contract. The court, therefore, need not preclude *any* reference to the February 4th letter at trial to assuage Federal's concern. Simply put, it would be impermissible for the City to argue, in the alternative, that the February 4th letter satisfies the notice requirement under the Construction Contract in light of its judicial admission; however, the Court reserves judgment as to whether the letter may be admissible for some other purpose.

13

## B. Motion for Reconsideration

Recognizing that motions for reconsideration are granted only sparingly, the court finds that Federal's motion presents one of those rare occasions. Because Ms. Houck's deposition had not commenced before Federal filed its opening brief in support of its motion for summary judgment, the substance of Ms. Houck's testimony was first introduced in Federal's reply brief. Since the City did not have an opportunity to respond to the use of Ms. Houck's deposition in Federal's reply brief, the court properly disregarded the deposition testimony in its initial consideration of Federal's motion for summary judgment. Accordingly, the court believes it appropriate to reconsider its April 5th Order, now that the issue has been fully briefed with all parties having the opportunity to address the import of Ms. Houck's deposition testimony. *See Chase Manhattan Bank v. Iridium Africa Corp.*, No. Civ. A. 00-564 JJF, 2004 WL 1588295, at *1 (D. Del. July 08, 2004) ("[A] court should reconsider a prior decision if it overlooked facts or precedent that reasonably would have altered the result."); *see also Pell v. E.I. Dupont de Nemours & Co. Inc.*, 231 F.R.D. 186, 189 (D. Del. 2005) (granting motion for reconsideration where evidence was not addressed in the parties' opening and answering briefs). The court's April 5th Order was premised, in part, on what appeared to be a factual dispute as to whether the City satisfied the provision of the Construction Contract that required the City to give notice of its intent to terminate the contract. That appearance of a factual dispute dissipates when considering the deposition testimony of the City's 30(b)(6) designee, along with the court's rulings on the motions in limine, and the pleadings.

In addition, the court's September 2nd Order was premised, in part, on the

14

conclusion that a genuine issue of material fact existed with respect to satisfaction of the seven-day notice requirement in the Construction Contract. Given the court's holding above concerning the Houck deposition, the court believes it appropriate to reconsider its September 2nd Order, *sua sponte*. The September 2nd Order was issued over a year prior to the April 5th Order, on similar grounds, and without the consideration of the deposition testimony of the City's 30(b)(6) witness.

### C. Motion for Summary Judgment on the Notice of Termination Issue

The court concludes that, given the City's admission as to the date of the notice of termination, there is no evidentiary basis upon which a reasonable jury could find in favor of the City. Moreover, the City's own 30(b)(6) witness admitted that the November 21st letter was not the required seven-day notice to Durkin and Federal, of the City's intent to terminate.

The court is not persuaded by the City's argument that Ms. Houck's deposition testimony taken together with her errata sheets presents evidence of a genuine issue of material fact that should preclude summary judgment. Instead, the court is guided by the Tenth Circuit's reasoning in *Franks*. The Court of Appeals in *Franks* stated, "that the utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony." *Franks*, 796 F.2d at 1237 (citing *Camfield Tires*, 719 F.2d at 1365).

The plain language of the Construction Contract, the Bond and the November 21st letter make clear that, even absent the sworn deposition testimony of Ms. Houck, a reasonable jury could not find in favor of the non-movant City. It appears that the City

15

attempted to follow the conditions of the Bond almost to the letter, but ignored a critical requirement imposed by the Construction Contract. That requirement included an additional procedural step prior to termination that the Bond did not; that is, seven-day notice to Durkin and Federal of its intent to terminate. As Federal and Durkin separately point out in their briefs, the November 21st letter neither formally declares Durkin in default, nor does it contain the word "terminate." Indeed, it even states that it is a "precautionary letter."

The City argues that the November 21st letter simultaneously satisfied the conditions of the Bond and the conditions of the Construction Contract. Putting aside the fact that the language of the November 21st letter is deficient on its face in declaring Durkin in default or providing a seven-day notice of termination, the City's position might be tenable if the parties to the two contracts were separate, non-overlapping and otherwise unaware of the obligations in both contracts. In this instance, however, it appears that Federal and Durkin were at all times aware of the obligations imposed in both the Construction Contract and the Bond. It is clear that the "considering declaring" provision of the Bond functions to initiate a conflict-resolution process that could potentially obviate a declaration of default.[3] Further, the parties proceeded to carry out these steps ostensibly to resolve the conflicts. For these reasons, it is unreasonable to suggest that the November 21st letter was notice under Paragraph 3.1 of the Bond, and at

---

[3] This conclusion is supported by the last provision in paragraph 3.1: If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequent to declare a Contractor Default.

