IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* <br><br> vs. <br><br> CITY OF NEWARK, et al., *Defendants* <br><br> and <br><br> CITY OF NEWARK, *Third-Party Plaintiff* <br><br> vs. <br><br> DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | CASE NO. 04-0163-GMS |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Intervenor* | |

**APPENDIX OF DOCUMENTS IN SUPPORT OF
ANSWERING BRIEF OF PLAINTIFF
IN OPPOSITION TO CITY OF NEWARK DEFENDANTS'
MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL
OR REMITTITUR**

**Part 15**

POWELL, TRACHTMAN, LOGAN,
CARRLE & LOMBARDO, P.C.
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
*Attorneys for Plaintiff and Third Party Defendant Donald M. Durkin Contracting*

Dated: March 2, 2007

# TABLE OF CONTENTS

| **Document** | **Page** |
|---|---|
| Selected Portions of the Trial Transcript | A1 |
| Selected Jury Instructions Discussed on October 4, 2006 | A177 |
| Selected Final Jury Instructions | A182 |
| Jury Verdict Form | A193 |
| Chart of City's Arguments Regarding Contract Damages in Its Rule 50a, Rule 50b And Rule 59 Motions | A199 |
| Judge Sleet's Final Pre-Trial Form Order | A202 |
| Trial Brief of the City of Newark Defendants | A207 |
| Court Order dated September 22, 2006 | A217 |
| Chart of City's Arguments Regarding Contract Damage Calculation During Trial | A237 |
| Application and Certificate for Payment No. 23 (DUR9) | A240 |
| Selected Portions of the Contract (DUR60) | A242 |
| Selected Portions of the Complaint | A250 |
| Chart of City's Cases Cited in Support of the Doctrine of Constructive Termination | A254 |
| Itemized Statement of Damages (DUR68) | A255 |
| Memorandum dated May 27, 2004 from Solicitor Akin to Mayor and Council (DUR37) | A256 |
| Affidavit of Ronald Scott Killen | A259 |
| Affidavit of Donald M. Durkin, Jr. | A261 |
| Affidavit of Michael D. Durkin | A267 |
| Affidavit of James W. Durkin | A273 |
| Selected Delaware Pattern Jury Instructions (2000) | A279 |

City's Communications with Durkin's Subcontractors (DUR13, DUR14, DUR 15, DUR16, DUR17, DUR18, DUR19).....................................................................A281

Chart of What Council Did Not Know When it Voted to Terminate Durkin............A318

Prospective Bidder Memorandum dated July 30, 2004 (DUR10).......................A320

Memorandum from Mayor Funk to City Manager Luft (DUR20).......................A321

Executive Session Meeting Minutes dated February 2, 2004 (DUR34)................A322

Selected Third Circuit Model Jury Instructions..........................................A325

| City's Argument/Representations | Reference |
|---|---|
| City: The measure of breach of contract damages "should strictly be what's left under the contract …" | |
| **City's Representations to the Court Regarding Measure of Breach of Contract Damages**<br><br>City: "[T]he measure of damages under the contract is simply what remains." | A131, Tr.996:1-3. |
| **City's Representations to the Court Regarding Measure of Breach of Contract Damages**<br><br>City: "[T]he proper measure of damages is limited to the unpaid remainder of the contract." | A135, Tr.1005:12-13 |
| **City's Representations to the Court Regarding Measure of Breach of Contract Damages**<br><br>City: "It is our position that the only proper measure of damages is for Durkin to recover what it would have had but for the breach, and that it's unpaid for work performed, unpaid fees." | A153, Tr. 1161:12-16 |
| **City's Representations to the Court Regarding Measure of Breach of Contract Damages**<br><br>City: Only "unpaid contract balance" is recoverable. | A156, 1164:5-10 |
| **City's Representations to the Court Regarding Measure of Breach of Contract Damages**<br><br>City: "[T]he measure of damages is the loss actually sustained as a result of the breach of the contract." | A158, Tr.1166:10-12 |
| **City's Arguments Regarding Measure of Breach of Contract Damages in its Closing Argument to the Jury**<br><br>City: "The actual outstanding amount owed to Durkin for work completed at that time was approximately $275,000. … We submit that you should return the parties to the position they would have been in at that time, and award the Durkin company $270,000 for the work they completed prior to termination." | A170, Tr.1237:16-17, 22-25 |
| **City's Arguments Regarding Measure of Breach of Contract Damages in its Closing Argument to the Jury** | A171-A172, Tr.1251-1252:24-2, 7-9 |

| City's Argument/Representations | Reference |
|---|---|
| City: "[Paragraph 15.4.3] deals with termination for convenience by the owner, which is not the case here. ... And even this Paragraph 15.4 does not apply to this case in any event, because it deals with termination for convenience." | |
| **City's Arguments Regarding Measure of Breach of Contract Damages in its Closing Argument to the Jury**<br><br>City: "So with regard to your verdict, as to the breach of contract claim, the only sum specifically owed under the Durkin contract was the sum of approximately $275,000. We ask that you award that to the Durkins as compensation." | A173, Tr.1253:3-6 |

# Application and Certificate For Payment

| | | |
|---|---|---|
| To Owner: | Project: | Application No: 23 |
| CITY OF NEWARK | NEWARK WATER RESERVOIR | Period To: 12/31/03 |
| 220 ELKTON ROAD | OLD PAPER MILL ROAD | Architect's Project No: |
| PO BOX 390 | NEWARK, DE 19715 | Contract Date: |
| NEWARK, DE 19715-0390 | | |
| From (Contractor): | Via (Architect): | Page 1 |
| DONALD M DURKIN CONTRACTING | | Date: 12/31/03 |
| 1310 INDUSTRIAL BLVD | Contractor Job Number: 02-2 | |
| SUITE 201 | | |
| SOUTHAMPTON, PA 18966 | | |
| Phone: 215 364-4000 | Contract For: | |

