IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff*<br><br>vs.<br><br>CITY OF NEWARK, et al., *Defendants*<br><br>and<br><br>CITY OF NEWARK, *Third-Party Plaintiff*<br><br>vs.<br><br>DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | CASE NO. 04-0163-GMS |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Intervenor* | |

APPENDIX OF DOCUMENTS IN SUPPORT OF
ANSWERING BRIEF OF PLAINTIFF
IN OPPOSITION TO CITY OF NEWARK DEFENDANTS'
MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL
OR REMITTITUR

Part 16

POWELL, TRACHTMAN, LOGAN,
CARRLE & LOMBARDO, P.C.
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
*Attorneys for Plaintiff and Third Party Defendant Donald M. Durkin Contracting*

Dated: March 2, 2007

## TABLE OF CONTENTS

**Document**      **Page**

Selected Portions of the Trial Transcript............................................................A1

Selected Jury Instructions Discussed on October 4, 2006….................................A177

Selected Final Jury Instructions…….....................................................................A182

Jury Verdict Form…..............................................................................................A193

Chart of City's Arguments Regarding Contract Damages in Its Rule 50a, Rule 50b
And Rule 59 Motions…..........................................................................................A199

Judge Sleet's Final Pre-Trial Form Order ............................................................A202

Trial Brief of the City of Newark Defendants.......................................................A207

Court Order dated September 22, 2006.................................................................A217

Chart of City's Arguments Regarding Contract Damage Calculation During Trial....A237

Application and Certificate for Payment No. 23 (DUR9)..................................A240

Selected Portions of the Contract (DUR60)........................................................A242

Selected Portions of the Complaint.....................................................................A250

Chart of City's Cases Cited in Support of the Doctrine of
Constructive Termination....................................................................................A254

Itemized Statement of Damages (DUR68)..........................................................A255

Memorandum dated May 27, 2004 from
Solicitor Akin to Mayor and Council (DUR37)...................................................A256

Affidavit of Ronald Scott Killen..........................................................................A259

Affidavit of Donald M. Durkin, Jr.......................................................................A261

Affidavit of Michael D. Durkin............................................................................A267

Affidavit of James W. Durkin..............................................................................A273

Selected Delaware Pattern Jury Instructions (2000)............................................A279

City's Communications with Durkin's Subcontractors (DUR13, DUR14, DUR 15, DUR16, DUR17, DUR18, DUR19)......................................................................A281

Chart of What Council Did Not Know When it Voted to Terminate Durkin............A318

Prospective Bidder Memorandum dated July 30, 2004 (DUR10).......................A320

Memorandum from Mayor Funk to City Manager Luft (DUR20)......................A321

Executive Session Meeting Minutes dated February 2, 2004 (DUR34)................A322

Selected Third Circuit Model Jury Instructions.........................................A325

# ITEMIZED STATEMENT OF DAMAGES

### Cost of the Work Performed by DMD

| | |
|---|---:|
| 1. Payroll Cost for DMD Employees (para. 11.4.1) | $1,633.577.65 |
|     - Contractor's Fee of 15% (para. 11.6.2.1) | $245,036.65 |
| 2. Cost of Materials (para. 11.4.2.) | $687,435.69 |
|     - Contractor's Fee of 15% (para. 11.6.2.1) | $103,115.35 |
| 3. Cost of Equipment (para. 11.4.2) | $5,468,597.90[1] |
|     - Contractor's Fee of 15% (para. 11.6.2.1) | $820,289.68 |
| 4. Amounts Billed By Subcontractors (para. 11.4.3) | $2,771,080.49 |
|     - Contractor's Fee of 5% (para. 11.6.2.2) | $138,554.03 |
| 5. Amounts Paid to Special Consultants (para. 11.4.4) | $313,061.08[2] |
| | $12,180,748.52 |
| Payments by City of Newark to DMD | ($6,230,744.97) |
| Payments by City of Newark to DMD Subs | ($457,337.00) |
| **Unpaid Cost of the Work as of the Date of Termination:** | **$5,492,666.55** |

