**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

DONALD M. DURKIN                )
CONTRACTING, INC.,              )
                                )
      Plaintiff,                )
                                )
    v.                          )   No. 04-0163-GMS
                                )
CITY OF NEWARK, HAROLD F.       )
GODWIN, JOHN H. FARRELL, IV,    )
JERRY CLIFTON, KARL G.          )
KALBACHER, DAVID J. ATHEY,      )
FRANK J. OSBORNE, JR., and      )
CHRISTINA REWA,                 )
                                )
      Defendants/               )
      Third-Party Plaintiffs,   )
    v.                          )
                                )
FEDERAL INSURANCE COMPANY,      )
                                )
      Third-Party Defendant.    )
                                )
------------------------------------------------ )
                                )
CITY OF NEWARK,                 )
                                )
      Third-Party Plaintiff,    )
                                )
    v.                          )
                                )
URS CORPORATION,                )
                                )
      Third-Party Defendant.    )

**CITY OF NEWARK DEFENDANTS' POST-TRIAL REPLY BRIEF IN SUPPORT
OF THEIR MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR A
<u>NEW TRIAL OR REMITTITUR</u>**

CONNOLLY BOVE LODGE & HUTZ LLP
Collins J. Seitz, Jr. (Bar No. 2237)
Max B. Walton (Bar No. 3876)
Josiah R. Wolcott (Bar No. 4796)
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

*Attorneys for Defendants, City of Newark, Harold F. Godwin, John H. Farrell, IV, Jerry Clifton, Karl G. Kalbacher, David J. Athey, Frank J. Osborne, Jr., and Christina Rewa*

Dated:  March 23, 2007

**TABLE OF CONTENTS**

ARGUMENT ...................................................................................................................1

I.     UNDER RULE 50, THE CITY IS ENTITLED TO A NEW TRIAL ON
       CONTRACT DAMAGES AS A MATTER OF LAW ..........................................1

       A.     The City Raised The Contract Damages Issue In Its Rule 50(a)
              Motion..................................................................................................1

       B.     Termination For Convenience Is The Proper Measure Of Damages...........5

       C.     The Change Order Provisions Do Not Apply .............................................6

       D.     Durkin's "Quantum Meruit" Theory Is Too Late And Inapplicable ..........7

       E.     Durkin Is Not Entitled To Attorneys' Fees...............................................9

       F.     Durkin Is Not Entitled To Lost Business And Lost Future Profits.............9

II.    ALTERNATIVELY, THE CITY IS ENTITLED TO A NEW TRIAL ON
       CONTRACT DAMAGES UNDER RULE 59. .....................................................11

       A.     The Award Is Inconsistent With The Contract And Delaware Law..........11

       B.     Jury Instruction 21 Constitutes Prejudicial Error Of Law ........................11

       C.     The Award Was Grossly Excessive .........................................................12

       D.     The Newly Discovered Evidence.............................................................13

       E.     Durkin's "Statement of Damages" At Trial Caused Unfair Surprise ........13

III.   THE CITY IS ENTITLED TO JMOL ON THE CIVIL RIGHTS CLAIM ..........14

IV.    ALTERNATIVELY, THE COURT SHOULD GRANT A NEW TRIAL OR
       REMITTITUR ON THE CIVIL RIGHTS CLAIM UNDER RULE 59................18

       A.     The Jury Instructions Misstate The Law..................................................18

       B.     The Damages Are Not Supported By The Record......................................19

       C.     The Civil Rights Damages Were Not Based On The Evidence.................19

       D.     In The Alternative, The Court Should Grant Remittitur To Reduce
              The Excessive Award ............................................................................20

CONCLUSION...............................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd.*,
  880 F.2d 176 (9th Cir. 1989) ....................................................................... 3

*Andrews Miller Assoc. Inc. v. Forrest Grove, Inc.*,
  Civ. A. No. 92C-08-21, 1994 WL 380996 (Del. Super. Ct. July 1, 1994) ................. 20

*Boyle v. United Technologies Corp.*,
  487 U.S. 500 (1988)................................................................................... 3

*Brown v. Sandals Resorts Intl*,
  284 F.3d 949 (8th Cir. 2002) ...................................................................... 12

*Capron Trail Dev't Dist. v. Fernz Ent., Inc.*,
  674 So.2d 875 (Fl. App. 1996) ..................................................................... 9

*Chemipal Ltd. v. Slimfast Nutritional Foods Intl, Inc.*,
  350 F. Supp. 2d 582 (D. Del. 2004)............................................................... 8

*Choy v. Bouchelle*,
  436 F.2d 319 (3d Cir. 1970).......................................................................... 12

*City of St. Louis v. Praprotnik*,
  485 U.S. 112 (1988).................................................................................. 3

*Cypress Ins. Co. v. Clark*,
  144 F.3d 1435 (11th Cir. 1998) ..................................................................... 17

*Dill v. Chastain*,
  507 S.E.2d 872 (Ga. App. 1998)................................................................... 8

*Diversified Packing & Dev. Corp. v. Dore & Associates Contracting, Inc.*,
  48 Fed. Appx. 392 (3d Cir. 2002) .............................................................. 8, 11

*Duncan v. TheraTx, Inc.*,
  775 A.2d 1019 (Del. 2001) .......................................................................... 8

*Eisenmann Corp. v. General Motors Corp.*,
  C.A. No. 99C-07-260-WTQ, 2000 WL 140781 (Del. Super. Ct. Jan. 28, 2000) ........... 7

*ES-Tee Realty Co., LLC v. Soumekhian*,
  No. 04C-CV-3482, 2006 WL 2860810 (E.D.N.Y. Sept. 29, 2006)........................... 7

*Garrison v. Molears North America, Inc.*,
  820 F. Supp. 814 (D. Del. 1993)................................................................... 13

*Green v. Mangold*,
  1983 WL 103267 (Del. Ch. Sept. 2, 1983) ..................................................... 10

*Handcock Electronics v. Washington Met. Area Transit Auth.*,
  81 F.3d 451 (4th Cir. 1996) ........................................................................ 5

*Heather Const. Inc. v. Gangi*,
  1987 WL 8215 (Del. Super. Ct. Mar. 16, 1987) ............................................... 8

*Heitz v. Sayers*,
  121 A. 225 (Del. Super. Ct. 1923) ............................................................. 7, 8

*Hill v. Borough of Kutztown*,
  455 F.3d 225 (3d Cir. 2006)........................................................................ 18

*In re Montgomery Ward Holding Corp.*,
  326 F.3d 383 (3d Cir. 2003)........................................................................ 6

