## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DONALD M. DURKIN                  )
CONTRACTING, INC.,                )
                                  )
      Plaintiff,              )
                                  )
   v.                         )   No. 04-0163-GMS
                                  )
CITY OF NEWARK, HAROLD F.         )
GODWIN, JOHN H. FARRELL, IV,      )
JERRY CLIFTON, KARL G.            )
KALBACHER, DAVID J. ATHEY,        )
FRANK J. OSBORNE, JR., and        )
CHRISTINA REWA,                   )
                                  )
      Defendants/             )
      Third-Party Plaintiffs, )
   v.                         )
                                  )
FEDERAL INSURANCE COMPANY,        )
                                  )
      Third-Party Defendant.  )
----------------------------------------------- )
                                  )
CITY OF NEWARK,                   )
                                  )
      Third-Party Plaintiff,  )
                                  )
   v.                         )
                                  )
URS CORPORATION,                  )
                                  )
      Third-Party Defendant.  )


## APPENDIX OF DOCUMENTS IN SUPPORT OF
## CITY OF NEWARK DEFENDANTS' POST-TRIAL REPLY BRIEF
## IN SUPPORT OF THEIR MOTION FOR JUDGMENT
## AS A MATTER OF LAW AND FOR A NEW TRIAL OR REMITTITUR

### VOLUME 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DONALD M. DURKIN CONTRACTING, INC.   ) Civil Action No.: 04-0163 GMS

                Plaintiff,

        vs.             ) JURY TRIAL DEMANDED

CITY OF NEWARK et al.

```
)
)
)
)
)
)
)
```

## CITY OF NEWARK DEFENDANTS' MOTION FOR DIRECTED VERDICT

COMES NOW City of Newark Defendants ("Newark") and respectfully request that this Court direct a verdict in their favor on all of Plaintiff's claims. FRCP 50 provides that judgment shall be entered as a matter of law at the close of a party's case if the evidence is legally insufficient. Newark asserts that the evidence offered by Durkin in its case is legally insufficient as to each of its claims and in support thereof offer the attached Opening Brief. :

### I.    BREACH OF CONTRACT

#### A.    The Measure of Damages for Breach of Contract is a Question of Law to be Determined by the Court

Durkin is seeking certain types of damages not allowable under the contract or under Delaware case law. The proper measure of damages is a question of law to be determined by the Court. See e.g. *Council of Unit Owners of Sea Colony East, Phase III Condominium, on Behalf of Ass'n of Owners v. Carl M. Freeman Associates, Inc.*, 564 A.2d 357 (Del.Super.,1989) (ruling on parties' pretrial Motions in Limine to establish proper measure of damages). The Memorandum attached at Exhibit A details damages as to the breach of contract and civil rights claim; conversion damages are discussed below.

**B.    Durkin is Asserting an improper design claim against a layperson**

Durkin's claim against Newark arises out of the design of the reservoir which Durkin contends was impossible to construct, or at least required extraordinary means and methods. Don Durkin's trial testimony focused almost exclusively on alleged problems with the design. The design documents which Durkin contends were problematic were prepared by URS. As to architects and engineers, the Delaware Supreme Court has ruled that "the standard of care applicable to a professional can only be established by way of expert testimony." *Seiler v. Levitz Furniture Company,*, 367 A.2d 999, 1008 (Del. Supr. 1976), citing *Bloomsburg Mills, Inc. v. Sordoni Construction Company,* 164 A.2d 201, 203 (Pa. 1960). Also citing the *Bloomsburg Mills* decision, the Commonwealth Court of Pennsylvania recently granted summary judgment to a project owner on a contractor's claims of design errors. *Guy M. Cooper v. East Penn School District,* 903 A.2d 608 (Pa. Cmwlth. 2006). Summary judgment was appropriate because the contractor failed to present sufficient evidence of the designer's failure to perform under its contract with the owner. *Id.* at 617. The Court found that the contractor's expert report did not describe the standard of care, did not describe a breach and did not identify defective drawings. *Id.* The decision was also based on the fact that the contractor had reviewed the contract documents prior to bidding and found no design errors. *Id.*

The *Guy M. Cooper* case is completely analogous to this action. Durkin reviewed the contract documents prior to bidding and found no errors. Durkin failed to present evidence of the standard of care and failed to identify a breach of that standard. Durkin's expert, Thomas Ramsey, is not even qualified to offer such an opinion as he is not a Delaware licensed engineer. *Livesay v. Heagy,* 2004 WL 3928262 (Del.Super.) (barring an engineer from testifying since he

2

was not registered in Delaware). Nor did Dr. Craig Calabria offer an opinion regarding the standard of care.

Durkin has asserted a design claim against a layperson, which itself should be impermissible, but has also failed to satisfy its burden as to a design error. If the Court finds that Durkin's claim is appropriate nonetheless, then Newark should be allowed its breach of contract action against URS because URS provided the design, and Newark relied on URS in considering Durkin's design error claims.

## II.    CIVIL RIGHTS

42 U.S.C.A. § 1983 secures protection for any rights, privileges, or immunities secured by the Constitution and laws. Durkin alleges simply a violation of due process. The Due Process Clause protect against governmental actions which threaten life, liberty or property. Durkin has not identified, nor has offered any evidence, as to which of these three constitutionally-protected rights have been violated, and it is insufficient to say that the process was denied if there is also not a showing that a constitutionally-protected right was violated in the process.

