# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DONALD M. DURKIN                )
CONTRACTING, INC.,              )
                                )
     Plaintiff,              )
                                )
     v.                      )    No. 04-0163-GMS
                                )
CITY OF NEWARK, HAROLD F.       )
GODWIN, JOHN H. FARRELL, IV,    )
JERRY CLIFTON, KARL G.          )
KALBACHER, DAVID J. ATHEY,      )
FRANK J. OSBORNE, JR., and      )
CHRISTINA REWA,                 )
                                )
     Defendants/             )
     Third-Party Plaintiffs, )
     v.                      )
                                )
FEDERAL INSURANCE COMPANY,      )
                                )
     Third-Party Defendant.  )
-------------------------------------------------  )
                                )
CITY OF NEWARK,                 )
                                )
     Third-Party Plaintiff,  )
                                )
     v.                      )
                                )
URS CORPORATION,                )
                                )
     Third-Party Defendant.  )

## APPENDIX OF DOCUMENTS IN SUPPORT OF
## CITY OF NEWARK DEFENDANTS' POST-TRIAL REPLY BRIEF
## IN SUPPORT OF THEIR MOTION FOR JUDGMENT
## AS A MATTER OF LAW AND FOR A NEW TRIAL OR REMITTITUR

### VOLUME 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* | |
| vs. | |
| CITY OF NEWARK, et al., *Defendants* | CASE NO. 04-0163-GMS |
| and | |
| CITY OF NEWARK, *Third-Party Plaintiff* | |
| vs. | |
| DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | |

## CITY OF NEWARK PROPOSED ADDITIONAL JURY INSTRUCTIONS
### Revised October 4, 2006

# SYMPATHY[1]

Your verdict must be based solely on the evidence in this case. You must not be governed by prejudice, sympathy, or any other motive except a fair and impartial consideration of the evidence. You must not, under any circumstances, allow any sympathy that you might have for any of the parties to influence you in any way in arriving at your verdict.

I am not telling you not to sympathize with the parties. It is only natural and human to sympathize with persons involved in litigation. But you must not allow that sympathy to enter into your consideration of the case or to influence your verdict.

---

[1] Delaware Pattern Jury Instruction 24.1

## PROPER MEASURE OF DAMAGES

Damages for breach of contract are measured in accordance with Delaware law which provides:

1.      The non-breaching party is entitled to compensation of an amount sufficient to return the party to the position they would have been had the breach not occurred.[2]

2.      Good will, lost future profits, and lost customers are not awarded in breach of contract actions.[3]

3.      Each party pays its own litigation costs absent a statutory, equitable or contractual provision.[4]

---

[2] *J.J. White, Inc. v. Metropolitan Merchandise Mart, Inc.*, 107 A.2d 892, 894 (Del.Super.1954)
[3] *Crowell Corp. v. Himont USA, Inc.*, 1994 WL 762663 at *3 (Del.Super.,1994)
[4] *Brice v. State, Dept. of Correction*, 704 A.2d 1176, 1179 (Del.Supr. 1998)

## GOOD FAITH DEFENSE TO CIVIL RIGHTS CLAIM

In order to find that Donald M. Durkin's civil rights were violated, you must find that a reasonably competent official should have known that his conduct was unlawful, in light of the clearly established law.[5]   Unless you find that the Councilmembers knew they were violating the law, you cannot find in favor of Donald M. Durkin. Stated another way, if you find the Councilmembers conducted themselves in good faith, you cannot find for Donald M. Durkin.[6]

---

[5] *Carrigan v. Delaware*, 957 F. Supp. 1376, 1387 (D. Del. 1997).
[6] *Owen v. City of Independence*, 445 U.S. 622, 657

**ATTORNEYS' FEES**

An award of attorneys' fees must be reasonable.  If you award attorneys' fees, the amount of attorneys' fees cannot exceed 20% of the amount awarded in principal.[7]

---

[7] 10 Del C. §3912, *Andrews Miller & Assoc., Inc. v. Forest Grove, Inc.*, 1994 WL 380996 (Del.Super.) (*partially rev'd on other grounds*).

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Donald M. Durkin Contracting, Inc.      :

                  Plaintiff,      :

                            :      Civil Action: 04-0163 GMS

     vs.                          :

                            :

City of Newark, et al.               :

                   Defendants.      :

---

## CITY OF NEWARK DEFENDANTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b)

Defendants Karl G. Kalbacher, David J. Athey, Harold F. Godwin, John H. Farrell IV, Jerry Clifton, Frank J. Osborne, Jr. Christina Rewa, in their official capacities, and the City of Newark ( hereinafter collectively, "Newark"), submit this *Motion For Judgment Notwithstanding the Verdict pursuant to Federal Rule of Civil Procedure 50(b)*. The Defendants are submitting this *Motion* within ten (10) days of the entry of judgment but have received permission from this Court to brief the issues for this motion pursuant to a stipulated briefing schedule regarding the post-verdict motions to be filed with the Court upon receipt of the full trial transcript in this case.

In support of their request that the verdict of the jury be vacated and set aside and Judgment be entered in favor of the Defendants, Defendants state the following:

## I. INTRODUCTION

1.     Plaintiff originally asserted claims for Breach of Contract, Conversion, Interference with Existing and Prospective Contracts, Defamation/Trade Libel, Fraud and Misrepresentation, Conspiracy and violation of Plaintiff's civil rights but withdrew all claims except the Breach Contract, Conversion and Civil Rights claims against the City of Newark. The

1

matter was tried to a jury from September 26, 2006 to October 5, 2006.

    2.    On October 5, 2006, the jury rendered a verdict in favor of Plaintiff as follows:

        A.    Breach of Contract Damages:

| | |
|---|---|
| Compensatory - | $5,492,666.55 |
| Post Termination - | $6,174,905.78 |
| Attorney Fees - | $1,740,751.38 |

        B.    Civil Rights -    $25,000,000.00

        C.    Conversion -    $1.00

        D.    URS Crossclaim -    $566,775.74

    3.    For reasons more fully set forth herein and to be briefed pursuant to a stipulated briefing schedule after receipt of the trial transcripts, said verdict was contrary to the evidence and law.

## II.    BREACH OF CONTRACT

### A.    The Verdict Is Contrary to the Evidence and the Law.

    4.    The breach of contract verdict was contrary to the evidence.

    5.    The breach of contract verdict was contrary to the law.

    6.    The breach of contract verdict was contrary to the law because Plaintiff's valuation of breach of contract damages is not supported by the contract or Delaware law.

    7.    The breach of contract verdict was contrary to the evidence and the law because Plaintiff did not include a quantum meruit claim in its complaint.  Plaintiff's Complaint included a breach of contract claim but Plaintiff was permitted to substitute a quantum merit claim.

    8.    The breach of contract verdict was contrary to the evidence and the law because Plaintiff never advanced a claim for payment for change orders.

