IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DONALD M. DURKIN CONTRACTING, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 04-0163-GMS |
| CITY OF NEWARK, HAROLD F. GODWIN, JOHN H. FARRELL, IV, JERRY CLIFTON, KARL G. KALBACHER, DAVID J. ATHEY, FRANK J. OSBORNE, JR., and CHRISTINA REWA, | ) ) ) ) ) ) ) ) | |
| Defendants/ Third-Party Plaintiffs, v. | ) ) ) ) ) | |
| FEDERAL INSURANCE COMPANY, | ) ) | |
| Third-Party Defendant. | ) ) ) | |
| ------------------------------------------- | ) ) | |
| CITY OF NEWARK, | ) ) | |
| Third-Party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| URS CORPORATION, | ) ) | |
| Third-Party Defendant. | ) | |

**COMPENDIUM OF CASES SUPPORTING
CITY OF NEWARK DEFENDANTS' POST-TRIAL REPLY BRIEF
IN SUPPORT OF THEIR MOTION FOR JUDGMENT
AS A MATTER OF LAW AND FOR A NEW TRIAL OR REMITTITUR**

**VOLUME 1**

# **TABLE OF CONTENTS**

*Andrews Miller & Assoc. v. Forest Grove, Inc.*,
    No. 92C-08-21, 1994 WL 380996 (Del. Super. Ct. July 1, 1994) .......................... 1

*Eisenmann Corp. v. General Motors Corp.*,
    No. 99C-07-260-WTQ, 2000 WL 140781 (Del. Super. Ct. Jan. 28, 2000) .......... 2

*Es-Tee Realty Co., LLC., v. Soumekhian.*,
    No. 04-CV-3482, 2006 WL 2860810 (E.D.N.Y. Sept. 29, 2006) ........................ 3

*Heather Construction, Inc. v. Gangi*,
    1987 WL 8215 (Del. Super. Ct. Mar. 16, 1987) ..................................................... 4

*Novak v. City of Pittsburgh*,
    No. 2:05-CV-00897, 2006 WL 3420959 (W.D.Pa. Nov. 27, 2006) ..................... 5

*Olsen v. T. A. Tyre General Contractor, Inc.*,
    907 A.2d 146, 2006 WL 2661140 (Del. Aug. 24, 2000) ....................................... 6

*Shifa Services, Inc. v. The Port Authority of New York*,
    No. 96 Civ. 1361, 1997 WL 16062 (S.D.N.Y. Jan. 15, 1997) ............................. 7

*Stambaugh's Air Service, Inc. v. Susquehanna Area Regional Airport Authority*,
    1:00-CV-660, 2006 WL 709229 (M.D. Pa. Mar. 16, 2006) ................................. 8

*Union Fire Insurance Co. of Pa. v. Pan American Energy LLC*,
    No. 19629-NC, 2003 WL 1432419 (Del. Ch. Mar. 19, 2003) .............................. 9

# TAB 1

Westlaw.

Not Reported in A.2d                                                                 Page 1
Not Reported in A.2d, 1994 WL 380996 (Del.Super.)
(Cite as: Not Reported in A.2d)

Andrews Miller & Assoc., Inc. v. Forest Grove, Inc.Del.Super.,1994.Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Delaware, Kent County.
ANDREWS MILLER & ASSOC., INC. a Maryland corporation, Plaintiff,
v.
FOREST GROVE, INC., a Delaware corporation, Defendant.
**Civ. A. No. 92C-08-21.**

Submitted: April 22, 1994.
Decided: July 1, 1994.

Upon Plaintiff's Breach of Contract Action.

Donald L. Logan of Tighe, Cottrell & Logan, P.A., Wilmington, for plaintiff.
Bradley S. Eaby of Barros, McNamara, Scanlon, Malkiewicz & Taylor, P.A., Dover, for defendant.

*MEMORANDUM OPINION*
STEELE, Vice Chancellor.

