IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DONALD M. DURKIN CONTRACTING, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 04-0163-GMS |
| CITY OF NEWARK, HAROLD F. GODWIN, JOHN H. FARRELL, IV, JERRY CLIFTON, KARL G. KALBACHER, DAVID J. ATHEY, FRANK J. OSBORNE, JR., and CHRISTINA REWA, | ) ) ) ) ) ) ) ) | |
| Defendants/ Third-Party Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| FEDERAL INSURANCE COMPANY, | ) ) | |
| Third-Party Defendant. | ) ) ) | |
| -------------------------------------------- | ) ) | |
| CITY OF NEWARK, | ) ) | |
| Third-Party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| URS CORPORATION, | ) ) | |
| Third-Party Defendant. | ) | |

**COMPENDIUM OF CASES SUPPORTING
CITY OF NEWARK DEFENDANTS' POST-TRIAL REPLY BRIEF
IN SUPPORT OF THEIR MOTION FOR JUDGMENT
AS A MATTER OF LAW AND FOR A NEW TRIAL OR REMITTITUR**

**VOLUME 4**

# TAB 7

Westlaw.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1997 WL 16062 (S.D.N.Y.)  
(Cite as: Not Reported in F.Supp.)

Page 1

Briefs and Other Related Documents  
Shifa Services, Inc. v. Port Authority of N.Y. and N.J.S.D.N.Y.,1997.Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
SHIFA SERVICES, INC., d/b/a Shifa Management Systems, Inc. and Shifa Management Systems NYC, Inc., Plaintiffs,
v.
THE PORT AUTHORITY OF NEW YORK and NEW JERSEY, Board of Commissioners of the Port Authority of New York and New Jersey, and George J. Marlin, in his official capacity as Executive Director of the Port Authority of New York and New Jersey, Defendants.
No. 96 CIV. 1361 (AGS).

Jan. 15, 1997.

OPINION AND ORDER  
ALLEN G. SCHWARTZ, District Judge:

*1 Plaintiff Shifa Services, Inc. ("Shifa") brings this action against the Port Authority of New York and New Jersey, its Board of Commissioners, and its executive director (collectively, the "Port Authority") asserting claims of constitutional violations under federal law as well as state law claims for breach of contract and prima facie tort. Contending that the Port Authority deliberately ruined Shifa's business and forced it into bankruptcy, Shifa seeks compensatory damages of $20 million and punitive damages in the same amount.

This matter is before the Court on the Port Authority's motion to dismiss several claims in their entirety and portions of several other claims pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Port Authority's motion is granted in part and denied in part.

BACKGROUND

Shifa is a New Jersey corporation in the business of providing janitorial and maintenance services to office buildings, airports, passenger terminals, and other large, commercial facilities. Complaint ¶¶ 1-2, 11. The Port Authority is a *sui generis* independent authority created by statute by the States of New York and New Jersey.[FN1] Beginning in 1990, Shifa obtained a number of contracts from the Port Authority to perform janitorial and/or maintenance services at various Port Authority facilities. Complaint ¶ 15.

FN1. The complaint names as defendants (in addition to the Port Authority) its Board of Commissioners and George J. Marlin in his official capacity as Executive Director of the Port Authority. The Port Authority contends that the federal and state law claims asserted against these defendants are actually claims against the Port Authority itself and therefore subject to the same arguments as to dismissal raised by the Port Authority. *See* Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def.Mem.") at 21-22. In its opposition papers, Shifa does not dispute this contention.

The complaint in this action was filed on February 23, 1996. Shifa alleges that on January 18, 1993, the Port Authority failed to make the first payment it owed Shifa under a contract to supply cleaning services at the World Trade Center. The complaint further alleges that beginning in February 1993, the Port Authority delayed payments to Shifa under its other contracts with the Port Authority, and that the Port Authority delayed contractual price increases to which Shifa was entitled in early 1993 until the end of April 1994. Complaint ¶ 22. According to the complaint, "The Port Authority failed to pay the amounts due for over a year. By the end of that period, the Port Authority owed an undisputed balance of some $800,000 to Shifa," of which the Port Authority has paid all but $90,000. Complaint ¶ 75. The complaint also alleges that the Port Authority, in breach of its contractual obligations, refused to pay Shifa for overtime work it performed following the bombing of the World Trade Center in February 1993. Complaint ¶¶ 34-39.

The complaint further asserts that the Port Authority has improperly barred Shifa from bidding on certain Port Authority contracts, as follows:
1. In March 1994, the Port Authority rejected Shifa's low bid on the contract for general cleaning services

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1997 WL 16062 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

at John F. Kennedy International Airport. Complaint ¶ 46.

2. In May 1994, Shifa was not allowed to bid on the contract for general cleaning services at Newark Airport. Complaint ¶ 47.

3. In September 1995, Shifa was not allowed to bid on the contract for the general cleaning of LaGuardia Airport. Complaint ¶ 50.

*2 4. In November 1994, the Port Authority breached an agreement with Shifa to extend its general cleaning contract at the Consolidated Passenger Ship Terminal through November 30, 1996, by informing Shifa that it intended to put the contract out for competitive bids. Complaint ¶ 52.

5. The Port Authority refused to accept Shifa's bid to extend the World Trade Center contract, which expired at the end of 1994. Complaint ¶ 53.

Shifa claims that the actions of the Port Authority forced it to file for voluntary reorganization under Chapter 11 of the Bankruptcy Code on April 26, 1994, and that the mere pendency of this bankruptcy has substantially damaged it. For instance, Shifa has been ordered to pay more than $300,000 in administrative and professional costs in connection with the bankruptcy, and Shifa alleges that it has lost profits of at least $1 million and incurred other expenses as a result of the bankruptcy. Complaint ¶¶ 40-44.

The complaint asserts eights claims for relief incorporating the foregoing allegations. The first claim is asserted under 42 U.S.C. § 1983 ("Section 1983") and alleges that the Port Authority "maliciously and solely to harm Shifa, either out of racial animus, an intent to aid one of Shifa's competitors, or for some other reason unknown to Shifa ... intentionally violated Shifa's constitutionally protected right to pursue a livelihood without arbitrary interference and deprived Shifa of its property without due process." Complaint ¶¶ 55-60.

The second claim, also asserted under Section 1983, asserts that, in violation of the Equal Protection Clause of the United States Constitution, the Port Authority singled out Shifa for exclusion from the competitive bidding process in which other entities similarly situated were allowed to participate. Complaint ¶ 61-69.

The third claim alleges a breach of contract as a result of the Port Authority's nonpayment of amounts due to Shifa under certain contracts. Complaint ¶¶ 70-78.

The fourth claim alleges that, by its refusal to pay Shifa for extra work performed under the contract for cleaning services at the World Trade Center, the Port Authority breached its contract with Shifa. Complaint ¶¶ 79-86.

The fifth claim alleges that the Port Authority breached its contracts with Shifa by requiring it to perform extra work with five percent fewer workers and placing five percent of Shifa's fee under the World Trade Center contract in escrow and by paying Shifa five percent less on each of its contracts. Complaint ¶¶ 87-95.

The sixth claim alleges that in or about November 1994 the Port Authority breached an agreement to extend Shifa's cleaning contract at the Consolidated Passenger Ship Terminal by informing Shifa that the Port Authority intended to place the contract out for competitive bidding. Complaint ¶ 96-105.

The seventh claim alleges that the Port Authority committed a prima facie tort by precluding Shifa from bidding on its contracts or by rejecting Shifa's bids in favor of higher bids. Shifa alleges that the Port Authority's actions were taken maliciously, solely to injure Shifa, and the Port Authority's "preclusion of Shifa's low bids was contrary to the Port Authority's economic interest and served no socially useful purpose." Complaint ¶ 110. Shifa contends that it was damaged by losing the profits on the contracts for general cleaning services at Newark Airport and LaGuardia Airport and the contract at the World Trade Center. Complaint ¶¶ 106-113.

*3 The eighth claim asserts a prima facie tort as a result of the Port Authority's allegedly malicious and intentional destruction of Shifa as a business concern, actions which "had no legitimate motive and were actually contrary to the Port Authority's economic interests and served no socially useful purpose." Complaint ¶¶ 116.

