## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

_____

|  |  |  |
|---|---|---|
| DONALD M. DURKIN CONTRACTING, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF NEWARK, et al., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| and | ) | C.A. No. 04-163 GMS |
| | ) | |
| CITY OF NEWARK, et al., | ) | |
| | ) | |
| Third-Party Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD M. DURKIN CONTRACTING, INC., AND FEDERAL INSURANCE COMPANY, | ) | |
| | ) | |
| Third-Party Defendants | ) | |

_____

## MEMORANDUM OPINION

## I.    INTRODUCTION

This matter comes before the court on the renewed motion of the Defendants, City of
Newark, Delaware, and its City Council members in their official capacities only, (collectively,
"the City") for judgment as a matter of law, or in the alternative, for a new trial pursuant to
Federal Rules of Civil Procedure 50(b) and 59(a).

## II.    BACKGROUND

Much of the factual and procedural background of this matter has been recited extensively in the court's prior Memoranda and Orders.  As such and because the court writes primarily for the parties, the court will address only the relevant facts herein.

Prior to trial, the court granted summary judgment against the City for breach of the Construction Contract between it and the Plaintiff Donald M. Durkin Contracting, Inc. ("Durkin") for the construction of a water reservoir for the City of Newark.  (D.I. 257.)  The court's decision was based on the fact that the City did not provide Durkin the seven-day notice of termination—a requirement in both Articles 15.2 (termination for cause) and 15.4 (termination for convenience) of the Construction Contract.  Trial began on September 26, 2006, and concluded on October 5, 2006.

On October 3, 2006, the City moved for judgment as a matter of law (JMOL) pursuant to Federal Rule of Civil Procedure 50(a) on the measure of damages for the breach of contract claim, the civil rights claim, and the conversion claim.  The court reserved ruling on the JMOL motion and let the issues go to the jury.  The jury awarded Durkin $11.6 million for damages on its breach of contract claim, $25 million in compensatory damages on its civil rights claim, and $1 on its conversion claim.  The jury also returned a verdict in favor of URS Corporation ("URS")[1] and against the City in the amount of $283,387.87 for attorneys' fees and costs.  On October 12, 2006, the court denied the City's Rule 50(a) motion as moot in light of the jury verdict, but permitted the City to renew its motion pursuant to the provisions of Fed. R. Civ. P.

---

[1] URS is a third-party defendant who had a contract with the City for engineering work on the City's reservoir project.

50(b).  (D.I. 299.)  On October 24, 2006, the City renewed its motion for judgment as a matter of

law pursuant to Federal Rule of Civil Procedure 50(b), and filed a motion for a new trial or

remittitur pursuant to Rule 59.  (D.I. 303, 304.)

## III.    LEGAL STANDARD

### A.  Motion for Judgment as a Matter of Law

To prevail on a renewed motion for judgment as a matter of law following a jury trial and

verdict, the moving party "'must show that the jury's findings, presumed or express, are not

supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the

jury's verdict cannot in law be supported by those findings.'"  *Pannu v. Iolab Corp.*, 155 F.3d

1344, 1348 (Fed. Cir. 1998) (*quoting Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d

888, 893 (Fed. Cir. 1984)).  "Substantial evidence" is defined as "such relevant evidence from

the record taken as a whole as might be accepted by a reasonable mind as adequate to support the

finding under review."  *Perkin-Elmer Corp.*, 732 F.2d at 893.

The court should only grant the motion "if, viewing the evidence in the light most

favorable to the nonmovant and giving it the advantage of every fair and reasonable inference,

there is insufficient evidence from which a jury reasonably could find liability."  *Lightning Lube,

Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (*citing Wittekamp v.. Gulf Western Inc.*,

991 F.2d 1137, 1141 (3d Cir. 1993)).  "In determining whether the evidence is sufficient to

sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or

substitute its version of the facts for the jury's version."  *Lightning Lube*, 4 F.3d at 1166 (*citing

Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 190 (3d Cir. 1992)).  Rather, the court

must resolve all conflicts of evidence in favor of the non-movant. *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991); *Perkin-Elmer Corp.*, 732 F.2d at 893.

