IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* <br><br> vs. <br><br> CITY OF NEWARK, et al., *Defendants* <br><br> and <br><br> CITY OF NEWARK, *Third-Party Plaintiff* <br><br> vs. <br><br> DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | CASE NO. 04-0163-GMS |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Intervenor* | |

**COURT ORDERED BRIEF OF PLAINTIFF
IN SUPPORT OF THE BREACH OF CONTRACT DAMAGE AWARD**

                                                POWELL, TRACHTMAN, LOGAN,
CARRLE & LOMBARDO, P.C.
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
*Attorneys for Plaintiff and Third Party
Defendant Donald M. Durkin Contracting*

Dated: October 1, 2007

#600385v1 3514-04

## TABLE OF CONTENTS

        Page

TABLE OF CITATIONS ................................................................................................... iii

NATURE AND STAGE OF PROCEEDINGS ....................................................................1

SUMMARY OF ARGUMENT ............................................................................................1

CONCISE STATEMENT OF FACTS ................................................................................1

ARGUMENT ........................................................................................................................1

I.     THE BREACH OF CONTRACT DAMAGE AWARD IS BEING REVIEWED UNDER A PLAIN ERROR STANDARD .................................................1

II.    JURY INSTRUCTION NO. 21 CORRECTLY STATED THE DELAWARE COMMON LAW MEASURE OF DAMAGES FOR BREACH OF CONTRACT ....................................................................................................................2

III.   THE JURY'S CONTRACT DAMAGES AWARD SHOULD NOT BE DISTURBED ......................................................................................................................3

     A.    Durkin Presented Uncontroverted Evidence of its Actual Losses Incurred in Completing Work on the Project Through the Date of Termination. ........................................................................................................3

     B.    Article 11 is Consistent with Delaware Common Law as a Means for Computing the Expenses Incurred by Durkin in Performing the Work as a Result of the City's Breach ................................................................5

     C.    The City's Proposed Measure of Damages for Breach of Contract Under Delaware Common Law is Contrary to Established Delaware Law .......................................................................................................................8

IV.   CONCLUSION ...................................................................................................................9

# TABLE OF CITATIONS

## Cases

*Blaine Economic Dev. Auth. v. Royal Electric Co.*, 520 N.W.2d 473 (1994) .............................. 8, 9

*Carlson, et al. v. Hallinan, et al.*, 925 A.2d 506 (Del. Ch. 2006) .................................................. 3

*Council of Unit Owners of Sea Colony E. v. Freeman Assoc., Inc., et al.*, 1989 Del. Super. LEXIS 183 (1989) .......................................................................................................... 5

*DeCarlo & Doll, Inc. v. Bershtein*, 1996 Conn. Super. LEXIS 1996 (1996); ................................ 8

*Delaware Limousine Service, Inc., v. Royal Limousine, Svc., Inc.*, 1991 Del. Super. LEXIS 130 (1991) .......................................................................................................... 2

*Dill v. Chastain*, 234 Ga. App. 770 (1998) .................................................................................... 8

*Diversified Packing and Dev. Corp. v. Dore, et al*, 48 Fed. Appx. 392 (3d Cir. 2002) ............. 8, 9

*E.I. DuPont de Nemours and Co., v. Pensak, et al.*, 679 A.2d 436 (Del. Sup. Ct. 1996) ............... 2

*Fendrick* 193 Fed. Appx. 138 (3d Cir. 2006) ................................................................................. 2

*I.A. Construction, et al. v. PaDOT*, 139 Pa. Commw. 509 (1991) ................................................ 8

*Johnson v. United States*, 520 U.S. 461 (1997) ............................................................................. 2

*McGee Constr. Co. v. Neshobe Develop., Inc.*, 156 Vt. 550 (1991) ........................................... 8, 9

*Orsini Top Soil, et al. v. Carter*, 2004 Del. C.P. LEXIS 10 (2004) ............................................... 2

*PaDOT v. Imbt, Inc.* 157 Pa. Commw. 573 (1993) ........................................................................ 8

*PaDOT v. Trumbull Corp.*, 99 Pa Commw. 557 (1986) ................................................................. 8

*Strassburger v. Earley*, 752 A.2d 557 (Del. Ch. 2000) ................................................................. 2

*Williams v. Kerns*, 153 Ga. App. 259 (1980) ............................................................................. 8, 9

## Other Authorities

Restatement (Second) of Contracts §347 .................................................................................. 3, 9

**NATURE AND STAGE OF PROCEEDINGS**

Donald M. Durkin Contracting, Inc. ("Durkin") files this Opening Brief addressing the damages Durkin is entitled to under Delaware common law as directed by the Court.

