IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* <br><br> vs. <br><br> CITY OF NEWARK, et al., *Defendants* <br><br> and <br><br> CITY OF NEWARK, *Third-Party Plaintiff* <br><br> vs. <br><br> DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | CASE NO. 04-0163-GMS |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Intervenor* | |

**COURT ORDERED REPLY BRIEF OF PLAINTIFF IN SUPPORT OF THE THE BREACH OF CONTRACT DAMAGE AWARD**

                                      **POWELL, TRACHTMAN, LOGAN, CARRLE & LOMBARDO, P.C.**
                                      Paul A. Logan
                                      Delaware Supreme Court ID #3339
                                      475 Allendale Road, Suite 200
                                      King of Prussia, PA 19406
                                      Telephone: 610-354-9700
                                      Telefacsimile: 610-354-9760
                                      *Attorneys for Plaintiff and Third Party Defendant Donald M. Durkin Contracting*

Dated: October 5, 2007

## TABLE OF CONTENTS

**Page**

TABLE OF CITATIONS ........................................................................................................ iii

**NATURE AND STAGE OF PROCEEDINGS** ................................................................... 1

**SUMMARY OF ARGUMENT** ............................................................................................ 1

**ARGUMENT** ......................................................................................................................... 1

I. **DURKIN IS ENTITLED TO RECOVER ITS ACTUAL LOSSES INCURRED** ................................................................................................................ 1

    A. The City's Argument is At Odds With Delaware Law ..................................... 2

    B. The City's Argument is Not Supported by The Trial Record ........................... 2

II. **DURKIN IS ENTITLED TO RECOVER ITS OUT-OF-POCKET COSTS FOR THE IMPACTED WORK WITHOUT A SIGNED CHANGE ORDER** ............ 4

III. **DURKIN IS ENTITLED TO POST-TERMINATION COSTS AND EXPENSES** ............................................................................................................. 5

IV. **CONCLUSION** ........................................................................................................ 5

# TABLE OF CITATIONS

**Cases**

*Bill Zack Construction Co., Inc. v. Petroccitto,* 2000 Del. C.P. LEXIS 100 (2000) ...... 4

*Creative Builders, Inc. v. Jackson,* 2000 Del. C.P. LEXIS 90 (2000) ............ 4

*Diversified Packing v. Dore & Associates, et al.,* 48 Fed Appx. 392 (3d Cir. 2002) ...... 1

*Hanner v. Rice,* 2000 Del. Super. LEXIS 52 (2000) ............ 5

*I.A. Construction, et al. v. PaDOT*, 139 Pa. Commw. 509 (1991) ............ 4

*Olsen v. T.A. General Contractor, Inc.,* 907 A.2d 146 (Del. 2006) ............ 4

*Orsini Top Soil, et al. v. Carter,* 2004 Del. C.P. LEXIS 10 (2004) ............ 1

*PaDOT v. Imbt, Inc.* 157 Pa. Commw. 573 (1993) ............ 4

*PaDOT v. Trumbull Corp.,* 99 Pa Commw. 557 (1986) ............ 4

**Other Authorities**

Restatement (Second) of Contracts §347 ............ 2

## NATURE AND STAGE OF PROCEEDINGS

Donald M. Durkin Contracting, Inc. ("Durkin") files this Reply Brief addressing the damages Durkin is entitled to under Delaware common law as directed by the Court.

## SUMMARY OF ARGUMENT

The City of Newark Defendants (the "City") have failed to sustain their burden of demonstrating plain error in the measure of damages awarded by the jury. Not only has the City substantially misstated the law on the full measure of damages available to Durkin, but has also fundamentally misinterpreted the relevant terms of the Contract. Moreover, many of the City's arguments invite the Court to second-guess the factual predicate of the jury's findings, which is outside the province of the plain error analysis. For these reasons, the Court should leave the jury verdict undisturbed.

## ARGUMENT

### I. DURKIN IS ENTITLED TO RECOVER ITS ACTUAL LOSSES INCURRED

The City incorrectly posits that that Durkin's recovery for the City's breach of contract is limited to $421,579.43[1] as the measure of "expectation damages". That is not now, and has never been, the common law rule in Delaware for measuring breach of contract damages. *See Orsini Top Soil, et al. v. Carter,* 2004 Del. C.P. LEXIS 10 (2004). Rather, consistent with the provisions of Section 347 of the Restatement (Second) of Contracts, Durkin is entitled to recover its out of pocket costs incurred in completing the work up through the date of termination, along with incidental and consequential losses actually sustained which are directly related to the City's breach. The City's position relies upon a parsed and selective reading of the cited decisional law that cannot withstand any level of critical scrutiny.

