**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DONALD M. DURKIN CONTRACTING, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 04-0163-GMS |
| CITY OF NEWARK, HAROLD F. GODWIN, JOHN H. FARRELL, IV, JERRY CLIFTON, KARL G. KALBACHER, DAVID J. ATHEY, FRANK J. OSBORNE, JR., and CHRISTINA REWA, | ) ) ) ) ) ) ) | |
| Defendants/ Third-Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| FEDERAL INSURANCE COMPANY, | ) ) | |
| Third-Party Defendant. | ) ) | |
| ------------------------------------------------ | ) ) | |
| CITY OF NEWARK, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| URS CORPORATION, | ) ) | |
| Third-Party Defendant. | ) | |

**CITY OF NEWARK'S ANSWERING BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION IN SUPPORT OF ATTORNEYS'
FEES, COSTS AND POST-JUDGMENT INTEREST**

CONNOLLY BOVE LODGE & HUTZ LLP
Collins J. Seitz, Jr. (Bar No. 2237)
Max B. Walton (Bar No. 3876)
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

*Attorneys for Defendants, City of Newark,*
*Harold F. Godwin, John H. Farrell, IV, Jerry*
*Clifton, Karl G. Kalbacher, David J. Athey,*
*Frank J. Osborne, Jr., and Christina Rewa*

Dated:  November 14, 2007

## TABLE OF CONTENTS

**PAGE**

NATURE AND STAGE OF PROCEEDINGS .................................................. 1

SUMMARY OF ARGUMENT ..................................................................... 2

STATEMENTS OF FACTS ......................................................................... 3

A.    The Pretrial Order ..................................................................... 3

B.    The Court Grants Durkin's Partial Motion For Summary Judgment .................... 3

C.    The Court Dismisses The City's Counterclaim As A Discovery Sanction ............ 3

D.    Durkin Drops Four Claims At Trial ........................................................ 4

E.    Durkin Is Awarded Attorneys' Fees As Part Of Its Breach Of Contract Claim .......................................................................................... 4

F.    Durkin Identifies Its Constitutional Claim On The Fifth Day Of Trial .................. 5

ARGUMENT ............................................................................................ 7

A.    A Fee Award Under § 1988 Must Be Supported And Reasonable ....................... 7

B.    A Fee Reduction Is Warranted Because Durkin's Counsel Devoted Substantial Time To The Pendent State Law Claims ............................................. 8

    1.    The State Law And Civil Rights Claims Are Not Factually Or Legally Connected .................................................................... 9

    2.    Durkin Should Not Be Entitled To Fees Incurred Prior To Its Identification Of The Underlying Basis Of The Constitutional Claim ................................................................................ 10

C.    Durkin Is Not Entitled To Double Recovery ...................................... 12

D.    The Attorneys' Fees Sought Are Unreasonable ................................... 13

    1.    Mr. Logan's Time Prior To The City's Termination Of The Construction Contract Should Be Excluded ........................................ 14

    2.    The Billing For Pre-Trial Activity Is Unreasonable ............................... 14

    3.    The Billing For Post-Trial Activity Is Unreasonable .............................. 16

E.    Durkin is Not Entitled To An Enhancement Of Its § 1988 Award Based Upon Alleged Discovery Violations By The City's Former Counsel ................. 18

F.    Durkin Is Not Entitled To A Delay Multiplier ..................................... 18

    1.    Durkin Has Offered No Evidence Of Any Delay In Payment ................. 19

2.    Durkin Has Not Met Its Burden Of Establishing A Multiplier For Superior Representation ........................................................................ 20

3.    There Is No Risk That Competent Counsel Could Not Be Attracted ....... 21

G.    The Lodestar Amount Should Be Adjusted Downward ...................................... 21

CONCLUSION ............................................................................................................. 23

# TABLE OF CITATIONS

**CASES**                                                         **PAGE**

*Albertson v. Winner Automotive*,
    No. Civ.A. 01-116, 2004 WL 2435290 (D. Del. Oct. 27, 2004) ................................ 19

*Alizadeh v. Safeway Stores, Inc.*,
    910 F.2d 234 (5th Cir. 1990) ................................................................................... 21

*Barrett v. West Chester University*,
    No. 03-CV-4978, 2006 WL 859714 (E.D. Pa. Mar. 31, 2006) ............................ 21, 22

*Becker v. ARCO Chem. Co*.,
    15 F. Supp. 2d 621 (E.D. Pa. 1998) .................................................................... 19, 20

*Blum v. Stenson*,
    465 U.S. 886 (1984) ............................................................................................. 7, 12

*Bucceroni v. City of Philadelphia*,
    No. 03-6371, 2006 WL 3420298 (E.D. Pa. Nov. 27, 2006)..................................... 7, 8

*Butler v. Frett*,
    C.A. No. 99-4367, 2006 WL 1806412 (D. N.J. June 29, 2006) ............................ 7, 12

*Coalition for Basic Human Needs v. King*,
    691 F.2d 597 (1st Cir. 1982).................................................................................... 18

*Coalition to Save Our Children v. State Bd. of Educ.*,
    143 F.R.D. 61 (D. Del. 1992) .................................................................................. 16

*Contractors Ass'n v. City of Philadelphia*,
    No. 89-2737, 1996 WL 355341 (E.D. Pa. June 20, 1996) .......................................... 8

*Donald M. Durkin Contracting, Inc. v. City of Newark*,
    C.A. No. 04-163, 2006 WL 2724882 (D. Del. Sept. 22, 2006).................................... 3

*Donald M. Durkin Contracting, Inc. v. City of Newark*,
    C.A. No. 04-163, 2007 WL 2710451 (D. Del. Sept. 17, 2007).......................... passim

*Eaves v. County of Cape May*,
    239 F.3d 537 (3d Cir. 2001) ................................................................................... 17

