**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* | |
| vs. | |
| CITY OF NEWARK, et al., *Defendants* | CASE NO. 04-0163-GMS |
| and | |
| CITY OF NEWARK, *Third-Party Plaintiff* | |
| vs. | |
| DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Intervenor* | |

**REPLY BRIEF OF PLAINTIFF
IN SUPPORT OF MOTION
IN SUPPORT OF ATTORNEYS' FEES, COSTS AND
POST-JUDGMENT INTEREST (D.I. 307)
PURSUANT TO 42 U.S.C. §1988 AND FEDERAL RULE OF CIVIL PROCEDURE 54**

> **POWELL, TRACHTMAN, LOGAN, CARRLE & LOMBARDO, P.C.**
> Paul A. Logan
> Delaware Supreme Court ID #3339
> 475 Allendale Road, Suite 200
> King of Prussia, PA 19406
> Telephone: 610-354-9700
> Telefacsimile: 610-354-9760
> *Attorneys for Plaintiff and Third Party Defendant Donald M. Durkin Contracting*

Dated:  December 3, 2007

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CITATIONS ............................................................................ iii

I.    NATURE AND STAGE OF PROCEEDINGS ...................................... 1

II.   SUMMARY OF ARGUMENT .............................................................. 1

III.  CONCISE STATEMENT OF FACTS .................................................. 3

IV.   ARGUMENT .......................................................................................... 3

      A.   All of Durkin's Fees Arise Out of a Common Nucleus of Operative
           Facts ................................................................................................ 3

      B.   Durkin Identified the Basis for its Constitutional Claim Over One
           Year Before Trial ........................................................................... 6

      C.   All of Durkin's Pretrial Activity was Necessary and Reasonable and is
           Fully Compensable Under Section 1988 ....................................... 8

           1.   Durkin is Entitled to Recover the Fees for All of Paul A. Logan,
                Esquire's Pretrial Time ......................................................... 8

           2.   Durkin is Entitled to Recover the Fees for All of Marsha E. Flora,
                Esquire's Pretrial Time ......................................................... 9

      D.   Durkin's Post Trial Fees Are Reasonable and in Large Part Due to the
           Actions of the City ....................................................................... 12

      E.   Durkin is Entitled to An Enhancement Multiplier on the Lodestar for
           Delay in Payment ......................................................................... 13

      F.   Durkin is Not Seeking a Double Recovery of Attorneys' Fees........ 14

      G.   There is No Basis to Adjust the Lodestar Downward ................... 15

      H.   Updated Fees For Which Durkin Seeks Recovery ......................... 17

V.    CONCLUSION AND RELIEF SOUGHT ........................................... 17

# TABLE OF CITATIONS

**Page**

**Cases**

*Amico v. New Castle County, et al.,* 654 F. Supp. 982, 1987 U.S. Dist. LEXIS 1020 (D. Del. 1987) ................................................................................................................ 15

*Blanchard v. Bergeron,* 489 U.S. 87, 89 n.1, 109 S.Ct. 939, 103 L. Ed. 2d 67 (1989) ................. 1

*Blum v. Witco Chemical Corp.,* 829 F2d 367 (3d Cir. 1987) ........................................... 5

*Central Delaware Branch of NAACP v. Dover,* 123 F.R.D. 85 (D. Del. 1988) .................... 12, 14

*Hensley, et al, v. Eckerhart, et al.,* 461 U.S. 424, 435 (1982) ....................................... 6

*INS v. Jean,* 496 U.S. 154, 161-162 (1990) ................................................................ 6

*Newman v. Piggie Park Enterp., Inc.,* 390 U.S. 400, 402, 88 S. Ct. 939, 103 L. Ed. 2d 69 (1968)1

*Planned Parenthood of Central N.J. v. Attorney General of the State of New Jersey,* 297 F.3d 253 (3d Cir. 2002)............................................................................................... 6, 12

*Rode, et al v. Dellarciprete, et al.,* 892 F2d 1177 (3d Cir. 1990) .................................. 12

*U.S. v. Eleven Vehicles, Their Equipment and Accessories,* 200 F.3d 203, 211 (3d Cir. 2000)... 12

**Statutes**

42 U.S.C. §1988............................................................................................... 1, 2, 3, 18

**Rules**

6 Del. C. §2301 ............................................................................................... 15

Fed. R. Civ. P. R. 15(b)....................................................................................... 8

