**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* | |
| vs. | |
| CITY OF NEWARK, et al., *Defendants* | CASE NO. 04-0163-GMS |
| and | |
| CITY OF NEWARK, *Third-Party Plaintiff* | |
| vs. | |
| DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Intervenor* | |

**APPENDIX OF DOCUMENTS IN SUPPORT OF
REPLY BRIEF OF PLAINTIFF
IN SUPPORT OF MOTION
FOR ATTORNEYS' FEES, COSTS AND
POST-JUDGMENT INTEREST (D.I. 307)
PURSUANT TO 42 U.S.C. §1988 AND F.R.C.P. 54**

**PART 1**

**POWELL, TRACHTMAN, LOGAN,
CARRLE & LOMBARDO, P.C.**
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
*Attorneys for Plaintiff and Third Party
Defendant Donald M. Durkin
Contracting*

Dated:  December 3, 2007

## TABLE OF CONTENTS

**Document**                                                                **Page**

Third Supplemental Unsworn Declaration of
Paul A. Logan, Esquire in Support of Plaintiff's Motion
(D.I. 307) for Attorneys' Fees, Costs and Post-Judgment
Interest Pursuant to 42 U.S.C. §1988 and Federal Rule
of Civil Procedure 54……………..…..………………..………………….………….C1

Timesheets for Paul A. Logan, Esquire………..….………………………….…..C9

Timesheets for David T. Bolger, Esquire ………………………...……………..C10

Timesheets for Marsha E. Flora, Esquire……………………………………...…C15

September 17, 2007 Memorandum Opinion…………………………………….C20

Final Jury Instruction No. 15………………………………………………….C41

Durkin's Interrogatory Response No. 28…………………………………….…..C43

September 10, 2003 Correspondence from D. Durkin to M. Prouty (DUR-52)……..C48

Houck's Handwritten Notes dated September 11, 2003 (DUR-66)……………....C50

November 27, 2006 Memorandum and Amended Order………..……………….C53

Special Council Meeting Minutes November 6, 2006……………………….C63

City of Newark New Castle County, Delaware Audit Report December 31, 2006….C65

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* | |
| vs. | |
| CITY OF NEWARK, et al., *Defendants* | CASE NO. 04-0163-GMS |
| and | |
| CITY OF NEWARK, *Third-Party Plaintiff* | |
| vs. | |
| DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | |
| | |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, **Intervenor** | |

### THIRD SUPPLEMENTAL UNSWORN DECLARATION OF
### PAUL A. LOGAN, ESQUIRE
### IN SUPPORT OF PLAINTIFF'S MOTION (D.I. 307) FOR ATTRONEYS' FEES, COSTS
### AND POST-JUDGMENT INTEREST PURSUANT TO 42 U.S.C. §1988 AND
### FEDERAL RULE OF CIVIL PROCEDURE 54

I, Paul A. Logan, Esquire, being of legal age, do herby certify as follows:

1.     I am an  attorney for Plaintiff and Third Party Defendant Donald M. Durkin Contracting, Inc. ("Durkin") in the above referenced matter, and as such, I have personal knowledge of the facts and circumstances of this case and of the matter contained within this Second Supplemental Declaration.  If called as a witness, I am competent to testify as to the facts set forth herein.

2.    I previously submitted a Declaration (D.I. 309 at Appendix ("App.") A1-A19) in support of Durkin's Motion for Attorneys' Fees, Costs and Post-Judgment Interest pursuant to 42 U.S.C. §1988 and Federal Rule of Civil Procedure 54 (D.I. 307) filed on October 25, 2006, a Supplemental Declaration filed on January 26, 2007 (D.I. 344 at A715-A735) and a Second Supplement Declaration on filed October 12, 2007 (D.I. 364 at A893-A899).

3.    I make this Third Supplemental Declaration in support of Durkin's Motion for Attorneys' Fees, Costs and Post-Judgment Interest pursuant to 42 U.S.C. §1988 and Federal Rule of Civil Procedure 54 to supplement the attorneys' fees and costs incurred.

4.    I incorporate herein all of my previous statements in my original Declaration and my Supplemental Declarations.

### Division of Labor

5.    As previously explained in my prior declarations (A-10, ¶64), my firm employed a division of labor to avoid unnecessary duplication of effort in preparing and trying this case.

6.    I assigned Marsha E. Flora, Esquire the task of fully preparing this case for trial. Ms. Flora began her preparation on May 23, 2006.  She was the primary attorney preparing this matter for trial.

7.    Based on the size of this case, the complex issues involved, the production of over 50,000 pages of documents, over twenty (20) witnesses, thousands of photographs, multiple sets of construction drawings, seven (7) engineering experts and the many legal issues that needed to be researched and briefed, from the end of May 2006 to the conclusion of this trial, Ms. Flora handled only this matter.

C2

8.    I asked that Ms. Flora devote her full attention to this matter from the end of May until the conclusion of the trial also because this case involved the loss of millions of dollars and the total destruction of Durkin's business.

9.    By contrast during this same time period I handled other matters for the firm.

10.    For illustration purposes only, in June 2006 I prepared for and conducted a trial in Philadelphia County, Pennsylvania before Judge Bernstein (Philadelphia County Docket No. 003858 April Term, 2004).    In July 2006 I had various court conferences, conducted zoning hearings, and prepared for a trial in Montgomery County Court of Common Pleas (Montgomery County Docket No. 97-10217), ultimately negotiating a settlement.    During July I also conducted various depositions in several large construction cases.    In August, I handled various court conferences, depositions, in addition to conducting a preliminary injunction hearing for Solebury Township and an unemployment appeal for Chalfont-New Britain Township Joint Sewage Authority.    Also during this time, as Solicitor for Solebury Township, I attended various monthly meetings including but not limited to, Township Board meetings, Zoning Hearing Board meetings, Planning Commission meetings.    I am also counsel for Chalfont-New Britain Township Joint Sewage Authority and Newtown, Bucks County, Joint Municipal Authority and attended various meetings for both during this time period.

11.    As set forth in my time records, from May 2006 until the time of trial, I also conducted depositions in this matter. *See e.g.* A354-A368.

12.    From May 2006 up to trial in this matter David T. Bolger, Esquire also handled other matters for the firm.    The matters Mr. Bolger handled during this time included preparing for trial as lead counsel in a $12 million complex construction case for trial in Dauphin County Court of Common Pleas that was tried in January of 2007.

**C3**

13.    Ms. Flora's pretrial activities included researching and briefing all matters, including but not limited to notice issues, breach of contract issues, civil rights violations, liberty interests, judicial admissions, expert testimony, sharing of experts, spoliation, joint defense, attorney client privilege, attorney work product, discovery abuses and sanctions.  During the pretrial phase of this matter, Ms. Flora drafted eight (8) Motions in Limine, four (4) Motions and supplemental briefs for sanctions for discovery abuses, a motion to strike the City's Motions in Limine, drafted answers to ten (10) Motions in Limine and five (5) reply briefs in support of Durkin's Motions in Limine.  She also handled extensive document management, prepared exhibits for trial, and prepared the extensive pretrial submissions including, but not limited to, jury instructions, voir dire, statement of uncontested facts and Durkin's trial brief.

14.    During this same period, while Ms. Flora prepared this case for trial, I mainly focused on the remaining depositions that needed to be conducted (*see e.g.* A354-A368) and concentrated on trial strategy (*see e.g.* A365-A368, A376, A379-A385).  At the same time, Mr. Bolger mainly focused on the damages (*see e.g.* A476), preparing Mr. Filshill and Mr. Ramsey for trial (*see e.g.* A492, A496-A498), helping me complete the remaining depositions (*see e.g.* A475-A481) and the review and editing of briefs and pretrial (*see e.g.* A483-A491, A493).

### Attorneys' Fees Paid to Date by Durkin

15.    As set forth *infra*, the total attorneys fees that are due and owing my firm is **$1,315,750.00**.

16.    This matter could have been streamlined without incurring the majority of these attorneys had the City complied with its discovery obligations and not improperly withheld issue dispositive documents.

C4

17.     Durkin sought a prompt resolution to this dispute by filing a Motion for Preliminary and Permanent Injunction on April 7, 2004 (D.I. 6).  I believe that had the City not improperly withheld a January 20, 2004 memorandum (NEW16304) (as well as other documents) that indicated the City was well aware of the legal infirmities in the steps that it took to terminate Durkin, Durkin would have likely been successful on its Motion and this matter could have been resolved early, before my firm incurred the majority of the attorneys' fees.

18.     To date, my firm has only received $410,555.88, less than 32% of the total fees owed.

19.     This matter is not a contingent fee matter; therefore, the reality is that my firm has been financing the majority of the legal representation for the Durkins.

20.     Under these circumstances, I believe that it is appropriate to apply an enhancement multiplier on the lodestar to compensate for the delay in payment.

### Federal Insurance Company Fees and Costs

21.     The jury's verdict included $1,740,751.38 for unpaid consultant/professional/expenses (Jury Verdict I.A.3).  This amount included $1,033,104.70 for the fees and costs incurred by Federal Insurance Company, Durkin's surety.

