# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD M. DURKIN CONTRACTING, INC., *Plaintiff* | |
| vs. | |
| CITY OF NEWARK, et al., *Defendants* | CASE NO. 04-0163-GMS |
| and | |
| CITY OF NEWARK, *Third-Party Plaintiff* | |
| vs. | |
| DONALD M. DURKIN CONTRACTING, FEDERAL INSURANCE COMPANY and URS CORPORATION, *Third-Party Defendants* | |

ST. PAUL FIRE & MARINE INSURANCE
COMPANY, *Intervenor*

**APPENDIX OF DOCUMENTS IN SUPPORT OF
REPLY BRIEF OF PLAINTIFF
IN SUPPORT OF MOTION
FOR ATTORNEYS' FEES, COSTS AND
POST-JUDGMENT INTEREST (D.I. 307)
PURSUANT TO 42 U.S.C. §1988 AND F.R.C.P. 54**

**PART 2**

**POWELL, TRACHTMAN, LOGAN,
CARRLE & LOMBARDO, P.C.**
Paul A. Logan
Delaware Supreme Court ID #3339
475 Allendale Road, Suite 200
King of Prussia, PA 19406
Telephone: 610-354-9700
Telefacsimile: 610-354-9760
*Attorneys for Plaintiff and Third Party
Defendant Donald M. Durkin
Contracting*

Dated:  December 3, 2007

# TABLE OF CONTENTS

**Document**                                                                 **Page**

Third Supplemental Unsworn Declaration of
Paul A. Logan, Esquire in Support of Plaintiff's Motion
(D.I. 307) for Attorneys' Fees, Costs and Post-Judgment
Interest Pursuant to 42 U.S.C. §1988 and Federal Rule
of Civil Procedure 54……………..…..……………………..………………….…………..C1

Timesheets for Paul A. Logan, Esquire………..………………………….……….C9

Timesheets for David T. Bolger, Esquire …………………………...………………C10

Timesheets for Marsha E. Flora, Esquire…………………………………………....C15

September 17, 2007 Memorandum Opinion……………………………………….C20

Final Jury Instruction No. 15…………………………………………………….C41

Durkin's Interrogatory Response No. 28………………………………………..C43

September 10, 2003 Correspondence from D. Durkin to M. Prouty (DUR-52)……..C48

Houck's Handwritten Notes dated September 11, 2003 (DUR-66)…………….…...C50

November 27, 2006 Memorandum and Amended Order……….…………………C53

Special Council Meeting Minutes November 6, 2006……………………………C63

City of Newark New Castle County, Delaware Audit Report December 31, 2006….C65

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DONALD M. DURKIN CONTRACTING, INC., | ) ) ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | |
| CITY OF NEWARK, et al., | ) ) | |
| Defendants | ) ) | |
| and | ) ) | C.A. No. 04-163 GMS |
| CITY OF NEWARK, et al., | ) ) | |
| Third-Party Plaintiff | ) ) | |
| v. | ) ) | |
| DONALD M. DURKIN CONTRACTING, INC., AND FEDERAL INSURANCE COMPANY, | ) ) ) ) | |
| Third-Party Defendants | ) ) | |

## MEMORANDUM AND AMENDED ORDER

The court hereby issues this Order clarifying its Orders of October 31, 2006 and November 3, 2006 (D.I. 310 - 311):

### Court's Post-Trial Instructions

On October 5, 2006, at the conclusion of trial in the above-captioned matter, the court directed the parties to submit a proposed post-trial briefing schedule for the court's approval. On October 18, 2006, counsel for the City of Newark ("City") filed a letter with a proposed briefing schedule and asked "that the transcript availability be noted with a minute entry on the docket." (D.I. 301) For counsel's edification, it is inappropriate and ill-advised to ask the court to expend

its limited resources making administrative notations on the docket for the convenience of the parties. As such, on October 19, 2006, the court denied counsel's request to make a docket entry advising the parties of the availability of the transcript, and instead instructed the parties to inquire for themselves the availability of the transcript and to file a briefing schedule upon its receipt. The record reflects that, at no time or place in its Order, did the court prevent, preclude, or instruct the parties not to file their post-trial motions within the ten-day period provided by the Federal Rules of Civil Procedure for filing such motions.

**Form and Filing of Post-Trial Motions and Briefs**

On October 24, 2006, the City of Newark filed three "motions." The first motion (D.I. 302), was not a Rule 50 or Rule 59 motion, but a motion to stay execution of the judgment, consisting of less than two and a half lines of text, citing no authority or reason in support of the requested relief. The court should not have to, and will not, explain why this motion was improperly filed and appropriately struck.

The converse is true of the other two motions (D.I. 303 - 304). Together, the filings consisted of 84 pages of repetitive and incoherent argument, including exhibits. These hybrid motion-briefs were hence struck, as they flew in the face of the letter and spirit of the court's directive to brief the issues upon an agreed-upon briefing schedule, once the transcript became available. The court's procedure affords the parties an opportunity to present well-reasoned arguments supported by the trial transcript. The court employs this procedure to avoid precisely the predictable result that occurred here; that is, a disjointed recitation of issues and argument

based on the parties' understandably, especially after a fairly lengthy trial, imperfect recollection of events.[1]

Various courts have observed the perils of litigants briefing and the courts deciding post-trial motions in the absence of a trial transcript. *See e.g., Schmidt v. Silver*, 89 F.R.D. 519, 520 (E.D. Pa. 1981) ("To grant a new trial based on an incomplete record and memory would result in extreme prejudice to defendant."); *cf. U.S. v. Schiffer*, 836 F. Supp. 1164, 1168 (E.D. Pa. 1993) (dismissing Defendant's motions for new trial or amendment of judgment and for amended findings of fact and conclusions of law for failure to comply with local rule requiring post-trial movant to order trial transcript or show good cause to be excused from transcript requirement in action in which district court had revoked naturalized citizenship of defendant for concealment of material evidence).

The Court of Appeals for the Third Circuit, as well, has approved *later* briefing of post-trial motions. *See Kelley v. Wegman's Food Markets, Inc.*, 98 Fed. Appx. 102, 106 (3d 2004) ("The District Court did not abuse its discretion in allowing [the Defendant] to file its brief later and separately from its motion for a new trial. Allowing the separate filing permitted [the Defendant] to cite to the trial transcript...."). Indeed, the full and fair consideration of the merits

---

[1] For example, the City of Newark states in its motion-brief that "the court erred in sending the design claim to the jury." Def.'s Mot. for J.N.O.V. at 5. (D.I. 303). The court specifically recalls the City of Newark's incomprehensible focus during trial on defending a so-called professional negligence claim that was never asserted against it. To see that the City has now cited this "claim" as an error on the part of court is baffling. The court concludes that the City will be hard-pressed to find a citation to the transcript showing that the court sent a "design claim" to the jury.

3

presented post-verdict is best served by the parties' and the court's review and reference to the trial transcript.[2]

Moreover, the court's procedure facilitates the court's ability to efficiently manage its docket by visiting post-trial arguments once, when the issues have been fully considered and briefed upon resort to the transcript. *See also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1192 (2d ed. 1995) ("It also should be kept in mind that the ten-day period permitted for presenting a new trial motion is relatively brief, especially when the trial has been lengthy and has produced an extensive transcript. Thus, skeletal or pro forma motions for a new trial are not uncommon. District judges should exercise a degree of leniency when circumstances have prevented the preparation of a detailed statement of grounds."). As opposed to exercising a degree of leniency in reviewing unsupported and incoherent motions and briefs, the court's Order contemplated the receipt of skeletal motions that succinctly set forth the grounds for relief, whereby briefs would be later filed to further expound upon the parties' motions. In this case, the court's goal and process was frustrated by the 84-page prolixity filed by the City of Newark (in addition to Durkin's motions and briefs), which in effect, would force the court to needlessly sift through lengthy post-trial arguments and exhibits in the parties "motions," and then entertain a restatement of the same arguments in later-filed "briefs."[3]

---

[2] This court regularly presides over patent litigation, tried by lawyers who regularly appear in federal court. In these cases, the court typically observes that the parties order daily transcripts, which allow them to timely file post-trial motions and coherently argued briefs therewith.

[3] Only the two-page affidavit, in support of a motion for a new trial based on newly discovered evidence, needed to be filed with the motion, within ten days of the entry of judgment. FED. R. CIV. P. 6(d), 59(c).

4

C56

## Context of Court's October 31st Order

In the face of an apparent disregard of the court's directive, the court issued its Order on

October 31, 2006, striking the post-trial filings.  In its Order, the court described both Durkin's

and the City's filings as "multiple motions and briefs."  In its renewed motion to stay and in its

appellate papers, the City points out that, in fact, it only filed motions, whereas Durkin

separately filed motions and briefs.  As noted above, the City does not avoid the court's directive

by briefing its issues under the guise of a motion.  The result is the same: if the court accepted

the parties' filings as they were, the court would have to visit the arguments twice.[4]  While it

may be tempting to cast this court's Orders as unnecessarily emphasizing form over substance,

the fact remains that the prudential management of the court's limited resources requires a

respect for form and procedure so as to facilitate the court's full consideration and disposition of

the substantive issues.  The court is reminded of the wisdom reflected in the words of its sister

court in *U.S. v. Reaves*, 636 F. Supp. 1575, 1578 (E.D. Ky. 1986):

> It is fundamental that a court has the power and duty to manage its docket and the
> individual cases before it to "secure fairness in administration, [and] elimination
> of unjustifiable expense and delay."  Fed. R. Evid. 102.  Modern courts recognize
> that the court's time is "a public commodity which should not be squandered."  D.
> Louisell and C. Mueller, 2 *Federal Evidence* § 128 (1985).  There is an unnamed
> party in every lawsuit—the public.  Public resources are squandered if judicial
> proceedings are allowed to proliferate beyond reasonable bounds. The public's
> right to a "just, speedy, and inexpensive determination of every action" is
> infringed, if a court allows a case, civil or criminal, ***to preempt more than its
> reasonable share of the court's time***.  (Emphasis added.)

---

[4] As it stands now, the court has already considered, and will be considering these issues on multiple occasions.

5

Judge Bertelsman's observation is particularly appropriate in this matter, where the litigants,[5] through inappropriate telephone calls to chambers, untimely filing of issue-dispositive motions, improper filing of the pre-trial order, untimely submission of completely deficient jury instructions and verdict forms, and discovery abuses that led to motions for sanctions on the eve of, and during trial, unduly burdened this court. In sum, the manner in which this matter has been litigated has created an unacceptable diversion of this court's resources, while it has 367 other pending criminal and civil actions that require its attention.

To state the obvious, the orderly presentation of litigation enables the court's efforts to administer justice in as fair and evenhanded a manner as humanly possible. Where litigants fail to follow process, procedure and court orders, the court's ability to achieve this goal is thwarted and its limited time and resources are wasted. As the court stated orally on September 26, 2006, when presented for a second time with a motion for sanctions against the City of Newark for improperly withholding responsive documents until after the close of the plaintiff's case-in-chief (D.I. 263), **the court must and will protect its process**.

### Context of Court's November 3rd Order

It was against this backdrop that the court was confronted with the *ex parte* oral request from the City of Newark for the court to vacate its October 31st Order. The record reflects that at no time or place in the court's October 31st Order did the court prevent, preclude, or instruct the parties not to file their post-trial motions within the ten-day period provided by the Federal Rules of Civil Procedure for filing such motions. Yet, counsel for the City of Newark communicated

---

[5] In describing and characterizing the conduct of the "parties" and "litigants" here, and *supra*, the court **does not** include counsel for URS Corporation, Federal Insurance Company, and St. Paul Fire & Marine Insurance Company.

6

its concern about appellate jurisdiction to judicial staff on an *ex parte* call to chambers on

November 2, 2006.  It was during this call that counsel for the City requested the court to vacate

its October 31st Order.  For counsel's edification, it is wholly inappropriate to present what

should be a formal motion for reconsideration via an *ex parte* telephone call to chambers.  The

Federal Rules of Civil Procedure, of which the City is obviously aware, provide a means to ask

the court to reconsider a decision.  *See* FED. R. CIV. P. 60.

Having reached its limit with the litigants' disregard for the court's Orders, the court

issued its November 3rd Order.  The record reflects that at no time or place in the court's

November 3rd Order did the court prevent, preclude, or instruct the parties not to file their post-

trial motions within the ten-day period provided by the Federal Rules of Civil Procedure for

filing such motions.  In fact, the court has never instructed the parties to re-file their motions.

The motions were filed and the court cannot, and has no desire to, erase the undisputed fact that

they were filed within the ten-day period.  In its October 31st and November 3rd Orders, the court

clearly communicated its intention to accept and consider the parties' post-trial positions, once

the matters were briefed.  *See also Kelly v. Pennsylvania Railroad Co.*, 228 F.2d 727, 729 (3d

Cir. 1955) ("It will thus be seen that the running of the time for taking an appeal from a

judgment in a civil action is terminated ***by the making of a timely motion*** for a new trial and

does not commence to run again until the ***motion has been denied***.")

In retrospect, the court could have chosen other means (besides striking the parties'

motions) to express its displeasure with the parties' filings and circumvention of the court's

Orders.  Given the parties' demonstrated need for guidance at every turn in this litigation, the

7

court regrets having not chosen a more elementary admonition.    Nonetheless, the court clearly stated its view that the parties' post-trial motions were deemed filed within the ten-day period. *See* Nov. 3rd Order (D.I. 311) ("The court has not precluded the parties from filing post-trial motions, nor can it.    The parties have preserved their right to appeal by filing their motions within the ten-day period provided in the Federal Rules.").    Moreover, the docket has reflected and still reflects, without modification, each motion and brief, as originally filed.    *See also* Order of Third Circuit, *Donald M. Durkin Contracting, Inc. v. City of Newark*, No. 06-4761 (3d Cir. November 15, 2006) ("It appearing that ***timely post-decision motions*** of a type specified by Rule 4[a][4], Fed. R. App. P., ***are pending in the district court***, it is hereby ORDERED that the above-entitled appeal(s) is(are) stayed pending disposition of the motions.") (Bold, italics added.)    It is with these observations that the court questions the purpose of the requested relief sought by the City of Newark from the Third Circuit by way of a writ of mandamus.

### Relief Sought in Petition for Writ of Mandamus

On November 15, 2006, the Third Circuit docketed the City's Mandamus Petition.    In its Petition, "Newark asks that [the] Court vacate [this court's] October 30 and November 3 Orders and instruct the District Court that Newark's Rule 50(b) and Rule 59 motions, timely filed on October 24, 2006, are reinstated and deemed filed on that day."    Brief for Appellant at 4, *Durkin v. City of Newark*, *appeal docketed*, No. 06-4760 (3d Cir. Nov. 15, 2006).    As noted above, this court's November 3rd Order did deem those motions filed within the ten-day period.    With regard to reinstatement, the City's requested relief is a matter of semantics, as the motions have never been removed from the docket.    To save the Third Circuit from wasting its time and to eliminate

8

C60

the City's "uncertainty," and any other confusion caused by the court's language, however, the court will acquiesce to the dialectic exercise and hereby clarifies its October 31st Order by removing the following language: "[t]he court shall strike from the record the parties' post-verdict motions and briefs (D.I. 302 – 309) filed on October 24-25, 2006," as it is clear from the docket that the filings were never removed.    The court will, however, disregard the City's redundant and imprudent arguments in its October 24th filings, to the extent the court can parse out and overlook such superfluity.

The court notes the unfortunate misrepresentations and selective omissions in the City's Mandamus Petition.  Contrary to the City's statement that "The Request for Reconsideration was Denied on November 3, 2006," the court never received a motion for reconsideration.  As noted above, the court denied an improper, *ex parte*, oral request to vacate its Order.  In no less than ten separate statements, the City of Newark represents to the Third Circuit, in direct contradiction to the written record, that this court either "prevented" or "did not allow" the City to file its motions within the ten-day period.  A mere glance at the docket demonstrates the inaccuracy of such statements.  The City's misrepresentations and selective omissions appear to be yet another example of its chosen form of advocacy, which should leave no doubt as to why the parties find themselves in the present procedural posture.

9

IT IS HEREBY ORDERED THAT:

1.    The Court's October 31st Order (D.I. 310) shall be amended so as to remove the following language:   "The court shall strike from the record the parties' post-verdict motions and briefs (D.I. 302 – 309) filed on October 24-25, 2006."

2.    The parties shall file a proposed briefing schedule forthwith.


                                        /s/ Gregory M. Sleet_____
Dated: November 27, 2006        UNITED STATES DISTRICT JUDGE

C62

**CITY OF NEWARK
DELAWARE**

**SPECIAL COUNCIL MEETING MINUTES**

**November 6, 2006**

Those present at 7:30 p.m.:

| | |
|---|---|
| Presiding: | Vance A. Funk III, Mayor |
| | District 1, Paul J. Pomeroy |
| | District 2, Jerry Clifton |
| | District 3, Douglas F. Tuttle |
| | District 4, David J. Athey |
| | District 5, Frank J. Osborne |
| | District 6, A. Stuart Markham |
| | |
| Staff Members: | City Manager Carl F. Luft |
| | City Secretary Susan A. Lamblack |
| | Assistant to the City Manager Carol S. Houck |
| | City Solicitor Roger A. Akin |
| | Special Counsel Paul Cottrell |

_____

1.    The meeting began with a moment of silence and pledge to the flag.

2.    MOTION BY MR. CLIFTON, SECONDED BY MR. MR. POMEROY: THAT COUNCIL ENTER INTO EXECUTIVE SESSION, WITHOUT THE PRESS, TO DISCUSS PENDING LITIGATION (Durkin Contracting, Inc. v. City of Newark, et al.)

MOTION PASSED UNANIMOUSLY. VOTE: 7 to 0.

Aye – Pomeroy, Osborne, Athey, Funk, Markham, Tuttle, Clifton.
Nay - 0.

Council entered into Executive Session at 7:32 pm and returned to the table at 9:50 pm.

Ms. Houck read her memorandum, dated November 6, 2006, regarding a recommendation to implement Section 2-24 of the Newark Municipal Code (Emergency Contracts and Purchases) to fund costs associated with any requirement to supply an appeals bond for Durkin Contracting v. City of Newark. She continued by saying that special legal counsel and counsel from St. Paul Insurance (Travelers) were in agreement that Newark should file its Notice to Appeal in District Court before Friday, November 10, 2006 which has become necessary as a result of some unanticipated actions of the court recently and in the interest of protecting the interest of Newark.

Ms. Houck explained that funds to cover the cost of the appeal bond premium were available from the City's Self-Insurance Fund totaling $1.5 million. It was therefore recommended that City Council authorize the commitment of the necessary funds to obtain an appeal bond if required in association with the City's intent to appeal the verdict as entered by District Court Judge Sleet on October 11, 2006 in the matter of Durkin Contracting v. Newark for an amount not to exceed $750,000.00.

MOTION BY MR. CLIFTON, SECONDED BY MR. MARKHAM: THAT AUTHORIZATION FOR THE COMMITMENT OF THE NECESSARY FUNDS TO OBTAIN AN APPEAL BOND, IF REQUIRED, IN ASSOCIATION WITH THE CITY'S INTENT TO APPEAL THE VERDICT AS ENTERED IN THE MATTER OF DURKIN CONTRACTING V. NEWARK FOR AN AMOUNT NOT TO EXCEED $750,000.00 BE APPROVED.

MOTION PASSED UNANIMOUSLY. VOTE: 7 to 0.

Aye – Pomeroy, Osborne, Athey, Funk, Markham, Tuttle, Clifton.
Nay  - 0.