16

the same time, notice under Section 15.2 of the Construction Contract. The procedural requirements of Paragraph 3.1 are expressly before a declaration of default and the requirement of Section 15.2 of the Construction Contract must necessarily be a declaration of default or intent to terminate.

Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Fed. Sav. & Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). On the pleadings and exhibits alone, the court holds that it seems unlikely that a reasonable jury could find for the City on the notice of termination issue. Where there may have been some appearance of a genuine issue on the pleadings before, the deposition testimony of the City's 30(b)(6) witness puts the issue to rest. Thus, taking into consideration the judicial admissions, the admissions of the City's 30(b)(6) witness, and the written record of pleadings and exhibits, the court concludes that a reasonable jury could not find for the non-movant City on the notice issue.

As such, the court will vacate its September 2nd Order[4] and April 5th Order, and will grant summary judgment to Federal and partial summary judgment to Durkin, with respect to the failure to provide seven-day notice to terminate as required by the

---

[4] The City correctly notes in its Answer to Durkin's Motion for Partial Summary Judgment that Durkin also seeks summary judgment on the issue of whether Newark had actual cause to terminate the Construction Contract. The Court does not grant such relief in this Order. Partial summary judgment in favor of Durkin is limited to the allegation that the City did not satisfy the notice requirement of the Construction Contract before terminating Durkin. Summary judgment is not, however, granted as to the allegation that City lacked the proper legal and factual basis for terminating Durkin or, in the City's view, that Durkin failed to perform. That dispute is not appropriately resolved on summary judgment with this record.

17

Construction Contract.

VI.     **CONCLUSION**

For the aforementioned reasons, the court will grant Federal's motion for summary judgment and will grant in part and deny in part Durkin's motion for partial summary judgment on the notice of termination issue.

Dated: September 22, 2006             _____
                                       UNITED STATES DISTRICT JUDGE

18

A234

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., <br><br> Plaintiff <br><br> v. <br><br> CITY OF NEWARK, et al., <br><br> Defendants <br><br> and <br><br> CITY OF NEWARK, et al., <br><br> Third-Party Plaintiff <br><br> v. <br><br> DONALD M. DURKIN CONTRACTING, INC., AND FEDERAL INSURANCE COMPANY, <br><br> Third-Party Defendants | C.A. No. 04-163 GMS |

## **ORDER**

For the reasons stated in the court's Memorandum Opinion of this same date, IT IS HEREBY ORDERED that:

1. Federal's Motion for Reconsideration (D.I. 136) is GRANTED.

2. Federal's *Motion in Limine* (D.I. 163) to exclude the errata sheets of Ms. Carol Houck is GRANTED.

3. Federal's *Motion in Limine* (D.I. 165) to exclude the "February 4th Letter" is GRANTED in part and DENIED in part.

4. Durkin's *Motion in Limine* (D.I. 190) regarding the judicial admission of the City of Newark is GRANTED.

5. The Court's September 2, 2004 Order denying plaintiff's partial summary judgment (D.I. 63) is VACATED.

6. The Court's April 5, 2006 Order denying summary judgment (D.I. 132) is VACATED.

7. Federal's Motion for Summary Judgment (D.I. 122) is GRANTED.

8. Durkin's Motion for Partial Summary Judgment (D.I. 36) is GRANTED in part and DENIED in part.

Dated: September 22, 2006

UNITED STATES DISTRICT JUDGE

FILED
SEP 2 2 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2

A236

# City's Arguments
# Regarding Contract Damage Calculation During Trial

| City's Argument/Representations | Reference |
|---|---|
| **City's Questions of Donald Durkin, Jr. on Cross Examination:**<br><br>Q: These are the outstanding pay applications at the time of termination. Correct?<br><br>A: Yes, they are.<br><br>Q: Okay. And they are applications for Payment No. 18 through 23?<br><br>A: That's correct.<br><br>*******<br><br>Q: We can walk you through it. But I will represent, perhaps counsel will stipulate, that the total is $275,926.79.<br><br>A: That appears to be correct.<br><br>Q: And that's for work that was performed by your company, and that covers everything due at the time of termination. Correct?<br><br>A: No. | A122-A123, Tr.946-947:20-25, 6-13 |
| **City's Questions of Donald Durkin, Jr. on Cross Examination:**<br><br>Q: So, again, under the contract, if the engineer's interpretation is correct, you had been paid six million for a job at that point that was costing you 12 million. Correct?<br><br>A: I don't agree with that, no. ... This calculation was based on the language of the contract. I thought we kind of went through that in detail yesterday, all this 11.4.1 and 11.6.2.1 – that's where this calculation came from. | A124, Tr. 950:11-15, 20-23 |
| **City's Representations to the Court Regarding Measure of Breach of Contract Damages** | A130, Tr.995:11-12 |

1