## Contractor's Application For Payment

| | | | |
|---|---|---|---|
| Original contract sum | | | 9,679,000.00 |
| Net change by change orders | | | 125,293.28 |
| Contract sum to date | | | 9,804,293.28 |
| Total completed and stored to date | | | 7,006,051.55 |
| Retainage | | | |
| 7.7% of completed work | | | 486,833.70 |
| 1.8% of stored material | | | 12,546.09 |
| Total retainage | | | 499,379.79 |
| Total earned less retainage | | | 6,506,671.76 |
| Less previous certificates of payment | | | 6,441,668.59 |
| Current sales tax | | | |
| 0.000% of taxable amount | | | 0.00 |
| Current payment due | | | **65,003.17** |
| Balance to finish, including retainage | | | 3,297,621.52 |

### Change Order Summary

| Change Order Summary | Additions | Deductions |
|---|---|---|
| Change orders approved in previous months by owner | 143,335.78 | -18,042.50 |

| Change orders approved this month | Number | Date Approved | | |
|---|---|---|---|---|

| Totals | | |
|---|---|---|
| Net change by change orders | | 125,293.28 |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information, and belief the work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

Contractor: _____

By: [signature] Date: 1-7-04

State of: _____ County of: Bucks

Subscribed and sworn to before me this ___ day of ___

Notary Public: [signature]
My Commission Expires: May 13, 2006

NOTARIAL SEAL
OLIVER R. HAZARD, Notary Public
Southampton Twp., Bucks County, PA
My Commission Expires May 13, 2006

## Architect's Certificate for Payment

Amount Certified: $ _____

In accordance with the Contract Documents, based on on-site observations and the data comprising the above application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the Amount Certified.

Architect: [signature] See Attached

By: _____ Date: _____

This Certification is not negotiable. The Amount Certified is payable only to the Contractor named herein. Issuance, payment, and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

Attachment A to Application and Certificate for Payment

**Engineer's Certificate for Payment:**

In accordance with the contract documents based on onsite observations and data comprising the above application, the Engineer states to the Owner that to the best of the Engineer's knowledge, information and belief, the work has progressed as indicated, the quality of work is in accordance with the contract documents and the contractor is entitled to payment of the "Amount Due".

Amount Due: $ 65,023.17

Engineer:

By: _____ Date: 1/22/04

This Certification is not negotiable. The Amount Due is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

**Article 9. MISCELLANEOUS.**

9.1. The contract documents shall be interpreted according to the laws of Delaware.

9.2. Terms used in this Agreement which are defined in Article 1 of the General Conditions will have the meanings indicated in the General Conditions.

9.3. No assignment by a party hereto of any rights under or interests in the Contract Documents will be binding on another party hereto without the written consent of the party sought to be bound; and, specifically but without limitation, moneys that may become due and moneys that are due may not be assigned without such consent (except to the extent that the effect of this restriction may be limited by law), and unless specifically stated to the contrary in any written consent to an assignment no assignment will release or discharge the assignor from any duty or responsibility under the Contract Documents.

9.4. OWNER and CONTRACTOR each binds itself, its partners, successors, assigns and legal representatives to the other party hereto, its partners, successors, assigns and legal representatives in respect to all covenants, agreements and obligations contained in the Contract Documents.

9.5. Any provision or part of the Contract Documents held to be void or unenforceable under any Law or Regulation shall be deemed stricken, and all remaining provisions shall continue to be valid and binding upon OWNER and CONTRACTOR, who agree that the Contract Documents shall be reformed to replace such stricken provision or part thereof with a valid and enforceable provision that comes as close as possible to expressing the intention of the stricken provision.

IN WITNESS WHEREOF, OWNER and CONTRACTOR have signed this Agreement in triplicate. One counterpart each has been delivered to OWNER, CONTRACTOR and ENGINEER. All portions of the Contract Documents have been signed, initialed or identified by OWNER and CONTRACTOR or identified by ENGINEER on their behalf.

This Agreement will be effective on _____, 2002 (which is the Effective Date of the Agreement).

OWNER ____City of Newark_____         CONTRACTOR _____

_____           _____

_____           _____

By: _____           By: _____

[CORPORATE SEAL]                         [CORPORATE SEAL]

Attest _____          Attest _____

Address for giving notices               Address for giving notices

_____           _____

_____           _____

(If OWNER is a public body, attach evidence of    License No. _____
authority to sign and resolution or other documents
authorizing execution of Agreement.               Agent for service of process: _____

                                                  _____

                                                  (If CONTRACTOR is a corporation, attach evidence of
                                                  authority to sign).

5                                                                                  A242

9.13.2. ENGINEER will not supervise, direct, control or have authority over or be responsible for CONTRACTOR's means, methods, techniques, sequences or procedures of construction, or the safety precautions and programs incident thereto, or for any failure of CONTRACTOR to comply with Laws and Regulations applicable to the furnishing or performance of the Work. ENGINEER will not be responsible for CONTRACTOR's failure to perform or furnish the Work in accordance with the Contract Documents.

9.13.3. ENGINEER will not be responsible for the acts or omissions of CONTRACTOR or of any Subcontractor, any Supplier, or of any other person or organization performing or furnishing any of the Work.

9.13.4. ENGINEER's review of the final Application for Payment and accompanying documentation and all maintenance and operating instructions, schedules, guarantees, bonds and certificates of inspection, tests and approvals and Other documentation required to be delivered by paragraph 14.12 will only be to determine generally that their content complies with the requirements of, and in the case of certificates of inspections, tests and approvals that the results certified indicate compliance with, the Contract Documents.

9.13.5. The limitations upon authority and responsibility set forth in this paragraph 9.13 shall also apply to ENGINEER's Consultants, Resident Project Representative and assistants.