### Post-Termination Costs and Expenses

| | |
|---|---:|
| 6. Unpaid Consultant/Professional/Expenses (para. 17.5) | $1,740,751.38[3] |
| 7. Equipment Sales for Operating Revenue: | $433,891.79 |
| 8. Loans and Expenses on Life Insurance Policies: | $1,210,262.61 |
| 9. Repayment of Line of Credit Agreement: | $2,790,000.00[4] |
| **TOTAL** | **$11,667,572.33** |

---

[1] Includes $3,514,466.30 of operating costs, and $1,954,131.60 of standby equipment costs
[2] Vibratech ($12,478.00); JSM Assoc. ($2,546.25); Hillis-Carnes ($945.00); Langan Eng. ($140,266.31); Duffield Assoc. ($1,424,40); Navtech ($86,900.00); and GeoSyntec ($68,501.12—pre-termination costs only).
[3] Includes unpaid counsel fees of DMD and Federal incurred through 09/29/06 and estimated through 10/02/06.
[4] The loans on the life insurance policy and the line of credit draws were used to pay ongoing business operating expenses, as well as some of the litigation expenses, including partial payment of DMD's attorney's fees.

DUR-68

PRIVILEGED - ATTORNEY-CLIENT COMMUNICATION

CITY OF NEWARK
DELAWARE

May 27, 2004

TO:     Mayor & Council

FROM:   Roger A. Akin, City Solicitor

RE:     Reservoir Litigation Status Report

The purpose of this memorandum is to update you on recent developments in the reservoir litigation since Council met on May 24, 2004.

On Tuesday morning our construction counsel (Mr. Cottrell and Ms. Petrone) conveyed to URS the fact that our separately retained engineer (Mr. Calabria) had come to the conclusion that the Zone 4 materials and the means by which they were to be installed per the URS reservoir design would present constructibility problems. As was described during the May 24 executive session, it is Mr. Calabria's opinion that the soils would wick underlying moisture upward and the saturated soils would slump or slide during or after construction.

When learning of Mr. Calabria's conclusion, URS immediately requested a "technical" meeting. Later on Tuesday representatives of URS met with Mr. Calabria at URS offices. Our attorneys were present. URS was also represented at the meeting.

I am informed that URS' predictable initial reaction was to become extremely defensive about its design. URS engineers and Mr. Calabria spent some time discussing the design, graphically depicting different theories, and the like. URS continued to maintain that Mr. Calabria had made certain miscalculations and committed other errors.

At the close of this "technical" meeting, URS proposed that a portion of its finally designed system be built at the reservoir site. URS argued that, while Mr. Calabria's theory may have been borne out in a controlled lab setting, it may or may

A256

Plaintiff's Exhibit
DUR - 37

NEW10628

Mayor & Council
May 27, 2004
Page 2

not be borne out in actual field application. Calabria, apparently wanting to show that he has an open scientific mind, agreed to have his conclusion tested in a carefully constructed and monitored field test.

Today approximately ten individuals toured the reservoir. They included Calabria and his partner, several URS representatives, Carol Houck and Joe Dombrowski. At the present time all concerned are negotiating the details of a protocol which will govern setting up and then running the test. As I understand it, a section of the system will be built with Zone 4 materials and then will be soaked over an extended period. The sample is being constructed by a URS-selected contractor. I am informed that construction is being funded by URS. Mr. Calabria will confirm the validity of the test section before the test is run. As I understand it, Joe Dombrowski is also running his own independent test.

It is presently anticipated that the test section will be built next week, and that soaking will begin on or about June 4, 2004. It is hoped that results will be verified and final conclusions reached on or about June 12.

Given the importance of "getting it right" and the substantial nature of this investment and the protection of the City's legal position, I concur that this additional two week period of delay is necessary and proper. Presumably by June 12 we will know if Calabria is right or wrong in actual field application.