*John Reiner & Co. v. United States*,
  325 F.2d 438 (Cl. Ct. 1963), *cert. denied*, 377 U.S. 931 (1964) ...................... 5

*Larry Muko, Inc. v.*
  *Southwestern Penn. Building and Construction Trades Council,*
  670 F.2d 421 (3d Cir. 1982)................................................................. 12
*Lewis Jorge Const. Management, Inc. v. Pomona Unified School Dist.,*
  102 P.3d 257 (Cal. 2004) ................................................................... 10
*Linan-Faye Const. Co. v. Housing Authority of Camden,*
  49 F.3d 915 (3d Cir. 1995)........................................................... passim
*Marrero v. City of Hialeah,*
  625 F.2d 499 (5th Cir. 1980) ............................................................. 17
*McDaniels v. Flick,*
  59 F.3d 446 (3d Cir. 1995).................................................................... 4
*McNello v. John B. Kelly, Inc.,*
  283 F.2d 96 (3d Cir. 1960).................................................................. 12
*Nepa v. Marta,*
  415 A.2d 470 (Del. 1980) ................................................................. 7, 8
*Novak v. City of Pittsburgh,*
  No. 2:05-CV-00897, 2006 WL 3420959 (W.D. Pa. Nov. 27, 2006) ............ 14
*O'Brien v. Progressive Northern Ins. Co.,*
  785 A.2d 281 (Del. 2001) ..................................................................... 7
*Olsen v. T.A. General Contractor, Inc.,*
  907 A.2d 146, 2006 WL 2661140 (Del. 2006) ....................................... 6
*Penn. Glass Sand Corp. v. Caterpillar Tractor Co.,*
  652 F.2d 1165 (3d Cir. 1981)............................................................... 5
*Piecknick v. Commonwealth of Pennsylvania,*
  36 F.3d 1250 (3d Cir. 1994)......................................................... 15, 17
*Pietroniro v. Borough of Oceanport,*
  764 F.2d 976 (3d Cir. 1985)............................................................... 17
*Rodgers v. Fisher Body Div., General Motors Corp.,*
  739 F.2d 1102 (6th Cir. 1984) ........................................................... 19
*S & D Maintenance Co. v. Goldin,*
  844 F.2d 962 (2d Cir. 1988)..................................................... 16, 17, 18
*Shifa Services, Inc. v. The Port Authority of New York,*
  No. 96 Civ. 1361, 1997 WL 16062 (S.D.N.Y. Jan. 15, 1997).......... 16, 17, 18
*Stambaugh's Air Service, Inc. v.*
  *Susquehanna Area Regional Airport Authority,*
  No. 1:00-CV-660, 2006 WL 709229 (M.D. Pa. Mar. 16, 2006) ...... 16, 17, 18
*Sullivan v. State of New Jersey,*
  602 F. Supp. 1216 (D.N.J. 1985) ........................................................ 17
*Swinehart v. McAndrews,*
  221 F. Supp.2d 552 (E.D. Pa. 2002) ................................................... 15
*Tigg Corp. v. Dow Corning Corp.,*
  962 F.2d 1119 (3d Cir. 1992).............................................................. 11
*Union Fire Ins. Co. of Pa. v. Pan Am. Energy, LLC,*
  C.A. No. 19629-NC, 2003 WL 1432419 (Del. Ch. Mar. 19, 2003) .............. 6
*United States v. Russell,*
  134 F.3d 171 (3d Cir. 1998)............................................................... 12

*Williams v. Runyon,*
   130 F.3d 568 (3d Cir. 1997)............................................................................ 2

*Zedner v. United States,*
   126 S. Ct. 1976 (2006) ................................................................................... 4

**Statutes**

10 *Del. C.* § 3912 ............................................................................................... 20

**Other Authorities**

9 *Moore's Federal Practice* § 50.21[2] ............................................................... 3

9 *Moore's Federal Practice*, § 51.32[4] .............................................................. 3

**Rules**

Rule 50(a)................................................................................................... passim

Rule 50(a)(2) ................................................................................................ 1, 3

Rule 50(b) .................................................................................................... 4, 5

Rule 59 .......................................................................................................... 4

## ARGUMENT

In its answering brief, Plaintiff Donald M. Durkin Contracting, Inc. ("Durkin") has failed to rebut what common sense reveals as a simple truth. The jury's $11.6 million contract damage verdict awarded Durkin far in excess of what it could have received under the $9.8 million construction contract ("Contract"), for which Durkin was already paid $6.2 million. Durkin also has no credible answer to the City of Newark's ("City") argument that the jury's $25 million civil rights award cannot stand because Durkin had no constitutionally-protected liberty interest in the Contract – a claim that Durkin never defined for the Court until the sixth day of trial.

Lacking persuasive responses to the legal issues raised by the City, Durkin relies on erroneous procedural arguments, attempting to preclude the Court from doing what it stated it would do – address many of the problems occurring at trial as part of the post-trial motion process. The Court should dismiss Durkin's flawed procedural arguments, and determine whether Durkin offered plainly incorrect contractual and constitutional legal analyses to the Court and to the jury, which resulted in an excessive damage award.

## I.    UNDER RULE 50, THE CITY IS ENTITLED TO A NEW TRIAL ON CONTRACT DAMAGES AS A MATTER OF LAW

**A. The City Raised The Contract Damages Issue In Its Rule 50(a) Motion.** Durkin argues that the City waived its contract damages argument under Article 15 because it supposedly failed to raise it with the specificity required by Rule 50(a)(2), and also supposedly failed to raise the argument in other submissions. AB 6-8. The arguments are without merit because the City expressly argued the issue in its Rule 50(a) motion, and the City was not required to raise the argument in other submissions.

The City's Rule 50(a) motion stated with specificity that Durkin was seeking damages "not allowable under the contract," and that "the contract provides that Durkin

1

is entitled to payment for completed work plus termination expenses" under "Contract, [Article] 15.4." D.I. 277; C39, C46 ("damages memorandum"). In addressing the City's 50(a) motion on October 3, 2006, the day it was filed, Durkin's counsel discussed the "termination for convenience provisions"—Article 15—and the City's reliance on *Linan-Faye Const. Co. v. Housing Authority of Camden*, 49 F.3d 915 (3d Cir. 1995), which the City had discussed in its August 19, 2006 motion *in limine* as to valuation of plaintiff's damages. Tr. 995-97; A150-152; D.I. 152; C6-7. In its answering brief filed on October 4, 2006, Durkin further conceded that "the City has indicated that Section 15.4 of the Contract ... is the applicable provision for measuring damages." D.I. 280; C55, C59. On October 4, 2006, counsel for the City explained that the measure of damages was "for the Court to determine ... *which we have already addressed,*" alluding to the Rule 50(a) motion. Tr. 1029; A162.[1] Thus, as of October 4, 2006, the City in its Rule 50(a) motion contended that: (1) the proper measure of damages was an issue of law; (2) Durkin's measure was incorrect; (3) the proper measure was set forth in Article 15.4; and (4) the City relied on the Third Circuit's *Linan-Faye* decision.