The right to life is obviously not implicated, so a liberty or property interest must be at issue. See *Helman v. State,* 784 A.2d 1058, 1068 (Del. Supr. 2001). As set forth more fully in Newark's *Motion in Limine as to Plaintiff's Civil Rights Claim* (D.I. 151), Durkin's contract with Newark does not give rise to a protectible property interest. *Linan-Faye Construction Co., Inc. v. Housing Authority of the City of Camden,* 49 F.3d 915 (3rd Cir. 1995). Although the Third Circuit used New Jersey law to interpret the contract in *Linan-Faye,* the Court's analysis of the federal statute would be controlling.

As to a potential liberty interest, Durkin's civil rights count in its *Complaint* simply

3

references harm to its reputation. Delaware law provides that "damage to one's reputation resulting from disclosure of negative information does not by itself give rise to a constitutional claim." *Helman* at 1071, citing *Paul v. Davis*, 424 U.S. 693, 701 (1976). The stigmatizing effect "must be accompanied by the alteration of a right or status previously recognized by state law." *Id.* Durkin has identified no such liberty right in the first instance and has withdrawn its defamation claim.

Durkin asserted in its *Motion* regarding affirmative defenses that injury to reputation is actionable. While courts have allowed claims for damage to business under §1983, courts have also ruled that the Constitution only protects against state actions that threaten to deprive a person from pursuing their occupation. "It is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." *Piecknick et al v. Commonwealth of Pennsylvania, et al,* 36 D.3d 1250, 1259 (3d Cir. 1994). In this case, Durkin was terminated from one job and no official governmental policy of Newark deprived Durkin from pursuing its profession. In fact, Durkin could have worked if personal guarantees were provided and could have pursued private projects not requiring bonding

In order to prevail upon its Civil Rights claim against the Councilmembers, the Court must be satisfied (1) that Durkin's allegations state a claim for a violation of a right secured by the United States Constitution, (2) that the rights and law at issue are clearly established; and (3) that a reasonably competent official should have known that his conduct was unlawful, in light of the clearly established law. *Carrigan v. Delaware*, 957 F. Supp. 1376, 1387 (D. Del. 1997). If this standard is not met, governmental officials have qualified immunity. *Id.* Immunity applies when the official, based on information available to him, believes his conduct conforms to

4

C42

general legal principles. *Id.* at 1387.  Durkin has incorrectly stated the law: immunity under **is** available to officials under §1983 on the basis of good faith, but not to the municipality for governmental functions, based on the reasoning that a government has no "discretion." *Owen v. City of Independence*, 445 U.S. 622, 657 (stating "The offending official, so long as he conducts himself in good faith, may go about his business secure in the knowledge that a qualified immunity will protect him from personal liability for damages").  A local government can only be liable when the action was pursuant to official governmental policy, which policy caused a constitutional tort.  *Monell v. Department of Social Services of City of New York,* 436 U.S. 658 (1978).

It is the function of the Court to determine whether a right has been clearly established (*Carrigan* at 1387) and Durkin has failed to meet its burden.  Durkin has failed to identify a constitutional right, failed to introduce evidence of violation of any constitutionally-protected right, and has failed to offer any evidence that any of the Councilmembers knew their conduct was unlawful.  As to the City, Durkin has failed to show evidence that a governmental policy caused a constitutional violation.  Therefore, judgment should be entered in Newark's favor.

## III.    CONVERSION

Durkin has withdrawn all tort claims except its count for conversion.

### A.    Newark Had Lawful Justification for Retaining Materials and Has Paid for the Materials

Conversion occurs when a party interferes with chattels without lawful justification. *Van Dyke v. Pennsylvania R. Co.,* 86 A.2d 346, 352 (Del.Super. 1952).  Durkin has not identified the chattels which it contends have been converted, and has failed to submit any evidence of damages.  If Durkin is referring to materials which remained at the site after termination, all such

5

materials had been ordered specifically for the project and the contract gave Newark the right to retain such materials. Newark was therefore lawfully justified in retaining the materials so cannot be liable for conversion. More importantly, the damages sought by Durkin would presumably represent the value of the materials remaining at the reservoir project, for which Newark paid the subcontractors directly. Judgment should be entered for Newark.

WHEREFORE, City of Newark Defendants respectfully request that this Court enter judgment in favor of Newark on all claims, and in the alternative, limiting Plaintiff's damages.