9.     The breach of contract verdict was contrary to the evidence and the law because Plaintiff failed to produce evidence that any of the claimed damages were related to change orders or any pending change order.

10.     The breach of contract verdict was contrary to the evidence and the law because the verdict exceeded the remaining amount due to Durkin on the contract.

11.     The breach of contract verdict was contrary to the evidence and the law because the verdict exceeded the entire amount of the contract.

12.     The breach of contract verdict was contrary to the evidence and the law because the methodology for calculating work performed is contrary to the contract.

13.     The breach of contract verdict is contrary to the evidence and the law because the methodology for calculating work performed is contrary to Delaware law.

14.     The breach of contract verdict is contrary to the evidence and the law because the contractual provision upon which Plaintiff relied for its damages is not applicable.

15.     The breach of contract verdict was contrary to the evidence and the law because economic damages and professional fees are not recoverable under the contract.

16.     The breach of contract verdict was contrary to the law because economic loss damages and professional fees are not recoverable for breach of contract under Delaware law.

17.     The breach of contract verdict was contrary to the evidence and the law because Durkin admitted that it was only owed $239,682.43.

18.     The breach of contract verdict was contrary to the evidence and the law because the damages were not foreseeable.

19.     The breach of contract verdict was contrary to the evidence and the law because

3

C113

Durkin failed to offer evidence substantiating its claims for economic damages and professional fees.

20.    The breach of contract verdict was contrary to the evidence and the law because Durkin failed to make any effort to mitigate its damages or offer any evidence of mitigation effort.

21.    The verdict is contrary to the evidence and the law because 10 Del. C. § 3912 limits the recovery of attorneys' fees to 20% of the principal recovered.

**B.    The Court Erred in Issuing Certain Pre-trial Orders.**

22.    The Court erred in denying the Defendants Motion in Limine as to Plaintiff's Valuation of Damages filed on 8/22/06 (D.I. 152, reserved judgment on 9/6/06 and Order dated 9/20/06, D.I. 244).

23.    The Court erred in denying Defendants Motion in Limine as to Plaintiff's Claim for Economic Damages and Professional Fees filed on 8/22/06 (D.I. 154 and Order dated 9/6/06).

**C.    The Court Erred in its Decisions During Trial.**

24.    The Court erred in permitting evidence of equipment sales, loans and line of credit, which are not recoverable for breach of contract.

25.    The Court erred in permitting evidence of an improper breach of contract damages valuation.

26.    The Court erred in allowing testimony by Durkin regarding an improper method of valuing contract damages over Newark's continued objection.

27.    The Court erred in allowing evidence offered by Durkin of its damages over City of Newark's objection because Durkin had failed to produce such evidence prior to trial, in fact,

4

did not produce it until the fifth day of trial.

     28.    The Court erred in allowing evidence offered by Durkin of its damages over Newark's objection because Durkin improperly valued damages.

     29.    The Court erred by overruling the Defendants' objections to Plaintiff's valuation of damages and request for economic loss damages and professional fees.

     30.    The Court erred by permitting the jury to consider evidence of an improper valuation of damages.

     31.    The Court erred by permitting the jury to consider evidence of unrecoverable economic loss damages and professional fees.

     32.    The Court erred in allowing testimony by Durkin about damage to its reputation since Durkin withdrew its defamation claim, which had an unfair and highly prejudicial effect.

     33.    The Court erred by not ruling on the Defendants' Motion for Directed Verdict prior to submitting the case to the jury.

     34.    The Defendants incorporate for the purposes of this Motion, Defendants' Motion for Directed Verdict. ( D.I. 277).

    **D.   The Court Erred in Sending the Design Claim to the Jury.**

     35.    The Court erred by refusing to grant summary judgment to Newark on the basis that Plaintiff was advancing a design claim against a layperson and without an expert, or expert testimony, as to the standard of care.

     36.    The Court erred by allowing Durkin to advance a design claim against a layperson over Newark's objections.

     37.    The Court erred by permitting the jury to consider the design claim advanced by

Durkin.

    38.    The Court erred by allowing testimony by Durkin that there were design errors.

    39.    The Court erred by allowing testimony by three experts regarding the design in the context of its ruling that Durkin was not advancing a design claim.

## III.  CONVERSION

### A.  The Verdict Is Contrary to the Evidence and the Law.

    40.    The conversion verdict was contrary to the evidence and the law as Plaintiff failed to offer any evidence substantiating its claim.

    41.    No evidence was produced at trial that would sustain the conversion verdict.

    42.    The conversion verdict was contrary to the evidence and the law as Plaintiff admitted the damages duplicated the damages sought for breach of contract.

    43.    The conversion verdict was contrary to the evidence and the law because Plaintiff offered no rebuttal to evidence by Newark that all materials had been paid for by Newark directly.

    44.    The conversion verdict was contrary to the evidence and the law because Plaintiff failed to identify the materials, which it contended were converted.

    45.    The conversion verdict was contrary to the evidence and the law because Plaintiff failed to offer evidence of the cost of materials, which it contended were converted. The jury verdict of $1.00 reflects Plaintiff's failure to offer such evidence.

    46.    The conversion verdict was contrary to the evidence and the law because Newark had a contractual right to retain all materials on site.

6

## IV. URS CORPORATION

### A.   The Verdict Is Contrary to the Evidence and the Law.

47.   The judgment entered for URS Corporation incorrectly reflects the verdict because the judgment amount is a duplication of the awarded attorneys' fees instead of the sum of the award of attorneys' fees ($283,387.87) and judgment entered on the outstanding invoices ($242,000.00).  (Jury Verdict Form Section II).  The judgment for URS Corporation should be amended to $525,387.87.

48.   The verdict for URS is contrary to the law because 10 Del. C. § 3912 limits the recovery of attorneys' fees to 20% of the principal recovered.

49.   The verdict for URS is contrary to the evidence and the law because URS failed to differentiate from its attorneys' fees the costs of collection.

50.   The contribution verdict against URS was contrary to the evidence because Plaintiff's claims arose out of the design performed by URS and URS provided advice upon which Newark relied.

### B.   The Court Erred in its Decisions During Trial.

51.   The Court erred by partially granting URS's Motion for Judgment as a Matter of Law (D.I. 273 and minute entry of 10/3/06) on the basis that Newark did not prove professional negligence by URS because it was Durkin advancing the claim of professional negligence, and since Durkin failed to make such a claim, judgment should have been granted as to both URS and Newark.  Alternatively, the Court erred by allowing Durkin to advance the claim of professional negligence but not allow Newark to seek indemnification, based on breach of contract,  from URS.

7

52.    The Court erred by partially granting URS's Motion for Judgment as a Matter of Law because the contract between URS and Newark obligated URS to indemnify Newark.

53.    The Court erred in permitting evidence of the entire amount URS's attorneys' fees since the contract only permitted recovery of attorneys' fees arising out of collection.