I. PROCEDURAL POSTURE OF THE CASE

*1 This action involves a contract dispute between Andrews Miller & Associates ("Plaintiff") and Forest Grove ("Defendant") for unpaid professional engineering services incurred in the redesigning and re-permitting of the DF-5 Dosing Field ("DF-5"). The Plaintiff argues the Defendant breached the contract between the parties by refusing to tender payment for its engineering fees. Because the Plaintiff had to file this action in order to collect its fees, Plaintiff also requests an award of attorney's fees, collection costs and interest at the rate of 18 percent per annum on the unpaid balance.

Defendant maintains the Plaintiff is not entitled to payment for its professional engineering services because the Plaintiff breached the contract to design and permit the replacement of DF-5. Defendant further contends, assuming *arguendo* the Court finds the Plaintiff entitled to payment for its engineering services, the Defendant does not owe the Plaintiff attorney's fees, collection costs and interest on the unpaid balance because there exists no contract between the parties providing for these additional fees.

Finally, Defendant asserts a statute of limitations affirmative defense pursuant to 10 *Del.C.* § 8106. Defendant claims payment on one of the Plaintiff's invoices came due more than three years before Plaintiff commenced this action on August 13, 1992. Consequently, the statute of limitations bars recovery on this invoice.

On March 30, 1994, the Court held a one day bench trial in this matter. In lieu of a ruling from the bench, the Court requested the parties to submit their closing remarks in writing and reserved decision in the case. The Court received the closings on April 22, 1994. This Memorandum Opinion represents the Court's decision in the matter of Andrews Miller & Associates, Inc. v. Forest Grove, Inc.

II. STANDARD OF REVIEW

In analyzing a civil case without a jury, the Court must primarily focus on two traditional jury charges given in all civil cases.

First, the Court must set forth the burden of proof applicable to civil proceedings. The burden of proof in a civil case is by preponderance of the evidence. The parties establish a claim or affirmative defense by a preponderance of the evidence when the Court is persuaded the evidence makes each element of the claim or affirmative defense more likely than not. For a party to meet the burden of proof, the evidence must do more than merely balance the scale, it must tip the scale to some extent in that party's favor.

Second, the Court must judge the believability of each witness and determine the weight given to all trial testimony. The Court should consider each witness's means of knowledge; strength of memory and opportunity for observation; the reasonableness or unreasonableness of the testimony; the motives actuating the witness; the fact, if it is a fact the testimony has been contradicted; any bias, prejudice, or interest, manner or demeanor upon the witness stand; and all other facts and circumstances shown by the evidence which affect the believability of the testimony.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1994 WL 380996 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 2

### III. EVIDENCE PRESENTED AT TRIAL

*2 Between 1982 and 1989, Plaintiff provided professional engineering services to Defendant for the design and construction of the Forest Grove Mobile Home Park in Hartley, Delaware. The evidence indicates Andrews Miller and Forest Grove entered into three separate written contracts for development of the sewage treatment system for the Defendant's mobile home park. The parties entered into the first written agreement on April 12, 1982. The parties executed the second written agreement on December 10, 1985 and the third agreement on May 5, 1987. The agreements between the parties stipulated six Dosing Fields would be constructed in two separate phases.

Dosing Field 5, the subject of this law suit, was scheduled for construction in Phase 1. The initial construction of the DF-5 commenced in November 1984 and ended in April 1985. Gregg Moore, an engineer employed by Andrews Miller during this period but who no longer works for the firm, testified Andrews Miller designed DF-5. However, Forest Grove used an equipment supplier named Hans Albertson to modify Andrews Miller's design of the DF-5 and constructed the DF-5 without the supervision of Andrews Miller. Gregg Moore further testified when he conducted the licensing inspection of the DF-5 he not only discovered the design significantly different, but also found the Defendant had improperly constructed the Dosing Field. Nonetheless, Andrews Miller modified its plans, submitted as-built drawings to DNREC and procured licensing from DNREC for the DF-5. DF-5 went into full operation in April of 1985 but failed the following October.