The Port Authority moves to dismiss the first, second, seventh, and eighth claims of the complaint and Shifa's claims for punitive damages on the grounds that they fail to state claims upon which relief can be granted. The Port Authority also moves to dismiss the fifth and sixth claims and the portions of the third, seventh, and eighth claims which accrued before April 27, 1993 or between April 26, 1994, and February 23, 1995, on the grounds that the Court lacks jurisdiction over the subject matter of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1997 WL 16062 (S.D.N.Y.)  
**(Cite as: Not Reported in F.Supp.)**

Page 3

these portions of the complaint and lacks jurisdiction over the defendants regarding these portions of the complaint.

## DISCUSSION

### I. *Standard for Motion To Dismiss*

In ruling upon a motion to dismiss under Rule 12(b)(6), the Court must view the complaint in the light most favorable to the plaintiff, accepting all allegations contained in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). All reasonable inferences are to be drawn in the plaintiff's favor, and the claims should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim[s] which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### II. *Section 1983 Claims*

Shifa's two federal claims are asserted under Section 1983, which provides a remedy to those who, as a result of state action, suffer a deprivation of "rights, privileges or immunities secured by the Constitution and laws of the United States." 42 U.S.C. § 1983. "It is axiomatic that a successful § 1983 claim requires more than a showing that one has been wronged at the hands of a state or municipal official. Rather, a plaintiff must allege that he has been deprived of some right secured by federal statute or the United States Constitution." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985).

#### A. *Due Process*

Shifa's first claim for relief under Section 1983-captioned "Destruction of Business"-asserts that the Port Authority "intentionally violated Shifa's constitutionally protected right to pursue a livelihood without arbitrary interference and deprived Shifa of its property without due process." Complaint ¶ 59. According to the complaint, the means by which this was accomplished were the Port Authority's failure to pay Shifa under its contracts, failure to pay Shifa for extra work under the World Trade Center contract, and preclusion of Shifa from bidding on additional Port Authority contracts.

While it is apparent that Shifa is asserting that the Port Authority's actions violated the Due Process Clause of the Fourteenth Amendment, it is still necessary to determine whether this claim seeks to vindicate rights of *procedural* due process, *substantive* due process, or both. *See Local 342, Long Island Public Service Employees, UMD, ILA, ALF-CIO v. Town Bd. of Town of Huntington*, 31 F.3d 1191, 1193-94 (2d Cir.1994) (distinguishing between procedural and substantive due process claims). Neither party explicitly undertakes this analysis in their respective memoranda. Rather, the parties' discussion of Shifa's due process claim appears to intermingle concepts of procedural and substantive due process. In the Court's estimation, Shifa's claim can be read as asserting both types of due process claims. It is fairly clear that Shifa is asserting that it was deprived of property and/or liberty interests without due process, raising concerns of procedural due process. However, Shifa's claim can also be read as asserting that the Port Authority's conduct constitutes a deprivation of substantive rights protected by the Fourteenth Amendment. These claims require separate analysis.

#### 1. *Procedural Due Process*

*4 A claim of deprivation of property without procedural due process requires the Court's inquiry into whether Shifa possesses a contractual right that gives rise to a legitimate claim of entitlement resulting in a protected property interest. *See, e.g., Martz v. Incorporated Village of Valley Stream*, 22 F.3d 26, 29 (2d Cir.1994). Property interests protected by due process are neither created nor defined by the Constitution. *Id.* "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). In order for a person to have a property interest in a benefit such as the right to payment under a contract, "[h]e must have more than a unilateral expectation of it. He must, instead have a legitimate claim of entitlement to it." *Id.*

The Court of Appeals for the Second Circuit has held that where a complaint alleges the breach of an ordinary contract, "[t]he right to payment on such a contract does not rise to the level of a constitutionally protected property interest." *Martz*, 22 F.3d at 31; *see also S & D Maintenance Co. v. Goldin*, 844 F.2d

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 16062 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 4

962, 966 (2d Cir.1988) (noting that if the concept of "entitlement" were so expansive as to include every breach of contract by the state, "federal courts could be asked to examine the procedural fairness of every action by a state alleged to be in breach of its contracts.") Where a breach of contract "does not give rise to a deprivation of a protectible property interest, plaintiff's exclusive remedy 'lies in state court for breach of contract.'" Martz, 22 F.3d at 31 (quoting S & D Maintenance, 844 F.2d at 968).

Martz applies with full force here, because Shifa has failed to assert any right which rises to the level of a constitutionally protected property interest. Shifa's argument that the Port Authority engaged in conduct beyond mere breach of contract-such as precluding Shifa from bidding on prospective contracts-does not change the analysis. The Second Circuit has dismissed a similar claim, holding that "involvement in publicly-financed projects does not rise to the level of a property interest." Eastway Construction, supra, 762 F.2d at 249-50. There, plaintiff Eastway argued that New York City improperly excluded it from participating in certain City-sponsored or City-supervised redevelopment projects. The Second Circuit unequivocally rejected Eastway's due process claim:

Certainly Eastway desired-and perhaps even needed or expected-to continue acting as a general contractor on public redevelopment projects. But it fails to point to a single constitutional, statutory or contractual provision that would entitle it to do so. And absent any such rights, its claim that the City's actions violate § 1983 is incorrect as a matter of law.

*5 Id. Similarly, although Shifa may have desired or expected to bid on additional Port Authority contracts, it points to no constitutional, statutory, or contractual provision giving it such an entitlement.[FN2]

> FN2. Moreover, to the extent Shifa claims that the Port Authority's rejection of low bids submitted by Shifa constituted a denial of property without due process, see Complaint ¶ 46, a similar claim has also been rejected by the Second Circuit. See Terminate Control Corp. v. Horowitz, 28 F.3d 1335, 1351-52 (2d Cir.1994) (holding that bidders on government contracts do not have property rights in future contracts to be awarded under competitive bidding procedures).

Shifa's due process claim can also be read as asserting a constitutionally protected liberty interest, as opposed to a property interest. However, any such claim must also be dismissed. In S & D Maintenance, the plaintiff, like Shifa, argued that it was deprived of a constitutionally protected liberty interest because it had been "forced out of business, 'tot[t]ering near bankruptcy, unable to get work,' as a direct result of the City's alleged breach of the contracts and withholding of payments." S & D Maintenance, 844 F.2d at 970. The Second Circuit rejected this claim, holding that

even discharge from governmental employment will not by itself constitute a deprivation of liberty.... Though S & D claims that the City's actions leave it without sufficient capital to pursue *any* line of work, the remedy lies in an action for damages under the contract. The fact that consequential damages of the alleged breach may be severe cannot convert a contract claim into a deprivation of liberty.

Id.

Accordingly, because the allegations of the complaint do not establish that Shifa was deprived of any property or liberty interest protected by the Fourteenth Amendment, Shifa's claim challenging the procedural fairness of the Port Authority's alleged conduct is dismissed. It is not necessary to examine whether procedures used by the Port Authority comport with due process because the complaint fails to demonstrate the existence of a constitutionally protected property or liberty interest.

2. *Substantive Due Process*

To the extent Shifa's claim raises issues of substantive due process, it is well settled that notions of substantive due process will not apply where "the alleged right ... cannot be considered so rooted in the traditions and conscience of our people as to be ranked as fundamental." Local 342, supra, 31 F.3d at 1196 (internal citations and quotations omitted). "Substantive due process protects only those interests that are 'implicit in the concept of ordered liberty.'" Id. (quoting Palko v. Connecticut, 302 U.S. 319, 325 (1937)). The doctrine of judicial self-restraint "requires courts to 'exercise the utmost care' when presented with a request to define or develop rights in this area." Id. (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)).