"The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube*, 4 F.3d at 1166 (*quoting Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir. 1978)). In conducting such an analysis, "the court may not determine the credibility of the witnesses nor 'substitute its choice for that of the jury between conflicting elements of the evidence.'" *Syngenta Seeds, Inc. v. Monsanto Co.*, 409 F. Supp. 2d 536, 539 (D. Del. 2005) (*quoting Perkin-Elmer Corp.*, 732 F.2d at 893).

**B. Motion for a New Trial**

Federal Rule of Civil Procedure 59(a) provides that:

[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . .

Fed. R. Civ. P. 59(a). It is within the discretion of the district court whether or not to grant a new trial. *Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1017 (3d Cir. 1995). Although Rule 59 does not detail the grounds on which a new trial may be granted, the following grounds have been recognized by the Third Circuit: "the verdict is against the clear weight of the evidence; damages are excessive; the trial was unfair; and that substantial errors were made in the admission or rejection of evidence or the giving or refusal of instructions." *Lightning Lube, Inc. v. Witco Corp.*, 802 F. Supp. 1180, 1186 (D.N.J. 1992), *aff'd* 4 F.3d 1153 (3d Cir. 1993).

4

When reviewing a motion for a new trial, a court must view the evidence in the light most favorable to the party for whom the verdict was returned. *Wagner v. Firestone Tire & Rubber Co.*, 890 F.2d 652, 656 (3d Cir. 1989). Where a motion for a new trial is based primarily on the weight of the evidence, the discretion of the trial court is limited. *Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1993); *see also Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 366 (3d Cir. 1999). Indeed, "new trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Williamson*, 926 F.2d at 1344; *see also Greenleaf*, 174 F.3d at 366. Although a court is permitted to consider the credibility of trial witnesses and to weigh evidence, it must "exercise restraint to avoid usurping the jury's primary function." *Hurley v. Atl. City Police Dep't*, 933 F. Supp. 396, 403 (D.N.J. 1996), *aff'd* 174 F.3d 95 (3d Cir. 1999).

## IV.   DISCUSSION

### C. Durkin's Breach of Contract Claim

The City moves for judgment as a matter of law, or for a new trial, on the measure of damages and the amount of damages the jury awarded to Durkin on the breach of contract claim. The parties originally proposed competing theories on the measure of damages in the form of motions in limine. The court considered such issues to be, not of an evidentiary nature but rather, legal issues, which were effectively untimely summary judgment motions. (D.I. 244.) The amount of damages due to Durkin because of the City's breach remained, however, a triable issue for the jury. As such, it was the responsibility of each party to present evidence necessary

to support its legal theory of damages, and to refute the opposing party's damages case. Further, the parties were also responsible for advocating jury instructions for the court to consider, and interrogatories that would allow the jury to delineate the basis for the amount of damages awarded. This approach would allow the court to decide the legal issue in the context of jury instructions, or fix the amount of damages post-trial, if necessary.

The City argues that the court should grant judgment as a matter of law, or grant a new trial, for breach of contract damages because: (1) the jury's damage calculation is contrary to the Construction Contract and Delaware law; (2) the damage award is grossly excessive; (3) there is newly discovered evidence that would likely alter the outcome of the trial;[2] and (4) Durkin's changing damages claim caused the City unfair surprise at trial.[3]    In response, Durkin contends that the City waived objection to the breach of contract damage jury instruction and that the jury's award was consistent with the Construction Contract and Delaware law. (D.I. 351.)