**SUMMARY OF ARGUMENT**

The tenets of Delaware common law with respect to the proper measure of damages for breach of contract claims fully support the methodology employed by Durkin in presenting evidence of its actual losses for the work performed on the Project. There was no legal error in presenting the cost of the work performed following the format contained in Article 11 of the Contract, particularly in light of the substantial uncontradicted evidence that Durkin's earthwork operations were severely impacted, both in terms of pricing and time, over the entire duration of Durkin's performance, and the fact that neighboring jurisdictions endorse the use of contract change order computations in connection with proving construction claims in breach of contract actions for impacted work in the public contracting sector. The City's contention that Delaware common law only permits recovery of the net profits on work not performed is incorrect, and the cases cited by the City in fact provide substantial support for the measure of damages sought by Durkin. For these reasons, the City is unable to sustain its burden of establishing plain error in connection with the jury verdict on the measure of damages for the breach of contract.

**CONCISE STATEMENT OF FACTS**

The relevant factual background is set forth in Durkin's Answering Brief in Opposition to the City of Newark Defendants (the "City's") Post Trial Motion. D.I. 353.

**ARGUMENT**

**I.   THE BREACH OF CONTRACT DAMAGE AWARD IS BEING REVIEWED UNDER A PLAIN ERROR STANDARD**

To establish plain error the City must establish: (1) this Court erred; (2) the error was obvious under the law at the time of review; and (3) the error affected substantial rights such as

- 1 -

the outcome of the proceeding. *See Johnson v. United States*, 520 U.S. 461, 467 (1997). The Third Circuit has repeatedly stated that the plain error review is discretionary and "should be exercised sparingly" and "only be invoked with extreme caution in the civil context." *Fendrick* 193 Fed. Appx. 138, 142 (3d Cir. 2006) (internal citations omitted).

## II. JURY INSTRUCTION NO. 21 CORRECTLY STATED THE DELAWARE COMMON LAW MEASURE OF DAMAGES FOR BREACH OF CONTRACT

In a breach of contract action, Delaware common law seeks to place the non-breaching party in the same position it would have been in had the contract been properly performed. *Orsini Top Soil, et al. v. Carter*, 2004 Del. C.P. LEXIS 10 (2004); s*ee also Strassburger v. Earley*, 752 A.2d 557 (Del. Ch. 2000); *Delaware Limousine Service, Inc., v. Royal Limousine, Svc., Inc.*, 1991 Del. Super. LEXIS 130 (1991). To that end, "the traditional measure of damages is that which is utilized in connection with an award of compensatory damages, whose purpose is to compensate a plaintiff for its proven, actual loss caused by defendants' wrongful conduct, and those compensatory damages are measured by the plaintiffs' 'out-of-pocket' actual loss." *Orsini*, 2004 Del. C.P. LEXIS 10, *4 (internal citations omitted).[1]

Delaware decisional law has embraced and followed the long-standing measure of damages for a breach of contract set forth in the Restatement (Second) of Contracts, Section 347. *See e.g. Orsini, supra.; E.I. DuPont de Nemours and Co., v. Pensak, et al.*, 679 A.2d 436 (Del. Sup. Ct. 1996). Section 347 provides:

> Subject to the limitations stated in §§350-53, the injured party has a right to damages based on his expectation interest as measured by
>
>> (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus
>>
>> (b) any other loss, including incidental or consequential loss, caused by the breach, less
>>
>> (c) any cost or other loss that he has avoided by not having to perform.

---

[1] This is exactly the law with which the jury was charged. Final Jury Instruction No. 21, A1-A2.

- 2 -

Restatement (Second) of Contracts §347. The Comments to Section 347 provide that "[s]ubject to the limitations stated in §§ 350-53, the injured party is entitled to recover for all loss actually suffered. ... The terms used to describe the type of loss are not, however, controlling, and the general principle is that all losses, however described, are recoverable." Restatement (Second) of Contracts §347, Comment (c).

In the case *sub judice,* Durkin presented uncontroverted and unchallenged evidence of its out of pocket costs incurred in completing work on the Project up through the date of termination, together with the consequential losses actually sustained as a direct and proximate result of the breach by the City. DUR-68, A3. Although Durkin would have been entitled under Delaware common law to present evidence and recover damages for the net profit on the remaining work under its Contract, Durkin elected not to present any such evidence.[2] Because the jury charge accurately reflected Delaware common law with respect to Durkin's entitlement to recover its actual losses, incidental and consequential damages, and was consistent with the evidence adduced at trial, the Court should not disturb the jury's verdict on the breach of contract damages.