---

[1] Ironically, in offering its own calculus of damages, the City commits the same error highlighted by the court in *Diversified Packing* and the other cases it cites, namely that the City fails to subtract the projected costs to complete the remaining work to reach a "net profit" amount. *See* City's Brief (D.I. 359); *Diversified Packing v. Dore & Associates, et al.,* 48 Fed Appx. 392 (3d Cir. 2002). Although irrelevant for purposes of the plain error analysis, it is a rather telling indication of the City's basic misunderstanding of the applicable measure of damages at issue.

- 1 -

A. **The City's Argument is At Odds With Delaware Law**

Succinctly stated, the City advances the notion that Delaware common law, together with the provisions of the Contract, limits Durkin's breach of contract damages for wrongful termination to recovery of "expectation damages", and requires the forfeiture of (1) acknowledged entitlement to additional costs incurred by Durkin for the impacted work up through the date of wrongful termination; (2) approved but unpaid progress payment applications submitted as of the date of wrongful termination; and (3) retainage amounts accrued to the date of wrongful termination. Such an assertion is legally and logically incongruous at every conceivable level.

As explained in Durkin's Opening Brief (D.I. 358), the cases cited by the City recognize the contractor's entitlement to recover its actual out-of-pocket costs for work performed. This is reinforced by Delaware courts following the Restatement (Second) of Contracts §347, which expressly permits recovery of not only the net profits on work not performed, but also "for all loss actually suffered ..." Restat. (Second) Contracts §347, comment (c). It is also of no consequence, and certainly not surprising, that the aggregate out-of-pocket costs of Durkin's performance exceeded the original Contract price; indeed, that is precisely what can be expected when significant additional cost impacts accumulate over the entire course of performance. The case law and the Restatement do not countenance any forfeiture of actual out-of-pocket costs by the non-breaching party, and Durkin respectfully suggests it would be plain error and a clear miscarriage of justice to reach that result in this case.

B. **The City's Argument is Not Supported by The Trial Record**

In several segments of its argument, it appears that the City is seeking judicial reconsideration of the jury's factual determinations based upon the City's unique interpretation of the evidence. Not only is that outside the bounds of plain error analysis, the City is simply wrong in its reasoning.

First, the City contends that Durkin did not satisfy its burden of proving damages for weather related delays. City's Brief (D.I.359) p. 7, fn. 8. This flies in the face of the unrefuted evidence that (1) URS's project manager testified that Durkin was *entitled* to extra compensation due to the weather impacts and (2) Donald Durkin testified (unchallenged on cross-examination) as to Durkin's out-of-pocket costs for impacted work. There is simply no room for reasoned debate or disagreement on this point.

Similarly, the City asks the Court to join in its deductive reasoning that Durkin was losing money, despite the fact that this conclusion is contrary to the record testimony, and utilize that platform as the basis for denying recovery on the breach of contract claims. That suggestion was raised by the City during its cross-examination of Donald Durkin, and soundly renounced. A45-A46a, Tr. 950-951:11-5; 952:4-8. As such, there is no principled basis upon which to substitute the argument of counsel for the evidence adduced at trial.

In what must be regarded as its most farfetched argument, the City wants to convert $275,926.79 of progress payment applications for work satisfactorily completed prior to the City's wrongful termination—and that were approved for payment by the City's Engineer—into "[a]ddtional change orders [ ] submitted but never approved…" Neither the Contract nor any aspect of Delaware law hints at this remarkable legal metamorphosis of progress payments into unrecoverable change orders. This also requires the City to retract its steadfast position at trial when it held out the unpaid progress payments as being "the only sum specifically owed under the Durkin Contract." A48, Tr. 1253:4-6.