*Evans v. Port Auth. of N.Y. & N.J.*,
    273 F.3d 346 (3d Cir. 2001) ..................................................................................... 7

*Fletcher v. O'Donnell*,
    729 F. Supp. 422 (E.D.Pa. 1990) ............................................................................ 20

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .............................................................................................. 8, 13

*Hughes v. Repko*,
    578 F.2d 483 (3d Cir.1978) ..................................................................................... 21

*Institutionalized Juveniles v. Secretary of Public Welfare*,
    758 F.2d 897 (3d Cir. 1985) .................................................................................... 19

*Keenan v. City of Philadelphia,*
   983 F.2d 459 (3d Cir. 1992) ................................................................ 19

*Knighton v. Watkins,*
   616 F.2d 799-800 (5th Cir.1980) ...................................................... 21

*Loughner v. Univ. of Pittsburgh,*
   260 F.3d 173 (3d Cir. 2001) ............................................................... 13

*Maher v. Gagne,*
   448 U.S. 122 (1980) ............................................................................. 8

*Mallinson-Montague v. Pocrnick,*
   224 F.3d 1224 (10th Cir. 2000) .......................................................... 7

*McKnatt v. Delaware,*
   369 F. Supp.2d 521 (D. Del. 2004) ..................................................... 8

*Northeast Women's Center v. McMonagle,*
   889 F.2d 466 (3d Cir. 1989) ............................................................... 9

*Pennsylvania v. Delaware Valley Citizens Council for Clean Air,*
   478 U.S. 546 (1986) ....................................................................... 7, 20

*Public Interest Group of New Jersey v. Windall,*
   51 F.3d 1179 (3d Cir. 1995) ........................................................... 8, 13

*Robinson v. Kansas,*
   506 F. Supp.2d 488 (D. Kan. 2007) .................................................... 9

*Rode v. Dellarciprete,*
   892 F.2d 1177 (3d Cir. 1990) ...........................................8, 13, 18, 19

*Roth v. Green,*
   466 F.3d 1179 (10th Cir. 2006) ........................................................ 21

*Sanders v. United States Department of Housing and Urban Development,*
   No. Civ. A. 88-1261, 2005 WL 2416355 (W.D. Pa. Sept. 30, 2005) ........................... 7

*State ex rel. A.L. v. East Orange Bd. Of Ed.,*
   C.A. No. 05-5498, 2006 WL 3731209 (D.N.J. Dec. 18, 2006) ................................... 13

*Student Public Interest Group v. AT&T,*
   842 F.2d 1436 (3d. Cir. 1987) ........................................................... 19

*Turner v. District of Columbia Board of Elections and Ethics,*
   354 F.3d 890 (D.C. Cir. 2003) ........................................................... 18

*Willis v. Georgia Department of Juvenile Justice,*
   C.A. No. 7:05-cv-59, 2007 WL 2782509 (M.D. Ga. Sept. 21, 2007) ........................... 8

**STATUTES**

42 U.S.C. § 1988 .................................................................... passim

## NATURE AND STAGE OF PROCEEDINGS

On March 16, 2004, Plaintiff Donald M. Durkin Contracting, Inc. ("Durkin") filed a seven count complaint against the City of Newark ("City"), alleging violation of Durkin's rights to procedural and substantive due process (Count I), interference with existing and prospective contracts (Count II), defamation and trade libel (Count III), conversion (Count IV), fraud and misrepresentation (Count V), common law conspiracy (Count VI), and breach of contract (Count VII). The jury returned a verdict in favor of Durkin awarding $11.6 million for its breach of contract claim, $25 million for its constitutional claim for breach of a liberty interest to pursue an occupation (a claim first identified at trial), and $1.00 for conversion. Durkin voluntarily dismissed the other claims prior to or during trial.

On January 26, 2007, Durkin filed its revised post-trial Opening Brief in Support of Motion in Support of Attorneys' Fees, Costs, and Post-Judgment Interest. D.I. 343. Briefing on Durkin's Motion was stayed pending consideration of the City's post-trial Motion. D.I. 350. On September 17, 2007, this Court upheld the jury's civil rights damage award, but requested supplemental briefing regarding the proper common law measure of damages for breach of contract. *See Donald M. Durkin Contracting, Inc. v. City of Newark,* C.A. No. 04-163, 2007 WL 2710451, at *6-8 (D. Del. Sept. 17, 2007) (D.I. 357).

Following the Court's September 17, 2007 opinion, and as required by the February 13, 2007 Order (*see* D.I. 350), the parties conferred on a schedule, and the Court entered a Stipulated Order for briefing on Durkin's Motion. D.I. 361. Durkin filed

1

a supplemental Motion for attorneys' fees and costs on October 12, 2007. This is the City's brief in opposition to Durkin's Motion.

## SUMMARY OF ARGUMENT

Durkin's request for over $1.3 million in attorneys' fees and costs should be denied or substantially reduced for the following reasons:

1.      Durkin's civil rights claim (alleged violation of a liberty interest for Durkin to pursue its chosen profession) was first identified on the fifth day of trial. Awarding Durkin the requested fees and expenses would reward Durkin for its tardiness and for time that could not have been spent litigating a claim first identified at trial.

2.      According to the Court's post-trial ruling, the civil rights award does not arise from the same nucleus of facts as the breach of contract claim. Durkin should not be compensated for litigating the unrelated breach of contract claim.

3.      The jury already awarded Durkin $1.7 million in attorneys' fees for its breach of contract claim. To the extent that the breach of contract award is sustained following post-trial motions, Durkin is not entitled to double recovery for attorneys' fees.

4.      The fee request is unreasonable because it seeks fees unrelated to the litigation and seeks excessive fees for pre-trial activities.

5.      The hours spent are unreasonable because approximately 35% of all fees and costs were allegedly incurred post-verdict, and Durkin has not established the necessary elements to recover a delay multiplier.