## I.    NATURE AND STAGE OF PROCEEDINGS

The jury returned a verdict for Plaintiff and Third Party Defendant Donald M. Durkin Contracting, Inc. ("Durkin") against Defendant City of Newark and Councilpersons (collectively the "City") on October 5, 2006, and the Court entered judgment for Durkin on October 11, 2006. On September 17, 2007, this Court denied both the City's motion for judgment as a matter of law and the City's motion for a new trial or remittitur on the civil rights claim. (D.I. 357). Durkin filed a motion for attorneys' fees, costs and post-judgment interest pursuant to 42 U.S.C. §1988 and Federal Rule of Civil Procedure 54 (D.I. 307) and an Opening Brief in support thereof (D.I. 308) on October 25, 2006, an additional Opening Brief on January 26, 2007 (D.I 343) and a supplemental Opening Brief on October 12, 2007 (D.I 364). The City filed a Brief in Opposition on November 14, 2007 (D.I. 368). Durkin now files this Reply Brief in response to the City's Opposition Brief and as a supplement to provide updated attorneys' fees.

## II.    SUMMARY OF ARGUMENT

The Supreme Court has stated that the prevailing party in a civil rights case "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterp., Inc.,* 390 U.S. 400, 402, 88 S. Ct. 939, 103 L. Ed. 2d 69 (1968); *Blanchard v. Bergeron,* 489 U.S. 87, 89 n.1, 109 S.Ct. 939, 103 L. Ed. 2d 67 (1989) (affirming this statement from *Newman*). There are no "special circumstances" in this matter that would prevent Durkin from recovering its entire fees and costs (as well as an enhancement multiplier due to delay).[1]

---

[1] Durkin reserves the right to supplement the attorneys' fees and expenses incurred since the jury verdict (Jury Verdict I.A.3) under Section 17.5, which allows for recovery of attorneys' fees and expenses in all court proceedings. Those supplemental attorneys' fees and expenses would include any attorneys' fees and expenses that are not covered within Durkin's Motion for Attorneys' Fees, Costs and Post Judgment Interest Pursuant to 42 U.S.C. §1988 and Federal Rule of Civil Procedure 54 (including, but not limited to, those fees and expenses incurred by Durkin's surety – Federal Insurance Company).

1.      Durkin is entitled to recover all of its attorneys' fees and costs because they all arise out of a common nucleus of operative facts. *See* Section IV.A. *infra.*

2.      Durkin identified the basis for its constitutional claim over one (1) year before trial. *See* Section IV.B. *infra.*  Therefore, this is not a basis to reduce Durkin's fee award under Section 1988.

3.      Durkin is entitled to recover all of its fees for its pretrial activity because such activities were reasonable and necessary to litigation of this matter. *See* Section IV.C. *infra.* Furthermore, Durkin employed a division of labor to ensure an effective and reasonable use of all attorney time.

4.      All of Durkin's post trial fees and costs are reasonable and compensable.  In fact, the majority of the post trial fees were incurred as a result of the City's conduct and activities subsequent to the jury verdict. *See* Section IV.D. *infra.*

5.      The City unnecessarily drew out this litigation, causing Durkin – and its counsel – to needlessly waste limited resources.   Accordingly, Durkin is entitled to an enhancement multiplier on the lodestar for the delay in payment. *See* Section IV.E. *infra.*

6.      Durkin is not seeking a double recovery of attorneys' fees.  *See* Section IV.F. *infra.*

7.      The City has not provided any credible evidence for this Court to adjust the lodestar downward.  In fact, publically available information suggests that there is no reason for the Court to even entertain such a request. *See* Section IV.G.

8.      Durkin has provided an update of the fees that it seeks to recover. *See* Section IV.H. Durkin respectfully requests that this Court allow it to timely supplement this Motion with

additional attorneys' fees and expenses that will be incurred in the post trial and appeal phases of this matter.

## III.    CONCISE STATEMENT OF FACTS

The relevant factual background is set forth in Durkin's Opening Brief in support of its Motion for attorneys' fees, costs and post-judgment interest pursuant to 42 U.S.C. §1988 and Federal Rule of Civil Procedure 54. (D.I. 343)

## IV.    ARGUMENT

### A.    All of Durkin's Fees Arise Out of a Common Nucleus of Operative Facts

The City does not dispute the Supreme Court's ruling which permits recovery of fees when the civil rights claim and the pendent claims arise out of a common nucleus of operative facts. *See* City's Brief, page 8 (D.I. 368). Durkin's pendent claims asserted in its Complaint (interference with existing and prospective contracts; defamation and trade libel; conversion; conspiracy; and breach of contract) and its civil rights claim all arise out of the common nucleus of operative facts. The City's arguments to the contrary are completely without merit. Indeed, the breach of contract claim is the essential cornerstone of Durkin's civil rights claim.