22.     The remaining amount of $707,646.68 [$1,740,751.38 - $1,033,104.70 = $707,646.68] represent Durkin's fees.

### Supplemental Total Lodestar Time for Litigation Case Assessment, Development and Evaluation[1]

23.     Litigation case assessment, development and evaluation includes fact investigation and development, analysis/strategy, work with experts and consultants, document

---

[1] Litigation Case Assessment, Development and Evaluation is reflected on my firm's timesheets with the Phase Code "L100".

C5

and file management, budgeting, settlement (and non-binding ADR, if applicable), and other case assessment, development and evaluation.

24.    In addition to the time set forth in my Supplemental Declaration (D.I. 364) and my Second Supplemental Declaration, I spent an additional .8 hours at $250 per hour for $200.00 on litigation case assessment, development and evaluation.[2]  *See* App. C8-C9.

25.    The total for litigation case assessment, development and evaluation that my firm is seeking is **$330,063.00**.[3]

### Total Lodestar Time for Post Trial

26.    In addition to the time set forth in my Supplemental Declaration (D.I. 344 and my Second Supplemental Declaration (D.I. 364) Marsha E. Flora, Esquire spent an additional 17.2 hours at $200 per hour for $3,440.00[4] on post trial activities.[5]  *See* App. C10-C14.

27.    The total for post trial activities that my firm is seeking **$230,480.00.**[6]

### Total Lodestar Time for Appeal Activities

28.    In addition to the time set forth in my Second Supplemental Declaration (D.I. 364) David T. Bolger, Esquire spent 19 hours at $250 per hour for $4,750.00[7] on app eal activities. *See* App. C15-C19.

29.    The total for appeal activities that my firm is seeking is **$24,750.00.**[8]

### Total Lodestar Value

30.    The total lodestar value for which my firm is currently seeking reimbursement is **$1,315,750.00.**[9]  My firm will provide a supplemental Motion discussing the fees for all

---

[2] This time is current up to November 15, 2007.
[3] $329,863.00 (as reflected in ¶11, A896 (D.I. 364)) + $200.00 = $330,063.00.
[4] This time is current up to November 15, 2007.
[5] Post Trial Activities is reflected on my firm's timesheets with Phase Code "L400".
[6] $227,040.00 (as reflected in ¶16, A896 (D.I. 364)) + $3,440.00 = $230,480.00.
[7] This time is current up to October 31, 2007.
[8] $20,000.00 (as reflect in ¶19, A897 (D.I. 364)) + $4,750.00 = $24,750.00.

C6

additional post trial and appeal activities for which we will be seeking reimbursement and which are not included herein. My firm will also provide a supplemental Motion discussing additional costs incurred that are not reflected in my prior Declarations.

I declare under penalty of perjury that the foregoing is true and correct. Executed on 3rd December, 2007.

**POWELL, TRACHTMAN, LOGAN, CARRLE & LOMBARDO, P.C.**

By: /s/ Paul A. Logan_____
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
*Attorneys for Plaintiff and Third Party*
*Defendant Donald M. Durkin Contracting*

---

[9] $1,308,760.00 (as reflect in ¶20, A897 (D.I. 364)) + $8,390.00 - $1,400 (Mr. Bolger legal training) = $1,315,750.00.

# Paul Logan, Esquire
# Timesheets

# Powell Trachtman Logan Carrle & Lombardo

**Timekeeper: 002**  Paul A. Logan

**Date worked: 10/4/2007**

| | | | Time qty. |
|---|---|---|---|
| **Client:** 3514 | Durkin Contracting, Inc., Donald M. | | |
| **Matter:** 04 | City of Newark Project | | |
| **Location** : KOFP | King of Prussia | | |
| **Phase** : L100 | Case Assessment, Development and Administration | | |
| **Task** : L120 | Analysis/Strategy | | |
| **Activity:** A111 | Other | | |
| **Billable:** Billable | | | 0.80 |

**Narrative:** Review Stipulation re: Post Trial briefing    Transferred

**Total for Date worked: 10/4/2007**

| | | |
|---|---|---|
| | Billable Time (100.00%): | 0.80 |
| | Non-Billable Time ( 0.00%): | 0.00 |
| | Total Time: | 0.80 |

**Total for Timekeeper: 002**    Paul A. Logan

| | | |
|---|---|---|
| | Billable Time (100.00%): | 0.80 |
| | Non-Billable Time ( 0.00%): | 0.00 |
| | Total Time: | 0.80 |

**Grand Total**

| | | |
|---|---|---|
| | Billable Time (100.00%): | 0.80 |
| | Non-Billable Time ( 0.00%): | 0.00 |
| | Total Time: | 0.80 |

# David Bolger, Esquire
# Timesheets

# Powell Trachtman Logan Carrle & Lombardo

| Timekeeper: 030 | David T. Bolger | |
|---|---|---|

## Date worked: 10/2/2007

| | | Time qty. |
|---|---|---|
| Client: 3514 | Durkin Contracting, Inc., Donald M. | 6.20 |
| Matter: 04 | City of Newark Project | |
| Location : KOFP | King of Prussia | |
| Phase   : L500 | Appeal | |
| Task    : L520 | Apellate Briefs | |
| Activity: A104 | Review/analyze | |
| Billable: Billable | | Transferred |

Narrative: Review opening brief of City, preliminary discussions with PAL and MEF, review and e-mail stipulation on attorney fee claim to David Tulley

| Total for Date worked: 10/2/2007 | Billable Time    (100.00%): | 6.20 |
|---|---|---|
| | Non-Billable Time    ( 0.00%): | 0.00 |
| | Total Time: | 6.20 |

## Date worked: 10/3/2007

| | | Time qty. |
|---|---|---|
| Client: 3514 | Durkin Contracting, Inc., Donald M. | 3.40 |
| Matter: 04 | City of Newark Project | |
| Location : KOFP | King of Prussia | |
| Phase   : L500 | Appeal | |
| Task    : L510 | Appellate Motions and Submissions | |
| Activity: A104 | Review/analyze | |
| Billable: Billable | | Transferred |

Narrative: Review caselaw cited by City in brief, analyze and research similar cases

| Total for Date worked: 10/3/2007 | Billable Time    (100.00%): | 3.40 |
|---|---|---|
| | Non-Billable Time    ( 0.00%): | 0.00 |
| | Total Time: | 3.40 |

C11

Fay Hunsberger (FBH)

# Powell Trachtman Logan Carrle & Lombardo

| Timekeeper: 030 | David T. Bolger | | |
|---|---|---|---|

**Date worked: 10/8/2007**

| | | | Time qty. |
|---|---|---|---|
| **Client:** 3514 | Durkin Contracting, Inc., Donald M. | | 1.30 |
| **Matter:** 04 | City of Newark Project | | |
| **Location :** KOFP | King of Prussia | | |
| **Phase  :** L500 | Appeal | | |
| **Task   :** L510 | Appellate Motions and Submissions | | |
| **Activity:** A104 | Review/analyze | | |
| **Billable:** Billable | | | |
| **Narrative:** Review and forward answering brief from City of Newark | | | Transferred |

**Total for Date worked: 10/8/2007**

| | Billable  Time  (100.00%): | 1.30 |
|---|---|---|
| | Non-Billable  Time  ( 0.00%): | 0.00 |
| | Total Time: | 1.30 |

**Date worked: 10/9/2007**

| | | | Time qty. |
|---|---|---|---|
| **Client:** 3514 | Durkin Contracting, Inc., Donald M. | | 3.30 |
| **Matter:** 04 | City of Newark Project | | |
| **Location :** KOFP | King of Prussia | | |
| **Phase  :** L500 | Appeal | | |
| **Task   :** L510 | Appellate Motions and Submissions | | |
| **Activity:** A104 | Review/analyze | | |
| **Billable:** Billable | | | |
| **Narrative:** Review and evaluate answering brief from City of Newark, discuss with client | | | Transferred |

**Total for Date worked: 10/9/2007**

| | Billable  Time  (100.00%): | 3.30 |
|---|---|---|
| | Non-Billable  Time  ( 0.00%): | 0.00 |
| | Total Time: | 3.30 |

Fay Hunsberger (FBH)

# Powell Trachtman Logan Carrle & Lombardo

| Timekeeper: 030 | David T. Bolger |
|---|---|

## Date worked: 10/11/2007

| | | Time qty. |
|---|---|---|
| Client: 3514 | Durkin Contracting, Inc., Donald M. | 3.10 |
| Matter: 04 | City of Newark Project | |
| Location : KOFP | King of Prussia | |
| Phase   : L500 | Appeal | |
| Task    : L510 | Appellate Motions and Submissions | |
| Activity: A103 | Draft/revise | |
| Billable: Billable | | |
| Narrative: Review and revise brief for counsel fees | | Transferred |

| Total for Date worked: 10/11/2007 | | |
|---|---|---|
| | Billable Time    (100.00%): | 3.10 |
| | Non-Billable Time  ( 0.00%): | 0.00 |
| | Total Time: | 3.10 |