3.    **Meeting adjourned at 9:54 pm.**




Susan A. Lamblack, MMC
City Secretary


/sl




**C64**

2

# CITY OF NEWARK

# NEW CASTLE COUNTY, DELAWARE

# AUDIT REPORT

# DECEMBER 31, 2006

C65

CITY OF NEWARK

TABLE OF CONTENTS

INDEPENDENT AUDITORS' REPORT                                              1 - 2

MANAGEMENT'S DISCUSSION AND ANALYSIS                                      3 - 11

BASIC FINANCIAL STATEMENTS

Entity-wide Financial Statements:

  - Statement of Net Assets                                              12

  - Statement of Activities                                             13

Fund  Financial Statements:

  - Balance Sheet - Governmental Funds                                   14

  · Reconciliation of Balance Sheet - Governmental Funds to
      Statement of Net Assets                                           15

  - Statement of Revenues, Expenditures and Changes in
      Fund Balances - Governmental Funds                                16

  - Reconciliation of Statement of Revenues, Expenditures and
      Changes in Fund Balances of Governmental Funds to
      Statement of Activities                                           17

  - Budgetary Comparison Statement - General Fund                       18

  - Statement of Net Assets - Proprietary Funds                         19

  - Statement of Revenues, Expenses and Changes in Fund Net Assets -
      Proprietary Funds                                                 20

  - Statement of Cash Flows - Proprietary Funds                         21 - 22

  - Statement of Net Assets - Fiduciary Funds                           23

  - Statement of Changes in Net Assets - Fiduciary Funds                24

NOTES TO FINANCIAL STATEMENTS                                            25 - 46

SUPPLEMENTARY INFORMATION

Combining Fund Statements:

      - Combining Balance Sheet - Nonmajor Governmental Fund Types      47

      - Combining Statement of Revenues, Expenditures and Changes
          In Fund Balances - Nonmajor Governmental Fund Types           48

      · Combining Statement of Net Assets - Fiduciary Funds             49

      - Combining Statement of Changes in Net Assets - Fiduciary Funds  50

CITY OF NEWARK

TABLE OF CONTENTS

Independent Auditors' Report on Internal Control Over Financial
Reporting and on Compliance and Other Matters Based on an
Audit of Financial Statements Performed in Accordance with
*Government Auditing Standards*                                          51 - 52

Independent Auditors' Report on Compliance with Requirements
Applicable to Each Major Program and on Internal Control Over
Compliance in Accordance with OMB Circular A-133                        53 - 54

Schedule of Expenditures of Federal Awards                              55

Notes to Schedule of Expenditures of Federal Awards                     56

Schedule of Findings and Recommendations                               57 - 60

INDEPENDENT AUDITORS' REPORT

May 31, 2007

Members of City Council
City of Newark
Newark, Delaware

We have audited the accompanying financial statements of the governmental activities, the business-type activities, each major fund and the aggregate remaining fund information of the City of Newark, Newark, Delaware, as of and for the year ended December 31, 2006, which collectively comprise the City's basic financial statements as listed in the table of contents. These financial statements are the responsibility of the City's management. Our responsibility is to express an opinion on these financial statements based on our audit. The prior year summarized comparative information has been derived from the City's 2005 financial statements and, in our report dated December 6, 2006, we expressed an unqualified opinion on those financial statements.

We conducted our audit in accordance with auditing standards generally accepted in the United States of America and the standards applicable to financial audits contained in *Government Auditing Standards*, issued by the Comptroller General of the United States. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinions.

In our opinion, the financial statements referred to above present fairly, in all material respects, the respective financial position of the governmental activities, the business-type activities, each major fund and the aggregate remaining fund information of the City of Newark, Newark, Delaware, as of December 31, 2006, and the respective changes in financial position and cash flows, where applicable, thereof and the budgetary comparisons for the general fund for the year then ended, in conformity with accounting principles generally accepted in the United States of America.

In accordance with *Government Auditing Standards*, we have also issued our report dated May 31, 2007 on our consideration of the City of Newark's internal control over financial reporting and our tests of its compliance with certain provisions of laws, regulations, contracts, grant agreements and other matters. The purpose of that report is to describe the scope of our testing of internal control over financial reporting and compliance and the results of that testing, and not to provide an opinion on the internal control over financial reporting or on compliance. That report is an integral part of an audit performed in accordance with *Government Auditing Standards* and should be considered in assessing the results of our audit.

Members of City Council
City of Newark

The management's discussion and analysis on pages 3 - 11 is not a required part of the basic financial statements but is supplementary information required by accounting principles generally accepted in the United States of America. We have applied certain limited procedures which consisted principally of inquiries of management regarding the methods of measurement and presentation of the required supplementary information. However, we did not audit the information and, accordingly, express no opinion on it.

Our audit was conducted for the purpose of forming opinions on the financial statements that collectively comprise the City of Newark's basic financial statements. The combining fund financial statements are presented for purposes of additional analysis and are not a required part of the basic financial statements. The combining fund financial statements have been subjected to the auditing procedures applied in the audit of the basic financial statements and, in our opinion, are fairly stated in all material respects in relation to the basic financial statements taken as a whole.

*Barbacane, Thornton & Company*
BARBACANE, THORNTON & COMPANY

C69

CITY OF NEWARK

MANAGEMENT'S DISCUSSION AND ANALYSIS - UNAUDITED

This discussion and analysis of the City of Newark, Delaware, provides an overview of the City's financial performance for the year ended December 31, 2006. Please read it in conjunction with the City's financial statements, which begin on page 12.

FINANCIAL HIGHLIGHTS

- The assets of the City of Newark exceeded its liabilities at the close of the most recent fiscal year by $72.2 million (representing its net assets). Of this amount, $19.0 million (or its unrestricted net assets) may be used to meet the government's ongoing obligations to citizens and creditors.

- The City's total net assets increased by $1.4 million in 2006.

- As of December 31, 2006, the City's governmental funds reported a combined ending fund balance of $8.0 million, an increase of $160,661 over the prior year. Approximately $71,200 is available for spending at the City's discretion (unreserved fund balance).

USING THIS ANNUAL REPORT

This annual report consists of a series of financial statements. The Statement of Net Assets and the Statement of Activities on pages 12 and 13, respectively, provide information about the activities of the City as a whole and present a long-term view of the City's finances. Fund financial statements start on page 14. For governmental activities, these statements explain how services were financed in the short term as well as what remains for future spending. Fund financial statements also report the City's operations in more detail than the entity-wide statements by providing information about the City's most significant funds. The remaining statements provide financial information about activities for which the City acts solely as a trustee or agent for the benefit of those outside of the government.

Reporting the City as a Whole

Statement of Net Assets and the Statement of Activities

The analysis of the City as a whole begins on page 12 with the Statement of Net Assets and page 13 with the Statement of Activities.

These statements provide information that will help the reader to determine if the City is financially better off as a result of the year's activities. These statements include all assets and liabilities using the accrual basis of accounting similar to the accounting used by private sector companies. All current year revenues and expenses are taken into account regardless of when cash is received or paid.

These two statements report the City's net assets and changes in them during the year. The reader can think of the City's net assets - the difference between assets and liabilities - as one way to measure the City's financial health or financial position. Over time, increases or decreases in the City's net assets are one indicator of whether its financial health is improving. The reader will need to consider other nonfinancial factors, however, such as changes in the City's property tax base and the condition of the City's assets, to assess the overall health of the City.

- 3 -

C70

CITY OF NEWARK

MANAGEMENT'S DISCUSSION AND ANALYSIS - UNAUDITED (CONT'D)

In the Statement of Net Assets and the Statement of Activities, we divide the City into two kinds of activities:

- Governmental activities – Many of the City's basic services are reported here, including the police, general administration, public works, parks and recreation. Operating transfers from the Electric Fund, property taxes, intergovernmental revenues and franchise fees finance most of these activities.

- Business-type activities – The City charges a fee to customers to help it cover all or most of the cost of certain services it provides. The City's electric, water, sewer and parking funds are reported here.

## Reporting the City's Most Significant Funds

Fund Financial Statements

Our analysis of the City's major funds provides detailed information about the most significant funds - not the City as a whole. Some funds are required to be established by State law and by bond covenants. However, the City Council establishes other funds to help it control and manage money for particular purposes (Special Revenue Funds) or to show that it is meeting legal responsibilities for using certain taxes, grants and other monies (Capital Projects Funds). The City's two kinds of funds - governmental and proprietary - use different accounting approaches.

*Governmental funds.* Many of the City's basic services are reported in governmental funds, which focus on how money flows into and out of those funds and the balances left at year end that are available for spending. These funds are reported using the modified accrual accounting method, which measures cash and all other financial assets that can readily be converted to cash. The governmental fund statements provide a detailed short-term view of the City's general governmental operations and the basic services it provides. Governmental fund information helps determine whether there are more or fewer financial resources that can be spent in the near future to finance the City's programs. We describe the relationship (or differences) between governmental activities (reported in the Statement of Net Assets and the Statement of Activities) and governmental funds in the reconciliations on pages 16 and 17.

*Proprietary funds.* When the City charges customers for the services it provides, these services generally are reported in proprietary funds. Proprietary funds are reported in the same way that all activities are reported in the Statement of Net Assets and the Statement of Activities. In fact, the City's enterprise funds (a component of proprietary funds) are the same as the business-type activities we report in the entity-wide statements but provide more detail and additional information, such as cash flows for proprietary funds.

## The City as Trustee

*Reporting the City's Fiduciary Responsibilities*

The City is the trustee, or fiduciary, responsible for other assets that - because of a trust arrangement - can be used only for the trust beneficiaries. All of the City's fiduciary activities (such as Pension Plans) are reported in separate Statements of Fiduciary Net Assets and Changes in Fiduciary Net Assets. We

C71

CITY OF NEWARK

MANAGEMENT'S DISCUSSION AND ANALYSIS - UNAUDITED (CONT'D)

exclude these activities from the City's other financial statements because the City cannot use these assets to finance its operations. The City is responsible for ensuring that the assets reported in these funds are used for their intended purposes.

FINANCIAL ANALYSIS OF THE CITY

*Entity-wide*

Our analysis focuses on the net assets (Table 1) and changes in net assets (Table 2) of the City's total activities.

The majority of the outstanding debt of the City was incurred for the acquisition and/or construction of the City's water reservoir. Although the City's investment in its capital assets is reported net of related debt, it should be noted that the resources needed to repay this debt must be provided from other sources, since the capital assets themselves cannot be used to liquidate these liabilities. The balance of unrestricted net assets at the close of 2006, $19 million, may be used to meet these current and ongoing obligations to citizens and creditors. In addition, the City maintains an "Aa" rating from Moody's for its current debt issuances. This is one of Moody's highest ratings and reflects the City's strong financial operations, characterized by substantial reserves, a sizable and affluent tax base and low direct debt position.

TABLE 1

CITY OF NEWARK
STATEMENT OF NET ASSETS
DECEMBER 31, 2006

| | Primary Government | | | |
| | Governmental Activities | Business-type Activities | Totals | |
| | | | 2006 | 2005 |
|---|---|---|---|---|
| **ASSETS** | | | | |
| Current assets | $ 11,268,616 | $ 13,029,285 | $ 24,297,901 | $ 25,626,510 |
| Noncurrent assets | 23,120,863 | 49,428,007 | 72,548,870 | 71,637,802 |
| **Total Assets** | $ 34,389,479 | $ 62,457,292 | $ 96,846,771 | $ 97,264,312 |
| | | | | |
| **LIABILITIES AND NET ASSETS** | | | | |
| **LIABILITIES** | | | | |
| Current liabilities | $ 1,568,924 | $ 4,552,466 | $ 6,121,390 | $ 6,730,912 |
| Noncurrent liabilities | 3,294,310 | 15,215,705 | 18,510,015 | 19,717,547 |
| **Total Liabilities** | 4,863,234 | 19,768,171 | 24,631,405 | 26,448,459 |
| | | | | |
| **Net Assets** | | | | |
| Invested in capital assets, net of related debt | $ 19,738,481 | $ 33,520,059 | $ 53,258,540 | $ 51,084,134 |
| Unrestricted | 9,787,764 | 9,189,062 | 18,956,826 | 19,731,719 |
| **Total Net Assets** | 29,526,245 | 42,689,121 | 72,215,366 | 70,815,853 |
| | | | | |
| **TOTAL LIABILITIES AND NET ASSETS** | $ 34,389,479 | $ 62,457,292 | $ 96,846,771 | $ 97,264,312 |

As noted earlier, net assets may serve over time as a useful indicator of a government's financial position. At the close of 2006, the City's assets exceeded its liabilities by $72.2 million, which is an increase over the prior year of roughly $1.4 million.

- 5 -

C72

CITY OF NEWARK

MANAGEMENT'S DISCUSSION AND ANALYSIS - UNAUDITED (CONT'D)

TABLE 2

CITY OF NEWARK
CHANGES IN NET ASSETS
FOR THE YEAR ENDED DECEMBER 31, 2006

| | Governmental Activities | | Business-type Activities | | Totals | |
|---|---|---|---|---|---|---|
| | 2006 | 2005 | 2006 | 2005 | 2006 | 2005 |
| **REVENUES:** | | | | | | |
| Program revenues: | | | | | | |
| Charges for services | $ 2,923,014 | $ 2,935,207 | $ 58,077,957 | $ 43,374,284 | $ 61,000,971 | 46,309,491 |
| Operating grants and contributions | 2,356,216 | 2,079,616 | - | - | 2,356,216 | 2,079,616 |
| Capital grants and contributions | 23,000 | 27,300 | 118,094 | 585,199 | 141,094 | 612,499 |
| General revenues: | | | | | | |
| Real estate taxes | 4,084,439 | 3,654,026 | - | - | 4,084,439 | 3,654,026 |
| Real estate transfer taxes | 1,842,126 | 2,291,841 | - | - | 1,842,126 | 2,291,841 |
| Franchise taxes | 282,401 | 283,799 | - | - | 282,401 | 283,799 |
| Fines and forfelts | 1,620,792 | 1,646,455 | - | - | 1,620,792 | 1,646,455 |
| Investment earnings | 300,130 | 34,362 | 266,513 | 296,209 | 566,643 | 330,571 |
| Miscellaneous | - | - | 6,474 | 6,474 | 6,474 | 6,474 |
| Gain (loss) on sale of capital assets | 10,204 | (4,424) | 21,129 | - | 31,333 | (4,424) |
| **Total Revenues** | 13,442,324 | 12,948,182 | 58,490,167 | 44,262,155 | 71,932,491 | 57,210,336 |
| **EXPENSES:** | | | | | | |
| General government | 4,897,376 | 4,895,612 | - | - | 4,897,376 | 4,895,612 |
| Public safety | 8,727,706 | 8,360,903 | - | - | 8,727,706 | 8,360,903 |
| Public works | 5,155,210 | 5,185,936 | - | - | 5,155,210 | 5,185,936 |
| Community development | 643,563 | 349,776 | - | - | 643,563 | 349,776 |
| Culture and recreation | 2,123,161 | 1,979,929 | - | - | 2,123,161 | 1,979,929 |
| Interest expense | 140,879 | 164,763 | - | - | 140,879 | 164,763 |
| Electric | - | - | 40,127,409 | 36,021,186 | 40,127,409 | 36,021,186 |
| Water | - | - | 4,191,572 | 3,810,554 | 4,191,572 | 3,810,554 |
| Sewer | - | - | 3,987,793 | 3,402,353 | 3,987,793 | 3,402,353 |
| Parking | - | - | 538,188 | 508,099 | 538,188 | 508,099 |
| **Total Expenses** | 21,556,016 | 20,946,920 | 48,844,962 | 43,742,184 | 70,632,878 | 64,689,104 |
| **TRANSFERS** | 9,288,350 | 9,489,197 | (9,288,350) | (9,489,197) | - | - |
| **INCREASE IN NET ASSETS** | $ 1,042,658 | $ 1,490,459 | $ 356,855 | $ (8,969,225) | $ 1,399,513 | $ (7,478,766) |

*Governmental Activities*

Our analysis focuses on the net assets (Table 1) and changes in net assets (Table 2) of the City's governmental activities, and the following 2006 Revenues by Source graph and Net Costs (Table 3).

As the following graph illustrates, operating transfers from the utility funds, real estate taxes, real estate transfer taxes and program revenues (grants and contributions and charges for services) provide the major funding for our governmental activities. <u>Operating transfers are the largest revenue source accounting for 41 percent of revenues.</u> Property taxes supply 18 percent of funding - in 2006 property taxes were increased 16.2 percent. Real estate transfer taxes provide eight percent of revenues and program revenues 23 percent. The City relies on all of these revenues to provide the quality of life to citizens and businesses to which the City Council has always been committed.



CITY OF NEWARK

MANAGEMENT'S DISCUSSION AND ANALYSIS - UNAUDITED (CONT'D)

As shown in Table 3, the cost of all governmental activities this year was $21,688,016. Of this amount, our taxpayers financed through City taxes $6,208,966 with the balance funded through program revenues of $5,302,232, transfers of $9,288,350 and $1,931,126 of other revenues. The program revenues were paid by those who directly benefited from the programs ($2,923,014) or by other governments and organizations that subsidized certain programs with intergovernmental aid and contributions ($2,379,218). Public safety programs are the largest spending commitment, accounting for approximately 40 percent of the City's governmental activities expenditures. General administration and public works services account for approximately 22 and 24 percent, respectively, of expenditures.

TABLE 3

GOVERNMENTAL ACTIVITIES NET COST

| Functions/Programs | Total Cost of Services | Percentage of Total Cost | Service Charges | Grants | Program Revenues | Net Cost of Services |
|---|---|---|---|---|---|---|
| General government | $ 4,897,378 | 22% | $1,544,438 | $ 340,605 | $1,885,043 | $ 3,012,335 |
| Public safety | 8,727,705 | 40% | 589,566 | 410,663 | 1,000,229 | 7,727,476 |
| Public works | 5,155,210 | 24% | 214,556 | 868,055 | 1,082,611 | 4,072,599 |
| Community development | 643,663 | 3% | - | 643,662 | 643,662 | 1 |
| Culture and recreation | 2,123,181 | 10% | 574,454 | 116,233 | 690,687 | 1,432,494 |
| Interest expense | 140,879 | 1% | - | - | - | 140,879 |
| Total | $21,688,016 | 100% | $2,923,014 | $2,379,218 | $5,302,232 | $16,385,784 |

As shown in Table 2, revenues exceeded expenses by $1,042,644 in 2006, resulting in an overall increase in net assets thus maintaining the financial strength of the City. General revenues increased in 2006 by $225,467. This revenue increase primarily consists of increases in real estate taxes and the fair value of investments, partially offset by decreases in real estate transfer taxes and a decrease in investment earnings.

As shown in Table 2, governmental net costs increased by $480,987. This increase in net costs was caused primarily by inflationary pressures.

In 2006, net assets increased by $1,042,658 primarily reflecting a $1,240,118 increase in current assets, a $72,242 increase in net capital assets, an increase in liabilities of $764,699 and a $495,000 decrease in bonds payable.

Business-type Activities

The City provides electric, water and sewer services to its residents. Additionally, it operates several parking lots within its downtown area. These services constitute the business-type activities presented in the City-wide financial statements. Expenses related to these services totaled $46,844,962 in 2006, a $4,778,737 increase over the prior year. The City Council establishes and collects utility rates and parking fees from users of these systems.

CITY OF NEWARK

MANAGEMENT'S DISCUSSION AND ANALYSIS - UNAUDITED (CONT'D)

The revenues include investment income in addition to charges for services (operating revenues). The investment income revenues are not specific to an individual program, but to the activity as a whole.

As shown in Table 2, revenues exceeded expenses by $356,855 in 2006, resulting in an overall increase in net assets which maintained the financial strength of the City. More importantly, these activities supported the transfer of $9.3 million to fund governmental activities.

In 2006, net assets increased by $356,855; assets increased by $1,270,174; and liabilities increased by $913,139. Net assets invested in capital increased by $1,603,472, while net unrestricted assets decreased by $1,246,617.