ARTICLE 10—CHANGES IN THE WORK

10.1. Without invalidating the Agreement and without notice to any surety, OWNER may, at any time or from time to time, order additions, deletions or revisions in the Work. Such additions, deletions or revisions will be authorized by a Written Amendment, a Change Order, or a Work Change Directive. Upon receipt of any such document, CONTRACTOR shall promptly proceed with the Work involved which will be performed under the applicable conditions of the Contract Documents (except as otherwise specifically provided).

10.2. If OWNER and CONTRACTOR are unable to agree as to the extent, if any, of an adjustment in the Contract Price or an adjustment of the Contract Times that should be allowed as a result of a Work Change Directive, a claim may be made therefor as provided in Article 11 or Article 12.

10.3. CONTRACTOR shall not be entitled to an increase in the Contract Price or an extension of the Contract Times with respect to any Work performed that is not required by the Contract Documents as amended, modified and supplemented as provided in paragraphs 3.5 and 3.6 except in the case of an emergency as provided in paragraph 6.23 or in the case of uncovering Work as provided in paragraph 13.9.

10.4. OWNER and CONTRACTOR shall execute appropriate Change Orders recommended by ENGINEER (or Written Amendments) covering:

10.4.1. changes in the Work which are (i) ordered by OWNER pursuant to paragraph 10.1, (ii) required because of acceptance of *defective* Work under paragraph 13.13 or correcting *defective* Work under paragraph 13.14, or (iii) agreed to by the parties;

10.4.2. changes in the Contract Price or Contract Times which are agreed to by the parties; and

10.4.3. changes in the Contract Price or Contract Times which embody the substance of any written decision rendered by ENGINEER pursuant to paragraph 9.11;

provided that, in lieu of executing any such Change Order, an appeal may be taken from any such decision in accordance with the provisions of the Contract Documents and applicable Laws and Regulations, but during any such appeal, CONTRACTOR shall carry on the Work and adhere to the progress schedule as provided in paragraph 6.29.

10.5. If notice of any change affecting the general scope of the Work or the provisions of the Contract Documents (including, but not limited to, Contract Price or Contract Times) is required by the provisions of any Bond to be given to a surety, the giving of any such notice will be CONTRACTOR's responsibility, and the amount of each applicable Bond will be adjusted accordingly.

ARTICLE 11—CHANGE OF CONTRACT PRICE

11.1. The Contract Price constitutes the total compensation (subject to authorized adjustments) payable to CONTRACTOR for performing the Work. All duties, responsibilities and obligations assigned to or undertaken by CONTRACTOR shall be at CONTRACTOR's expense without change in the Contract Price.

11.2. The Contract Price may only be changed by a Change Order or by a Written Amendment. Any claim for an adjustment in the Contract Price shall be based on written notice delivered by the party making the claim to the other party and to ENGINEER promptly (but in no event later than thirty days) after the start of the occurrence or event giving rise to the claim and stating the general nature of the claim. Notice of the amount of the claim with supporting data shall be delivered within sixty days after the start of such occurrence or event (unless ENGINEER allows additional time for claimant to submit additional or more accurate data in support of the claim) and shall be accompanied by claimant's written statement that the adjustment claimed covers all known amounts to which the claimant is entitled as a result of said occurrence or event. All claims for adjustment in the Contract Price shall be determined by ENGINEER in accordance with paragraph 9.11 if OWNER and CONTRACTOR cannot otherwise agree on the amount involved. No claim for an adjustment in the Contract Price will

be valid if not submitted in accordance with this paragraph 11.2.

11.3. The value of any Work covered by a Change Order or of any claim for an adjustment in the Contract Price will be determined as follows:

11.3.1. where the Work involved is covered by unit prices contained in the Contract Documents, by application of such unit prices to the quantities of the items involved (subject to the provisions of paragraphs 11.9.1 through 11.9.3, inclusive);

11.3.2. where the Work involved is not covered by unit prices contained in the Contract Documents, by a mutually agreed lump sum (which may include an allowance for overhead and profit not necessarily in accordance with paragraph 11.6.2);

11.3.3. where the Work involved is not covered by unit prices contained in the Contract Documents and agreement to a lump sum is not reached under paragraph 11.3.2, on the basis of the Cost of the Work (determined as provided in paragraphs 11.4 and 11.5) plus a CONTRACTOR's fee for overhead and profit (determined as provided in paragraph 11.6).

*Cost of the Work:*

11.4. The term Cost of the Work means the sum of all costs necessarily incurred and paid by CONTRACTOR in the proper performance of the Work. Except as otherwise may be agreed to in writing by OWNER, such costs shall be in amounts no higher than those prevailing in the locality of the Project, shall include only the following items and shall not include any of the costs itemized in paragraph 11.5:

11.4.1. Payroll costs for employees in the direct employ of CONTRACTOR in the performance of the Work under schedules of job classifications agreed upon by OWNER and CONTRACTOR. Such employees shall include without limitation superintendents, foremen and other personnel employed full-time at the site. Payroll costs for employees not employed full time on the Work shall be apportioned on the basis of their time spent on the Work. Payroll costs shall include, but not be limited to, salaries and wages plus the cost of fringe benefits which shall include social security contributions, unemployment, excise and payroll taxes, workers' compensation, health and retirement benefits, bonuses, sick leave, vacation and holiday pay applicable thereto. The expenses of performing Work after regular working hours, on Saturday, Sunday or legal holidays, shall be included in the above to the extent authorized by OWNER.

11.4.2. Cost of all materials and equipment furnished and incorporated in the Work, including costs of transportation and storage thereof, and Suppliers' field services required in connection therewith. All cash discounts shall accrue to CONTRACTOR unless OWNER deposits funds with CONTRACTOR with which to make payments, in which case the cash discounts shall accrue to OWNER. All trade discounts, rebates and refunds and returns from sale of surplus materials and equipment shall accrue to OWNER, and CONTRACTOR shall make provisions so that they may be obtained.