Yesterday afternoon U. S. District Judge Sleet convened a teleconference with regard to Durkin's request for an early hearing to try the issue of whether or not Durkin was properly terminated by the City. The Court has denied Durkin the right to such a hearing. He is essentially denying Durkin a preliminary injunction.

Judge Sleet has directed the parties to take some time to prepare and present legal briefs and supporting documents on the issue of wrongful termination. Those materials will be presented to the Court and considered in due course.

We perceived that Durkin would like early resolution of the

Mayor & Council
May 27, 2004
Page 3

wrongful termination question. Hence, some delay in getting that resolution may (or may not) cause Durkin to be more amenable to a settlement or a mediation of certain issues. Candidly, most activity in the matter will now await the results of the on-site testing. Presumably those results will tell the City what its litigation goal and strategy should be. (Note: Even if the test results confirm Mr. Calabria's conclusion regarding constructibility, it is not presently known whether URS will concede engineering error.)

I would like to reiterate that this is a communication protected by the attorney-client privilege. Since this matter is now in litigation, and since this memo discusses strategies and the theories of counsel, the memorandum should not be shared with any third parties.

Please do not hesitate to contact me if there are any questions.

Thank you.

cc: Carl Luft, City Manager
    Carol Houck, Assistant Administrator
    Joseph Dombrowski, Water & Wastewater Director
    Paul Cottrell, Esq. (via facsimile)

A258

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC. | ) Civil Action No.: 04-0163 GMS |
| Plaintiff, | ) |
| vs. | ) |
| CITY OF NEWARK, HAROLD F. GODWIN, JOHN H. FARRELL, IV, JERRY CLIFTON, KARL G. KALBACHER, DAVID J. ATHEY, FRANK J. OSBORNE, JR., CHRISTINA REWA AND URS CORPORATION | ) JURY TRIAL DEMANDED |
| Defendants, | ) |
| vs. | ) |
| FEDERAL INSURANCE COMPANY | ) |
| Third Party Defendant. | ) |

### AFFIDAVIT OF RONALD SCOTT KILLEN

STATE OF DELAWARE          :
                          : ss
COUNTY OF NEW CASTLE       :

Ronald Scott Killen, being duly sworn, does depose and say:

1.  I speak from personal knowledge and am competent to make this Affidavit.

2.  I was employed by Talley Brothers as an estimator from February 1998 to February 2004.

3.  While employed by Talley Brothers, I assisted with estimating the Newark Reservoir Project. Talley Brothers provided concrete and general contracting work for the Reservoir Project.

4.  I became familiar with the firm Donald M. Durkin Contracting, Inc. during my employment with Talley Brothers.

5.  I left Talley Brothers in 2004 to work for Mason Building Group where I am still employed as an estimator. Mason Building Group does interior and civil contracting work.

6.  I contacted Donald M. Durkin Contracting in April 2004 and requested a bid from the company for a project at the Delaware Solid Waste Authority.

7.  Bonding was not required for the project and I advised Donald M. Durkin Contracting of this fact.

8.  In response to my request for a bid, Jim Durkin told me that Donald M. Durkin Contracting would not be bidding any work until after the litigation was over with the City of Newark.

9.  The bids received from other contractors were around $2 million for the same work for which I requested a bid from Donald M. Durkin Contracting in April 2004.

10. I did not think this information was important until I read in the News Journal about the verdict for Durkin and Durkin's allegation that it could not do any work because of the termination by the City of Newark.

11. Because I personally had offered Donald M. Durkin Contracting Company the opportunity for work valued around $2 million, I knew that the allegation was not true, so I immediately contacted the City of Newark. I did not contact anyone from the City of Newark prior to reading about the verdict.