The City's motion met the purpose of the specificity requirement – to avoid unfair surprise and afford the opposing party notice and an opportunity to cure possible defects. *Williams v. Runyon*, 130 F.3d 568, 571 (3d Cir. 1997). Durkin contends, however, that the City's Rule 50(a) motion lacked the requisite specificity because it did not contain the magic words, "constructive termination by convenience." AB 6. Neither of the cases

---

[1] Quoting this statement out of context, Durkin erroneously suggests that it was intended to limit the City's contract damages argument. AB 6. Alluding to the damages memorandum, the Court had asked counsel whether there was "*anything more* you wanted to say on the issue of damages that hasn't been said." Tr. 1028-29; A161-62 (emphasis added). Counsel simply responded that the City was not making arguments in addition to those arguments already in the record.

2

that Durkin relies upon supports this form-over-substance argument.[2]   On the contrary, even in cases in which the level of specificity was legitimately challenged, courts have recognized that where "the trial court and the parties actually are aware of the grounds for the motion, strict enforcement of the specificity requirement is unnecessary to serve the purposes of Rule 50(a)(2)." 9 *Moore's Federal Practice*, § 50.21[2] (citing cases).

Durkin also claims—without authority—that the City "abandoned" its contract damages argument by failing to raise it in other, non-Rule 50 matters, such as in its jury instructions.   AB 6-7.   The Supreme Court has squarely rejected such an "indirect waiver" theory.   In *Boyle v. United Technologies Corp.*, 487 U.S. 500, 513-14 (1988), the Court held that judgment could properly be entered for the defendant based on a defense raised in a Rule 50(a) motion "*even though* (as [plaintiff] claims) [the defendant] failed to object to jury instructions that expressed the defense differently, and in a fashion that would support a verdict." *See also City of St. Louis v. Praprotnik*, 485 U.S. 112, 120 (1988) ("the failure to object to an instruction does not render the instruction the 'law of the case' for purposes of appellate review of the denial of a directed verdict or judgment notwithstanding the verdict") (internal citations, quotations omitted) (plurality opinion).[3]

Durkin's indirect waiver argument is also factually inaccurate.   The City's trial brief did not "shift" from its contract damages argument (AB 6) but expressly stated that if Durkin were to prevail on its breach of contract claim, "[e]xpectation damages *or*

---

[2] In *Williams*, the defendant's Rule 50(a) motion did not argue that the plaintiff failed to exhaust her administrative remedies under Title VII.   130 F.3d at 571.   In *Cipriani v. Lycoming County Housing Authority*, 177 F.Supp.2d 303, 314-16 (M.D. Pa. 2001), defendants conceded that they had not raised their issues regarding recovery of front pay and governmental immunity in their oral Rule 50(a) motion.

[3] *See Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 182-84 (9th Cir. 1989); 9 *Moore's Federal Practice*, § 51.32[4] ("a litigant's failure to object to erroneous instructions does not preclude appellate review of unsuccessful motions for ... directed verdict ... under the correct law").

3

*termination for convenience damages provisions govern,*" DA[4] 214; D.I. 158. The City's Rule 50(b) motion stated that Durkin's measure of damages "is not supported by the contract" and incorporated by reference its Rule 50(a) motion, including the damages memorandum expressly identifying the Article 15.4 measure of damages. D.I. 303; C122. The City's Rule 59 motion contended that Durkin's valuation of damages was "not supported by the contract" and argued that the Court erred when it denied the City's motion *in limine* as to valuation of damages. D.I. 304; C125-127. And in both its Rule 50(b) and 59 motions, the City stated that it would supplement the motions with detailed briefs once the transcripts became available. D.I. 303; C112; D.I. 304; C125.[5]

Finally, Durkin suggests without supporting authority that the City waived its Rule 50 contract damages argument by making an inconsistent statement in its closing argument regarding Durkin's demand for post-termination damages. AB 6 n.5. This argument is simply a flawed attempt to invoke principles of judicial estoppel. *See McDaniels v. Flick*, 59 F.3d 446, 449 (3d Cir. 1995) (rejecting contention that defendant's closing argument estopped it from pursuing Rule 50(b) motion). For the doctrine to apply, not only must a party have taken a prior inconsistent position, it must have "succeeded in persuading a court to accept [the] earlier position" such that the party "would derive an unfair advantage or impose an unfair detriment on the opposing party" without estoppel. *Zedner v. United States*, 126 S. Ct. 1976, 1987 (2006). The City did

---

[4] Durkin's appendix, which does not number its pages with the required "B" cite, is cited herein as DA___.

[5] Several other statements in Durkin's brief are factually inaccurate. Durkin incorrectly states that the City did not provide an instruction on an alternate measure of damages, when the City clearly did. *Compare* AB 2, n.2 with Tr. 1148, A172 and C108. Durkin also claims that the City "had been provided with all of the backup documentation for the damages being sought by Durkin" (AB 22), but fails to note that this "backup" information was produced two months after Donald Durkin, the sole damages witness, was deposed. *Compare* A56 and C1. Durkin attached to its brief a chart purportedly showing the City's damage calculation arguments (DA199), but omits many pertinent arguments made by the City. *See infra* at pp. 2-4.

4

not "prevail" because the jury awarded Durkin the full damages requested. Durkin cannot show any unfairness where the City raised the argument in its Rule 50(a) motion.[6]

**B. Termination For Convenience Is The Proper Measure Of Damages.** As explained in the City's opening brief, in the absence of bad faith, it is "settled law" that a government's faulty termination for cause is treated as a termination for convenience. OB 5-7; *Linan-Faye,* 49 F.3d at 920-26; *Handcock Electronics v. Washington Met. Area Transit Auth.,* 81 F.3d 451, 454 (4th Cir. 1996).[7] As a threshold matter, the City is not arguing, as Durkin seems to contend, that the Contract is governed by federal common law. AB 10-12. Instead, Delaware law applies. OB 8, n.8. Like the Third Circuit did in *Linan-Faye* under New Jersey law, this Court predicts whether the Supreme Court of Delaware would apply the constructive termination for convenience doctrine. 49 F.3d 921-22.[8] No state has rejected this well-established doctrine.