TIGHE, COTTRELL & LOGAN, P.A.
By: /s/ Paul Cottrell
Paul Cottrell (Delaware I.D. No. 2391)
Victoria K. Petrone (Delaware I.D. No. 4210)
704 N. King Street, P.O. Box 1031
Wilmington, DE 19899
P: (302) 658-6400
F: (302) 658-9836
email: p.cottrell@lawtcl.com
*Attorneys for Defendants City of Newark, Harold F. Godwin, John H. Farrell, IV, Jerry Clifton, Karl G. Kalbacher, David J. Athey, Frank J. Osborne, Jr., and Christina Rewa*

October 3, 2006

6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC. | ) Civil Action No.: 04-0163 GMS |
| | ) |
| Plaintiff, | ) |
| vs. | ) JURY TRIAL DEMANDED |
| | ) |
| CITY OF NEWARK et al. | ) |

## CITY OF NEWARK DEFENDANTS' DAMAGES MEMORANDUM

TIGHE, COTTRELL & LOGAN, P.A.
By: /s/ Paul Cottrell
Paul Cottrell (Delaware I.D. No. 2391)
Victoria K. Petrone (Delaware I.D. No. 4210)
704 N. King Street
P.O. Box 1031
Wilmington, DE 19899
P:  (302) 658-6400
F:  (302) 658-9836
email:  p.cottrell@lawtcl.com
*Attorneys for Defendants City of Newark, Harold F.*
*Godwin, John H. Farrell, IV, Jerry Clifton, Karl G.*
*Kalbacher, David J. Athey, Frank J. Osborne, Jr.,*
*and Christina Rewa*

October 3, 2006

I.    **DAMAGES FOR BREACH OF CONTRACT**

    A.    **Durkins Damages Are Limited To Those Identified In The Contract; The Contract Limits Damages to Payment For Completed Work and Prohibits Recovery Of Economic Damages and Professional Fees**

        Damages are outlined by the parties' contract. In event of termination, the contract provides that Durkin is entitled to payment for completed work plus termination expenses. Contract, Para. 15.4   Durkin still contends it is entitled to a time and materials re-valuation of the contract (nothwithstanding this Court's denial of its Motion in Limine, filed at D.I. 193), but Article 11 (cited by Durkin in support of its damages) applies only to change orders. At the time of termination Durkin had been paid $6,230,745 and was only owed $239,682.43. Nonetheless Durkin is seeking breach of contract damages in excess of $5 million, and the Court should determine, as a matter of law, the appropriate measure of damages.

        The contract also states that Durkin "shall not be paid on account of loss of anticipated profits or revenue or other economic loss arising out of or resulting from such termination." *Id.* The contract only allows recovery of attorney and professional fees incurred in terminating Durkin's subcontract and supplier agreements. Contract, Paras. 17.5 and 15.2.4.

        Durkin is not entitled to a quantum meruit valuation of damages. The quantum meruit concept has no application where the parties are subject to an express contract. *Eisenmann Corp. v. General. Motors Corp.*, 2000 WL 140781 at *14 (Del. Super. Jan. 28, 2001), *Stoltz Realty Co. v. Paul,* 1995 WL 654152 at *10 (Del. Super. Sept. 20, 1995). Delaware courts have only accepted the total cost method only when there was no pre-contracted rate or price. *Dick Baker Home Improvements v. Anderson* 2003 WL 22931395 (Del.C.P May 10, 2003).

Here, Durkin and Newark had an express contract for a specific lump sum amount.

Durkin can only recover up to the outstanding amount that was due under the contract at the time

of termination, which is $239,682.43.  December 30, 2003 letter from Newark to Durkin,

NEW00542, Newark Jury Notebook, page 56.

**B.     If the Contract Limitation Doesn't Apply,  Delaware Law Also Limits Damages to Payment for Completed Work and Prohibits Recovery of Economic Damages and Professional Fees**

Durkin has argued that Article 11 of the contract provides a measure of damages,

however this Article applies only to change orders and is therefore not relevant to this case.  The

only remaining contractual provision regarding damages is the termination clause, and should the

Court find that the termination for convenience clause is inapplicable for failure to give notice

then the Court must apply the Delaware common law rule.  According to Delaware law, the non-

breaching party is entitled to compensation of an amount sufficient to return the party to the

position they would have been had the breach not occurred.  *J.J. White, Inc. v. Metropolitan

Merchandise Mart, Inc.*, 107 A.2d 892, 894 (Del.Super.1954).  Had the contract not been

terminated, at the time of termination Durkin was only entitled to payment for work performed

which totaled $239,682.43.

Delaware law provides that good will, lost future profits, and lost customers are not

awarded in breach of contract actions. *Crowell Corp. v. Himont USA, Inc.*, 1994 WL 762663 at

*3 (Del.Super.,1994) (granting motion in limine in the breach of contract action with respect to

loss of good will, lost future profits, and lost customer base and quoting "Delaware courts have

consistently found these damages to be speculative in nature, and; therefore, have barred

recovery for them." *Tanner v. Exxon Corp.* Del.Super., C.A. No. 79C-01-005, Stiftel, J. (July 23,

-3-

1981), Letter Op. at 5), see also *Chemipal Ltd. v. Slim-Fast Nutritional Foods Intern., Inc.*, 350

F.Supp.2d 582, 595 (D.Del.,2004), ruling that damages for reputational harm are not recoverable

in Delaware and granting the Motion to Preclude Testimony on that point).

 The "American Rule," followed in Delaware, provides that each party pay its own

litigation costs absent a statutory, equitable or contractual provision. *Brice v. State, Dept. of

Correction*, 704 A.2d 1176, 1179 (Del.Supr. 1998). There is no applicable statute. The

equitable exception for bad faith, wanton or vexatious behavior only applies in extraordinary

cases. *Id.* The only relevant contract provision, discussed *supra*, applies to the costs for

terminating subcontract and supplier agreements.