54.    The Court erred in permitting evidence of the entire amount of URS's attorneys' fees since 10 Del. C. § 3912 limits the recovery of attorneys' fees to 20% of the principal recovered.

55.    The Court erred by denying Newark's request to limit the recovery of attorneys' fees by URS to 20% of the principal.

## V.  CIVIL RIGHTS

### A.    The Verdict Is Contrary to the Evidence and the Law.

56.    The civil rights verdict was contrary to the evidence.

57.    The civil rights verdict was contrary to the law.

58.    No evidence was produced at trial that would sustain the civil rights verdict.

59.    Plaintiff failed to prove the existence of a property right.

60.    Plaintiff failed to prove the existence of a liberty interest.

61.    Plaintiff failed to prove, in connection with its procedural due process claims, that it had made any request for a hearing of any kind and such failure is fatal to Plaintiff's civil rights claims.

62.    Plaintiff failed to establish that it had suffered a constitutionally cognizable stigma.

63.    Plaintiff failed to establish the existence of a constitutionally cognizable liberty

8

interest claim because of the availability of adequate post-deprivation state law remedies.

64.     Plaintiff failed to establish the existence of a constitutionally cognizable property interest claim because of the availability of adequate post-deprivation state law remedies.

65.     Plaintiff failed to produce evidence of damages sufficient to establish its procedural due process liberty or property interest claim because it failed to prove that, but for its failure to receive a hearing, it would not have suffered such damages.

66.     Plaintiff failed to produce evidence of damages sufficient to establish its procedural due process liberty or property interest claim because it failed to prove what damages it suffered by reason of failing to receive a hearing.

67.     Plaintiff failed to prove a deprivation of its substantive due process rights because contract and employment rights are not fundamental rights entitled to substantive due process protection.

68.     The civil rights verdict is contrary to the evidence and the law because a substantive due process claim asserted on the basis of the loss of public employment or a public contract, and alleged reputational injury connected therewith that is claimed to have decreased the Plaintiff's ability to earn a living, does not constitute a constitutionally cognizable claim under the 14th Amendment.

69.     The civil rights verdict is contrary to the evidence because alleged reputational injury is insufficient to form the basis for a constitutionally cognizable damage claim under the 14th Amendment.

70.     The civil rights verdict was contrary to the evidence and the law because the alleged breach of a public contract by governmental entity, and the alleged accompanying

9

damages flowing therefrom do not form the basis of liberty or property interest claim cognizable under the 14th Amendment.

71.    The civil rights verdict was contrary to the evidence and the law as Plaintiff failed to establish by competent evidence that it suffered any violation of its procedural due process property interest rights under the 14th Amendment.

72.    The civil rights verdict was contrary to the evidence and the law as Plaintiff failed to establish by competent evidence that it suffered any violation of its procedural due process liberty interest rights under the 14th Amendment.

73.    The civil rights verdict was contrary to the evidence and the law as Plaintiff failed to prove by competent evidence that its substantive due process rights under the constitution were violated.

74.    The civil rights verdict was contrary to the evidence and the law as Plaintiff failed to produce any evidence before or during trial that it sustained any constitutional violation as the result of any action or inaction by the defendants.

75.    The civil rights verdict was contrary to the evidence and the law as Plaintiff failed to produce any evidence that  Newark had an official policy, practice, custom, or authorized any action or acquiesced in a longstanding practice or custom that constituted the standard operating procedure of Newark, which caused a violation of Plaintiff's constitutional rights.

76.    The civil rights verdict was contrary to the evidence and the law as Plaintiff failed to establish by competent evidence that it suffered any constitutional violation under the 5th Amendment.

77.    The civil rights verdict is contrary to the evidence and the law as the Plaintiff

10

C120

failed to produce any competent evidence that Newark violated Plaintiff's constitutional rights through conduct that shocks the conscience under the facts and circumstances of this case.

78.    The civil rights verdict was contrary to the law because the civil rights claim is barred by the doctrine of collateral estoppel. At trial, Plaintiffs voluntarily dismissed their defamation and tortious interference claims. By virtue of the operation of the doctrine of collateral estoppel, the facts of reputational injury and lost business opportunities upon which Plaintiff based their civil rights claims, have been established adversely to them as a matter of law.

**B.    The Court Erred in Issuing Certain Pre-trial Orders.**

79.    The Court erred in denying Defendants Motion In Limine as to the Plaintiff's civil rights claims filed on August 22, 2006 (D.I. 136 and Order dated September 6, 2006). Plaintiff refused to identify the specific alleged civil rights violations it was pursuing, for over 2 ½ years of litigating this matter. Plaintiff did not advise the Court of the specific civil rights violations until October 3, 2006, on the fifth day of trial and 27 days after the Court denied the Defendants Motion In Limine concerning Plaintiff's failure to identify which civil rights claim Plaintiff was prosecuting at trial. The Plaintiff should not be permitted to perpetuate a fraud on this Court by failing to comply with the Federal Rules of Civil Procedure and not identifying the alleged rights violated, when requested to do so in interrogatories, discovery depositions and responses to Defendants motions. Plaintiff knowingly ignored the Federal Rules of Civil Procedure and put forth a case of litigation by ambush by withholding its civil rights claim identification until after it rested its case in chief on October 3, 2006. Plaintiff's conduct and the Court's refusal to grant Defendants Motion In Limine resulted in prejudice to Defendants by denying the Defendants the

opportunity to adequately defend against Plaintiff's claim.

**C.    The Court Erred in its Decisions During the Trial.**

80.    The Court erred in allowing the Plaintiff's civil rights claims to go to the jury, where the Plaintiff refused to identify any alleged civil rights violation until the fifth day of the jury trial, despite 2 ½ years of pre-trial discovery.

81.    The Court erred in permitting the Plaintiffs' civil rights claim to be decided by the jury.

82.    The Court erred in allowing testimony by Durkin about damage to its reputation when Durkin had withdrawn its defamation claim, which had an unfair and highly prejudicial effect.

**D.    The Court Erred in its Treatment of the Defendants' Motion for Directed Verdict.**

83.    The Court erred in not ruling on the Motion for Directed Verdict prior to submitting the case to the jury.

84.    Defendants incorporate, for the purposes of the is Motion, Defendants' Motion for Directed Verdict. (D.I. 277).

**VII.    CONCLUSION**

85.    There have been clear errors of law as outlined above and which will be briefed upon receipt of the trial transcripts, which must be corrected by the granting of this Motion for Judgment Not Withstanding the Verdict.

86.    A manifest injustice will occur unless this Court grants the Motion for Judgment Notwithstanding the Verdict.

87.    Defendants respectfully request leave to file an Amended/Supplemental Motion

12

C122

for Judgment Not Withstanding the Verdict pursuant to FRCP 50(b) after the Defendants review

the trial transcripts when the transcripts become available at the end of November 2006.