Gregg Moore testified because the cost of replacing DF-5 was approximately $10,000, Forest Grove asked Andrews Miller to remedy the problem without resorting to replacement. While continuing to design the other areas of the park, Andrews Miller worked with Defendant's sewage treatment plant operator in an attempt to correct the problems with DF-5. None of these efforts resulted in permanent corrections, and Andrews Miller concluded replacement of the tile file constituted the only remaining alternative. According to Harold Miller, a partner with Andrews Miller, Forest Grove decided to put off replacing the DF-5 until DNREC required modifications. Unfortunately, these modifications became necessary in the summer of 1988 when DNREC adopted new regulations pertaining to low pressure pumping and cited Forest Grove for the failure of the DF-5.

Even after receiving DNREC citations, Forest Grove continued to maintain it did not want to expend the money necessary to replace the pumping system. Consequently, Andrews Miller and Forest Grove attempted to convince DNREC to approve repairs to the DF-5 as component replacements under the original permit. Following meetings with DNREC, at which the parties discussed this issue, Andrews Miller twice submitted applications for the work on DF-5 only to have DNREC return the applications because they did not adhere to the new regulations.

*3 Jack Nittinger, Forest Grove Executive Vice President, brought in Michael Malkiewicz, Forest Grove's attorney, to assist Gregg Moore in attempting to persuade DNREC to reconsider its position regarding the new regulations. DNREC would not waiver in its demand Forest Grove follow the new regulations and, finally, on August 11, 1989, Andrews Miller submitted an application for a new DF-5 permit under the new regulations. Between August 11, 1989 and October 12, 1989, Andrews Miller continued to work on behalf of Forest Grove, communicating with the Defendant as well as urging DNREC to process the permit application expeditiously.

On September 29, 1989, DNREC issued its comment letter on the re-permitting of DF-5. Andrews Miller received its copy of these comments on October 10, 1989. Apparently, this letter contained only one technical comment which, Harold Miller and Gregg Moore testified, would have taken Andrews Miller approximately one hour to address.

Andrews Miller contacted Forest Grove on October 12, 1989 to discuss changes in the permit application. At this point, Forest Grove terminated its relationship with Andrews Miller. Gregg Moore testified this termination occurred because Forest Grove felt Andrews Miller had not worked well with DNREC and by bringing in a new engineering team, Forest Grove could get a "fresh start" with DNREC. The Defendant did not allow Andrews Miller to complete the DF-5 project nor did the Defendant pay Andrews Miller's outstanding invoices.

### IV. ARGUMENTS OF THE PARTIES

#### A. PLAINTIFF'S ARGUMENTS

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
Not Reported in A.2d, 1994 WL 380996 (Del.Super.)  
**(Cite as: Not Reported in A.2d)**

Page 3

Plaintiff claims the May 5, 1987 contract governs the re-design of DF-5. A review of the 1987 agreement illustrates the parties considered the status of the entire sewage treatment project for the Forest Grove Mobile Home Park. Plaintiff contends this 1987 contract resulted from an April 22, 1987 planning session at which the parties discussed the amount of work and attendant fees necessary to close out the development. After substantial discussion, both parties signed the contract evidencing their intent to be bound by the terms of the document.

Gregg Moore and Harold Miller testified this 1987 agreement modified all earlier contracts and was the document under which Andrews Miller worked until terminated by Forest Grove. The Plaintiff believes no credible evidence disputes this fact. Plaintiff contends the only witness presented by Forest Grove was Ronald Isenhart. Mr. Isenhart testified although he was present at the April 22, 1987 planning session, at that point he was unfamiliar with the relationship between the parties since he had only worked on the Forest Grove project for four months. However, Ronald Isenhart clearly recollected the parties did not discuss the redesign of the DF-5 at the April 22, 1987 meeting. Plaintiff agrees the parties did not specifically decide to redesign the DF-5 until after the parties signed the 1987 agreement. However, the uncontroverted evidence shows the parties intended the 1987 agreement to constitute a "wrap-up" agreement intending to incorporate all project services performed by Andrews Miller.