In *Local 342*, the plaintiff union contended that its substantive due process rights were violated when the defendant municipality deprived it of certain

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 16062 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 5

insurance payments. The Second Circuit held that "[w]e do not think ... that simple, state-law contractual rights, without more, are worthy of substantive due process protection." *Local 342, 31 F.3d at 1196*. *Local 342* quoted with approval a Sixth Circuit decision stating that "[r]outine state-created contractual rights are not 'deeply rooted in this Nation's history and tradition,' and, although important, are not so vital that 'neither liberty nor justice would exist if [they] were sacrificed.' " *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir.1990) (citations omitted). [FN3]

> FN3. Prior to the Second Circuit's decision in *Local 342*, at least one district court in this Circuit rejected a similar substantive due process claim. In *North Star Contracting Corp. v. Long Island R.R. Co.*, 723 F.Supp. 902, 911 (E.D.N.Y.1989), plaintiff North Star alleged that the deprivation of its contractual right to payment, among other things, constituted the "intentional use of the [defendant] LIRR's power in an arbitrary and capricious fashion for the oppression of North Star." *Id.* The court dismissed the substantive due process claim, holding that the facts of the case
> fall far short of the kind of governmental abuse of process that is necessary to the stating of a substantive due process claim. North Star was never subject to the type of control that is typically present in the substantive due process cases and there is no sign of the deliberate and unjustified abuse of governmental authority that would turn North Star's claim into one of constitutional dimension.
> *Id.*

*6 Shifa does not discuss *Local 342* in its brief. Instead, Shifa argues that "Federal courts have repeatedly held that a government actor's intentional and malicious destruction of a person or entity's livelihood is an interference with a cognizable property right under the Due Process Clause." Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Opp.Mem.") at 21-22.[FN4] However, the cases cited by Shifa either fail to support this expansive proposition, are factually distinguishable, or do not represent the law in the Second Circuit.[FN5]

> FN4. Although Shifa's argument is phrased in terms of procedural due process, many of the cases cited by Shifa involve substantive due process.

> FN5. For instance, the Third Circuit's decision in *Gwynedd Properties Inc. v. Lower Gwynedd Township*, 970 F.2d 1195 (3d Cir.1992), dealt only with an issue of federal court abstention; the Court of Appeals did not rule on the merits of plaintiff's claim that the defendant's actions constituted a denial of constitutional rights. *Acierno v. Newcastle County*, No. 93-579, 1994 WL 720273 (D.Del. Feb. 11, 1994), rev'd, 40 F.3d 645 (3d Cir.1994), also cited by Shifa, involved a challenge to local land use decisions, not breaches of ordinary commercial contracts. Moreover, the case's broad view of substantive due process appears to conflict with Second Circuit authority, including *Local 342*. The decision in *Ezekwo v. New York City Health and Hospitals Corp.*, 940 F.2d 775, 783 (2d Cir.), cert. denied, 502 U.S. 1013, 112 S.Ct. 657 (1991), is inapposite. That case merely stands for the proposition that plaintiff had a legitimate claim of entitlement to the position of chief resident and was entitled to certain procedural protections. The decisions in *Martz* and *S & D Maintenance*, discussed *supra*, foreclose any such claim here based upon breaches of ordinary commercial contracts.

Two recent Supreme Court decisions relied on by Shifa-*Board of Comm'rs, Wabaunsee County v. Umbehr*, 116 S.Ct. 2342 (1996), and *O'Hare Truck Service, Inc. v. City of Northlake*, 116 S.Ct. 2353 (1996)-are factually and legally inapposite. The Supreme Court recognized in *Umbehr* and *O'Hare* the right of independent contractors not to be terminated by governmental entities for exercising their First Amendment rights or refusing to comply with demands for political support. Shifa argues that the Port Authority's actions were unconstitutional under these cases. Opp.Mem. at 22-24. However, Shifa's complaint does not state any claim to which these decisions might apply. Its complaint nowhere mentions the First Amendment or even suggests that Shifa's right to free speech may have been infringed, and there are no allegations that Shifa was terminated for exercising its First Amendment rights or refusing to provide political support.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 6
Not Reported in F.Supp., 1997 WL 16062 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Shifa also relies on *Triad Associates, Inc. v. Chicago Housing Authority,* 892 F.2d 583 (7th Cir.1989), *cert. denied,* 498 U.S. 845 (1990), for the proposition that a breach of the contractual covenant of good faith and fair dealing by a government actor for reasons of political or racial bias violates procedural and substantive due process. In the Court's view, *Triad* does not represent the law in the Second Circuit. *Triad*'s holding that violation of a contractual provision can give rise to a due process claim conflicts with the Second Circuit's decisions in *Martz, S & D Maintenance,* and *Local 342. See also Hotel Syracuse, Inc. v. Young,* 805 F.Supp. 1073, 1085 (N.D.N.Y.1992) (implied contractual obligation of good faith is not a property interest protected by due process; "rather, it is merely another contractual right and is not entitled to constitutional protection.")

Shifa's reliance on *Cowan v. Corley,* 814 F.2d 223, 227 (5th Cir.1987), is also misplaced. In *Cowan,* the plaintiff claimed that a county sheriff had unconstitutionally denied him "the opportunity to pursue his livelihood," which in that case was the towing of disabled vehicles from public roads. The *Cowan* decision quoted Supreme Court cases, beginning with *Truax v. Raich,* 239 U.S. 33, 41 (1915), which discuss the right under the Fourteenth Amendment to engage in the "common occupations" of the community. *See Cowan,* 814 F.2d at 227. *Cowan* is distinguishable, however, because the allegations of Shifa's complaint do not demonstrate that the Port Authority denied Shifa the opportunity to pursue its livelihood. Rather, Shifa asserts that the Port Authority breached a number of contracts and determined not to enter into new contracts with Shifa, and that the net effect of this conduct forced Shifa into bankruptcy. While the plaintiff in *Cowan* was actually precluded by the government from pursuing his chosen occupation, Shifa remained free at all times to pursue cleaning and maintenance contracts with other governmental entities and private corporations. In short, the allegations of Shifa's complaint do not establish that the Port Authority deprived Shifa of any rights "implicit in the concept of ordered liberty." *Palko, supra,* 302 U.S. at 325.[FN6]

> FN6. To the extent Shifa claims, as part of its due process claim, that it was denied equal protection of the laws, Shifa has asserted a separate claim addressed specifically to that right. The equal protection claim is discussed separately below.

*7 Accordingly, Shifa's claim asserting a violation of due process is dismissed for failure to state a claim upon which relief can be granted.

### B. *Equal Protection*

In its second Section 1983 claim, Shifa asserts that the Port Authority denied Shifa equal protection under the law when it "maliciously refused to allow Shifa to bid on [certain] contracts, and precluded it from bidding by unlawfully and improperly rejecting Shifa's bids in favor of higher bids.... The Port Authority singled out Shifa for exclusion to the benefit of other persons or entities who were allowed to participate in the bidding process." Complaint ¶ ¶ 64-65. Elsewhere in the complaint, Shifa asserts that the Port Authority's actions "are so arbitrary and capricious that they could only have come about because [defendants] specifically intended to ruin Shifa." *Id.* ¶ 3. Shifa also speculates that "perhaps [defendants] acted out of a racial animus because Shifa is a minority-owned business." *Id.* ¶ 4.

Generally speaking, the equal protection clause of the Fourteenth Amendment directs state actors to treat similarly situated people alike. To prove an equal protection violation, claimants must prove purposeful discrimination directed at an identifiable or suspect class. *Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1995). An equal protection violation based upon selective application of a facially lawful state regulation is properly found when (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. *See, e.g., FSK Drug Corp. v. Perales,* 960 F.2d 6, 10 (2d Cir.1992); *Zahra v. Town of Southold,* 48 F.3d 674, 683 (2d Cir.1995). *FSK* involved a claim that the defendant selectively enforced certain governmental regulations, but *FSK*'s formulation of the elements of an equal protection claim has been applied by the Second Circuit to more general allegations of "invidiously motivated selective treatment." *See, e.g., Terminate Control Corp., supra,* 28 F.3d at 1352-53.

Construing the allegations of the complaint with the requisite liberality, *see, e.g., Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), the Court concludes that the complaint pleads the outline of allegations from

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 16062 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 7

which a fact finder could infer intentional discrimination. Shifa alleges that the Port Authority may have selectively treated Shifa in comparison to others similarly situated (1) because Shifa is a minority-owned company, and/or (2) to further a malicious or and bad faith intent to destroy Shifa.[FN7] The Court recognizes that Shifa's allegations are phrased tentatively and without detailed factual support, but the outlines of an equal protection claim are there. *See* Dwares v. City of New York, 985 F.2d 94, 99 (2d Cir.1993) (reversing dismissal of equal protection claim, Court held that allegations of "intentional" and "malicious" conduct sufficed to state equal protection claim). Of course, whether Shifa will be able to present any proof supporting these allegations is a different question. Whether Shifa can gather sufficient proof during discovery to succeed at trial, no less survive a properly supported summary judgment motion, remains to be seen. If defendant determines to make such a motion at the close of discovery, Shifa must be prepared to offer more than mere conclusory speculation as to the alleged racial or malicious motivation for the Port Authority's conduct.