The record reflects that the City did maintain, from as early as the pretrial conference up until its closing argument, that Durkin's proposed measure of damages was contrary to the Construction Contract and Delaware law. (D.I. 152, 154 –motions in limine; Tr. 809, 884 –

---

[2] The court has considered the City's contention of newly discovered evidence and finds that the City fails to articulate any tenable basis as to why the witness, Mr. Ronald Scott Killen, could not have been discovered earlier. The time to discover facts and witnesses is during discovery. Durkin asserts, and the City doesn't dispute, that the City only took three depositions during discovery. This is telling of the City's attitude towards the litigation, considering the issues at stake, and the subject matter involved. The court rejects this contention as a basis for a new trial but will reserve on whether a new trial on damages will be granted on other grounds, pending supplemental briefing as directed.

[3] The court finds no support in the City's argument that Durkin's damages case constituted unfair surprise. Indeed, after initially objecting at trial, Mr. Cottrell, trial counsel for the City, acknowledged that the information Durkin presented on damages was previously provided to the City albeit in a different format and reflecting a higher damages calculation. (Tr. 884-885.) Further, in a conference to discuss a jury question, Ms. Petrone, trial counsel for the City stated: "[W]e certainly did agree to the itemized statement of damages. And we discussed that with Your Honor. And that came in." (Tr. 1271.) Moreover, the city's motion in limine on the valuation of damages reflects its understanding, through discovery, of the approach Durkin was proffering as a measure of damages. (D.I. 152 at 7.)

objections to Durkin's damages testimony; D.I. 277 –Rule 50(a) motion.)  Despite the City's position and the court's reservation on the legal issue, however, the City failed to 1) adduce testimony in support of its theory; 2) propose an instruction consistent with its Rule 50(b) position that would have guided the jury on its proffered measure of damages; or 3) otherwise object to the instruction given, prior to the jury's deliberation.  This failure was in spite of the court's suggestion at the conclusion of the October 4, 2006 prayer conference that the parties provide the jury with two interrogatories—one based on each legal theory for damages.  Having received the next morning the instructions and the verdict form that the parties agreed on, the court adopted the final set of jury instructions and interrogatories without any further objection or discussion with the parties regarding breach of contract damages.  (Tr. 1185-1187.)  Thus, the court finds that the City did waive any objection to the jury instructions and interrogatories on the issue.[4]

Nonetheless, the court considers the City's post-trial arguments to determine whether upholding the jury's verdict on the breach of contract damages would be plain error or a miscarriage of justice.  The plain error determination is left to the sole discretion of the court, and should be exercised sparingly.  *Hurley,* 174 F.3d at 123; *Watson v. SEPTA,* 207 F.3d 207, 222 (3d Cir. 2000), *cert. denied,* 531 U.S. 1147 (2001).  It is the burden of the moving party to

---

[4] The City contends in a footnote to its brief that it submitted a separate damages instruction for the court's consideration.  (D.I. 346 at 18 citing Tr. 1148.)  As Durkin points out, however, there is no record of the City's purported instruction and the City does not provide a copy nor recite the proposed instruction in its post-trial submissions.  Further, the "submission" that the City points to in its brief occurred prior to a later discussion on the very issue, during which time counsel for the City stated "It might be simpler, your Honor, to leave it to the first paragraph, the measure of damages is the loss actually sustained as a result of the breach of contract."  (Tr. 1166.) The City's counsel later repeated "But I still think maybe the best course of action is simply to leave it the measure of damages, the loss actually sustained as a result of the breach of contract."  (Tr. 1167.)  This is the very language the court charged to the jury in Jury Instruction No. 21.  (D.I. 290, Tr. 1206.)

establish plain error. *United States v. Guadalupe,* 402 F.3d 409, 410 (3d Cir. 2005), *cert. denied,* 547 U.S. 1123 (2006); *see United States v. Olano,* 507 U.S. 725, 734-735 (1993). If the party establishes that: (1) the Court erred; (2) the error was obvious under the law at the time of review; and (3) the error (if any) affected the substantial right, i.e., the outcome of the proceeding, then the Court may grant the moving party's motion. *Guadalupe,* 402 F.3d at 410. Even if the jury's findings are supported by substantial evidence, where the legal conclusions implied by the jury's verdict cannot be supported in law by those findings, the court may grant judgment as a matter of law. *Pannu,* 155 F.3d at 1348 (*quoting Perkin-Elmer,* 732 F.2d at 893).