### III. THE JURY'S CONTRACT DAMAGES AWARD SHOULD NOT BE DISTURBED

**A.    Durkin Presented Uncontroverted Evidence of its Actual Losses Incurred in Completing Work on the Project Through the Date of Termination.**

The jury heard substantial and uncontroverted evidence that Durkin's work was severely impacted, both in terms of the costs to perform the work as well as the time required to complete

---

[2] Durkin did not seek such damages because they were far too speculative. *See Carlson, et al. v. Hallinan, et al.,* 925 A.2d 506 (Del. Ch. 2006) (damages cannot be speculative). Initially, Durkin has consistently maintained that some design changes were necessary in order to complete the reservoir construction, and the unrebutted expert testimony established that the original design was not constructible or sustainable. A8-A13, Transcript ("Tr.") 863-865:7-8. Expert Thomas Ramsey testified *inter alia* that the original design was not constructible or sustainable. A19-A21, Tr. 343-344:20-17; 361-363:25-5; 364:16-18. Second, Durkin had no way of estimating what its costs would be to implement an unknown design change, which was compounded by the tremendous cost impact of the abnormal weather upon its earth-moving activities. For these reasons, Durkin concluded that it did not have a good faith basis for estimating any lost net profits with the degree of reasonable certainty required by Delaware law.

the work, as a result of the abnormal weather conditions.³  Michael Durkin testified that Durkin expected to have two (2) earth-moving operations operating so that the earth work could be completed in just three (3) months, but at the close of the first year, at best, Durkin had one (1) operation working at 25%. A7, A17, Tr. 265:5-6; 804:6-11. The unchallenged testimony revealed that the weather in the second construction season was equally devastating; Donald Durkin told the jury that by July 2003 he recalled there had not been two (2) days where the weather had not impacted the work. A18, Tr. 805:6-21.

The City and URS were on notice from the inception of the Project that the abnormal weather that was impacting Durkin's work. DUR-43, A37-A42.⁴ Moreover, the City and URS acknowledged that Durkin's work was severely impacted. City Manager Luft reported to City Council about "the extremely wet weather (in excess of 16 inches of rain over normal), the rather rough winter..." was affecting Durkin's work. DUR-43, A43. Perhaps the most telling confirmatory evidence came from URS Project Manager Mark Prouty, when he testified that he believed Durkin *was entitled to extra compensation and a time extension* because of the weather impacts. A14-A15, A22, Tr. 441-442:18-9; 867:13-21. Against this factual backdrop and the afore cited proper measure of breach of contract damages under Delaware common law, there can be no argument by the City that Durkin is somehow limited to recovery of the progress payments made by the City up through the date of improper termination as the full measure of Durkin's actual losses occasioned by the City's wrongful termination.

---

³ Michael and Donald Durkin testified that Durkin was importing over 100,000 gallons of water a day, six (6) days a week just to wet the soils; that Durkin purchased three (3) highway tankers just to haul water; and that needing to import tremendous amounts of water was "absolutely devastating" to Durkin's work. A4, Tr. 261:15-18; A16, Tr. 803:2-6; A5-A6, Tr. 263-264:25-3.

⁴ "Since the beginning of [2003] the weather has been horrendous in terms of the ability to perform construction. Our work has been severely hampered and delayed, as well that which has been performed, has been **at an extra cost**...[T]he restriction on construction activities will continue." DUR-43, A39. Durkin specifically informed URS that the severe weather **caused "extraordinary costs"**, that "since approximately December of 2002...[the] 6 to 7 month period was virtually lost in terms of project time" and that Durkin was "reserving the ability to provide further comment and address the impact of this." DUR-43, A40-A41.

- 4 -

### B. Article 11 is Consistent with Delaware Common Law as a Means for Computing the Expenses Incurred by Durkin in Performing the Work as a Result of the City's Breach

The Contract does not contain any provision that sets forth the nature, type and extent of any damages Durkin is or may be entitled to recover in a wrongful termination or other breach by the City. Further, Durkin has not located any Delaware case that is factually analogous *i.e.*, the wrongful termination of a public construction contract by a owner where the damages sought include the actual losses sustained on impacted work performed as of the date of termination. Under these circumstances, the Court is permitted to consider the measure of these damages afforded to contractors under similar circumstances in other public contracts in Delaware and its neighboring jurisdictions. *See Council of Unit Owners of Sea Colony E. v. Freeman Assoc., Inc., et al.*, 1989 Del. Super. LEXIS 183 (1989).