Finally, it is not clear whether the City overlooked the accrued retainage in its account reconciliation, or purposefully excluded those amounts as part of the "non-recoverable" out-of-pocket costs incurred by Durkin. In either case, it illustrates yet another fundamental

- 3 -

shortcoming in the City's calculus of breach of contract damages, and adds to the Court's basis for rejecting the City's arguments and computations *in toto*.[2]

## II. DURKIN IS ENTITLED TO RECOVER ITS OUT-OF-POCKET COSTS FOR THE IMPACTED WORK WITHOUT A SIGNED CHANGE ORDER

Durkin respectfully suggests that nothing in the Contract or Delaware common law forbids Durkin from following the pricing structure in Article 11 in a breach of contract claim as reflecting one acceptable measure of actual costs incurred in performing the work up through the date of termination. The propriety of using Article 11 as a pricing frame of reference is compelling when viewed in the context of the tremendous cost impacts Durkin experienced from commencing work up through the date of termination. Further, it bears emphasizing that both the Contract and applicable law permits contractor claimants to seek recovery of costs computed under the contract change order provisions as a measure of cost entitlement, irrespective of whether the public owner has refused payment and/or denied a change order request.[3] *See* Contract, Section 9.11, A61; *see also Bill Zack Construction Co., Inc. v. Petroccitto,* 2000 Del. C.P. LEXIS 100 (2000); *Creative Builders, Inc. v. Jackson,* 2000 Del. C.P. LEXIS 90 (2000); *accord I.A. Construction, et al. v. PaDOT,* 139 Pa. Commw. 509 (1991).; *PaDOT v. Trumbull Corp.,* 99 Pa Commw. 557 (1986); and *PaDOT v. Imbt, Inc.* 157 Pa. Commw. 573 (1993).

---

[2] Durkin presented unchallenged testimony that at the time of termination the accrued retainage totaled $499,379.79. A49-A60, DUR9.

[3] As it relates to unsigned/unprocessed change orders, the City misstates the holding and import of *Olsen v. T.A. General Contractor, Inc.,* 907 A.2d 146 (Del. 2006). The *Olsen* court did not find, either as a general or specific rule, that in Delaware unsigned change orders are not recoverable. The court in *Olson* merely found that under an abuse of discretion standard, the trial court did not err in holding that the change orders submitted by the contractor – under the facts in that case – did not qualify for payment under the terms of the contract, and that the evidence did not support recovery of additional claimed costs under a *quantum meruit* analysis. In stark contrast to the case *sub judice*, there the evidence revealed that Olson's contractor had never provided notice of his intent to claim the additional costs, but submitted those costs in the aftermath as a retaliatory response to the owner's failure to process a scheduled draw, and the owner's architect testified at trial that only a small fraction of the claimed costs qualified for payment as extra work. From this, it is clear there is no legal, factual or equitable symmetry between *Olsen* and the instant case.

### III. DURKIN IS ENTITLED TO POST-TERMINATION COSTS AND EXPENSES

Section 17.5 of the Contract clearly allows for recovery of unpaid consultant/professional/expenses including attorneys' fees and expenses.[4] A62 Durkin's evidence that it incurred these costs was completely unassailed by the City. With respect to the other costs awarded by the jury, it seems the City is urging the Court to regard the actual out-of-pocket losses Durkin recounted at trial as intangible and speculative costs, *e.g.*, loss of customers, loss of business, good will and future profits. A44, A47, Tr. 915:14-17; 1165:9-10. Durkin is at a complete loss as to how the City justifies this legal and factual transfiguration, since there is nothing in the record that comes close to supporting their thesis. What Mr. Durkin did recount in detail were the tremendous lengths Durkin went to, and the costs associated with those efforts, in attempting to mitigate its damages. *See Hanner v. Rice,* 2000 Del. Super. LEXIS 52 (2000) (duty to mitigate). These post-termination costs are not in any sense speculative, but are the actual costs incurred as part of readily foreseeable damages flowing directly from the breach that are fully recoverable. *See* Restat. (Second) of Contracts §347, comment C.

### IV. CONCLUSION

For all the reasons stated in Durkin's Opening Brief and this Reply Brief, Durkin respectfully requests that the Court find that the City has not met its burden of establishing plain error in connection with the proper measure of damages on the breach of contract claim, and accordingly all of the City's post trial motions on the contract damages must be denied.

POWELL, TRACHTMAN, LOGAN,
CARRLE & LOMBARDO, P.C.

By:  /s/ Paul A. Logan
     Paul A. Logan

---

[4] As will be explained more fully in Durkin's motion to supplement its attorneys fee claim, Section 17.5 of the Contract allows for recovery of attorneys fees in all court proceedings. As such, Durkin expressly reserves the right to supplement its fee claim through the pendency of the appeal process.