2

## STATEMENTS OF FACTS

This case involves a dispute between the City and Durkin over the construction of a municipal reservoir. Because the Court is already familiar with the facts, only the facts pertinent to this motion will be set forth in this brief.

### A.    The Pretrial Order

On August 22, 2006, the parties filed a pre-trial order. D.I. 150. In Exhibit G of the pretrial order, Durkin sought $1,420,459.89 in attorneys' fees and expenses for the breach of contract claim, described as follows – "Consultants/Professional/Claims Expenses to date (includes [sic] counsel fees for DMD and Federal)." B6. Also as part of Exhibit G, the City set forth its claim for damages caused by Durkin's breach of contract, which totaled $6,533,956. B7.

### B.    The Court Grants Durkin's Partial Motion For Summary Judgment

On September 22, 2006, this Court entered partial summary judgment in favor of Durkin and against the City, holding that the City breached the construction contract for the reservoir by failing to provide seven days notice of termination. *Donald M. Durkin Contracting, Inc. v. City of Newark*, C.A. No. 04-163, 2006 WL 2724882, at *9 (D. Del. Sept. 22, 2006) (D.I. 257); *see also Donald M. Durkin Contracting, Inc.*, 2007 WL 2710451, at *5 (D.I. 357) ("it is because of the City's failure to provide the required seven-day notice that there is an outstanding question of damages due to the City's breach.").

### C.    The Court Dismisses The City's Counterclaim As A Discovery Sanction

On the first day of trial, the Court heard argument on Durkin's Motion for discovery sanctions against the City. On the second day of trial, the Court granted

Durkin's motion for discovery sanctions against the City and its former counsel.  While recognizing "that the City's counterclaim for breach of contract is meritorious," the Court dismissed the City's $6,533,956 counterclaim as a sanction for discovery violations.  *See* September 28, 2006 Order at pp. 10-11, D.I. 268.  The trial proceeded on Durkin's claims for breach of contract damages and not on the City's counterclaim.

### D.     Durkin Drops Four Claims At Trial

At trial, Durkin voluntarily discontinued Counts II, III, IV, and VI of the Complaint.  As stated at pages 917-20 of the trial transcript (B11-14):

> [W]e intend to voluntarily discontinue a number of claims . . . we have studied the applicable law . . . [a]nd we believe that some of those claims are no longer well taken. . . . [A]t the end of the day, I believe that you will see that we will have a contract claim. . . we will have the civil rights claim . . . and there is the conversion claim. . .  (B11-12; Tr. 917-18).

> All of the other tort claims, having researched now these issues, we believe, under the immunity statute as it is written in Delaware, that regardless of whether they are intentional torts or otherwise, it is an absolute immunity . . . (B12; Tr. 918).

> In fact, Your Honor, at this time, we move to voluntarily discontinue the claim of defamation, trade libel – they are, in fact Count II, which is interference [sic] with contracts, Count III, defamation, Count IV, common law conspiracy [Count VI], we would discontinue those voluntarily at this time, Your Honor. (B14; Tr. 920).

Following withdrawal of four claims during trial, Durkin only pursued three claims.

### E.     Durkin Is Awarded Attorneys' Fees As Part Of Its Breach Of Contract Claim

Durkin's damage testimony centered on Durkin's "Itemized Statement Of Damages" (DUR 68) (B15), which was provided to the City for the first time at trial.  *See*

4

B10; Tr. 884.  In Durkin's "Itemized Statement Of Damages," Durkin sought recovery, under a breach of contract theory, for "unpaid counsel fees of DMD and Federal incurred through 09/29/06 and estimated through 10/02/06" in the amount of $1,740,751.38. DUR-68; B15.  The attorneys' fees were ultimately awarded to Durkin by the jury, as the jury awarded Durkin the exact damages requested under Durkin's Itemized Statement of Damages.  *See Donald M. Durkin Contracting, Inc.*, 2007 WL 2710451, at *4 (D.I. 357) ("There is no dispute that the jury's findings were based on Durkin's Itemized Statement of Damages, which tied the damages requested to Article 11 of the Construction Contract.  (Compare D.I. 352 at A255, Statement with D.I. 291, Verdict Form.)").  The jury has therefore already awarded Durkin some of the counsel fees requested in this Motion.

### F.      Durkin Identifies Its Constitutional Claim On The Fifth Day Of Trial

Prior to trial and despite being pressed by the City to do so, Durkin never identified any constitutional right that the City allegedly violated.  It was not until October 2, 2006 – after completion of the fifth day of trial – that Durkin identified the specific constitutional right at issue – in a Motion to preclude the City's affirmative defenses.  *See* D.I. 271 (Durkin's Motion to preclude additional defenses by the City at p. 6); *see also* B17; Tr. 933 ("In the brief which plaintiffs filed about 10:00 o'clock last night, they for the first time attempt to identify what their specific constitutional claim is."); D.I. 276 (City's answering brief to Durkin's motion to preclude additional defenses at 6, stating that no constitutional right was identified before the fifth day of trial).

The Court allowed Durkin to amend the pleadings at trial to allow Durkin's newly identified constitutional claim to go to the jury.  In so holding, the Court stated:

Durkin's identification of a constitutional right. The city correctly points out that it is only recently, as recent as Docket Item 272, actually, that Durkin has identified the specific constitutional right at issue. However, again, pursuant to Rule 15(b), the Court will allow Durkin to amend to specifically identify the alleged deprivation, constitutional deprivation, which, as I understand it, is a deprivation of the right to pursue one's profession.

B19; Tr. 1022.