The City mischaracterizes this Court's September 17, 2007 Opinion upholding the civil rights verdict in an attempt to support its argument that Durkin is only entitled to recover its fees for the civil rights claim. *See* City's Brief, pages 9-10 (D.I. 368). What Durkin has repeatedly argued, and this Court specifically found in its September 17, 2007 Opinion, was that Durkin presented uncontroverted evidence of "an official City policy of the City Council abdicating its decision-making function through a wholesale delegation to the City Manager and his Staff, *who in turn carried out a series of actions that brought about the financial deterioration of Durkin and ultimately put it out of business.*" *See* September 17, 2007 Opinion, page 12 C31 (emphasis supplied) (D.I. 357). This Court went on to state that Durkin presented evidence that "the City

- 3 -

Council had a policy of abdicating its decision-making function by *placing 'abject trust' in the City Manager's office, and that City Council made uninformed official decisions* that operated to adversely affect Durkin's ability to pursue its chose profession." *Id.* (emphasis supplied).

The facts to support the City's "series of actions" that brought about the financial destruction of Durkin comprise its pendent claims. Without the City wrongfully terminating Durkin's contract and then engaging in a series of actions that brought about the complete destruction of Durkin's business, Durkin arguably would not have had a civil rights claim. That is, the factual bases for Durkin's pendent claims are the very foundation for its civil rights claim.

An essential element of Durkin's civil rights claim was that Durkin was required to prove by "a preponderance of the evidence that the deprivation [of the right to hold a specific private employment and to follow a chosen profession free from unreasonable governmental interference] resulted from the City['s] … official policy or custom – in other words, that the City['s] … official policy or custom caused the deprivation." *See* Jury Instruction No. 15 C41-C42. The uncontroverted evidence presented by Durkin revealed the following about the City's policy or custom:

- City Council was unaware letters were being sent to Durkin and its surety considering termination of the Contract.[2]

- The decision to terminate the Contract was made without the City Council being informed of the underlying facts and circumstances.[3]

- City Council was unaware that the City Manager's office had circulated an inaccurate and disparaging memorandum to prospective bidders at the pre-bid meeting for the completion of work on the Project.[4]

---

[2] This is factually interconnected to Durkin's breach of contract, interference with existing and prospective contracts, defamation/trade claims.
[3] This is factually interconnected to Durkin's breach of contract claim.
[4] This is factually interconnected to Durkin's defamation/trade libel, breach of contract and interference with existing and prospective contracts.

- 4 -

- City Council was unaware that monies were being withheld from Durkin during the course of the Project.[5]

- City Council was either unaware or endorsed the City Manager's practice of issuing incorrect press releases.[6]

- City Council was unaware or endorsed the actions of the City Manager in contacting Durkin's surety, suppliers and subcontractors.[7]

- City Council was complicit in the decision to take steps intended to erode Durkin's financial condition.[8]

- City confiscated materials paid for by Durkin.[9]

*See* D.I. 351 at pages 24-26 and 35 for citations to the Trial Transcript identifying the supporting testimony. Each of these aspects of the City's policy and custom were the factual basis of Durkin's pendent claims.

When awarding attorneys' fees under Section 1988, the Third Circuit follows the Supreme Court's approach of interpreting the case as a whole. *See e.g. Blum v. Witco Chemical Corp.,* 829 F2d 367 (3d Cir. 1987). In describing this approach, the Supreme Court has stated "[a]ny given civil action can have numerous phases. While the parties' postures on individual matters may be or less justified, ... fee-shifting statutes ...favor[ ] [the] treating a case as an inclusive whole, rather than as atomized line-items." *INS v. Jean,* 496 U.S. 154, 161-162 (1990). The Supreme Court has also explained that in some civil rights cases

> "plaintiff's claims for relief will involve a common core of facts ... Much of counsel's time will be devoted generally to the litigation as a whole... Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court

---

[5] This is factually interconnected to Durkin's breach of contract claim.
[6] This is factually interconnected to Durkin's interference with existing and prospective contracts and defamation/trade claims.
[7] This is factually interconnected to Durkin's breach of contract, interference with existing and prospective contracts, defamation/trade claims.
[8] This is factually interconnected to Durkin's breach of contract, interference with existing and prospective contracts, defamation/trade claims and conspiracy claims.
[9] This is factually interconnected to Durkin's conversion claim.

should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."