## Date worked: 10/24/2007

| | | Time qty. |
|---|---|---|
| Client: 3514 | Durkin Contracting, Inc., Donald M. | 0.80 |
| Matter: 04 | City of Newark Project | |
| Location : KOFP | King of Prussia | |
| Phase   : L500 | Appeal | |
| Task    : L510 | Appellate Motions and Submissions | |
| Activity: A104 | Review/analyze | |
| Billable: Billable | | |
| Narrative: Review filings by insurance company to withdraw intervenor status | | Transferred |

| Total for Date worked: 10/24/2007 | | |
|---|---|---|
| | Billable Time    (100.00%): | 0.80 |
| | Non-Billable Time  ( 0.00%): | 0.00 |
| | Total Time: | 0.80 |

Fay Hunsberger (FBH)

dnesday, November 28, 2007

Page 3

C13

# Powell Trachtman Logan Carrle & Lombardo

| Timekeeper: 030 | David T. Bolger | | Time qty. |
|---|---|---|---|
| **Date worked: 11/8/2007** | | | |
| Client: 3514 | Durkin Contracting, Inc., Donald M. | | 0.90 |
| Matter: 04 | City of Newark Project | | |
| Location : KOFP | King of Prussia | | |
| Phase : L500 | Appeal | | |
| Task : L510 | Appellate Motions and Submissions | | |
| Activity: A107 | Communicate (other outside counsel) | | |
| Billable: Billable | | | |
| Narrative: Discussion with R. Eastburn regarding appellate posture | | | Open |

| | | | |
|---|---|---|---|
| **Total for Date worked: 11/8/2007** | Billable Time | (100.00%): | 0.90 |
| | Non-Billable Time | ( 0.00%): | 0.00 |
| | Total Time: | | 0.90 |

| | | | |
|---|---|---|---|
| **Total for Timekeeper: 030** | **David T. Bolger** | | |
| | Billable Time | (100.00%): | 19.00 |
| | Non-Billable Time | ( 0.00%): | 0.00 |
| | Total Time: | | 19.00 |

| | | | |
|---|---|---|---|
| **Grand Total** | Billable Time | (100.00%): | 19.00 |
| | Non-Billable Time | ( 0.00%): | 0.00 |
| | Total Time: | | 19.00 |

Fay Hunsberger (FBH)

C14

# Marsha Flora, Esquire
# Timesheets

# Powell Trachtman Logan Carrle & Lombardo

| Timekeeper: 132 | Marsha E. Flora | |
|---|---|---|

**Date worked: 10/9/2007**

| | | Time qty. |
|---|---|---|
| Client: 3514 | Durkin Contracting, Inc., Donald M. | |
| Matter: 04 | City of Newark Project | |
| Location : KOFP | King of Prussia | |
| Phase : L400 | Trial Preparation and Trial | |
| Task : L460 | Post-Trial Motions and Submissions | |
| Activity: A102 | Research | |
| Billable: Billable | | |
| Narrative: Conduct research regarding 1988 Petition. Prepare supplemental 1988 Petition. | | Transferred | 2.20 |

| | | |
|---|---|---|
| **Total for Date worked: 10/9/2007** | Billable Time    (100.00%): | 2.20 |
| | Non-Billable Time    ( 0.00%): | 0.00 |
| | **Total Time:** | **2.20** |

**Date worked: 10/10/2007**

| | | Time qty. |
|---|---|---|
| Client: 3514 | Durkin Contracting, Inc., Donald M. | |
| Matter: 04 | City of Newark Project | |
| Location : KOFP | King of Prussia | |
| Phase : L400 | Trial Preparation and Trial | |
| Task : L460 | Post-Trial Motions and Submissions | |
| Activity: A103 | Draft/revise | |
| Billable: Billable | | |
| Narrative: Prepare supplemental declaration for Paul A. Logan, Esquire in support of 1988 Petition. Prepare supplemental 1988 petition. Review and analzye timesheets. Prepare appendix for supplemental 1988 Petition. Review and analzye City's reply brief in support of contract damages. | | Transferred | 7.90 |

| | | |
|---|---|---|
| **Total for Date worked: 10/10/2007** | Billable Time    (100.00%): | 7.90 |
| | Non-Billable Time    ( 0.00%): | 0.00 |
| | **Total Time:** | **7.90** |

Fay Hunsberger (FBH)

C16

# Powell Trachtman Logan Carrie & Lombardo

**Timekeeper: 132**   **Marsha E. Flora**

**Date worked: 10/11/2007**

| | | Time qty. |
|---|---|---|
| | | 1.50 |
| **Client: 3514** | Durkin Contracting, Inc., Donald M. | |
| **Matter: 04** | City of Newark Project | |
| **Location : KOFP** | King of Prussia | |
| **Phase : L400** | Trial Preparation and Trial | |
| **Task : L460** | Post-Trial Motions and Submissions | |
| **Activity: A102** | Research | |
| **Billable: Billable** | | |
| **Narrative:** Conduct research regarding appeal standards.   Review cases regarding same. | | Transferred |

| | | |
|---|---|---|
| **Total for Date worked: 10/11/2007** | Billable Time    (100.00%): | 1.50 |
| | Non-Billable Time   ( 0.00%): | 0.00 |
| | **Total Time:** | **1.50** |

**Date worked: 10/12/2007**

| | | Time qty. |
|---|---|---|
| | | 1.30 |
| **Client: 3514** | Durkin Contracting, Inc., Donald M. | |
| **Matter: 04** | City of Newark Project | |
| **Location : KOFP** | King of Prussia | |
| **Phase : L400** | Trial Preparation and Trial | |
| **Task : L460** | Post-Trial Motions and Submissions | |
| **Activity: A101** | Plan and prepare for | |
| **Billable: Billable** | | |
| **Narrative:** Prepare supplemental 1988 Petition for filing. | | Transferred |

| | | |
|---|---|---|
| **Total for Date worked: 10/12/2007** | Billable Time    (100.00%): | 1.30 |
| | Non-Billable Time   ( 0.00%): | 0.00 |
| | **Total Time:** | **1.30** |

Fay Hunsberger (FBH)

C17

# Powell Trachtman Logan Carrle & Lombardo

| Timekeeper: 132 | Marsha E. Flora | |
|---|---|---|

**Date worked: 10/29/2007**

| | | Time qty. |
|---|---|---|
| Client: 3514 | Durkin Contracting, Inc., Donald M. | 1.50 |
| Matter: 04 | City of Newark Project | |
| Location : KOFP | King of Prussia | |
| Phase : L400 | Trial Preparation and Trial | |
| Task : L460 | Post-Trial Motions and Submissions | |
| Activity: A104 | Review/analyze | |
| Billable: Billable | | |
| **Narrative:** Review and analyze St. Paul's motion, review case law regarding time to appeal regarding civil rights order; conference with Paul Logan, Esquire regarding case status and next steps. | | Transferred |

| Total for Date worked: 10/29/2007 | Billable Time (100.00%): | 1.50 |
|---|---|---|
| | Non-Billable Time ( 0.00%): | 0.00 |
| | Total Time: | 1.50 |

**Date worked: 11/14/2007**

| | | Time qty. |
|---|---|---|
| Client: 3514 | Durkin Contracting, Inc., Donald M. | 0.30 |
| Matter: 04 | City of Newark Project | |
| Location : KOFP | King of Prussia | |
| Phase : L400 | Trial Preparation and Trial | |
| Task : L460 | Post-Trial Motions and Submissions | |
| Activity: A105 | Communicate (in firm) | |
| Billable: Billable | | |
| **Narrative:** Conference with Paul Logan, Esquire regarding next steps and 1988 Petition. | | Transferred |

| Total for Date worked: 11/14/2007 | Billable Time (100.00%): | 0.30 |
|---|---|---|
| | Non-Billable Time ( 0.00%): | 0.00 |
| | Total Time: | 0.30 |

Fay Hunsberger (FBH)

C18

# Powell Trachtman Logan Carrle & Lombardo

| Timekeeper: 132 | Marsha E. Flora | | | | Time qty. |
|---|---|---|---|---|---|
| **Date worked: 11/15/2007** | | | | | |
| | Client: 3514 | Durkin Contracting, Inc., Donald M. | | | 2.50 |
| | . Matter: 04 | City of Newark Project | | | |
| | Location : KOFP | King of Prussia | | | |
| | Phase : L400 | Trial Preparation and Trial | | | |
| | Task : L460 | Post-Trial Motions and Submissions | | | |
| | Activity: A104 | Review/analyze | | | |
| | Billable: Billable | | | | |
| | | | | | Transferred |

Narrative: Review and analyze City's response to 1988 Petition. Conduct research regarding same.