## FINANCIAL ANALYSIS OF THE CITY'S FUNDS

As noted earlier, the City uses fund accounting to ensure and demonstrate compliance with finance-related legal requirements.

### *Governmental Funds*

The focus of the City's governmental funds is to provide information on near-term inflows, outflows and balances of spendable resources. Such information is useful in assessing the City's financing requirements. In particular, unreserved fund balances may serve as a useful measure of a government's net resources available for spending at the end of the fiscal year.

As of December 31, 2006, the City's governmental funds reported combined ending balances of $7,980,216, an increase of $160,661 as compared to the prior year. The bulk of the fund balance is reserved, which means that it is not available for new spending because it has already been committed to pay for: 1) capital improvements 2) debt service or 3) a variety of other restricted purposes.

The City maintains a General Fund which serves as the chief operating fund of the City. As of December 31, 2006, the total fund balance of the General Fund was $71,213, all of which is unreserved. The General Fund balance increased by $121,630 in fiscal year 2006. Key factors for this increase are as follows:

- Actual revenues were greater than budgeted revenues in the general fund by approximately 4.5 percent, or $479,752. The favorable revenue variance to budget was primarily from higher real estate transfer taxes ($402,126), higher license and permit fees ($134,370) and higher fines ($307,326) which were partially offset by lower real estate taxes ($440,313).

- Actual expenses were less than budgeted expenses by only .5 percent, or $89,193. Favorable budget variances in the Finance and Public Safety functions were essentially offset by negative variances in the Planning and Legislative functions.

- Interfund transfers, primarily from the Electric Fund, were utilized to achieve a positive balance in the General Fund.

C75

CITY OF NEWARK

MANAGEMENT'S DISCUSSION AND ANALYSIS - UNAUDITED (CONT'D)

The City maintains Special Revenue Funds to account for the proceeds of specific revenue sources that are restricted to expenditures for specified purposes. The Special Revenue Funds include the Community Development Fund, the Law Enforcement Funds and the Parks and Recreation Fund. Revenue sources for these funds include grants from the State and other governmental units as well as interest earnings.

The City maintains a Debt Service Fund to set aside resources to meet current and future obligations of the City. As of December 31, 2006, The City maintains Capital Projects Funds to account for major capital acquisitions and construction related to governmental activities separately from the ongoing operating activities. As of December 31, 2006, the fund balance was $4,787,778, all of which is reserved.

Other governmental funds include two bond funds and a street fund. The financial statements for the governmental funds can be found on pages 14, 16, 47 and 48 of this report.

*Proprietary Funds*

The City maintains four principal proprietary funds related to the provision of utility services and parking. The City's proprietary funds provide the same type of information found in the entity-wide financial statements, but in more detail.

The Electric Fund had total net assets of $9,936,147 as of December 31, 2006 of which $1,759,996 was unrestricted. Total net assets decreased $182,732 during the year primarily as the result of operating transfers to the General Fund. Income before transfers amounted to $7,464,251. Electric rates were increased in July 2006 by approximately 6.6 percent although the impact upon different customer classes varied widely. It is the City's policy that the electric operations target a 20 percent operating margin.

The Water Fund had total net assets of $20,161,644 as of December 31, 2006, an increase of $132,247 over the prior year. Of this balance, $1,965,206 was unrestricted. The fund had income before transfers, primarily to the General Fund, of $523,615. The Water Fund also carries roughly $15 million of long-term debt associated with the construction of a reservoir.

The Sewer Fund had total net assets of $10,655,393 as of December 31, 2006 of which $5,111,505 was unrestricted. Total net assets increased $182,845 during the year. Income before transfers to the General Fund totaled $1,432,845.

The Parking Fund, the smallest of the proprietary funds, had total net assets of $1,935,917 as of December 31, 2006. Of this amount, $332,355 was unrestricted. Total net assets increased $224,495 during the year. There were no transfers into or out of this fund in 2006.

The financial statements for the proprietary funds can be found on pages 19, 20 and 21-22 of this report.

C76

CITY OF NEWARK

MANAGEMENT'S DISCUSSION AND ANALYSIS - UNAUDITED (CONT'D)

*Fiduciary Funds*

The City maintains two fiduciary funds - the Employees Pension Trust Fund and the Self-Insurance Fund. These funds contain assets held by the City in a trustee capacity. The assets in the Pension Fund pertain to three distinct plans although the plans are collectively managed and administered. These plans are the non-police plan covering civilian, non-sworn, regular full-time employees, the police plan covering all sworn police officers except the Chief of Police and the special police plan covering the Chief of Police.

The assets held by the Self-Insurance Fund are committed to funding workers' compensation claims and post-retirement health care costs.

The financial statements for the fiduciary funds can be found on pages 23 and 24, as well as 49 and 50 of this report.

## GENERAL FUND BUDGETARY HIGHLIGHTS

The schedules comparing the City's budget and actual results can be found on page 18.

In 2006, the General Fund budget was increased to reflect additional revenue and expenditures for the Newark Senior Center and Downtown Newark Partnership.

As of December 31, 2006, the total fund balance of the General Fund was $71,213, all of which is unreserved. The General Fund balance increased by $121,630 in fiscal year 2006.

## CAPITAL ASSETS AND DEBT ADMINISTRATION

### Capital Assets

The City's investment in capital assets for its governmental and business-type activities as of December 31, 2006 amounts to $72,541,488, net of accumulated depreciation. This investment in capital assets includes land, buildings and improvements, machinery and equipment, vehicles, land improvements and some infrastructure.

- The capital program for 2006 totaled $2,710,400. Of this amount, roughly 46 percent was spent on public works including street and storm drainage programs. Another 27 percent was spent in the electric utility on new services, a new substation transformer and lines.

Additional information on the City's capital assets can be found in Note 4 of this report.

### Long-term Debt

At December 31, 2006, the City had $19,175,000 in bonds outstanding versus $20,395,000 last year - a decrease of six percent. All the outstanding bonds are general obligation bonds supported by the full faith and credit of the City. The vast majority of the outstanding debt was issued to finance the construction of the water reservoir.

- 10 -

C77

CITY OF NEWARK

MANAGEMENT'S DISCUSSION AND ANALYSIS - UNAUDITED (CONT'D)

Other long-term obligations of the City include $474,277 of compensated absences, which include carry-forward vacation and compensatory time.

The City maintains an "Aa" rating from Moody's for its current debt issuances.

Additional information about the City's long-term debt can be found in Note 5 of this report.

## ECONOMIC FACTORS AND NEXT YEAR'S BUDGETS AND RATES

- The City continues to maintain a diversified (65 percent residential, 20 percent commercial and 15 percent industrial) real estate revenue base should there be any short-term fluctuations in any one segment.

- The real estate tax millage was increased 16.3 percent to 52 cents per $100 of assessed value as of July 2006.

- Electric rates were increased approximately 6.6 percent in July 2006.

- The 2007 annual operating budget for the general fund forecasts an operating budget surplus of $1.6 million.

All of these factors were considered in preparing the City's budget for the 2007 fiscal year.

## REQUESTS FOR INFORMATION

This financial report is designed to provide a general overview of the City's finances for all those with an interest in the government's finances. Questions concerning any of the information provided in this report or requests for additional financial information should be addressed to: Finance Director, City of Newark, 220 Elkton Road, Newark Delaware 19711.

General information relating to the City of Newark can be found on its website, http://www.cityofnewarkde.us.

C78

**CITY OF NEWARK**
**STATEMENT OF NET ASSETS**
**DECEMBER 31, 2006**
**(with Summarized Comparative Data for December 31, 2005)**

| | Primary Government | | Totals | |
|---|---|---|---|---|
| | Governmental Activities | Business-type Activities | 2006 | 2005 |
| **ASSETS** | | | | |
| **Current Assets:** | | | | |
| Cash and cash equivalents | $ 3,141,912 | $ 932,438 | $ 4,074,350 | $ 1,910,199 |
| Investments | 5,957,074 | 5,663,767 | 11,620,841 | 12,083,449 |
| Taxes receivable, net | 1,995,816 | 5,562,021 | 7,557,837 | 5,150,336 |
| Accounts receivable, net | 285,675 | | 285,675 | 333,000 |
| Due from other governments | | | | 330,000 |
| Inventories | 20,016 | 837,977 | 857,993 | 895,110 |
| Prepaid items and deferred charges | 164,274 | 53,082 | 217,356 | 221 |
| Bond issue costs | 157 | | | 3,692 |
| **Total Current Assets** | 11,768,618 | 13,025,286 | 24,297,301 | 23,628,519 |
| **Noncurrent Assets:** | | | | |
| **Capital Assets:** | | | | |
| Land | 4,989,380 | 8,788,127 | 13,777,507 | 13,777,507 |
| Construction-in-progress | | | | 69,272 |
| Buildings | 5,896,832 | 6,819,573 | 12,716,405 | 12,552,104 |
| Improvements | 8,758,952 | 32,911,630 | 41,670,582 | 25,116,062 |
| Machinery and equipment | 3,466,337 | 908,677 | 4,375,014 | 4,065,201 |
| Bond issue costs | | 7,382 | 11,674 | |
| **Total Noncurrent Assets** | 23,120,862 | 49,428,007 | 72,548,870 | 71,637,802 |
| **TOTAL ASSETS** | $ 34,389,479 | $ 62,457,292 | $ 96,846,771 | $ 97,264,312 |
| **LIABILITIES AND NET ASSETS** | | | | |
| **Current Liabilities:** | | | | |
| Accounts payable | $ 453,283 | $ 3,062,746 | $ 3,516,029 | $ 4,129,286 |
| Customer deposits | | 512,689 | 512,689 | 664,272 |
| Compensated absences | 328,378 | 5,663 | | 369,101 |
| Due to other governments | 45,548 | | | 212,732 |
| Accrued interest payable | 48,856 | 49,086 | 49,086 | 26,587 |
| Notes payable | 165,952 | 206,808 | | |
| Bonds payable | 495,000 | 765,000 | 1,260,000 | 1,720,000 |
| Bond premium | | 4,356 | 4,356 | 12,365 |
| Other current liabilities | 205,859 | 6,474 | 205,859 | |
| **Total Current Liabilities** | 1,568,924 | 4,552,466 | 6,121,390 | 6,730,917 |
| **Noncurrent Liabilities:** | | | | |
| Compensated absences | 414,310 | 59,967 | 474,277 | 424,468 |
| Deferred revenue | | 3,620 | 3,620 | 3,546 |
| Notes payable | 2,880,000 | 15,055,000 | 17,935,000 | 19,175,000 |
| Bonds payable | | 92,118 | 92,118 | 10,941 |
| Bond premium | | | | 103,592 |
| **Total Noncurrent Liabilities** | 3,294,310 | 15,210,705 | 18,510,015 | 19,717,547 |
| **TOTAL LIABILITIES** | 4,863,234 | 19,768,171 | 24,631,405 | 26,448,459 |
| **NET ASSETS:** | | | | |
| Invested in capital assets, net of related debt | 19,238,481 | 31,520,059 | 51,258,540 | 51,084,134 |
| Unrestricted | 9,787,264 | 18,926,062 | 18,956,226 | 19,731,219 |
| **TOTAL NET ASSETS** | 29,526,245 | 42,689,021 | 72,215,366 | 70,855,853 |
| **TOTAL LIABILITIES AND NET ASSETS** | $ 34,389,479 | $ 62,457,292 | $ 96,846,771 | $ 97,264,312 |

The accompanying notes are an integral part of these financial statements.

-12-

CITY OF NEWARK
STATEMENT OF ACTIVITIES
FOR THE YEAR ENDED DECEMBER 31, 2006
(With Summarized Comparative Data for the Year Ended December 31, 2005)

| | | Program Revenues | | | Net (Expense) Revenue and Changes in Net Assets | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Primary Government | | Totals | |
| | Expenses | Charges for Services | Operating Grants and Contributions | Capital Grants and Contributions | Governmental Activities | Business-type Activities | 2006 | 2005 |
| **GOVERNMENTAL ACTIVITIES** | | | | | | | | |
| General government | $ 4,897,378 | $ 1,544,438 | $ 340,605 | $ — | $(3,012,335) | $ — | $(3,012,335) | $(3,091,920) |
| Public safety | 8,727,705 | 589,566 | 410,663 | | (7,727,476) | | (7,727,476) | (7,464,814) |
| Public works | 5,155,210 | 214,556 | 868,055 | | (4,072,599) | | (4,072,599) | (3,869,812) |
| Community development | 645,663 | | 43,662 | 23,000 | (1) | | (1) | ( ) |
| Culture and recreation | 2,121,181 | 574,454 | 93,233 | | (1,432,494) | | (1,432,494) | (1,323,488) |
| Interest expense | 140,879 | | | | (140,879) | | (140,879) | (154,763) |
| TOTAL GOVERNMENTAL ACTIVITIES | 21,688,016 | 2,923,014 | 2,356,218 | 23,000 | (16,385,784) | | (16,385,784) | (15,904,797) |
| **BUSINESS-TYPE ACTIVITIES** | | | | | | | | |
| Electric | 40,127,409 | 47,555,558 | | | | 7,429,149 | 7,429,149 | (1,247,445) |
| Water | 4,191,572 | 4,501,017 | | | | 427,539 | 427,539 | 1,429,035 |
| Sewer | 3,987,793 | 5,266,222 | | | | 1,278,429 | 1,278,429 | (104,740) |
| Parking | 538,188 | 754,160 | | 118,094 | | 215,972 | 215,972 | 140,439 |
| TOTAL BUSINESS-TYPE ACTIVITIES | 48,844,962 | 58,077,957 | | 118,094 | | 9,351,089 | 9,351,089 | 217,289 |
| TOTAL PRIMARY GOVERNMENT | $70,532,978 | $61,000,971 | $2,356,218 | $141,094 | (16,385,784) | 9,351,089 | (7,034,695) | (15,687,508) |
| | | | | | | | | |
| **GENERAL REVENUES** | | | | | | | | |
| Taxes: | | | | | | | | |
| Real estate taxes | | | | | 4,084,439 | | 4,084,439 | 3,654,026 |
| Real estate transfer taxes | | | | | 1,842,126 | | 1,842,126 | 2,281,841 |
| Franchise fees | | | | | 282,401 | | 282,401 | 2,283,799 |
| Fines and forfeits | | | | | 1,620,792 | | 1,620,792 | 1,646,455 |
| Investment earnings | | | | | 216,770 | 236,845 | 453,615 | 875,419 |
| Increase (decrease) in value of investments | | | | | | | | |
| Gain (loss) on sale of capital assets | | | | | 83,360 | 29,668 | 113,028 | (544,848) |
| Miscellaneous | | | | | 10,204 | 21,129 | 31,333 | (4,424) |
| Transfers | | | | | 9,288,350 | (9,288,350) | 6,474 | 6,474 |
| TOTAL GENERAL REVENUES AND TRANSFERS | | | | | 17,428,442 | (8,994,234) | 8,434,208 | 8,208,742 |
| CHANGE IN NET ASSETS | | | | | 1,042,658 | 356,855 | 1,399,513 | (7,478,766) |
| NET ASSETS, BEGINNING OF YEAR | | | | | 28,483,587 | 42,332,266 | 70,815,853 | 78,294,619 |
| NET ASSETS, END OF YEAR | | | | | $29,526,245 | $42,689,121 | $72,215,366 | $70,815,853 |

-13-

The accompanying notes are an integral part of these financial statements.

C80

**CITY OF NEWARK**
**BALANCE SHEET GOVERNMENTAL FUNDS**
**DECEMBER 31, 2006**
(with Summarized Comparative Data for December 31, 2005)

| | Major Funds | | Other | Totals | |
| | General Fund | Capital Projects Fund | Governmental Funds | 2006 | 2005 |
|---|---|---|---|---|---|
| **ASSETS** | | | | | |
| Cash and cash equivalents | $ 1,545,691 | $ 583,203 | $ 857,134 | $ 2,986,028 | $ 1,225,168 |
| Investments | 51,534 | 4,214,835 | 1,656,683 | 5,923,052 | 7,381,898 |
| Accounts receivable | 886,794 | | 809,022 | 1,695,816 | 1,367,288 |
| Taxes receivable | 285,675 | | | 285,675 | 253,303 |
| Due from other funds | 635,000 | | 193 | 635,193 | 405,981 |
| Inventory | | | 13,781 | 13,781 | 22,051 |
| Prepaid items | 147,947 | | 11,854 | 159,801 | 222 |
| **TOTAL ASSETS** | $ 3,552,641 | $4,798,038 | $3,348,667 | $11,699,346 | $10,755,910 |
| **LIABILITIES AND FUND BALANCES** | | | | | |
| **LIABILITIES:** | | | | | |
| Accounts payable | $ 379,407 | $ 10,224 | $ 44,279 | $ 433,910 | $ 171,666 |
| Customer deposits | 328,378 | | | 328,378 | 185,738 |
| Deferred revenue | 2,273,643 | | 36,075 | 2,309,718 | 1,830,682 |
| Due to other funds | 500,000 | 36 | 135,000 | 635,036 | 735,981 |
| Other liabilities | | | 12,088 | 12,088 | 12,088 |
| **TOTAL LIABILITIES** | 3,481,428 | 10,260 | 227,442 | 3,719,130 | 2,936,355 |
| **FUND BALANCES** | | | | | |
| Reserved for: | | | | | |
| Capital projects | | 4,787,778 | 1,694,690 | 6,482,468 | 6,405,490 |
| Debt service | | | 46,618 | 46,618 | 46,639 |
| Law enforcements | | | 494,794 | 494,794 | 535,711 |
| Streets | | | 741,359 | 741,359 | 724,930 |
| Parks and recreation | | | 143,764 | 143,764 | 153,222 |
| Unreserved | 71,213 | | | 71,213 | (50,417) |
| **TOTAL FUND BALANCES** | 71,213 | 4,787,778 | 3,121,225 | 7,980,216 | 7,819,555 |
| **TOTAL LIABILITIES AND FUND BALANCES** | $ 3,552,641 | $4,798,038 | $3,348,667 | $11,699,346 | $10,755,910 |

The accompanying notes are an integral part of these financial statements.

-14-

CITY OF NEWARK
RECONCILIATION OF BALANCE SHEET - GOVERNMENTAL FUNDS TO STATEMENT OF NET ASSETS
DECEMBER 31, 2006

TOTAL FUND BALANCE - GOVERNMENTAL FUNDS      $   7,980,216

Amounts reported for governmental activities in the statement
of net assets are different because:

Capital assets used in governmental activities are not financial
resources and, therefore, are not reported in the funds.  Also
excluded are $541,431 of internal service capital assets
accounted for in the following line.      22,572,050

Internal service funds are used by management to charge the
costs of the operation of machinery, vehicle and building
maintenance provided to other departments of the City on a
cost-reimbursement basis.  The assets and liabilities of the
internal service fund are included in the governmental activities
in the statement of net assets.      710,637

Other long-term assets such as bond issue costs are not available
to pay for current period expenditures and, therefore, are
deferred in the funds.      11,074

Some of the City's revenues will be collected after year end
but are not available soon enough to pay for the current period's
expenditures and, therefore, are deferred in the funds.      2,115,947

Some liabilities are not due and payable in the current period
and, therefore, are not reported in the funds.  Those liabilities
consist of:

     Bonds payable      (3,376,000)
     Compensated absences      (447,823)
     Accrued interest payable      (40,856)

NET ASSETS OF GOVERNMENTAL ACTIVITIES      $  29,526,245

The accompanying notes are an integral part of these financial statements.