11.4.3. Payments made by CONTRACTOR to the Subcontractors for Work performed or furnished by Subcontractors. If required by OWNER, CONTRACTOR shall obtain competitive bids from subcontractors acceptable to OWNER and CONTRACTOR and shall deliver such bids to OWNER who will then determine, with the advice of ENGINEER, which bids, if any, will be accepted. If any subcontract provides that the Subcontractor is to be paid on the basis of Cost of the Work Plus a fee, the Subcontractor's Cost of the Work and fee shall be determined in the same manner as CONTRACTOR's Cost of the Work and fee as provided in paragraphs 11.4, 11.5, 11.6 and 11.7. All subcontracts shall be subject to the other provisions of the Contract Documents insofar as applicable.

11.4.4. Costs of special consultants (including but not limited to engineers, architects, testing laboratories, surveyors, attorneys and accountants) employed for services specifically related to the Work.

11.4.5. Supplemental costs including the following:

11.4.5.1. The proportion of necessary transportation, travel and subsistence expenses of CONTRACTOR's employees incurred in discharge of duties connected with the Work.

11.4.5.2. Cost, including transportation and maintenance, of all materials, supplies, equipment, machinery, appliances, office and temporary facilities at the site and hand tools not owned by the workers, which are consumed in the performance of the Work, and cost less market value of such items used but not consumed which remain the property of CONTRACTOR.

11.4.5.3. Rentals of all construction equipment and machinery and the parts thereof whether rented from CONTRACTOR or others in accordance with rental agreements approved by OWNER with the advice of ENGINEER, and the costs of transportation, loading, unloading, installation, dismantling and removal thereof—all in accordance with the terms of said rental agreements. The rental of any such equipment, machinery or parts shall cease when the use thereof is no longer necessary for the Work.

11.4.5.4. Sales, consumer, use or similar taxes related to the Work, and for which CONTRACTOR is liable, imposed by Laws and Regulations.

11.4.5.5. Deposits lost for causes other than negligence of CONTRACTOR, any Subcontractor or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable, and royalty payments and fees for permits and licenses.

11.4.5.6. Losses and damages (and related expenses) caused by damage to the Work, not compensated by insurance or otherwise, sustained by CONTRACTOR in connection with the performance and furnishing of the Work (except losses and damages within the deductible amounts of property insurance established by OWNER in accordance with paragraph 5.9), provided they have resulted from causes other than the negligence of CONTRACTOR, any Subcontractor, or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable. Such losses shall include settlements made with the written consent and approval of OWNER. No such losses, damages and expenses shall be included in the Cost of the Work for the purpose of determining CONTRACTOR's fee. If, however, any such loss or damage requires reconstruction and CONTRACTOR is placed in charge thereof, CONTRACTOR shall be paid for services a fee proportionate to that stated in paragraph 11.6.2.

11.4.5.7. The cost of utilities, fuel and sanitary facilities at the site.

11.4.5.8. Minor expenses such as telegrams, long distance telephone calls, telephone service at the site, expressage and similar petty cash items in connection with the Work.

11.4.5.9. Cost of premiums for additional Bonds and insurance required because of changes in the Work.

11.5. The term Cost of the Work shall not include any of the following:

11.5.1. Payroll costs and other compensation of CONTRACTOR's officers, executives, principals (of partnership and sole proprietorships), general managers, engineers, architects, estimators, attorneys, auditors, accountants, purchasing and contracting agents, expediters, timekeepers, clerks and other personnel employed by CONTRACTOR whether at the site or in CONTRACTOR's principal or a branch office for general administration of the Work and not specifically included in the agreed upon schedule of job classifications referred to in paragraph 11.4.1 or specifically covered by paragraph 11.4.4—all of which are to be considered administrative costs covered by the CONTRACTOR's fee.

11.5.2. Expenses of CONTRACTOR's principal and branch offices other than CONTRACTOR's office at the site.

11.5.3. Any part of CONTRACTOR's capital expenses, including interest on CONTRACTOR's capital employed for the Work and charges against CONTRACTOR for delinquent payments.

11.5.4. Cost of premiums for all Bonds and for all insurance whether or not CONTRACTOR is required by the Contract Documents to purchase and maintain the same (except for the cost of premiums covered by subparagraph 11.4.5.9 above).

11.5.5. Costs due to the negligence of CONTRACTOR, any Subcontractor, or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable, including but not limited to, the correction of *defective* Work, disposal of materials or equipment wrongly supplied and making good any damage to property.

Other overhead or general expense costs of any kind and the costs of any item not specifically and expressly included in paragraph 11.4.

11.6. The CONTRACTOR's fee allowed to CONTRACTOR for overhead and profit shall be determined as follows:

11.6.1. a mutually acceptable fixed fee; or

11.6.2. if a fixed fee is not agreed upon, then a fee based on the following percentages of the various portions of the Cost of the Work:

11.6.2.1. for costs incurred under paragraphs 11.4.1 and 11.4.2, the CONTRACTOR's fee shall be fifteen percent;

11.6.2.2. for costs incurred under paragraph 11.4.3, the CONTRACTOR's fee shall be five percent;

11.6.2.3. where one or more tiers of subcontracts are on the basis of Cost of the Work plus a fee and no fixed fee is agreed upon, the intent of paragraphs 11.4.1, 11.4.2, 11.4.3 and 11.6.2 is that the Subcontractor who actually performs or furnishes the Work, at whatever tier, will be paid a fee of fifteen percent of the costs incurred by such Subcontractor under paragraphs 11.4.1 and 11.4.2 and that any higher tier Subcontractor and CONTRACTOR will each be paid a fee of five percent of the amount paid to the next lower tier Subcontractor;

11.6.2.4. no fee shall be payable on the basis of costs itemized under paragraphs 11.4.4, 11.4.5 and 11.5;

11.6.2.5. the amount of credit to be allowed by CONTRACTOR to OWNER for any change which results in a net decrease in cost will be the amount of the actual net decrease in cost plus a deduction in CONTRACTOR's fee by an amount equal to five percent of such net decrease; and

11.6.2.5. when both additions and credits are involved in any one change, the adjustment in CONTRACTOR's fee shall be computed on the basis of the net change in accordance with paragraphs 11.6.2.1 through 11.6.2.5, inclusive.