_____
Ronald Scott Killen

*State of Delaware*
*County of New Castle*

*Signed and sworn before me by Ronald Scott Killen, on this the 23rd day of October 2006..*

_____
Notary Public

Cheryl M. Simons
Notary Public
State of Delaware
County of New Castle
My Commission Expires Feb 10, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* <br><br> vs. <br><br> CITY OF NEWARK, et al., *Defendants* <br><br> and <br><br> CITY OF NEWARK, *Third-Party Plaintiff* <br><br> vs. <br><br> DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | CASE NO. 04-0163-GMS |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Intervenor* | |

### AFFIDAVIT OF DONALD M. DURKIN, JR.

STATE OF PENNSYLVANIA     )
                          )   ss.
COUNTY OF MONTOGOMERY     )

Donald M. Durkin, Jr., being duly sworn, deposes and states as follows:

1. I am of legal age and competent to make this Affidavit in support of Plaintiff's Answering Brief in Opposition to City of Newark Defendants' Motion for Judgment As a Matter of Law and for New Trial or Remittitur.

2. All statements made in this Affidavit are made on the basis of my personal knowledge.

A261

3. I am an officer of Plaintiff, Donald M. Durkin Contracting, Inc. ("Durkin").

4. If Durkin was approached about bidding on a job, the job would have been discussed with me or with my brother, Jim Durkin.

5. I never spoke with Ronald Scott Killen about Durkin bidding on a project at the Delaware Solid Waste Authority in or around April 2004.

6. I never spoke to anyone about Durkin bidding on a project at the Delaware Solid Waste Authority.

7. Moreover, I have never, at any time, ever spoken to Ronald Scott Killen.

8. I have never told anyone that Durkin would not be bidding any work until after the litigation with the City of Newark was completed. In fact, Durkin has bid on projects while this litigation was pending.

9. In answers to interrogatories Durkin listed every project it bid on since February 2, 2004 (the date of termination) up to and including April 22, 2005. Response to Interrogatory No. 25 listing the projects Durkin bid on is attached hereto as Exhibit "A".

I state under penalty of perjury that the facts in the foregoing Affidavit are true and correct to the best of my knowledge, information and belief.

Date: 2/27/07

_____
Donald M. Durkin, Jr.

SWORN TO AND SUBSCRIBED
Before me this  27  day of
February, 2007.

_Oliver P Hazard_
Notary Public

NOTARIAL SEAL
OLIVER P HAZARD III
Notary Public
PHILADELPHIA CITY, PHILADELPHIA COUNTY
My Commission Expires Jun 16, 2010

A262

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff*<br>vs.<br>CITY OF NEWARK, et al., *Defendants*<br>and<br>CITY OF NEWARK, *Third-Party Plaintiff*<br>vs.<br>DONALD M. DURKIN CONTRACTING and FEDERAL INSURANCE COMPANY, *Third-Party Defendants* | CASE NO. 04-0163-GMS |

### PLAINTIFF'S ANSWERS AND OBJECTIONS TO THE CITY OF NEWARK'S FIRST SET OF INTERROGATORIES

#### GENERAL OBJECTIONS

Plaintiff generally objects to each Interrogatory on the grounds that the same purport to extend the scope and nature of the duty to provide the answers beyond that required by the applicable rules of procedure. Plaintiff refuses to provide such answers and shall limit its responses hereto as provided by the applicable rules of procedure. Without limitation, Plaintiff does not accept any condition that the Interrogatories are continuing and undertakes no duty to supplement the answers hereto other than provided by the applicable rules of procedure.

Plaintiff generally objects to each Interrogatory on the grounds that the definitions and instructions incorporated in same rendered the Interrogatories overbroad, unreasonable, burdensome, and in some cases incomprehensible. Plaintiff shall interpret the Interrogatories without reference to the definitions and instructions, in accordance with the common meaning of the words therein and applicable rules of procedure.