Contrary to Durkin's assertions (AB 8), the Contract need not incorporate federal regulations or expressly mention constructive termination for convenience. In *Linan-Faye*, the Third Circuit found a similar argument "unpersuasive." *Id.* at 923. Because constructive termination for convenience is a common law doctrine, no express clause is required. *See id.* at 926; *see also John Reiner & Co. v. United States,* 325 F.2d 438, 439 (Cl. Ct. 1963), *cert. denied,* 377 U.S. 931 (1964).

---

[6] As addressed in section III below, Durkin's contention that the City failed to raise its Rule 50(a) civil rights argument with specificity (AB 29) is also without merit. Durkin's waiver arguments relating to the contract damages jury instruction (AB 3-5) and the civil rights jury instructions (AB 28-29) relate only to the City's alternative Rule 59 motion. These arguments are addressed in sections II.B and IV, *infra*.

[7] Durkin's claim that a breach for failure to provide seven days notice of termination precludes application of the constructive termination for convenience doctrine (AB 7) is also contrary to *Linan-Faye*. In *Linan-Faye*, as is alleged here, the local government improperly terminated the contract for cause. Even so, the Third Circuit held that the common law doctrine of constructive termination for convenience applied. 49 F.3d at 922-23.

[8] *See Penn. Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1167 (3d Cir. 1981) ("When faced with no authoritative decisions of a state's highest court on an issue, a federal court applying that state's law must predict how that court would rule if presented with the issue").

5

Durkin also claims that the Contract is ambiguous, and must be construed against the City, because the Contract does not contain an "express directive" on damages if the City breaches. AB 8. This argument fails because an omission in a contract does not create an ambiguity. *Union Fire Ins. Co. of Pa. v. Pan Am. Energy, LLC*, C.A. No. 19629-NC, 2003 WL 1432419, at *5 (Del. Ch. Mar. 19, 2003). If "[t]he parties did not contract explicitly with reference to the measure of damages . . . all this means is that the victim of the breach is entitled to his common law damages." *In re Montgomery Ward Holding Corp.*, 326 F.3d 383, 391 (3d Cir. 2003). Durkin does not cite a single case holding that a contract without an express damages remedy is ambiguous.

**C. The Change Order Provisions Do Not Apply.** Durkin's attempt to support the jury's contract damage award based upon the change order provisions of the Contract (Article 11) also fails as a matter of law. Durkin does not dispute that the Contract is a lump sum contract (Tr. 889; A108), that the Contract states that the "total compensation" payable to Durkin is the Contract price (Article 11.1; A34), and that Durkin's obligations are to be undertaken "without change in the Contract Price." OB 8-10. Durkin fails to acknowledge that the City must approve a submitted change order before Article 11 applies. *See Olsen v. T.A. General Contractor, Inc.*, 907 A.2d 146, 2006 WL 2661140, at *2-3 (Del. 2006) (affirming that "the change orders did not qualify for payment under the contract, because the contract language specifically required that all change orders must be signed by all of the parties."). Durkin has not cited a single case that applies Article 11 of the AIA contract (the form contract used by Durkin and the City) in the absence of a change order, and thereby allows a contractor to expand the contract value by nearly $8 million when the contractor performed only 70% of the work. Because the interpretation of the contract is a question of law (*O'Brien v. Progressive Northern Ins. Co.*, 785 A.2d

281, 286 (Del. 2001)), and because the change order provisions of the Contract cannot as

a matter of law govern damages without submission and approval of change orders, the

City's motion should be granted.[9]

**D.    Durkin's "Quantum Meruit" Theory Is Too Late And Inapplicable**.

Relying on a 1923 lower court opinion and a quantum meruit theory of damages never

presented to the Court or the jury until now (*see* D.I. 290; DA182-198), Durkin attempts

to justify a damage award in excess of the Contract price.  Durkin cannot now raise an

entirely new claim which depends on entirely different legal standards than those given to

the jury.  *See ES-Tee Realty Co., LLC v. Soumekhian*, No. 04C-CV-3482, 2006 WL

2860810, at *5 n.6 (E.D.N.Y. Sept. 29, 2006).

Equally important, the 1923 decision on which Durkin relies, *Heitz v. Sayers*, 121

A. 225 (Del. Super. Ct. 1923), is not from the Supreme Court of Delaware as Durkin

states in its brief (AB 14), but is instead from an intermediate court, and is contrary to

recent Supreme Court of Delaware precedent.  Delaware's highest court and the Superior

Court have unequivocally held that where an express contract exists, the plaintiff cannot

rely upon quantum meruit as an alternative damage remedy.  *Nepa v. Marta*, 415 A.2d

470, 472 (Del. 1980) ("A quantum meruit recovery is an award where recovery under

contract is not available."); *Eisenmann Corp. v. General Motors Corp.*, C.A. No. 99C-07-

260-WTQ, 2000 WL 140781, at *14 (Del. Super. Ct. Jan. 28, 2000).

In the construction context, courts consistently hold that the amount that would

put the promisee (Durkin) in the same position as if the promisor (the City) had

performed the contract is "the 'contract price (or so much as remains unpaid) less the

---

[9] Durkin argues that certain weather delays were "included in the damages being claimed by Durkin." AB 13.  Durkin never submitted a change order for weather related delays (OB 13, n.22; Tr. 950; A142), and there is no evidence of record about weather-related delay costs.

amount it would cost the [contractor] . . . to complete the job.'" *Diversified Packing &*
*Dev. Corp. v. Dore & Associates Contracting, Inc.*, 48 Fed. Appx. 392, 399-400 (3d Cir.
2002); *Dill v. Chastain*, 507 S.E.2d 872, 873 (Ga. App. 1998); 3 Steven G.M. Stein,
*Construction Law*, § 11.02[4][6] (Matthew Bender 2006); OB 12-14.  Because Durkin
can only receive the amount of money that would put it "in the same position as if the
[City] had performed the contract," (*Duncan v. TheraTx, Inc.*, 775 A.2d 1019, 1022 (Del.
2001)), the damages are the unpaid contract price less the amount it would cost Durkin to
complete the work.  The *Heitz* case is also contrary to this Court's pronouncement of
Delaware law for breach of contract damages.  *Chemipal Ltd. v. Slimfast Nutritional
Foods Intl, Inc.*, 350 F. Supp. 2d 582, 595 (D. Del. 2004).