## II. DAMAGES FOR CIVIL RIGHTS CLAIM

### A. Durkin Is Only Entitled to Damages Which Would Put it in as Good a Financial Position as it Would Have Been Had There Been No Violation and Durkin Has Failed to Mitigate its Damages

 42 U.S.C. §1983 "creates a species of tort liability in favor of persons who are deprived

of rights, privileges, or immunities secured to them by the Constitution." *Carey v. Piphus*, 435

U.S. 247, 253 (1978). A party injured by the commission of a tort is entitled, as damages, to be

put in as good a financial position it would have been had there been no tort. *Coleman v.

Garrison*, 281 A.2d 616, 619 (Del.Super. 1971). Here Durkin admits it had virtually no other

jobs at the time of termination, was losing $6 million dollars on the project, and had lost hundred

of thousands of dollars in each of four out of the five years preceding 2004. Deposition of

Donald Durkin Page 205, Lines 5-7 and trial testimony of Michael Durkin and Donald Durkin,

and Plaintiff's Answers and Objections to the City of Newark's First Set of Interrogatories No.

40. Therefore, any payment by Newark would put Durkin in a **better** position financially than it

-4-

would have been without termination, so Durkin is not entitled under Delaware law to any damages.

An injured party is also obligated to mitigate its damages. *Id.*, *Katz v. Exclusive Auto Leasing, Inc.*, Del.Super., 282 A.2d 866, 868 (1971). Durkin could have worked if personal guarantees were provided and could have pursued private projects not requiring bonding. Plaintiff's Answers and Objections to the City of Newark's First Set of Interrogatories No. 27. Durkin's only full-time employees are the three Durkin brothers; and when there is no work, there are no other employees. Deposition of Donald Durkin, Page 159-160, Lines 17 through 13. Further, Durkin owns virtually all of its equipment. Dep. Donald Durkin, Page 13, Lines 19-20.

Durkin has the burden to prove its damages but has provided no documentation, despite Newark's request, evidencing any jobs which it would have been awarded **but for** the termination. Plaintiff's Answers and Objections to the City of Newark's First Set of Interrogatories Nos. 25 and 26, and July 21, 2006 Email from Victoria Petrone to Paul Logan. Any testimony by Durkin on this point would be speculative and conjectural, and therefore insufficient to support an award of damages. *Coles v. Spence,* 202 A.2d 569, 571 (Del. 1964).

### III.   PUNITIVE DAMAGES

#### A.   Durkin Is Not Entitled to Punitive Damages for its Breach of Contract or The Civil Rights Claims

"In cases in which the breaching party's non-performance was based on that party's belief that a meritorious defense exists, Delaware courts have held as a matter of law that plaintiffs are not entitled to seek punitive damages." *Reiver v. Murdoch & Walsh, P.A.*, 625 F. Supp. 998, 1015 (Del. D. 1985)

-5-

Punitive damages require, under Delaware law, finding that Defendant's actions were motivated by "some form of malice; that is, by ill-will, hatred, spite, or a conscious desire to do injury and hurt the plaintiffs." *Guthridge v. Pen-Mod, Inc.*, 239 A.2d 709, 715 (Del.Super. 1967). There has been no evidence which would satisfy this high standard to support an award of punitive damages.

-6-

**C50**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* | |
| vs. | |
| CITY OF NEWARK, et al., *Defendants* | CASE NO. 04-0163-GMS |
| and | |
| CITY OF NEWARK, *Third-Party Plaintiff* | |
| vs. | |
| DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Intervenor* | |

**ANSWERING BRIEF OF PLAINTIFF
IN RESPONSE TO THE CITY OF NEWARK'S
<u>MOTION FOR DIRECTED VERDICT</u>**

> **POWELL, TRACHTMAN, LOGAN,
> CARRLE & LOMBARDO, P.C.**
> Paul A. Logan
> Delaware Supreme Court ID #3339
> 475 Allendale Road, Suite 200
> King of Prussia, PA 19406
> Telephone: 610-354-9700
> Telefacsimile: 610-354-9760
> *Attorneys for Plaintiff and Third Party
> Defendant Donald M. Durkin Contracting*

Dated: October 4, 2006

## TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF PROCEEDINGS..................................................................1

II.   SUMMARY OF ARGUMENT AND CONCISE STATEMENT OF FACTS .............1

    A.    The Court has Already Ruled (And Confirmed to the City as Recently as October 3, 2006) that its Motion on the Measure of Damages is Out of Time ...................................................................................................................... 2

    B.    As Confirmed by the Court on Numerous Occasions, Durkin Is Not Advancing a Design Claim Against the City ....................................................... 2

    C.    The City is Not Entitled to Judgment As a Matter of Law on the Civil Rights Claim ....................................................................................................... 3

    D.    The City is Not Entitled to Judgment As a Matter of Law on the Conversion Claim..................................................................................................... 4

V.    CONCLUSION AND RELIEF SOUGHT ......................................................................5

## **TABLE OF CITATIONS**

**Page**

**Cases**

*Beck v. City of Pittsburgh,* 89 F.3d 966, 971, 1996 U.S. App. LEXIS 17844 (3d Cir. 1996) ........ 2

*Blake v. The Town of Delaware City, et al.,* 441 F. Supp. 1189, 1977 U.S. Dist. LEXIS 12949
    (D. Del. 1977) ........................................................................................................... 5