WHEREFORE, City of Newark Defendants respectfully request that the Court grant

Defendants' Motion for Judgment Not Withstanding the Verdict and direct entry of judgement as

a matter of law for the Defendants, as will be set forth more fully after the Defendants review the

trial transcripts and brief the issues contained in this Motion. The Defendants also ask that this

Court grant such additional relief as justice requires.

Respectfully submitted,

TIGHE, COTTRELL & LOGAN, P.A.
By: /s/ Paul Cottrell
Paul Cottrell (Delaware I.D. No. 2391)
Victoria K. Petrone (Delaware I.D. No. 4210)
704 N. King Street, Suite 500
P.O. Box 1031
Wilmington, DE 19899
P: (302) 658-6400
email: p.cottrell@lawtcl.com

*and*

Thomas C. Gallagher, Esq. (Pro Hac Vice, Pa. I.D. 27156 )
Deasey, Mahoney & Bender Ltd.
1800 John F. Kennedy Boulevard, Suite 1300
Philadelphia, PA 19107
P: (215) 587-9400
email: tcgallagher@dmbphila.com
*Attorneys for Defendant City of Newark*
*Harold F. Godwin, John H. Farrell, IV, Jerry Clifton,*
*Karl G. Kalbacher, David J. Athey,*
*Frank J. Osborne, Jr. and*
*Christina Rewa, in their official capacities*

Dated: October 24, 2006

13

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Donald M. Durkin Contracting, Inc.     :
                     Plaintiff,    :

                                :      Civil Action: 04-0163 GMS

       vs.                   :

                                :

City of Newark, et al.            :

                     Defendants.   :

---

### CITY OF NEWARK DEFENDANTS' MOTION TO ALTER, AMEND OR VACATE JUDGMENT, FOR NEW TRIAL/REMITTITUR PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59

Defendants Karl G. Kalbacher, David J. Athey, Harold F. Godwin, John H. Farrell IV, Jerry Clifton, Frank J. Osborne, Jr. Christina Rewa, in their official capacities, and the City of Newark (hereinafter collectively, "Newark"), submit this *Motion to Alter, Amend or Vacate Judgment, for New Trial pursuant to Federal Rule of Civil Procedure 59* or in the alternative Defendants request Remittitur on the verdict entered in the above matter on October 5, 2006, and entered as a judgment on October 13, 2006.   The Defendants are submitting this *Motion* within ten (10) days of the entry of judgment but have received permission from this Court to brief the issues for this motion pursuant to a stipulated briefing schedule regarding Post-Verdict Motions to be filed with the Court upon receipt of the full trial transcript in this case.

In support of their request that the Judgment be Altered, Amended or Vacated, that the verdict of the jury be vacated and set aside and that a new trial be granted to the Defendants or in the alternative that the request for Remittitur be granted to the Defendants, Defendants state the following:

1

## I.  INTRODUCTION

1.     Plaintiff originally asserted claims for Breach of Contract, Conversion, Interference with Existing and Prospective Contracts, Defamation/Trade Libel, Fraud and Misrepresentation, Conspiracy and violation of Plaintiff's civil rights but withdrew all claims except the Breach Contract, Conversion and Civil Rights claims against the City of Newark. The matter was tried to a jury from September 26, 2006 to October 5, 2006.

2.     On October 5, 2006, the jury rendered a verdict in favor of Plaintiff as follows:

    A.     Breach of Contract Damages:

        Compensatory -    $5,492,666.55
        Post Termination -  $6,174,905.78
        Attorney Fees -    $1,740,751.38

    B.     Civil Rights -    $25,000,000.00

    C.     Conversion -        $1.00

    D.     URS Crossclaim -   $566,775.74

3.     For reasons more fully set forth herein and to be briefed pursuant to a stipulated briefing schedule after receipt of the trial transcripts, said verdict was contrary to the evidence and law.

## II.   BREACH OF CONTRACT

### A.  The Verdict Is Contrary to the Evidence and the Law.

4.     The breach of contract verdict was contrary to the evidence.

5.     The breach of contract verdict was contrary to the law.

6.     The breach of contract verdict was contrary to the law because Plaintiff's valuation of breach of contract damages is not supported by the contract or Delaware law.

2

7.     The breach of contract verdict was contrary to the evidence and the law because Plaintiff did not include a quantum meruit claim in its complaint.  Plaintiff's Complaint included a breach of contract claim but Plaintiff was permitted to substitute a quantum merit claim.

8.     The breach of contract verdict was contrary to the evidence and the law because Plaintiff never advanced a claim for payment for change orders.

9.     The breach of contract verdict was contrary to the evidence and the law because Plaintiff failed to produce evidence that any of the claimed damages were related to change orders or any pending change order.

10.    The breach of contract verdict was contrary to the evidence and the law because the verdict exceeded the remaining amount due to Durkin on the contract.

11.    The breach of contract verdict was contrary to the evidence and the law because the verdict exceeded the entire amount of the contract.

12.    The breach of contract verdict was contrary to the evidence and the law because the methodology for calculating work performed is contrary to the contract.

13.    The breach of contract verdict is contrary to the evidence and the law because the methodology for calculating work performed is contrary to Delaware law.

14.    The breach of contract verdict is contrary to the evidence and the law because the contractual provision upon which Plaintiff relied for its damages  is not applicable.

15.    The breach of contract verdict was contrary to the evidence and the law because economic damages and professional fees are not recoverable under the contract.

16.    The breach of contract verdict was contrary to the law because economic loss damages and professional fees are not recoverable for breach of contract under Delaware law.

3

17.    The breach of contract verdict was contrary to the evidence and the law because Durkin admitted that it was only owed $239,682.43.

18.    The breach of contract verdict was contrary to the evidence and the law because the damages were not foreseeable.

19.    The breach of contract verdict was contrary to the evidence and the law because Durkin failed to offer evidence substantiating its claims for economic damages and professional fees.

20.    The breach of contract verdict was contrary to the evidence and the law because Durkin failed to make any effort to mitigate its damages or offer any evidence of mitigation effort.

21.    The verdict is contrary to the evidence and the law because 10 Del. C. § 3912 limits the recovery of attorneys' fees to 20% of the principal recovered.

**B.    The Court Erred in Issuing Certain Pre-trial Orders.**

22.    The Court erred in denying the Defendants Motion in Limine as to Plaintiff's Valuation of Damages filed on 8/22/06 (D.I. 152, reserved judgment on 9/6/06 and Order dated 9/20/06, D.I. 244).

23.    The Court erred in ordering that "The Court Will Not Allow Case Dispositive Motions Practice" (emphasis in the original Docket [D.I. 136]) on January 31, 2006.  The Defendants' Motion for Summary Judgment would have addressed, among many issues, the Plaintiff's measure of damages.   The Court erred by later denying the Defendants Motion in Limine as to Plaintiff's Valuation of Damages as an untimely motion for summary judgment, which Defendants could not have filed earlier as Plaintiff failed to produce any documentation of

4

its damages prior to August 2006.