*4 Plaintiff further contends Forest Grove knew this 1987 agreement pertained to all project services. Mr. Isenhart admitted after the parties executed the 1987 agreement, he authorized payments to Andrews Miller using the rate schedule contained in that agreement and regularly paid late fees as set forth in the 1987 agreement.

Because the evidence clearly indicates the 1987 contract governs this claim, Plaintiff asserts Forest Grove breached the 1987 agreement on October 12, 1989 when it fired Andrews Miller and refused to pay two outstanding invoices totaling $5,539.37. Andrews Miller also claims it is entitled to contract interest at the rate of 18 percent per annum as set forth in the 1987 agreement totaling $4,640.65. Finally, Andrews Miller contends the Court should award reasonable attorney's fees and administrative expenses as set forth in the agreement. Patti Phillips, Plaintiff's bookkeeper, testified attorney's fees in this case totaled $9,562.98 and administrative expenses related to the collection amounted to $5,928.90. The sum of damages requested by Andrews Miller for this breach of contract action total $25,671.90.

B. DEFENDANT'S ARGUMENTS

Defendant maintains the May 5, 1987 agreement cannot possibly govern the redesign of DF-5 because the Defendant did not decide to redesign the DF-5, nor did Defendant relay this decision to the Plaintiff, until November 1988. Therefore, the parties did not have a meeting of the minds on the redesign issue until after the parties signed the 1987 agreement.

Defendant further asserts Andrews Miller breached its duties under the contract by failing to obtain a DNREC permit for the DF-5. Defendant claims the parties orally contracted for the redesign and re-permitting of the DF-5. The Pretrial Stipulation, paragraph number 1, specifically states, "The work performed by Andrews Miller relevant to the instant action was the design and permitting of an on-site low pressure pump sewage disposal system utilizing in-ground dosing fields for the distribution of liquid waste." Defendant also claims the past dealings between the parties demonstrate Forest Grove hired Andrews Miller to design and obtain permit approval for the DF-5.

Forest Grove maintains the Plaintiff did not perform its contractual duty to redesign and permit the DF-5 because DNREC failed to approve Plaintiff's Application/Permit on three separate occasions. Since Plaintiff did not fulfill its contractual obligations to the Defendant, Forest Grove was justified in terminating the parties' contract and refusing to tender payment to Andrews Miller for services which had no value to the Defendant.

Defendant further contends, assuming *arguendo* the Court finds the Plaintiff entitled to payment for its engineering services, the Defendant does not owe the Plaintiff interest on the unpaid balance, attorney's fees and collection costs. Defendant bases this argument on its belief the parties entered into an oral contract for the redesign of the DF-5 and this oral agreement did not provide for these additional fees. However, Defendant claims if the Court finds the 1987 agreement controls this case, the Court should limit attorney's fees and administrative costs to a reasonable amount.

*5 Finally, Defendant asserts a statute of limitations affirmative defense pursuant to 10 *Del.C.* § 8106.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                Page 4
Not Reported in A.2d, 1994 WL 380996 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Defendant claims the Plaintiff's July 10, 1989 invoice clearly states, "PAYMENT DUE UPON RECEIPT ..." Plaintiff filed this law suit on August 13, 1992, more than three years from the day on which payment was due and the cause of action accrued. Therefore, 10 Del.C. § 8106 bars the Plaintiff's claim on this invoice.

## V. APPLICABLE CASE LAW AND ANALYSIS

### A. THE 1987 CONTRACT CONTROLS

Forest Grove believes because the parties did not discuss the DF-5 at the 1987 planning session which resulted in the 1987 agreement, this contract does not govern the parties dispute. The Court finds this argument without merit. The totality of the evidence and testimony presented at trial clearly demonstrates the 1987 agreement controls this claim. Neither party disputes the existence of the 1987 contract nor the parties' intent to be bound by that contract.