> FN7. The Court does not, however, agree with Shifa's contention that an equal protection claim is stated on the basis of the allegation that the Port Authority selectively treated Shifa "to punish or inhibit the exercise of Shifa's constitutional rights, namely, its livelihood." Opp.Mem. at 28. As discussed above, the Court concludes that the complaint fails to plead a cognizable due process claim. Accordingly, there can be no claim for denial of equal protection based on allegations that the Port Authority punished or inhibited Shifa's exercise of due process rights.

### III. *Prima Facie Tort Claims*

*8 In its seventh and eighth claims, Shifa asserts claims for prima facie tort. The elements of prima facie tort are: (1) an intentional infliction of harm; (2) without excuse or justification and motivated solely by malice; (3) resulting in special damages; (4) by an act that would otherwise be lawful. *See, e.g., United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.,* 95 F.3d 153, 161 (2d Cir.1996).

The seventh claim, captioned "Prima Facie Tort-Preclusion from Bidding," alleges that the Port Authority refused to allow Shifa to bid on certain Port Authority contracts, or *de facto* precluded it from bidding by unlawfully and improperly rejecting Shifa's bids. Complaint ¶ 108. Shifa asserts that "[t]he Port Authority's sole motive for precluding Shifa from participation in the bidding process was to inflict harm upon Shifa. The Port Authority's actions in this regard were taken maliciously, solely to injure Shifa," *Id.* ¶ 109, and were "contrary to [its] economic interests and served no socially useful purpose." *Id.* ¶ 110. Shifa seeks special damages of $1,360,000, consisting of lost profits on three Port Authority contracts, as well as punitive damages. *Id.* ¶¶ 112-13.

The eighth claim, captioned "Prima Facie Tort-Destruction of Business," incorporates all of the allegations of the complaint and asserts that the "Port Authority has taken all of the actions complained of herein maliciously and solely to harm Shifa. At all times, the Port Authority knew that its actions had no legal justification and that these actions were causing and would continue to cause the destruction of Shifa as an ongoing business concern." Complaint ¶ 115. The claim seeks damages for the "diminution of Shifa's value as a going concern, in an amount in excess of $15,000,000," *Id.* ¶ 118, as well as other damages, including punitive damages. *Id.* ¶ 119.

The Port Authority argues that Shifa's claim stemming from its preclusion from bidding must be dismissed because "New York law does not permit a claim for damages against a political subdivision for failure to award a contract to the lowest qualified bidder." Def.Mem. at 15 (citing *Stride Contracting Corp. v. Board of Contract and Supply of City of Yonkers,* 581 N.Y.S.2d 446 (2d Dep't 1992); *Woods Advertising, Inc. v. Koch,* 577 N.Y.S.2d 22 (1st Dep't 1991); and *M.A. Stephen Constr. Co. v. Borough of Rumson,* 308 A.2d 380, 384 (N.J.App.Div.1973)). These cases establish generally that

[w]hile an unsuccessful bidder on a municipal contract has standing to maintain a proceeding to review the award of a contract in violation of a statute requiring that the contract go to the lowest responsible bidder, this procedure is sanctioned only to ensure enforcement of General Municipal Law § 103, which prescribes when and the manner in which a municipality shall request bids and award contracts. That statute was enacted to protect municipalities and [their] taxpayers, not to benefit bidders. The unsuccessful bidder is not entitled to recover from a municipality the profits which it might have made had its bid been accepted.

Not Reported in F.Supp. Page 8
Not Reported in F.Supp., 1997 WL 16062 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

*9 *Stride Contracting, 581 N.Y.S.2d at 448.*

*Stride Contracting* sets forth the general principle that a low bidder on a municipal contract cannot recover money damages for violation of a law requiring the award of municipal contracts to the lowest bidder. The Court finds that this principle bars Shifa's claim for prima facie tort in the circumstances of this case. In sum, Shifa alleges that it was precluded from participating in the bidding process or that its low bids were rejected, and that it is this alleged conduct which constitutes a prima facie tort. This claim is nothing more than that Shifa has a right to money damages on its claim of entitlement to an award of a governmental contract, a claim that has been repeatedly rejected by the courts of New York and New Jersey.

Shifa's eighth claim for relief, similarly, must be dismissed for the following reasons. In a recent decision, the Second Circuit affirmed the dismissal of a prima facie tort claim, holding that the plaintiff was impermissibly attempting to turn a breach of contract claim into a tort claim. See *Merritt Meridian Constr. Corp., supra,* 95 F.3d at 161-62. The Court noted that "[i]t has long been New York law that 'a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated ... This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent on the contract.'" *Id.* at 162 (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,* 521 N.Y.S.2d 653, 656-57 (1987)). In *Merritt Meridian,* the Second Circuit held that the "tort claim relates solely to breach of a bargain, egregious though it may have been. Simply put, this is one of those contract cases which cannot be converted into a business tort." *Id.*

Shifa's claim for "Prima Facie Tort-Destruction of Business" is similar in that it relates almost entirely to the complaint's prior allegations of numerous breaches of contract by the Port Authority, breaches which allegedly ruined Shifa's business and drove it into bankruptcy. As in *Merritt Meridian,* this Court cannot permit plaintiff to convert ordinary claims for breach of contract into a tort claim, egregious as the breaches may have been. To the extent permissible under state law, Shifa can recover consequential damages for the Port Authority's alleged conduct as part of its breach of contract claims. See *Merritt Meridian,* 95 F.3d at 161-62. What Shifa cannot do, however, is convert its contract claims into a tort claim and thereby avoid the restrictions governing consequential damages in contract cases.

For the foregoing reasons, the Port Authority's motion to dismiss the complaint's seventh and eighth claims for failure to state a claim is granted.

### IV. *Punitive Damages*

The Port Authority moves to dismiss all of Shifa's claims for punitive damages, arguing that it is immune from liability for punitive damages under Section 1983 and under the law of the State of New York. Shifa's complaint seeks punitive damages in connection with the first, seventh, and eighth claims for relief. Because the Court is dismissing the first, seventh, and eighth claims for failure to state a claim, there is no remaining claim on which Shifa can recover punitive damages, and the Court need not address the issue of the Port Authority's immunity from punitive damages.

### V. *Statute of Limitations*

*10 The Port Authority also moves to dismiss Shifa's fifth and sixth claims in their entirety, and portions of the third, seventh, and eighth claims, on the grounds that this Court lacks jurisdiction over the subject matter and over the persons of the defendants, pursuant to Rules 12(b)(1) and (2) of the Federal Rules of Civil Procedure.[FN8] Specifically, the Port Authority argues that these claims fail to comply with provisions of New York and New Jersey law which require that, as a condition to the Port Authority's consent to suit, claims against it be commenced within one year after accrual.[FN9] See N.Y. Unconsolidated Laws § 7107 (McKinney 1979); N.J.S.A. 32:1-163 ("The foregoing consent is granted upon the condition that any suit, action, or proceeding prosecuted or maintained under this act shall be commenced within one year after the cause of action therefore shall have accrued ...").

> FN8. Notwithstanding that the Port Authority predicates its motion upon Rules 12(b)(1) and (2), the motion is deemed one to dismiss for failure to state a claim upon which relief can be granted and will be disposed of accordingly.
>
> FN9. The Port Authority does not move to dismiss any portion of Shifa's fourth claim for relief or the federal claims on this

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 16062 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 9

ground. In any event, the federal claims are governed by a three-year statute of limitations in this district. *Owens v. Okure* 488 U.S. 235 (1989).