There is no dispute that the jury's findings were based on Durkin's Itemized Statement of Damages, which tied the damages requested to Article 11 of the Construction Contract. (*Compare* D.I. 352 at A255, Statement *with* D.I. 291, Verdict Form.) Durkin acknowledges that the Construction Contract was silent on the measure of damages in the event of the City's breach; however, Durkin reasons that the contractual cost of work calculation under Article 11 is a fair and reasonable procedure for determining damages. (D.I. 351 at 12.) For the same reasons that the measure of damages set forth in Articles 15.2 and 15.4 do not apply, the cost of work method in Article 11 is also an inappropriate measure of damages. Namely, these sections explicitly operate under specific conditions set forth in the Contract. Well-recognized canons of contract interpretation mandate that where a contract is explicit on an issue, it operates to the exclusion of contrary interpretations. *See Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del. 1992) ("It is an elementary canon of contract construction that the intent of the parties must be ascertained from the language of the contract. Only when there are ambiguities may a court

look to collateral circumstances."); *City Investing Co. Liquidating Trust v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993) ("If a writing is plain and clear on its face, *i.e.*, its language conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent.").

The court finds that a plain reading of the Construction Contract directs that Article 11 was intended to operate as a measure for calculating change orders agreed upon by the parties, and not as a measure of damages. This conclusion is supported by the existence of those provisions of the Contract that explicitly state the measure of damages in the event of a proper termination, with or without cause (Article 15), as well as those provisions that specify the procedure and the limited circumstances in which the parties can invoke changes to the contract price. (D.I. 346 at 8-9) (discussing Article 11's provisions generally and Article 10.3, which provides that the contractor is not entitled to an increase in the contract price with respect to any work performed that is not required by the contract, unless amended by Articles 3.5, 3.6, 6.23 or 13.9.)

The City proposes that the court should convert its improper termination for cause to a constructive termination for convenience, and then look to the Construction Contract's provision on termination for convenience for the measure of damages. The court finds that the City's approach would also be an improper measure of the damages due to Durkin. The court rejects the applicability of the federal common law doctrine of constructive termination for convenience in this case.

As noted above, the Construction Contract explicitly required the City to provide notice to Durkin of termination regardless of whether such termination was for convenience (Article 15.4) or for cause (Article 15.2).[5]  (D.I. 346 at A42-A43.)  These clauses must be viewed in the context of the whole contract, which includes Article 15.1, allowing the City to suspend work "at any time and without cause."  (Id. at A42.)  The contract was therefore explicit as to the procedural aspects and notice requirements with respect to the parties regarding any stoppage of work.  These explicit intentions of the parties cannot be set aside in favor of applying a judicially-created, federal common law doctrine.  *Klein v. United States,* 285 F.2d 778, 783 (Ct. Cl. 1961) (rejecting the application of construction termination for convenience when the "rights to terminate for default, or for the convenience of the Government, were expressly defined in the contract").

Indeed, it is because of the City's failure to provide the required seven-day notice that there is an outstanding question of damages due to the City's breach.  It would be circular and illogical to constructively apply the damages measure of Article 15.4, when under the provision's plain and unambiguous language, it too would be breached as a result of the City's same conduct that warranted damages under Article 15.2.  *See Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. 1992) ("Under general principles of contract law, a contract should be interpreted in such a way as to not render any of its provisions illusory or meaningless.").

---

[5] The City argues that in *Linan-Faye Const. Co., Inc. v. Housing Authority of City of Camden*, 49 F.3d 915 (3d Cir. 1995), the local government also improperly terminated the contract for cause yet the Third Circuit held that the common law doctrine of constructive termination for convenience still applied.  *Linan-Faye* is silent, however, as to whether such an application of the common law doctrine would conflict with the plain language of the very provision it constructively applied.  *See Linan-Faye* , 49 F.3d at 934 (J. Becker, dissenting).