Delaware Department of Transportation[5] ("DelDOT") and the Pennsylvania Department of Transportation[6] ("PaDOT") both have within their standard specifications specific formulae for computing the allowable additional costs a contractor is entitled to receive for work that has been impacted due to factors beyond the control of the contractor. The methods used by DelDOT and PaDOT are substantially similar to the cost of work provisions of Article 11, which include the components costs of labor, materials and equipment expended in connection with the work, together with subcontractor costs and reimbursement of overhead costs as a percentage of each component cost category.[7] A33-A36, 11.4.

First and foremost, it is important to recognize that Durkin utilized the cost provisions of Article 11 **solely** for the limited purpose of determining the fair and reasonable costs incurred in connection with the impacted work. Durkin never contended that Article 11 was the

---

[5] http://www.deldot.gov/information/pubs_forms/manuals/standard_specifications/index.shtml
[6] ftp://ftp.dot.state.pa.us/public/pdf/408/408web/InsideCoverPage/insidecoverpage.pdf
[7] DelDOT Section 109.04 and PaDOT Section 110.03.

- 5 -

contractually prescribed measure of damages recoverable in any breach of contract action for wrongful termination by the owner. In keeping with Delaware common law, after computing the actual cost of the work performed, Durkin deducted all payments made to Durkin and its subcontractors by the City – which is certainly not within the framework of Article 11 – in order to arrive at the net loss to Durkin for completing work up through the date of termination, which is simply one element of the recoverable damages to which Durkin is entitled.

There are several reasons why the cost provisions of Article 11 are both reasonable and appropriate to utilize as the first step in establishing the net loss on the work performed by Durkin. The unrefuted testimony from Durkin and URS confirms that Durkin was entitled to additional compensation over and above the original Contract price for the impacts of the weather, dating from the inception of the Project through the date of termination. There is no principled legal or equitable basis for concluding that Durkin is limited to recovery of the progress payments for work performed as of the date of the City's wrongful termination, since that would operate as a forfeiture by Durkin and a windfall to the City resulting from the City's breach. Such a result would be a clear miscarriage of justice.

Against this backdrop, Durkin purposefully chose to follow the methodology of valuation embodied within Article 11. The categories of allowable costs to be reimbursed, which could be considered conservative in the context of recoverable costs in a breach of contract action, are the contractually agreed-upon measure of fair and reasonable costs that are consonant with accepted industry practices for reimbursement of costs in connection with impacted work. Since Delaware common law does not prescribe a specific or exclusive method for determining the actual loss sustained in performance as of the date of wrongful termination, employing the cost structure in Article 11 as the point of departure for establishing Durkin's actual loss for work

performed is in complete accord with Delaware common law, as well as accepted legal principles and industry practices.

The jury heard uncontroverted testimony of Durkin's actual out-of-pocket costs of the work performed. Specifically, Donald Durkin testified as to the payroll costs, the cost of materials, the cost of equipment utilized on the Project, the amounts invoiced by Durkin's subcontractors, and the amounts paid to other construction consultants retained by Durkin during the course of performing work on the Project. A23-A32, Tr. 891-892:19-21; 892-893:22-6; 893-897:7-11; 899-900:15-6. All of these damage numbers were accepted into evidence completely unchallenged by the City. Donald Durkin also explained that certain costs incurred by Durkin were not including in the computed costs of Durkin's work, namely payroll costs and other compensation of, *inter alia,* Durkin's principals, general managers, purchasing and contracting agents, clerks and other personnel employed for the general administration of the Project, as well as the costs associated with procuring surety bonding and insurances that were required by the terms of the Contract. A30-A31, Tr. 898-899:18-6; 899:7-14. From the amounts Durkin presented as the cost of its work prior to termination, Durkin subtracted all amounts received by the City, together with all amounts paid directly by the City to Durkin's subcontractors following the improper termination of Durkin's Contract. The calculus produced the net loss Durkin incurred, and was entitled to receive, for the work performed as of the date of improper termination.