**ARGUMENT**

**A.      A Fee Award Under § 1988 Must Be Supported And Reasonable**

A civil rights litigant who is a prevailing party at trial is normally entitled to an award of attorneys' fees and expenses.  The fees and expenses requested, however, must be both adequately supported and reasonable. A fee must be reasonable because fee shifting statutes, such as 42 U.S.C. § 1988, "were not designed as a form of economic relief to improve the financial lot of attorneys nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." *Sanders v. United States Department of Housing and Urban Development*, No. Civ. A. 88-1261, 2005 WL 2416355, at *3 (W.D. Pa. Sept. 30, 2005) (quoting *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 565 (1986)).

To assure that the fee awarded is reasonable, Durkin must keep and produce "meticulous time records" which "'reveal ... all hours for which compensation is requested and how those hours were allotted to specific tasks.'" *Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1234 (10th Cir. 2000).  Once submitted, the District Court must conduct "a thorough and searching analysis" of the time records, and must carefully review the billing records supporting the fee request.  *Bucceroni v. City of Philadelphia*, No. 03-6371, 2006 WL 3420298, at *2 (E.D. Pa. Nov. 27, 2006); *Evans v. Port Auth. of N.Y. & N.J.,* 273 F.3d 346, 362 (3d Cir. 2001) (same).

A reasonable attorneys' fee is one that is "adequate to attract competent counsel" but does not "produce windfalls."  *Butler v. Frett*, C.A. No. 99-4367, 2006 WL 1806412, at *7 (D. N.J. June 29, 2006) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).  "The party seeking attorney's fees has the burden to prove that its request for attorney's fees is

7

reasonable. To meet its burden, the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *see also Bucceroni,* 2006 WL 3420298, at *2.

The Court starts the evaluation by multiplying the "number of hours reasonably expended on the litigation by a reasonable hourly rate," to reach a product called the lodestar. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *McKnatt v. Delaware*, 369 F. Supp.2d 521, 524 (D. Del. 2004). After the Court determines the "lodestar," its discretion comes into play and it can adjust the fee for a variety of reasons. *Public Interest Group of New Jersey v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995). Where the circumstances warrant, the lodestar must be adjusted downward to reach the ultimate goal of ensuring that any fees awarded under this statute be "reasonable." *See Hensley*, 461 U.S. at 433.

**B.     A Fee Reduction Is Warranted Because Durkin's Counsel Devoted Substantial Time To The Pendent State Law Claims**

Attorneys' fees are not awarded under § 1988 to plaintiffs pursuing successful state law claims. *Willis v. Georgia Department of Juvenile Justice*, C.A. No. 7:05-cv-59, 2007 WL 2782509, at *2 (M.D. Ga. Sept. 21, 2007); *Contractors Ass'n v. City of Philadelphia*, No. 89-2737, 1996 WL 355341, at *7 (E.D. Pa. June 20, 1996) ("Section 1988(b), however, does not provide for such an award [of attorneys' fees] in actions to enforce civil rights under state statutes."). An exception exists where the pendent state law claim (such as the breach of contract and conversion claims asserted by Durkin here) arises out of common nucleus of operative fact. *Maher v. Gagne,* 448 U.S. 122, 133, n.15 (1980). However, this rule is only applied if the civil rights claim and state law claims are interconnected. Indeed, if the civil rights claims and the state law claims are

not factually and legally interconnected, and where the different legal claims require proof of different facts, there is no fee award under § 1988 for the state law claims. *Robinson v. Kansas*, 506 F. Supp.2d 488, 498-99 (D. Kan. 2007); *Northeast Women's Center v. McMonagle*, 889 F.2d 466, 476 (3d Cir. 1989) ("the fee award must exclude compensation for hours spent on unsuccessful claims or on distinct successful claims for which there is no statutory fee-shifting authority.").

      1.      <u>The State Law And Civil Rights Claims Are Not Factually Or Legally Connected</u>

Durkin is not entitled to recover attorneys' fees for the time spent pursuing its breach of contract claim and the other state law claims because those state law claims are not factually interconnected with the civil rights claim.   According to this Court's September 17, 2007 decision:

> Durkin's civil rights claim is not premised on the breach of its contract with the City. Durkin's action is a *Monell* claim that the City, through an official custom or policy, violated Durkin's constitutional right-that right being a liberty interest to pursue a chosen profession.

*Donald M. Durkin Contracting, Inc.*, 2007 WL 2710451, at *7 (D.I. 357).[1]

Durkin's breach of contract claim was premised on: (1) whether the City breached the contract by failing to provide seven days notice of termination; (2) whether the City breached the contract by inappropriately terminating Durkin for cause; and (3) the damages resulting from the City's breach.  Similarly, the conversion claim required proof of conversion of the City's alleged misappropriation of Durkin's property.

---

[1]     The City respectfully disagrees with the Court's post-trial ruling that Durkin had a liberty interest to pursue its chosen occupation and therefore stated a *Monell* claim, but the City's position does not affect its opposition to Durkin's request for fees and expenses.

According to the Court's post-trial decision, Durkin's civil rights claim was premised on a completely different set of facts:

> Specifically, Durkin contends that it does not argue now, nor did it try, a claim that it had a constitutional right, or "liberty interest," to the specific Construction Contract with the City. Durkin posits that it presented uncontested evidence of an official City policy of the City Council abdicating its decision-making function through a wholesale delegation to the City Manager and his Staff, who in turn carried out a series of actions that brought about the financial deterioration of Durkin and ultimately put it out of business. (D.I. 346 at 23.) It was this policy, together with the actions of the City Solicitor and City Manager's office, that Durkin argues caused an unreasonable and substantial interference with its business.

*Donald M. Durkin Contracting, Inc.*, 2007 WL 2710451, at *6 (D.I. 357).