*Hensley, et al, v. Eckerhart, et al.,* 461 U.S. 424, 435 (1982).  When a plaintiff has obtained excellent results, the Supreme Court has held that his attorney should recover a fully compensatory fee.  *Id.*  A fully compensatory fee normally includes all hours reasonably expended on the litigation.  *Id.*  Moreover, under these circumstances, the Supreme Court has held that "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."[10]  *Id.*

By properly viewing this case as a whole – rather than by a fragmented analysis such as the City urges – it is clear that all of the fees Durkin incurred in litigating this matter arise from a common interconnected core of facts.  Accordingly, all of Durkin's fees are fully recoverable under Section 1988.

B.    **Durkin Identified the Basis for its Constitutional Claim Over One Year Before Trial**

It is simply incorrect that Durkin did not identify its constitutional claim until the fifth day of trial.  *See* City's Brief, pages 5-6 (D.I. 368).  Durkin answered a detailed interrogatory over one (1) year prior to the start of trial which out lined the basis for its civil rights claim.  *See* Interrogatory No. 28 (September 21, 2005), C43-C47.  In response to a request to identify the basis of its civil rights claim, Durkin stated, *inter alia,* "[n]otwithstanding the City's express knowledge of its illegal conduct, in continuation of the violation of the civil rights of Durkin, the City falsely alleged that Durkin was terminated because of its purported refusal to complete the

---

[10]  The City correctly points out that Durkin voluntarily discontinued four (4) Counts during trial.  *See* City Brief page 4 (D.I. 368).  However, as stated by the Supreme Court in *Hensley, supra* this does not affect Durkin's ability to fully recover its fees.  Also illustrative is the fact that the Third Circuit has affirmed fee awards that permit recovery for unsuccessful motions for summary judgment that were <u>never filed or considered on the merits</u> if it was later "relied on" during the course of the litigation.  *See Planned Parenthood of Central N.J. v. Attorney General of the State of New Jersey,*  297 F.3d 253 (3d Cir. 2002).

Contract and the City made publications to the public and newspapers *which affected Durkin's liberty interests and ability to obtain work.*" *Id.* (emphasis supplied).

A more accurate statement of the situation is that *the City* did not make any effort to comprehend the nature and extent of the civil rights violation until the fifth day of trial. This was not a result of a failure on Durkin's part to articulate this claim; rather, it was simply another manifestation of the City's lackluster pretrial preparation in this case. As this Court has already pointed out "[t]he time to discover facts and witnesses is during discovery. Durkin asserts, and the City doesn't dispute, that the City only took three depositions during discovery. *This is telling of the City's attitude towards the litigation, considering the issues at stake, and the subject matter involved.*" *See* September 17, 2007 Opinion, page 6, fn. 2 C25 (D.I. 357) (emphasis supplied).

There was not one question in any of the three (3) depositions that the City did take that inquired into Durkin's claims regarding a civil rights violation. Moreover, the City did not ask one (1) question of any of the Durkins during trial about the civil rights claim. Accordingly, any "surprise" or inability to appreciate the implications of the civil rights violation can be directly correlated and traced to their wholesale lack of focus and attention on this critical claim.

In addition to the foregoing, this Court permitted Durkin to amend its Complaint to provide additional specificity regarding the civil rights violation under Federal Rule 15(b). *See* City Brief, page 6 (D.I. 368). Rule 15(b) allows amendments to the pleadings so that they conform to the evidence unless the objecting party (in this case the City) satisfies the Court that the admission of the evidence would be prejudicial to its maintaining a defense on the merits. *See* Fed. R. Civ. P. R. 15(b).[11] By allowing the amendment, this Court found that the City was not prejudiced in any manner. Therefore, the City's (*albeit* incorrect) argument that the civil

---

[11] Rule 15(b) even permits amendment to the pleadings <u>after</u> judgment. Fed. R. Civ. P. R. 15(b).

rights violation was not identified until the fifth day of trial provides no basis to deny Durkin its entire fees under Section 1988.

**C.     All of Durkin's Pretrial Activity was Necessary and Reasonable and is Fully Compensable Under Section 1988**

    **1.     Durkin is Entitled to Recover the Fees for All of Paul A. Logan, Esquire's Pretrial Time**

The City argues that Paul A. Logan, Esquire's time from August 28, 2003 to January 29, 2004 should be excluded because it was "expended by Durkin's counsel prior to the City's termination of the construction contract." *See* City Brief, page 14 (D.I. 368). The City claims that that these fees were "separate and distinct from the claims raised in the litigation." *Id.* Incredibly, even after this Court affirmed the civil rights verdict award, the City continues to mischaracterize Durkin's civil rights claim. Mr. Logan's time from August 28, 2003 to January 29, 2004 was specifically and directly related to the facts and circumstances that gave rise to the civil rights claim.