| Total for Date worked: 11/15/2007 | | Billable Time | (100.00%): | 2.50 |
|---|---|---|---|---|
| | | Non-Billable Time | ( 0.00%): | 0.00 |
| | | **Total Time:** | | **2.50** |

| Total for Timekeeper: 132 | Marsha E. Flora | Billable Time | (100.00%): | 17.20 |
|---|---|---|---|---|
| | | Non-Billable Time | ( 0.00%): | 0.00 |
| | | **Total Time:** | | **17.20** |

| Grand Total | | Billable Time | (100.00%): | 17.20 |
|---|---|---|---|---|
| | | Non-Billable Time | ( 0.00%): | 0.00 |
| | | **Total Time:** | | **17.20** |

Fay Hunsberger (FBH)

Page 4

C19

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| DONALD M. DURKIN CONTRACTING, INC., | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | |
| CITY OF NEWARK, et al., | ) ) | |
| Defendants | ) ) | |
| and | ) ) | C.A. No. 04-163 GMS |
| CITY OF NEWARK, et al., | ) ) | |
| Third-Party Plaintiff | ) ) | |
| v. | ) ) | |
| DONALD M. DURKIN CONTRACTING, INC., AND FEDERAL INSURANCE COMPANY, | ) ) ) ) | |
| Third-Party Defendants | ) ) | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

This matter comes before the court on the renewed motion of the Defendants, City of Newark, Delaware, and its City Council members in their official capacities only, (collectively, "the City") for judgment as a matter of law, or in the alternative, for a new trial pursuant to Federal Rules of Civil Procedure 50(b) and 59(a).

## II.    BACKGROUND

Much of the factual and procedural background of this matter has been recited extensively in the court's prior Memoranda and Orders. As such and because the court writes primarily for the parties, the court will address only the relevant facts herein.

Prior to trial, the court granted summary judgment against the City for breach of the Construction Contract between it and the Plaintiff Donald M. Durkin Contracting, Inc. ("Durkin") for the construction of a water reservoir for the City of Newark. (D.I. 257.) The court's decision was based on the fact that the City did not provide Durkin the seven-day notice of termination—a requirement in both Articles 15.2 (termination for cause) and 15.4 (termination for convenience) of the Construction Contract. Trial began on September 26, 2006, and concluded on October 5, 2006.

On October 3, 2006, the City moved for judgment as a matter of law (JMOL) pursuant to Federal Rule of Civil Procedure 50(a) on the measure of damages for the breach of contract claim, the civil rights claim, and the conversion claim. The court reserved ruling on the JMOL motion and let the issues go to the jury. The jury awarded Durkin $11.6 million for damages on its breach of contract claim, $25 million in compensatory damages on its civil rights claim, and $1 on its conversion claim. The jury also returned a verdict in favor of URS Corporation ("URS")[1] and against the City in the amount of $283,387.87 for attorneys' fees and costs. On October 12, 2006, the court denied the City's Rule 50(a) motion as moot in light of the jury verdict, but permitted the City to renew its motion pursuant to the provisions of Fed. R. Civ. P.

---

[1] URS is a third-party defendant who had a contract with the City for engineering work on the City's reservoir project.

2

50(b). (D.I. 299.) On October 24, 2006, the City renewed its motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), and filed a motion for a new trial or remittitur pursuant to Rule 59. (D.I. 303, 304.)

## III.    LEGAL STANDARD

### A.  Motion for Judgment as a Matter of Law

To prevail on a renewed motion for judgment as a matter of law following a jury trial and verdict, the moving party "'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings.'" *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (*quoting Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)). "Substantial evidence" is defined as "such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp.*, 732 F.2d at 893.

The court should only grant the motion "if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (*citing Wittekamp v.. Gulf Western Inc.*, 991 F.2d 1137, 1141 (3d Cir. 1993)). "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube*, 4 F.3d at 1166 (*citing Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 190 (3d Cir. 1992)). Rather, the court

must resolve all conflicts of evidence in favor of the non-movant. *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991); *Perkin-Elmer Corp.*, 732 F.2d at 893.

"The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube*, 4 F.3d at 1166 (*quoting Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir. 1978)). In conducting such an analysis, "the court may not determine the credibility of the witnesses nor 'substitute its choice for that of the jury between conflicting elements of the evidence.'" *Syngenta Seeds, Inc. v. Monsanto Co.*, 409 F. Supp. 2d 536, 539 (D. Del. 2005) (*quoting Perkin-Elmer Corp.*, 732 F.2d at 893).

## B. Motion for a New Trial

Federal Rule of Civil Procedure 59(a) provides that:

> [a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . .

Fed. R. Civ. P. 59(a). It is within the discretion of the district court whether or not to grant a new trial. *Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1017 (3d Cir. 1995). Although Rule 59 does not detail the grounds on which a new trial may be granted, the following grounds have been recognized by the Third Circuit: "the verdict is against the clear weight of the evidence; damages are excessive; the trial was unfair; and that substantial errors were made in the admission or rejection of evidence or the giving or refusal of instructions." *Lightning Lube, Inc. v. Witco Corp.*, 802 F. Supp. 1180, 1186 (D.N.J. 1992), *aff'd* 4 F.3d 1153 (3d Cir. 1993).

4

When reviewing a motion for a new trial, a court must view the evidence in the light most favorable to the party for whom the verdict was returned. *Wagner v. Firestone Tire & Rubber Co.*, 890 F.2d 652, 656 (3d Cir. 1989). Where a motion for a new trial is based primarily on the weight of the evidence, the discretion of the trial court is limited. *Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1993); *see also Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 366 (3d Cir. 1999). Indeed, "new trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Williamson*, 926 F.2d at 1344; *see also Greenleaf*, 174 F.3d at 366. Although a court is permitted to consider the credibility of trial witnesses and to weigh evidence, it must "exercise restraint to avoid usurping the jury's primary function." *Hurley v. Atl. City Police Dep't*, 933 F. Supp. 396, 403 (D.N.J. 1996), *aff'd* 174 F.3d 95 (3d Cir. 1999).

## IV.   DISCUSSION

### C. Durkin's Breach of Contract Claim

The City moves for judgment as a matter of law, or for a new trial, on the measure of damages and the amount of damages the jury awarded to Durkin on the breach of contract claim. The parties originally proposed competing theories on the measure of damages in the form of motions in limine. The court considered such issues to be, not of an evidentiary nature but rather, legal issues, which were effectively untimely summary judgment motions. (D.I. 244.) The amount of damages due to Durkin because of the City's breach remained, however, a triable issue for the jury. As such, it was the responsibility of each party to present evidence necessary

5

to support its legal theory of damages, and to refute the opposing party's damages case. Further, the parties were also responsible for advocating jury instructions for the court to consider, and interrogatories that would allow the jury to delineate the basis for the amount of damages awarded. This approach would allow the court to decide the legal issue in the context of jury instructions, or fix the amount of damages post-trial, if necessary.

The City argues that the court should grant judgment as a matter of law, or grant a new trial, for breach of contract damages because: (1) the jury's damage calculation is contrary to the Construction Contract and Delaware law; (2) the damage award is grossly excessive; (3) there is newly discovered evidence that would likely alter the outcome of the trial;[2] and (4) Durkin's changing damages claim caused the City unfair surprise at trial.[3]   In response, Durkin contends that the City waived objection to the breach of contract damage jury instruction and that the jury's award was consistent with the Construction Contract and Delaware law. (D.I. 351.)

The record reflects that the City did maintain, from as early as the pretrial conference up until its closing argument, that Durkin's proposed measure of damages was contrary to the Construction Contract and Delaware law. (D.I. 152, 154 –motions in limine; Tr. 809, 884 –

---

[2] The court has considered the City's contention of newly discovered evidence and finds that the City fails to articulate any tenable basis as to why the witness, Mr. Ronald Scott Killen, could not have been discovered earlier. The time to discover facts and witnesses is during discovery. Durkin asserts, and the City doesn't dispute, that the City only took three depositions during discovery. This is telling of the City's attitude towards the litigation, considering the issues at stake, and the subject matter involved. The court rejects this contention as a basis for a new trial but will reserve on whether a new trial on damages will be granted on other grounds, pending supplemental briefing as directed.

[3] The court finds no support in the City's argument that Durkin's damages case constituted unfair surprise. Indeed, after initially objecting at trial, Mr. Cottrell, trial counsel for the City, acknowledged that the information Durkin presented on damages was previously provided to the City albeit in a different format and reflecting a higher damages calculation. (Tr. 884-885.) Further, in a conference to discuss a jury question, Ms. Petrone, trial counsel for the City stated: "[W]e certainly did agree to the itemized statement of damages. And we discussed that with Your Honor. And that came in." (Tr. 1271.) Moreover, the City's motion in limine on the valuation of damages reflects its understanding, through discovery, of the approach Durkin was proffering as a measure of damages. (D.I. 152 at 7.)