- 15 -

CITY OF NEWARK
STATEMENT OF REVENUES, EXPENDITURES AND CHANGES IN FUND BALANCES - GOVERNMENTAL FUNDS
FOR THE YEAR ENDED DECEMBER 31, 2006
(With Summarized Comparative Data for the Year Ended December 31, 2005)

| | Major Funds | | Other Governmental Funds | Totals | |
| --- | --- | --- | --- | --- | --- |
| | General Fund | Capital Projects Fund | | 2006 | 2005 |
| **REVENUES** | | | | | |
| **Taxes:** | | | | | |
| Property | $ 3,799,097 | | $ | $ 3,799,097 | $ 3,563,753 |
| Real estate transfer | 1,842,126 | | | 1,842,126 | 2,291,841 |
| Franchise fees | 282,401 | | | 282,401 | 283,799 |
| Licenses and permits | 1,460,470 | | | 1,460,470 | 1,529,526 |
| Fines, forfeits and costs | 1,602,326 | | 18,466 | 1,620,792 | 1,646,455 |
| Interest, dividends and rents | 67,711 | 105,986 | 43,073 | 216,770 | 255,169 |
| Intergovernmental revenues | 346,850 | 23,000 | 1,805,368 | 2,175,218 | 1,902,916 |
| Charges for services/fees | 1,449,470 | | 13,060 | 1,462,530 | 1,405,681 |
| Subvention - university of Delaware | 204,000 | | | 204,000 | 204,000 |
| TOTAL REVENUES | 11,054,451 | 128,986 | 1,879,967 | 13,063,404 | 13,083,140 |
| **EXPENDITURES** | | | | | |
| **Current:** | | | | | |
| General government | 4,346,685 | | | 4,346,685 | 4,314,201 |
| Public safety | 8,129,762 | | 187,297 | 8,317,059 | 8,029,046 |
| Public works | 3,095,997 | | 1,454,323 | 4,550,320 | 4,660,427 |
| Community development | | | 643,663 | 643,663 | 349,775 |
| Culture and recreation | 2,129,679 | | 16,555 | 2,146,234 | 2,102,916 |
| Change in fair value of investments | (26,876) | (41,181) | (15,303) | (83,360) | 220,807 |
| **Debt service:** | | | | | |
| Principal | | | 495,000 | 495,000 | 505,000 |
| Interest | | | 143,097 | 143,097 | 157,089 |
| Capital outlay | | 1,518,401 | 154,882 | 1,673,285 | 2,093,627 |
| TOTAL EXPENDITURES | 17,675,247 | 1,477,222 | 3,079,514 | 22,231,983 | 22,342,888 |
| DEFICIENCY OF REVENUES UNDER EXPENDITURES | (6,620,796) | (1,348,236) | (1,199,547) | (9,168,579) | (9,259,748) |
| **OTHER FINANCING SOURCES (USES)** | | | | | |
| Transfers in | 10,050,000 | 1,370,155 | 1,388,096 | 12,808,252 | 12,947,274 |
| Transfers out | (3,343,496) | | (176,405) | (3,519,901) | (3,458,077) |
| Proceeds from sale of capital assets | 35,922 | 4,967 | | 40,889 | 22,734 |
| TOTAL OTHER FINANCING SOURCES | 6,742,426 | 1,375,123 | 1,211,691 | 9,329,240 | 9,511,931 |
| NET CHANGE IN FUND BALANCES | 121,630 | 26,887 | 12,144 | 160,661 | 252,183 |
| FUND BALANCES (DEFICIT), BEGINNING OF YEAR | (50,417) | 4,760,891 | 3,109,081 | 7,819,555 | 7,567,372 |
| FUND BALANCES, END OF YEAR | $ 71,213 | $ 4,787,778 | $ 3,121,225 | $ 7,980,216 | $ 7,819,555 |

The accompanying notes are an integral part of these financial statements.

-16-

C83

CITY OF NEWARK
RECONCILIATION OF STATEMENT OF REVENUES, EXPENDITURES AND CHANGES IN FUND BALANCES -
GOVERNMENTAL FUNDS TO STATEMENT OF ACTIVITIES
FOR THE YEAR ENDED DECEMBER 31, 2006

NET CHANGE IN FUND BALANCES - GOVERNMENTAL FUNDS $ 160,661

Amounts reported for governmental activities in the statement of
activities are different because:

Capital outlays are reported in governmental funds as expenditures.
However, in the statement of activities, the cost of those assets
($1,692,296) is allocated over their estimated useful lives and reported
as depreciation expense ($1,585,676).   This is the amount by which
capital outlays exceeded depreciation in the current period, net of
charges to the internal service fund ($47,213).     153,833

Revenues in the statement of activities that do not provide current
financial resources are not reported as revenues in the funds.     285,342

The net effect of various miscellaneous transactions involving capital
assets (i.e., sales, trade-ins and donations) is to decrease net assets.     (30,686)

Repayment of debt principal is an expenditure in the governmental
funds, but the repayment reduces long-term liabilities in the statement
of net assets:

Bond principal     495,000
Accrued interest payable     5,924

The issuance of long-term debt provides current financial resources to
governmental funds, while the repayment of the principal of long-term
debt consumes the current financial resources of governmental funds.
Neither transaction, however, has any effect on net assets.  Also,
governmental funds report the effect of bond issuance costs when the
debt is first issued, whereas these amounts are deferred and amortized
in the statement of activities.     (3,692)

Some expenses reported in the statement of activities do not require
the use of current financial resources and, therefore, are not reported
as expenditures in the governmental funds:

Compensated absences     (23,724)

CHANGE IN NET ASSETS OF GOVERNMENTAL ACTIVITIES $ 1,042,658

The accompanying notes are an integral part of these financial statements.

- 17 -

C84

# CITY OF NEWARK
## BUDGETARY COMPARISON STATEMENT - GENERAL FUND
### FOR THE YEAR ENDED DECEMBER 31, 2006

| | Original Budget | Actual Amounts (Budgetary Basis) | Variance Positive (Negative) |
|---|---|---|---|
| **REVENUES** | | | |
| **Taxes:** | | | |
| Real estate - current | $ 4,220,100 | $ 3,779,787 | $ (440,313) |
| Real estate - delinquent and interest | 30,000 | 19,310 | (10,690) |
| Real estate - transfer | 1,440,000 | 1,842,126 | 402,126 |
| Franchise fees | 285,000 | 282,401 | (2,599) |
| Licenses and permits | 1,326,100 | 1,460,470 | 134,370 |
| Fines, forfeits and costs | 1,295,000 | 1,602,326 | 307,326 |
| Interest, dividends and rents | 100,000 | 67,711 | (32,289) |
| Intergovernmental revenues | 260,100 | 346,850 | 86,750 |
| Charges for services/fees | 1,414,400 | 1,449,470 | 35,070 |
| Subvention - University of Delaware | 204,000 | 204,000 | |
| TOTAL REVENUES | 10,574,700 | 11,054,451 | 479,751 |
| | | | |
| **EXPENDITURES** | | | |
| **Current:** | | | |
| **General government:** | | | |
| Finance department | 1,834,430 | 1,697,085 | 137,345 |
| Planning | 629,640 | 737,146 | (107,506) |
| Administration | 705,500 | 656,020 | 49,480 |
| Legislative | 871,400 | 960,883 | (89,483) |
| Judicial | 290,060 | 295,551 | (5,491) |
| Total General Government | 4,331,030 | 4,346,685 | (15,655) |
| **Public safety:** | | | |
| Building | 993,180 | 923,172 | 70,008 |
| Police | 7,238,970 | 7,206,590 | 33,380 |
| Total Public Safety | 8,231,150 | 8,129,762 | 103,388 |
| **Public works:** | | | |
| Highways and streets | 988,750 | 958,687 | 30,063 |
| Sanitation | 2,135,790 | 2,137,310 | (1,520) |
| Total public works | 3,124,540 | 3,095,997 | 28,543 |
| Culture and recreation | 2,075,720 | 2,102,655 | (26,935) |
| Change in fair value of investments | - | (26,876) | (26,876) |
| TOTAL EXPENDITURES | 17,764,440 | 17,675,247 | 89,193 |
| | | | |
| DEFICIENCY OF REVENUES UNDER EXPENDITURES | (7,189,740) | (6,620,796) | 568,944 |
| | | | |
| **OTHER FINANCING SOURCES (USES)** | | | |
| Appropriated fund balance | 7,731,129 | | (7,731,129) |
| Transfers in | - | 10,050,000 | 10,050,000 |
| Transfers out | (591,389) | (3,343,468) | (2,752,079) |
| Proceeds from sale of capital assets | 50,000 | 31,392 | (18,608) |
| TOTAL OTHER FINANCING SOURCES | 7,189,740 | 6,737,924 | (451,816) |
| | | | |
| NET CHANGE IN FUND BALANCE | - | 121,630 | 121,630 |
| | | | |
| FUND BALANCE, BEGINNING OF YEAR | - | (50,417) | (50,417) |
| | | | |
| FUND BALANCE, END OF YEAR | $ - | $ 71,213 | $ 71,213 |

The accompanying notes are an integral part of these financial statements.

-18-

C85

CITY OF NEWARK
STATEMENT OF NET ASSETS - PROPRIETARY FUNDS
DECEMBER 31, 2006
(With Summarized Comparative Data for December 31, 2005)

| | Business-type Activities - Enterprise Funds | | | | Totals | | Governmental Activities Internal Service Fund | |
|---|---|---|---|---|---|---|---|---|
| | Electric Fund | Water Fund | Sewer Fund | Parking Fund | 2006 | 2005 | 2006 | 2005 |
| **ASSETS** | | | | | | | | |
| **Current Assets:** | | | | | | | | |
| Cash and cash equivalents | $ 120,676 | $ 35,733 | $ 466,379 | $ 308,650 | $ 932,438 | $ 461,321 | $ 155,884 | $ 123,710 |
| Investments, restricted | | | | | | | | |
| Customer deposits | 510,389 | | 1,800 | | 512,189 | 498,855 | | |
| Investments, restricted | 1,759,492 | 1,532,755 | 1,820,099 | 39,232 | 5,151,578 | 9,168,674 | 34,022 | 34,022 |
| Accounts receivable, net | 4,612,409 | 575,708 | 371,904 | | 5,562,021 | 3,783,248 | | |
| Due from other funds | 36 | | 2,500,000 | | 2,500,036 | 330,000 | | |
| Inventory | 749,847 | 65,901 | 2,229 | | 817,977 | 855,875 | 6,235 | 17,184 |
| Prepaid expenses | 26,211 | 21,292 | 3,844 | 1,735 | 53,082 | | 6,473 | |
| Total Current Assets | 7,779,060 | 2,232,389 | 5,168,255 | 349,617 | 15,529,321 | 15,097,973 | 208,614 | 174,916 |
| **Noncurrent Assets:** | | | | | | | | |
| **Capital assets, net** | | | | | | | | |
| Land | | 7,957,953 | | 830,174 | 8,788,127 | 8,788,127 | | |
| Construction-in-progress | | | | | | | | |
| Buildings | 2,768,668 | 4,050,905 | | 582,102 | 6,819,573 | 15,710,804 | 457,302 | 503,223 |
| Improvements | 5,046,558 | 21,739,996 | 5,542,976 | 1,035,642 | 32,911,630 | 6,973,576 | | |
| Machinery and equipment | 360,927 | 351,196 | | 908,677 | 16,261,784 | | 84,129 | 85,421 |
| Total Noncurrent Assets | 8,176,153 | 34,100,050 | 5,543,888 | 1,607,918 | 49,428,007 | 814,890 | 541,431 | 588,644 |
| | | | | | | 48,589,181 | | |
| **TOTAL ASSETS** | $15,955,211 | $36,332,439 | $10,712,143 | $1,957,535 | $64,957,328 | $63,687,154 | $742,045 | $763,560 |
| **LIABILITIES AND NET ASSETS** | | | | | | | | |
| **Current liabilities:** | | | | | | | | |
| Accounts payable | $ 2,966,225 | $ 80,697 | $ 4,881 | $ 10,943 | $ 3,062,746 | $ 3,934,143 | $ 29,373 | $ 43,977 |
| Customer deposits | 510,389 | | 1,800 | | 512,189 | 498,855 | | |
| Compensated absences | 4,226 | 1,805 | | 632 | 6,663 | 6,715 | 2,661 | 1,978 |
| Due to other funds | 2,500,193 | | 48,929 | | 2,500,193 | 39,103 | | |
| Accrued interest payable | | 165,952 | | 4,356 | 165,952 | 26,587 | | |
| Notes payable | | | | | 4,356 | 725,000 | | |
| Bonds payable | | 745,000 | | | 745,000 | 6,474 | | |
| Bond premium | | 5,474 | | | | | | |
| Total Current Liabilities | 5,981,033 | 999,928 | 55,610 | 15,931 | 7,052,502 | 5,382,829 | 32,034 | 45,955 |
| **Noncurrent Liabilities:** | | | | | | | | |
| Compensated absences | 38,031 | 16,249 | | 5,687 | 59,967 | 53,980 | 9,374 | 6,968 |
| Deferred revenue | | 2,480 | 1,140 | | 3,620 | 3,546 | | |
| Notes payable | | | | | | 10,941 | | |
| Bonds payable | | 15,055,000 | | | 15,055,000 | 15,800,000 | | |
| Bond premium | | 97,118 | | | 97,118 | 103,599 | | |
| Total Noncurrent liabilities | 38,031 | 15,170,847 | 1,140 | 5,687 | 15,215,705 | 15,972,059 | 9,374 | 6,968 |
| **TOTAL LIABILITIES** | 6,019,064 | 16,170,775 | 56,750 | 21,618 | 22,268,207 | 21,354,888 | 31,408 | 52,923 |
| **NET ASSETS** | | | | | | | | |
| Invested in capital assets, net of related debt | 8,176,151 | 18,196,458 | 5,543,888 | 1,603,562 | 33,520,059 | 31,916,587 | 541,431 | 588,644 |
| Unrestricted | 1,759,996 | 1,965,206 | 5,111,505 | 332,355 | 9,169,062 | 10,415,679 | 169,206 | 121,993 |
| **TOTAL NET ASSETS** | 9,936,147 | 20,161,664 | 10,655,393 | 1,935,917 | 42,689,121 | 42,332,266 | 710,637 | 710,637 |
| **TOTAL LIABILITIES AND NET ASSETS** | $15,955,211 | $36,332,439 | $10,712,143 | $1,957,535 | $64,957,328 | $63,687,154 | $742,045 | $763,560 |

The accompanying notes are an integral part of these financial statements.

-19-

C86

CITY OF NEWARK

STATEMENT OF REVENUES, EXPENSES AND CHANGES IN NET ASSETS - PROPRIETARY FUNDS

FOR THE YEAR ENDED DECEMBER 31, 2006

(With Summarized Comparative Data for the Year Ended December 31, 2005)

| | Business-Type Activities – Enterprise Funds | | | | Totals | | Governmental Activities Internal Service Fund | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Electric Fund | Water Fund | Sewer Fund | Parking Fund | 2006 | 2005 | 2006 | 2005 |
| **OPERATING REVENUES:** | | | | | | | | |
| Charges for services | $47,409,743 | $4,456,698 | $5,233,180 | $695,673 | $57,795,294 | $43,125,439 | $1,220,627 | $1,208,513 |
| Penalties and fees | 120,525 | 26,024 | 33,081 | 58,470 | 238,020 | 216,916 | – | – |
| Miscellaneous | 26,290 | 18,295 | 41 | 17 | 44,644 | 31,929 | – | – |
| TOTAL OPERATING REVENUES | 47,556,558 | 4,501,017 | 5,266,222 | 754,160 | 58,077,957 | 43,374,284 | 1,220,627 | 1,208,513 |
| **OPERATING EXPENSES:** | | | | | | | | |
| Personnel | 1,767,063 | 1,568,298 | 3,680,643 | 328,440 | 7,344,444 | 3,401,112 | 439,256 | 433,161 |
| Utility purchases | 36,167,174 | 608,316 | – | – | 36,775,490 | 36,667,580 | – | – |
| Materials and supplies | 151,935 | 253,092 | 20,215 | 17,873 | 443,115 | 416,979 | 580,029 | 542,630 |
| Contracted services | 448,589 | 313,458 | 80,488 | 85,971 | 928,506 | 921,440 | 133,128 | 164,325 |
| Depreciation | 964,311 | 800,119 | 206,447 | 101,353 | 2,072,230 | 1,560,448 | 66,221 | 67,798 |
| Other | 594,556 | 1,234 | – | 3,148 | 598,938 | 79,956 | 1,993 | 599 |
| TOTAL OPERATING EXPENSES | 40,093,628 | 3,545,517 | 3,987,793 | 536,785 | 48,163,721 | 43,047,515 | 1,220,627 | 1,208,513 |
| OPERATING INCOME | 7,462,932 | 955,500 | 1,278,429 | 217,375 | 9,914,236 | 326,769 | – | – |
| **NONOPERATING REVENUES (EXPENSES):** | | | | | | | | |
| Interest and investment revenue | 22,602 | 98,908 | 131,414 | 6,524 | 236,846 | 620,250 | – | – |
| Increase (decrease) in fair value of investments | (33,783) | 38,450 | 23,002 | 1,999 | 29,668 | (324,041) | – | – |
| Amortization of bond premium | – | 6,474 | – | – | 6,474 | 6,474 | – | – |
| Interest expense | – | (646,055) | – | (1,403) | (681,241) | (694,669) | – | – |
| Gain on sale of capital assets | 12,500 | 8,629 | – | – | 21,129 | – | – | – |
| Capital grants | – | 118,094 | – | – | 118,094 | 585,189 | – | – |
| TOTAL NONOPERATING REVENUES (EXPENSES) | 1,319 | (431,885) | 154,416 | 7,120 | (269,030) | 193,203 | – | – |
| INCOME BEFORE TRANSFERS | 7,464,251 | 523,615 | 1,432,845 | 224,495 | 9,645,206 | 519,972 | – | – |
| Transfers in | 2,403,017 | 8,632 | – | – | 2,411,649 | 213,163 | – | – |
| Transfers out | (10,050,000) | (400,000) | (1,250,000) | – | (11,700,000) | (9,702,360) | – | – |
| CHANGE IN NET ASSETS | (182,732) | 132,247 | 182,845 | 224,495 | 356,855 | (8,969,225) | – | – |
| NET ASSETS, BEGINNING OF YEAR | 10,118,879 | 20,029,417 | 10,472,548 | 1,711,422 | 42,332,266 | 51,301,491 | 710,637 | 710,637 |
| NET ASSETS, END OF YEAR | $9,936,147 | $20,161,664 | $10,655,393 | $1,935,917 | $42,689,121 | $42,332,266 | $710,637 | $710,637 |

The accompanying notes are an integral part of these financial statements.