11.7. Whenever the cost of any Work is to be determined pursuant to paragraphs 11.4 and 11.5, CONTRACTOR will establish and maintain records thereof in accordance with generally accepted accounting practices and submit in form acceptable to ENGINEER an itemized cost breakdown together with supporting data.

*Cash Allowances:*

11.8. It is understood that CONTRACTOR has included in the Contract Price all allowances so named in the Contract Documents and shall cause the Work so covered to be furnished and performed for such sums as may be acceptable to OWNER and ENGINEER. CONTRACTOR agrees that:

11.8.1. the allowances include the cost to CONTRACTOR (less any applicable trade discounts) of materials and equipment required by the allowances to be delivered at the site, and all applicable taxes; and

11.8.2. CONTRACTOR's costs for unloading and handling on the site, labor, installation costs, overhead, profit and other expenses contemplated for the allowances have been included in the Contract Price and not in the allowances and no demand for additional payment on account of any of the foregoing will be valid.

Prior to final payment, an appropriate Change Order will be issued as recommended by ENGINEER to reflect actual amounts due CONTRACTOR on account of Work covered by allowances, and the Contract Price shall be correspondingly adjusted.

**11.9.** *Unit Price Work:*

11.9.1. Where the Contract Documents provide that all or part of the Work is to be Unit Price Work, initially the Contract Price will be deemed to include for all Unit Price Work an amount equal to the sum of the established unit price for each separately identified item of Unit Price Work times the estimated quantity of each item as indicated in the Agreement. The estimated quantities of items of Unit Price Work are not guaranteed and are solely for the purpose of comparison of Bids and determining an initial Contract Price. Determinations of the actual quantities and classifications of Unit Price Work performed by CONTRACTOR will be made by ENGINEER in accordance with paragraph 9.10.

11.9.2. Each unit price will be deemed to include an amount considered by CONTRACTOR to be adequate to cover CONTRACTOR's overhead and profit for each separately identified item.

11.9.3. OWNER or CONTRACTOR may make a claim for an adjustment in the Contract Price in accordance with Article 11 if:

11.9.3.1. the quantity of any item of Unit Price Work performed by CONTRACTOR differs materially and significantly from the estimated quantity of such item indicated in the Agreement; and

11.9.3.2. there is no corresponding adjustment with respect to any other item of Work; and

11.9.3.3. if CONTRACTOR believes that CONTRACTOR is entitled to an increase in Contract Price as a result of having incurred additional expense or OWNER believes that OWNER is entitled to a decrease in Contract Price and the parties are unable to agree as to the amount of any such increase or decrease.

ARTICLE 12—CHANGE OF CONTRACT TIMES

12.1. The Contract Times (or Milestones) may only be changed by a Change Order or a Written Amendment. Any claim for an adjustment of the Contract Times (or Milestones) shall be based on written notice delivered by the party making the claim to the other party and to ENGINEER promptly (but in no event later than thirty days) after the occurrence of the event giving rise to the claim and stating the general nature of the claim. Notice of the extent of the claim with supporting data shall be delivered within sixty days after such occurrence (unless ENGINEER allows an additional period of time to ascertain more accurate data in support of the claim) and shall be accompanied by the claimant's written statement that the adjustment claimed is the entire adjustment to which the claimant has reason to believe it is entitled as a result of the occurrence of said event. All claims for adjustment in the Contract Times (or Milestones) shall be determined by ENGINEER in accordance with paragraph 9.11 if OWNER and CONTRACTOR cannot otherwise agree. No claim for an adjustment in the Contract Times (or Milestones) will be valid if not submitted in accordance with the requirements of this paragraph 12.1.

12.2. All time limits stated in the Contract Documents are of the essence of the Agreement.

12.3. Where CONTRACTOR is prevented from completing any part of the Work within the Contract Times (or Milestones) due to delay beyond the control of CONTRACTOR, the Contract Times (or Milestones) will be extended in an amount equal to the time lost due to such delay if a claim is made therefor as provided in paragraph 12.1. Delays beyond the control of CONTRACTOR shall include, but not be limited to, acts or neglect by OWNER, acts or neglect of utility owners or other contractors performing other work as contemplated by Article 7, fires, floods, epidemics, abnormal weather conditions or acts of God. Delays attributable to and within the control of a Subcontractor or Supplier shall be deemed to be delays within the control of CONTRACTOR.

12.4. Where CONTRACTOR is prevented from completing any part of the Work within the Contract Times (or Milestones) due to delay beyond the control of both OWNER and CONTRACTOR, an extension of the Contract Times (or Milestones) in an amount equal to the time lost due to such delay shall be CONTRACTOR's sole and exclusive remedy for such delay. In no event shall OWNER be liable to CONTRACTOR, any Subcontractor, any Supplier, any other person or organization, or to any surety for or employee or agent of any of them, for damages arising out of or resulting from (i) delays caused by or within the control of CONTRACTOR, or (ii)

particulars in which this inspection reveals that the Work is incomplete or *defective*. CONTRACTOR shall immediately take such measures as are necessary to complete such Work or remedy such deficiencies.