Plaintiff generally objects to each of the Interrogatories to the extent same seek the

KOP:304777v1 3514-04

| | |
|---|---|
| Idle eq fleet 2/04-9/05 $228400/month | $4,568,000 |
| Lost equip equity due to turn-back | $570,000 |
| Surety reimbursement obligations | $600,000 + |
| Loss of pre-qualifications | To be determined |
| Damage to reputation | To be determined |

25. Identify every project for which Durkin has submitted a bid since February 2, 2004. Identify the documents which support your answer.

**Project/ Bid Date**
- Solanco Fields 2-12-04
- Great Wolf Lodge & Resort 3-5-04
- St. Simon, St. Jude Hospital 3-25-04
- St Joe Medical 3-17-04
- Redeemer Retreat 4-9-04
- BJ's @ Warrington 5-4-04
- US Cold Storage 6-25-04
- Valley Square 7-27-04
- New Morgan Landfill 9-1-04
- Olympus 10-12-04
- Opus Dhl 10-22-04
- Carlisle Crossing 10-27-04
- Winchester Estates 2-19-04
- Buttonwood, City of Reading 4-22-04
- The Hills at Whitemarsh 4-23-04
- Walmart Distribution Center 6-14-04
- Hanson – Better Materials 7-16-04
- TriCounty Mall 10-12-04
- Chester County Juvenile 11-17-04
- Lot 2d @ Boulder 2-1-05
- Boulder Lot 2 3-30-05
- Bear Creek Wind Farm 4-22-05

The documents which support the bids are proprietary and reveal confidential business information and planning. If requested, records will be made available upon the execution of a confidentiality agreement.

26. Identify every project which you contend Durkin would have been awarded after February 2, 2004 had Durkin's Contract not been terminated. Identify the documents which support your answer.

ANSWER: Based on Durkin's experience and qualifications, Durkin believes that it would have been successful on all bids. The pre-qualification documents for PaDOT are available for inspection and copying and detail Durkin's qualifications but contain

KOP:304777v1 3514-04

A265

As to all answers:

The foregoing Answers to Interrogatories are true and correct to the best of my knowledge, information and belief.

_____
James W. Durkin

Sworn to and subscribed before me this 19th day of September, 2005.

_____
Notary Public

NOTARIAL SEAL
OLIVER P. HAZARD III, Notary Public
Southampton Twp., Bucks County
My Commission Expires May 13, 2006

KOP:304777v1 3514-04

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* <br><br> vs. <br><br> CITY OF NEWARK, et al., *Defendants* <br><br> and <br><br> CITY OF NEWARK, *Third-Party Plaintiff* <br><br> vs. <br><br> DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | CASE NO. 04-0163-GMS |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Intervenor* | |

### AFFIDAVIT OF MICHAEL D. DURKIN

STATE OF PENNSYLVANIA    )
                         )   ss.
COUNTY OF MONTOGOMERY    )

Michael D. Durkin, being duly sworn, deposes and states as follows:

1. I am of legal age and competent to make this Affidavit in support of Plaintiff's Answering Brief in Opposition to City of Newark Defendants' Motion for Judgment As a Matter of Law and for New Trial or Remittitur.

2. All statements made in this Affidavit are made on the basis of my personal knowledge.

A267

3. I am an officer of Plaintiff, Donald M. Durkin Contracting, Inc. ("Durkin").

4. If Durkin was approached about bidding on a job, the job would have been discussed with my brother, Donald M. Durkin, Jr. or my brother, Jim Durkin.

5. I never spoke with Ronald Scott Killen about Durkin bidding on a project at the Delaware Solid Waste Authority in or around April 2004.

6. I never spoke to anyone about Durkin bidding on a project at the Delaware Solid Waste Authority.

7. Moreover, I have never, at any time, ever spoken to Ronald Scott Killen.

8. I have never told anyone that Durkin would not be bidding any work until after the litigation with the City of Newark was completed. In fact, Durkin has bid on projects while this litigation was pending.

9. In answers to interrogatories Durkin listed every project it bid on since February 2, 2004 (the date of termination) up to and including April 22, 2005. Response to Interrogatory No. 25 listing the projects Durkin bid on is attached hereto as Exhibit "A".