     Even assuming that Durkin can disregard a plethora of contrary decisions since
1923, and even if the *Heitz* decision is applied, the non-breaching party must seek quasi
contract damages "without any reference to the special agreement, the same as if none
had ever been entered into by him."  121 A. at 230; *see also Heather Const. Inc. v.
Gangi*, 1987 WL 8215, at *3 (Del. Super. Ct. Mar. 16, 1987) (noting that a party "may
disregard the contract and recover the value of his services rendered in partial
performance").[10]  In this case, Durkin did not "disregard" the Contract.  Instead, Durkin
relied upon and submitted to the jury the Contract change order provisions in Article 11
(DUR-68; A181), and offered no evidence of the value of the work actually performed.
Therefore, there was nothing upon which the jury could rely to determine quantum
meruit, even if the jury had been charged on the issue.

---

[10]  In both *Heather Construction* and *Nepa*, the existence of an express contract had not been
established, making quantum meruit the only remedy.  *Heather*, 1987 WL 8215, at *3 (case had
been remanded to determine whether an agreement existed); *Nepa*, 415 A.2d at 472 (express
contract did not exist for commission).

8

**E. Durkin Is Not Entitled To Attorneys' Fees.** Durkin argues that Article 17.5 of the Contract allows it to recover attorneys' and professional fees even if the phrase "claims, costs, losses and damages" is not used in the article of the Contract breached. AB 15-16. Article 17.5 specifically defines the phrase "claims, costs, losses and damages," and the Contract article breached must expressly permit recovery for "claims, costs, losses and damages," before attorneys' fees are awarded. OB 11. Because no provision of the Contract permits a fee award, the American Rule applies, and attorneys' fees are not recoverable.[11]

**F. Durkin Is Not Entitled To Lost Business And Lost Future Profits.** Durkin's answering brief does not contest that "consequential damages in the form of goodwill, lost future profits, and lost customers are not awarded in breach of contract actions" under Delaware law. *Chemipal Ltd.*, 350 F. Supp. 2d at 595 (internal quotations omitted). Instead, Durkin attempts to avoid this precedent by focusing on the secondary damages flowing from its claimed loss of goodwill and future profits, i.e., the need to replace lost "operating revenue" (DUR68; A181) by borrowing money and selling equipment. AB16-17. Durkin's argument fails because, where claimed damages for loss of goodwill and future profits are too speculative, secondary damages claimed to flow therefrom even more speculative and therefore *a fortiori* impermissible.

Donald Durkin's testimony about his two sisters and his mother (AB 16-17, *citing* DA 121, Tr. 915) and Durkin's counsel's legal argument (AB 16, *citing* DA 157; Tr. 1165) are irrelevant. Mr. Durkin testified that breach caused Durkin to suffer the loss of "reputation" and prevented it from obtaining future profitable work ("We have not

---

[11] Durkin's reliance on *Capron Trail Dev't Dist. v. Fernz Ent., Inc.*, 674 So.2d 875 (Fl. App. 1996) is misplaced. The case does not address whether the phrase "claims, costs, losses, and damages" must be used in a specific article of the contract before attorneys' fees can be awarded. Moreover, the case reverses the lower court's decision awarding attorneys' fees.

performed a job since the date of this termination"). Tr. 906; A125. This loss of goodwill and future profits is then claimed to have required a series of further actions, including borrowing money and selling equipment. Tr. 911-12; A130-131. Based on this claim of damages flowing from its loss of "goodwill, lost future profits, and lost customers," Durkin impermissibly obtained over $4 million. DUR-68; A181.

Durkin ignores several decisions cited by the City that are squarely on point. For example, Durkin does not address *Lewis Jorge Const. Management, Inc. v. Pomona Unified School Dist.*, 102 P.3d 257, 267 (Cal. 2004), in which the court, in reversing a $3 million lost profits award to a construction company, held:

> It is indisputable that the District's termination of the school construction contract was the first event in a series of misfortunes that culminated in Lewis Jorge's closing down its construction business. Such disastrous consequences, however, are not the natural and necessary result of the breach of every construction contract involving bonding. Therefore ... lost profits are not general damages here. Nor were they actually foreseen or foreseeable as reasonably probable to result from the District's breach. Thus, they are not special damages in this case.

Instead, Durkin relies on the inapposite decision in *Green v. Mangold*, 1983 WL 103267 (Del. Ch. Sept. 2, 1983), in which one of the parties to a residential real estate sales agreement refused to execute the deed in a timely manner, thereby forcing the buyer to incur one month's additional interest associated with a bridge loan. In that context, the additional loan cost incurred for the purchase of the property was a reasonably foreseeable consequence of the breach of the agreement. By contrast, here, as in *Lewis Jorge*, there was no evidence that Durkin's future need to borrow money or sell equipment was actually foreseen or foreseeable as reasonably probable to result from the City's failure to give seven days notice of termination. These alleged damages were secondary aspects of the "series of misfortunes" that Durkin claims began with its loss of

reputation and future profits. Durkin obtained an impermissible award of future lost profit damages and lost business that should be set aside.[12]

## II. ALTERNATIVELY, THE CITY IS ENTITLED TO A NEW TRIAL ON CONTRACT DAMAGES UNDER RULE 59

**A. The Award Is Inconsistent With The Contract And Delaware Law**. As discussed above, the breach of contract damage award is inconsistent with the termination for convenience provision in Article 15.4 and Delaware's common law measure of damages. *See also* OB 7-17. If the damage award is contrary to the law, the City should be granted a new trial. *See Diversified Packing*, 48 Fed. Appx. at 402. Durkin cites no authority to the contrary. AB 19.

**B. Jury Instruction 21 Constitutes Prejudicial Error Of Law.** While jury instruction 21 states the general measure of damages, it does not state the correct measure of damages under Article 15.4 or under Delaware law. OB 7-18. As discussed above, the jury employed a legally erroneous standard proposed by Durkin based on Durkin's "itemized statement of damages" instead of the Contract. DUR-68; A181. The law is settled that an erroneous or incomplete jury instruction constitutes plain error requiring a new trial. *Tigg Corp. v. Dow Corning Corp.*, 962 F.2d 1119, 1131 (3d Cir. 1992).