*Keith v. Truck Stops Corporation of America, et al.,* 909 F. 2d 743, 1990 U.S. App. LEXIS
    12309 (3d Cir. 1990) ................................................................................................. 1

*Kennedy v. Hughes, et al.,* 596 F. Supp. 1487, 1984 U.S. Dist. LEXIS 22140 (D. Del. 1984) ...... 4

*Memphis Community School Dist. v. Stachura,* 477 US 299 (1986) ............................................. 3

*Piecknick, et al. v. Commonwealth of Pennsylvania, et al.,* 36 F. 3d 1250, 1994 U.S. App. LEXIS
    327410 (3d Cir. 1994) ................................................................................................ 4

*Pietroniro, et al., v. Borough of Oceanport, et al.,* 764 F. 2d 976, 1985 U.S. App. LEXIS 19895
    (3d Cir. 1985) ............................................................................................................ 4

*Savarese v. Agriss,* 883 F.2d 1194 (3d Cir. 1989) ...................................................................... 3

**Statutes**

*42 U.S.C. § 1983* ..................................................................................................................... 4

**Rules**

Federal Rule of Civil Procedure Rule 50. .................................................................................. 1

## I.    NATURE AND STAGE OF PROCEEDINGS

Plaintiff and Third Party Defendant Donald M. Durkin Contracting, Inc. ("Durkin") filed an action against Defendant City of Newark and members of City Council (collectively "the City") arising out of the City's improper termination of Durkin's Contract for default. The City has filed a Motion under Federal Rule of Civil Procedure Rule 50. Durkin files this response.

## II.    SUMMARY OF ARGUMENT AND CONCISE STATEMENT OF FACTS

Two (2) of the areas for the Rule 50 Motion indicate that the City continues to ignore – or is unwilling to accept – this Court's prior rulings. First, the Court, very clearly and on numerous occasions, advised counsel that the issue of how damages are valuated would be submitted to the jury. The attachment to their Opening Brief is simply a recycling of the same arguments the Court has repeatedly ruled has been waived.

Second, the Court, as well as Durkin's counsel, has advised the City – on more than one occasion – that Durkin is <u>not</u> asserting an improper design claim. The central claims in the case certainly trace their origins back to the concerns about the design that were raised on September 10, 2003, but the gravamen of Durkin's claims derive from the City's breach of contract and the City's deliberate and purposeful steps to deprive Durkin of its liberty and property interests relate to The City continues to ignore or miss these points and has filed a Rule 50 Motion on these areas. Both of these aspects of the Motion should be denied. The City also claims that it is entitled to judgment as a matter of law on the Durkin's civil rights claim and the conversion claim. The City is incorrect and Durkin is entitled to have these counts submitted to the jury.

## III.    ARGUMENT

When reviewing the City's motion under Rule 50, the Court must review the evidence in the light most favorable to Durkin. *Keith v. Truck Stops Corporation of America, et al.,* 909 F. 2d 743, 1990 U.S. App. LEXIS 12309 (3d Cir. 1990). The City's Motion should be granted "only if, viewing the evidence in the light most favorable to [Durkin], there is no question of

- 1 -

C54

material fact for the jury and any verdict other than the one directed would be erroneous under the governing law." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971, 1996 U.S. App. LEXIS 17844 (3d Cir. 1996). The City is unable to meet this burden on any area of its Rule 50 Motion. Accordingly, the Motion should be denied.

**A.    The Court has Already Ruled (And Confirmed to the City as Recently as October 3, 2006) that its Motion on the Measure of Damages is Out of Time**

Durkin understood the clear and express holdings of the Court on October 3, 2003 when it again advised the City that it was the Court's determination that factual issues were involved in the measure of damages, and that those issues will be submitted to the jury.

In the event that the Court elects to examine the merits of the arguments advanced by the City on the proper measure and valuation of damages, Durkin has outlined its response in Exhibit "A" to this Brief.

With respect to the damages for the civil rights claim[1], Durkin notes there are numerous issues of material fact raised in the City's Opening Brief, including, but not limited to, the amount of work Dukrin had at the time of termination, the mitigation steps taken and the inability to secure bonding with personal guarantees. Thus, the City's Motion should be denied.

In order to clarify Durkin's position, the only count in the original complaint where punitive damages was being sought was in a count against URS Corporation, and all claims by Durkin against URS have been dismissed. Durkin is not seeking punitive damages against the City or the Councilpersons in this litigation.

**B.    As Confirmed by the Court on Numerous Occasions, Durkin Is Not Advancing a Design Claim Against the City**

---

[1] It is Durkin's position that for the Section 1983 violation, Durkin is entitled to compensatory damages which may include out of pocket expenses and other monetary harms and compensation for impairment to reputation as well as its attorneys' fees and costs. *Memphis Community School Dist. v. Stachura*, 477 US 299 (1986). The Third Circuit has also held that the district court has discretion to award prejudgment interest in Section 1983 cases. *Savarese v. Agriss*, 883 F.2d 1194 (3d Cir. 1989).