24.    The Court erred in its Order of January 31, 2006, as the Defendants were prejudiced when they were denied the opportunity to raise and have the Court rule on the sufficiency of the discovery evidence and apply the pertinent standards concerning procedural due process property and liberty rights as defined in the case law, by filing a Motion for Summary Judgment.

25.    The Court erred in denying Defendants Motion in Limine as to Plaintiff's Claim for Economic Damages and Professional Fees filed on 8/22/06 (D.I. 154 and Order dated 9/6/06).

26.    The Court erred in granting summary judgment to Federal and partial summary judgment to Durkin on the basis of an asserted judicial admission by Newark Rule 30(b)(6) designee Carol Houck.  The letters authored by Newark including the February 4, 2004 letter, Ms. Houck's varied deposition testimony and her errata sheets all created an issue of material fact regarding the termination notice, which should have been submitted to the jury.

27.    The Court erred in granting Federal's Motion in Limine Regarding the Judicial Admission of the City of Newark (D.I. 190 and Memorandum and Order of 9/22/06, D.I. 257).

28.    The Court erred in granting Federal's Motion in Limine to Exclude the Deposition Errata Sheets of Carol Houck (D.I. 163 and Memorandum and Order of 9/22/06, D.I. 257).

29.    The Court erred in vacating its order denying summary judgment to Federal (D.I. 132 and Memorandum and Order of 9/22/06, D.I. 257).

30.    The Court erred in granting summary judgment to Federal (D.I. 122 and Memorandum and Order of 9/22/06, D.I. 257).

31.    The Court erred in granting Federal's Motion for Reconsideration and Re-

5

argument (D.I. 136 and Memorandum and Order of 9/22/06, D.I. 257).

32.    The Court erred in vacating its order denying summary judgment to Durkin (D.I. 63 and Memorandum and Order of 9/22/06, D.I. 257).

33.    The Court erred in granting partial summary judgment to Durkin (D.I. 36 and Memorandum and Order of 9/22/06, D.I. 257).

34.    The Court erred in partially granting Federal's Motion in Limine to Exclude Evidence of the February 4, 2004 Letter (D.I. 165 and Memorandum and Order of 9/22/06, D.I. 257).

35.    The Court erred by partially granting Federal's Motion to Compel Production of Privileged Documents (D.I. 213, 9/6/06 Oral Order and 9/12/06 Order, D.I. 241) because the May 16, 2006 letter did not constitute a waiver of the attorney-client privilege, and if it did constitute a waiver, the Court erred in its ruling on the extent of the waiver.

36.    The Court erred in denying Newark's Motion in Limine to Bar any Party from Calling Craig Calabria (D.I. 153 and Oral Order of 9/6/06).  Craig Calabria was an expert retained by Newark and other parties should not have been permitted to designate Calabria as their expert.  Further, Calabria's testimony was duplicative in violation of the Court's form Final Pretrial Order.

37.    The Court erred by denying Newark's Motion for Reconsideration (D.I. 260 and oral order on 9/26/06).  Carol Houck did testify that the November 21, 2003 letter satisfied the notice requirement of the contract, and the notice issue was a factual issue, which should have been submitted to the jury.

6

### C.    The Court Erred in its Decisions During Trial.

38.    The Court erred by refusing to grant summary judgment to Newark on the basis that Plaintiff was advancing a design claim against a layperson and without an expert, or expert testimony, as to the standard of care.

39.    The Court erred in entering such a severe sanction against Newark (Order, D.I. 268) as at least one of the critical documents forming the basis for the sanction had already been produced by URS and was in the possession of Durkin for a year prior to trial. See Exhibit A, January 20, 2004 Fax from Victoria K. Petrone, Bates No. FTW/U006764 and 2005 correspondence from URS indicating production of same.  In oral argument, Durkin claimed that the document was case-dispositive and later that it was handicapped by the timing of Newark's production of the document. Durkin should not be permitted to perpetrate a fraud on this Court by requesting sanctions on a false premise as it has been discovered that Durkin had the document all along.  The sanction was also too severe since briefing packets were available in a different form (i.e., documents were included in the files produced), and Newark was advancing good faith assertions of privilege as a basis for withholding the documents.  Further, the verdict indicates Durkin was not prejudiced at all and Durkin itself produced documents during trial, which had not been produced previously over Newark's objection, and other documents which were not admitted because of Newark's objection. Exhibit B, Durkin proposed trial exhibits 66 through 70.

40.    The Court erred in permitting evidence of equipment sales, loans and line of credit, which are not recoverable for breach of contract.

41.    The Court erred in permitting evidence of an improper breach of contract

damages valuation.

42.    The Court erred in not ruling on the Motion for Directed Verdict prior to submitting the case to the jury.

**D.    The Court Erred in its Instructions to the Jury.**

43.    The Court erred by failing to instruct the jury regarding the proper method of valuing damages for breach of contract.

44.    The Court erred by instructing the jury on ambiguity in the contract, as construction of the contract is a question of law and further there was no ambiguity in the contract.

45.    The Court erred by failing to instruct the jury regarding the proper measure of damages.

46.    The Court erred by failing to instruct the jury that economic loss damages are not recoverable.

47.    The Court erred by failing to instruct the jury that professional fees are not recoverable.

48.    Jury instructions that misstate the law so as to mislead the jury are clearly erroneous and a judgment entered on them should be corrected as plain error as long as the instructions result in a miscarriage of justice.

**E.    The Court Erred in Sending the Design Claim to the Jury.**

49.    The Court erred by allowing Durkin to advance a design claim against a layperson over Newark's objections.

50.    The Court erred by permitting the jury to consider the design claim advanced by

8

**C131**

Durkin.

51.    The Court erred by allowing testimony by Durkin that there were design errors.

52.    The Court erred by allowing testimony by three experts regarding the design in the context of its ruling that Durkin was not advancing a design claim.

**F.    The Court Should Grant the Request for Remittitur as the Damages Verdict Was Excessive and Not Supported by the Evidence.**

53.    The Court erred in allowing testimony by Durkin regarding an improper method of valuing contract damages over Newark's continued objection.

54.    The Court erred in allowing evidence offered by Durkin of its damages over City of Newark's objection because Durkin had failed to produce such evidence prior to trial, in fact, did not produce it until the fifth day of trial.

55.    The Court erred in allowing evidence offered by Durkin of its damages over Newark's objection because Durkin improperly valued damages.

56.    The Court erred by overruling the Defendants' objections to Plaintiff's valuation of damages and request for economic loss damages and professional fees.

57.    The Court erred by permitting the jury to consider evidence of an improper valuation of damages.

58.    The Court erred by permitting the jury to consider evidence of unrecoverable economic loss damages and professional fees.

59.    The Court erred in allowing testimony by Durkin about damage to its reputation since Durkin withdrew its defamation claim, which had an unfair and highly prejudicial effect.