The Court finds the testimony of Gregg Moore significant to this case. Andrews Miller employed Mr. Moore as the engineer who worked on the Forest Grove project. Mr. Moore no longer works with the Plaintiff, yet as an unbiased witness he presented credible testimony as to the to the parties' intent in executing the 1987 agreement. Gregg Moore testified the 1987 written agreement modified all earlier contracts and constituted the document under which Andrews Miller worked until terminated by Forest Grove. Gregg Moore further testified Forest Grove understood this contract constituted a "wrap up" agreement and Forest Grove in fact operated under the terms of the agreement until it fired Andrews Miller.

The language of the contract confirms Gregg Moore's testimony by illustrating the parties considered the status of all aspects of the development and discussed the anticipated level of services each phase would require in the future.

Forest Grove argues even though this written contract controls some aspects of the development, the redesign of the DF-5 resulted from an oral agreement between the parties. However, the only evidence of this oral contract came from Ronald Isenhart who admitted he was unfamiliar with the parties' relationship when they drafted the 1987 agreement. Mr. Isenhart failed to cite any evidence concerning the precise terms of this oral contract.

The general rule is a written contract may be modified by a subsequent oral agreement. However, an oral contract changing the terms of a written contract must be of such specificity and directness as to leave no doubt of the intention of the parties to change what they previously solemnized by formal document. Reeder v. Sanford Schools, Inc., 397 A.2d 139, 141 (1979). In the case at bar, no specific or direct evidence exists showing the parties entered into an oral contract modifying the terms of the May 5, 1987 written agreement. In fact, it appears the Defendant acknowledged the 1987 agreement governed the redesign of the DF-5. Mr. Isenhart authorized payments to Andrews Miller for work on the DF-5 using the rate schedule contained in that agreement and regularly paid late fees as set forth in the 1987 agreement.

*6 I find based on: (1) unbiased testimony of Gregg Moore; (2) the evidence supporting the parties' intent to have the 1987 contract constitute a "wrap up" agreement; and, (3) the actions of Forest Grove in providing payment for work on the DF-5 pursuant to this agreement, the parties intended the terms of the 1987 agreement to govern the redesign and permitting of the DF-5.

### B. PLAINTIFF DID NOT BREACH THE 1987 AGREEMENT

Defendant asserts the parties orally contracted for the redesign and re-permitting of the DF-5. Forest Grove further maintains the Plaintiff did not perform this contractual duty because DNREC failed to approve Plaintiff's Application/Permit on three separate occasions. Since Plaintiff failed to obtain a re-permitting of the DF-5 as set forth in the agreement, Forest Grove was justified in terminating the parties' contract and refusing to tender payment to Andrews Miller for services which had no value to the Defendant.

In reviewing this claim, the Court notes the Defendant does not contend the Plaintiff acted negligently in failing to procure a DNREC permit. Rather, Defendant contends Andrews Miller committed a breach of contract because it did not obtain this permit. The Court finds the testimony of Gregg Moore relevant to this issue. Mr. Moore testified the difficulty with the DF-5 began when the Defendant hired an equipment supplier to modify Andrews Miller's design of the DF-5 and construct

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d Page 5
Not Reported in A.2d, 1994 WL 380996 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

the DF-5 without the supervision of Andrews Miller. Not only was this design significantly different, but the Defendant improperly constructed the Dosing Fields. Therefore, Andrews Miller had to attempt to procure DNREC approval for a sewage treatment system which was not built to its specifications.

The evidence also indicates Forest Grove refused the Plaintiff's initial suggestion of replacing the DF-5 because of monetary constraints. Even after receiving citations from DNREC, the Defendant maintained it did not want to replace the entire DF-5, and Andrews Miller worked with DNREC in an attempt to convince DNREC to approve repairs to the DF-5 as component replacements under the original permit. It was not until DNREC refused to waive its demand that Forest Grove acquiesced to replacement in order to conform to the new DNREC regulations.