Prior to 1950, the Port Authority-as a "direct agency" of New York and New Jersey [FN10]-was held to be completely immune from suits of any sort. *See, e.g., Trippe v. Port of New York Authority,* 249 N.Y.S.2d 409, 410 (1964); *Howell v. Port of New York Authority,* 34 F.Supp. 797, 800 (D.N.J.1940) (citing *Voorhis v. Cornell Contracting Corp.,* 10 N.Y.S.2d 378 (City Ct.N.Y.Co.1938) and *Miller v. Port of New York Authority,* 15 A.2d 262 (N.J.Sup.Ct.Hudson Co.1939)). Identical statutes enacted by New York and New Jersey in 1950 changed this, setting forth terms and conditions upon which consent to suits against the Port Authority was granted. It is well established that "[s]tatutes wherein sovereign immunity against suit is waived must be strictly construed." *Rao v. Port of New York,* 122 F.Supp. 595 (E.D.N.Y.1954) (citing *Schillinger v. U.S.,* 155 U.S. 163 (1894)), *aff'd,* 222 F.2d 362 (2d Cir.1955).

> FN10. The Port Authority was created in 1921 by a compact between New York and New Jersey, which was consented to by Congress. The goal of the compact is to develop public transportation, terminal, and other facilities of commerce within the Port of New York District. *See* N.Y.Unconsolidated Laws § 6401 (McKinney 1979); N.J.S.A. 32:1-1.

As previously noted, suits against the Port Authority must be commenced "within one year after the cause of action therefore shall have accrued." N.Y.Unconsolidated Laws § 7107 (McKinney 1979); N.J.S.A. 32:1-163 (hereinafter these identical provisions will be referred to jointly as "Section 7107"). Section 108(a) of the Bankruptcy Code, 11 U.S.C. § 108(a), is also relevant here because Shifa filed for bankruptcy under Chapter 11 on April 26, 1994. Pursuant to Section 108(a), if the time for commencement of suit has not expired before the filing of a bankruptcy petition, Section 108(a) extends the statute of limitations for "two years after the order for relief," unless the time would expire later. *See* 11 U.S.C. § 108(a).[FN11] However, this extension does not apply to claims which accrued *after* plaintiff filed under Chapter 11. *See Northern Specialty Sales, Inc. v. INTV Corp. (In re Northern Specialty Sales, Inc.),* 57 B.R. 557, 558 (Bankr.D.Oreg.1986).

> FN11. The filing of a Chapter 11 petition "constitutes an order for relief under such chapter." 11 U.S.C. § 301.

Applying these statutes here, it is instructive to separate claims that accrued before Shifa's bankruptcy filing from those that accrued after that date. As to those claims that accrued *before* Shifa's Chapter 11 filing, Shifa may bring all claims which accrued during the one year period before April 26, 1994, the date Shifa filed for bankruptcy. Pursuant to Section 108(a), the period for filing suit on these claims was extended for two years. Because Shifa commenced this suit on February 23, 1996, approximately two months before Section 108's two-year extension expired on April 26, 1996, these claims are timely.[FN12] As to Shifa's claims which accrued *after* its April 26, 1994, bankruptcy filing, only those claims that accrued in the year prior to the commencement of this action on February 26, 1996, are timely. Below is a chart summarizing the interaction between Section 7107 (the state provision establishing the one-year limitations period) and Section 108(a) of the Bankruptcy Code in the context of this case:

> FN12. Of course, any claim which accrued more than one year before Shifa's bankruptcy petition was filed would be barred as of the date of the petition, and the period for filing such a claim could not be extended by Section 108(a).

| Accrual Date | Timeliness of Claim |
|---|---|
| before 4/27/93 | Barred by Section 7107 |
| 4/27/93-4/26/94 | Not Barred by Section 7107 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 16062 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 10

|  |  |
|---|---|
|  | (extended by 11 U.S.C. § 108(a)) |
| 4/26/94-2/23/95 | Barred by Section 7107 |
| 2/24/95-2/23/96 | Not Barred by Section 7107 |

*11 The general rule applicable to breach of contract actions is that the statute of limitations begins to run at the time of breach or when one party omits the performance of a contractual obligation. See, e.g., *Airco Alloys Division, Airco Inc. v. Niagra Mohawk Power Corp.*, 430 N.Y.S.2d 179, 186 (4th Dep't 1980); *Chase v. Columbia Nat'l Corp.*, 832 F.Supp. 654, 659 (S.D.N.Y.1993). However, where a contract provides for continuing performance over a period of time, "each breach may begin the running of the statute anew such that accrual occurs continuously and plaintiffs may assert claims for damages occurring up to [the length of the limitations period] prior to filing of the suit." *Airco Alloys*, 430 N.Y.S.2d at 186.

The Port Authority moves to dismiss a portion of Shifa's third claim-which seeks damages based on the Port Authority's breach of its duty to pay Shifa on various contracts-because of the one-year limitations period. The Port Authority's motion is granted to the following extent for reasons below. Any claim based on failure to make contractual payments before April 27, 1993 (one year before Shifa's Chapter 11 petition), or between April 26, 1994 (the date of Shifa's petition) and February 23, 1995 (one year before commencement of this action) is clearly barred by virtue of the one-year limitations period. As the Port Authority's motion recognizes, however, Shifa may still assert claims for contractual payments wrongfully denied between April 27, 1993, and April 26, 1994, and between February 24, 1995, and February 23, 1996.

In addition, the Port Authority moves to dismiss Shifa's fifth claim in its entirety. This claim alleges breach of contract by the Port Authority beginning in February 1993. Specifically, Shifa alleges that the Port Authority "without any authority under the contract, or any other justification ... unilaterally changed the terms" of certain contracts by putting into escrow five percent of the fee, requiring Shifa to perform extra work with five percent fewer workers, or paying Shifa five percent less on certain contracts. See Complaint ¶¶ 93-94. This claim, like the third claim, appears to involve continuing performance over a period of time. Accordingly, the motion is granted in part and denied in part. The Port Authority's motion to dismiss is granted as to any claim for reduction of payment or workforce before April 27, 1993, or between April 26, 1994, and February 23, 1995. The Port Authority's motion is denied as to any breaches between April 27, 1993, and April 26, 1994, and between February 24, 1995, and February 23, 1996.

The Port Authority also moves to dismiss Shifa's sixth claim, which alleges that "in or about November 1994" the Port Authority breached a provision in the cleaning and maintenance contract for the Consolidated Passenger Ship Terminal whereby the parties could extend the agreement for a one-year period. See Complaint ¶¶ 100, 103. This claim is barred entirely by Section 7107's one-year limitations period. Unlike Shifa's other contract claims, this claim does not involve allegations of continuing breach but rather a single breach in November 1994. Because suit on this claim was not brought before expiration of the statute of limitations in November 1995, the Port Authority's motion to dismiss Shifa's sixth claim in its entirety is granted.

*12 Shifa argues that none of its claims are extinguished because it has alleged "a series of acts that amount to a conspiracy to put it out of business to benefit its competitors," and that the statute of limitations should be tolled since "the pattern of misconduct is a 'continuing tort' or a 'continuing violation.'" Opp.Mem. at 33. Shifa also argues that the statute of limitations should be tolled "under the doctrine of 'equitable tolling' or 'fraudulent concealment.'" Opp.Mem. at 35.

Contrary to Shifa's contentions, the continuing tort doctrine provides no basis for extending the accrual date of any of Shifa's surviving claims. [FN13] The continuing tort rule simply does not apply to the third, fifth, and sixth claims, which are claims for breach of contract subject to the rule regarding continuing performance applicable to contract claims. Furthermore, even if the continuing tort doctrine did apply, there is no basis for reviving the time-barred portions of Shifa's claim simply by pleading a conspiracy. See *Spitzer v. Shanley Corp.*, 151 F.R.D. 264 (S.D.N.Y.1993) (citing *Singleton v. City of New York*, 632

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-00163-GMS    Document 354-9    Filed 03/23/2007    Page 13 of 20

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 16062 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 11

F.2d 185, 192 (2d Cir.1980), cert. denied, 450 U.S. 920 (1981), where the Second Circuit held that "[t]he existence of a conspiracy does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs."). Here, as in *Singleton,* the allegations of the complaint supply no basis for applying the limited exception applicable "[w]here no single act is sufficiently decisive to enable a person to realize that he has suffered a compensable injury." *Singleton,* 632 F.2d at 192-193.

> FN13. The Court need not address the timeliness of the seventh and eighth claims because these claims are being dismissed for failure to state a claim.