The court thus finds that the only measure of damages available to Durkin for the City's breach of the Construction Contract is under Delaware common law. It is unclear to the court whether the trial record supports the ability to assess, post-trial, the amount of damages under Delaware common law. The court is also uncertain as to the parties' respective positions on the amount of damages that should be awarded under Delaware common law.[6] Before the court can resolve the issue, it will require supplemental briefing, and oral argument if necessary, from Durkin and the City on what amount is owed to Durkin for breach of the Construction Contract under Delaware common law, based on the evidence adduced at trial.

### D. Durkin's Civil Rights Claim

1. Judgment as a Matter of Law

The City moves for judgment as a matter of law or for a new trial on Durkin's civil rights claim. The City argues that the evidence was insufficient, as a matter of law, to submit Durkin's sole constitutional claim to the jury. (D.I. 346 at 21.) In support of its request for judgment as a matter of law, the City contends that 1) a liberty interest does not encompass the right to perform a particular contract; 2) Durkin's breach of contract evidence is insufficient to support the civil rights claim; and 3) alleged defamatory statements do not support a civil rights claim, because Durkin's claim effectively amounts to a "stigma-plus" claim, which Durkin did not pursue.

Durkin responds that the City mischaracterizes its civil rights claim and overlooks the evidence adduced at trial in support of its actual claim. Specifically, Durkin contends that it does

---

[6] The City writes in its brief what it considers to be the "most Durkin could have been awarded" under Delaware law, but states that Durkin did not adduce evidence sufficient to perform the rest of the computation. (D.I. 346 at 14.) Durkin's brief does not part from its belief that the jury's verdict represents the proper measure of damages as determined using Article 11 of the Construction Contract. (D.I. 351 at 13.)

not argue now, nor did it try, a claim that it had a constitutional right, or "liberty interest," to the specific Construction Contract with the City.  Durkin posits that it presented uncontested evidence of an official City policy of the City Council abdicating its decision-making function through a wholesale delegation to the City Manager and his Staff, who in turn carried out a series of actions that brought about the financial deterioration of Durkin and ultimately put it out of business.  (D.I. 346 at 23.)  It was this policy, together with the actions of the City Solicitor and City Manager's office, that Durkin argues caused an unreasonable and substantial interference with its business.

Further, Durkin contends that because it presented a liberty interest claim, and not a stigma-plus claim, the law does not preclude the jury's consideration of evidence that the City made defamatory statements about its business when such evidence is not the only evidence in support of its claim of a civil rights violation.  Durkin adduced testimony in support of the proposition that the City Council had a policy of abdicating its decision-making function by placing "abject trust" in the City Manager's office, and that City Council made uninformed official decisions that operated to adversely affect Durkin's ability to pursue its chosen profession.  (See D.I. 351 at 24-26 for citations to the transcript identifying the supporting testimony.)  Because the jury was instructed based on the evidence and returned a verdict consistent with the evidence and the instructions, the court declines to grant the City's request for judgment as a matter of law.

2.   Request for a New Trial

In support of its request for a new trial pursuant to Rule 59, the City argues that the jury instructions misstate the law and that the jury's damage award was shockingly excessive and duplicative of the compensatory contract damages.   In response, Durkin argues that the City waived any objection to the civil rights jury instructions by failing to interpose an objection during the prayer conferences, that the evidence supports the civil rights damage award, and that the award was not based on passion and prejudice.

The Federal Rules of Civil Procedure provide that all parties have the right to make objections on the record regarding both instructions and verdict sheets given to jurors.   *See* Fed. R. Civ. P. 51(c).   A party must make timely objections to both the form and the language of verdict forms before the jury retires to deliberations.   *Neely v. Club Med Mgmt. Servs.*, 63 F.3d 166, 200 (3d Cir. 1995).   Failure to object to a proposed verdict sheet at the time the jury received the sheet constitutes a waiver of this objection.   *Inter Med. Supplies, Ltd. v. Ebi Med. Sys.*, 181 F.3d 446, 463 (3d Cir. 1999).