The fact that Article 11 was envisioned by the parties as the mechanism for evaluating claims for additional compensation during the course of the Project in no way precludes its use by Durkin or the Court as a standard of reference for measuring the costs of completed work in a claim arising from the City's breach of contract. In fact, neighboring jurisdictions have expressly endorsed the contractor's utilization of the contract provisions relating to additional

compensation for impacted and/or changed work in establishing the appropriate measure of damages in a breach of contract claim within the public construction contract setting. *See I.A. Construction, et al. v. PaDOT*, 139 Pa. Commw. 509 (1991); *PaDOT v. Trumbull Corp.*, 99 Pa Commw. 557 (1986); *PaDOT v. Imbt, Inc.* 157 Pa. Commw. 573 (1993).[8]

    C.    **The City's Proposed Measure of Damages for Breach of Contract Under Delaware Common Law is Contrary to Established Delaware Law**

The City's statement that "the Delaware common law measure of damages for breach of an incomplete construction contract is the unpaid contract price minus the performance costs of the contract", is not only legally incorrect, but upon closer examination, the case law cited by the City does not stand for the proposition advanced by the City. D.I. 346, p.12. Initially, none of the cases cited to by the City applied Delaware common law, or purport to be referencing, let alone interpreting, Delaware common law. *See Dill v. Chastain,* 234 Ga. App. 770 (1998); *Williams v. Kerns,* 153 Ga. App. 259 (1980); *DeCarlo & Doll, Inc. v. Bershtein*, 1996 Conn. Super. LEXIS 1996 (1996); *Blaine Economic Dev. Auth. v. Royal Electric Co.,* 520 N.W.2d 473 (1994); *McGee Constr. Co. v. Neshobe Develop., Inc.,* 156 Vt. 550 (1991); and *Diversified Packing and Dev. Corp. v. Dore, et al,* 48 Fed. Appx. 392 (3d Cir. 2002).[9] Moreover, none of these cases are factually analogous to the instant litigation, and in each case the contractor was seeking damages for the net profits on work not performed, which is not at issue in the case at bar.

However, what is particularly noteworthy in these decisions is that they endorse and support the component of damages sought by Durkin for completed work, and do not limit the

---

[8] These decisions also point out that the owner's rejection and/or refusal to acknowledge the contractor's entitlement for additional compensation, whether by change order or otherwise, does not prevent the contractor from recovering damages based upon the contract provisions for computing amounts due for approved change orders.

[9] *Diversified* involved equipment located in California and a steel mill in Pennsylvania—that per the Third Circuit is a non-precedential case. Moreover, there is no indication that Delaware law was being applied and from the limited facts provided, there does not appear to be any nexus to Delaware.

contractor's scope of recoverable damages to the net profits on work not performed as of the date of termination. The Third Circuit in *Diversified* affirmed a jury instruction that, at least in terms of the expenses incurred by the contractor, is virtually identical to the contract damage instruction No. 21 presented to the jury in the instant matter. *Compare Diversified*, 48 Fed. Appx. at 399 to A1-A2. Of equal significance is that the courts in the *Diversified, DeCarlo* and *McGee* cases all cite to the Restatement (Second) of Contracts §347 as embodying the proper measure of damages in construction cases, which has been embraced by the Delaware courts. Finally, in the body of those decisions, the courts specifically address the contractor's entitlement to recover actual losses, including costs incurred up through the date of termination. *See Williams,* 153 Ga. App. at 266; *Blaine Economic Dev. Author.,* 520 N.W.2d at 478; *McGee,* 156 Vt. at 558, fn 1.

## IV. CONCLUSION

Durkin's presentation and proof of damages on the breach of contract claim was consistent in all respects with Delaware common law and the terms of the Contract. Utilizing the pricing framework in Article 11 for the limited purpose of computing the cost of the work completed as of the date of wrongful termination was not legally erroneous, and in fact made eminent sense based upon the wholesale cost impact to Durkin's work from commencement through improper termination. This cost method is also consistent with the prevailing methods for computing the costs of impacted work in public procurement projects for DelDOT and PaDOT, and as such reflects the accepted industry standards. In the cases cited by the City in its earlier filings, the courts all recognized the contractor's entitlement to be paid for the actual costs incurred up through the date of termination, which is all Durkin was seeking to recover. Accordingly, there is no basis for this Court vacate the verdict on the breach of contract damages and no need to conduct a hearing to take additional testimony with respect to Durkin's damages,

as the uncontroverted evidence was more than sufficient, both legally and factually, to sustain the jury's verdict.

           **POWELL, TRACHTMAN, LOGAN,**
           **CARRLE & LOMBARDO, P.C.**

           By:    /s/ Paul A. Logan
           Paul A. Logan
           Delaware Supreme Court ID #3339
           475 Allendale Road, Suite 200
           King of Prussia, PA 19406
           Telephone: 610-354-9700
           Telefacsimile: 610-354-9760
           *Attorneys for Plaintiff and Third Party*
           *Defendant Donald M. Durkin Contracting*

Dated: October 1, 2007