As the Court has characterized it, the facts required to prove the civil rights claim relate to the "custom and policy" of the City under *Monell*. These facts are unrelated to the breach of contract claim (which turned on whether the City gave seven days notice of termination) and the conversion claim (which turned on whether the City converted Durkin's property). Because the state law claims were premised on different law and different facts than required to prove the civil rights violation, fees cannot be awarded for the non-fee claims of breach of contract and conversion. Therefore, only the fees directly attributable to the civil rights claim should be awarded to Durkin under § 1988.

2. <u>Durkin Should Not Be Entitled To Fees Incurred Prior To Its Identification Of The Underlying Basis Of The Constitutional Claim</u>

It is undisputed that while Durkin pled a constitutional claim in its Complaint, Durkin did not identify the specific constitutional claim at issue until after testimony was completed on the fifth day of trial. B17-22; Tr. 933, 1022; *see also infra*. pp. 5-6.

Durkin should not be permitted to recover attorneys' fees from the time before the constitutional claim was identified.

The timesheets submitted by Durkin reveal that its primary focus in the litigation was the breach of contract claim and not the civil rights claim. Prior to trial, lead counsel's timesheets reveal only a single reference to the § 1983 claim. *See* D.I. 309; A293. Mr. Bolger's timesheets also are limited to a single reference to the constitutional claims, and that reference was on October 1, 2006 – during trial. D.I. 309; A506. Ms. Flora's sheets show that she briefly researched constitutional issues on May 30, June 13, and July 3, 2006 (D.I. 309; A513, A516, A535), and revisited the issue on August 10 and 11 to draft a jury instruction (D.I. 309; A572-73), and again revisited the issue on September 4, 2006 to research the punitive damages issue – a claim which was ultimately dropped. D.I. 309; A566. The only other pre-trial references to the civil rights claim are entries of Mary J. Pederson from early 2004. D.I. 309; A629-30, A632. These entries reveal that the research did not relate to an alleged liberty interest in the right to hold an occupation, but instead related to whether Durkin had a property right in a government contract.

The timesheets submitted by Durkin's attorneys demonstrate that there was virtually no work done prior to trial on the § 1983 claim. Because Durkin never identified the alleged source of the attorneys' fee claim until the fifth day of trial, Durkin should not be awarded attorneys' fees from the outset of the litigation. If awarded at all, the Court should limit the award to the time entries where the constitutional claims are specifically noted.

C.     **Durkin Is Not Entitled To Double Recovery**

Durkin's fee petition should also be denied or reduced because it would result in an impermissible windfall to Durkin – the jury already awarded Durkin fees for breach of contract. *See Butler v. Frett*, 2006 WL 1806412, at *7 (attorneys' fee awards should not result in a windfall to the prevailing party); *see also Blum*, 465 U.S. at 897.   As established by the pretrial order (B6), and by Durkin's "Itemized Statement Of Damages" (DUR-68, B15), Durkin sought attorneys' fees as a component of its breach of contract claim.   Ultimately, Durkin was awarded attorneys' fees and costs of $1,740,751.79, which purportedly included attorneys' fees and costs of Durkin and its surety (Federal Insurance Company) estimated through trial.   *See* DUR 68, B15; *Donald M. Durkin Contracting, Inc.*, 2007 WL 2710451, at *4 (D.I. 357) ("There is no dispute that the jury's findings were based on Durkin's Itemized Statement of Damages . . .").  If any fees are awarded, Durkin is not entitled to an additional $1.33 million in fees for the civil rights claim.

Durkin concedes that "should this Court affirm the portion of the jury verdict that awarded Durkin its attorneys' fees under Section 17.5 [of the Construction Contract] . . . grant Durkin's § 1988 Petition, the amount of fees awarded under the § 1988 Petition will need to be reduced by the fees . . . that were subsumed within the counsel fees awarded by the jury under section 17.5 [of the Construction Contract] to avoid double recovery on attorneys' fees." *See* Durkin's Supplemental Fee Petition at 2, n.3; D.I. 364.  Even with this admission, Durkin made no attempt to apportion its fees between the attorneys' fees already awarded by the jury for breach of contract and the fees it now seeks under § 1988.  Thus, the City and the Court have no way of knowing how fees should be

12

apportioned between the two claims.[2]  Under any circumstance, Durkin is not entitled to obtain a double attorneys' fee award.

### D.    The Attorneys' Fees Sought Are Unreasonable

If the fees sought are "excessive, redundant, or otherwise unnecessary," they must be reduced accordingly.  *State ex rel. A.L. v. East Orange Bd. Of Ed.*, C.A. No. 05-5498, 2006 WL 3731209, at *8 (D.N.J. Dec. 18, 2006) (quoting *Hensley*, 461 U.S. at 434).  In calculating the hours reasonably expended, the District Court "should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"  *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001) (citing *Public Int. Research Group of N.J., Inc.*, 51 F.3d at 1188 (internal citation omitted)); *see also Rode*, 892 F.2d at 1183 ("The district court should exclude hours that are not 'reasonably expended.'").  While the City does not dispute the reasonableness of the hourly rates of plaintiff's attorneys, it does dispute the reasonableness of the hours claimed.

---

[2]    As previously stated by the City, Durkin is not entitled to recover attorneys' fees for breach of the construction contract.  This Court has already held that "[t]he court thus finds that the only measure of damages available to Durkin for the City's breach of the Construction Contract is under Delaware common law." *Donald M. Durkin Contracting, Inc.*, 2007 WL 2710451, at *5 (D.I. 357).  Moreover, Section 17.5 of the construction contract (upon which Durkin relies) is merely a definitional provision, which does not allow Durkin to recover attorneys' fees unless the phrase "claims, costs, losses and damages" is used and specifically authorizes the award of fees in the event of breach. The construction contract, however, was silent on damages for the City's breach. *See id.* at *4 ("Durkin acknowledges that the Construction Contract was silent on the measure of damages in the event of the City's breach"). No provision of the construction contract allows Durkin to collect "claims, costs, losses and damages" for the City's failure to provide seven days notice of termination. *Id.* ("Durkin acknowledges that the Construction Contract was silent on the measure of damages in the event of the City's breach.").