Durkin presented uncontroverted evidence that the City's series of actions that ultimately brought about the financial destruction began immediately after Durkin provided notice of potential design problems in early September 2003. *See* correspondence from Durkin to Prouty dated September 10, 2003 (DUR52) C48-C49 and handwritten notes of Carol Houck dated September 11, 2003 (DUR-66) C50-C51. The City's actions continued right up to (and beyond) the date of termination. Some of the City's actions during the August 28, 2003 to January 29, 2004 period are illustrative. The City refused to pay Durkin on approved pay applications dated October 31, 2003, November 15, 2003, November 30, 2003 and December 31, 2003 (DUR-9). On November 21, 2003, the City wrote to Durkin and its surety indicating that it was "considering" declaring Durkin in default (DUR-9A). The following month, the City requested a meeting with Durkin's surety (which was followed up with expert meetings and reports). *Id.*

Mr. Logan's activities pre-termination were directly related to the City's actions which formed part of the basis for Durkin's breach of contract and civil rights claim.  By way of example only, Mr. Logan's activities included: addressing the City's withholding of payments to Durkin (A121); meetings with Durkin's surety and the City after the City contacted the surety indicating that it was "considering" default (A116-A122; A125-A126); and meeting with the experts after the City contacted Durkin's surety (A121; A123).  Mr. Logan also drafted pleadings during this timeframe (A114; A116-A117).

All of Mr. Logan's pre-termination activities between August 28, 2003 to January 29, 2004 coincide with the time during which the City was administering its policy of City Council abdicating its decision-making function through a wholesale delegation to the City Manager and his staff.  The fees associated with these activities, therefore, are fully compensable under Section 1988.

### 2.    Durkin is Entitled to Recover the Fees for All of Marsha E. Flora, Esquire's Pretrial Time

The City's argument that Marsha E. Flora, Esquire's billing activity was unreasonable demonstrates that the City completely fails to appreciate the division of labor that was employed in preparing this matter for trial.  Mr. Logan, as the lead counsel for Durkin, assigned Ms. Flora the task of fully preparing this case for trial.  C2, Paragraph 6.  Ms. Flora began her preparation on May 23, 2006. *Id.*  Based on the size of this case, the complex issues involved, the production of over 50,000 pages of documents, over twenty (20) witnesses, thousands of photographs, multiple sets of construction drawings, seven (7) engineering experts and the many legal issues that needed to be researched and briefed, from the end of May 2006 to the conclusion of this trial, Ms. Flora handled only this matter.  C2, Paragraph 7.

By contrast, during this same time period Mr. Logan handled other matters for the firm. C3, Paragraph 19.  Mr. Logan also completed the depositions in this matter.  From May 2006 up to trial in this matter, David T. Bolger, Esquire also handled other matters for the firm.  C3, Paragraph 12.  Thus, neither Mr. Logan nor Mr. Bolger participated in the detail level of pretrial activity that Ms. Flora handled.

The City attempts to create the false impression that Ms. Flora had a secondary role in preparing this matter for trial.  *See* City Brief page 16 (D.I. 368).  As her timesheets clearly indicate, Ms. Flora was the primary attorney working on preparing this matter for trial.  C4, Paragraph 13. Ms. Flora's pretrial activities included researching and briefing all matters, including, but not limited to, notice issues, breach of contract issues, civil rights violations, liberty interests, judicial admissions, expert testimony, sharing of experts, spoliation, joint defense, attorney client privilege, attorney work product, discovery abuses and sanctions.  *Id.* During the pretrial phase of this matter, Ms. Flora drafted eight (8) Motions in Limine, four (4) Motions and supplemental briefs for sanctions for discovery abuses, a motion to strike the City's Motions in Limine, drafted answers to ten (10) Motions in Limine and five (5) reply briefs in support of Durkin's Motions in Limine.  She also handled extensive document management, prepared exhibits for trial, and prepared the extensive pretrial submissions including, but not limited to, jury instructions, voir dire, statement of uncontested facts and Durkin's trial brief.  *Id.*

Even a cursory review of the timesheets submitted reveals this deliberate division of labor, with no double or excessive billing.  From May to September 2006, while Ms. Flora prepared this case for trial, Mr. Logan mainly focused on the remaining depositions that needed to be conducted (*see e.g.* A354-A368) and concentrated on trial strategy (*see e.g.* A365-A368, A376, A379-A385).  C4,  Paragraph 14.  At the same time, Mr. Bolger mainly focused on the

damages (*see e.g.* A476), preparing Mr. Filshill and Mr. Ramsey for trial (*see e.g.* A492, A496-A498), helping Mr. Logan complete the remaining depositions (*see e.g.* A475-A481) and the reviewing and editing of briefs and other pretrial submissions. (*see e.g.* A483-A491, A493).[12]