6

objections to Durkin's damages testimony; D.I. 277 —Rule 50(a) motion.)   Despite the City's position and the court's reservation on the legal issue, however, the City failed to 1) adduce testimony in support of its theory; 2) propose an instruction consistent with its Rule 50(b) position that would have guided the jury on its proffered measure of damages; or 3) otherwise object to the instruction given, prior to the jury's deliberation.   This failure was in spite of the court's suggestion at the conclusion of the October 4, 2006 prayer conference that the parties provide the jury with two interrogatories—one based on each legal theory for damages.   Having received the next morning the instructions and the verdict form that the parties agreed on, the court adopted the final set of jury instructions and interrogatories without any further objection or discussion with the parties regarding breach of contract damages.   (Tr. 1185-1187.)   Thus, the court finds that the City did waive any objection to the jury instructions and interrogatories on the issue.[4]

      Nonetheless, the court considers the City's post-trial arguments to determine whether upholding the jury's verdict on the breach of contract damages would be plain error or a miscarriage of justice.   The plain error determination is left to the sole discretion of the court, and should be exercised sparingly. *Hurley*, 174 F.3d at 123; *Watson v. SEPTA*, 207 F.3d 207, 222 (3d Cir. 2000), *cert. denied*, 531 U.S. 1147 (2001).   It is the burden of the moving party to

---

[4] The City contends in a footnote to its brief that it submitted a separate damages instruction for the court's consideration. (D.I. 346 at 18 citing Tr. 1148.)   As Durkin points out, however, there is no record of the City's purported instruction and the City does not provide a copy nor recite the proposed instruction in its post-trial submissions.   Further, the "submission" that the City points to in its brief occurred prior to a later discussion on the very issue, during which time counsel for the City stated "It might be simpler, your Honor, to leave it to the first paragraph, the measure of damages is the loss actually sustained as a result of the breach of contract." (Tr. 1166.) The City's counsel later repeated "But I still think maybe the best course of action is simply to leave it the measure of damages, the loss actually sustained as a result of the breach of contract." (Tr. 1167.)   This is the very language the court charged to the jury in Jury Instruction No. 21. (D.I. 290, Tr. 1206.)

establish plain error. *United States v. Guadalupe,* 402 F.3d 409, 410 (3d Cir. 2005), *cert. denied,* 547 U.S. 1123 (2006); *see United States v. Olano,* 507 U.S. 725, 734-735 (1993). If the party establishes that: (1) the Court erred; (2) the error was obvious under the law at the time of review; and (3) the error (if any) affected the substantial right, i.e., the outcome of the proceeding, then the Court may grant the moving party's motion. *Guadalupe,* 402 F.3d at 410. Even if the jury's findings are supported by substantial evidence, where the legal conclusions implied by the jury's verdict cannot be supported in law by those findings, the court may grant judgment as a matter of law. *Pannu,* 155 F.3d at 1348 (*quoting Perkin-Elmer,* 732 F.2d at 893).

There is no dispute that the jury's findings were based on Durkin's Itemized Statement of Damages, which tied the damages requested to Article 11 of the Construction Contract. (*Compare* D.I. 352 at A255, Statement *with* D.I. 291, Verdict Form.) Durkin acknowledges that the Construction Contract was silent on the measure of damages in the event of the City's breach; however, Durkin reasons that the contractual cost of work calculation under Article 11 is a fair and reasonable procedure for determining damages. (D.I. 351 at 12.) For the same reasons that the measure of damages set forth in Articles 15.2 and 15.4 do not apply, the cost of work method in Article 11 is also an inappropriate measure of damages. Namely, these sections explicitly operate under specific conditions set forth in the Contract. Well-recognized canons of contract interpretation mandate that where a contract is explicit on an issue, it operates to the exclusion of contrary interpretations. *See Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del. 1992) ("It is an elementary canon of contract construction that the intent of the parties must be ascertained from the language of the contract. Only when there are ambiguities may a court

look to collateral circumstances."); *City Investing Co. Liquidating Trust v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993) ("If a writing is plain and clear on its face, *i.e.*, its language conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent.").

The court finds that a plain reading of the Construction Contract directs that Article 11 was intended to operate as a measure for calculating change orders agreed upon by the parties, and not as a measure of damages. This conclusion is supported by the existence of those provisions of the Contract that explicitly state the measure of damages in the event of a proper termination, with or without cause (Article 15), as well as those provisions that specify the procedure and the limited circumstances in which the parties can invoke changes to the contract price. (D.I. 346 at 8-9) (discussing Article 11's provisions generally and Article 10.3, which provides that the contractor is not entitled to an increase in the contract price with respect to any work performed that is not required by the contract, unless amended by Articles 3.5, 3.6, 6.23 or 13.9.)

The City proposes that the court should convert its improper termination for cause to a constructive termination for convenience, and then look to the Construction Contract's provision on termination for convenience for the measure of damages. The court finds that the City's approach would also be an improper measure of the damages due to Durkin. The court rejects the applicability of the federal common law doctrine of constructive termination for convenience in this case.

9

As noted above, the Construction Contract explicitly required the City to provide notice to Durkin of termination regardless of whether such termination was for convenience (Article 15.4) or for cause (Article 15.2).[5]  (D.I. 346 at A42-A43.)  These clauses must be viewed in the context of the whole contract, which includes Article 15.1, allowing the City to suspend work "at any time and without cause."  (Id. at A42.)  The contract was therefore explicit as to the procedural aspects and notice requirements with respect to the parties regarding any stoppage of work.  These explicit intentions of the parties cannot be set aside in favor of applying a judicially-created, federal common law doctrine.  *Klein v. United States,* 285 F.2d 778, 783 (Ct. Cl. 1961) (rejecting the application of construction termination for convenience when the "rights to terminate for default, or for the convenience of the Government, were expressly defined in the contract").

Indeed, it is because of the City's failure to provide the required seven-day notice that there is an outstanding question of damages due to the City's breach.  It would be circular and illogical to constructively apply the damages measure of Article 15.4, when under the provision's plain and unambiguous language, it too would be breached as a result of the City's same conduct that warranted damages under Article 15.2.  *See Sonitrol Holding Co. v. Marceau Investissements,* 607 A.2d 1177, 1183 (Del. 1992) ("Under general principles of contract law, a contract should be interpreted in such a way as to not render any of its provisions illusory or meaningless.").

---

[5] The City argues that in *Linan-Faye Const. Co., Inc. v. Housing Authority of City of Camden,* 49 F.3d 915 (3d Cir. 1995), the local government also improperly terminated the contract for cause yet the Third Circuit held that the common law doctrine of constructive termination for convenience still applied.  *Linan-Faye* is silent, however, as to whether such an application of the common law doctrine would conflict with the plain language of the very provision it constructively applied.  *See Linan-Faye* , 49 F.3d at 934 (J. Becker, dissenting).

10

The court thus finds that the only measure of damages available to Durkin for the City's breach of the Construction Contract is under Delaware common law. It is unclear to the court whether the trial record supports the ability to assess, post-trial, the amount of damages under Delaware common law. The court is also uncertain as to the parties' respective positions on the amount of damages that should be awarded under Delaware common law.[6] Before the court can resolve the issue, it will require supplemental briefing, and oral argument if necessary, from Durkin and the City on what amount is owed to Durkin for breach of the Construction Contract under Delaware common law, based on the evidence adduced at trial.

## D. Durkin's Civil Rights Claim

### 1. Judgment as a Matter of Law

The City moves for judgment as a matter of law or for a new trial on Durkin's civil rights claim. The City argues that the evidence was insufficient, as a matter of law, to submit Durkin's sole constitutional claim to the jury. (D.I. 346 at 21.) In support of its request for judgment as a matter of law, the City contends that 1) a liberty interest does not encompass the right to perform a particular contract; 2) Durkin's breach of contract evidence is insufficient to support the civil rights claim; and 3) alleged defamatory statements do not support a civil rights claim, because Durkin's claim effectively amounts to a "stigma-plus" claim, which Durkin did not pursue.

Durkin responds that the City mischaracterizes its civil rights claim and overlooks the evidence adduced at trial in support of its actual claim. Specifically, Durkin contends that it does

---

[6] The City writes in its brief what it considers to be the "most Durkin could have been awarded" under Delaware law, but states that Durkin did not adduce evidence sufficient to perform the rest of the computation. (D.I. 346 at 14.) Durkin's brief does not part from its belief that the jury's verdict represents the proper measure of damages as determined using Article 11 of the Construction Contract. (D.I. 351 at 13.)

11

not argue now, nor did it try, a claim that it had a constitutional right, or "liberty interest," to the specific Construction Contract with the City. Durkin posits that it presented uncontested evidence of an official City policy of the City Council abdicating its decision-making function through a wholesale delegation to the City Manager and his Staff, who in turn carried out a series of actions that brought about the financial deterioration of Durkin and ultimately put it out of business. (D.I. 346 at 23.) It was this policy, together with the actions of the City Solicitor and City Manager's office, that Durkin argues caused an unreasonable and substantial interference with its business.