C87

**CITY OF NEWARK**
**STATEMENT OF CASH FLOWS - PROPRIETARY FUNDS**
**FOR THE YEAR ENDED DECEMBER 31, 2006**
(with Summarized Comparative Data for the Year Ended December 31, 2005)

| | | Business-type Activities – Enterprise Funds | | | Totals | | Governmental Activities Internal Service Fund | |
|---|---|---|---|---|---|---|---|---|
| | Electric Fund | Water Fund | Sewer Fund | Parking Fund | 2006 | 2005 | 2006 | 2005 |
| **CASH FLOWS FROM OPERATING ACTIVITIES:** | | | | | | | | |
| Receipts from customers and users | $45,697,488 | $4,503,977 | $5,293,532 | $754,143 | $56,249,541 | $43,367,562 | $1,220,627 | $1,208,513 |
| Receipts from interfund services provided | | | | | | | | 5 |
| Customer deposits received | 259,791 | | | | 259,791 | 211,333 | | |
| Customer deposits returned | (245,457) | | | | (246,457) | (191,023) | | |
| Other operating receipts | 26,290 | 18,295 | 41 | 17 | 44,643 | 37,426 | | |
| Payments to suppliers for goods and services | (34,309,067) | (1,155,532) | (3,762,864) | (92,652) | (43,360,115) | (36,293,705) | (733,278) | (700,812) |
| Payments to employees for services | (1,755,656) | (1,574,245) | | (327,965) | (3,657,866) | (3,399,111) | (436,167) | (430,348) |
| Payments for interfund services used | (207,640) | (91,102) | (11,626) | (6,731) | (219,099) | | | |
| NET CASH PROVIDED BY OPERATING ACTIVITIES | 5,564,750 | 1,661,394 | 1,519,483 | 324,811 | 9,070,438 | 3,722,482 | 51,182 | 969,105 |
| **CASH FLOWS FROM NONCAPITAL FINANCING ACTIVITIES:** | | | | | | | | |
| Interest paid | (33,783) | | | | (33,783) | (28,228) | | |
| Interfund loans | 2,500,000 | | (2,000,000) | | 500,000 | | | |
| Repayments of interfund loans | 330,000 | | | | 330,000 | (330,000) | | |
| Transfers in | 2,403,017 | 8,632 | | | 2,411,649 | 213,163 | | |
| Transfers out | (10,050,000) | (400,000) | (1,250,000) | | (11,700,000) | (9,702,360) | | |
| NET CASH USED BY NONCAPITAL FINANCING ACTIVITIES | (4,850,766) | (391,368) | (3,250,000) | | (8,492,134) | (9,847,425) | | |
| **CASH FLOWS FROM CAPITAL AND RELATED FINANCING ACTIVITIES:** | | | | | | | | |
| Purchases of capital assets | (748,554) | (1,814,519) | (9,101) | (35,011) | (2,607,185) | (6,789,242) | (19,008) | (8,612) |
| Capital grants received | | 118,094 | | | 118,094 | 585,189 | | |
| Principal paid on capital debt | | (725,000) | | (33,172) | (758,172) | (741,939) | | |
| Interest paid on capital debt | | (646,055) | | (1,403) | (647,458) | (666,443) | | |
| NET CASH USED BY CAPITAL AND RELATED FINANCING ACTIVITIES | (748,554) | (3,067,480) | (9,101) | (69,586) | (3,894,721) | (7,612,433) | (19,008) | (8,512) |
| **CASH FLOWS FROM INVESTING ACTIVITIES:** | | | | | | | | |
| Proceeds from sale of investments | | 1,647,267 | 2,015,374 | | 3,662,441 | 10,670,679 | | |
| Purchase of investments | (49,596) | | | | (49,596) | | | |
| Interest received | | 36,551 | 131,414 | 6,524 | 274,489 | 620,251 | 32,174 | 68,741 |
| NET CASH PROVIDED (USED) BY INVESTING ACTIVITIES | (49,596) | 1,683,818 | 2,146,788 | 6,524 | 3,787,534 | 11,290,930 | 32,174 | 68,741 |
| NET INCREASE (DECREASE) IN CASH AND CASH EQUIVALENTS | (84,166) | (113,636) | 407,170 | 261,749 | 471,117 | (2,441,446) | 32,174 | 68,741 |
| CASH AND CASH EQUIVALENTS, BEGINNING OF YEAR | 204,842 | 150,369 | 59,209 | 46,901 | 461,321 | 2,902,767 | 123,710 | 54,969 |
| CASH AND CASH EQUIVALENTS, END OF YEAR | $ 120,676 | $ 36,733 | $ 466,379 | $ 308,650 | $ 932,438 | $ 461,321 | $ 155,884 | $ 123,710 |

-21-

Continued on next page.

**CITY OF NEWARK**
**STATEMENT OF CASH FLOWS - PROPRIETARY FUNDS**
**FOR THE YEAR ENDED DECEMBER 31, 2006**
(with Summarized Comparative Data for the Year Ended December 31, 2005)

| | Business-type Activities - Enterprise Funds | | | | | | Governmental activities Internal Service Fund | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Electric Fund | Water Fund | Sewer Fund | Parking Fund | Totals 2006 | 2005 | 2006 | 2005 |
| RECONCILIATION OF OPERATING INCOME TO NET CASH PROVIDED BY OPERATING ACTIVITIES: | | | | | | | | |
| Operating income | $ 7,463,932 | $ 955,500 | $1,278,429 | $ 217,375 | $ 9,914,236 | $ 326,769 | $ — | $ — |
| Adjustments to reconcile operating income to net cash provided by operating activities: | | | | | | | | |
| Depreciation | 664,311 | 800,119 | 206,447 | 101,353 | 1,772,230 | 1,560,448 | 66,221 | 67,599 |
| (Increase) Decrease in assets: | | | | | | | | |
| Accounts receivable, net | (1,787,108) | 21,181 | 27,751 | — | (1,738,176) | 47,693 | — | — |
| Due from other funds | (36) | — | — | — | (36) | — | — | — |
| Allowance for uncollectible accounts | (40,597) | — | — | — | (40,597) | (22,735) | — | — |
| Inventory | 30,777 | 6,811 | 310 | — | 37,898 | (85,902) | 10,949 | (8,119) |
| Prepaid expenses | (26,211) | (21,292) | (3,644) | (1,735) | (53,082) | — | (4,473) | — |
| Increase (Decrease) in liabilities: | | | | | | | | |
| Customer deposits | 13,334 | — | — | — | 13,334 | 20,310 | — | — |
| Accounts payable | (764,252) | (95,052) | 564 | 7,343 | (851,397) | 2,033,497 | (24,604) | 15,060 |
| Compensated absences | 11,407 | (5,947) | — | 475 | 5,935 | 1,999 | 3,089 | 2,883 |
| Due to other funds | 193 | — | — | — | 193 | — | — | — |
| Due to other governments | — | — | 9,826 | — | 9,826 | (154,345) | — | — |
| Deferred revenue | — | 74 | — | — | 74 | 748 | — | — |
| Total Adjustments | (1,898,182) | 705,894 | 241,054 | 107,436 | (843,798) | 3,400,713 | 51,182 | 77,353 |
| NET CASH PROVIDED BY OPERATING ACTIVITIES | $ 5,564,750 | $1,661,394 | $1,519,483 | $ 324,811 | $ 9,070,438 | $ 3,727,482 | $ 51,182 | $ 77,353 |
| NONCASH INVESTING, CAPITAL AND FINANCING ACTIVITIES: | | | | | | | | |
| Increase (decrease) in fair value of investments | $ 22,602 | $ (17,935) | $ 23,092 | $ 1,999 | $ 29,668 | $ (324,041) | $ — | $ — |
| Noncash transfer of capital assets | $ 12,500 | $ — | $ — | $ — | $ 12,500 | $ — | $ — | $ — |
| Amortization of bond premium | $ — | $ 6,474 | $ — | $ — | $ 6,474 | $ 6,474 | $ — | $ — |

The accompanying notes are an integral part of these financial statements.

-22-

C89

CITY OF NEWARK
STATEMENTS OF NET ASSETS - FIDUCIARY FUNDS
DECEMBER 31, 2006 AND 2005

|  | 2006 | 2005 |
|---|---|---|
| **ASSETS** | | |
| Cash and cash equivalents | $      35,619 | $      15,653 |
| Investments | 39,840,264 | 36,705,221 |
| Contributions receivable | 97,555 | 89,185 |
| Prepaid expenses | 20,784 | : |
| **TOTAL ASSETS** | $39,994,222 | $36,810,059 |
| | | |
| **LIABILITIES AND NET ASSETS** | | |
| **LIABILITIES:** | | |
| Accounts payable | $      7,568 | $      2,552 |
| Total Liabilities | 7,568 | 2,552 |
| | | |
| **NET ASSETS:** | | |
| Assets held in trust for employee post-employee benefits | 39,986,654 | 36,807,507 |
| | | |
| **TOTAL LIABILITIES AND NET ASSETS** | $39,994,222 | $36,810,059 |

The accompanying notes are an integral part of these financial statements.

C90

CITY OF NEWARK
STATEMENTS OF CHANGES IN NET ASSETS - FIDUCIARY FUNDS
FOR THE YEARS ENDED DECEMBER 31, 2006 AND 2005

|  | 2006 | 2005 |
|---|---|---|
| ADDITIONS: | | |
| Contributions: | | |
| Employer contributions | $ 1,223,283 | $ 1,253,304 |
| State aid - police | 278,857 | 231,254 |
| Employee contributions | 384,544 | 369,212 |
| Total Contributions | 1,886,684 | 1,853,770 |
| Investments | | |
| Investment earnings | 33,840 | 45,896 |
| Net increase in fair value of investments | 4,183,390 | 2,232,288 |
| Total Investment Earnings | 4,217,230 | 2,278,184 |
| TOTAL ADDITIONS | 6,103,914 | 4,131,954 |
| DEDUCTIONS: | | |
| Benefits | 2,392,611 | 2,064,891 |
| Claims | 201,570 | 139,227 |
| Administrative expenses | 330,586 | 302,607 |
| TOTAL DEDUCTIONS | 2,924,767 | 2,506,725 |
| CHANGE IN NET ASSETS | 3,179,147 | 1,625,229 |
| NET ASSETS, BEGINNING OF YEAR | 36,807,507 | 35,182,278 |
| NET ASSETS, END OF YEAR | $39,986,654 | $36,807,507 |

The accompanying notes are an integral part of these financial statements.

- 24 -

C91

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 1     SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

The City of Newark complies with generally accepted accounting principles (GAAP). GAAP includes all relevant Governmental Accounting Standards Board (GASB) pronouncements. The accounting and reporting framework and the more significant accounting policies are discussed in subsequent subsections of this Note.

Financial Reporting Entity

The City of Newark, Delaware (the "City") was incorporated in 1852, under the provisions of the State of Delaware. The City operates under a Council-Manager form of government and provides the following services as authorized by its charter: public safety, streets, sanitation, utilities, health and social services, culture and recreation, public improvements, planning and zoning, and general administration.

The Governmental Accounting Standards Board established the criteria for determining the activities, organizations and functions of government to be included in the financial statements of the reporting entity. The criteria used in determining whether such organizations should be included in the City's financial reporting entity are financial interdependences, selection of governing authority, designation of management, ability to significantly influence operations, accountability for fiscal matters, scope of public service and special financing relationships.

The City has determined that no other outside agency meets the above criteria and, therefore, no other agency has been included as a component unit in the City's financial statements. In addition, the City is not aware of any entity which would exercise such oversight which would result in the City being considered a component unit of the entity.

Entity-wide and Fund Financial Statements

The entity-wide financial statements (i.e., the statement of net assets and the statement of changes in net assets) report information on all of the nonfiduciary activities of the City. Eliminations of interfund activity have been made to minimize the double counting of internal activities. Governmental activities, which normally are supported by taxes and intergovernmental revenues, are reported separately from business-type activities, which rely to a significant extent on fees and charges for support.

The statement of activities demonstrates the degree to which the direct expenses of a given function or segment are offset by program revenues. Direct expenses are those that are clearly identifiable with a specific function or segment. Program revenues include 1) charges to customers who purchase, use or directly benefit from goods, services or privileges provided by a function or segment, and 2) grants and contributions that are restricted to meeting the operational or capital requirements of a function or segment. Taxes and other items not properly included among program revenues are reported instead as general revenues.

- 25 -

C92

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 1    SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES (cont'd)

Separate financial statements are provided for governmental funds, proprietary funds and fiduciary funds, even though the last are excluded from the entity-wide financial statements. Major individual governmental funds and major individual enterprise funds are reported as separate columns in the fund financial statements. All remaining governmental funds are aggregated and reported as nonmajor funds. In addition, the fund financial statements present internal service funds and fiduciary funds by fund type.

Measurement Focus, Basis Of Accounting And Financial Statement Presentation

The entity-wide financial statements are reported using the economic resources measurement focus and the accrual basis of accounting, as are the proprietary fund and fiduciary fund statements. Revenues are recorded when earned and expenses are recorded at the time liabilities are incurred, regardless of the timing of the related cash flows. Property taxes are recognized as revenue in the year for which they are levied. Grants and similar items (nonexchange transactions) are recognized as revenue as soon as all eligibility requirements imposed by the provider have been satisfied. Agency funds report only assets and liabilities, as they do not have a measurement focus but do use the accrual basis of accounting.

The governmental fund financial statements are reported using the current financial resources measurement focus and the modified accrual basis of accounting. Revenues are recognized as soon as they become both measurable and available. Revenues are considered to be available if they are collected within the current period or soon enough thereafter to pay liabilities of the current period. For governmental fund types, the City considers all revenues to be available if they are collected within 60 days after fiscal year end. Revenues considered susceptible to accrual include property taxes, income taxes, franchise taxes, licenses, interest and dividend income, and grants associated with the current fiscal year. Only the portion of the special assessments receivable due within the current fiscal year is considered to be susceptible to accrual and recognized as revenue in the current fiscal year. All other revenue items are considered measurable and available only when cash is received by the City.

Expenditures are recorded when the related fund liability is incurred (upon receipt of goods or services), except for principal and interest on general long-term debt, claims and judgments, and compensated absences, which are recognized as expenditures to the extent they have matured. General capital assets acquisitions are reported as expenditures in governmental funds. Long-term debt issues and acquisitions under capital leases are reported as other financing sources.

The City reports the following major governmental funds:

General Fund – This fund is used to account for the general operating activities of the City. General government, public safety, public works, parks and recreation, and judiciary offices are financed through this fund with receipts from general property taxes, licenses and permits, investment interest, fines, charges for current services, intergovernmental and other revenue.

C93

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 1    Summary of Significant Accounting Policies (cont'd)

Capital Projects Fund – This fund is used to account for the design, construction and improvement of City buildings, land improvements, and the purchase and replacement of vehicles, machinery and equipment.

The City reports the following major proprietary funds:

Electric Fund – Used to account for the operation of an electric distribution system.

Water Fund – Used to account for the operation of a water supply system.

Sewer Fund – Used to account for the operation of a sewage collection system.

Parking Fund – Used to account for the operation of a municipal parking lot system.

The City also reports the following fund types:

Internal Service Fund – This fund is used to account for the operation of machinery, vehicle and building maintenance provided to other departments of the City on a cost-reimbursement basis.

Pension Trust Fund – This fund is used to account for the assets held by the Pension Program in a trustee capacity for the employees of the City.  The Pension Program, which is part of the City's legal entity, is a single-employer defined benefit pension plan that provides benefits to City employees.

Self-Insurance Trust Fund – This fund accounts for disability and medical claim payments made for employee job-related injuries, and for post-employment benefits paid on behalf of retirees of the City.

All governmental and business-type activities and enterprise funds of the City follow Financial Accounting Standards Board (FASB) Statements and Interpretations issued on or before November 30, 1989, Accounting Principles Board Opinions and Accounting Research Bulletins, unless those pronouncements conflict with GASB pronouncements. The City also has the option to follow subsequent private-sector guidance for its business-type activities and enterprise funds with certain limitations, but has elected not to do so.

With limited exceptions, the effects of interfund activity have been eliminated from the entity-wide financial statements.  Exceptions include charges by one govern-mental function to another where services have been provided.  Elimination of these charges would distort the direct costs and program revenues reported for the various functions.

C94

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 1    <u>SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES</u> (cont'd)

Proprietary funds distinguish operating revenues and expenses from nonoperating items. Operating revenues and expenses generally result from providing services and producing and delivering goods in connection with a proprietary fund's principal ongoing operations. The principal operating revenues of the electric, water, sewer and parking proprietary funds and the maintenance internal service fund are charges to customers for sales and services. Operating expenses for enterprise and internal service funds include the cost of sales and services, administrative expenses and depreciation on capital assets. All revenues and expenses not meeting this definition are reported as nonoperating revenues and expenses.

When both restricted and unrestricted resources are available for use in certain programs, it is the City's policy to apply cost-reimbursement grant resources first to those programs, followed by bond proceeds, categorical block grants and then by general revenues, as they are needed.

<u>Cash And Cash Equivalents</u>

For the purpose of the statement of cash flows, the proprietary funds consider all highly liquid investments with an original maturity of three months or less when purchased to be cash equivalents.

<u>Allowance For Doubtful Accounts</u>

The City of Newark's water, sewer and electric utilities experience very small losses from uncollectible accounts. Water and sewer fees constitute a lien against real property and usually can be collected in full when title transfers. Accordingly, an allowance for doubtful accounts is funded annually at the rate of .1 percent of annual revenues, excluding adjustment, penalties and miscellaneous revenues. This amount approximates actual losses. Only balances that remain after tax sales are written off each year. Electric fees do not constitute a lien; however, maintenance of adequate customer deposits, monthly billing and diligent collection procedures minimize losses from uncollectible accounts. Accordingly, an allowance for doubtful accounts is funded annually at the rate of .2 percent of annual revenues, excluding adjustments, penalties and miscellaneous revenues. This amount approximates the City's actual loss experience. Receivables containing closed accounts are maintained for a period of five years. Each year all accounts from the oldest year on record are written off against the allowance. As of December 31, 2006, the allowance for doubtful accounts amounted to $157,770 in the Electric Fund, $26,849 in the Sewer Fund and $21,740 in the Water Fund.

<u>Inventories And Prepaid Items</u>

Inventories of proprietary fund types are valued at average cost. The costs of governmental fund-type inventories are recorded as expenditures when consumed rather than when purchased. Certain payments to vendors reflect costs applicable to future accounting periods and are recorded as prepaid items.

C95

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 1     SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES (cont'd)

Capital Assets

Capital assets including property, plant and equipment are reported in the applicable governmental or business-type activities columns in the entity-wide financial statements. The City has defined capital assets as assets with a minimum cost of $3,000 and an estimated useful life in excess of one year. The City reports infra-structure assets on a network and subsystem basis. Accordingly, the amounts spent for the construction or acquisition of infrastructure assets are capitalized and reported in the entity-wide financial statements regardless of their amount. Capital assets may be purchased or constructed and are recorded at cost. Donated capital assets are recorded at estimated fair value at the date of donation. The costs of normal maintenance and repairs that do not add to the value of the asset or materially extend the asset's life are not capitalized.

Capital assets of the City are depreciated using the straight-line method over the estimated useful lives of the related assets. The City generally uses the following estimated useful lives unless an asset's life has been adjusted based on actual experience:

| | |
|---|---|
| Buildings | 20-40 years |
| Electric System | 15-30 years |
| Sewer System | 50 years |
| Water System | 20-50 years |
| Improvements | 10-20 years |
| Equipment | 5-10 years |

Compensated Absences

City employees earn vacation and sick leave depending on their length of service. Sick leave is accumulated at the rate of 15 days per year. Any unused sick leave is paid annually at the rate of one day for every three days accumulated in excess of 90 days. Employees have no vested interest in unused sick leave at termination and, accordingly, the City has no such liability. After 10 years of service, employees may carry forward up to two weeks of vacation time which, if unused, is paid at time of leaving the City. Compensatory time is accumulated as earned, with any unused amounts, up to a maximum limit, being paid at time of leaving the City.

Long-Term Obligations

In the entity-wide financial statements and the proprietary fund types in the fund financial statements, long-term debt and other long-term obligations are reported as liabilities in the applicable governmental activities, business-type activities or proprietary fund type statement of net assets. Bond premiums and discounts, as well as issuance costs, are deferred and amortized over the life of the bonds using the effective interest rate method. Bond issuance costs are reported as deferred charges and amortized over the term of the related debt.

- 29 -

C96

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 1     SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES (cont'd)

In the fund financial statements, governmental fund types recognize bond premiums, discounts and bond issuance costs during the current financial period. The face amount of debt issued is reported as other financing sources. Premiums received on debt issuances are reported as other financing sources while discounts on debt issuances are reported as other financing uses. Issuance costs, whether or not withheld from the actual debt proceeds received, are reported as debt service expenditures.

### Net Assets And Fund Equity

The difference between fund assets and liabilities is "Net Assets" on the entity-wide, proprietary and fiduciary fund statements and "Fund Balance" on governmental fund statements. Net Assets are classified as "Invested in Capital Assets, Net of Related Debt," legally "Restricted" for a specific purpose, or "Unrestricted" and available for appropriation for the general purposes of the fund.