*Final Application for Payment:*

14.12. After CONTRACTOR has completed all such corrections to the satisfaction of ENGINEER and delivered in accordance with the Contract Documents all maintenance and operating instructions, schedules, guarantees, Bonds, certificates or other evidence of insurance required by paragraph 5.4, certificates of inspection, marked-up record documents (as provided in paragraph 6.19) and other documents, CONTRACTOR may make application for final payment following the procedure for progress payments. The final Application for Payment shall be accompanied (except as previously delivered) by: (i) all documentation called for in the Contract Documents, including but not limited to the evidence of insurance required by subparagraph 5.4.13, (ii) consent of the surety, if any, to final payment, and (iii) complete and legally effective releases or waivers (satisfactory to OWNER) of all Liens arising out of or filed in connection with the Work. In lieu of such releases or waivers of Liens and as approved by OWNER, CONTRACTOR may furnish receipts or releases in full and an affidavit of CONTRACTOR that: (i) the releases and receipts include all labor, services, material and equipment for which a Lien could be filed, and (ii) all payrolls, material and equipment bills and other indebtedness connected with the Work for which OWNER or OWNER's property might in any way be responsible have been paid or otherwise satisfied. If any Subcontractor or Supplier fails to furnish such a release or receipt in full, CONTRACTOR may furnish a Bond or other collateral satisfactory to OWNER to indemnify OWNER against any Lien.

*Final Payment and Acceptance:*

14.13. If, on the basis of ENGINEER's observation of the Work during construction and final inspection, and ENGINEER's review of the final Application for Payment and accompanying documentation as required by the Contract Documents, ENGINEER is satisfied that the Work has been completed and CONTRACTOR's other obligations under the Contract Documents have been fulfilled, ENGINEER will, within ten days after receipt of the final Application for Payment, indicate in writing ENGINEER's recommendation of payment and present the Application to OWNER for payment. At the same time ENGINEER will also give written notice to OWNER and CONTRACTOR that the Work is acceptable subject to the provisions of paragraph 14.15. Otherwise, ENGINEER will return the Application to CONTRACTOR, indicating in writing the reasons for refusing to recommend final payment, in which case CONTRACTOR shall make the necessary corrections and resubmit the Application. Thirty days after the presentation to OWNER of the Application and accompanying documentation, in appropriate form and substance and with ENGINEER's recommendation and notice of acceptability, the amount recommended by ENGINEER will become due and will be paid by OWNER to CONTRACTOR.

14.14. If, through no fault of CONTRACTOR, final completion of the Work is significantly delayed and if ENGINEER so confirms, OWNER shall, upon receipt of CONTRACTOR's final Application for Payment and recommendation of ENGINEER, and without terminating the Agreement, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance to be held by OWNER for Work not fully completed or corrected is less than the retainage stipulated in the Agreement, and if Bonds have been furnished as required in paragraph 5.1, the written consent of the surety to the payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by CONTRACTOR to ENGINEER with the Application for such payment. Such payment shall be made under the terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

*Waiver of Claims:*

14.15. The making and acceptance of final payment will constitute:

14.15.1. a waiver of all claims by OWNER against CONTRACTOR, except claims arising from unsettled Liens, from *defective* Work appearing after final inspection pursuant to paragraph 14.11, from failure to comply with the Contract Documents or the terms of any special guarantees specified therein, or from CONTRACTOR's continuing obligations under the Contract Documents; and

14.15.2. a waiver of all claims by CONTRACTOR against OWNER other than those previously made in writing and still unsettled.

ARTICLE 15—SUSPENSION OF WORK AND TERMINATION

*OWNER May Suspend Work:*

15.1. At any time and without cause, OWNER may suspend the Work or any portion thereof for a period of not more than ninety days by notice in writing to CONTRACTOR and ENGINEER which will fix the date on which Work will be resumed. CONTRACTOR shall resume the Work on the date so fixed. CONTRACTOR shall be allowed an adjustment in the Contract Price or an extension of the Contract Times, or both, directly attributable to any such suspension if CONTRACTOR makes an approved claim therefor as provided in Articles 11 and 12.

*OWNER May Terminate:*

15.2. Upon the occurrence of any one or more of the following events:

15.2.1. if CONTRACTOR persistently fails to perform the Work in accordance with the Contract Documents (including, but not limited to, failure to supply sufficient skilled workers or suitable materials or equipment or failure to adhere to the progress schedule established under paragraph 2.9 as adjusted from time to time pursuant to paragraph 6.6);

15.2.2. if CONTRACTOR disregards Laws or Regulations of any public body having jurisdiction;

15.2.2. if CONTRACTOR disregards the authority of ENGINEER; or

15.2.4. if CONTRACTOR otherwise violates in any substantial way any provisions of the Contract Documents;

OWNER may, after giving CONTRACTOR (and the surety, if any,) seven days' written notice and to the extent permitted by Laws and Regulations, terminate the services of CONTRACTOR, exclude CONTRACTOR from the site and take possession of the Work and of all CONTRACTOR's tools, appliances, construction equipment and machinery at the site and use the same to the full extent they could be used by CONTRACTOR (without liability to CONTRACTOR for trespass or conversion), incorporate in the Work all materials and equipment stored at the site or for which OWNER has paid CONTRACTOR but which are stored elsewhere, and finish the Work as OWNER may deem expedient. In such case CONTRACTOR shall not be entitled to receive any further payment until the Work is finished. If the unpaid balance of the Contract Price exceeds all claims, costs, losses and damages sustained by OWNER arising out of or resulting from completing the Work such excess will be paid to CONTRACTOR. If such claims, costs, losses and damages exceed such unpaid balance, CONTRACTOR shall pay the difference to OWNER. Such claims, costs, losses and damages incurred by OWNER will be reviewed by ENGINEER as to their reasonableness and when so approved by ENGINEER incorporated in a Change Order, provided that when exercising any rights or remedies under this paragraph OWNER shall not be required to obtain the lowest price for the Work performed.

15.3. Where CONTRACTOR's services have been so terminated by OWNER, the termination will not affect any rights or remedies of OWNER against CONTRACTOR then existing or which may thereafter accrue. Any retention or payment of moneys due CONTRACTOR by OWNER will not release CONTRACTOR from liability.