I state under penalty of perjury that the facts in the foregoing Affidavit are true and correct to the best of my knowledge, information and belief.

Date: 2/27/07

_____
Michael D. Durkin

SWORN TO AND SUBSCRIBED
Before me this 27 day of
February, 2007.

_____
Notary Public

NOTARIAL SEAL
OLIVER P HAZARD III
Notary Public
PHILADELPHIA CITY, PHILADELPHIA COUNTY
My Commission Expires Jun 15, 2010

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* <br> vs. <br> CITY OF NEWARK, et al., *Defendants* <br> and <br> CITY OF NEWARK, *Third-Party Plaintiff* <br> vs. <br> DONALD M. DURKIN CONTRACTING and FEDERAL INSURANCE COMPANY, *Third-Party Defendants* | CASE NO. 04-0163-GMS |

### PLAINTIFF'S ANSWERS AND OBJECTIONS TO THE CITY OF NEWARK'S FIRST SET OF INTERROGATORIES

#### GENERAL OBJECTIONS

Plaintiff generally objects to each Interrogatory on the grounds that the same purport to extend the scope and nature of the duty to provide the answers beyond that required by the applicable rules of procedure. Plaintiff refuses to provide such answers and shall limit its responses hereto as provided by the applicable rules of procedure. Without limitation, Plaintiff does not accept any condition that the Interrogatories are continuing and undertakes no duty to supplement the answers hereto other than provided by the applicable rules of procedure.

Plaintiff generally objects to each Interrogatory on the grounds that the definitions and instructions incorporated in same rendered the Interrogatories overbroad, unreasonable, burdensome, and in some cases incomprehensible. Plaintiff shall interpret the Interrogatories without reference to the definitions and instructions, in accordance with the common meaning of the words therein and applicable rules of procedure.

Plaintiff generally objects to each of the Interrogatories to the extent same seek the

KOP:304777v1 3514-04

| | |
|---|---|
| Idle eq fleet 2/04-9/05 $228400/month | $4,568,000 |
| Lost equip equity due to turn-back | $570,000 |
| Surety reimbursement obligations | $600,000 + |
| Loss of pre-qualifications | To be determined |
| Damage to reputation | To be determined |

25. Identify every project for which Durkin has submitted a bid since February 2, 2004. Identify the documents which support your answer.

**Project/ Bid Date**
- Solanco Fields 2-12-04
- Great Wolf Lodge & Resort 3-5-04
- St. Simon, St. Jude Hospital 3-25-04
- St Joe Medical 3-17-04
- Redeemer Retreat 4-9-04
- BJ's @ Warrington 5-4-04
- US Cold Storage 6-25-04
- Valley Square 7-27-04
- New Morgan Landfill 9-1-04
- Olympus 10-12-04
- Opus Dhl 10-22-04
- Carlisle Crossing 10-27-04
- Winchester Estates 2-19-04
- Buttonwood, City of Reading 4-22-04
- The Hills at Whitemarsh 4-23-04
- Walmart Distribution Center 6-14-04
- Hanson – Better Materials 7-16-04
- TriCounty Mall 10-12-04
- Chester County Juvenile 11-17-04
- Lot 2d @ Boulder 2-1-05
- Boulder Lot 2 3-30-05
- Bear Creek Wind Farm 4-22-05

The documents which support the bids are proprietary and reveal confidential business information and planning. If requested, records will be made available upon the execution of a confidentiality agreement.

26. Identify every project which you contend Durkin would have been awarded after February 2, 2004 had Durkin's Contract not been terminated. Identify the documents which support your answer.

ANSWER: Based on Durkin's experience and qualifications, Durkin believes that it would have been successful on all bids. The pre-qualification documents for PaDOT are available for inspection and copying and detail Durkin's qualifications but contain

KOP:304777v1 3514-04

A271