Durkin's waiver argument fails because the City raised the proper contract damages standard in its Rule 50(a) motion, and the Court expressly reserved decision on the motion. Tr. 1028; A161. The City argued for a measure of damages contrary to that presented to the jury, and counsel for the City and Durkin, as well as the Court, recognized that the City's jury instruction objection was bound up with the contract

---

[12] Ironically, Durkin cites the termination for convenience provision (Article 15.4) to justify the award of post-termination expenses. AB 18. Earlier in its brief, however, Durkin argues that the termination for convenience provisions should not apply. AB 7-12. Durkin also states that reference to Article 15.4 "would have the effect of eliminating all damages not expressly included in Section 15.4" and "provide . . . [a] benefit to the City at the expense of Durkin." AB 9-10. Durkin cannot argue that Article 15.4 applies only when it suits Durkin's cause.

damages argument set forth in the City's Rule 50(a) motion and motion *in limine*. Tr. 995-98; A150-153.[13] The Court concluded, "This is something that can be corrected ... post-verdict." Tr. 998, A153; Tr. 1143, C76; Tr. 1167-68, A179-180. Therefore, while the City continued to make efforts to improve the instruction at the direction of the Court, it never waived its fundamental objection that, as a matter of law, damages were limited to those available under Article 15. Tr. 995-98; A150-153; Tr. 1004-05; A155-156; Tr. 1028-29; A161-162; Tr. 1148; A172; Tr. 1161; A174; Tr. 1164-68; A177-180. *See Larry Muko, Inc. v. Southwestern Penn. Building and Construction Trades Council*, 670 F.2d 421, 425 n.1 (3d Cir. 1982) ("While Muko may not have formally objected to the jury charge, it is clear from the record that the judge was made aware of Muko's position 'before the jury retired to consider its verdict.'"); *see also United States v. Russell*, 134 F.3d 171, 178 (3d Cir. 1998) (applying reasoning of *Muko* in criminal case).[14] Finally, repetitive renewal of the same objection would have been futile. And, as demonstrated earlier, the erroneous instruction constitutes plain error. *McNello v. John B. Kelly, Inc.*, 283 F.2d 96, 101-02 (3d Cir. 1960). [15]

    **C. The Award Was Grossly Excessive**. Durkin does not dispute that if the jury award stands, Durkin will receive $17.8 million on a $9.8 million contract when it performed only 70% of the work. Compare OB 19 and AB 19. As discussed above, this

---

[13] *See also* Tr. 1001, C66 ("this was part of the earlier motion in limine") (Durkin's counsel); Tr. 1005; A156 ("is that not an instruction that would be based upon an argument that I have rejected ...?") (Sleet, J.); Tr. 1162, A175 ("this colloquy we are having is all an outgrowth of the motions in limine that you have reserved judgment on, Your Honor, the motion for directed verdict.") (Durkin's counsel).

[14] Arguments contained in a Rule 50(a) motion preserve objections to jury instructions, even when the party does not subsequently restate the Rule 50(a) arguments in the form of Rule 51 objections. *See Brown v. Sandals Resorts Intl*, 284 F.3d 949, 953 n.6 (8th Cir. 2002).

[15] *See also Choy v. Bouchelle*, 436 F.2d 319, 325 (3d Cir. 1970) ("We consider the charge . . . totally inadequate in providing legal guidelines to the relevant factual situations here involved, and though no objection was raised at trial, . . . our failure to consider this as plain error would be a miscarriage of justice.").

award is grossly excessive as a damage calculation under Article 15.4 of the Contract and under a standard common law measure of damages.  The Court should conclude that the jury's damage award is grossly excessive because the damages awarded are not supported by applicable law and will allow Durkin to collect nearly double the value of the contract under the change order provisions (Article 11) when it performed only 70% of the work. *See generally Garrison v. Molears North America, Inc.*, 820 F. Supp. 814, 822 (D. Del. 1993).

     **D.**    **The Newly Discovered Evidence**.  Durkin belittles the importance of a previously unknown witness who contacted the City after trial and provided evidence that Durkin's trial testimony was not accurate on its ability to obtain work.  OB 19-20; A237-38.  The City, however, was not aware of this witness before trial, the testimony is not cumulative, and could not have been discovered before trial.

     **E.**   **Durkin's "Statement of Damages" At Trial Caused Unfair Surprise**.  Durkin stated in its sworn interrogatories that it would call a damage expert at trial and the City's counsel relied on this representation when deposing Donald Durkin.  A50, A58-59.  Durkin had a duty to supplement its interrogatories, but never did so prior to trial.  *See* AB 22; FRCP 26(e).  In response, Durkin argues that it provided damages binders "prior to trial."  AB 22.  The damage binders referenced in Durkin's brief, however, were produced on July 20, 2006 (C1), two months after Donald Durkin's May 10, 2006 deposition.  A56.  Then, without notice on the fifth day of trial, Durkin first produced its "Itemized Statement of Damages" (DUR-68; A181) which differed significantly from the scant description of damages provided for the first time in the pre-trial order.  D.I. 277; C16.  Durkin's conduct unfairly prejudiced the City's ability to defend the damages presented.  A new trial should therefore be granted.

### III.    THE CITY IS ENTITLED TO JMOL ON THE CIVIL RIGHTS CLAIM

In its answering brief, Durkin concedes that it has never asserted a stigma-plus claim. AB 28. Rather, the only purported constitutional claim ever at issue was a claimed violation of its liberty interest to pursue its chosen occupation. AB 23. The evidence Durkin offered was insufficient, as a matter of law, to submit its sole constitutional claim to the jury. *See* OB 21-25.

Durkin claims that the City did not raise its civil rights damages argument in its Rule 50(a) motion with sufficient specificity. In its Rule 50(a) motion, the City made the same argument it makes now in its post judgment motion. D.I. 277 at 4; C42. The City stated:

> While courts have allowed claims for damages to business under § 1983, courts have also ruled that the Constitution only protects against state actions that threaten to deprive a person from pursuing their occupation. "It is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." . . . In this case, Durkin was terminated from one job and no official governmental policy of Newark deprived Durkin from pursuing its profession.

No greater specificity was reasonably required or could have been supplied because Durkin did not identify the particular constitutional right at issue until the evening of the fifth day of the trial, by means of a brief. Tr. 1022, A158; D.I. 272; C19-27. The next day, during the sixth day of trial, the City filed its Rule 50(a) motion and responded to Durkin's motion once again reiterating its Rule 50(a) civil rights argument. D.I. 276; C28-36. Durkin does not argue that it was unaware of the City's defense.