- 2 -

Similar to the preclusion of the affirmative defense to the breach of contract claims, the Court has repeatedly reminded the City that Durkin is **not** advancing a design claim against the City. Durkin is not. It is Durkin's position that it raised, *inter alia,* legitimate issues that were never appropriately addressed, and that Durkin was not provided with proper notice before termination. Nonetheless, the City filed a Rule 50 Motion on this issue. The Motion is without basis and should be denied. **The City is Not Entitled to Judgment As a Matter of Law on the Civil Rights Claim**

With respect to the specific bases upon which a 1983 claim may be advanced, an allegation of injury to reputation, when accompanied by an allegation of injury to a more tangible interest, has been held to state a cause of action under Section 1983. *See Kennedy v. Hughes, et al.,* 596 F. Supp. 1487, 1984 U.S. Dist. LEXIS 22140 (D. Del. 1984) (internal citations omitted). A claim for damages resulting from the destruction of a business is an appropriate action under *42 U.S.C. § 1983. Pietroniro, et al., v. Borough of Oceanport, et al.,* 764 F. 2d 976, 1985 U.S. App. LEXIS 19895 (3d Cir. 1985). The right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within both the 'liberty' and 'property' concepts of the Fifth and Fourteenth Amendments. *Piecknick, et al. v. Commonwealth of Pennsylvania, et al.,* 36 F. 3d 1250, 1994 U.S. App. LEXIS 327410 (3d Cir. 1994).

Durkin has presented substantial evidence to demonstrate a *prima facia* case of a civil rights violation. The City's policy and custom of having the City Council rely, in wholesale fashion, on the information provided to them by the City Manager and staff, to the virtual exclusion of any independent efforts to validate what was being recommended was reasonable or correct, and the unconditional delegation of unrestricted authority and responsibility to the City Manager to take whatever actions he deemed appropriate in the operation of the City, has resulted in the wrongful termination of Durkin, the complete devastation of Durkin's business

- 3 -

and the utter destruction of its reputation. The consistent and persistent defamatory publications by the City to Durkin's competitors and customers, through materials disseminated to the attendees at the "rebid" pre-bid meeting in September of 2004 and the press releases that were published in several local papers and also placed on the internet, have perpetuated and exacerbated the harm visited upon termination by the wrongful termination of the City.

As further evidence of Durkin's *prima facia* case of a civil rights violation, Durkin refers the Court to the Opening Brief of Plaintiff in Support of Motion For Sanctions – which is Durkin's second Motion for Sanctions (D.I. 279) – regarding documents produced after Durkin rested its case. What is clear that there has been a concerted effort by the City administration, City Manager, City Assistant Manager and City Counsel to subvert Durkin's civil rights. Because Durkin has set forth a *prima facia* case of a civil rights violation, the City's Rule 50 Motion should be denied.

**C.** **The City is Not Entitled to Judgment As a Matter of Law on the Conversion Claim**

Incredibly, the City is advancing the proposition that that it had lawful justification for retaining the materials that it converted after Durkin was terminated. There is no evidence of this. In fact, the evidence is that the City interfered – without justification – with Durkin's relationships with its subcontractors and suppliers.

The City also claims that it does not know what property was converted. That information was supplied to the City in Durkin's damage binders and testified to at trial by Don and Mike Durkin and Mr. Filshill. Also, this argument is somewhat disingenuous in that when the City interfered with Durkin's subcontractors and suppliers, it had URS provide estimates of what each entity allegedly was owed. Presumably there was an inventory of the materials completed to reach the payment number. Even assuming that the City paid the subcontractors or suppliers for some of the converted property, Durkin never received the payment and markup it was entitled to receive. *Blake v. The Town of Delaware City, et al.,* 441 F. Supp. 1189, 1977

- 4 -

U.S. Dist. LEXIS 12949 (D. Del. 1977) (The damages recoverable upon proof of conversion are the value of the conversion with interest). Accordingly, the City Rule 50 Motion should be denied.

## V.    CONCLUSION AND RELIEF SOUGHT

For the reasons set forth above, Plaintiff Donald M. Durkin Contracting, Inc. respectfully requests that this Court deny the City's Motion for Directed Verdict and award it attorneys' fees and costs in responding to the City's frivolous motions regarding damages and the advancement of the alleged design claim.

POWELL, TRACHTMAN, LOGAN,
CARRLE & LOMBARDO, P.C.

By:    /s/ Paul A. Logan
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
*Attorneys for Plaintiff and Third Party
Defendant Donald M. Durkin Contracting*

Dated:  October 4, 2006

## MEASURE OF DAMAGES FOR BREACH OF CONTRACT

Although the City has indicated that Section 15.4 of the Contract, which applies to terminations for convenience <u>and not for default,</u> is the applicable provision for measuring damages in the event of a breach by the City, that section, similar to Section 15.2, is predicated upon the precondition of providing seven (7) days prior written notice to Durkin, which this Court has judicially concluded as a fact did not take place. On that basis alone, the City cannot satisfy the threshold conditions precedent for determining the measure of damages to be paid to Durkin, and accordingly cannot be permitted to obtain the benefit of any limitations on the amount of recovery for a breach of contract by the City that this section may provide.