60.    The verdict is excessive, exceeds the contract, exceeds the balance left on the

9

contract, grossly exceeds the amount due to Durkin at the time of termination, was not supported by evidence or the law, therefore Defendants request a remittitur.

### G. The Court Should Grant a New Trial Based on New Evidentiary Witness.

61.    The verdict was contrary to evidence provided by a witness that has come forward after learning of the verdict and testified that Durkin refused to bid available work until after the litigation ended with Newark. Exhibit C, Affidavit of Ronald Scott Killen. Due diligence was exercised, prior to trial, as evidenced by Defendants' Interrogatories requesting the jobs which Plaintiff could not bid on due to the actions of Newark. See Exhibit D, Plaintiff's Answers to City of Newark's Interrogatories Nos. 25-27. Durkin should not be permitted to perpetrate a fraud on this Court by untruthful testimony that it could not obtain any work since termination and by its deliberate effort to run up damages. This untruth goes straight to the heart of its case and the damages awarded for both the breach of contract and civil rights claims.

## III. CONVERSION

### A. The Verdict Is Contrary to the Evidence and the Law.

62.    The conversion verdict was contrary to the evidence and the law as Plaintiff failed to offer any evidence substantiating its claim.

63.    No evidence was produced at trial that would sustain the conversion verdict.

64.    The conversion verdict was contrary to the evidence and the law as Plaintiff admitted the damages duplicated the damages sought for breach of contract.

65.    The conversion verdict was contrary to the evidence and the law because Plaintiff offered no rebuttal to evidence by Newark that all materials had been paid for by Newark directly.

10

66.    The conversion verdict was contrary to the evidence and the law because Plaintiff failed to identify the materials which it contended were converted.

67.    The conversion verdict was contrary to the evidence and the law because Plaintiff failed to offer evidence of the cost of materials which it contended were converted.  The jury verdict of $1.00 reflects Plaintiff's failure to offer such evidence.

68.    The conversion verdict was contrary to the evidence and the law because Newark had a contractual right to retain all materials on site.

**B.    The Court Erred in its Treatment of the Defendants' Motion for Directed Verdict**

69.    The Court erred in not ruling on the Motion for Directed Verdict prior to submitting the case to the jury.

**IV.    URS CORPORATION**

**A.    The Verdict Is Contrary to the Evidence and the Law.**

70.    The judgment entered for URS Corporation incorrectly reflects the verdict because the judgment amount is a duplication of the awarded attorneys' fees instead of the sum of the award of attorneys' fees ($283,387.87) and judgment entered on the outstanding invoices ($242,000.00).  (Jury Verdict Form Section II).  The judgment for URS Corporation should be amended to $525,387.87.

71.    The verdict for URS is contrary to the law because 10 Del. C. § 3912 limits the recovery of attorneys' fees to 20% of the principal recovered.

72.    The verdict for URS is contrary to the evidence and the law because URS failed to differentiate from its attorneys' fees, the costs of collection.

73.    The contribution verdict against URS was contrary to the evidence because

11

Plaintiff's claims arose out of the design performed by URS and URS provided advice upon which Newark relied.

**B.    The Court Erred in its Decisions During Trial.**

74.    The Court erred by partially granting URS's Motion for Judgment as a Matter of Law (D.I. 273 and minute entry of 10/3/06) on the basis that Newark did not prove professional negligence by URS because it was Durkin advancing the claim of professional negligence, and since Durkin failed to make such a claim, judgment should have been granted as to both URS and Newark.  Alternatively, the Court erred by allowing Durkin to advance the claim of professional negligence but not allow Newark to seek indemnification, based on breach of contract, from URS.

75.    The Court erred by partially granting URS's Motion for Judgment as a Matter of Law because the contract between URS and Newark obligated URS to indemnify Newark.

76.    The Court erred in permitting evidence of the entire amount URS's attorneys' fees since the contract only permitted recovery of attorneys' fees arising out of collection.

77.    The Court erred in permitting evidence of the entire amount of URS's attorneys' fees since 10 Del. C. § 3912 limits the recovery of attorneys' fees to 20% of the principal recovered.

78.    The Court erred by denying Newark's request to limit the recovery of attorneys' fees by URS to 20% of the principal.

**C.    The Court Erred in its Instructions to the Jury.**

79.    The Court erred by failing to instruct the jury that 10 Del. C. § 3912 limits the recovery of attorneys' fees to 20% of the principal recovered.

12

## V.  CIVIL RIGHTS LIABILITY

### A.  The Verdict Is Contrary to the Evidence and the Law.

80.  The civil rights verdict was contrary to the evidence.

81.  The civil rights verdict was contrary to the law.

82.  The civil rights verdict was contrary to the weight of the evidence.

83.  No evidence was produced at trial that would sustain the civil rights verdict.

84.  Plaintiff failed to prove the existence of a property right.

85.  Plaintiff failed to prove the existence of a liberty interest.

86.  Plaintiff failed to prove, in connection with its procedural due process claims, that it had made any request for a hearing of any kind and such failure is fatal to Plaintiff's civil rights claims.

87.  Plaintiff failed to establish that it had suffered a constitutionally cognizable stigma.

88.  Plaintiff failed to establish the existence of a constitutionally cognizable liberty interest claim because of the availability of adequate post-deprivation state law remedies.

89.  Plaintiff failed to establish the existence of a constitutionally cognizable property interest claim because of the availability of adequate post-deprivation state law remedies.

90.  Plaintiff failed to produce evidence of damages sufficient to establish its procedural due process liberty or property interest claim because it failed to prove that, but for its failure to receive a hearing, it would not have suffered such damages.

91.  Plaintiff failed to produce evidence of damages sufficient to establish its procedural due process liberty or property interest claim because it failed to prove what damages

13

C136

it suffered by reason of failing to receive a hearing.

92.    Plaintiff failed to prove a deprivation of its substantive due process rights because contract and employment rights are not fundamental rights entitled to substantive due process protection.

93.    The civil rights verdict is contrary to the evidence and the law because a substantive due process claim asserted on the basis of the loss of public employment or a public contract, and alleged reputational injury connected therewith that is claimed to have decreased the Plaintiff's ability to earn a living, does not constitute a constitutionally cognizable claim under the 14th Amendment.

94.    The civil rights verdict is contrary to the evidence because alleged reputational injury is insufficient to form the basis for a constitutionally cognizable damage claim under the 14th Amendment.

95.    The civil rights verdict was contrary to the evidence and the law because the alleged breach of a public contract by governmental entity, and the alleged accompanying damages flowing therefrom, do not form the basis of liberty or property interest claim cognizable under the 14th Amendment.

96.    The civil rights verdict was contrary to the evidence and the law as Plaintiff failed to establish by competent evidence that it suffered any violation of its procedural due process property interest rights under the 14th Amendment.

97.    The civil rights verdict was contrary to the evidence and the law as Plaintiff failed to establish by competent evidence that it suffered any violation of its procedural due process liberty interest rights under the 14th Amendment.