Gregg Moore also testified he believed Andrews Miller acted reasonably and did not have an adequate opportunity to complete the permit application before Forest Grove terminated its services. According to Mr. Moore, Forest Grove finally conceded to replacing the DF-5 in August of 1989. On August 11, 1989, Andrews Miller submitted an application for a new DF-5 permit under the new regulations. Plaintiff continued to work with DNREC and urge the agency to process the permit application expeditiously. Gregg Moore further testified when Andrews Miller received DNREC's comment letter on October 10, 1989, it discovered this letter contained only one technical comment which would have taken Andrews Miller approximately one hour to address. However, before Andrews Miller had the opportunity to remedy this problem, Forest Grove terminated its services.

*7 I find Andrews Miller acted reasonably under the circumstances in an attempt to redesign and permit the DF-5. The evidence also indicates many of the permitting problems stemmed from Forest Grove's actions in improperly constructing the Dosing Field without Andrews Miller's plans or supervision and then refusing to replace the DF-5 even though Andrews Miller urged total replacement. Finally, I find Forest Grove acted unreasonably by not allowing the Plaintiff to complete the permitting process and refusing to pay the Plaintiff for its services. The evidence clearly indicates Andrews Miller did not breach the parties' contract for it took reasonable steps to redesign and re-permit the DF-5. In effect, Forest Grove's unilateral termination of the contract made it impossible for Andrews Miller to complete performance.

### C. PRE-JUDGMENT INTEREST

Defendant claims since there exists no written contract between the parties for the payment of pre-judgment interest at the rate of 18 percent per annum, the Plaintiff may only recover interest at the legal rate pursuant to 6 *Del.C.* § 2301.

Since the Court has found the 1987 written agreement controls this cause of action, I need not address this argument. The parties entered into a written contract providing for the payment of pre-judgment interest at the rate of 18 percent per annum. Therefore, I find the Defendant must pay the two outstanding invoices totaling $5,539.37 and the accrued interest amounting to $4,640.65.

### D. RECOVERY OF ATTORNEY'S FEES

Defendant contends assuming *arguendo* the Court finds the May 5, 1987 contract provides the basis for Plaintiff to recover attorney's fees against the Defendant, then under 10 *Del.C.* § 3912 the Court should limit those fees to a reasonable amount not to exceed 20 percent of the amount adjudged for principal and interest.

Title 10, Section 3912 states,
In all causes of action, suits, matters or proceedings brought for the enforcement of any note, bond, mechanics lien, mortgage, *invoice* or other instrument of writing, if the plaintiff or lien holder in the action, suit or proceeding recovers judgment in any sum, he may also recover reasonable counsel fees ... Such counsel fees shall not in any such action, suit or proceeding, exceed 20 percent of the amount adjudged for principal and interest.

(emphasis added).

The decisions of Delaware Courts which do not limit attorney's fees to 20 percent are based upon the seminal case of *Great American Indemnity Company v. State,* Del.Supr., 88 A.2d 426 (1952). In *Great American,* the Court concluded the predecessor statute to 10 *Del.C.* § 3912 did not apply to the security bond in issue. The Court concluded, "[t]he enumeration of types of instruments in this section clearly indicates the Legislature was intending to deal with suits upon written instruments entered into voluntarily and creating a debtor-creditor relationship." *Id.* at 431. The Delaware Courts have

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-00163-GMS   Document 354-6   Filed 03/23/2007   Page 9 of 10

Not Reported in A.2d                                                                                           Page 6
Not Reported in A.2d, 1994 WL 380996 (Del.Super.)
(Cite as: Not Reported in A.2d)

seized upon the debtor-creditor language in *Great American* to declare non-debtor-creditor causes of action are not covered by the statute.