Shifa also contends that the complaint contains allegations of fraudulent concealment sufficient to justify Shifa's failure to institute a timely action on its claims. A defendant may be estopped from asserting the statute of limitations as a defense "where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Simcuski v. Saeli,* 406 N.Y.S.2d 259, 262 (1978) (citing *General Stencils, Inc. v. Chiappa,* 272 N.Y.S.2d 337 (1966)). Here, paragraphs 24 and 25 of the complaint allege that the Port Authority "stated [falsely] that there would be a slight delay in payment because it was forced to abandon its administrative office in the World Trade Center following the terrorist bombing of the building in February 1993." Complaint ¶ 24. Assuming this allegation to be true, as the Court must on a motion to dismiss, it still does not excuse Shifa's failure to file a timely suit on its third claim, which alleges that the Port Authority's failure to make contractual payments began on January 8, 1993, *see* Complaint ¶ 22, preceding the World Trade Center bombing by more than one month. Thus, Shifa had no reason to believe or rely on the Port Authority's alleged false explanation for its delay in making payments. Further, the allegations of paragraphs 24 and 25 bear no relevance to Shifa's failure to bring timely suit on any of Shifa's other contractual claims. Similarly, the complaint's allegation that the Port Authority supplied false reasons for precluding Shifa from bidding on certain contracts, *see* Complaint ¶¶ 47-49, bears no relevance to Shifa's failure to bring timely suit on any of Shifa's contractual claims.

*13 In sum, the Port Authority's motion to dismiss on statute of limitations grounds is granted in part, as follows. Shifa's sixth claim is dismissed in its entirety, as are those portions of Shifa's third and fifth claims which accrued before April 27, 1993, or between April 26, 1994, and February 23, 1995.

## CONCLUSION

For the reasons set forth above, the Port Authority's motion to dismiss is granted in part and denied in part. Shifa's first, sixth, seventh, and eighth claims for relief are dismissed in their entirety. In addition, those portions of Shifa's third and fifth claims which accrued before April 27, 1993, or between April 26, 1994, and February 23, 1995, are dismissed. In all other respects, the Port Authority's motion is denied.

SO ORDERED.

S.D.N.Y.,1997.
Shifa Services, Inc. v. Port Authority of N.Y. and N.J.
Not Reported in F.Supp., 1997 WL 16062 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:96cv01361 (Docket) (Feb. 23, 1996)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 8

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 709229 (M.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

Briefs and Other Related Documents
Stambaugh's Air Service, Inc. v. Susquehanna Area Regional Airport AuthorityM.D.Pa.,2006.Only the Westlaw citation is currently available.
United States District Court,M.D. Pennsylvania.
STAMBAUGH'S AIR SERVICE, INC., Plaintiff
v.
SUSQUEHANNA AREA REGIONAL AIRPORT AUTHORITY, et al., Defendants.
No. 1:00-CV-660.

March 16, 2006.

Jordan D. Cunningham, Cunningham & Chernicoff, P.C., Harrisburg, PA, for Plaintiff.
Dean F. Piermattei, Timothy J. Nieman, Rhoads & Sinon, Harrisburg, PA, for Defendants.

*MEMORANDUM AND ORDER*
KANE, J.
*1 Before this Court are Plaintiff's Complaint (Doc. No. 1), Magistrate Judge Smyser's Report and Recommendation (Doc. No. 21), Plaintiff's Objections thereto (Doc. No. 25), Defendants' Reply Brief (Doc. No. 27), Plaintiff's Reply Brief (Doc. No. 28), and Defendants' Supplemental Brief (Doc. No. 63). For the reasons that follow, the Court will adopt the findings and recommendations of the Magistrate Court and remand this case to Magistrate Judge Smyser for further proceedings.

I. *Factual and Procedural Background* [FN1]

   FN1. The factual background of this case is detailed more fully in the Report and Recommendation.

For more than twenty-five years, Plaintiff Stambaugh's Air Service, Inc. operated as a fixed base operator ("FBO") business at the Harrisburg International Airport ("HIA"), performing fueling, maintenance, and cargo handling services for airplanes. Defendants own and manage HIA.[FN2] In a Complaint filed April 10, 2000, Plaintiff alleges that Defendants used harassment and intimidation to force Plaintiff to leave HIA, and unlawfully refused to offer any lease to Plaintiff that would allow it to continue to provide FBO service at HIA. In its Complaint, Plaintiff asserts the following claims: violation of its "rights to due process pursuant to 42 U.S.C. § 1983" (Count I); violation of its "rights to due process guaranteed by Article I, Section 1, of the Pennsylvania Constitution" (Count II); violation of its "rights to equal protection pursuant to 42 U.S.C. § 1983" (Count III); violation of its "rights to equal protection guaranteed by Article I, Sections 1 and 26, and Article III, Section 32, of the Pennsylvania Constitution" (Count IV); conspiracy (Count V); violation of the Municipal Authorities Act of 1945, 53 Pa.C.S. § 5601 *et seq.* (Count VI); and tortious interference with existing contractual relationships (Count VII). (Doc. No. 1.) On May 19, 2000, Defendants filed a motion to dismiss the Complaint. (Doc. No. 6.) After full briefing on the motion, Magistrate Judge Smyser issued a report, recommending that this Court grant Defendants' motion regarding Counts I, II, IV, V, and VI as to all Defendants and Count VII as to Defendant Susquehanna Area Regional Airport Authority ("SARAA"), but deny the motion in all other respects. The parties filed briefs in response to the Magistrate's Report and Recommendation. However, the case was subsequently stayed due to Plaintiff's bankruptcy proceedings until August 31, 2005. In its Order lifting the stay, this Court allowed the parties to file supplemental briefs regarding the Magistrate Judge's Report and Recommendation. On September 30, 2005, Defendants filed a supplemental brief. Plaintiff did not to submit any additional briefing.

   FN2. The defendants in this actions are Susquehanna Area Regional Airport Authority, BAA Harrisburg, Inc., David Fleet, David Holdsworth, and David McIntosh.

II. *Discussion*

Pursuant to 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* A motion to dismiss tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 2
Not Reported in F.Supp.2d, 2006 WL 709229 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

When considering a motion to dismiss, the court accepts as true all factual allegations contained in the complaint and views them in the light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir.2002)*. The plaintiff is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist." *Kost,* 1 F.3d at 183 (citations omitted). A court should grant a motion to dismiss only if it appears the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir.1985)* (citations omitted).

A. Substantive Due Process (Count I)

*2 Finding that Plaintiff "[did] not assert a procedural due process right and [did] not assert that there was a state-created property interest that was taken without due process of law[,]" the Magistrate Judge examined the claims as a "violation of substantive due process rights in the act of excluding the plaintiff as a potential bidder." (Doc. No. 21 at 5.) Relying on *Independent Enterprise Inc. v. Pittsburgh Water and Sewer Authority,* 103 F.3d 1165 (3d Cir.1997), the Magistrate Court found that the right:

to be the HIA FBO operator is not a fundamental right such as the property interests that may in some contexts arise from the ownership of land.... It is a contractual right.... Stambaugh's did not have a right as a matter of substantive due process to continue to have the HIA FBO contract or to have its bid considered in any particular manner.

(*Id.* at 8.) The Magistrate Judge also found that Plaintiff failed to allege a constitutionally protected liberty interest, rejecting Plaintiff's argument that "the taking of its business interests at HIA is tantamount to the state's taking of a professional license by wrongfully withholding or revoking certification." (*Id.* at 9.) Accordingly, the Magistrate Judge recommended that the Court dismiss Plaintiff's substantive due process claim. (*Id.* at 10.)

Plaintiff objects to the Magistrate Court's characterization of its claim. Plaintiff argues that its "claim arises from its interest in not being arbitrarily denied permission to be an FBO operator anywhere at HIA, even from the space which it has leased." (Doc. No. 25 at 4.) Plaintiff analogizes its claim to cases where the state or municipality failed to grant permission to a property owner or lessor for an intended land use. (*Id.* at 6.) Plaintiff also contends that this Court should analogize Defendants' action to that of a licensing authority's wrongful denial of certification, as "defendants, by unlawfully excluding [Plaintiff] from a public airport, have excluded [Plaintiff] from the market for FBO services." (Doc. No. 11.) Plaintiff further argues that "[t]he Magistrate Judge failed to recognize, that in the market in which Stambaugh's operates and which SARAA controls, defendants by their actions, in effect, have denied Stambaugh's the opportunity to operate as an FBO at all." (Doc. No. 25 at 10.)