Durkin correctly points out that the City never interposed an objection to the civil rights jury instructions.   (D.I. 351 at 29 citing Tr. 976-1019; 1022-1028; 1137-1182.)   Because the City did not make a timely objection to the 1983 jury instructions, it waives its right to challenge the instructions post-trial, and the court may only grant a new trial if the City proves that the court's actions rise to the level of "plain error."   *See Hurley,* 174 F.3d at 123-124.

The City contends that the jury instructions did not adequately apprise the jury of the applicable law because Jury Instructions 14 and 15 were inapplicable to the facts of this case.

The court disagrees. The court notes that the City does not dispute that the civil rights jury instructions are correct statements of law. Rather, the City's argument for a new trial is based on an overly broad reading of *Linan-Faye*. The City proffers that "where the government terminates or breaches one contract, it does not rise to the level of interfering with the right to pursue a chosen occupation." (D.I. 346 at 32 citing *Linan-Faye*, 49 F.3d at 932.) Put simply, this proposition is not the Third Circuit's holding in *Linan-Faye*. In the brief discussion of Linan-Faye's liberty interest claim, the Third Circuit held that it agreed with the Second Circuit's holding in the factually similar case in *S&D Maintenance Co. v. Goldin*, 844 F.2d 962 (2d Cir. 1988). The Third Circuit adopted the Second Circuit's reasoning that "although the consequential damages of an alleged brief may be severe, this fact alone cannot convert a contract claim into a deprivation of liberty." *Linan-Faye*, 49 F.3d at 932 (*citing S&D Maintenance*, 844 F.2d at 970). This adopted holding is not as narrow as the City posits.

Even a liberal reading of *Linan-Faye,* however, would not warrant a new trial in this case because Durkin's constitutional claim is distinguishable from Linan-Faye's. As stated earlier, Durkin's civil rights claim is not premised on the breach of its contract with the City. Durkin's action is a *Monell* claim that the City, through an official custom or policy, violated Durkin's constitutional right—that right being a liberty interest to pursue a chosen profession. *See, e.g., Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978). *Linan-Faye* was not a §1983 custom or policy case, and is therefore inapposite, in terms of the type of claim tried here.

The City also charges that the court improperly instructed the jury that it could award damages for "impairment to reputation" as damages available to Durkin for its liberty interest.

The court agrees with Durkin that the City waived objection to this argument by failing to timely object.  Further, the City fails to establish that the instruction rises to the level of "plain error." The City cites *Hill v. Borough of Kutztown*, for the proposition that "the only way Durkin can recover for the loss of its reputation is to satisfy the stigma-plus test."  455 F.3d 225, 236 (3d Cir. 2006).  Again, the City overreaches.  *Hill* concerns a claim for deprivation of a liberty interest in reputation.  *Id*. at 236 ("[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest.").  Durkin's liberty interest claim was a right to pursue its chosen profession. The jury instructions merely identified "impairment to reputation" as an element of the damages the jury could consider as being a result of the City's official custom and policy.

Last, the City argues that the award of $25 million in damages is excessive, not supported by the evidence, and was based on passion and prejudice.  The City does not deny Durkin's contention that, with regard to the amount of damages awarded, the City's argument in support of its motion for a new trial is based on the weight of the evidence.  As previously mentioned, where a motion for a new trial is based primarily on the weight of the evidence, the discretion of the trial court is limited.  *Klein v. Hollings*, 992 F.2d at 1290.  The court therefore reviews the record and the verdict to determine if the result represents a miscarriage of justice, or shocks the conscience.  The court is not persuaded of either in this case.