1.     Mr. Logan's Time Prior To The City's Termination Of The
Construction Contract Should Be Excluded

Durkin's lead attorney, Paul A. Logan, seeks fees for time between August 28, 2002 and January 29, 2004, all of which is prior to the time that the City terminated Durkin's construction contract. These fees cannot be attributed to any cause of action raised in the Complaint, as the City had not terminated the construction contract at that time. All fees incurred by Durkin's counsel prior to the City's termination of Durkin's contract should be excluded because those fees are separate and distinct from the claims raised in the litigation. *See* D.I. 309; A104-126. Consequently, any fee award to Mr. Logan's firm should be reduced by 90.0 hours (for a total reduction of $22,500.00), the time expended by Durkin's counsel prior to the City's termination of the construction contract.

2.     The Billing For Pre-Trial Activity Is Unreasonable

The time entries and amounts charged by Marsha E. Flora for this litigation are unreasonable. As the Court is aware, Mr. Logan and Mr. Bolger were the primary counsel for Durkin beginning in early 2004 and continuing throughout this litigation. Mr. Logan and Mr. Bolger took virtually all of the depositions in the case, performed most of the discovery, and conducted trial.[3] For the work they performed through trial, Mr. Logan billed Durkin for 1,997.1 hours (D.I. 309; A127-390) and Mr. Bolger billed Durkin 1,157.4 hours. D.I. 309; A392-508.

---

[3]     In Mr. Bolger's time entries, he claims that he is entitled to be paid 5.6 hours to attend training in District Court. D.I. 309; A415. Because this entry does not relate to any of the claims raised in the litigation and relates solely to legal training for Mr. Bolger, any fee award should be reduced accordingly.

Marsha Flora, by contrast, performed her first work on the case on May 23, 2006 (D.I. 309; A-511), two years after the case began. Between May 23, 2006 and October 4, 2006, Ms. Flora billed a total of 1,194.9 hours. *See* D.I. 309; Logan Aff. 1 at ¶¶85, 100, 110; *see also* A509-627). Therefore, Ms. Flora logged nearly one-third (1/3) of all pretrial hours, even though she only participated in a little more than four months of pre-trial and trial activities.[4]

Ms. Flora's timesheets demonstrate that the amount claimed for her time is unreasonable. Ms. Flora billed in excess of 11 hours per day 10 times in July 2006 (July 11, 19, 22-24, 26-30), more than 10 hours per day 20 times in August 2006 (August 1-10, 14, 18-19, 21, 24-25, 28-31), more than 10 hours per day for 28 days in September 2006 (Sept. 1-2, 5-30), and 11.5 hours or more per day between October 1 and October 5, through the last day of trial. (D.I. 309; A509-627). Overall, Ms. Flora logged 12 or more billable hours in a day 52 times between July 11 and October 5, 2006 (7 days in July, 17 days in August, 24 days in September, and 4 days in October). Thus, Ms. Flora claims that she performed nearly as much work on the case as did her other two counterparts, even though she was only involved in the case for just over four months. The City

---

[4]     As of October 12, 2007, Ms. Flora has billed virtually the same number of hours (2,070.6 hours) (D.I. 309; Logan Aff. 1 at ¶¶85, 100, 110; *see also* A509-627; D.I. 344; Logan Aff. 2 at ¶¶86, 101, 111, 115; *see also* A776-845; D.I. 364; Logan Aff. 3 at ¶15; *see also* A934-988) as Paul Logan (2,091.9 hours) (D.I. 309; Logan Aff. 1 at ¶¶83, 91, 98, 108; *see also* A103-390; D.I. 344; Logan Aff. 2 at ¶¶84, 92, 99, 109, 113; *see also* A736-754; D.I. 364; Logan Aff. 3 at ¶¶9, 13; *see also* A900-913) and has billed more hours than David Bolger (1,415.4 hours) (D.I. 309; Logan Aff. 1 at ¶¶84, 92, 99, 109; *see also* A391-508; D.I. 344; Logan Aff. 2 at ¶¶85, 93, 100, 110, 114; *see also* A755-775; D.I. 364; Logan Aff. 3 at ¶¶10, 18; *see also* A914-933), even though: (1) she did not bill any time on the case until May 2006, more than two years after the case was filed; and (2) she did not take any depositions or actually participate at trial.

contends that Ms. Flora's time should be reduced by 50% or more because the time entries are unreasonable.[5]

   3. <u>The Billing For Post-Trial Activity Is Unreasonable</u>

   Durkin's request for post-trial fees and expenses should also be significantly reduced because the request is also unreasonable.  As of January 29, 2007, Durkin claimed that it had incurred a total of $132,580 (D.I. 344; Logan Aff. 2 at ¶¶86, 101, 111, 115; *see also* A732) in post-trial fees, which represents 403.4 hours for Marsha Flora (D.I. 344; Logan Aff. 2 at ¶¶85, 93, 100, 110, 114; *see also* A776-845), 155.8 hours for David Bolger (D.I. 344; Logan Aff. 2 at ¶¶85, 93, 100, 110, 114; *see also* A755-75), and 51.8 hours for Paul Logan (D.I. 344; Logan Aff. 2 at ¶¶84, 92, 99, 109, 113; *see also* A736-54), for a total 611 hours which were allegedly incurred <u>before</u> the City filed its post-trial brief.  D.I. 344, Logan Aff. 2 at ¶¶84-86, 92-93, 99-101, 109-111, 113-115; *see also* A732.