*Id.*

This was a very complex case that resulted in an eight (8) day jury trial. It had issues of significant magnitude, not the least of which was that Durkin's financial life was on the line, having had their business completely destroyed by the City's actions. The stakes could not have been higher for the Durkins, or for counsel charged with the responsibility of preparing and trying the case to the best of its ability. The level of effort Ms. Flora expended in preparing this case for trial was in no way excessive or unreasonable; in point of fact, it provides a rather telling indication of the due diligence and attention to detail demanded by a case of this breadth and complexity.[13] Furthermore, none of her work was duplicative of any of the other members of the Durkin litigation team. *See e.g. Rode, et al v. Dellarciprete, et al.,* 892 F2d 1177 (3d Cir. 1990) (A reduction for duplication of work is only warranted if the attorneys unreasonably did the same work).

"[A] court may not reduce counsel fees *sua sponte* as excessive, redundant, or otherwise unnecessary in the absence of a sufficiently specific objection to the amount of fees requested." *U.S. v. Eleven Vehicles, Their Equipment and Accessories,* 200 F.3d 203, 211 (3d Cir. 2000). That is, the City must "present specific evidence challenging the reasonableness of the … time

---

[12] Durkin agrees to deduct 5.6 hours of Mr. Bolger's time relating to legal training for on-line filing of court submission in the amount of $1,400 [5.6 * $250 = $1,400].
[13] The Third Circuit has even held that time spent reviewing facts and documents is compensable for attorney fee purposes when the time is spent by a "newly-assigned" attorney "coming up to speed" on the case. This is especially true when the work of the "newly-assigned" attorney is necessary for the plaintiffs to secure a favorable outcome in the case. *See Planned Parenthood of Central New Jersey, et al., v. The Attorney General of the State of New Jersey,* 297 F.3d 235, 2002 U.S. App. LEXIS 13915 (3d Cir. 2002).

expended." *Central Delaware Branch of NAACP v. Dover*, 123 F.R.D. 85, 88 (D. Del. 1988). The City "cannot rely upon conclusory denials of the applicant's prima facie proofs." *Id.* The City has not provided a sufficiently specific objection or rational basis to support its reflexive request to reduce Ms. Flora's time by the purely arbitrary amount of "50% or more", and accordingly such request must be denied. *See* City Brief pages 15-16 (D.I. 368).[14]

### D. Durkin's Post Trial Fees Are Reasonable and in Large Part Due to the Actions of the City

The majority of Durkin's post trial fees were incurred as a result of the City's conduct and activities subsequent to the jury verdict. Since the jury entered its verdict, Durkin has been, in large measure, in a reactionary mode and responding to the City's actions.

On October 24, 2006 the City filed three (3) motions (D.I. 302, 303 and 304). This Court has characterized the City's filings as "84 pages of repetitive and incoherent argument, including exhibits." *See* Court Order dated November 27, 2006, page 2 (D.I. 324) C54. These "hybrid motion-briefs" were filled with what this Court has described as "a disjointed recitation of issues and argument". *Id.* Durkin's counsel had to analyze these documents, cull through the record and conduct research in order to refute the City's incorrect contentions and arguments.

Thereafter, the City appealed to the Third Circuit (D.I. 313) and filed a motion for relief from supersedeas bond (D.I. 315). This caused Durkin to expend more effort in researching associated legal issues. Durkin incurred additional fees in researching and responding to several requests from the Third Circuit concerning whether the City's appeal was from a final order.

In order to protect its interests, Durkin also filed an appeal as it related to its motion for the addition of interest to the jury award and its fee petition. (D.I. 322).

---

[14] It is interesting to note that as of July 28, 2006, even with the City's far lesser level of effort in this matter (*e.g.* taking only three (3) depositions), the City still indicated that its unreimbursed and projected legal fees were $446,263. *See* City's Appendix (D.I. 369) B7.

On or about November 15, 2006, the City filed a Writ of Mandamus with the Third Circuit. Durkin again incurred fees related to the City's additional filings with the Third Circuit.