Further, Durkin contends that because it presented a liberty interest claim, and not a stigma-plus claim, the law does not preclude the jury's consideration of evidence that the City made defamatory statements about its business when such evidence is not the only evidence in support of its claim of a civil rights violation. Durkin adduced testimony in support of the proposition that the City Council had a policy of abdicating its decision-making function by placing "abject trust" in the City Manager's office, and that City Council made uninformed official decisions that operated to adversely affect Durkin's ability to pursue its chosen profession. (See D.I. 351 at 24-26 for citations to the transcript identifying the supporting testimony.) Because the jury was instructed based on the evidence and returned a verdict consistent with the evidence and the instructions, the court declines to grant the City's request for judgment as a matter of law.

12

C31

2.  Request for a New Trial

In support of its request for a new trial pursuant to Rule 59, the City argues that the jury instructions misstate the law and that the jury's damage award was shockingly excessive and duplicative of the compensatory contract damages.  In response, Durkin argues that the City waived any objection to the civil rights jury instructions by failing to interpose an objection during the prayer conferences, that the evidence supports the civil rights damage award, and that the award was not based on passion and prejudice.

The Federal Rules of Civil Procedure provide that all parties have the right to make objections on the record regarding both instructions and verdict sheets given to jurors.  *See* Fed. R. Civ. P. 51(c).  A party must make timely objections to both the form and the language of verdict forms before the jury retires to deliberations.  *Neely v. Club Med Mgmt. Servs.*, 63 F.3d 166, 200 (3d Cir. 1995).  Failure to object to a proposed verdict sheet at the time the jury received the sheet constitutes a waiver of this objection.  *Inter Med. Supplies, Ltd. v. Ebi Med. Sys.*, 181 F.3d 446, 463 (3d Cir. 1999).

Durkin correctly points out that the City never interposed an objection to the civil rights jury instructions.  (D.I. 351 at 29 citing Tr. 976-1019; 1022-1028; 1137-1182.)  Because the City did not make a timely objection to the 1983 jury instructions, it waives its right to challenge the instructions post-trial, and the court may only grant a new trial if the City proves that the court's actions rise to the level of "plain error."  *See Hurley,* 174 F.3d at 123-124.

The City contends that the jury instructions did not adequately apprise the jury of the applicable law because Jury Instructions 14 and 15 were inapplicable to the facts of this case.

13

The court disagrees.  The court notes that the City does not dispute that the civil rights jury instructions are correct statements of law.  Rather, the City's argument for a new trial is based on an overly broad reading of *Linan-Faye*.  The City proffers that "where the government terminates or breaches one contract, it does not rise to the level of interfering with the right to pursue a chosen occupation."  (D.I. 346 at 32 citing *Linan-Faye*, 49 F.3d at 932.)  Put simply, this proposition is not the Third Circuit's holding in *Linan-Faye*.  In the brief discussion of Linan-Faye's liberty interest claim, the Third Circuit held that it agreed with the Second Circuit's holding in the factually similar case in *S&D Maintenance Co. v. Goldin*, 844 F.2d 962 (2d Cir. 1988).  The Third Circuit adopted the Second Circuit's reasoning that "although the consequential damages of an alleged brief may be severe, this fact alone cannot convert a contract claim into a deprivation of liberty."  *Linan-Faye*, 49 F.3d at 932 (*citing S&D Maintenance*, 844 F.2d at 970).  This adopted holding is not as narrow as the City posits.

Even a liberal reading of *Linan-Faye,* however, would not warrant a new trial in this case because Durkin's constitutional claim is distinguishable from Linan-Faye's.  As stated earlier, Durkin's civil rights claim is not premised on the breach of its contract with the City.  Durkin's action is a *Monell* claim that the City, through an official custom or policy, violated Durkin's constitutional right—that right being a liberty interest to pursue a chosen profession.  *See, e.g., Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978).  *Linan-Faye* was not a §1983 custom or policy case, and is therefore inapposite, in terms of the type of claim tried here.

The City also charges that the court improperly instructed the jury that it could award damages for "impairment to reputation" as damages available to Durkin for its liberty interest.

14

The court agrees with Durkin that the City waived objection to this argument by failing to timely object. Further, the City fails to establish that the instruction rises to the level of "plain error." The City cites *Hill v. Borough of Kutztown*, for the proposition that "the only way Durkin can recover for the loss of its reputation is to satisfy the stigma-plus test." 455 F.3d 225, 236 (3d Cir. 2006). Again, the City overreaches. *Hill* concerns a claim for deprivation of a liberty interest in reputation. *Id.* at 236 ("[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest."). Durkin's liberty interest claim was a right to pursue its chosen profession. The jury instructions merely identified "impairment to reputation" as an element of the damages the jury could consider as being a result of the City's official custom and policy.

Last, the City argues that the award of $25 million in damages is excessive, not supported by the evidence, and was based on passion and prejudice. The City does not deny Durkin's contention that, with regard to the amount of damages awarded, the City's argument in support of its motion for a new trial is based on the weight of the evidence. As previously mentioned, where a motion for a new trial is based primarily on the weight of the evidence, the discretion of the trial court is limited. *Klein v. Hollings*, 992 F.2d at 1290. The court therefore reviews the record and the verdict to determine if the result represents a miscarriage of justice, or shocks the conscience. The court is not persuaded of either in this case.

Notwithstanding the City's assertion that "there is no evidence to support any constitutional compensatory damage award to Durkin based upon the testimony submitted at trial," the record reflects, as one example, Michael Donald Durkin's uncontroverted testimony

15

regarding the nature and experience of Durkin as a contractor in earthmoving work, including work for the City of Philadelphia, Philadelphia International Airport, PennDOT, New JerseyDOT, DelDOT, Corps of Engineers, and U.S. Steel. (Tr. 239.) Mr. Durkin also testified that Durkin had previously completed projects five to six times bigger than the Newark reservoir project. (Id.) Additionally, Durkin adduced unrebutted testimony that it had not secured a job since the City's termination. (Tr. 302.) Given the foregoing, the court disagrees with the City's characterization of the evidence of compensatory damages related to the constitutional claim.

Further, the court is disinclined to conclude that, on balance, the weight of the evidence does not support the jury's verdict such that, without remittitur or a new trial, a miscarriage of justice would result. The jury found that the City was liable for violating Durkin's constitutional right to a liberty interest in its chosen profession. The jury heard evidence of Durkin's business generally, the type of contracts it completed, the value of the contract with the City compared to the value of previous contracts, and the fact that it has not obtained a job since the City's termination. Much of the testimony was uncontroverted, such that the court need not even assess credibility issues or conflicting testimony. The court will not, on this record, second-guess the collective wisdom of this jury and, in so doing, invade its province.[7] Therefore, the court declines the City's request for a new trial on the civil rights claim or remittitur of the damages award.

---

[7] The City also contends that the jury's award was based on passion and prejudice. The court finds no support for this theory. The jury was specifically charged with a sympathy instruction (D.I. 290 at 34) and there is no basis to conclude that the jury disregarded it. *See, e.g., Hurley v. Atlantic City Police Dept.*, 174 F.3d at 114 (rejecting "the argument that 'the size of the award alone is enough to prove prejudice and passion'") (internal citations omitted).

### E. Durkin's Conversion Claim

The City moves for judgment as a matter of law on Durkin's conversion claim.  The City argues summarily that "there is no evidence about what materials or equipment were converted or their value, the nature of Durkin's alleged property interest, or any damages related to the alleged conversion." (D.I. 346 at 21.)

In response, Durkin points to the testimony of Michael Durkin, Archie Filshill, and Carol Houck, concerning the City's confiscation of materials left at the construction site.  (D.I. 351 at 35.)  The testimony to which Durkin points is consistent with the subject matter discussed in the City's Rule 50(a) motion.  (D.I. 277 at 5-6) ("If Durkin is referring to materials that remained at the site after termination, all such materials had been ordered specifically for the project and the contract gave Newark the right to retain such materials.").  In its Rule 50(a) motion, the City did not argue, as it does now in its Rule 50(b) motion, that "there was no evidence supporting the conversion claim;" rather, the City originally proffered the legal argument that it was entitled to retain the materials left at the site.  (Compare D.I. 346 at 21 with D.I. 277 at 6) ("Newark was therefore lawfully justified in retaining the materials so cannot be liable for conversion.").

To succeed on its motion for judgment as a matter of law, the City must show that the jury's finding is unsupported by substantial evidence.  In considering the City's motion, the court is restrained from weighing the evidence or determining the credibility of witnesses.  *Lightning Lube,* 4 F.3d at 1166 (citation omitted).  Based on the evidence presented, the jury found that Durkin was only entitled to $1 nominal damages.  Viewing the evidence in the light most

favorable to Durkin, as the court must under the proper legal standard, and giving Durkin the advantage of every fair and reasonable inference, the court cannot conclude that there is insufficient evidence from which a jury reasonably could find liability. The court finds that the jury was entitled to give weight to Durkin's arguments and evidence in deciding that the City was liable for conversion. Accordingly, the court denies the City's renewed motion for judgment as a matter of law on the conversion claim.