In the governmental fund financial statements, reservations of fund balance represent amounts that are legally restricted by outside parties for use for a specific purpose or are otherwise not available for appropriation. Designations of fund balance represent tentative management plans that are subject to change.

### Property Taxes

Property taxes attach as an enforceable lien on property when levied. Taxes are levied on July 1 and are payable on or before September 30. Taxes paid after the payable date are assessed a five percent penalty for nonpayment and one and one-half percent interest per month thereafter. The City bills and collects its own property taxes. City property tax revenues are recognized on a pro rata basis. Delinquent taxes are considered fully collectible and, therefore, no allowance for uncollectible taxes is provided. The property tax rate for 2006 was 52 cents per $100 of assessed value.

### Use Of Estimates In The Preparation Of Financial Statements

The preparation of financial statements in conformity with generally accepted accounting principles requires management to make estimates and assumptions that affect certain reported amounts and disclosures. Accordingly, actual results could differ from those estimates.

NOTE 2     STEWARDSHIP, COMPLIANCE AND ACCOUNTABILITY

### BUDGETARY INFORMATION

The City follows these procedures in establishing the budgetary data reflected in the financial statements:

- 30 -

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 2     STEWARDSHIP, COMPLIANCE AND ACCOUNTABILITY (cont'd)

a.  Formal budgetary integration is employed as a management control device during the year for the General Fund. This budget is adopted on a basis consistent with generally accepted accounting principles.

b.  The City Council adopts legal annual budgets for the General Fund, Proprietary Funds, certain Special Revenue Funds and the Debt Service Fund. The City Council also adopts legal project length budgets for its Capital Projects Funds and certain Special Revenue Funds. Since project periods may differ from the City's fiscal year, a comparison of budgetary information for the combined Capital Projects Funds and certain Special Revenue Funds would not be meaningful and has not been presented in the accompanying financial statements.

c.  The City Manager is authorized to transfer budget amounts between departments within any fund; however, any revisions that alter the total appropriations of any fund must be approved by the City Council. Therefore, the level of budgetary responsibility is by total appropriations; however, for report purposes, this level has been expanded to a functional basis.

d.  Unused appropriations for all of the above annually budgeted funds lapse at year end.

e.  The budget amounts shown in the financial statements are the final authorized amounts as revised during the year.

### Expenditures Over Appropriations

For the year ended December 31, 2006, expenditures exceeded appropriations in the general government department of the general fund by $15,655 and in the culture and recreation department of the general fund by $53,959. These over-expenditures were funded by greater than anticipated revenues in the general fund.

NOTE 3     CASH, CASH EQUIVALENTS AND INVESTMENTS

### Deposits

Custodial credit risk is the risk that in the event of a bank failure, the City's deposits may not be returned. The City does not have a written policy for custodial credit risk. At December 31, 2006, the carrying amount of the City's cash accounts and cash on hand was $4,109,969. The bank balances were $4,240,904. Of the bank balances, $300,000 was covered by Federal Depository Insurance. The remaining balance of $3,940,904 was secured by collateral consisting of uninsured and unregistered investments held by the pledging financial institution but not in the City's name.

The above does not include pension fund deposits reflected in Note 9.

C98

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 3          CASH, CASH EQUIVALENTS AND INVESTMENTS (cont'd)

Investments

The City's Investments are reported at fair value.  The City is authorized to invest in United States government securities; federal agency securities; certificates of deposit, time deposits and bankers acceptances; corporate debt Instruments; repurchase agreements; money market mutual funds; the pooled Investment fund known as the Delaware Local Government Investment Pool (DELGIP) as authorized by Title 29, Chapter 12 of the Delaware Code; municipal obligations that are rated in either of the two highest rating categories by a nationally recognized rating agency; and guaranteed investment contracts.  Amounts that may be invested in any one of these categories are subject to percentage limitations as set forth in the City's written investment policy.

As of December 31, 2006, the City had the following investments:

| Investment Type | Fair Value | Investment Maturities (in years) | | | |
| | | Less Than One Year | One to Five Years | Six to Ten Years | More Than Ten Years |
|---|---|---|---|---|---|
| U.S. Government Securities | $ 1,424,489 | $ 844,790 | $ 579,699 | $ - | $ - |
| Federal Agency Securities | 6,006,855 | 4,021,958 | 1,784,493 | 200,404 | - |
| Corporate Note | 494,960 | 494,960 | - | - | - |
| Certificates of Deposit | 4,778,644 | 422,444 | 3,313,555 | 854,002 | 188,643 |
| Money Funds | 85,650 | 85,650 | - | - | - |
| TOTAL | $12,790,598 | $5,869,802 | $ 5,677,747 | $1,054,406 | $ 188,643 |

Investments in United States Government Securities, Federal Agency Securities and Certificates of Deposit are insured, registered, or held by the City or its agent in the City's name.

Credit Risk

The City has no policy regarding credit risk for U.S. Government Securities or Federal Agency Securities.

The City's Investments in U.S. Government securities (U.S. Treasury notes) are rated AAA by Standard & Poor's as of December 31, 2006.  The City's Investments in federal agency securities are comprised of Federal Home Loan Mortgage Corporation (Freddie Mac), Federal Home Loan Bank (FHL), Federal Farm Credit Banks and Federal National Mortgage Association (FNMA) securities.  These securities are rated AAA by Standard & Poor's as of December 31, 2006.

The City's Investments in corporate notes are rated AA by Standard & Poor's as of December 31, 2006.

C99

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

**NOTE 3**      CASH, CASH EQUIVALENTS AND INVESTMENTS  (cont'd)

**Interest Rate Risk**

Interest rate risk is the possibility that an interest rate change could adversely affect an investment's fair value.

The City's investment policy regarding maximum maturity of investments requires the maintenance of adequate liquidity to meet cash flow needs of the City.   The portfolio is structured in a manner that ensures sufficient cash is available to meet anticipated liquidity needs.   The portfolio is invested in permitted investments with a stated maturity of no more than five years from the date of purchase unless the security is matched to a specific obligation or debt of the City.  To control volatility of the portfolio, the City determines a duration target for the portfolio, not to exceed three years.

**Custodial Credit Risk**

Custodial credit risk is the risk that in the event of failure of the counterparty, the City will not be able to recover the value of its investments or collateral securities that are in the possession of an outside party.

All investment securities purchased by the City or held as collateral on deposits or investments are held in third-party safekeeping at a qualified financial institution that is not a counterparty to the investment transaction.

All securities in the City investment portfolio are held in the name of the City and are free and clear of any lien.

Appropriate City officials and representatives of the depository responsible for, or in any manner involved with, the safekeeping and custody process of the City are bonded.

**Concentration of Credit Risk**

Concentration of credit risk is the inability to recover the value of deposits, investments or collateral securities in the possession of an outside party caused by a lack of diversification (investments acquired from a single issuer).

The City's portfolio is diversified to limit exposure to any one issuer.   No more than five percent of the City's portfolio is invested in the securities of any single issuer with the following exceptions:

| | |
|---|---|
| U.S. Treasury | 100% maximum |
| Each federal agency | 25% maximum |
| Time deposits fully insured by FDIC/FSLIC | 10% maximum |
| | |
| Each repurchase agreement counterparty | 25% maximum |
| Money market mutual fund | 25% maximum |
| DELGIP | 25% maximum |

C100

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 3     CASH, CASH EQUIVALENTS AND INVESTMENTS   (cont'd)

Investments in issuers that represent five percent or more of total investments at December 31, 2006 are as follows:

| Investment/Issuer | Concentration Risk | |
| --- | --- | --- |
| | Distribution | Fair Value |
| FNMA | 9% | $1,151,923 |
| Federal Home Loan Bank | 21% | 2,778,616 |
| Federal Farm Credit Banks | 12% | 1,576,317 |
| United States Government Securities | 11% | 1,424,489 |

NOTE 4     CAPITAL ASSETS

The capital asset activity for the year ended December 31, 2006 was as follows:

| | Beginning Balance | Increases | Decreases | Ending Balance |
| --- | --- | --- | --- | --- |
| **Governmental Activities** | | | | |
| Capital Assets Not Being Depreciated: | | | | |
| Land | $ 4,989,380 | $        - | $        - | $ 4,989,380 |
| Total Capital Assets Not Being Depreciated | 4,989,380 | - | - | 4,989,380 |
| | | | | |
| Capital Assets Being Depreciated: | | | | |
| Buildings | 9,281,443 | 171,919 | - | 9,453,362 |
| Improvements | 12,521,476 | 238,960 | - | 12,760,436 |
| Machinery and equipment | 9,019,940 | 1,281,417 | 591,558 | 9,709,799 |
| Total Capital Assets Being Depreciated | 30,822,859 | 1,692,296 | 591,556 | 31,923,597 |
| | | | | |
| Less accumulated depreciation for: | | | | |
| Buildings | 3,297,875 | 256,655 | - | 3,554,530 |
| Improvements | 3,867,198 | 334,306 | - | 4,001,504 |
| Machinery and equipment | 5,609,619 | 994,715 | 560,872 | 6,243,462 |
| Total Accumulated Depreciation | 12,774,692 | 1,585,676 | 560,872 | 13,799,496 |
| | | | | |
| Total Capital Assets Being Depreciated, Net | 18,048,167 | 106,620 | 30,686 | 18,124,101 |
| | | | | |
| Governmental Activities Capital Assets, Net | $ 23,037,547 | $ 106,620 | $ 30,686 | $23,113,481 |
| | | | | |
| **Business-type Activities** | | | | |
| Capital Assets Not Being Depreciated: | | | | |
| Land | $ 8,788,127 | $        - | $        - | $ 8,788,127 |
| Construction-in-progress | 15,710,804 | - | 15,710,804 | - |
| Total Capital Assets Not Being Depreciated | 24,498,931 | - | 15,710,804 | 8,788,127 |

- 34 -

C101

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 4    CAPITAL ASSETS  (cont'd)

| | Beginning Balance | Increases | Decreases | Ending Balance |
|---|---|---|---|---|
| Business-type Activities (cont'd) | | | | |
| Capital Assets Being Depreciated: | | | | |
| Buildings | 15,860,890 | 591,207 | - | 16,452,097 |
| Improvements | 31,823,954 | 17,415,949 | - | 49,239,903 |
| Machinery and equipment | 2,018,838 | 323,157 | 100,480 | 2,241,515 |
| Total Capital Assets Being Depreciated | 49,703,682 | 18,330,313 | 100,480 | 67,933,515 |
| Less accumulated depreciation for: | | | | |
| Buildings | 8,887,314 | 745,210 | - | 9,632,524 |
| Improvements | 15,562,170 | 766,103 | - | 16,328,273 |
| Machinery and equipment | 1,163,948 | 260,917 | 92,027 | 1,332,838 |
| Total Accumulated Depreciation | 25,613,432 | 1,772,230 | 92,027 | 27,293,635 |
| Total Capital Assets Being Depreciated, Net | 24,090,250 | 16,558,083 | 8,453 | 40,639,880 |
| Business-type Activities Capital Assets, Net | $46,589,161 | $16,558,083 | $ 8,453 | $49,426,007 |

Depreciation expense was charged to the functions as follows:

| | | |
|---|---|---|
| General Government | $ | 347,976 |
| Public Safety | | 401,352 |
| Public Works | | 608,115 |
| Culture and Recreation | | 162,009 |
| Capital assets held by the government's internal service funds are charged to the various functions based on their usage | | 66,222 |
| Total Depreciation Expense - Governmental Activities | $ | 1,585,676 |
| | | |
| Business-type Activities: | | |
| Electric | $ | 664,311 |
| Water | | 800,119 |
| Sewer | | 206,447 |
| Parking | | 101,353 |
| Total Depreciation Expense - Business-type Activities | $ | 1,772,230 |

NOTE 5    LONG-TERM DEBT

General Obligation Bonds

General obligation bonds have been issued for both governmental and business-type activities. All bonds outstanding on December 31, 2006 are general obligation debt supported by the full faith and credit of the City.

The 2000 Series General Obligation Bonds were issued to partially reimburse funds advanced for the acquisition of a reservoir site and adjacent open space and to pay the costs of issuing the bonds. The bonds mature September 1, 2003 through September 1, 2020 and bear interest rates that vary from 4.6 percent to 5.1 percent, payable March 1 and September 1. Property tax revenues will be used to pay the principal and interest due on the bonds.

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 5    LONG-TERM DEBT (cont'd)

The 2002 Series General Obligation Bonds were issued to provide funds for the construction of a water reservoir and South Wellfield water treatment plant and to pay the costs of issuing the bonds. The bonds mature September 15, 2003 through September 15, 2022 and bear interest at rates that vary from 2.0 percent to 4.5 percent, payable March 15 and September 15. Water service fees will be used to pay the principal and interest due on the bonds.

The 2004 Series A General Obligation Bonds were issued to provide funds necessary for the current refunding of the City's General Obligation Bonds, Series of 1993. The bonds mature January 15, 2005 through January 15, 2010 and bear interest at a rate of 2.41 percent, payable January 15 and July 15. Property tax revenues will be used to pay the principal and interest due on the bonds.

General obligation bonds currently outstanding are as follows:

| Purpose | Amount |
|---|---|
| Governmental activities | $ 3,375,000 |
| Business-type activities | 15,800,000 |
| | $19,175,000 |

Annual debt service requirements to maturity for general obligation bonds are as follows:

| Year Ending December 31 | Governmental Activities Principal | Interest | Business-type Activities Principal | Interest |
|---|---|---|---|---|
| 2007 | $ 490,000 | $ 129,080 | $ 745,000 | $ 627,930 |
| 2008 | 480,000 | 115,042 | 765,000 | 605,580 |
| 2009 | 450,000 | 101,263 | 790,000 | 582,630 |
| 2010 | 285,000 | 89,718 | 815,000 | 558,930 |
| 2011 | 130,000 | 81,915 | 840,000 | 526,330 |
| 2012-2016 | 770,000 | 308,825 | 4,680,000 | 2,102,850 |
| 2017-2021 | 770,000 | 98,750 | 5,820,000 | 1,073,035 |
| 2022 | - | - | 1,345,000 | 60,525 |
| | $ 3,375,000 | $ 924,593 | $15,800,000 | $6,137,810 |

The City also has a note with Wilmington Trust Company, Inc. at 80 percent of the national commercial rate, used for the purchase of 38,000 square feet of real estate known as Lot #1. The payments of principal and interest are $2,881 each month, with the final payment scheduled for February 2007. The loan is collateralized by Lot #1 land.

- 36 -

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 5    LONG-TERM DEBT  (cont'd)

Annual debt service requirements to maturity for the note payable are as follows:

| Year Ending December 31 | Business-type Activities | |
|---|---|---|
| | Principal | Interest |
| 2007 | $ 4,356 | $ 21 |

NOTE 6    CHANGES IN LONG-TERM LIABILITIES

Long-term liability activity for the year ended December 31, 2006, was as follows:

| | Beginning Balance | Additions | Reductions | Ending Balance | Due Within One Year |
|---|---|---|---|---|---|
| Governmental activities: | | | | | |
| Bonds payable | $ 3,870,000 | $ - | $ 495,000 | $ 3,375,000 | $495,000 |
| Compensated absences | 433,045 | 990,838 | 964,025 | 459,858 | 45,548 |
| Governmental activities long-term liabilities | $ 4,303,045 | $ 990,838 | $ 1,459,025 | $ 3,834,858 | $540,548 |
| | | | | | |
| Business-type activities: | | | | | |
| Bonds payable | $16,525,000 | $ - | $ 725,000 | $15,800,000 | $745,000 |
| Plus: deferred amounts - bond premium | 110,066 | - | 6,474 | 103,592 | 6,474 |
| Total bonds payable | 16,635,066 | - | 731,474 | 15,903,592 | 751,474 |
| Note payable | 37,528 | - | 33,172 | 4,356 | 4,356 |
| Compensated absences | 60,695 | 223,799 | 217,864 | 66,630 | 6,663 |
| Business-type activities long-term liabilities | $16,733,289 | $ 223,799 | $ 982,510 | $15,974,578 | $762,493 |

The fund responsible for incurring the compensated absences pays the obligation. The internal service fund predominantly serves the governmental funds. Accordingly, long-term liabilities for them are included as part of the above totals for governmental activities. As of December 31, 2006, $12,035 of internal service funds compensated absences is included in the above amounts.

NOTE 7    INTERFUND TRANSFERS

The composition of interfund transfers as for the year ended December 31, 2006 were as follows:

| | Transfer In | Transfer Out |
|---|---|---|
| General Fund | $10,050,000 | $ 3,343,496 |
| Capital Projects Fund | 1,370,156 | |
| Nonmajor governmental funds | 1,388,096 | 176,405 |
| Electric Fund | 2,403,017 | 10,050,000 |
| Water Fund | 8,632 | 400,000 |
| Sewer Fund | - | 1,250,000 |
| Total Transfers | $15,219,901 | $15,219,901 |

C104

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 7    INTERFUND TRANSFERS (cont'd)

Prior to 1996, the City maintained a single operating fund. Since 1996, an annual operating transfer of electric utility revenues is made to the General Fund. Water rates adopted on July 1, 2001 also include $400,000 in annual support for the General Fund. The City's policy is that general revenues should support 50 percent or more of total General Fund expenditures, with the balance of support funded by operating transfers from the enterprise funds.

NOTE 8    FUND BALANCE

Amounts are reserved for the following purposes:

| | | |
|---|---|---|
| Debt service fund | $ 46,618 | (for debt service payments) |
| Special revenue fund - law enforcement | $ 494,794 | (for police grant projects) |
| Capital projects | $ 4,787,778 | (for approved capital projects) |
| Streets | $ 741,359 | (for street maintenance) |
| Parks and recreation | $ 143,764 | (for parks and recreation) |

NOTE 9    PENSIONS

Plan Description

Substantially all full-time employees of the City are covered by the Amended Pension Plan for Employees of the City of Newark, Delaware, created and operated under Section 2.98 of the City Code. This is a single-employer defined benefit pension plan accounted for as a pension trust fund and administered by the City Council sitting as the Board of Trustees. The defined benefit pension plan is reported in the City's financial statements and is not included in the report of any other public employee retirement system or other entity. Each year on January 1, William M. Mercer, Incorporated, prepares a complete Pension Plan Actuarial Valuation Report that is available for review in the Finance Department. On a quarterly basis, Frank Russell Trust Company prepares a performance monitoring report on the investment returns of plan assets. Finance Department staff prepare a separate report which, along with those of the consultants, is transmitted to the Board of Trustees, discussed at regular public meetings and made available for review in the Finance Department.

All full-time municipal employees are eligible to enroll in the plan immediately upon hire. Prior service as a part-time or temporary employee is not considered.

Although plan assets are collectively managed and administered, the plan is actually a combination of three plans with distinctly different levels of benefits. Even though there are three benefit levels, all plan assets are available to pay benefits to any plan member. The three plans are:

1. Non-Police – civilian, non-sworn, regular, full-time employees
2. Police – all sworn police officers except the Chief of Police
3. Special Police – the Chief of Police

C105

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 9    PENSIONS (cont'd)

Non-Police and Special Police employees are entitled to a benefit at 2.1 percent of their final average compensation comprised of base pay plus longevity times years of credited service. For Exempt and Special Police employees, final average compensation equals the average of the employee's 60 highest paid consecutive months of City employment. For members of the Communication Workers of America (white collar) and the American Federation of State, County and Municipal Employees (blue collar), final average compensation equals the average of the employee's 36 highest paid consecutive months of City employment. For Non-Police employees the normal retirement date is the first day of the month coinciding with or next following the latter of the fifth anniversary of the member's plan participation date or the member's 65th birthday. For Special Police the normal retirement date is the later of the employee's 50th birthday or the employee's fifth anniversary of participation in the Plan. The Plan permits early retirement for Non-Police employees at age 55 with the completion of 15 or more years of credited service. The early retirement benefit is actuarially reduced unless the sum of years of service and age is equal to 85. There are no early retirement options for Special Police.