15.4. Upon seven days' written notice to CONTRACTOR and ENGINEER, OWNER may, without cause and without prejudice to any other right or remedy of OWNER, elect to terminate the Agreement. In such case, CONTRACTOR shall be paid (without duplication of any items):

15.4.1. for completed and acceptable Work executed in accordance with the Contract Documents prior to the effective date of termination, including fair and reasonable sums for overhead and profit on such Work;

15.4.2. for expenses sustained prior to the effective date of termination in performing services and furnishing labor, materials or equipment as required by the Contract Documents in connection with uncompleted Work, plus fair and reasonable sums for overhead and profit on such expenses;

15.4.3. for all claims, costs, losses and damages incurred in settlement of terminated contracts with Subcontractors, Suppliers and others; and

15.4.4. for reasonable expenses directly attributable to termination.

CONTRACTOR shall not be paid on account of loss of anticipated profits or revenue or other economic loss arising out of or resulting from such termination.

*CONTRACTOR May Stop Work or Terminate:*

15.5. If, through no act or fault of CONTRACTOR, the Work is suspended for a period of more than ninety days by OWNER or under an order of court or other public authority, or ENGINEER fails to act on any Application for Payment within thirty days after it is submitted or OWNER fails for thirty days to pay CONTRACTOR any sum finally determined to be due, then CONTRACTOR may, upon seven days' written notice to OWNER and ENGINEER, and provided OWNER or ENGINEER do not remedy such suspension or failure within that time, terminate the Agreement and recover from OWNER payment on the same terms as provided in paragraph 15.4. In lieu of terminating the Agreement and without prejudice to any other right or remedy, if ENGINEER has failed to act on an Application for Payment within thirty days after it is submitted, or OWNER has failed for thirty days to pay CONTRACTOR any sum finally determined to be due, CONTRACTOR may upon seven day's written notice to OWNER and ENGINEER stop the Work until payment of all such amounts due CONTRACTOR, including interest thereon. The provisions of this paragraph 15.5 are not intended to preclude CONTRACTOR from making claim under Articles 11 and 12 for an increase in Contract Price or Contract Times or otherwise for expenses or damage directly attributable to CONTRACTOR's stopping Work as permitted by this paragraph.

ARTICLE 16—DISPUTE RESOLUTION

If and to the extent that OWNER and CONTRACTOR have agreed on the method and procedure for resolving disputes between them that may arise under this Agreement, such dispute resolution method and procedure, if any, shall be as set forth in Exhibit GC-A, "Dispute Resolution Agreement," to be attached hereto and made a part hereof. If no such agreement on the method and procedure for resolving such disputes has been reached, and subject to the provisions of paragraphs 9.10, 9.11, and 9.12, OWNER and CONTRACTOR may exercise

such rights or remedies as either may otherwise have under the Contract Documents or by Laws or Regulations in respect of any dispute.

## ARTICLE 17—MISCELLANEOUS

*Giving Notice:*

17.1. Whenever any provision of the Contract Documents requires the giving of written notice, it will be deemed to have been validly given if delivered in person to the individual or to a member of the firm or to an officer of the corporation for whom it is intended, or if delivered at or sent by registered or certified mail, postage prepaid, to the last business address known to the giver of the notice.

*Computation of Times:*

17.2.1. When any period of time is referred to in the Contract Documents by days, it will be computed to exclude the first and include the last day of such period. If the last day of any such period falls on a Saturday or Sunday or on a day made a legal holiday by the law of the applicable jurisdiction, such day will be omitted from the computation.

17.2.2. A calendar day of twenty-four hours measured from midnight to the next midnight will constitute a day.

*Notice of Claim:*

17.3. Should OWNER or CONTRACTOR suffer injury or damage to person or property because of any error, omission or act of the other party or of any of the other party's employees or agents or others for whose acts the other party is legally liable, claim will be made in writing to the other party within a reasonable time of the first observance of such injury or damage. The provisions of this paragraph 17.3 shall not be construed as a substitute for or a waiver of the provisions of any applicable statute of limitations or repose.

*Cumulative Remedies:*

17.4. The duties and obligations imposed by these General Conditions and the rights and remedies available hereunder to the parties hereto, and, in particular but without limitation, the warranties, guarantees and obligations imposed upon CONTRACTOR by paragraphs 6.12, 6.16, 6.30, 6.31, 6.32, 13.1, 13.12, 13.14, 14.3 and 15.2 and all of the rights and remedies available to OWNER and ENGINEER thereunder, are in addition to, and are not to be construed in any way as a limitation of, any rights and remedies available to any or all of them which are otherwise imposed or available by Laws or Regulations, by special warranty or guarantee or by other provisions of the Contract Documents, and the provisions of this paragraph will be as effective as if repeated specifically in the Contract Documents in connection with each particular duty, obligation, right and remedy to which they apply.

*Professional Fees and Court Costs Included:*

17.5. Whenever reference is made to "claims, costs, losses and damages," it shall include in each case, but not be limited to, all fees and charges of engineers, architects, attorneys and other professionals and all court or arbitration or other dispute resolution costs.

[The remainder of this page was left blank intentionally.]

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
DONALD M. DURKIN CONTRACTING, INC.
1310 Industrial Boulevard, Suite 200
Southampton, PA 18966

(b) County of Residence of First Listed Plaintiff: **BUCKS**
(EXCEPT IN U.S. PLAINTIFF CASES)

### DEFENDANTS
CITY OF NEWARK, HAROLD F. GODWIN, JOHN H. FARRELL, IV, JERRY CLIFTON, KARL G. KALBACHER, DAVID J. ATHEY, FRANK J. OSBORNE JR., CHRISTINA REWA, URS CORPORATION

County of Residence of First Listed: **NEW CASTLE**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Paul A. Logan, Esquire
Powell Trachtman Logan Carrle & Lombardo
475 Allendale Road, Suite 200,
King of Prussia PA 19406 (610) 354-9700

Attorneys (If Known)