Turning to the merits, the City established in its opening brief that the liberty interest to pursue a chosen occupation has been narrowly construed by courts, including courts in this Circuit. *See Novak v. City of Pittsburgh*, No. 2:05-CV-00897, 2006 WL 3420959, at *4 (W.D. Pa. Nov. 27, 2006) ("The liberty interest [to pursue an occupation]

that is protected by the Due Process Clause is fairly narrow."). The cases which have recognized a liberty interest to pursue a chosen occupation have done so where the government acts as a regulator of the ability of a plaintiff to practice or engage in a particular profession or occupation, such as where a license is at issue. *See, e.g., Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1261 (3d Cir. 1994) (holding in a tow truck case that the plaintiff's liberty interest to pursue its occupation was not implicated, and contrasting that situation with one where the government regulates entry into a profession: "This case is distinguishable from those in which a person's license to pursue a chosen occupation is revoked or substantially interfered with . . . ."); *Swinehart v. McAndrews*, 221 F. Supp.2d 552, 556 (E.D. Pa. 2002) ("When a person's license to pursue a calling is taken away or interfered with in a substantial fashion, a plaintiff may demonstrate a due process violation."); *Novak*, 2006 WL 3420959, at *4 ("For example, decisions involving the revocation of a law or medical license may implicate this interest [to pursue a chosen occupation].").

Here, the sole relation between the City and Durkin was the Contract. Although Durkin offered evidence of breach of contract, the allegedly inappropriate withholding of Durkin's bond (Tr. 891; A110), alleged damages (Tr. 891-905; A110-124), and certain statements about Durkin's performance under the Contract that negatively impacted Durkin's ability to obtain other contracting work (AB 24-25), this evidence simply does not, as a matter of law, constitute a deprivation of Durkin's liberty interest to pursue its chosen occupation. Durkin did not, and could not show, that the City directly controlled Durkin's profession or withheld any professional license from Durkin. Where, as here, the government and the contractor are parties to a contract, there is no liberty interest claim even though: (a) the economic consequences of the alleged wrongful termination of

15

the contract are severe; and (b) the government, in addition to terminating the contract, is claimed to have acted in an allegedly grossly arbitrary fashion towards the contractor. *See Linan-Faye,* 49 F.3d at 932; *S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 970 (2d Cir. 1988); *Stambaugh's Air Service, Inc. v. Susquehanna Area Regional Airport Authority,* No. 1:00-CV-660, 2006 WL 709229, *3 (M.D. Pa. Mar. 16, 2006); *Shifa Services, Inc. v. The Port Authority of New York,* No. 96 Civ. 1361, 1997 WL 16062, *5 (S.D.N.Y. Jan. 15, 1997).

In *Linan-Faye,* the contractor similarly claimed that the government breached its contract with the plaintiff and, in addition, arbitrarily retained its performance bond so that the contractor could not get future work, with the intent to force the contractor to accept an unreasonable settlement. *Id.* at 929, 931. The Third Circuit specifically rejected these contentions, and held that they were insufficient to state a claim for deprivation of a liberty interest to pursue a chosen occupation. As the Third Circuit held, "although the consequential damages of an alleged breach may be severe, this fact alone cannot convert a contract claim into a deprivation of liberty." *Id.* at 932; OB 23-25; *see also S & D,* 844 F.2d at 970 (holding that even if the government's breach of the contract and arbitrary conduct had "forced [it] out of business," had left it "tot[t]ering near bankruptcy, unable to get work," the government's actions did not deprive the contractor of its right to pursue its occupation).

Durkin does not address the directly analogous cases cited in the City's brief. Durkin's only attempt to distinguish the *Linan-Faye, S & D,* and *Shifa Services* cases is relegated to footnote 35 of its brief. There Durkin states: "In all of the cases cited by the City, there was either no evidence that the plaintiff's business was completely destroyed or the Court specifically stated that there was no evidence that the plaintiff could not get

16

another job." That statement is simply incorrect. In each of the cases cited by the City, the contractor claimed that the government's termination of the contract and other arbitrary actions had left the plaintiff in financial ruin. *See Linan-Faye*, 49 F.3d at 929, 931 (claiming that the housing authority retained its bond so that the plaintiff could not get future work); *S & D*, 844 F.2d at 970 (claiming that the consequences of the government's conduct had "forced [it] out of business," had left it "tot[t]ering near bankruptcy, unable to get work," and "without sufficient capital to pursue *any* line of work") (emphasis in original); *Stambaugh's Air Service*, 2007 WL 709229, *2 (claiming that the consequences of the government's arbitrary action was "in effect, [to deny plaintiff] the opportunity to operate [its business at all]"); *Shifa Services*, 1997 WL 16062, *1 (claiming that the breach and refusal to allow plaintiff to bid on future contracts "deliberately ruined [the contractor's] business and forced it into bankruptcy").

In each of these cases the court held that no matter how much evidence plaintiff offered of harm to its business, they still could not maintain a liberty interest claim because the government, when acting merely as a contracting party, does not deprive a contractor of its right to pursue a chosen occupation regardless of the alleged arbitrariness of its conduct. *See Linan-Faye*, 49 F.3d at 932; *S & D*, 844 F.2d at 970; *Shifa Services*, 1997 WL 16062, *5; *Stambaugh's Air Service*, 2006 WL 709229, *3.[16] Because Durkin has no Fourteenth Amendment liberty interest claim for deprivation of any right to pursue a chosen occupation, the civil rights claim should be dismissed.

---

[16] The other cases cited by Durkin do not support its liberty interest claim. AB 23. *Pietroniro v. Borough of Oceanport*, 764 F.2d 976 (3d Cir. 1985) was based on a federal statute, not a liberty interest. *Piecknick*, 36 F.3d at 1250, held that the plaintiff was not deprived of its liberty interest to pursue an occupation. The only other case that merits discussion is *Marrero v. City of Hialeah*, 625 F.2d 499, 514 (5th Cir. 1980). AB 28. The "unconstitutional conduct" in *Marrero* referred to a Fourth Amendment violation which is not at issue here. *Id.* at 513-14. Further, other parts of *Marrero's* holding have been rejected by courts in this Circuit, *see Sullivan v. State of New Jersey*, 602 F. Supp. 1216, 1223-23 (D.N.J. 1985), and even by the Eleventh Circuit itself, *see Cypress Ins. Co. v. Clark*, 144 F.3d 1435, 1437-38 (11th Cir. 1998).

17

## IV.    ALTERNATIVELY, THE COURT SHOULD GRANT A NEW TRIAL OR REMITTITUR ON THE CIVIL RIGHTS CLAIM UNDER RULE 59

**A.    The Jury Instructions Misstate The Law.**    Durkin argues that the instructions "[t]aken as a whole" are "correct," (AB 31) but fails to address the City's argument that jury instruction 14 did not apprise the jury of the applicable law because, although a correct statement of the general law, it did not comport with *Linan Faye*. 49 F.3d at 932. The Third Circuit has specifically held a charge such as that requested by Durkin and given here as instruction 14 to be in error. *See Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 404-405 (3d Cir. 2000) (holding erroneous jury instructions that defined the plaintiff's constitutional right as the "liberty interest to engage in the transportation business" and stating that "our precedent has never read substantive due process as extending as far as did the District Court").