Although not restated in the instant Motion, the City also argued in its motion in limine that the Court should look to federal common law in order to constructively convert a wrongful termination by the City into a termination for convenience, citing to *Linan-Faye Construction Co., Inc. v. Housing Authority of the City of Camden,* 49 F.3d 915 (3rd Cir. 1995). That case is inapposite for numerous reasons, not the least of which is that the contract between Linan Faye and the City of Camden included funding provided by a U.S. agency, namely the Department of Housing and Urban Development, which implicated a federal interest. Under those circumstances, the Third Circuit deemed it was appropriate, in the absence of any statute or decision by the courts of New Jersey, to refer to the body of federal common law as a source of guidance in the court's interpretation of that particular provision of the contract. Since there is no federal funding on this project, there is no reason or basis for the Court to look to the *Linan-Faye* decision or the body of federal common law to interpret this Delaware construction contract.

In addition, there is no discussion in the *Linan-Faye* decision of any contention by the contractor that there was any ambiguity in the contract with respect to the manner in which a contractor is to be compensated when the contract is wrongfully terminated by the owner. In point of fact, there is no provision in the contract between Durkin and the City which provides that the measure of damages is to be computed under Section 15.4 in the event the City wrongfully terminated the contract. The law in the state of Delaware is well settled that to the extent of any ambiguity in the contract writings, the interpretation of those provisions must be construed against the drafter, which in this case is the City. *Twin City Fire Ins. Co. v. Del. Racing Assn.*, 840 A.2d 624 (Del. 1993), <u>citing</u> *Kaiser Aluminum v.* Matheson, 681 A.2d 392 (Del. 1996).

Finally, to the City had intended that any wrongful termination automatically convert into a termination for convenience, it could certainly have inserted, or "borrowed" from the long-standing statutory provisions that contain this express clause. <u>See,</u> e.g., 52 FAR 248-10. The City has access to the legal counsel of its City Solicitor, who could have inserted such a clause into the contract had the City deemed it necessary to do so.

The City has suggested that Article 11 is limited to the computation of costs for change orders, and accordingly that it is not an appropriate means for measuring the costs of Durkin's work on the Project. However, that is not what the language of Article 11 says or suggests, and Durkin does not understand the City's position to be that the cost breakdown contained in Article 11 is either unfair or unreasonable. During the course of its case-in-chief, Durkin presented considerable uncontroverted evidence that it had been severely impacted by weather events that both the City and URS recognized as compensable. There was no evidence adduced by the City that the claims of Durkin were untimely, and in fact the evidence contains numerous letters from

Durkin beginning shortly after the construction work commenced in 2002 notifying the City and URS of the tremendous costs being incurred in performing weather-impacted work. Consequently, the City has not identified any plausible reason why this portion of the contract should not be applied in determining the cost of the incomplete work performed by Durkin—and not the work of its subcontractors, whose pricing was fixed under the subcontract agreements and was not recomputed pursuant to Article 11—prior to termination.

The City has advanced the position that Durkin is making a "total cost approach" claim for its damages on the City's breach of contract. That is categorically incorrect. The provisions of Article 11 provide for recovery of certain costs, with specified markup on select items of work, and further disallow certain costs to be claimed. See Section 11.5. Durkin is seeking only those costs expressly authorized by the contract for the computation of costs for impacted work, although there was ample testimony from Don Durkin that the costs in Section 11.5 were incurred, but were not being claimed.

With respect to the provisions of Section 17.5, the City argues that this provision only applies to the termination payments associated with subcontractors and suppliers. There is no basis in the language of the contract for that interpretation. Article 17, "Miscellaneous", is not in any sense limited to the costs associated with the termination and settlement with subcontractor and vendors, but in fact the subsections of Article 17 specifically compel a contrary interpretation. Specifically to this point, Section 17.4, which comes under the heading of *"Cumulative Remedies"*, provides in pertinent part:

> "17.4 The duties and obligations imposed by these General Conditions and the rights and remedies available hereto **to the parties hereto**...are in addition to, and are not to be construed in any way as a limitation and remedies available to any or all of them which are otherwise imposed or available by Laws or Regulations...and the provisions of this paragraph will be as

C61

effective as if repeated specifically in the Contract Documents in connection with each particular duty, obligation, **right and remedy to which they apply.**" (Emphasis added)

Section 17.5 comes under the heading of "*Professional Fees and Court Costs Included*" and reads as follows:

> "17.5  Whenever reference is made to "claims, costs, losses and damages", it shall include in each case, but not be limited to, all fees and charges of engineers, architects, attorneys and other professionals and all court or arbitration or other dispute resolution costs."

There is no indication that this provision is limited to the costs incurred by the owner, but must be fairly read, particularly under the doctrine of *contra proferentem*, that these costs are recoverable by Durkin for the "claims, costs, losses and damages" it has incurred as a result of the City's wrongful termination.

The City further posits that Durkin's recovery has to be limited to the amounts invoiced as of the date of termination.  There is no conceivable basis, either in the contract or at common law, for imposing any such limitation on the quantum of recovery by Durkin when the contract was breached by the City.

Finally, the measure of damages for a breach of contract under Delaware law is the non-breaching party's out-of-pocket costs.  See *Hazlett v. Pompeo*, 2002 Del. C.P. LEXIS 75, *6 (Del. C.P., Kent December 27, 2002) *citing* *Strassburger v. Earley*, 752 A.2d 557, 579 (Del. Ch. 2000).  These are precisely the costs which are being sought by Durkin with respect to the incomplete work, as well as the costs incurred to stay in business in an effort to mitigate its damages.