14

98.    The civil rights verdict was contrary to the evidence and the law as Plaintiff failed to prove by competent evidence that its substantive due process rights under the constitution were violated.

99.    The civil rights verdict was contrary to the evidence and the law as Plaintiff failed to produce any evidence before or during trial that it sustained any constitutional violation as the result of any action or inaction by the defendants.

100.    The civil rights verdict was contrary to the evidence and the law as Plaintiff failed to produce any evidence that  Newark had an official policy, practice, custom, or authorized any action or acquiesced in a longstanding practice or custom that constituted the standard operating procedure of Newark, which caused a violation of Plaintiff's constitutional rights.

101.    The civil rights verdict was contrary to the evidence and the law as Plaintiff failed to establish by competent evidence that it suffered any constitutional violation under the 5th Amendment.

102.    The civil rights verdict is contrary to the evidence and the law as the Plaintiff failed to produce any competent evidence that Newark violated Plaintiff's constitutional rights through conduct that shocks the conscience under the facts and circumstances of this case.

103.    The civil rights verdict was contrary to the law because the civil rights claim is barred by the doctrine of collateral estoppel.  At trial, Plaintiffs voluntarily dismissed their defamation and tortious interference claims.  By virtue of the operation of the doctrine of collateral estoppel, the facts of reputational injury and lost business opportunities upon which Plaintiff based their civil rights claims,  have been established adversely to them as a matter of law.

15

C138

**B.    The Court Erred in Issuing  Certain Pre-trial Orders.**

104.    The Court erred in ordering that "The Court Will Not Allow Case Dispositive Motions Practice" (emphasis in the original Docket [D.I. 136]) on January 31, 2006.  Such Order prevented the Defendants from raising, through a dispositive motion, many issues, including complete failure of the Plaintiff to identify and/or develop during discovery, the specific alleged civil rights violation(s) it was  averring in generic averments in its complaint as well as the Plaintiff's inability to sustain such a claim as a matter of law, if it had even identified the claim. This Order severely prejudiced  the Defendants by preventing Defendants from defending against the Plaintiff's unsubstantiated and unstated civil rights violations.

105.    The Court erred in its Order of January 31, 2006, as the Defendants were prejudiced when they were denied the opportunity to raise and have the Court rule on the sufficiency of the discovery evidence and apply the pertinent standards concerning procedural due process property and liberty rights as defined in the case law, by filing a Motion for Summary Judgment.

106.    The Court erred in denying Defendants Motion In Limine as to the Plaintiff's civil rights claims filed on August 22, 2006 (D.I. 136 and Order dated September 6, 2006).  Plaintiff refused to identify the specific alleged civil rights violations it was pursuing, for over 2 ½ years of litigating this matter.  Plaintiff did not advise the Court of the specific civil rights violations until October 2, 2006, at 9:43 P.M. on the fourth day of trial and 27 days after the Court denied the Defendants Motion In Limine concerning Plaintiff's failure to identify which civil rights claim Plaintiff was prosecuting at trial.  The Plaintiff should not be permitted to perpetuate a fraud on this Court by failing to comply with the Federal Rules of Civil Procedure and not

16

identifying the alleged rights violated, when requested to do so in interrogatories, discovery

depositions and responses to Defendants motions.  Plaintiff knowingly ignored the Federal Rules

of Civil Procedure and put forth a case of litigation by ambush by withholding its civil rights

claim identification until October 2, 2006, at 9:43 P.M. after the direct testimony of Plaintiff's

last witness was completed.  Plaintiff's conduct and the Court's refusal to grant Defendants

Motion In Limine resulted in prejudice to Defendants by denying the Defendants  the opportunity

to adequately defend against Plaintiff's claim.

### C.    The Court Erred in its Decisions During the  Trial.

107.    The Court erred in allowing the Plaintiff's civil rights claims to go to the jury,

where  the Plaintiff refused to identify any alleged civil rights violation until the fifth day of the

jury trial, despite 2 ½ years of pre-trial discovery.

108.    The Court erred in permitting the Plaintiffs' civil rights claim to be decided by the

jury.

109.    The Court erred in entering such a severe sanction against  Newark (Order, D.I.

268) as at least one of the critical documents forming the basis for the sanction had already been

produced by URS and was in the possession of Durkin for a year prior to trial.  See Exhibit A,

January 20, 2004 Fax from Victoria K. Petrone, Bates No. FTW/U006764 and 2005

correspondence from URS indicating production of same. In oral argument, Durkin claimed that

the document was case-dispositive and later that it was handicapped by the timing of Newark's

production of the document. Durkin should not be permitted to perpetrate a fraud on this Court

by requesting sanctions on a false premise as it has been discovered that Durkin had the

document all along.  The sanction was also too severe since briefing packets were available in a

17

C140

different form (i.e., documents were included in the files produced), and Newark was advancing good faith assertions of privilege as a basis for withholding the documents. Further, the verdict indicates Durkin was not prejudiced at all and Durkin itself produced documents during trial, which had not been produced previously over Newark's objection, and other documents which were not admitted because of Newark's objection. Exhibit B, Durkin proposed trial exhibits 66 through 70.

**D.    The Court Erred in its Treatment of the Defendants' Motion for Directed Verdict.**

110.    The Court erred in not ruling on the Motion for Directed Verdict prior to submitting the case to the jury.

**E.    The Court erred in its Instructions to the Jury.**

111.    The Court erred in charging the jury on an alleged violation of the 5th Amendment.

112.    The Court erred in overruling the Defendants objections to the inclusion of the Civil Rights Jury Instructions 12 through 18 during the Charging Conference and during discussions with the Court leading up to the final Jury Charge given on October 5, 2006.

113.    The Court's reading to the jury of Civil Rights Jury Instructions 12 through 18 constitutes plain error.

114    The Court erred in instructing the jury with Instructions 12 through 18 as Plaintiff had not produced any testimony concerning violations of the Plaintiff's property interests and liberty interests or Monell claims.

115.    The Court's instructions to the jury on the civil rights claims were erroneous and failed to properly guide the jury on fundamental questions of law.

116.    The Court erred in reading Jury Instruction number 14 – "Section 1983 –

18

Deprivation of a Federal Right," as it incorrectly states the law and offers no instructions as to what is a property interest or a liberty interest violation. Instruction 14 also refers to the 5th Amendment, which is not applicable to this case.

117.    The Court erred in reading Jury Instruction number 14 – "Section 1983 – Deprivation of a Federal Right," by instructing the jury that the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference could, without more, form the basis of a liberty and property interest under the 14th Amendment.

118.    The Court erred when it did not instruct the jury on the burden of proof required by the Plaintiff to prove that it had suffered a procedural due process property right violation.

119.    The Court erred in not instructing as to the definition of a procedural due process property right.

120.    The Court erred when it did not instruct the jury on the burden of proof required by the Plaintiff to prove that it had suffered a procedural due process liberty right violation.