*8 In this case, Plaintiff claims the 20 percent limit is not applicable because Forest Grove and Andrews Miller had not entered into a traditional debtor-creditor relationship. However, the Court finds on June 26, 1991, the General Assembly amended the language of 10 *Del.C.* § 3912 specifically to include the word "invoice" in determining what causes of action are included in this statute.

A party typically renders an invoice when it provides goods and/or services. This invoice represents a debt created between the parties and obligates the recipient for payment of this debt. The Court finds by adding the word invoice, the Legislature intended the statute to cover the exact situation at hand. Therefore, Plaintiff's claim falls clearly within the confines of 10 *Del.C.* § 3912 and attorney's fees are limited to 20 percent of the amount adjudged for principal and interest. Since the sum of principal and interest totals $10,180.02, the attorney's fees owed by the Defendant should not exceed $2,036-20 percent of this amount.

### E. RECOVERY OF ADMINISTRATIVE COSTS

Defendant contends assuming arguendo the Court determines the May 5, 1987 agreement applicable to the case at bar, the Court should limit its award of administrative costs to a reasonable amount not to exceed 20 percent.

In reviewing the May 5, 1987 contract, paragraph three provides administrative and other collection costs must be reasonable. The Court also believes the Plaintiff may only recover administrative cost incurred prior to filing this action. To allow Plaintiff to recover reasonable attorney's fees plus administrative costs in preparing for trial would amount to a windfall for the Plaintiff. A review of Plaintiff's Exhibit 4 shows the administrative costs which predate this law suit total $1,046.51, roughly 20 percent of the principal amount of the debt. The Court finds this amount a reasonable award of administrative costs to the Plaintiff.

### F. STATUTE OF LIMITATIONS

Defendant asserts a statute of limitations affirmative defense pursuant to 10 *Del.C.* § 8106. Defendant claims the Plaintiff's July 10, 1989 invoice clearly states, "PAYMENT DUE UPON RECEIPT ..." Plaintiff filed this law suit on August 13, 1992, more than three years from the date on which payment was due and the cause of action accrued. Therefore, 10 *Del.C.* § 8106 bars the Plaintiff's claim on this invoice.

The Court finds this argument without merit. Under Delaware law, the statute of limitations begins to run when a breach of contract occurs. *Aronow Roofing v. Gilbane Building Company,* 3rd Cir., 902 F.2d 1127, 1128 (1990). As in other professional service or construction contracts, Andrews Miller periodically invoiced Forest Grove for services under the contract. These invoices were not the contract; rather, they were bills which detailed the work completed pursuant to the contract. As such, the Court finds these invoices governed by the six year statute of limitation found in 10 *Del.C.* § 8109 for bills and notes. Because the Plaintiff filed this action within three years of the breach of contract and within six years of the invoice's due date, the statute of limitations affirmative defense does not bar this claim.

### VI. CONCLUSION

*9 The Court finds, based on a preponderance of the evidence, the Plaintiff has established the May 5, 1987 contract controls this action. The Plaintiff has also established by a preponderance of the evidence Forest Grove breached this contract when it terminated Andrews Miller's services and refused to pay the Plaintiff for work performed under the contract.

Therefore, the Court orders Forest Grove to pay Andrews Miller for the two outstanding invoices totaling $5,539.37. Forest Grove is also ordered to pay interest at the rate of 18 percent per annum as set forth in the 1987 agreement totaling $4,640.65. The Court awards reasonable attorney's fees pursuant to 10 *Del.C.* § 3912 in the amount of $2,036. Finally, the Court awards Andrews Miller reasonable administrative costs in the amount of $1,046.51.

IT IS SO ORDERED.

Del.Super.,1994.
Andrews Miller & Assoc., Inc. v. Forest Grove, Inc.
Not Reported in A.2d, 1994 WL 380996 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
Not Reported in A.2d, 1994 WL 380996 (Del.Super.)  
**(Cite as: Not Reported in A.2d)**

Page 7

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.