Plaintiff's attempt to analogize the denial of its FBO contract to land-use cases is misguided. Contrary to the cases Plaintiff cites, Defendants' alleged actions in the case at bar do not amount to a governmental entity placing use limitations on private land. According to the allegations made in the Complaint, Plaintiff's inability to continue to provide FBO services at HIA stems directly from Defendants' decision not to renew their lease with Plaintiff. (Doc. No. 1 at 4-5.) Plaintiff's "right" to perform FBO services at HIA arises entirely from its former contractual relationship with Defendants to provide such services, and is therefore merely a contractual right. No constitutionally protected property interests exist in a government contract unless the contract confers a protected status or contains a provision that the state entity can terminate the contract only for cause. *Linan-Faye Constr. Co., Inc. v. Housing Auth. of the City of Camden,* 49 F.3d 915, 932 (3d Cir.1995) (citing *Unger v. National Residents Matching Program,* 928 F.2d 1392, 1399 (3d Cir.1991); *see also Reich v. Beharry,* 883 F.2d 239, 242 (3d Cir.1989) ("Many ... courts have observed that if every breach of contract by someone acting under color of state law constituted a deprivation of property for procedural due process purposes, the federal courts would be called upon to pass judgment on the procedural fairness of the processing of a myriad of contract claims against public entities. We agree that such a wholesale federalization of state public contract law seems far afield from the great purposes of the due process clause"). Neither Defendants' refusal to renew Plaintiff's former lease nor Defendants' refusal to lease Plaintiff the former AMP hanger rise to the quality of property rights worthy of substantive due process protection. *See Independent Enterprise Inc.,* 103 F.3d at 1179 ("substantive due process claim grounded in an arbitrary exercise of governmental authority may be maintained only where the plaintiff has been deprived of a 'particular quality of property interest'); *see e.g. Queen City Aviation, Inc. v. Allentown,* 1992 U.S. Dist. LEXIS 9042 (E.D.Pa.1992) (city officials decision to grant an exclusive lease to another bidder

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 709229 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

did not amount to a substantive due process violation).

**\*3** Moreover, Plaintiff's contractual right to provide FBO services to airplanes at HIA does not amount to a constitutionally-protected liberty interest. "[D]ischarge from governmental employment will not by itself constitute a deprivation of liberty." *Bb. of Regents v. Roth*, 408 U.S. 564, 575, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). As the Magistrate Judge correctly noted, "[t]he state when acting in a governmental capacity of regulating persons' eligibility and suitability to practice their trade or profession gives rise to an application of due process principles and expectations whereas the state's contractual interactions with service providers do not." (Doc. No. 21 at 10.) In declining to renew Plaintiff's contract or lease, Defendants precluded Plaintiff from providing FBO services at HIAA, but it did not impair Plaintiff's ability to provide such services at any other airport in the Commonwealth. The difficult market realities allegedly inherent in the FBO industry and the economic significance of Plaintiff's loss of the service contract do not convert a mere contract claim into a deprivation of liberty. *See Linan-Faye Constr. Co.*, 49 F.3d at 932 ("[a]lthough the consequential damages of an alleged breach may be severe, this fact alone cannot convert a contract claim into a deprivation of liberty") (citing *S & D Maintenance Co. v. Goldin*, 844 F.2d 962 (2d Cir.1988)). Plaintiff fails to establish a claim of constitutional magnitude. Accordingly, Plaintiff's due process claim will be dismissed (Count I).

B. Private Right of Action for Damages Under the Pennsylvania Constitution (Counts II and IV)

The Magistrate Judge recommends dismissal of Plaintiff's claims under the Pennsylvania Constitution "on the basis that a violation of the Pennsylvania constitution does not give rise to a cause of action seeking monetary damages as a remedy." (Doc. No. 21 at 15.) As the Pennsylvania Supreme Court has not yet settled the issue of whether a plaintiff may seek monetary damages for state constitutional violations, this Court will decline to exercise supplemental jurisdiction over Plaintiff's state constitutional claims pursuant to 28 U.S.C. § 1367(c)(1).[FN3] Section 1367(c)(1) states, "the district courts may decline to exercise supplemental jurisdiction over a claim ... if the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). Numerous district courts have recognized that the issue of whether an action for monetary damages for violations of the Pennsylvania constitution is a "novel or complex issue of State law" and accordingly, have declined to exercise supplemental jurisdiction. *See Mitchell v. Street*, No. 04-3213, 2005 U.S. Dist. LEXIS 17156 at \*16-18 (E.D.Pa. August 16, 2005) (dismissing state constitutional claims without prejudice in light of the unclear status of the law); *Millar v. Windsor Twp.*, No. 04-CV-2529, 2005 U.S. Dist. LEXIS 17433 at \*12 (M.D. Pa. June 24, 2005) (stating that there is a "dearth of case law on the issue" and declining to exercise jurisdiction over the state constitutional claims because deference to the state appellate courts is appropriate); *see also Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 487 (3d Cir.1998) (affirming district court's decision to refrain from exercising supplemental jurisdiction over state constitutional claims that presented a complex issue of state law). Therefore, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state constitutional claims pursuant to § 1376(c)(1) and will dismiss Plaintiff's state constitutional claims (Counts II and IV) without prejudice.

> FN3. Recently, the Commonwealth Court of Pennsylvania ruled that there is "no separate cause of action for monetary damages for the use of excessive force in violation of Article I, Section 8 of the Pennsylvania Constitution." *Jones v. City of Philadelphia*, 890 A.2d 1188, 2005 WL 3695389, \*18 (Pa.Cmwlth.Jan.25, 2006).

C. Equal Protection (Count III)

**\*4** In his Report and Recommendation, Magistrate Judge Smyser recommended that this Court deny Defendants' motion to dismiss as to Plaintiff's equal protection claim. (Doc. No. 21 at 12.) Relying on *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), the Magistrate Judge correctly observed that an equal protection claim can be brought by a "class of one," a plaintiff alleging that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook*, 528 U.S. at 564. Where no fundamental right is impinged and where no suspect classification is used, the difference in treatment need only be rationally related to a legitimate state interest. *See Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (discussing the general rational basis rule and noting

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2006 WL 709229 (M.D.Pa.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

the exceptions for fundamental rights and suspect classifications).

Defendants argue that Plaintiff's equal protection claim "contains no factual allegations that Defendants acted irrationally or arbitrarily[,]" moreover "Plaintiff is also required to set forth supporting facts which it has failed to do." (Doc. No. 63 at 8.) In its Complaint, Plaintiff alleges that Defendants "engaged in a policy of intimidation and harassment directed at [Plaintiff] and its employees", fabricated lease disputes, intentionally ignored its own Request for Qualifications ("RFQ") requirements, rejected Plaintiff's lease application outside of the normal process, and violated Federal Aviation Administration Order 5190.1A in an attempt to force Plaintiff "out of the FBO business at HIAA." (Doc. No. 1, ¶¶ 25-26, 47, 51-53, 62, 65.) Further, Plaintiff alleges that Defendants treated Plaintiff "differently from other similarly situated entities without any rational basis for doing so" and engaged in conduct designed "to inhibit or prevent [Plaintiff] from engaging in commercial activity and to afford others the opportunity to do so." (Id. ¶¶ 128-29.) The Court finds that Plaintiff has alleged enough irrational differential treatment to survive a motion to dismiss. See Willowbrook, 528 U.S. at 564. Unlike the cases from outside this circuit that Defendants cite in support of their objection, Plaintiff alleges just enough facts, which if true, could demonstrate that Defendants treated Plaintiff differently based on an illegitimate animus towards it. Id. at 566 (J. Breyer concurring). The Court is constrained to find that Plaintiff has made a minimal showing of an equal protection violation so as to survive Defendants' motion to dismiss.