Notwithstanding the City's assertion that "there is no evidence to support any constitutional compensatory damage award to Durkin based upon the testimony submitted at trial," the record reflects, as one example, Michael Donald Durkin's uncontroverted testimony

regarding the nature and experience of Durkin as a contractor in earthmoving work, including work for the City of Philadelphia, Philadelphia International Airport, PennDOT, New JerseyDOT, DelDOT, Corps of Engineers, and U.S. Steel. (Tr. 239.) Mr. Durkin also testified that Durkin had previously completed projects five to six times bigger than the Newark reservoir project. (Id.) Additionally, Durkin adduced unrebutted testimony that it had not secured a job since the City's termination. (Tr. 302.) Given the foregoing, the court disagrees with the City's characterization of the evidence of compensatory damages related to the constitutional claim.

Further, the court is disinclined to conclude that, on balance, the weight of the evidence does not support the jury's verdict such that, without remittitur or a new trial, a miscarriage of justice would result. The jury found that the City was liable for violating Durkin's constitutional right to a liberty interest in its chosen profession. The jury heard evidence of Durkin's business generally, the type of contracts it completed, the value of the contract with the City compared to the value of previous contracts, and the fact that it has not obtained a job since the City's termination. Much of the testimony was uncontroverted, such that the court need not even assess credibility issues or conflicting testimony. The court will not, on this record, second-guess the collective wisdom of this jury and, in so doing, invade its province.[7] Therefore, the court declines the City's request for a new trial on the civil rights claim or remittitur of the damages award.

---

[7] The City also contends that the jury's award was based on passion and prejudice. The court finds no support for this theory. The jury was specifically charged with a sympathy instruction (D.I. 290 at 34) and there is no basis to conclude that the jury disregarded it. *See, e.g., Hurley v. Atlantic City Police Dept.*, 174 F.3d at 114 (rejecting "the argument that 'the size of the award alone is enough to prove prejudice and passion'") (internal citations omitted).

### E. Durkin's Conversion Claim

The City moves for judgment as a matter of law on Durkin's conversion claim. The City argues summarily that "there is no evidence about what materials or equipment were converted or their value, the nature of Durkin's alleged property interest, or any damages related to the alleged conversion." (D.I. 346 at 21.)

In response, Durkin points to the testimony of Michael Durkin, Archie Filshill, and Carol Houck, concerning the City's confiscation of materials left at the construction site. (D.I. 351 at 35.) The testimony to which Durkin points is consistent with the subject matter discussed in the City's Rule 50(a) motion. (D.I. 277 at 5-6) ("If Durkin is referring to materials that remained at the site after termination, all such materials had been ordered specifically for the project and the contract gave Newark the right to retain such materials."). In its Rule 50(a) motion, the City did not argue, as it does now in its Rule 50(b) motion, that "there was no evidence supporting the conversion claim;" rather, the City originally proffered the legal argument that it was entitled to retain the materials left at the site. (Compare D.I. 346 at 21 with D.I. 277 at 6) ("Newark was therefore lawfully justified in retaining the materials so cannot be liable for conversion.").

To succeed on its motion for judgment as a matter of law, the City must show that the jury's finding is unsupported by substantial evidence. In considering the City's motion, the court is restrained from weighing the evidence or determining the credibility of witnesses. *Lightning Lube,* 4 F.3d at 1166 (citation omitted). Based on the evidence presented, the jury found that Durkin was only entitled to $1 nominal damages. Viewing the evidence in the light most

favorable to Durkin, as the court must under the proper legal standard, and giving Durkin the advantage of every fair and reasonable inference, the court cannot conclude that there is insufficient evidence from which a jury reasonably could find liability. The court finds that the jury was entitled to give weight to Durkin's arguments and evidence in deciding that the City was liable for conversion. Accordingly, the court denies the City's renewed motion for judgment as a matter of law on the conversion claim.