   In Durkin's second supplemental application for attorneys' fees and costs (filed on October 12, 2007), Durkin claims that it is entitled to <u>an additional</u> $130,785 in attorneys' fees for filing a single answering brief in opposition to the City's post-trial motions, and for submitting a three-page supplemental fee petition.  D.I. 364; Logan Aff. 3 at ¶¶9, 13; *see also* A897 n. 7.  This amounts to an additional 43 hours for Paul Logan (D.I. 364; Logan Aff. 3; A900-13), 102.3 hours for David Bolger (D.I. 364; Logan Aff. 3 at ¶¶10, 18; *see also* A914-33), and an additional 472.3 hours for Marsha Flora (D.I. 364;

---

[5] Courts are "inclined to carefully scrutinize the claimed hours of . . . 'second chair' counsel to ensure that they are not present merely for the purpose of being trained and that they actually participate in or contribute to the proceedings."  *Coalition to Save Our Children v. State Bd. of Educ.*, 143 F.R.D. 61, 64 (D. Del. 1992) (internal citations omitted).

Logan Aff. 3 at ¶15; *see also* A934-88), for a total of 617.6 hours incurred since January 29, 2007.  D.I. 364; Logan Aff. at ¶¶9-10, 13, 15, 18; *see also* A895-97.

Equally important, Durkin claims that its "out of pocket expenses" have increased from $63,174.07 as of January 26, 2007, to $192,987.40 as of October 12, 2007, by adding interest charges of $128,266.26. D.I. 364; Logan Aff. 3 at ¶23; *see also* A898, n.8. However, no interest is permitted on the expenses calculation because post-judgment interest runs from the date that the District Court enters a judgment quantifying the amount owed.  *Eaves v. County of Cape May*, 239 F.3d 537, 542 (3d Cir. 2001).

In sum, Durkin claims it has incurred $456,352.40 in fees and costs since the conclusion of trial, approximately 35% of the total fees for the entire case.  *Compare* D.I. 364; Logan Aff. 3 at ¶28; *see also* A898-99 (seeking $1,308,760.00 in fees and $192,987.40 in costs in October 2007); and D.I. 309; Logan Aff. 1 at ¶¶113, 117; *see also* A117-18 (seeking $1,045,395.00 and $52,943.41 in costs and fees as of October 2006). It is unreasonable for Durkin to claim that it performed 1,226.4 hours of work on this case post-verdict (611 hours between October 5, 2006 and January 26, 2007 and 617.6 hours between January 26, 2007 and October 12, 2007), when Durkin only: (1) participated in limited appellate activities; (2) filed motions and supporting documents for attorneys' fees; and (3) filed a single answering brief in opposition to the City's post-trial motions.  This fee request is unreasonable in relation to the work performed, and any § 1988 award for post-trial legal fees and costs should be reduced accordingly.

**E.**    **Durkin is Not Entitled To An Enhancement Of Its § 1988 Award Based Upon Alleged Discovery Violations By The City's Former Counsel**

Durkin's fee petition claims that discovery rulings entitle Durkin to an enhanced fee award.  *See* D.I. 343 at pp. 2-11.  These rulings have no bearing on an award of attorneys' fees under § 1988.  Indeed, § 1988 "is not meant as a 'punishment' for 'bad' defendants who resist plaintiffs' claims in bad faith [,] [but] is meant to compensate civil rights attorneys who bring civil rights cases and win them." *Turner v. District of Columbia Board of Elections and Ethics*, 354 F.3d 890, 897 (D.C. Cir. 2003) (citing *Coalition for Basic Human Needs v. King*, 691 F.2d 597, 602 (1st Cir. 1982)).

Even if discovery rulings could be a consideration concerning the amount of attorneys' fees to award under § 1988, the Court has already imposed a severe sanction upon the City for these violations.  On the second day of trial, the Court dismissed the City's "meritorious" $6,533,956 counterclaim against Durkin for the same discovery violations.  *See* September 28, 2006 Order, *see also* D.I. 268 at pp. 2-11.  Because severe sanctions have already been imposed by the Court, the same activity giving rise to the dismissal of the City's counterclaim should not be used a second time to enhance Durkin's § 1988 fee award.

**F.**    **Durkin Is Not Entitled To A Delay Multiplier**

An upward adjustment of a lodestar, as Durkin requests here, is permissible only in "'rare' and 'exceptional' cases." *McKanatt*, 369 F. Supp. 2d at 524-525.  A court's

18

discretion to add a multiplier or adjust the lodestar upward[6] is restricted to three specific circumstances: "(1) a delay in payment; (2) the superior quality of the representation; or (3) the necessity of attracting competent counsel for a contingency matter," none of which are present here. *Becker v. ARCO Chem. Co.*, 15 F. Supp. 2d 621, 634 (E.D. Pa. 1998) (citing *Rode*, 892 F.2d at 1183).[7]

### 1.    Durkin Has Offered No Evidence Of Any Delay In Payment

A delay multiplier is generally reserved for situations where a plaintiff produces evidence of costs incurred because of a delay in payment. A delay of payment must be proven through "carefully developed evidence of the costs to plaintiffs of receiving the delayed payment for services." *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 923 (3d Cir. 1985); s*ee also Keenan v. City of Philadelphia*, 983 F.2d 459, 476 (3d Cir. 1992) ("evidence should document the costs of receiving delayed payment of fees"). To obtain a multiplier for a delay in payment, "counsel must set forth specific costs incurred as a result of the delay such as, expenses related to late payment of legal bills or interest expenses incurred on loans taken out to support the litigation." *Becker*, 15 F. Supp. 2d at 635.

---

[6]    Durkin has the burden of proving that a delay multiplier is necessary. *Rode*, 892 F.2d at 1183 ("The party seeking adjustment has the burden of proving an adjustment is necessary."); *see also Student Public Interest Group v. AT&T*, 842 F.2d 1436, 1453-54 (3d. Cir. 1987) (placing the burden on plaintiffs to document the need for a delay multiplier); *Albertson v. Winner Automotive*, No. Civ. A. 01-116, 2004 WL 2435290, at *11 (D. Del. Oct. 27, 2004) ("The plaintiff has the burden of documenting evidence of the time value of money and market interest rates of the period in question.").