Durkin also incurred post trial fees in researching and briefing various issues including, but not limited to: (1) Opening Brief in Support of Motion for Attorneys' Fees (D.I. 308); (2) Opening Brief to Amend or Correct the Judgment to Add Interest (D.I. 306); (3) Supplemental Opening Brief in Support of Motion for Attorneys' Fees (D.I. 343); (4) Supplemental Opening Brief to Amend or Correct the Judgment to Add Interest (D.I. 345); (5) Answering Brief in Opposition to Defendants' Motion for Judgment as a Matter of Law and for New Trial or Remittitur (D.I. 351); (6) Opening Brief in Support of Contract Damage Award (D.I. 358); (7) Reply Brief in Support of Durkin's Brief in Support of Contract Damage Award (D.I. 362); and (8) Supplemental Opening Brief in Support of Motion for Attorneys' Fees (D.I. 364). Durkin also had to review and analyze the various post trial submissions filed by the City.

Given the amount of post trial activity that has occurred in this matter – much of it the result of the City's actions – the City is without basis to argue that the billing for the post trial activity is somehow "unreasonable". Furthermore, the City has failed to provide specific evidence challenging the reasonableness of the post verdict fees. At best, it only has provided conclusory denials of Durkin's prima facie proofs. *See Central Delaware Branch of NAACP v. Dover,* 123 F.R.D. 85 (D. Del. 1988). Accordingly, the City's objections to the post trial fees should be denied.

### E.    Durkin is Entitled to An Enhancement Multiplier on the Lodestar for Delay in Payment

The City again mischaracterizes Durkin's request for an enhancement multiplier on the lodestar. It is not "because of the discovery rulings [that Durkin claims it is] entiled[ed] to an

enhanced fee award" (City Brief, page 18 (D.I. 368)); rather, it is because the City unnecessarily protracted this litigation and wasted judicial resources and Durkin's limited resources.

Durkin's lead counsel has testified that this matter could have been streamlined without incurring the majority of the attorneys' fees had the City complied with its discovery obligations and not improperly withheld issue dispositive documents. A4-A5. In fact, Durkin sought a prompt resolution to this dispute by filing a Motion for Preliminary and Permanent Injunction on April 7, 2004 (D.I. 6). Specifically, Durkin's lead counsel believes that had the City not improperly withheld a January 20, 2004 memorandum (NEW16304) (as well as other documents) that indicated the City was well aware of the legal infirmities in the steps that it took to terminate Durkin, Durkin would have likely been successful on its Motion and this matter could have been resolved at the earliest phase of this litigation, before the majority of the attorneys' fees were incurred. A4-A5.

To date, Durkin has only paid $410,555.88 for the fees incurred in this mater. C5, Paragraph 18. That is less than 32% of the total fees owed. *Id.* This matter is not a contingent fee matter; therefore, the reality is that Durkin's counsel has been financing the majority of the legal representation. *Id.* Paragraph 19. Clearly, there has been a substantial delay in payment of fees to Durkin's counsel. Under these circumstances, an enhancement multiplier on the lodestar to compensate for the delay in payment, such as 5% over the Federal Reserve discount rate (including any surcharge), would be appropriate.[15] *See* 6 Del. C. §2301. *See also Amico v. New Castle County, et al.,* 654 F. Supp. 982, 1987 U.S. Dist. LEXIS 1020 (D. Del. 1987).

F.    **Durkin is Not Seeking a Double Recovery of Attorneys' Fees**

---

[15] Durkin also argues that it is entitled to the interest charges that appear on its expense report (A898) based on an enhancement multiplier for the same reasons that it is entitled to a multiplier on the fees. That is, the City unnecessarily drew out this litigation causing Durkin to waste its limited resources.

Durkin has repeatedly stated that it is not seeking a double recovery for attorneys' fees. *See e.g.* D.I. 308 page 2; D.I. 343 page 1; and D.I. 364 page 1.    Durkin recognizes that it specifically requested, and a portion of the jury verdict included attorneys' fees (Jury Verdict I.A.3).    The City has urged in its post trial motion that these fees be disallowed under the Contract. *See e.g.* D.I. 354, page 9.

Durkin has consistently maintained that the award of attorney's fees is authorized both by contract and/or by Section 1988; that is, to the extent that any fees are disallowed under the Contract, Durkin maintains that its attorneys' fees are fully recoverable under Section 1988. However, to the extent that the attorney's fees are permitted under the Contract, Durkin recognizes that the amount allowed under this fee petition will need to be reduced accordingly.