### F. URS's Counterclaim – Attorneys' Fees[8]

The City seeks to limit the amount of attorneys' fees awarded to URS by the jury to $48,400, or 20% of the amount the City owed to URS in unpaid invoices. In support of its request, the City argues that the jury's award is contrary to Delaware law, and the City's contract with URS. In its terse discussion, the City fails to address how it preserved the legal issue now raised, and how it meets the standards set forth in Rules 50 or 59 for judgment as a matter of law or for a new trial. The City consented to the submission of the issue of attorneys' fees to the jury and failed to propose an instruction to guide the jury on any legal limitation on such a recovery, or otherwise object to the instruction given, prior to the jury's deliberation. As a result, the court will not accede to the City's request and thereby usurp the jury's finding, which was not lacking an evidentiary basis. Further, the City has not shown that it is entitled to a new trial on this record.

---

[8] By letter dated May 29, 2007, the City advised the court that the City and URS have entered into a settlement agreement resolving URS's claim relating to unpaid invoices for URS's engineering work on the City's reservoir. (D.I. 356.) The City consented to a judgment against it and in favor of URS, in the amount of $242,000 during the prayer conference on October 5, 2006, and the jury was instructed as to this fact. (D.I. 346-8 at A169; D.I. 290 at 37.) This issue is not disputed post-trial.

18

**C37**

The court agrees with the parties, however, that the judgment contains an incorrect computation of the total amount owed to URS on its counterclaim against the City. The judgment shall be amended to reflect judgment in favor of URS Corporation and against the defendant, City of Newark, in the amount of $525,387.87 ($242,000 in unpaid invoices plus $283,387.87 in jury awarded attorneys' fees).

## V.     CONCLUSION

For the reasons discussed above, the court will reserve judgment on the issue of breach of contract damages pending further, narrow briefing, and oral argument if necessary, on the amount of damages owed to Durkin under Delaware common law. The court will deny the City's motions for judgment as a matter of law or for a new trial on the civil rights claim, the conversion claim, and attorneys' fees to URS.


/s/ Gregory M. Sleet
Dated:  September 17, 2007                    CHIEF, UNITED STATES DISTRICT JUDGE

19

**C38**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., | ) ) ) |
| Plaintiff | ) ) |
| v. | ) ) |
| CITY OF NEWARK, et al., | ) ) |
| Defendants | ) ) |
| and | ) ) |
| CITY OF NEWARK, et al., | ) ) |
| Third-Party Plaintiff | ) ) |
| v. | ) ) |
| DONALD M. DURKIN CONTRACTING, INC., AND FEDERAL INSURANCE COMPANY, | ) ) ) |
| Third-Party Defendants | ) ) |

C.A. No. 04-163 GMS

## <u>ORDER</u>

For the reasons stated in the court's Memorandum Opinion of this same date, IT IS HEREBY

ORDERED that:

1. The City's motion for judgment as a matter of law on the civil rights claim is DENIED.

2. The City's motion for a new trial or remittitur on the civil rights claim is DENIED.

3. The City's motion for judgment as a matter of law on the conversion claim is DENIED.

4. The City's motion for judgment as a matter of law or for a new trial on the attorneys' fees

   awarded on URS's counterclaim is DENIED. The judgment shall be amended to reflect

**C39**

judgment in favor of URS Corporation and against the defendant, City of Newark, in the amount of $525,387.87.

5. The Court will reserve on the City's motion for judgment as a matter of law or for a new trial on the breach of contract damages pending further briefing as follows:

    a. The City and Durkin shall file opening briefs two weeks from the entry of this Order. Such opening briefs shall be no longer than ten pages in length, and in every other respect, consistent with the Local Rules regarding format.

    b. The City and Durkin shall file responsive briefs five days after the date of filing of the opening briefs. Such responsive briefs shall be no longer than five pages in length, and in every other respect, consistent with the Local Rules regarding format. No reply briefs will be accepted.

    c. Such opening and responsive briefs shall contain 1) a statement setting forth the legal standards for the measure of damages in the event of a breach of contract under Delaware common law; 2) the amount of damages due, measured pursuant to the Delaware common law rule, and based on the evidence in the record; and 3) any other argument necessary for the court's resolution of the pending motions so long as it is not inconsistent with the application of Delaware common law as the measure of damages for the breach of contract.

                                           /s/ Gregory M. Sleet

Dated: September 17, 2007                 CHIEF, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* | |
| vs. | |
| CITY OF NEWARK, et al., *Defendants* | CASE NO. 04-0163-GMS |
| and | |
| CITY OF NEWARK, *Third-Party Plaintiff* | |
| vs. | |
| DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | |

## <u>FINAL JURY INSTRUCTIONS</u>

Page 1 of 38

15.    **SECTION 1983 – LIABILITY IN CONNECTION WITH THE ACTIONS OF ANOTHER – MUNICIPALITIES GENERAL INSTRUCTION**

If you find that Donald M. Durkin Contracting, Inc. was deprived of right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference, the City of Newark is liable for that deprivation if Donald M. Durkin Contracting, Inc. proves by a preponderance of the evidence that the deprivation resulted from the City of Newark's official policy or custom – in other words, that the City of Newark's official policy or custom caused the deprivation.

It is not enough for Donald M. Durkin Contracting, Inc. to show that the City of Newark employed a person who violated Donald M. Durkin Contracting, Inc.'s rights. Donald M. Durkin Contracting, Inc. must show that the violation resulted from the City of Newark's official policy or custom. "Official policy or custom" includes any of the following:

- a policy statement or decision that is officially made by the City of Newark City Council or City Administration; or

- a custom that is a widespread, we ll-settled practice that constitutes a standard operating procedure of.

I will now proceed to give you more details on each of the ways in which Donald M. Durkin Contracting, Inc. may try to establish that an official policy or custom of the City of Newark caused the deprivation.

Page 19 of 38

C42

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff*<br>vs.<br>CITY OF NEWARK, et al., *Defendants*<br>and<br>CITY OF NEWARK, *Third-Party Plaintiff*<br>vs.<br>DONALD M. DURKIN CONTRACTING<br>and FEDERAL INSURANCE COMPANY,<br>*Third-Party Defendants* | CASE NO. 04-0163-GMS |

### PLAINTIFF'S ANSWERS AND OBJECTIONS TO THE CITY OF NEWARK'S FIRST SET OF INTERROGATORIES

#### GENERAL OBJECTIONS

Plaintiff generally objects to each Interrogatory on the grounds that the same purport to extend the scope and nature of the duty to provide the answers beyond that required by the applicable rules of procedure. Plaintiff refuses to provide such answers and shall limit its responses hereto as provided by the applicable rules of procedure. Without limitation, Plaintiff does not accept any condition that the Interrogatories are continuing and undertakes no duty to supplement the answers hereto other than provided by the applicable rules of procedure.

Plaintiff generally objects to each Interrogatory on the grounds that the definitions and instructions incorporated in same rendered the Interrogatories overbroad, unreasonable, burdensome, and in some cases incomprehensible. Plaintiff shall interpret the Interrogatories without reference to the definitions and instructions, in accordance with the common meaning of the words therein and applicable rules of procedure.

Plaintiff generally objects to each of the Interrogatories to the extent same seek the

KOP:304777v1 3514-04

C43

- Brandywine Airport 9-2-05 $1,000,000
- Cool Spring Reservoir 3-22-05 $16-20 million rebid on 9-1-05

28.    Identify the basis for your contention that Durkin's civil rights have been violated by Newark.

**ANSWER:**    The factual and legal basis are pleaded in detail in the complaint which are incorporated by reference. Durkin further reserves the right to supplement this response as discovery continues. Further, but without limitation, at all times relevant hereto, the City and City Council acted under the color of state law. Section 15.2 of the Contract provided limited rights for the Owner to terminate a contractor for an alleged default, and further imposed express conditions precedent upon the Owner to protect the contractor's procedural and substantive due process rights. Section 15.2.1 through section 15.2.4 of the Contract allowed for a termination for default only if the contractor "persistently fails to perform the Work in accordance with the Contract Documents..." or if the contractor "disregards Laws or Regulations of any public body having jurisdiction" or if the contractor "disregards the authority of the Engineer" or if the contractor "otherwise violates in any substantial way any provision of the Contract Documents." Section 15.2.4 of the Contract provides, in pertinent part, that "...OWNER may, after giving CONTRACTOR (and the surety, if any), seven days written notice and to the extent permitted by Laws and Regulations, terminate the services of CONTRACTOR..." The language contained in Section 15.2.4 of the Contract was an express contractual requirement, procedural condition precedent to the right of the City to terminate the Contract for cause and guarantee of procedural due process. The City failed to provide Durkin or its surety with the required seven days written notice of its intent to terminate the Contract for cause. Without following the prescribed due process requirements in the contract, and for fallacious reasons, the City terminated Durkin. As of the date of the City' termination, the City had not complied with any of the procedural due process rights embedded within the Contract for termination of the Contract for cause. Shortly after termination, and notice from Durkin of the improper default, the City attempted to "un-terminate" the contract. This constituted an admission by the City of its prior illegal action. Notwithstanding the City's express knowledge of its illegal conduct, in the continuation of the violation of the civil rights of Durkin, the City falsely alleged that Durkin was terminated because of its purported refusal to complete the Contract and the City made publications to the public and newspapers which affected Durkin's liberty interests and ability to obtain work. The City published documents and circulated the documents to Durkin's competitors during the "re-bidding"for the Project. Further, after termination, and without any procedural or substantive due process, the City continued to withhold the payments that it had previously approved for payments to Durkin on Durkin's behalf and on behalf of Durkin's subcontractors and confiscated and converted the materials provided to Durkin by its suppliers

KOP:304777v1 3514-04

C44

and subcontractors. As a result, Durkin has been sued by some subcontractors. By virtue of the above conduct, the City violated and continued to violate the procedural and substantive due process of Durkin.