Police employees are entitled to a benefit calculated at different rates. For service prior to January 1, 1978, a benefit at 2.2 percent of the final average compensation (the average of the employee's 36 highest paid consecutive months of employment with the City) comprised of base pay plus longevity times years of credited service. For service from January 1, 1978 through December 31, 1987, service credits accumulate at the rate of 2.25 percent for each year of service. For service after December 31, 1987 service credits accumulate at the rate of 2.5 percent for each year of service up to 20 years. Service credits accumulate at the rate of 3.5 percent per year after 20 years. Police employees are limited to a maximum accrual of service credits in the amount of 67.50.

A Police employee hired on January 1, 1978 would accumulate maximum service credits in the amount of 67.5 percent through December 31, 2006 as illustrated below:

| 1978-1987 | | 9 Years | | X | | 2.25% per Year | | 20.25% |
|---|---|---|---|---|---|---|---|---|
| 1988-2006 | | 18 Years | | X | | 2.5% per Year | | 45.00% |
| Subtotal | | | | | | | | 65.25% |
| MAXIMUM ALLOWABLE SERVICE CREDIT | | | | | | | | 67.5% |

Normal retirement for Police employees hired before January 1, 1989 is the earlier of (1) the later of the employee's 50th birthday or the fifth anniversary of the member's date of participation in the plan or (2) the completion of 20 years of credited service as a Police employee. For a Police employee hired after January 1, 1989, normal retirement occurs upon the completion of 25 years of credited service as a contributing member. A Police member who has completed 15 or more years of credited service and who terminates employment no more than five years prior to the member's normal retirement date shall be eligible to receive a retirement pension benefit commencing on the first of the month following the member's normal retirement date.

C106

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 9    PENSIONS (cont'd)

Each employee who is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment may be eligible for a disability pension equal to the employee's accumulated service credits, reduced by any benefits paid under the City's long-term disability insurance program. Police and Special Police employees whose disability results from the discharge of their official duties shall receive pension benefits of not less than 75 percent of their prior December 1 compensation, reduced by any benefits paid under any worker's compensation law, the City's long-term disability issuance program and 50 percent of actual Social Security Act disability benefits.

If a member terminates employment before becoming eligible for any other benefits under the plan, the member is entitled to a complete refund of the employee's pension contributions. The contributions are refunded with interest, which accumulates at the rate of four percent annually.

With five years or more of credited service, eight vested benefit options of equivalent actuarial value are available as follows:

1.  A retirement benefit for the remainder of the employee's life.

2.  A retirement benefit for a minimum of five years and then only for the rest of the member's life. If the member does not live for five years after terminating employment, then the beneficiary would continue to receive the benefit for the remainder of the five-year period.

3.  A retirement benefit for a minimum of 10 years and then only for the rest of the member's life. If the member does not live for 10 years after terminating employment, then the beneficiary would continue to receive the benefit for the remainder of the 10-year period.

4.  A retirement benefit for a minimum of 15 years and then only for the rest of the member's life. If the member does not live for 15 years after terminating employment, then the beneficiary would continue to receive the benefit for the remainder of the 15-year period.

5.  A survivor benefit equal to 50 percent of the employee's benefit after the member's death.

6.  A survivor benefit equal to 66-2/3 percent of the employee's benefit after the member's death.

7.  A survivor benefit equal to 75 percent of the employee's benefit after the member's death.

8.  A survivor benefit equal to 100 percent of the employee's benefit after the member's death.

C107

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 9      PENSIONS (cont'd)

The contribution percentage for Non-Police and Special Police employees in 2006 was 2.5 percent of current base and longevity pay earned throughout the year.

Police employees of the City are required to contribute a floating percentage of their current base and longevity pay.

The contribution rate is equal to the previous calendar year actuarially recommended employer contribution rate for the Police employees, provided that it does not exceed 7.0 percent and that it does not increase or decrease more than 2.0 percent over the previous year's rate. The Police employee contribution rate was 6.0 percent in 2006.

Annual Pension Cost

The City is required to make annual contributions based on an actuarially computed percentage of covered wages in amounts sufficient to cover normal costs of benefits and amortize the prior service liabilities over a period of 15 years. The annual required contribution for the current year was determined as part of the January 1, 2005 actuarial valuation using the entry age cost method as defined in Section 8 of GASB Statement No. 27. Since 1994, the City has made excess contributions of $104,549 over its annual required contribution. The actuarial value of assets was determined using techniques that smooth the effects of short-term volatility in the fair value of investments over a three-year period. The unfunded actuarial liabilities are amortized over a closed 30-year period from the valuation date at the valuation rate of 7.5 percent.

| | |
|---|---:|
| Annual required contribution | $ 1,420,363 |
| Interest on net pension obligation | (2,498) |
| Adjustment to annual required contribution | 3,771 |
| Annual pension cost | 1,421,636 |
| Contributions made | 1,502,140 |
| Increase in net pension obligation | (80,504) |
| Net pension obligation, beginning of year | (34,027) |
| Net pension obligation, end of year | $ (114,531) |

During the year ended December 31, 2006, the plan experienced a 7.0 percent decrease in its unfunded actuarial liability. The unfunded actuarial accrued liability decreased $694,447 for Police, increased $75,071 for Non-Police and decreased $619,376 for the Plan as a whole. City costs decreased 2.03 percent. As a percentage of payroll, the 2006 City contribution has decreased from the 2005 level. The 2006 City Non-Police contribution is comparable to the 2005 level as a percentage of payroll. Plan assets are larger than anticipated reflecting net returns of approximately 6.1 percent and 10.7 percent, respectively, on the market and actuarial values of assets. The return on the actuarial value reflects the recognition of the final portion of the large investment gain of 2003, which was smoothed over three years. For Non-Police, the impact of higher than expected plan assets was offset by a

- 41 -

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 9    PENSIONS (cont'd)

smaller than expected number of terminations. For the Police, the reduction in the 2006 contribution reflects improved funded status due to the large state contribution, experience gains and a decrease in the number of officers.

In 2006, the assumed retirement rates for police officers hired before 1989 were updated to reflect actual plan experience. Previously, it was assumed that these officers retired by age 50. Now, their assumed retirement age follows a table of rates, ending at the age at which they attain maximum accumulated service credits (67.5 percent of final average earnings). Significant actuarial assumptions used in determining the net pension benefit obligation include: (a) rate of return on the investment present and future assets of 7.5 percent per year compounded annually, (b) projected salary increases of 4.5 percent per year, (c) a 2.5 percent employee contribution rate for Non-Police and a rolling three-year average of the prior three years actual contribution rates for Police, and (d) the assumption that benefits will not increase after retirement. Assumptions for inflation are implicit in assumptions for the investment rate of return salary increases, and employee contributions. The City's annual employer pension cost for the fiscal year ended December 31, 2006 was $1,421,636. The contributions for the year by various City funds totaled $1,502,140 including $278,857 of funds provided by the State of Delaware.

Plan Membership

As of January 1, 2005, the most recent actuarial valuation, employee membership consisted of:

| Participants | Police | Non-Police and Special Police | Total |
|---|---|---|---|
| Active employees | 55 | 161 | 216 |
| Retired and disabled members receiving benefits | 53 | 75 | 128 |
| Vested terminated members not receiving benefits | 1 | 7 | 8 |
| TOTAL | 109 | 243 | 352 |

The City's total payroll for all employees covered by the Plan for the current year was $10,892,965. Participation in the Plan is voluntary and virtually all eligible employees have chosen to participate.

Plan Assets

In accordance with GASB No. 25, investments are reported at fair value. Short-term investments are reported at cost, which approximates fair value. Securities traded on a national or international exchange are valued at the last reported sales price at current exchange rates. In 2001, the City hired the Frank Russell Trust Company to manage the investment of pension plan assets. The Russell Company maintains numerous commingled investment funds for qualified public employee pension plans. These investments are not categorized according to the level of risk assumed at year end because they are not represented by securities.

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 9    PENSIONS (cont'd)

Total investments available for benefits as of December 31, 2006 consisted of the following :

| | |
|---|---|
| Fixed income mutual funds | $15,825,888 |
| Large cap equity mutual funds | 14,357,280 |
| International equity mutual funds | 6,104,632 |
| Small cap equity mutual funds | 1,857,027 |
| Government securities fund | 525,680 |
| | $38,670,507 |

Administrative Costs

Administrative costs, including the investment manager, custodial trustee and actuarial services, are charged and paid by short-term assets of the plan.

Concentration of Plan Assets

As of December 31, 2006 there were no individual investments, other than those backed by the U.S. Government, which constituted five percent or more of the plan's net assets.

Required Supplementary Information –
Municipal General Employees Pension Plan

Schedule of Funding Progress

| Actuarial Valuation Date | Actuarial Value of Assets (a) | Actuarial Accrued Liability (AAL) - Entry Age (b) | Unfunded AAL (UAAL) (b-a) | Funded Ratio (a/b) | Covered Payroll (c) | UAAL as a % of Covered Payroll [(b-a)/c] |
|---|---|---|---|---|---|---|
| 1/1/06 | $35,354,039 | $44,226,692 | $8,872,653 | 79.42% | $10,892,985 | 81.45% |
| 1/1/05 | 32,017,782 | 41,509,811 | 9,492,029 | 77.13% | 10,720,809 | 88.54% |
| 1/1/04 | 30,089,369 | 39,352,244 | 9,262,875 | 76.46% | 10,323,409 | 89.73% |
| 1/1/03 | 28,809,165 | 36,418,942 | 7,609,777 | 79.11% | 9,537,252 | 79.78% |
| 1/1/02 | 28,999,363 | 33,307,942 | 4,308,579 | 87.06% | 9,177,126 | 46.95% |
| 1/1/01 | 27,817,800 | 31,280,847 | 3,463,047 | 88.93% | 8,941,662 | 38.73% |

- 43 -

C110

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 9       PENSIONS (cont'd)

Schedule of Contributions From Employer and Other Contributing Entities

| Year Ended December 31 | Annual Required Contribution | City Contribution | Percentage Contributed |
|---|---|---|---|
| 2006 | $1,421,636 | $1,502,140 | 105.66% |
| 2005 | 1,453,304 | 1,484,558 | 102.16% |
| 2004 | 1,438,276 | 1,374,838 | 95.59% |
| 2003 | 1,225,758 | 1,176,223 | 95.96% |
| 2002 | 866,910 | 932,343 | 107.59% |
| 2001 | 844,193 | 867,436 | 102.75% |
| 2000 | 746,566 | 755,350 | 101.18% |
| 1999 | 692,368 | 690,944 | 99.79% |
| 1998 | 548,558 | 518,018 | 94.43% |
| 1997 | 473,334 | 468,840 | 99.05% |

NOTE 10      RISK MANAGEMENT

The City maintains commercial insurance coverage for risk of losses relating to general, automotive, police professional, public officials and crime. There has been no significant change in coverage during the past year. There have been no losses above insurance limits during the last four years.

The City is self-insured for worker's compensation; however, medical costs related to on-the-job injuries are covered by the City's health insurance provider. The City's compensation payments are calculated based upon a written policy administered by the City. The City maintains an internal service fund for worker's compensation claims and deductible amounts paid to its insurance underwriters. That Self-Insurance Fund is included in these statements. Resources are allocated to this fund from operating funds. Historically, the City has experienced very few individual claims. On December 31, 2006, there were four outstanding claims and none pending.

The City has requested a proposal from an actuarial consultant to determine if it is possible to estimate future claims and liabilities based on available data.

| Fiscal Year | Aggregate Liability for Claims 01/01/04 | Current Year Claims | Actual Claims Payments | Aggregate Liability for Claims 12/31/06 |
|---|---|---|---|---|
| 2006 | - | $211,570 | $211,570 | - |
| 2005 | - | 139,227 | 139,227 | - |
| 2004 | - | 14,252 | 14,252 | - |
| 2003 | - | 60,220 | 60,220 | - |

- 44 -

C111

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 11    DEFERRED COMPENSATION PLAN

The City offers its employees a deferred compensation plan created in accordance with Internal Revenue Code (IRC) Section 457. The plan, available to all City employees, permits them to defer a portion of their salary until future years.

The IRC Section 457 was amended by adding subsection (g), which required the City to amend its Deferred Compensation Plan (DCP) Trust Agreement. In December 1996, the City amended its DCP and amended its existing DCP Trust Agreement to comply with changes in the IRC.

The amended DCP provides that all assets and income of the DCP are held in the DCP Trust for the exclusive benefit of participants and their beneficiaries. Therefore, these assets will no longer be the sole property of the City and will not be subject to the claims of the City's general creditors. In addition, as a result of this change, the assets have been eliminated from the City's balance sheet as of January 1, 1999. All costs and expenses of administering the plan are borne by the participants.

NOTE 12    POST-RETIREMENT HEALTH CARE BENEFITS

In addition to providing pension benefits described in Note 9, the City provides certain limited post-retirement health care benefits for employees that meet eligibility requirements. These benefits were included in contracts negotiated with the City's employee bargaining units that became effective April 1, 2001. In exchange for a contribution toward health care premiums, the City obtained a long-term labor agreement, wage increases below the historical average, a redesign of health benefits and contributions toward active employee health insurance premiums. Currently, seven employees meet the eligibility requirements and are receiving a benefit. The cost of retiree health care is recognized as an expenditure in the Self-Insurance Trust Fund as premiums are paid. For the year ended December 31, 2006, those costs were $140,504.

NOTE 13    DELAWARE MUNICIPAL ELECTRIC CORPORATION, INC.

The City is a member of the Delaware Municipal Electric Corporation (DEMEC). DEMEC is a public corporation constituted as a Joint Action Agency and a wholesale electric utility. DEMEC was established in 1979 and represents nine municipal electric distribution utilities located in the State of Delaware and provides full requirements wholesale electric power supply service to seven of the nine members, including the City, through the operation of owned generation assets and various wholesale supply contracts with external parties.

The City purchases 100 percent of its electric supply requirements from DEMEC under a long-term full requirements service contract that became effective January 1, 2004 and which will remain in effect unless terminated upon one year's written notice by either party. The obligation of the City to purchase and pay for full requirements

- 45 -

C112

CITY OF NEWARK, DELAWARE

NOTES TO THE FINANCIAL STATEMENTS

NOTE 13    DELAWARE MUNICIPAL ELECTRIC CORPORATION, INC. (cont'd)

service, including its allocated costs under any then current forward contract for capacity and energy between DEMEC and a third party in effect as of the date of notice of termination, shall survive the termination of this agreement.

The City has entered into a separate power sales agreement effective May 1, 2001 to purchase a 47.4 percent interest in the capacity produced by Unit #1 of the Warren F. "Sam" Beasley Power Station located in Smyrna, Delaware, owned by DEMEC. The City is entitled to 47.4 percent of all power supply and ancillary products generated from the existing nominal 45 MW natural gas-fired combustion turbine generator for the useful life of the facility.

Under the terms of the various agreements, DEMEC is authorized to act as agent for the City in all matters relating to the acquisition and delivery of its wholesale power supply and management of energy cost risk on behalf of the City in the deregulated energy markets.

NOTE 14    PENDING LITIGATION

The City is in litigation regarding the construction of a reservoir near the White Clay Creek. Construction began in June 2002 and was scheduled to be completed in December 2003. The general contractor hired to build the project stopped most work in September 2003 and refused to continue performance of major components of the work, arguing that the project could not be built as designed. After attempts to mediate the dispute, the contract was terminated by the City in early 2004. The contractor filed a civil suit against the City in the U.S. District Court for Delaware alleging breach of contract, defamation and civil rights violations.

The trial phase of the civil suit initiated by the terminated contractor in 2004 concluded on October 6, 2006. A federal jury awarded the plaintiff $25 million in civil rights damages for preclusion of the contractor's right to pursue post-termination business without due process and approximately $11 million in contract damages. The verdict has not yet been entered by the Court pending ruling on outstanding motions. If this verdict is not set aside by the trial judge, the City will file its appeal in the Third U.S. Circuit Court of Appeals in Philadelphia, Pennsylvania when all post-trial motions have been ruled upon.

The City's insurance underwriter, St. Paul Travelers, has provided the defense of this case from the outset. St. Paul Travelers has no liability on contractual issues but has approximately $7 million in liability for the civil rights portion of the verdict. St. Paul Travelers has an obligation to defend the City and has assigned lawyers to pursue appellate action. At the present time, the City's new retained post-trial counsel, augmented by a number of additional attorneys retained by St. Paul, are vigorously pursuing motions for a new trial, for reconsideration of earlier rulings and for reductions of the amounts of the verdicts. The City Council has directed the Solicitor and the City's trial counsel to vigorously pursue every avenue of appeal.

Subsequent to the filing of post-trial motions and supporting briefs, the parties have agreed to enter into nonbinding mediation to resolve the dispute. Such mediation is scheduled to commence in August 2007.