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | | ☐ 710 Fair Labor Standards Act | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **SOCIAL SECURITY** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 861 HIA (1395ff) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 862 Black Lung (923) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 863 DIWC/DIWW (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 864 SSID Title XVI | |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 865 RSI (405(g)) | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | **FEDERAL TAX SUITS** | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| | | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | |
| | | | ☐ 740 Railway Labor Act | |
| | | | ☐ 790 Other Labor Litigation | |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | |

### V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

reach of contract, civil rights violation - 42 USC 1983, 28 USC 1332

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ over 100,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY
NONE
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE: 3/16/04
SIGNATURE OF ATTORNEY OF RECORD: /s/ Paul A. Logan

**FOR OFFICE USE ONLY**
RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

A250

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC.<br>1310 Industrial Boulevard, Suite 200<br>Southampton, PA 18966<br><br>vs.<br><br>CITY OF NEWARK<br>220 Elkton Road<br>P. O. Box 390<br>Newark, DE 19715-0390<br><br>HAROLD F. GODWIN<br>Mayor, City of Newark, Delaware<br><br>JOHN H. FARRELL, IV<br>Council Member, City of Newark, Delaware<br><br>JERRY CLIFTON<br>Council Member, City of Newark, Delaware<br><br>KARL G. KALBACHER<br>Council Member, City of Newark, Delaware<br><br>DAVID J. ATHEY<br>Council Member, City of Newark, Delaware<br><br>FRANK J. OSBORNE, JR.<br>Council Member, City of Newark, Delaware<br><br>CHRISTINA REWA<br>Council Member, City of Newark, Delaware<br><br>and<br><br>URS CORPORATION<br>1200 Philadelphia Pike<br>Wilmington, DE 19809 | CIVIL ACTION NO.  04-0163<br><br>JURY TRIAL DEMANDED<br><br><br>FILED<br>CLERK U.S. DISTRICT COURT<br>DISTRICT OF DELAWARE<br>2004 MAR 16 PM 3: 59 |

## **COMPLAINT**

KOP:269634v3 3514-04

A251

## Parties

1. Plaintiff Donald M. Durkin Contracting, Inc. ("Durkin") is a Pennsylvania corporation, with its principal office located at 1310 Industrial Boulevard, Suite 200, Southampton, Pennsylvania 18966.

2. Defendant City of Newark ("City") is a political subdivision of the State of Delaware, with its offices located at 220 Elkton Road, P. O. Box 390, Newark, Delaware 19715-0390.

3. Defendant Harold F. Godwin is an adult individual who, at all times relevant hereto, served and continues to serve as the Mayor of the City of Newark, Delaware.

4. Defendant John H. Farrell, IV is an adult individual who, at all times relevant hereto, served and continues to serve on the City Council representing District 1 of the City of Newark, Delaware.

5. Defendant Jerry Clifton is an adult individual who, at all times relevant hereto, served and continues to serve on the City Council representing District 2 of the City of Newark, Delaware.

6. Defendant Karl F. Kalbacher is an adult individual who, at all times relevant hereto, served and continues to serve on the City Council representing District 3 of the City of Newark, Delaware.

7. Defendant David J. Athey is an adult individual who, at all times relevant hereto, served and continues to serve on the City Council representing District 4 of the City of Newark, Delaware.

8. Defendant Frank J. Osborne, Jr. is an adult individual who, at all times relevant

hereto, served and continues to serve as Deputy Mayor and as a member of City Council representing District 5 of the City of Newark, Delaware.

9. Defendant Christina Rewa is an adult individual who, at all times relevant hereto, served and continues to serve on the City Council representing District 6 of the City of Newark, Delaware.

10. The Defendants identified and named in paragraphs 3 through 9, inclusive, shall be hereafter referred to as "City Council".

11. Defendant URS Corporation ("URS") is a business corporation incorporated under the laws of Delaware, with a principal office located at 1200 Philadelphia Pike, Wilmington, Delaware 19809.

**Jurisdiction and Venue**

12. Jurisdiction is predicated upon 28 U.S.C.A. §§ 1331 and 1343, in that this is a civil action arising under the Constitution, laws, and treaties of the United States. Jurisdiction is also predicated upon the doctrine of ancillary and pendent jurisdiction.

13. Jurisdiction is further predicated upon 28 U.S.C.A. § 1332, there being complete diversity between all plaintiffs and all defendants, and the matter in controversy, exclusive of interest and cost, is in excess of $100,000.

14. Venue in this District is proper pursuant to 28 U.S.C.A. §1391(a) and (b).

# City's Cases Cited in Support of
# The Doctrine of Constructive Termination

| Cases Cited by the City involving the Federal Government |
|---|
| *Rice Systems, Inc. v. United States,* 62 Fed Cl. 608 (2004) |
| *Embry, et al. v. United States,* 17 Cl. Ct 617 (1989) |
| *A/S Dampskibssetskabet Torm v. United States,* 64 F. Supp. 2d 298 (S.D.N.Y. 1999) |
| *SMS Data Products Group, Inc. v. United States,* 19 Cl. Ct. 612 (1990) |
| *Best Form Fabricators v. United States,* 38 Fed. Cl. 627 (1997) |

| Cases Cited by the City involving the Federal Agencies |
|---|
| *Hancock Electronics Corporation v. Washington Metropolitan Area Transit, et al.,* 81 F.3d 451 (4th Cir. 1996) |

| Cases Cited by the City Where Parties Incorporated Clauses Pursuant to Federal Regulations |
|---|
| *Linan-Faye Const. Co. v. Housing Auth. Of Camden,* 49 F.3d 915 (3d Cir. 1995) |

Note: The only case cited by the City that appears to not involve the federal government or a federal agency is *Interboro Packing Corp. v. Fulton County Schools,* 2006 WL 2850433 (N.D. Ga. 2006). However in *Interboro* the contract was actually terminated for convenience. There was no discussion of a retroactive application of the doctrine of constructive termination which the City is advocating here.