Durkin also argues that with regard to jury instructions 15 and 16, the City "has not identified any legal deficiency." AB 30. The instructions improperly advised the jury that if Durkin was deprived of a "right to hold specific private employment and to follow a chosen procession," then it could award damages if a custom or policy was found. OB 31-34. These instructions are in error because a government, when acting merely as a contracting party, does not deprive a contractor of its right to pursue a chosen occupation regardless of the alleged arbitrariness of its conduct. *Id.*; *S & D*, 844 F.2d at 970; *Shifa Services*, 1997 WL 16062, *5; *Stambaugh's Air Service*, 2006 WL 709229, *3. The instructions are also in error, contrary to Durkin's claims (AB 31), because they allow reputation damages on a liberty interest claim, which is not permitted in this circuit without a stigma-plus claim (*Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006)) – a claim Durkin concedes is not at issue here. AB 28.

For the same reasons that Durkin's waiver claim relating to the contract damages jury instruction lacks merit (*see* II.B *supra*), Durkin's waiver claim as to the civil rights jury instructions fails. After Durkin finally identified its liberty interest claim on the fifth day of trial, the City filed two briefs the next day that made its objections clear, including its Rule 50(a) motion. On day seven of the trial, the same day the parties and the Court discussed the civil rights jury charges for essentially the first and last time (Tr. 1025-26; C68-69; Tr. 1145-61; C77-93; Tr. 1175-82; C94-101) the Court advised counsel that it would reserve decision on the Rule 50(a) motion. Tr. 1028; A161. Because the Court had reserved decision on the Rule 50(a) motion, in which the City had contended there was no evidence that would warrant sending the liberty interest claim to the jury under any proper statement of the law, the City's ongoing objection to the jury instructions was adequately preserved. *See Muko*, 670 F.2d at 425. The plain error rule would apply in any event. OB 31-34.

**B. The Damages Are Not Supported By The Record.** Durkin does not directly refute the trial record evidentiary deficiencies, but instead relies on vague statements in the record regarding Durkin's contracting experience and other jobs that were performed by Durkin prior to termination. AB 32-33. Durkin offered no evidence about lost business (other than the erroneously calculated breach of contract damages) and can cite to no testimony establishing that it lost $25 million that would permit this massive amount of compensatory damages to be awarded by the jury. Lacking an evidentiary basis to support the $25 million damage award, a new trial should be granted. *Rodgers v. Fisher Body Div., General Motors Corp.*, 739 F.2d 1102, 1108 (6th Cir. 1984).

**C. The Civil Rights Damages Were Not Based On The Evidence.** Durkin argues that its $25 million compensatory damage award on the civil rights claim should

stand because "there is no evidence that the verdict was the product of passion or prejudice." AB 33.  Durkin fails to acknowledge that the massive award was not supported by any record evidence, and instead is based upon sympathy for Durkin's family business, his father's health, and the support received from Durkin's grandmother. OB 36-37.  This is a classic case where the jury abandoned its analysis for sympathy.

**D. In The Alternative, The Court Should Grant Remittitur To Reduce The Excessive Award.**  Durkin has no serious answer to the fact that a total award of $42.8 million on a partially performed $9.8 million construction contract is exactly the type of "winning lottery ticket" award for which this court should grant remittitur.[17]  OB 38-39.

## CONCLUSION

The City respectfully requests that its Rule 50 and 59 motions be granted.

CONNOLLY BOVE LODGE & HUTZ LLP

Collins J. Seitz, Jr. (Bar No. 2237)
Max B. Walton (Bar No. 3876)
Josiah R. Wolcott (Bar No. 4796)
1007 North Orange Street
Wilmington, DE 19899
(302) 658-9141

Dated: March 23, 2007            *Attorneys for the City Defendants*

---

[17] Regarding Durkin's conversion claim, Durkin points to no evidence of anything retained by the City or resulting damages, rendering the claim deficient as a matter of law.  Turning to URS's claim, the amount of attorneys' fees awarded to URS should be limited to 20% of the principal and interest due under 10 *Del. C.* § 3912 because, contrary to URS's argument, a debtor creditor relationship is not required.  In 1991, 10 *Del. C.* § 3912 was amended to limit attorneys' fee awards on invoice claims (including engineering services invoices) to 20% of the principal and interest due.  *See Andrews Miller Assoc. Inc. v. Forrest Grove, Inc.,* Civ. A. No. 92C-08-21, 1994 WL 380996, at *7 (Del. Super. Ct. July 1, 1994) (Steele, V.C.), *aff'd in pertinent part, rev'd in part on other grounds,* 655 A.2d 307 (Del. 1995).  Thus, because URS sought recovery for invoices (Tr. 1130-34; C70-74), the jury erroneously awarded URS much more for attorneys' fees than permitted by law.  URS's other argument, that the jury properly interpreted the contract and did not require URS to allocate fees under the contract (URS AB 5), also fails because the URS contracts do not permit recovery of fees in all circumstances.  URS's failure to allocate the fees awarded to the applicable contractual provisions (Tr. 1135; C75) warrants a new trial because no provision of the contract(s) allow URS to recover attorneys' fees in all circumstances.

## CERTIFICATE OF SERVICE

I certify that on March 23, 2007, I electronically served CITY OF NEWARK DEFENDANTS' POST-TRIAL REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL OR REMITTITUR by CM/ECF to counsel of record as follows:

Paul Logan, Esquire
Powell, Trachtman, Logan, Carrle &
 Lombardo, P.C.
475 Allendale Road, Suite 200
King of Prussia, PA 19406

David G. Culley, Esquire
Tybout Redfearn & Pell
750 South Madison Street
Suite 400
P.O. Box 2092
Wilmington, DE 19899

*Attorneys for Plaintiff,*
*Donald M. Durkin Contracting, Inc.*

William J. Cattie, III, Esquire
Rawle & Henderson
300 Delaware Avenue, Suite 1130
P.O. Box 588
Wilmington, DE 19899

*Attorneys for Intervener Plaintiff,*
*St. Paul Fire & Marine Insurance*
*Company*

James S. Green, Esquire
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899

*Attorneys for URS Corporation, Inc.*

Patrick Kingsley, Esquire
Kevin W. Goldstein, Esquire
Stradley Ronon Stevens & Young, LLP
300 Delaware Avenue
Suite 800
Wilmington, DE 19801

*Attorneys for Federal Insurance Company*


_____
Collins J. Seitz, Jr. (Bar No. 2237)