Further, the fact that the "sum of the parts is greater than the whole" is of no moment under Delaware law. Delaware's Supreme Court noted in *Heitz v. Sayers*, 32 Del. 207, 219 (Del., 1923) that:

> When the plaintiff's failure to fulfill completely his obligations under the contract, is due to the defendant's default, there is no reason for imposing any limitation on the amount which he may recover on a *quantum meruit* or *quantum valebant* for what he has done other than that set by the principles of fair value. *See, also, Connolly v. Sullivan*, 173 Mass. 1, 53 N.E. 143, supra; *Rogers v. Becker-Brainard Milling Co.*, 211 Mass. 559, 98 N.E. 592; *Clark v. Manchester*, 51 N.H. 594; Woodward on Quasi Contracts, § 268.
>
> This rule has also been followed in this state. In *McDaniel v. Webster, supra*, which involved a building contract abandoned and rescinded by the plaintiff through the fault of the defendant, the plaintiff sued on the common counts, for work and materials furnished under the special contract, and Judge Gilpin, in charging the jury, said:
>
> "If there was originally a special agreement between the parties in regard to the matter, under which it was commenced and prosecuted, as far as it was performed by the plaintiff, but which special contract was afterwards rescinded, or abandoned by reason of the misconduct of the defendant, * * * the plaintiff would then, in either case, be entitled to recover on the common counts for his work and the materials furnished, as far as he had proceeded with it, *without any reference to the special agreement*, the same as if none had ever been entered into by him; and in either of those events, * * * his book of original entries would be admissible and competent evidence * * * to prove the work done and materials furnished, and the value of them," etc. (Emphasis provided).

Recent case law reaffirms that this is the law of Delaware, as it is in many other jurisdictions. "The rule prevailing in the majority of jurisdictions is the on default by the defendant, a plaintiff not in default, who has not fully or substantially performed, is not limited to the contract price in a restitution recovery, but can recover a greater sum that if the defendant had allowed him to complete the contract." *Heather Construction v. Gangi*, 1987 Del. Super. LEXIS 1094, *1-2 (Del. Super. Ct. March 31, 1987). The court went on to note that due to the fact that the contract contained no payment terms for partial performance, the court was obligated to determine what is fair value of the work completed.

For the reasons set forth above, Durkin's computation of its damages is a fair and reasonable methodology that is consistent with Delaware decisional law and the terms of the contract, and therefore should be upheld.

1              IN THE UNITED STATES DISTRICT COURT

2             IN AND FOR THE DISTRICT OF DELAWARE

3                        -   -   -

4   DONALD M. DURKIN CONTRACTING        :    Civil Action
    INC.,                               :
5                                       :
            Plaintiff,                  :
6                                       :
        v.                              :
7                                       :
    CITY OF NEWARK, HAROLD F. GODWIN,   :
8   JOHN F. FARRELL, IV, JERRY CLIFTON, :
    KARL G. KALBACHER, DAVID J. ATHEY,  :
9   FRANK J. OSBORNE, JR., CHRISTINA NEVA, :
    and URS CORPORATION,                :
10                                      :
            Defendants.                 :
11                                      :
        -and-                           :
12                                      :
    CITY OF NEWARK, HAROLD F. GODWIN,   :
13  JOHN H. FARRELL, IV, JERRY CLIFTON, :
    KARL G. KALBACHER, DAVID J. ATHEY,  :
14  FRANK J. OSBORNE, JR., CHRISTINA REWA, :
                                        :
15          Third-Party Plaintiffs,     :
                                        :
16      v.                              :
                                        :
17  FEDERAL INSURANCE COMPANY,          :
                                        :
18          Third-Party Defendant.      :   No. 04-163(GMS)

19                      -   -   -

20                Wilmington, Delaware
                Tuesday, October 3, 2006
21                   8:55 a.m.

22                      -   -   -

23

    BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J, and a Jury
24

25              SIXTH DAY OF TRIAL

                        C65

1    American rule would apply.

2              MR. BOLGER:  Your Honor, there has been an

3    exhibit introduced for Section 17.5 of the contract, which

4    clearly states that for any losses or claims there is to be

5    included but not limited to reimbursement of attorneys'

6    fees, consultants, professionals.  That's already been an

7    exhibit that has been testified to.

8              MR. COTTRELL:  That applies only to claims that

9    Durkin has to defend with its subcontractors.  It's a

10   construction contract issue again that we would submit would

11   be for the Court to decide.

12             MR. BOLGER:  Your Honor, with due regard, again,

13   this was part of the earlier motion in limine that he had

14   urged for this type of construction.

15             THE COURT:  I think it is.  I am going to leave

16   it stand as it is currently drafted.

17             MR. COTTRELL:  If I may note our objection to

18   that, P-37, as well as P-38, the time and material basis for

19   the measure of damages.

20             THE COURT:  Okay.  Those objections are

21   overruled, as they have already been.

22             Do you make anything there?

23             MR. LOGAN:  Your Honor, is there an issue in the

24   case about the failure of Durkin to mitigate?  I haven't

25   heard that as an affirmative defense --