121.    The Court erred in not instructing as to the definition of a procedural due process liberty right.

122.    The Court erred when it did not instruct the jury on the burden of proof required by the Plaintiff to prove that it had suffered a substantive due process violation.

123.    The Court erred when it did not instruct as to the definition of a substantive due process right.

124.    The Court erred when it incorrectly instructed the jury on official policy, practice, custom and/or acquiescence by the "City of Newark and City Administration".

125.    The Court erred when it charged the jury on the issues involving a Monell claim

19

C142

(Jury Instruction Number 16) as the Plaintiff failed to produce any competent evidence that the Defendant had an official policy, practice, custom or acquiesced in conduct that violated Plaintiffs civil rights and Plaintiff never identified a <u>Monell</u> claim as a cause of action at anytime during pre-trial or at trial. <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658 (1978).

     126.    Jury instructions that misstate the law so as to mislead the jury are clearly erroneous and a judgment entered on them should be corrected as plain error as long as the instructions result in a miscarriage of justice.

### F.    The Court Should Grant a New Trial Based on the New Evidentiary Witness.

     127.    The verdict was contrary to evidence provided by a witness that has come forward after learning of the verdict and testified that Durkin refused to bid available work until after the litigation ended with Newark. Exhibit C, Affidavit of Ronald Scott Killen. Due diligence was exercised, prior to trial, as evidenced by Defendants' Interrogatories requesting the jobs which Plaintiff could not bid on due to the actions of Newark. See Exhibit D, Plaintiff's Answers to City of Newark's Interrogatories Nos. 25-27. Durkin should not be permitted to perpetrate a fraud on this Court by untruthful testimony that it could not obtain any work since termination and by its deliberate effort to run up damages. This untruth goes straight to the heart of its case and the damages awarded for both the breach of contract and civil rights claims.

### VI.  <u>CIVIL RIGHTS REMITTITUR</u>

### A.    The Court Should Grant the Defendants Request for Remittitur as the Civil Rights Verdict Was Excessive and Not Supported by the Evidence.

     128.    There was not sufficient evidence to support the amount of the jury's verdict for

the civil rights claim and the proof of damages presented does not warrant the jury's verdict.

129.    The civil rights damage verdict is excessive and made under the influence of passion and prejudice in that there was no evidence to warrant such an award.

130.    The civil rights verdict in this case is excessive as there was no proof of any civil rights violations nor was there any proof of any losses or damages related to Plaintiffs' property or liberty procedural due process rights and/or the Monell claim.

131.    The jury's civil rights damage verdict is excessive, shocking and totally punitive. Plaintiff never alleged punitive damages against the Defendants. As a matter of law Plaintiff is not entitled to recover punitive damages.

132.    The Court erred in allowing testimony by Durkin regarding an improper method of valuing contract damages over Newark's continued objection.

133.    The Court erred in allowing evidence offered by Durkin of its damages over City of Newark's objection because Durkin had failed to produce such evidence prior to trial, in fact, did not produce it until the fifth day of trial.

134.    The Court erred in allowing testimony by Durkin about damage to its reputation since Durkin withdrew its defamation claim, which had an unfair and highly prejudicial effect.

135.    The civil rights verdict, in this case, is excessive, therefore Defendant requests a remittitur as the verdict was so large that it should shock the conscience of the Court.

136.    The Court has the authority to rectify the punitive civil rights damages verdict by asking the Plaintiff to accept remittitur of the $25,000.000.00 verdict or if the Plaintiff does not accept the remittitur, the Court will grant Defendants' Motion for New Trial.

**VII. CONCLUSION**

21

137.    There have been clear errors of law as outlined above and which will be briefed upon receipt of the trial transcripts, which must be corrected by the granting of this Motion for New Trial or in the alternative, the granting of Remittitur.

138.    A manifest injustice will occur unless this Court grants the Motion for New Trial, and permit the Defendants to file a dispositive Motion for Summary Judgment or in the alternative,  grant the  Defendants' request for Remittitur.

139.    Defendants respectfully request leave to file an Amended/Supplemental Motion for New Trial pursuant to FRCP 59 after the Defendants  review  the trial transcripts when the transcripts become available at the end of November 2006.

WHEREFORE, City of Newark Defendants respectfully request that the Court grant Defendants' Motion for New Trial, or in the alternative, order a Remittitur of  damages verdict, as will be set forth more fully after the Defendants review the trial transcripts and brief the issues contained in this Motion.  The Defendants also ask that this Court grant such additional relief as justice requires.

Respectfully submitted,

TIGHE, COTTRELL & LOGAN, P.A.
By: /s/ Paul Cottrell
Paul Cottrell (Delaware I.D. No. 2391)
Victoria K. Petrone (Delaware I.D. No. 4210)
704 N. King Street, Suite 500
P.O. Box 1031
Wilmington, DE 19899
P:  (302) 658-6400
email:  p.cottrell@lawtcl.com

*and*

22

C145

Thomas C. Gallagher, Esq. (Pro Hac Vice, Pa. I.D. 27156 )
Deasey, Mahoney & Bender Ltd.
1800 John F. Kennedy Boulevard, Suite 1300
Philadelphia, PA 19107
P: (215) 587-9400
email: tcgallagher@dmbphila.com
*Attorneys for Defendant City of Newark*
 *Harold F. Godwin, John H. Farrell, IV, Jerry Clifton,*
*Karl G. Kalbacher, David J. Athey,*
*Frank J. Osborne, Jr. and*
*Christina Rewa, in their official capacities*

Dated: October 24, 2006

23

**C146**

## CERTIFICATE OF SERVICE

I certify that on March 23, 2007, I electronically served the APPENDIX OF DOCUMENTS IN SUPPORT OF CITY OF NEWARK DEFENDANTS' POST-TRIAL REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL OR REMITTITUR by CM/ECF to counsel of record as follows:

Paul Logan, Esquire
Powell, Trachtman, Logan, Carrle & Lombardo, P.C.
475 Allendale Road, Suite 200
King of Prussia, PA 19406

David G. Culley, Esquire
Tybout Redfearn & Pell
750 South Madison Street
Suite 400
P.O. Box 2092
Wilmington, DE 19899

*Attorneys for Plaintiff,*
*Donald M. Durkin Contracting, Inc.*

William J. Cattie, III, Esquire
Rawle & Henderson
300 Delaware Avenue, Suite 1130
P.O. Box 588
Wilmington, DE 19899

*Attorneys for Intervener Plaintiff,*
*St. Paul Fire & Marine Insurance*
*Company*

James S. Green, Esquire
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19899

*Attorneys for URS Corporation, Inc.*

Patrick Kingsley, Esquire
Kevin W. Goldstein, Esquire
Stradley Ronon Stevens & Young, LLP
300 Delaware Avenue
Suite 800
Wilmington, DE 19801

*Attorneys for Federal Insurance Company*

_____
Collins J. Seitz, Jr. (Bar No. 2237)