In their motion to dismiss, the individuals Defendants' (Defendants Fleet, Holdsworth, and McIntosh) asserted a qualified immunity defense.[FN4] (Doc. No. 6.) It is the individual Defendants' burden to establish that they are entitled to qualified immunity. Stoneking v. Bradford Area School Dist., 882 F.2d 720, 726 (3d Cir.1989) (citing Ryan v. Burlington County, 860 F.2d 1199, 1204 n. 9 (3d Cir.1988)). The defendants must show "that their conduct did 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Stoneking, 882 F.2d at 726 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The defendants must demonstrate that reasonable officials in the defendants' position at the relevant time could have believed, in light of clearly established law, that their conduct comported with established legal standards. Id. The Third Circuit has " 'adopted a broad view of what constitutes an established right of which a reasonable person would have known.' " Id. (quoting Sourbeer v. Robinson, 791 F.2d 1094, 1103 (3d Cir.1986)). "Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (quoting Harlow, 457 U.S. at 818-19).

> FN4. Although Defendants asserted this defense generally, since only the Equal Protection claim remains, the Court will confine its discussion of qualified immunity to this claim.

*5 The Magistrate Judge rejected the individuals Defendants' qualified immunity defense. (Doc. No. 21 at 12.) Relying upon Northeast Jet Center, Ltd. v. Lehigh-Northampton Aairport Authority, 767 F.Supp. 672 (E.D.Pa.1991), the Magistrate Judge found that a foundation existed "in clearly established law for the defendants to have known that conduct such as that alleged here was in violation of clearly established law." (Doc. No. 21 at 14.) Defendants argue that the individual Defendant's alleged actions were not unreasonable as a matter of law. (Doc. No. 63 at 13.) As stated above, Plaintiff alleges that all defendants intimidated and harassed its employees, interfered with its business operations, fabricated lease violations, and manipulated its own contract award process in an effort to drive Plaintiff out of HIA. (Doc. No. 1.) Accepting these allegations as true and viewed in a light most favorable to non-moving Plaintiff, Defendants fail to demonstrate that a reasonable person would have thought these actions comported with established legal standards. Accordingly, Defendants' motion to dismiss as to Count III will be denied.

D. Conspiracy (Count V)

The Magistrate Judge recommends that this Court dismiss Plaintiff's conspiracy claim because Plaintiff fails to state the underlying torts that were allegedly the object of the conspiracy. (Doc. No. 21 at 17-18.) To state a cause of action for civil conspiracy under the law, a plaintiff must show "that two or more persons combined or agreed with intent to do an

Not Reported in F.Supp.2d                                                                                      Page 5
Not Reported in F.Supp.2d, 2006 WL 709229 (M.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy." *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466, 472 (1979) (citations omitted). Plaintiff objects to the report, arguing that the conspiracy count properly references tortious interference as an underlying tort and "make[s] clear the basis of the conspiracy." (Doc. No. 25 at 16.)

The Court agrees with Magistrate Judge Smyser that Plaintiff fails to properly plead the object of the conspiracy. Although Count V alleges that Defendants contacted Plaintiff's customers, it does not allege that Defendants interfered with existing contractual relationships nor does the conspiracy count incorporate by reference allegations pled in the tortious interference count (Count VII). Plaintiff has failed to include sufficient specificity as to put Defendants on notice as to the basis of the alleged conspiracy. Accordingly, this claim will be dismissed and Plaintiff will be granted leave to amend the Complaint.

E. Municipal Authorities Act (Count VI)

The Magistrate Judge recommends dismissal of Plaintiff's claim that Defendants violated the Pennsylvania's Municipal Authorities Act of 1945, 53 Pa.C.S. § 5601 *et seq.* (2005). (Doc. No. 21 at 21.) The act provides in part that:
Every authority incorporated under this chapter shall be a body corporate and politic and shall be for the purposes of financing working capital; acquiring, holding, constructing, financing, improving, maintaining and operating, owning or leasing, either in the capacity of lessor or lessee, projects of the following kind and character and providing financing for insurance reserves[.]

*6 53 Pa.C.S. § 5607(a). The type of projects listed by the statute include transportation, parks, sewers, waterworks, hospitals, schools and other projects similarly associated with the public sector. *Id.* The section then places a limit on the types of works that can be established by a municipal authority:The purpose and intent of this chapter being to benefit the people of the Commonwealth by, among other things, increasing their commerce, health, safety and prosperity and not to unnecessarily burden or interfere with existing business by the establishment of competitive enterprises; none of the powers granted by this chapter shall be exercised in the construction, financing, improvement, maintenance, extension or operation of any project or projects or providing financing for insurance reserves which in whole or in part shall duplicate or compete with existing enterprises serving substantially the same purposes.

53 Pa.C.S. § 5607(b)(2).[FN5]

> FN5. SARAA is a municipal authority created pursuant to the Municipal Authorities Act. (Doc. No. 1 at 2.)

Plaintiff argues that Defendants interfered with Plaintiff's business and subsequently awarded the FBO contract to Plaintiff's rivals and that such conduct constituted unlawful competition by SARAA. (Doc. No. 28 at 14.) This argument is without merit. Defendants did not establish a competing FBO enterprise at HIA; Defendants are alleged to have merely favored other FBO firms over Plaintiff. Section 5607(b)(2) prohibits municipal authorities themselves from competing against existing businesses. There are no allegations that the FBO companies which replaced Plaintiff at HIA were constructed, financed, or operated by SARAA. As the Magistrate Court correctly notes, "Stambaugh's had no statutory right not to be replaced by SARAA." (Doc. No. 21 at 21.) Accordingly, this claim will be dismissed (Count VI).

F. Tortious Interference (Count VII)

Magistrate Judge Smyser recommends that Plaintiff's tortious interference count not be dismissed, finding that the Complaint properly alleges each of the *prima facie* elements of the claim. (Doc. No. 21 at 25.) Defendants argue that this claim should also be dismissed as to the individual defendants based upon the doctrine of qualified immunity. (Doc. No. 63 at 9.) Defendants assert that the alleged tortious interference, even if true, was not unreasonable as a matter of law. (*Id.* at 13, 412 A.2d 466.) However, for the reasons discussed more fully above in § II(c) of this Order, the Court will overrule this objection. Tortious interference is a well-established tort, one which the individual Defendants should have reasonably been aware. Accepting all allegations as true and viewed in a light favorable to non-moving Plaintiff, Defendants fail to demonstrate that a reasonable person would have thought intentionally interfering with the relationships between Plaintiff and its clients, for the direct purpose of injuring Plaintiff, comported with established legal standards.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2006 WL 709229 (M.D.Pa.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

Accordingly, the Court will not dismiss this count as to the individual Defendants.

*7 However, Magistrate Judge Smyser does recommend that the Court dismiss this claim against SARAA on the basis of governmental immunity. (*Id.*) *See* 42 Pa.C.S. § 8541. Plaintiff raises no objections against this recommendation. (Doc. No. 25.) Accordingly, upon review of the record and the applicable law, the Court will adopt this recommendation by the Magistrate Court and dismiss Count VII as to Defendant SARAA.

### G. Leave to Amend

If a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir.2004); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002). For the reasons discussed more fully above, leave to amend Counts I, II, IV, and VI would be futile. However, Plaintiff shall be permitted leave to amend Count V of the Complaint.

### III. *Order*

AND NOW, this 16th day of March, 2006, IT IS ORDERED THAT:
1. Magistrate Judge Smyser's Report and Recommendation is HEREBY ADOPTED.
2. Defendants' motion to Dismiss is granted in part as follows: Counts I, V, and VI are DISMISSED; Count VII is DISMISSED as to Defendant SARAA; and Counts II and IV are DISMISSED without prejudice. In all other regards Defendants' motion is denied.
3. Plaintiff's and Defendants' Objections are OVERRULED.
4. Plaintiff may file an Amended Complaint as to Count V within ten (10) days of this Order.
5. The Clerk of Court is directed to refrain from entering judgment until the disposition of the proceedings.
6. This case is REMANDED to Magistrate Judge Smyser for further proceedings.

M.D.Pa.,2006.  
Stambaugh's Air Service, Inc. v. Susquehanna Area Regional Airport Authority  
Not Reported in F.Supp.2d, 2006 WL 709229 (M.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 3750086 (Trial Pleading) Second Amended Complaint (Nov. 1, 2006)
• 2006 WL 1605123 (Trial Pleading) First Amended Complaint (Apr. 10, 2006) Original Image of this Document (PDF)
• 2000 WL 34552639 (Trial Motion, Memorandum and Affidavit) Defendants' Supplemental Brief Regarding Opinion and Recommendation of Magistrate Judge Smyser (2000) Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.