### F. URS's Counterclaim – Attorneys' Fees[8]

The City seeks to limit the amount of attorneys' fees awarded to URS by the jury to $48,400, or 20% of the amount the City owed to URS in unpaid invoices. In support of its request, the City argues that the jury's award is contrary to Delaware law, and the City's contract with URS. In its terse discussion, the City fails to address how it preserved the legal issue now raised, and how it meets the standards set forth in Rules 50 or 59 for judgment as a matter of law or for a new trial. The City consented to the submission of the issue of attorneys' fees to the jury and failed to propose an instruction to guide the jury on any legal limitation on such a recovery, or otherwise object to the instruction given, prior to the jury's deliberation. As a result, the court will not accede to the City's request and thereby usurp the jury's finding, which was not lacking an evidentiary basis. Further, the City has not shown that it is entitled to a new trial on this record.

---

[8] By letter dated May 29, 2007, the City advised the court that the City and URS have entered into a settlement agreement resolving URS's claim relating to unpaid invoices for URS's engineering work on the City's reservoir. (D.I. 356.) The City consented to a judgment against it and in favor of URS, in the amount of $242,000 during the prayer conference on October 5, 2006, and the jury was instructed as to this fact. (D.I. 346-8 at A169; D.I. 290 at 37.) This issue is not disputed post-trial.

The court agrees with the parties, however, that the judgment contains an incorrect computation of the total amount owed to URS on its counterclaim against the City. The judgment shall be amended to reflect judgment in favor of URS Corporation and against the defendant, City of Newark, in the amount of $525,387.87 ($242,000 in unpaid invoices plus $283,387.87 in jury awarded attorneys' fees).

## V.     CONCLUSION

For the reasons discussed above, the court will reserve judgment on the issue of breach of contract damages pending further, narrow briefing, and oral argument if necessary, on the amount of damages owed to Durkin under Delaware common law. The court will deny the City's motions for judgment as a matter of law or for a new trial on the civil rights claim, the conversion claim, and attorneys' fees to URS.


/s/ Gregory M. Sleet
Dated:  September 17, 2007          CHIEF, UNITED STATES DISTRICT JUDGE

19

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

---

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF NEWARK, et al., | ) |
| | ) |
| Defendants | ) |
| | ) |
| and | )  C.A. No. 04-163 GMS |
| | ) |
| CITY OF NEWARK, et al., | ) |
| | ) |
| Third-Party Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| DONALD M. DURKIN CONTRACTING, INC., AND FEDERAL INSURANCE COMPANY, | ) |
| | ) |
| Third-Party Defendants | ) |

---

**<u>ORDER</u>**

For the reasons stated in the court's Memorandum Opinion of this same date, IT IS HEREBY

ORDERED that:

1. The City's motion for judgment as a matter of law on the civil rights claim is DENIED.

2. The City's motion for a new trial or remittitur on the civil rights claim is DENIED.

3. The City's motion for judgment as a matter of law on the conversion claim is DENIED.

4. The City's motion for judgment as a matter of law or for a new trial on the attorneys' fees

   awarded on URS's counterclaim is DENIED. The judgment shall be amended to reflect

judgment in favor of URS Corporation and against the defendant, City of Newark, in the amount of $525,387.87.

5.  The Court will reserve on the City's motion for judgment as a matter of law or for a new trial on the breach of contract damages pending further briefing as follows:

   a.  The City and Durkin shall file opening briefs two weeks from the entry of this Order.  Such opening briefs shall be no longer than ten pages in length, and in every other respect, consistent with the Local Rules regarding format.

   b.  The City and Durkin shall file responsive briefs five days after the date of filing of the opening briefs.  Such responsive briefs shall be no longer than five pages in length, and in every other respect, consistent with the Local Rules regarding format.  No reply briefs will be accepted.

   c.  Such opening and responsive briefs shall contain 1) a statement setting forth the legal standards for the measure of damages in the event of a breach of contract under Delaware common law; 2) the amount of damages due, measured pursuant to the Delaware common law rule, and based on the evidence in the record; and 3) any other argument necessary for the court's resolution of the pending motions so long as it is not inconsistent with the application of Delaware common law as the measure of damages for the breach of contract.


                                    /s/ Gregory M. Sleet_____
Dated:  September 17, 2007          CHIEF, UNITED STATES DISTRICT JUDGE

2