[7]    Durkin does not address any of these factors in its justification for a delay multiplier, but instead argues that a delay multiplier is warranted because of the City's discovery violations. D.I. 343 at p. 19. The City, however, has already been severely sanctioned for the discovery violations, and § 1988 is not a vehicle to punish defendants for discovery sanctions. *Turner,* 354 F.3d at 897.

Durkin has failed to justify its claim to a delay multiplier.  None of Mr. Logan's affidavits allege that Durkin has not paid its legal bills to date.  There is no evidence presented establishing that Mr. Logan's firm has taken any loans to support the litigation. "Because counsel have failed to submit any evidence of expenses incurred because of delay, the Court" should deny the request.  *Becker,* 15 F. Supp. 2d at 635; *see also Fletcher v. O'Donnell,* 729 F. Supp. 422, 433-34 (E.D. Pa. 1990) (delay multiplier inappropriate because the applicant made no factual showing about any detriment was suffered by counsel due to delay).

### 2.     Durkin Has Not Met Its Burden Of Establishing A Multiplier For Superior Representation

As the United States Supreme Court has held, "[b]ecause considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate, the overall quality of performance ordinarily should not be used to adjust the lodestar, thus removing any danger of 'double counting.'"  *Pennsylvania v. Delaware Valley Citizens' Council  for Clean Air*, 478 U.S. at 566.[8]  Durkin does not allege that the lodestar amount does not adequately compensate its counsel for the legal services rendered in this case and does not seek an enhancement for superior representation.  Thus, no upward adjustment of the lodestar amount can be made on this basis.

---

[8]     Durkin cites *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air* for the proposition that a multiplier is appropriate in this case.  *See* D.I. 343 at p.19.  The case, however, overturns the Third Circuit's award of a multiplier, and held "viewing the evidence submitted by Delaware Valley to support its petition for attorney's fees, there is no indication as to why the lodestar did not provide a reasonable fee award reflecting the quality of representation provided."  478 U.S. at 566.

3.    There Is No Risk That Competent Counsel Could Not Be Attracted

The third factor for an upward adjustment of the lodestar is whether competent counsel could be attracted on a contingency basis.  This factor is not implicated because Durkin is paying its attorneys on a fee basis, and there is no allegation that counsel has this case on a contingency fee basis.  As such, there is no justification for an upward adjustment of the fee award.[9]

G.    **The Lodestar Amount Should Be Adjusted Downward**

The financial condition of the non-prevailing party in § 1988 cases is a factor that courts may consider when determining the amount of an award for attorneys' fees.  *Roth v. Green*, 466 F.3d 1179, 1194 (10th Cir. 2006) (holding that "plaintiffs' ability to pay is a relevant factor for the district court to consider in denying the amount of the fee," and vacating the award of attorneys' fees); *Barrett v. West Chester University*, No. 03-CV-4978, 2006 WL 859714, at *17 (E.D. Pa. Mar. 31, 2006) (citing *Alizadeh v. Safeway Stores, Inc.,* 910 F.2d 234, 238 (5th Cir. 1990)) (stating that while the non-prevailing party's financial condition is not appropriate to consider in determining whether to award attorney's fees, it is appropriate to consider when determining the amount of the attorneys' fees); *Knighton v. Watkins*, 616 F.2d 799-800 (5th Cir. 1980) (explaining that defendant's ability to pay may be a factor in determining attorney's fees); *Hughes v. Repko*, 578 F.2d 483, 488 (3d Cir. 1978) (it is within the district court's discretion whether to consider defendant's ability to pay attorneys' fees).  Moreover, where, as here, when taxpayers are paying the fee award, Courts "have a special responsibility ... to

---

[9]    On the issue of post-judgment interest, the City agrees that "post-judgment interest on an attorney's fee award runs from the date that the District Court enters a judgment quantifying the amount of fees owed to the prevailing party rather than the date that the Court finds that the party is entitled to recover fees."  *Eaves*, 239 F.3d at 542.

ensure that taxpayers are required to reimburse prevailing parties for only those fees and expenses actually needed to achieve the favorable result" and to "exercise vigilance and pare down needless and unconscionably high legal fees." *Barrett,* 2006 WL 859714, at *18.

In this case, the lodestar should be significantly reduced because the taxpayers will ultimately pay the award. As of November 2006, the City's average monthly cash disbursements totaled $6.3 million when the City's monthly cash revenue was approximately $6 million. *See* D.I 315; Garriz Aff. at ¶3; B20-21. Thus, the City was losing approximately $300,000 per month, and was paying the deficit from prior years' cash reserves. *Id.* Moreover, the $36.7 million judgment entered against the City exceeds the City's anticipated 12-month revenue of approximately $36 million. *See id.* Under these circumstances, when the City is already experiencing financial difficulty, a reduction in the lodestar amount is "fair, reasonable and appropriate." *Barrett,* 2006 WL 859714, at *18; *see also Roth*, 466 F.3d at 1194 (holding that "the district court abused its discretion in failing to take into account the plaintiffs' ability to pay," and vacating the award of attorneys' fees).

**CONCLUSION**

For the reasons set forth herein, the City respectfully requests that the Court deny

Durkin's motion for attorneys' fees, costs, and post-judgment interest.

CONNOLLY BOVE LODGE & HUTZ LLP


_____/s/ Collins J. Seitz, Jr._____
Collins J. Seitz, Jr. (Bar No. 2237)
Max B. Walton (Bar No. 3876)
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
cseitz@cblh.com
mwalton@cblh.com

Date:  November 14, 2007          *Attorneys for the City Defendants*


23