The unpaid consultant/professional/expenses (line 6) of DUR-68 in the amount of $1,740,751.38 included counsel fees and costs for Durkin's surety, Federal Insurance Company ("Federal").    The total fees and costs for Federal that were included in that amount were $1,033,104.70.    C5, Paragraph 21.    Therefore, the remaining amount of $707,646.68 [$1,740,751.38 - $1,033,104.70 = $707,646.68] are Durkin's fees.  Should the Court uphold the part of the jury verdict that awarded Durkin $1,740,751.38 for unpaid consultant/professional/expenses, the amount of fees awarded to Durkin under this fee petition must be reduced by $707,646.68.

### G.    There is No Basis to Adjust the Lodestar Downward

The City presents the Court with an affidavit that is *over one (1) year old* and asks the Court to rely upon it as evidence of the City's current financial condition and adjust the lodestar downward.  City's Appendix (D.I. 369) B20-B21.  Durkin submits that such a stale affidavit cannot be in any way probative as to the City's current financial condition.

It is also curious that the City has chosen to rely on Ms. Garriz' November 2006 Affidavit (the "Garriz Affidavit") in that this was one (1) of the affidavits that was presented to the Court in support of the City's Motion for Relief from the Supersedeas Bond when the City attempted to appeal this matter to the Third Circuit.[16]  (D.I. 315).    At the time Ms. Garriz executed her affidavit, she claimed, *inter alia,* that "[i]f cash investments are ... taken to secure a bond, there are no funds remaining to adequately fund the City operations and City services will cease."  City's Appendix (D.I. 369) B21, ¶4.  However, the information provided by Ms. Garriz is diametrically different from the information reflected in the City Council's Meeting Minutes on November 6, 2006 – just three (3) days before.  *See* November 6, 2006 Meeting Minutes, C63-C64.

On November 9, 2006, Ms. Garriz claimed that if funds were taken to secure a bond – City services would cease.  However, what Ms. Garriz did not say, and what the City did not tell the Court in its prior motion -- and still has not told the Court in its current request for a reduction of the lodestar -- is that just three (3) days before Ms. Garriz executed her affidavit, City Council <u>unanimously approved</u> authorization for the commitment of the necessary funds to obtain an appeal bond for $37 million.  C63-C64.  What is positively incongruous is that City Council voted to allocated up to $750,000 for the annual bond premium, if in fact – as indicated in the Garriz Affidavit – "there [would be] no funds remaining to adequately fund the City operations and City services will cease."  *See* City's Appendix (D.I. 369) B21, ¶4.

Equally, if not more compelling is the 2006 Audit Report for the City (C65-C124), which is publically available on its website that dispels any suggestion that the City is or was

---

[16] It bears mentioning that the Garriz Affidavit references financial data which is ostensibly contained in accounting records of the City that are not attached to the Garriz Affidavit and have not been produced. These financial records would be the best evidence of the financial condition of the City – at least the financial condition in <u>November 2006.</u>  Accordingly, the Court should not entertain the Garriz Affidavit in the disposition of this motion.

"experiencing financial difficulty". *See* City Brief page 22 (D.I.368). According to the 2006 Audit Report, "[t]he assets of the City of Newark exceeded its liabilities at the close of the most recent fiscal year by $72.2 million (representing its net assets). Of this amount, $19.0 million (or its unrestricted net assets) may be used to meet the government's ongoing obligations to citizens and creditors." C72. In 2006, the City's net assets increased by $1.4 million. *Id.* This publically disclosed financial data is in sharp contrast and in conflict with the City's request for reduction in the lodestar. Accordingly, the City's request for a reduction in the lodestar must be denied.

**H.    Updated Fees For Which Durkin Seeks Recovery**

The total lodestar value for which Durkin seeks reimbursement is **$1,315,750.00**. C6, Paragraph 30. Durkin will provide a supplemental Motion discussing the fees and costs for all additional post trial and appeal activities for which it is seeking reimbursement.

## V.    CONCLUSION AND RELIEF SOUGHT

For the reasons set forth above, and in its prior submissions to the Court, Plaintiff Donald M. Durkin Contracting, Inc. respectfully requests that this Court grant its Motion for Attorneys' Fees, Costs and Post-Judgment Interest pursuant to 42 U.S.C. §1988 and Federal Rule of Civil Procedure 54 along with granting an enhancement multiplier to the lodestar for delay. Durkin respectfully requests leave to re-file a supplemental Motion with appropriate backup documentation as necessary to reflect all fees and costs incurred in the post-trial activities of this case that are not included herein.

**POWELL, TRACHTMAN, LOGAN,
CARRLE & LOMBARDO, P.C.**

By:    /s/ Paul A. Logan
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
*Attorneys for Plaintiff and Third Party
Defendant Donald M. Durkin Contracting*

Dated:  December 3, 2007