29.    Identify the basis for your contention that Newark interfered with Durkin's current and prospective contracts.

**ANSWER:**    See answer No. 25.

30.    Identify all written or oral communications by Newark regarding Durkin which you contend are untrue and/or have defamed Durkin.

**ANSWER:**    All publications, including the resolution terminating Durkin and statements to Reporters that allege that Durkin refused to perform the Contract are false. All claims that Durkin improperly procured the report of Dr. Richardson are false. The materials circulated to the prospective bidders respecting Durkins' performance are false. The statements made by Joseph Dombrowski in a speech respecting Durkin and Durkin's performance are false as are the statements allegedly contained in the City's Newsletter.

31.    What do you contend is the fair market value of the materials which you allege were converted by Newark? Identify the documents which support your answer.

**ANSWER:**    Durkin is still calculating the amounts.

32.    What was the purchase price paid by Durkin for the materials that you contend were converted by Newark? Identify the documents which support your answer.

**ANSWER:**    All materials were a part of the subcontracts with Durkin's subcontractors. The documents respecting the subcontracts are being provided.

33.    Identify the false and fraudulent misrepresentations which you contend were made by Newark as set forth in your Complaint.

**ANSWER:**    See prior responses respecting the failure to disclose all relevant information.

34.    Identify the basis for your contention that Newark conspired against Durkin and identify the individuals which you contend were involved in the conspiracy.

**ANSWER:**    The members of City Council met in "executive session" immediately prior to the vote to terminate Durkin. Upon information and believe, City Council members and employees of the City agreed that to avoid paying Durkin for the work necessary to address the conditions described above, that termination of the contract without notice was a better course of action. Durkin reserves the right to

Sep-19-05   11:06am   From-Powell Trach' n Logan              +           T-031  P.019/026  F-772

As to all answers:

    The foregoing Answers to Interrogatories are true and correct to the best of my knowledge, information and belief.

_____
James W. Durkin

Sworn to and subscribed before me
this 19ᵗʰ day of _____
2005.


_____
Notary Public

> NOTARIAL SEAL
> OLIVER P. HAZARD III, Notary Public
> Southampton Twp., Bucks County
> My Commission Expires May 13, 2008

KOP:304777v1 3514-04

C46

## CERTIFICATE OF SERVICE

I, Paul A. Logan, counsel for Plaintiff certify that on *September 21*, 2005,

a true and correct copy of the foregoing Plaintiff's Answers and Objections to The City of

Newark's First Set of Interrogatories was served upon the following by U.S. Mail, postage

prepaid, at the addresses below.

Paul Cottrell, Esquire
Victoria K. Petrone, Esquire
**TIGHE, COTTRELL & LOGAN, P.A.**
First Federal Plaza
Suite 500
P. O. Box 1031
Wilmington, DE 19899
Attorneys for City of Newark, Harold F.
Godwin, John H. Farrell, Jerry Clifton, Karl
G. Kalbacher, David J. Athey, Frank J.
Osborne, Jr. and Christina Rewa

Samuel J. Arena, Jr., Esquire
Patrick R Kingsley, Esquire
David M. Burkholder, Esquire
Stradley Ronon Stevens & Young LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098
Attorneys for Third-Party Defendant
Federal Insurance Company

James S. Green, Esquire
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue
Suite 1500, P. O. Box 68
Wilmington, DE 19899
Attorneys for URS Corporation

Powell, Trachtman, Logan,
Carrle & Lombardo, P.C.

By: _____
Paul A. Logan

KOP:304777v1 3514-04

C47





September 10, 2003
File: C03-311

URS Corporation
1200 Philadelphia Pike
Wilmington, DE 19809

Attn: Mr. Mark Proudy

Phone: (302) 791-0700                    Re:    Water Supply Reservoir
Fax:    (302) 791-0708                             City of Newark, Delaware
                                                           Contract 02-02

Dear Mr. Proudy:

    Recent events have revealed probable errors with the Contract Documents that we believe fall within the provisions of Section 3.3.2 of the contract specifications. As required by this section of specifications, we are providing written notice of the conditions to the Engineer and Owner. Further, and as also required by Section 3.3.2, Donald M. Durkin Contracting, Inc., shall not proceed further with the work until the errors are resolved.

    The nature of the error has become apparent after the recent rain events. Areas of the side slopes prepared and finish graded in anticipation of receiving the liner severely eroded notwithstanding Durkin's protection of the slopes using ordinary construction techniques.

    The more serious problems and the apparent error is more apparent on the graded slopes of the areas that had received the liner. Notwithstanding the installation of the slopes to grade and liner as designed, the soil material placed on the liner, compacted as prescribed by the specifications, severely eroded with the recent rains.

    Not only did the materials erode, but, because the bottom of the reservoir is impervious, the moisture has been trapped in the materials. The bearing capacity of the materials has been eliminated; construction equipment cannot travel across the wet areas without severe rutting and potential damage to the liner.

    The design contemplated that the side slopes be covered with the liner in advance of the placement of the soil materials at the toe of the slope. What was apparently not considered was that the liner will collect and concentrate any moisture and create the conditions that are now visibly apparent.

September 10, 2003

2500 INDUSTRIAL BOULEVARD • SUITE 201 • SOUTHAMPTON, PA 18966 • (215) 364-4000 • FAX (215) 364-5097
WWW.DMDURKIN.COM

**DUR 000805**

Plaintiff's Exhibit
DUR - 52



September 10, 2003
Mr. Mark Proudy
Page 2.

We have further become aware that the City has contingent plans to drain the reservoir for either maintenance or due to severe drought conditions. This has the potential to undermine the grout liner system and installation of rip-rap. It is our understanding that the current design has significant and potentially serious design issues that require a reexamination of the entire liner and cover system. These issues raise safety and integrity issues.

Because of the serious nature of these issues, and consistent with the requirements of the specifications, we will halt our operations pending a resolution. We have been advised that the placement of the liner and exposing it to sunlight for a protracted period could aversely affect the materials and therefore all operations will be suspended.

Please provide us with direction.

Very truly yours,
DONALD M. DURKIN CONTRACTING, INC.

Donald M. Durkin, Jr.

DMD:bjb
CC:  Mr. Joe Dombrowski
      Engineering

DUR 000806

C49

Notes of Phone conv - Mark P, JseD (9/11/03)
JmV + CSH

— fact that soil becomes eroded
on hillside he built every time
it rains
This always happens — Burden on
Contractor in contractor
Note #4. in Contract

my questions:
1. — What is their protection of the
slope? Nothing.
Have you thought it was sufficient?
*should it we have pointed this out in
inspection process. — Yes—

2. — Material over liner — eroded so
needs to be placed again. — YES

— "Durkin doesn't know what he's doing." Mark P
— "Doesn't know if its Durkin who will be
finishing this job."

— Prep of letter going out to Durkin. ref letter
of 9/10/03.

— "Durkin making outrageous claims" — maybe in
over his head — does he want to get thrown
off the job.

— Durkin
— "Has been put on notice about trench.
+ noted on log.

Plaintiff's Exhibit
DUR - 66

NEW16310

\* Retainage  — 10% of installed work until
50% completion of project.

Then stop holding retainage.

\* Stored Mat. —  Pay Stored Mat. + retain
10%
But release when stalled
materials are installed.

OPTION
Ask contractor to construct
more — armor of the
bottom slope / + bottom of
reservoir

Manage costs against risks ⟹
90% of time don't expect to fall
below that level

\* Other options — armor the side slope — more fabriform / riprap / soil + cement

\* He does own the erosion problems.

Time extension due to weather
ie. clean out of E+S pond
inability to work - wet question.
could also play into erosion problems
\* unforeseen condition

NEW16341

C51

URS

Jerry Katsmaier — why cover the liner at all 9/11/03
        90% liner won't be exposed

    Part Below 169 elevation
        st. of 10% exposure some only — during life

    Kennett Square — covered w/ 4ml poly — Protection   Visqueen ?

" VRP
  ↳ Got a feeling they are running out of $ "

Sequence of construction   Draw 7 — only E + S.

* Consider / ask solicitor create letter
            that copies bonding company.

Isabelle 2wks away — Volume large.

How soon ltr. out. — today 9/11/03.

NEW16242

C52