C113

**SUPPLEMENTARY INFORMATION**

C114

**CITY OF NEWARK**
**COMBINING BALANCE SHEET - NONMAJOR GOVERNMENTAL FUNDS**
**DECEMBER 31, 2006**

| | Debt Service | Bond Fund Project #4 | Bond Fund Projects #6 | Street Fund | Community Development Fund | Special Revenue Funds — Law Enforcement | Special Revenue Funds — Parks and Recreation | Totals 2006 | Totals 2005 |
|---|---|---|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | | | | |
| Cash and cash equivalents | $ 46,518 | $ 18,069 | $ 19,918 | $ 141,053 | $ 3,040 | $ 485,177 | $ 143,239 | $ 857,534 | $ 784,518 |
| Investments | | 949,051 | 707,652 | | | | | 1,656,683 | 1,646,341 |
| Accounts receivable | | | | 502,906 | 166,018 | 59,573 | 525 | 803,022 | 814,821 |
| Due from other funds | | | | 193 | | | | 193 | 193 |
| Inventory | | | | 13,781 | | | | 13,781 | 13,781 |
| Prepaid expenses | | | | 11,067 | 827 | | | 11,854 | 22,051 |
| **TOTAL ASSETS** | $ 46,518 | $ 967,120 | $ 727,570 | $ 748,950 | $ 169,885 | $ 544,750 | $ 143,764 | $ 3,348,867 | $ 3,257,781 |
| **LIABILITIES AND FUND BALANCES** | | | | | | | | | |
| **LIABILITIES** | | | | | | | | | |
| Accounts payable | $ | $ | $ | $ 7,601 | $ 34,865 | $ 1,793 | $ | $ 44,279 | $ 16,612 |
| Deferred revenues | | | | | | 36,075 | | 36,075 | |
| Due to other funds | | | | | 135,000 | | | 135,000 | 130,000 |
| Other liabilities | | | | | | 12,088 | | 12,088 | 12,088 |
| **TOTAL LIABILITIES** | | | | 7,601 | 169,865 | 49,956 | | 227,442 | 158,700 |
| **FUND BALANCES** | | | | | | | | | |
| Reserved for capital projects | | 967,120 | 727,570 | | | | | 1,694,690 | 1,846,559 |
| Reserved for debt service | 46,518 | | | | | | | 46,518 | 66,619 |
| Reserved for law enforcement | | | | | | 494,794 | | 494,794 | 535,711 |
| Reserved for streets | | | | 741,359 | | | | 741,359 | 724,930 |
| Reserved for parks and recreation | | | | | | | 143,764 | 143,764 | 153,222 |
| **TOTAL FUND BALANCES** | 46,518 | 967,120 | 727,570 | 741,359 | | 494,794 | 143,764 | 3,121,225 | 3,100,061 |
| **TOTAL LIABILITIES AND FUND BALANCES** | $ 46,518 | $ 967,120 | $ 727,570 | $ 748,950 | $ 169,885 | $ 544,750 | $ 143,764 | $ 3,348,667 | $ 3,267,781 |

- 47 -

**CITY OF NEWARK**
**COMBINING STATEMENT OF REVENUES, EXPENDITURES AND CHANGES IN FUND BALANCES -**
**NONMAJOR GOVERNMENTAL FUNDS**
**FOR THE YEAR ENDED DECEMBER 31, 2006**

| | Debt Service | Bond Fund Project #4 | Bond Fund Project #6 | Street Fund | Community Development Fund | Law Enforcement | Parks and Recreation | Totals 2006 | Totals 2005 |
|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | | | |
| Interest, dividends and rents | $ | $ 24,962 | $ 18,375 | 296 | $ | $ 340 | $ | $ 43,973 | $ 49,822 |
| Intergovernmental revenues | | | | 869,055 | 643,663 | 289,453 | 24,197 | 1,805,368 | 1,568,671 |
| Fines, forfeits and costs | | | | | | 18,466 | | 18,466 | 52,305 |
| Charges for services | | | | 57 | | 13,003 | | 13,060 | 25,255 |
| **TOTAL REVENUES** | | 24,962 | 18,375 | 869,408 | 643,663 | 320,262 | 24,197 | 1,879,967 | 1,693,433 |
| **EXPENDITURES** | | | | | | | | | |
| Current: | | | | | | | | | |
| Public safety | | | | | | 187,297 | | 187,297 | 212,318 |
| Public works | | | | 1,454,323 | | | | 1,454,323 | 1,631,959 |
| Community development | | | | | 643,663 | | | 643,663 | 340,775 |
| Culture and recreation | | | | | | | 16,555 | 16,555 | 12,138 |
| Change in fair value of investments | | (8,731) | (6,552) | | | | | (15,283) | 44,197 |
| Debt Service: | | | | | | | | | |
| Principal | 495,000 | | | | | | | 495,000 | 505,000 |
| Interest | 143,097 | | | | | 154,882 | | 143,097 | 157,288 |
| Capital Outlay | | | | | | | | 154,882 | |
| **TOTAL EXPENDITURES** | 638,097 | (8,731) | (6,552) | 1,454,323 | 643,663 | 342,179 | 16,555 | 3,079,514 | 2,972,476 |
| **EXCESS (DEFICIENCY) OF REVENUES OVER (UNDER) EXPENDITURES** | (638,097) | 32,813 | 24,927 | (585,915) | | (48,917) | 7,642 | (1,199,547) | (1,279,043) |
| **OTHER FINANCING SOURCES (USES)** | | | | | | | | | |
| Transfers in | 638,096 | | | 750,000 | | | | 1,388,096 | 1,862,495 |
| Transfers out | | (8,832) | (3,017) | (147,656) | | | (17,100) | (176,405) | (435,882) |
| **TOTAL OTHER FINANCING SOURCES (USES)** | 638,096 | (8,832) | (3,017) | 602,344 | | | (17,100) | 1,211,691 | 1,426,713 |
| **NET CHANGE IN FUND BALANCES** | (1) | 24,181 | 21,910 | 16,429 | | (40,917) | (9,458) | 12,144 | 205,670 |
| **FUND BALANCES, BEGINNING OF YEAR** | 46,619 | 542,939 | 705,660 | 724,930 | | 535,311 | 153,222 | 3,109,081 | 2,902,411 |
| **FUND BALANCES, END OF YEAR** | $ 46,618 | $ 567,120 | $ 727,570 | $ 741,359 | $ | $ 494,394 | $ 143,764 | $ 3,121,225 | $ 3,109,081 |

- 48 -

C116

CITY OF NEWARK
COMBINING STATEMENT OF NET ASSETS - FIDUCIARY FUNDS
DECEMBER 31, 2006

| | Employee Pension Trust Fund | Self-Insurance Fund | Total 2006 | Total 2005 |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash and cash equivalents | $ - | $ 35,619 | $ 35,619 | $ 15,653 |
| Investments | 38,670,507 | 1,169,757 | 39,840,264 | 36,705,221 |
| Contributions receivable | 97,555 | - | 97,555 | 89,185 |
| Prepaid expenses | - | 20,784 | 20,784 | - |
| Total Assets | 38,768,062 | 1,226,160 | 39,994,222 | 36,810,059 |
| | | | | |
| **Liabilities** | | | | |
| Accounts payable | - | 7,568 | 7,568 | 2,552 |
| Total Liabilities | - | 7,568 | 7,568 | 2,552 |
| | | | | |
| **Net Assets** | | | | |
| Assets held in trust for employee post-employment benefits | $ 38,768,062 | $ 1,218,592 | $ 39,986,654 | $ 36,807,507 |

- 49 -

C117

**CITY OF NEWARK**
**COMBINING STATEMENT OF CHANGES IN NET ASSETS - FIDUCIARY FUNDS**
**FOR THE YEAR ENDED DECEMBER 31, 2006**

| | Employee Pension Trust Fund | Self-Insurance Fund | Totals 2006 | Totals 2005 |
|---|---|---|---|---|
| **ADDITIONS** | | | | |
| Contributions: | | | | |
| Employer contribution | $ 1,223,283 | $    - | $ 1,223,283 | $ 1,263,304 |
| State aid - police | 278,857 | | 278,857 | 231,254 |
| Employee contribution | 384,544 | | 384,544 | 369,212 |
| Total contributions | 1,886,684 | - | 1,886,684 | 1,853,770 |
| Investments: | | | | |
| Investment earnings | - | 33,840 | 33,840 | 45,896 |
| Net increase in fair value of investments | 4,170,899 | 12,491 | 4,183,390 | 2,232,288 |
| Total investment earnings | 4,170,899 | 46,331 | 4,217,230 | 2,278,184 |
| TOTAL ADDITIONS | 6,057,583 | 46,331 | 6,103,914 | 4,131,954 |
| | | | | |
| **DEDUCTIONS** | | | | |
| Benefits | 2,252,107 | 140,504 | 2,392,611 | 2,064,891 |
| Claims | | 201,570 | 201,570 | 139,227 |
| Administrative expenses | 320,596 | 10,000 | 330,596 | 302,607 |
| TOTAL DEDUCTIONS | 2,572,693 | 352,074 | 2,924,767 | 2,506,725 |
| | | | | |
| CHANGE IN NET ASSETS | 3,484,890 | (305,743) | 3,179,147 | 1,625,229 |
| | | | | |
| NET ASSETS, BEGINNING OF YEAR | 35,283,172 | 1,524,335 | 36,807,507 | 35,182,278 |
| | | | | |
| NET ASSETS, END OF YEAR | $ 38,768,062 | $ 1,218,592 | $ 39,986,654 | $ 36,807,507 |

- 50 -

INDEPENDENT AUDITORS' REPORT ON
INTERNAL CONTROL OVER FINANCIAL REPORTING
AND ON COMPLIANCE AND OTHER MATTERS
BASED ON AN AUDIT OF FINANCIAL STATEMENTS
PERFORMED IN ACCORDANCE WITH
*GOVERNMENT AUDITING STANDARDS*

May 31, 2007

Members of City Council
City of Newark
Newark, Delaware

We have audited the financial statements of the governmental activities, the business-type activities, each major fund and the aggregate remaining fund information of the City of Newark, Newark, Delaware as of and for the year ended December 31, 2006, which collectively comprise the City of Newark's basic financial statements, and have issued our report thereon dated May 31, 2007.

We conducted our audit in accordance with auditing standards generally accepted in the United States of America and the standards applicable to financial audits contained in *Government Auditing Standards*, issued by the Comptroller General of the United States.

Internal Control Over Financial Reporting

In planning and performing our audit, we considered the City of Newark's internal control over financial reporting as a basis for designing our auditing procedures for the purpose of expressing our opinions on the financial statements, but not for the purpose of expressing an opinion on the effectiveness of the City of Newark's internal control over financial reporting. Accordingly, we do not express an opinion on the effectiveness of the City's internal control over financial reporting.

Our consideration of internal control over financial reporting was for the limited purpose described in the preceding paragraph and would not necessarily identify all deficiencies in internal control over financial reporting that might be significant deficiencies or material weaknesses. However, as discussed below, we identified certain deficiencies in internal control over financial reporting that we consider to be significant deficiencies.

A control deficiency exists when a design or operation of a control does not allow management or employees, in the normal course of performing their assigned functions, to prevent or detect misstatements on a timely basis. A significant deficiency is a control deficiency, or combination of control deficiencies, that adversely affects the City's ability to initiate, authorize, record, process or report financial data reliably in accordance with generally accepted accounting principles such that there is more than a remote likelihood that a misstatement of the City's financial statements that is more than inconsequential will not be prevented or detected by the City's internal control. We consider the deficiencies described in the accompanying schedule of findings and recommendations to be significant deficiencies in internal control over financial reporting.

C119

Members of City Council
City of Newark

A material weakness is a significant deficiency, or combination of significant deficiencies, that results in more than a remote likelihood that a material misstatement of the financial statements will not be prevented or detected by the City's internal control.

Our consideration of internal control over financial reporting was for the limited purpose described in the first paragraph of this section and would not necessarily identify all deficiencies in the internal control that might be significant deficiencies and, accordingly, would not necessarily disclose all significant deficiencies that are also considered to be material weaknesses. However, we believe that none of the significant deficiencies described in the accompanying schedule of findings and recommendations is a material weakness.

Compliance and Other Matters

As part of obtaining reasonable assurance about whether the City of Newark's financial statements are free of material misstatement, we performed tests of its compliance with certain provisions of laws, regulations, contracts and grant agreements, noncompliance with which could have a direct and material effect on the determination of financial statement amounts. However, providing an opinion on compliance with those provisions was not an objective of our audit and, accordingly, we do not express such an opinion.

The results of our tests disclosed no instances of noncompliance or other matters that are required to be reported under *Government Auditing Standards*.

We noted certain matters that we reported to management of the City of Newark, Newark, Delaware, in a separate letter dated May 31, 2007.

This report is intended solely for the information and use of the members of City Council, management and federal awarding agencies and pass-through entities; and is not intended to be and should not be used by anyone other than these specified parties.

*Barbacane, Thornton & Company*
BARBACANE, THORNTON & COMPANY

C120

INDEPENDENT AUDITORS' REPORT ON
COMPLIANCE WITH REQUIREMENTS APPLICABLE TO
EACH MAJOR PROGRAM AND ON INTERNAL CONTROL
OVER COMPLIANCE IN ACCORDANCE
WITH OMB CIRCULAR A-133

May 31, 2007

Members of City Council
City of Newark
Newark, Delaware

Compliance

We have audited the compliance of the City of Newark, Newark, Delaware with the types of compliance requirements described in the U.S. Office of Management and Budget (OMB) Circular A-133 Compliance Supplement that are applicable to its major federal program for the year ended December 31, 2006. The City of Newark's major federal program is identified in the summary of auditors' results section of the accompanying schedule of findings and recommendations. Compliance with the requirements of laws, regulations, contracts and grants applicable to its major federal program is the responsibility of the City of Newark's management. Our responsibility is to express an opinion on the City of Newark's compliance based on our audit.

We conducted our audit of compliance in accordance with auditing standards generally accepted in the United States of America; the standards applicable to financial audits contained in *Government Auditing Standards*, issued by the Comptroller General of the United States; and OMB Circular A-133, "Audits of States, Local Governments and Nonprofit Organizations." Those standards and OMB Circular A-133 require that we plan and perform the audit to obtain reasonable assurance about whether noncompliance with the types of compliance requirements referred to above that could have a direct and material effect on a major federal program occurred. An audit includes examining, on a test basis, evidence about the City of Newark's compliance with those requirements and performing such other procedures as we considered necessary in the circumstances. We believe that our audit provides a reasonable basis for our opinion. Our audit does not provide a legal determination on the City of Newark's compliance with those requirements.

In our opinion, the City of Newark complied, in all material respects, with the requirements referred to above that are applicable to its major federal program for the year ended December 31, 2006.

Internal Control Over Compliance

The management of the City of Newark, Newark, Delaware, is responsible for establishing and maintaining effective internal control over compliance with requirements of laws, regulations, contracts and grants applicable to federal programs. In planning and performing our audit, we considered the City of Newark's internal control over compliance with requirements that could have a direct and material effect on a major federal program in order to determine our auditing procedures

C121

Members of City Council
City of Newark

for the purpose of expressing our opinion on compliance, but not for the purpose of expressing an opinion on the effectiveness of internal control over compliance. Accordingly, we do not express an opinion on the effectiveness of the City's internal control over compliance.

A control deficiency in an entity's internal control over compliance exists when the design or operation of a control does not allow management or employees, in the normal course of performing their assigned functions, to prevent or detect noncompliance with a type of compliance requirements of a federal program on a timely basis. A significant deficiency is a control deficiency, or combination of control deficiencies, that adversely affects the entity's ability to administer a federal program such that there is more than a remote likelihood that noncompliance with a type of compliance requirement of a federal program that is more than inconsequential will not be prevented or detected by the entity's internal control.

A material weakness is a significant deficiency, or combination of significant deficiencies, that results in more than a remote likelihood that material noncompliance with a type of compliance requirement of a federal program will not be prevented or detected by the entity's internal control.

Our consideration of internal control over compliance was for the limited purpose described in the first paragraph of this section and would not necessarily identify all deficiencies in internal control that might be significant deficiencies or material weaknesses. We did not identify any deficiencies in internal control over compliance that we consider to be material weaknesses, as defined above.

Schedule of Expenditure of Federal Awards

We have audited the financial statements of the governmental activities, the business-type activities, the aggregate discretely presented component units, each major fund and the aggregate remaining fund information of the City of Newark as of and for the year ended December 31, 2007, and have issued our report thereon dated May 31, 2007. Our audit was performed for the purpose of forming our opinions on the financial statements that collectively comprise the City of Newark's basic financial statements. The accompanying schedule of expenditures of federal awards is presented for purposes of additional analysis as required by OMB Circular A-133 and is not a required part of the basic financial statements. Such information has been subjected to the auditing procedures applied in the audit of the basic financial statements and, in our opinion, is fairly stated, in all material respects, in relation to the basic financial statements taken as a whole.

This report is intended solely for the information and use of the members of City Council, management and federal awarding agencies and pass-through entities; and is not intended to be and should not be used by anyone other than these specified parties.

*Barbacane, Thornton & Company*
BARBACANE, THORNTON & COMPANY

- 54 -

C122

## CITY OF NEWARK
### SCHEDULE OF EXPENDITURES OF FEDERAL AWARDS
### FOR THE YEAR ENDED DECEMBER 31, 2006

| GRANTOR/PROGRAM | CODE | FEDERAL CFDA NUMBER | GRANT PERIOD | GRANT AMOUNT | TOTAL RECEIVED FOR YEAR | ACCRUED (DEFERRED) REVENUE AT 01/01/06 | REVENUE RECOGNIZED | EXPENDITURES | ACCRUED (DEFERRED) REVENUE AT 12/31/06 |
|---|---|---|---|---|---|---|---|---|---|
| **US Dept of Housing and Urban Dev** | | | | | | | | | |
| Passed through to NCC Dept of | | | | | | | | | |
| Community Dev and Housing | | | | | | | | | |
| Comm. Devel. Block Grant | I | 14.218 | 07/01/03-06/30/04 | $ 366,197 | $ 146,611 | $ (117,236) | $ 133,452 | $ 133,452 | $ (130,395) |
| Comm. Devel. Block Grant | I | 14.218 | 07/01/04-06/30/05 | 363,790 | 130,740 | 168,887 | 135,766 | 135,766 | 173,913 |
| Comm. Devel. Block Grant | I | 14.218 | 07/01/05-06/30/06 | 389,012 | 329,188 | 77,244 | 262,279 | 262,279 | 10,335 |
| Comm. Devel. Block Grant | I | 14.218 | 07/01/06-06/30/07 | 431,033 | 112,166 | - | 112,166 | 112,166 | 112,166 |
| **Total US Dept of HUD** | | | | 1,550,032 | 606,539 | 128,895 | 643,663 | 643,663 | 144,019 |
| **US Department of Justice** | | | | | | | | | |
| Criminal Justice Council-Victim Svc | I | 16.575 | 10/01/05-12/31/06 | 27,575 | 14,898 | - | 22,234 | 22,234 | 7,336 |
| Criminal Justice Council-Canine Prg | I | 16.579 | 06/15/06-07/14/07 | 7,600 | 7,600 | - | 7,600 | 7,600 | - |
| E. Byrne BJA Grant | D | 16.738 | 10/01/04-09/30/08 | 30,615 | - | - | 21,717 | 21,717 | 21,717 |
| BJA LLEBG | D | 16.592 | 09/30/03-10/01/05 | 25,708 | - | (9,426) | 4,215 | 4,215 | (5,211) |
| BJA LLEBG | D | 16.592 | 10/01/03-09/30/05 | 11,324 | 11,324 | - | 8,114 | 8,114 | (3,210) |
| **Total US Dept of Justice** | | | | 102,822 | 33,822 | (9,426) | 63,880 | 63,880 | 20,632 |
| **US Department of Transportation** | | | | | | | | | |
| **National Highway Traffic Safety** | | | | | | | | | |
| **Administration** | | | | | | | | | |
| Passed thru Office of Highway Safety | | | | | | | | | |
| OJJDP Underage Drinking Grant | I | 93.415 | 10/01/05-04/30/07 | 25,000 | 14,730 | - | 24,401 | 24,401 | 9,651 |
| Highway Safety-Enforcing Underage | | | | | | | | | |
| Drinking Laws Grant | I | 20.600 | 10/06/04-04/30/06 | 26,500 | 6,865 | - | 4,779 | 4,779 | (2,086) |
| Highway Safety Grant | I | 20.600 | 09/20/05-12/31/06 | 10,000 | 8,156 | - | 5,780 | 5,780 | (2,376) |
| Highway Safety-Seatbelt Campaign | I | 20.600 | 05/07/06-06/30/06 | 2,000 | - | - | 1,354 | 1,354 | 1,354 |
| Highway Safety-Aggressive Driving | I | 20.600 | 2006 | 9,240 | 5,948 | - | 6,702 | 6,702 | 754 |
| Highway Safety Grant | I | 20.600 | 10/01/06-09/30/07 | 13,680 | 1,330 | - | 1,199 | 1,199 | (151) |
| **Total US Dept of Transportation** | | | | 86,420 | 37,049 | - | 44,215 | 44,215 | 7,146 |
| **Federal Emergency Mgt Agency** | | | | | | | | | |
| Passed thru DEMA | | | | | | | | | |
| Public Assist Grant Subgrant #F04-042 | I | 97.004 | 12/01/05-01/04/06 | 118,064 | 100,900 | - | 118,094 | 118,094 | 17,194 |
| **Total FEMA** | | | | 118,064 | 100,900 | - | 118,094 | 118,094 | 17,194 |
| **TOTAL FEDERAL AWARDS** | | | | $1,857,308 | $ 778,330 | $ 119,469 | $ 869,852 | $ 869,852 | $ 210,991 |

Source Code:

D = Direct Federal Funding
I = Indirect Federal Funding

Total Programs Tested $ 643,663
Total Federal Awards $ 869,852 = 74%

-55-

C123

CITY OF NEWARK

NOTES TO SCHEDULE OF EXPENDITURES OF FEDERAL AWARDS

NOTE A  SINGLE AUDIT REPORTING ENTITY

The City of Newark's single audit reporting entity is consistent with the reporting entity used for the City of Newark's financial statements.

NOTE B  BASIS OF ACCOUNTING

All expenditures included in the Schedule of Expenditures of Federal Awards are presented on the basis that expenditures are reported to the respective federal grantor agencies.  Accordingly, certain expenditures are recorded when paid, and certain other expenditures are recorded when the federal obligation is determined.

C124